**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MARVELLE J. "JAY"
BALLENTINE,

      Plaintiff,

v.

                                Case No. 6:26-cv-00376-AGM-RMN

META PLATFORMS, INC.,
ACCENTURE LLP, TASKUS, INC.,
and GENPACT LIMITED.

      Defendants.

_____ /

## DEFENDANT TASKUS INC.'S MOTION TO DISMISS[1]

Defendant TASKUS, INC. ("TaskUs"), through its undersigned counsel and

pursuant to Federal Rule of Civil Procedure 12, moves the Court to dismiss the

Amended Complaint[2] filed by Plaintiff MARVELLE J. "JAY" BALLENTINE

---

[1] On March 20, 2026, Defendant TaskUs, Inc. filed a Time Sensitive Motion to Extend Time to Respond to Plaintiff's First Amended Complaint ("Motion to Extend") (ECF No. 34), seeking an additional 30 days to respond to the First Amended Complaint. The Court granted a similar motion by co-Defendant Genpact Ltd. (*see* ECF Nos. 30 and 31), but has not ruled on Defendant TaskUs' Motion to Extend. As noted in the Motion to Extend, while service of the First Amended Complaint was not proper, in an abundance of caution, if service *is* deemed proper, TaskUs' response is due today (March 23, 2026). So as not to waive any available defenses, TaskUs hereby files this Motion to Dismiss.

[2] TaskUs maintains Plaintiff failed to properly serve the Amended Complaint as TaskUs was not represented at the time of the filing of the Amended Complaint. Thus, service by priority mail is not an appropriate method of service. *See* Fed. R. Civ. P. 4 and 5. Moreover, as stated in the Time Sensitive Motion to Extend Time to Respond to Plaintiff's First Amended Complaint, Defendant received notification of the Amended Complaint through a CT Corporation Service of Process Notification dated Monday, 03/09/2026. Plaintiff contends the proper service date is Saturday, 03/07/2026 based off the Priority Mail tracking number. Using either date and again assuming proper service, pursuant to Rule 6(a)(1)(c), the proper 14-day count is Monday, March 23, 2026.

("Plaintiff" or "Ballentine") for failure to state a claim upon which relief may be granted.

**INTRODUCTION**

Plaintiff failed to plead any valid claim against TaskUs. According to the First Amended Complaint ("FAC") (ECF No. 19), Defendant Meta Platforms, Inc. ("Meta") terminated Ballentine's Facebook advertising account after flagging it for child sexual exploitation ("CSE") material. The FAC alleges that one of three third-party service vendors (Defendants Accenture LLP ("Accenture"), TaskUs, or Genpact Limited ("Genpact")) assisted in reviewing Ballentine's account before it was terminated nearly four years ago. Ballentine theorizes that his Facebook account was terminated because of his race. The FAC, however, supplies no facts to support that theory, and dismissal is warranted for three reasons.

First, Ballentine has not plausibly alleged facts to show that TaskUs—an entity he acknowledges had no technical ability to terminate his account—caused his injuries. He concedes that Meta controlled every meaningful step of the content-moderation process—flagging his account, setting the review policies, retaining override authority over vendor recommendations, and ultimately terminating his account. The FAC does not even identify *which* vendor reviewed his account; it merely guesses that one of three vendors did. Ballentine's failure to plead but-for causation as to TaskUs is fatal to all four of his claims.

Second, Ballentine has not plausibly alleged racial animus. He does not describe the content of his own account, identifies no similarly situated comparator whose

account was treated differently, and admits he does not even know whether any vendor could see his race during the review process. His speculation that a reviewer *may* have seen his race and *therefore* must have recommended a ban based on race does not come close to stating a plausible claim of racial discrimination.

Third, the Communications Decency Act ("CDA") shields TaskUs from any alleged liability for its content moderation. Because Section 230(c)(1) of the CDA bars claims against interactive computer service providers based on the removal of content (including accounts) from their services, third-party content-moderation service providers are also immune from liability for assisting with those publication decisions. Similarly, Section 230(c)(2) of the CDA protects content moderators' voluntary and good-faith efforts to keep the internet safe, including by assisting others in eliminating objectionable material on their websites.

Ballentine's attempt to embark on a fishing expedition to try to find facts that support his unfounded theory of invidious racial discrimination should be rejected. Ballentine already voluntarily withdrew his complaint against Defendants Meta and Accenture in the Northern District of California after the briefing on their respective motions to dismiss concluded. But four days later, he filed this nearly identical case in a new jurisdiction, alleging claims against TaskUs for the first time. The Court should dismiss Ballentine's FAC.

## BACKGROUND[3]

Meta operates social-media platforms like Facebook and Instagram and takes significant steps to ensure a safe experience for users: it establishes community and advertising standards, reviews user content for violations of those standards, and retains authority to suspend or ban accounts that do not follow its standards. *See* FAC ¶¶ 30, 33, 34, and 60. Relevant to Plaintiff's claims, Meta also actively screens for materials that violate its policy against CSE, and is required by law to report apparent violations to the National Center for Missing and Exploited Children (NCMEC) for further investigation. FAC ¶¶ 34, 74.

Accenture, TaskUs, and Genpact assist Meta in its content-moderation efforts, including by reviewing appeals from users whose material has been flagged under Meta's CSE policy. FAC ¶ 42. Meta flags potential violations and sets the rules for review, and vendor teams perform a human review of the Meta-flagged content under Meta's policies and training. FAC ¶¶ 42, 108–112. As the platform operator, Meta retains full control over the NCMEC reporting process, reserves "override authority" over vendors' enforcement recommendations, and "ratifie[s]" the outcome of vendors' review. FAC ¶¶ 33, 74, 124.

Ballentine promoted and sourced work for his RV-repair-services business using a Facebook advertising account beginning in June 2022. FAC ¶ 53. He also used his

---

[3] TaskUs accepts as true the factual allegations in the Amended Complaint solely for the purposes of this Motion to Dismiss; it does not otherwise concede the truth of any of those allegations.

account to access continuing-education materials through the National RV Training Academy's Alumni Facebook Group. FAC ¶ 52. Plaintiff is a Black man. FAC ¶ 18.

On July 4, 2022, Meta flagged Ballentine's account for violating its CSE policy and disabled his Facebook account. FAC ¶¶ 54, 56. Ballentine appealed, and Meta requested identity verification before processing the appeal. FAC ¶ 54. Ballentine submitted his passport. *Id.* On Meta's request, a human moderator at either Accenture, TaskUs, or Genpact reviewed Ballentine's account. FAC ¶ 7. After the review, Meta terminated Ballentine's account. FAC ¶ 56. Ballentine claims he lost out on pending RV service requests, access to educational materials, and the ability to acquire customers after his account was terminated. FAC ¶¶ 63–65.

On September 9, 2025, Ballentine filed a complaint against Defendants Meta and Accenture in the United States District Court for the Northern District of California in which he claimed that his Facebook account was terminated because of his race and not because of a CSE violation. *See generally* ECF No. 4.[4] After Meta and Accenture moved to dismiss Ballentine's complaint (as amended), and approximately one week before the hearing on defendants' motions to dismiss, Ballentine voluntarily dismissed his action and refiled a new complaint in this Court, this time adding TaskUs and Genpact as additional defendants. *Id*.

---

[4] TaskUs does not oppose Ballentine's motion to take judicial notice of the public docket in his previous action in the Northern District of California. ECF No. 4. However, TaskUs does oppose the inclusion of Plaintiff's personal summary of those proceedings. *Id.*

For the first time, Ballentine stated that he does not know which vendor defendant reviewed his account, but that one of them did. ECF No. 1 at ¶ 47. The initial complaint also asserted several new state-law claims against the Defendants. Ballentine amended his complaint to drop the state claims, *see* FAC ¶ 1, which he has since refiled in state court along with various other claims against seven defendants. *See* ECF No. 22.[5]

Ballentine brings four federal claims against TaskUs: violations of 42 U.S.C. §§ 1981, 1982, 1983, and 1985(3). FAC ¶¶ 138, 150, 160, 169. He now seeks declaratory relief, public injunctive relief, and monetary damages "in an amount not less than $500,000,000." FAC ¶ 178.

## LEGAL MEMORANDUM

### A.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." A complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint "does not need detailed factual allegations," but "requires more than labels and conclusions" and requires factual allegations "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Specifically, a complaint must include "enough facts to state

---

[5] Of note, Ballentine has also separately sued Meta and Accenture's counsel in this Court and in state court for defamation, civil conspiracy to defame, and intentional infliction of emotional distress based on a legal argument in Accenture's motion to dismiss Ballentine's previous complaint in the Northern District of California. See ECF Nos. 3, 22.

a claim to relief that is plausible on its face." *Id.* at 570. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## B.    Ballentine Fails to Establish TaskUs Caused His Injuries or Acted Out of Racial Animus

Ballentine's claims fail first because the allegations in the Amended Complaint do not establish that, but for TaskUs' alleged actions, Ballentine would not have suffered his alleged injuries. Second, Ballentine's allegations do not support his conclusion that TaskUs acted with racial animus.

### i.    The Amended Complaint Does Not Sufficiently Allege That TaskUs Caused Ballentine's Injuries

Nothing in Ballentine's Amended Complaint plausibly suggests that TaskUs caused his alleged injuries. "It is 'textbook tort law' that a plaintiff seeking redress for a defendant's legal wrong typically must prove but-for causation." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 331 (2020). This means the plaintiff must "show that the harm would not have occurred in the absence of . . . the defendant's conduct." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346–47 (2013)(internal quotations omitted). The "but for" causation test "supplies the 'default'

7

or 'background' rule against which Congress is normally presumed to have legislated when creating its own new causes of action," including antidiscrimination laws like those at issue here. *Comcast*, 589 U.S. at 332. And because "the essential elements of a claim remain constant through the life of a lawsuit," this requirement applies equally at the motion-to-dismiss stage: a plaintiff must "plausibly allege" but-for causation for each defendant. *Id*.

Ballentine's Amended Complaint does not meet this standard. To start, it improperly "assert[s] multiple claims against multiple [vendor] defendants without specifying which of the [vendor] defendants are responsible for which acts or omissions." *Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021). Although it specifies that "the claim is brought against" all vendor defendants, it does not clearly indicate whether *all three* vendor defendants reviewed the account, or whether he is merely guessing that *just one* of the three vendors must have reviewed the account. *Compare* FAC ¶ 171 (asserting that all three "Vendor Defendants joined and acted in furtherance" of a conspiracy to terminate Ballentine's account), with ¶ 175 (asserting that a single "Vendor Defendant" reviewed Ballentine's account).[6] This deficiency alone warrants dismissal. *See Lyles v. Sch. Dist. of Osceola Cnty.*, 2023 WL 8437717, at *1 (M.D. Fla. Feb. 2, 2023) (dismissing shotgun pleading).

---

[6] Furthermore, in Plaintiff's own Response in Opposition to the Motion to Dismiss filed by Accenture, Plaintiff seemingly affirmatively believes that it was "an Accenture reviewer" who conducted the human review. *See* ECF No. 40, pg. 3. Plaintiff's conflicting narrative further warrants dismissal.

Even if the Amended Complaint properly attributed conduct to a specific vendor defendant (or plausibly pleaded alternative causation), which it does not, it still would fail to state a claim. The Amended Complaint makes numerous allegations that cut against the inference that any vendor defendant, let alone TaskUs specifically, caused Ballentine's injuries. For one, it affirmatively alleges that Meta controlled the content moderation for the Facebook service at issue. According to the Amended Complaint, Meta set content policies for its "enforcement pipeline"; made initial CSE designations; provided "standard operating procedures, policy updates, and training materials for CSE-labeled enforcement maters" to TaskUs; submitted official CSE reports; retained "override authority" over and "ratified the final outcome" of any vendor recommendation before actioning an account,; and held exclusive power to approve, restrict, terminate, or reinstate accounts, and to return any lost data. *See* FAC ¶¶ 38, 42, 53–57, 108, 142.

TaskUs, meanwhile, operated in a more limited sphere consistent with its role as a third-party service provider. The Amended Complaint asserts that, if TaskUs reviewed Ballentine's account, it relied on "Meta-provided reviewer interfaces." FAC ¶ 111.

Given these affirmative allegations, TaskUs cannot be the but-for cause of Ballentine's alleged injuries. By the Amended Complaint's own terms, Ballentine's account was flagged by Meta for CSE *before* TaskUs was ever involved in the review process. FAC ¶ 54. When a vendor (whoever it may be) later reviewed the alleged violation, it acted according to extrinsic training, policies, and procedures. FAC ¶ 111.

9

And if TaskUs performed the review, the most it could do was issue a recommendation for action; as Ballentine acknowledges, TaskUs lacked authority to disable his account. *See* FAC ¶¶ 42, 142.

The Amended Complaint's "naked assertion" that TaskUs caused Ballentine's injuries is thus not only "devoid of [ ] factual enhancement," *Iqbal*, 556 U.S. at 678—it directly contradicts the allegations on which it relies. Because Ballentine's Amended Complaint fails to plead—and affirmatively eliminates—the essential element of but-for causation against TaskUs, the Court cannot "draw the reasonable inference that [TaskUs] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Ballentine's claims should be dismissed.

### ii. The Amended Complaint Does Not Sufficiently Allege That TaskUs' Actions Were Based on Racial Animus

Ballentine's claims also fail because the allegations in the Amended Complaint do not plausibly support an inference of racial animus or discriminatory intent. In *Comcast*, the Supreme Court held that a Section 1981 plaintiff must plead and prove that racial animus is not just <u>one</u> reason behind the defendant's actions, but <u>the</u> reason for those actions. *See* 589 U.S. at 333. Similarly, because Section 1982 "uses nearly identical language" to Section 1981, *id.* at 336, courts have extended *Comcast's* but-for requirement to Section 1982 claims. *See, e.g., Christian v. Rancho Grande Manufactured Home Cmty.*, 2024 WL 3372687, at *1 (9th Cir. July 11, 2024), cert denied, 145 S. Ct. 1057 (2025); *James v. City of Evanston*, 2021 WL 4459508, at *9 (N.D. Ill. Sept. 29, 2021). Claims brought under Sections 1983 and 1985(3) also require showing

discriminatory intent or animus. *See Washington v. Davis*, 426 U.S. 229, 239–40 (1976) (claims based on equal protection)[7]; *Chua v. Ekonomou*, 1 F.4th 948, 955 (11th Cir. 2021) (Section 1985(3) claims).

Ballentine's Amended Complaint does not meet this threshold requirement. According to the Amended Complaint, one of the vendor defendants "had access to account-level identifiers, including profile photos, names, and in some cases government-issued ID images, sufficient to reveal a user's race" during the review process. FAC ¶ 44. The Amended Complaint also asserts that Meta permanently terminated Ballentine's account "[w]ithin hours of receiving [his] identification." FAC ¶ 56. Based on these allegations, the Amended Complaint hypothesizes that TaskUs (or another vendor defendant) had Ballentine's identification "visible on-screen," saw the color of his skin, and recommended that Meta affirm his ban because he is Black. FAC ¶ 154.

First, the Amended Complaint makes clear that Ballentine does not know whether any vendor defendant, let alone TaskUs' reviewers, even had access to his photograph. *See, e.g.,* FAC ¶ 193 (requesting relief from the vendor defendants in the form of an online publication explaining "[w]hether reviewers could view users' profile photos and government identification images during review"); FAC ¶ 190 (requesting relief from Meta in the form of an "audit log" explaining "[w]hether identity-revealing

---

[7] Although Ballentine's "alternative" Section 1983 claim that the defendants violated his procedural due process rights does not require allegations plausibly suggesting racial animus, that claim fails because TaskUs is not a state actor. FAC ¶ 160.

imagery was displayed" during "human review of accounts). Ballentine's personal belief that TaskUs' reviewers may have seen his race during the review process cannot support his conclusion that they must have recommended a ban based on race. *See Twombly*, 550 U.S. at 570 (explaining that naked speculation cannot "nudge[] [a plaintiff's] claims across the line from conceivable to plausible"). This Court, and others in the Eleventh Circuit, have dismissed discrimination claims for similar deficiencies, and this Court should do the same. *See, e.g., Potwin v. Dynasty Bldg. Sols.*, LLC, 2024 WL 4881385, at *2–3 (M.D. Fla. Nov. 25, 2024); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1274 (11th Cir. 2004); *Lang v. SPM Prop. Mgmt.*, 2020 WL 13695197, at *16 (S.D. Ala. Feb. 27, 2020).

Even assuming TaskUs' reviewers had access to Ballentine's photograph, the Amended Complaint does not plausibly allege that race was a factor in their review. Generally, a plaintiff may raise an inference of discrimination by identifying and describing "comparators of a different race who were 'similarly situated in all material respects' and were not subject to the same mistreatment." *Horton v. Beacon Woods East*, 2025 WL 3089014, at *6 (M.D. Fla. Nov. 5, 2025). But "[w]hen the plaintiff takes this route . . . [he] must plead sufficient detail about the proposed comparator so that the court can reasonably infer that racial animus accounts for the difference in treatment." *Snoqualmie Indian Tribe v. City of Snoqualmie*, 186 F. Supp. 3d 1155, 1163 (W.D. Wash. May 16, 2016) (collecting cases); *Lang*, 2020 WL 13695197, at *15.

Ballentine does not begin to satisfy this standard. Although he references a handful of white "comparators" whom he believes were treated differently, not one of

those comparators is similarly situated to Ballentine "in all material respects." *Horton*, 2025 WL 3089014, at *6. First, three of Ballentine's five comparators allegedly had their accounts flagged for violations unrelated to CSE. FAC at pgs. 17-18 (table of comparators alleging that white users who posted "artistic" nudity, "[a]dult [n]udity/[s]olicitation," and "[h]uman [e]xploitation" materials later had their accounts reinstated). And though another comparator's account was flagged for violating Meta's CSE policy, it was later determined to contain "a medical C-section video." *Id.* That four white individuals with what appear to be entirely different account types had their accounts flagged and restored under entirely different circumstances does not plausibly raise any inference that TaskUs engaged in invidious racial discrimination against Ballentine.

That leaves Ballentine with a single, unnamed comparator— "COMP-1"— whom he alleges he discovered through a single post from an unnamed author on the social-media platform X. FAC ¶ 71. But even that mysterious comparator cannot advance Ballentine's assertion of racial animus. The Amended Complaint itself offers no details—none—about the post or posts that allegedly led to Meta's termination of Ballentine's account. Ballentine's failure to describe the content of his own advertisements makes any meaningful comparison impossible. And the Amended Complaint's description of COMP-1 is similarly vague: it gives no specific details about COMP-1's flagged content. With no information about each party's specific posts, Ballentine's Amended Complaint does not plausibly state a claim that any alleged disparate treatment was based on race and not on content. *Henley v. Turner*

13

*Broad. Sys., Inc.,* 267 F. Supp. 3d 1341, 1352–54 (N.D. Ga. 2017) (dismissing Section 1981 discrimination claim where the plaintiff "fail[ed] to identify or describe the comparators in enough detail to show that [the plaintiff] and the employees [were] similarly situated in all relevant respects or that they [were] nearly identical" (internal quotations and citations omitted); *Pillitieri v. City of Flagler Beach*, 2017 WL 3840433, at *4 (M.D. Fla. Sept. 1, 2017) ("Where a plaintiff has not demonstrated that a comparator was similarly situated in all relevant respects, dismissal is appropriate."); *Scribner v. Collier County*, 2011 WL 2746813, at *4 (M.D. Fla. Jul. 14, 2011) (similar); *Halstrbrison, LLC v. Se. Overtown/Park W. Cmty. Redevelopment Agency*, 2024 WL 5493421, at *3 (S.D. Fla. Mar. 27, 2025) (similar).

Finally, even assuming TaskUs reviewers (1) could access users' photographs, (2) were assigned Ballentine's case, (3) recommended that Meta affirm his ban absent a CSE violation, the Amended Complaint does not plausibly suggest Ballentine is entitled to relief. In making the plausibility determination, "courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Doe v. Samford Univ.*, 29 F.4th 675, 686 (11th Cir. 2022) (affirming dismissal of Title IX discrimination claim).

Here, the Amended Complaint does not eliminate all alternative, non-discriminatory explanations for TaskUs' alleged recommendation. For example, although Ballentine alleges there was no CSE violation associated with his account, the Amended Complaint does not allege that Ballentine's account complied with all

14

of Meta's community standards. *See, e.g.,* FAC ¶ 8 (alleging only that "no violation existed to report [to NCMEC]"). Ballentine does not describe Meta's community standards. Nor does he detail the content of his own account. Without more, the Court can infer from the Amended Complaint that Ballentine's account was terminated for non-discriminatory reasons,[8] and the Amended Complaint does not "plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 681.

Ballentine's claims require establishing that TaskUs acted with racial animus. The Amended Complaint impermissibly piles speculative inference upon speculative inference: Ballentine's account *may* have complied with Meta's community standards; a vendor *may* have seen Ballentine's race during the review process; that vendor *may* have been TaskUs; and therefore TaskUs *must* have recommended a ban based on race. Ballentine's claims are "precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told [courts] to ignore when evaluating a complaint's sufficiency." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013). Ballentine's claims should be dismissed.

---

[8] Ballentine has filed additional lawsuits against Defendant Accenture, its counsel, and others for defamation and intentional infliction of emotional distress based on this legal argument. ECF No. 3 (notice of related action in federal court); ECF No. 22 (notice of related action in state court). There are numerous cases in which parties have raised (and courts have accepted) the "obvious alternative explanation" defense. *See, e.g., Iqbal*, 556 U.S. at 682; *Henley*, 267 F. Supp. 3d at 1353–54 (collecting cases). Ballentine's additional lawsuits only underscore the lack of merit to his claims.

**C.      The Communications Decency Act Bars Ballentine's Claims**

Ballentine's claims should be dismissed for another independent reason: both section 230(c)(1) and section 230(c)(2) of the CDA shield TaskUs from liability for its alleged content-moderation efforts in this case. 47 U.S.C. §§ 230(c)(1), (2). Section 230(c)(1) protects any "provider or user of an interactive computer service" that is treated as the "publisher" of third-party content. 47 U.S.C. § 230(c)(1); *Roca Labs, Inc. v. Consumer Op. Corp.,* 140 F. Supp. 3d 1311, 1319 (M.D. Fla. 2015) ("Lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional functions—such as deciding whether to publish, withdraw, postpone, or alter content—are barred."). And Section 230(c)(2) protects any "provider or user of an interactive computer service" for good-faith actions "to restrict access to . . . material that the provider or user considers to be . . . objectionable." 47 U.S.C. § 230(c)(2). TaskUs' alleged content-moderation efforts in this case fall squarely within these immunity-granting provisions.

To begin, whether as a "user" of an "interactive computer service" or a third-party service to a "provider" of an "interactive computer service," TaskUs qualifies for CDA protection. TaskUs is a "user" of an interactive computer service—Meta and its content-moderation services—because TaskUs accesses Meta-housed content and uses Meta-developed tools to assist Meta with content moderation.[9] *See* FAC ¶ 110.

---

[9] The Eleventh Circuit has acknowledged that "website exchange systems and online message boards are interactive computer services." *See, e.g., McCall v. Zotos*, 2023 WL 3946827, at *2 (11th Cir. June 12, 2023). Other circuits have held more specifically that Meta's social-media platforms,

Although the CDA does not define or give examples of who qualifies as a "user," courts have held that CDA immunity encompasses traditional account holders and content moderators alike. *See, e.g., E. Coast Test Prep LLC v. Allnurses.com, Inc.*, 307 F. Supp. 3d 952, 965 (D. Minn. 2018), aff'd, 971 F.3d 747 (8th Cir. 2020) (moderator of third-party content was entitled to CDA immunity against defamation claims under Section 230(c)(1)). This reading aligns with common sense: a "user" under the CDA is simply someone who uses an interactive computer service. *See User*, Webster's Ninth New Collegiate Dictionary (1990) (defining "user" in the years leading up to the passing of the CDA as "one that uses").

TaskUs is also entitled to protection in its alleged content-moderation role in this case through Meta's status as a "provider." Because the CDA shields from liability those who, like Meta, provide "software . . . or enabling tools that . . . filter, screen, allow, or disallow content," 47 U.S.C. § 230(f)(4), content-moderation services like TaskUs—whose contractual purpose is to assist Meta in its efforts to filter and screen Meta's content—are also immune from liability for those actions.

Under Section 230(c)(1), TaskUs cannot be held liable for allegedly recommending that Meta remove Ballentine's account. Indeed, "[a]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under Section 230." *Mezey v. Twitter, Inc.*, No. 1:18-cv-21069-KMM, 2018 U.S. Dist. LEXIS 121775, at *3 (S.D. Fla. July 19, 2018) (quoting

---

including Facebook, are interactive service providers. *See, e.g., Sikhs for Just., Inc. v. Facebook, Inc.*,697 F. App'x 526, 526 (9th Cir. 2017).

17

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008)). Courts have consistently dismissed claims where, as here, those claims are based on a defendant's decision to suspend or terminate a user's account.[10] *See, e.g., id.; Elansari v. Meta, Inc.*, 2024 WL 163080, at *2 (3d Cir. Jan. 16, 2024); *King v. Facebook, Inc.*, 572 F. Supp. 3d 776, 795 (N.D. Cal. 2021).

Similarly, under Section 230(c)(2), TaskUs cannot be held liable for its "voluntar[y]" and "good faith" actions to allegedly recommend removing content Meta deems objectionable. 47 U.S.C. § 230(c)(2)(A). Ballentine has not sufficiently alleged that TaskUs acted in bad faith. Ballentine does not (and cannot) say "[w]hether [TaskUs'] reviewers could [even] view users'" identification during the review process. FAC ¶ 193. Ballentine's belief that TaskUs' reviewers *may* have allegedly seen his race during the review process does not support his conclusion that they *must* have acted in bad faith. *See Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1105 (N.D. Cal. 2011) (dismissing claim under Section 230(c)(2) where plaintiff's conclusory allegations did not adequately plead "an absence of good faith"); *see also e360Insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605, 609 (N.D. Ill. 2008) (same). TaskUs

---

[10] As explained above, the amended complaint does not adequately allege that TaskUs caused Ballentine's alleged injuries. But even if it did, Ballentine has pleaded himself right into the CDA by asserting that TaskUs allegedly played a role in Meta's publication decision. As Florida courts have acknowledged in other contexts, "every one who takes part in the publication. . . is charged with publication." *Doe v. Am. Online, Inc.*, 783 So.2d 1010, 1017 (Fla. 2001); *see generally Doe on Behalf of Doe v. Grindr*, LLC, 2023 WL 7053471, at *2 (M.D. Fla. Oct. 26, 2023) (holding that a defendant is treated as a publisher when a plaintiff's claim is "inextricably linked" to a publication decision). Ballentine's Amended Complaint is therefore at odds with itself: either TaskUs' alleged review did not cause Ballentine's injuries, or TaskUs assisted with a protected editorial decision. Either way, Ballentine's claims fail.

followed Meta's content policies throughout the review process, FAC ¶ 111, and ultimately concluded Ballentine's content was "objectionable" under those policies, 47 U.S.C. § 230(c)(2)(A). The Amended Complaint does not allege otherwise, and Ballentine's claims against TaskUs should be dismissed. *See Republican Nat'l Comm. v. Google, Inc.*, 2023 WL 5487311, at \*5–6 (E.D. Cal. Aug. 24, 2023) (dismissing claims of bad faith where factual allegations did "not rise above the speculative level").

Affording CDA protection to third-party content-moderation services follows the congressional goal of "encourag[ing] service providers to self-regulate the dissemination of offensive material over their service." *M.H. v. Omegle.com, LLC*, 2022 WL 93575, at \*6 (M.D. Fla. Jan. 10, 2022), *aff'd sub nom. M.H. on behalf of C.H. v. Omegle.com LLC*, 122 F.4th 1266 (11th Cir. 2024). This Court has explained that the CDA "establish[es] broad federal immunity." *Roca Labs, In*c., 140 F. Supp. 3d at 1319. This liberal construction allows "computer service providers to establish standards of decency without risking liability for doing so." *Omegle.com*, 2022 WL 93575 at \*6. TaskUs' alleged moderation efforts are precisely the conduct the CDA protects. And because this lawsuit seeks to hold TaskUs liable for its alleged role in blocking and screening online material, the CDA bars Ballentine's claims.

**D.    Ballentine's Section 1983 and Section 1985(3) Claims Fail for Additional, Independent Reasons**

Even beyond the factual and legal deficiencies described above, Ballentine's Section 1983 and Section 1985(3) claims cannot survive for additional, independent reasons: the Amended Complaint does not plausibly suggest that TaskUs is a state

19

actor or that Meta's termination of Ballentine's account was part of a large-scale conspiracy to discriminate against Ballentine.

### i.    A. TaskUs' Private Review of Ballentine's Account Is Not "State Action" Under Section 1983

Ballentine has not alleged facts to support his Section 1983 claim against TaskUs, either through an alleged equal-protection or procedural-due-process violation. Section 1983 "only provides for claims to redress State action." *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001). A defendant's actions are attributable to the state only if (1) the alleged deprivation of rights was "caused by the exercise of some right or privilege created by the State," and (2) "the party charged with the deprivation . . . may fairly be said to be a state actor." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992).

Neither element is met here. First, Meta did not exercise a state-created right by enforcing its own private community standards though the termination of Ballentine's account. TaskUs' review of Ballentine's account—performed (if at all) under Meta's privately set terms—therefore was also not an exercise of a state-created right. *See Sabeta v. Baptist Hosp. of Miami, Inc.*, 410 F. Supp. 2d 1224, 1244 (S.D. Fla. 2005) ("[T]he specific conduct attributed to [the defendant] arises not from any relationship with the government, but from its own alleged policies.").

Second, TaskUs is not a state actor. TaskUs is three times removed from any direct state conduct: according to the Amended Complaint, vendors make a recommendation to Meta (who retains override authority), FAC ¶¶ 33, 119; Meta

reports any "apparent" CSE violations to NCMEC, FAC ¶ 98; and NCMEC reports those violations to law enforcement, FAC ¶ 75. This attenuated connection cannot support Ballentine's conclusion that vendors like TaskUs are at the "chokepoint between platform enforcement and state investigation," FAC ¶ 82, or that TaskUs was "pervasively entwined with law-enforcement-facing functions such that the state is responsible for the decision," FAC ¶ 162(c).

Further, even if the Amended Complaint alleged that TaskUs had any interaction with law enforcement, courts have made clear in other contexts that mere compliance with reporting requirements is insufficient to transform a private actor into a state actor. *Lindbloom v. Manatee Mem'l Found., Inc.*, 2023 WL 11891890, at *3 (M.D. Fla. Apr. 13, 2023), report and recommendation adopted, 2023 WL 11891892 (M.D. Fla. Nov. 30, 2023) (holding that a hospital which followed its statutory duty is not a state actor under Section 1983); *United States v. Williamson*, 2023 WL 4056324, at *14 (M.D. Fla. Feb. 10, 2023) ("[T]he mere fact that Yahoo has developed protocols to facilitate its interactions with the government" in relation to its duty to report child pornography does not render it a state actor); *United States v. Robinson*, 2025 WL 3039333, at *3 (M.D. Fla. Oct. 31, 2025) (noting in a parenthetical that "a private actor does not become a government agent simply by complying with a mandatory reporting statute"). Ballentine's Section 1983 claim should therefore be dismissed.

21

### ii.    The Complaint Does Not Plausibly Allege a Conspiracy Between Meta and the Vendor Defendants

Ballentine's Section 1985(3) claim also fails because the Amended Complaint does not plausibly allege a conspiracy between Meta and the vendor defendants. Once again, the Amended Complaint has no factual support for this assertion. It claims that, because the number of Meta's CSE enforcement actions exceeds the number of violations Meta reports to NCMEC, Meta must have engaged in discriminatory targeting against him. And because the vendor defendants perform "staff[ed] human review within Meta's enforcement pipeline," they must have made an "agreement" with Meta to participate in that discrimination. FAC ¶ 171.

Ballentine's bare allegation of conspiracy is insufficient to state a claim. According to the Amended Complaint, the vendor defendants collectively employ thousands of reviewers for their partnerships with Meta. FAC ¶¶ 21–23. But "[f]or a conspiracy of the scale alleged by this complaint, one would expect at least some evidentiary facts to have been located and pled." *Kelsey K. v. NFL Enters.*, 254 F. Supp. 3d 1140, 1144 (N.D. Cal. 2017), aff'd, 757 F. App'x 524 (9th Cir. 2018). This stringent standard is both intuitive and pragmatic: "it is only by taking care to require allegations that reach the level suggesting conspiracy that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the discovery process will reveal relevant evidence." *Twombly*, 550 U.S. at 559. Because such allegations are not present here, the Court should dismiss Ballentine's Section 1985(3) claim.

## CONCLUSION

Defendant TASKUS, INC. respectfully requests this Court dismiss with prejudice all claims against TaskUs, and grant any other relief which the Court deems just and proper.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), TaskUs' counsel attempted to confer with Plaintiff by e-mail on March 23, 2026. Although Plaintiff sent other e-mail communications through Yuliya Glazman following TaskUs' attempted conferral, as of the date of filing, Plaintiff did not respond to the conferral e-mail. Undersigned counsel will update this conferral should Plaintiff respond to same.

Dated: March 23, 2026

Respectfully submitted,

*/s/ Stephanie C. Generotti*
Stephanie C. Generotti
Florida Bar No. 112924
stephanie.generotti@ogletree.com
Elizabeth T. Jozsi
Florida Bar No. 119428
elizabeth.jozsi@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK
  & STEWART, P.C.
100 North Tampa Street
Suite 3600
Tampa, FL 33602
Telephone: 813.221.7239
Facsimile: 813.289.6530
Secondary emails:
angie.jackson@ogletree.com
melissa.salazar@ogletree.com
TAMDocketing@ogletree.com
*Attorneys for TaskUs*

23

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 23, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, and sent the foregoing via U.S. Mail to:

Marvelle J. Ballentine
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
Jayballentine@protonmail.com
*Pro se Plaintiff*

*/s/ Stephanie Generotti*
Attorney

24