APR 2 2026 AM8:41
FILED - USDC - FLMD - ORL

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MARVELLE J. "JAY" BALLENTINE,

    *Plaintiff,*

    v.                         Case No. 6:26-cv-00376-AGM-DCI

META PLATFORMS, INC.; ACCENTURE LLP;
TASKUS, INC.; and GENPACT LIMITED.,

    *Defendants.*

**PLAINTIFF'S OPPOSITION TO DEFENDANT**

**ACCENTURE LLP'S MOTION TO DISMISS (Dkt. 29)**

**PREFATORY STATEMENT**

Plaintiff refiles this Opposition pursuant to the Court's March 30, 2026 Order (Dkt. 56). This refiling is made without waiver of Plaintiff's concurrently filed Urgent Motion for Recusal and to Identify Deficiency, Toll Cure Period, and Clarify Service, and without waiver of Plaintiff's concurrently filed Petition for Reassignment to the Chief District Judge. This refiling is further made without waiver of Plaintiff's objections regarding: (1) the unspecified nature of the cited deficiency; (2) the compression of the cure period below the twenty-one days provided by Local Rule 3.01(d); (3) the service defect in Defendant Accenture LLP's Motion to Dismiss (Dkt. 29); (4) the asymmetric enforcement of Local Rules as

documented in the concurrently filed motion; (5) the continued validity of orders entered by Magistrate Judge Norway prior to his recusal; and (6) Plaintiff's protection under Fed. R. Civ. P. 83(a)(2) against loss of rights from nonwillful noncompliance with requirements of form. These objections are preserved for appeal.

## RELIEF REQUESTED

Plaintiff respectfully requests that the Court deny Defendant Accenture LLP's Motion to Dismiss (Dkt. 29) in its entirety. Plaintiff notes that the First Amended Complaint (Dkt. 19) is the operative pleading in this action and that Accenture LLP has not been served the First Amended Complaint. Plaintiff responds on the merits without waiving any objection to the procedural sequence in which the Motion to Dismiss (Dkt. 29) was filed.

## STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should deny Accenture LLP's motion to dismiss where:

1. Accenture's motion depends on at least four factual premises that do not appear in the First Amended Complaint and contradict the FAC's affirmative allegations on every material point;

2. The FAC identifies the specific enforcement act, attributes it to a single Vendor Defendant, invokes Rule 8(d)(2)–(3) for alternative identification, and explains why precise identification is within Defendants' exclusive control;

3. The FAC alleges that Accenture's reviewer was authorized to validate or invalidate Meta's CSE invocation, exercised operational discretion in

conducting final human review, and that the review was a but-for cause of Plaintiff's injuries under *Staub v. Proctor Hospital*, 562 U.S. 411 (2011);

4. The FAC alleges four reinforcing predicates of discriminatory intent: identity visibility at the decision point, temporal proximity between visibility and adverse action, differential treatment of a similarly situated white comparator with a confirmed CSE violation, and Accenture's documented awareness of racial bias in automated moderation systems;

5. The FAC challenges Accenture's enforcement conduct at the human-review stage, not Meta's editorial decision to remove content, and no Eleventh Circuit case holds that Section 230 bars a federal civil rights claim premised on the decision-making process rather than the publication outcome;

6. The FAC alleges that Accenture executed the routing decision determining whether Plaintiff's case entered the NCMEC/CyberTipline workflow or bypassed law enforcement, placing Accenture at the operational gateway between platform enforcement and criminal investigation;

7. The FAC alleges coordinated action within a shared operational structure—shared contracts, shared training, common standard operating procedures, a sequential workflow, race-visible review, and differential restoration outcomes—sufficient to state a claim under 42 U.S.C. § 1985(3) and *Griffin v. Breckenridge*, 403 U.S. 88 (1971); and

8. The informational asymmetry identified throughout this opposition—where the factual predicates for Accenture's defenses are within Accenture's exclusive possession—is curable through ordinary discovery, and dismissal with prejudice for deficiencies a pro se plaintiff cannot cure without access to the

defendant's records is inconsistent with the federal policy favoring amendment.

**PRELIMINARY STATEMENT**

On July 4, 2022, an Accenture reviewer conducting final human review of Plaintiff's Facebook account had Plaintiff's profile photograph and government-issued identification visible on screen. The reviewer affirmed a CSE designation. No CyberTipline report followed. The absence of a CyberTipline report undercuts any claim that Plaintiff's matter involved an apparent child-exploitation violation requiring statutory reporting under 18 U.S.C. § 2258A, and supports the inference that the CSE label was not grounded in an actual reportable determination. In Q3 2022—the same quarter as Plaintiff's enforcement—4,000 CSE designations were reversed through the enforcement pipeline Defendants jointly operated, the highest reversal rate in Meta's documented history. FAC ¶¶ 44–46, 55–56, 70–73.

Accenture's motion responds to a different complaint—one in which reviewers might not have seen identity information, in which the CSE designation might have been legitimate, and in which Accenture's role might have been limited to a non-binding recommendation. The FAC alleges the opposite on each point.

The Court cannot resolve these factual disputes against Plaintiff on a Rule 12(b)(6) record. If the Court relies on Accenture's extra-pleading premises rather than excluding them, Rule 12(d) requires conversion to summary judgment with notice and an opportunity for discovery. Accenture has not requested conversion.

The FAC alleges a race-visible enforcement sequence. Accenture's motion asks the Court to accept an alternative factual account—one the FAC contradicts on every material point. Rule 12(b)(6) does not permit that. The motion should be denied.

4

## I. THRESHOLD: ACCENTURE'S MOTION DEPENDS ON FACTUAL PREMISES NOT FOUND IN THE FAC

At Rule 12(b)(6), the Court accepts well-pled factual allegations as true, draws reasonable inferences in the plaintiff's favor, and does not resolve factual disputes. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). The movant may not introduce factual premises from outside the complaint to defeat pleading sufficiency. *Speaker v. U.S. Dep't of HHS*, 623 F.3d 1371, 1381 (11th Cir. 2010). Accenture's motion depends on at least four factual premises that do not appear in the FAC and, in each case, contradict what the FAC alleges.

### A. "Reviewer Visibility Is Uncertain"

Accenture asserts: "the amended complaint makes clear that Ballentine does not know whether Accenture's reviewers even had access to his photograph." Dkt. 29 at 12. The FAC alleges: "Vendor Defendant personnel performing final-review enforcement had access to account-level identifiers, including profile photos, names, and in some cases government-issued ID images, sufficient to reveal a user's race." FAC ¶ 45. "The CSE designation was affirmed by a vendor reviewer who, during the identity verification process, had full visibility of Plaintiff's Black face through his profile photo and government-issued ID." FAC ¶ 45.

The FAC does not allege uncertainty. Accenture derives "uncertainty" from the prayer for relief, which seeks disclosure of reviewer visibility practices. A request for injunctive transparency does not retract a factual allegation. At Rule 12, the FAC's affirmative allegation of visibility controls.

### B.    "Accenture Could Only Issue a Recommendation"

Accenture asserts it "lacked authority to disable his account" and "the most it could do was issue a recommendation for action." Dkt. 29 at 10. The FAC alleges the reviewer was "authorized to validate or invalidate Meta's invocation of its Child Sexual Exploitation (CSE) policy." FAC ¶ 55. Accenture "exercised operational discretion in conducting final human review." FAC ¶ 112.

"Validate or invalidate" is binary decisional authority. The FAC does not use the word "recommendation." The 8,100 CSE enforcement reversals through human review in 2022 (FAC ¶ 70) prove the pipeline produced different outcomes in different cases. At Rule 12, the FAC's characterization of the reviewer's authority controls.

### C.    "Plaintiff's Content Violated an Unidentified 'Other Community Standard'"

Accenture asserts: "the Court can infer from the amended complaint that Ballentine's account was terminated for non-discriminatory reasons." Dkt. 29 at 15. The motion invokes "a legitimate violation of another community standard unrelated to CSE"—a formulation that first appeared in Accenture's second MTD in the NDCA action and has never been accompanied by identification of any content, any standard, or any factual basis. The FAC alleges: "No content has been identified. No standard has been cited. No factual basis has been provided." FAC ¶ 8.

An "obvious alternative explanation" within the meaning of *Iqbal* must be inferable from the complaint's own factual allegations. *Doe v. Samford Univ.*, 29 F.4th 675, 686 (11th Cir. 2022). An explanation that requires the Court to accept

a community-standard violation that has never been identified—in any filing, in any court, across three separate actions—is not "obvious." It is an unpleaded, undefined, defendant-controlled hypothetical. The FAC alleges no violation existed. That allegation is accepted as true at this stage.

### D. "Accenture 'Concluded Ballentine's Content Was Objectionable'"

Accenture asserts it "acted in accordance with Meta's content policies throughout the review process . . . and ultimately concluded Ballentine's content was 'objectionable.'" Dkt. 29 at 20. This is an affirmative factual assertion about what Accenture's reviewer actually concluded during the July 4, 2022 review. The FAC does not allege this. The FAC alleges the reviewer affirmed a baseless CSE invocation after viewing Plaintiff's identity. What the reviewer actually concluded, what content was before the reviewer, and what policies the reviewer applied are within Accenture's exclusive possession. This is not a premise the Court can accept on a Rule 12(b)(6) record.

Each of the foregoing premises is a factual assertion Accenture asks the Court to accept on a record that consists solely of the FAC. Rule 12(b)(6) does not permit this. *Chaparro*, 693 F.3d at 1337. The Court cannot resolve these disputes against Plaintiff on a Rule 12(b)(6) record. If the Court relies on any of these extra-pleading premises rather than excluding them, Rule 12(d) requires conversion to summary judgment with notice and an opportunity for discovery. Accenture has not requested conversion.

### II. THE FAC IS NOT A SHOTGUN PLEADING—RULE 8(d) PERMITS ALTERNATIVE IDENTIFICATION

## A.    Accenture's Argument

Accenture asserts the FAC "improperly assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions," citing *Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021), and *Lyles v. Sch. Dist. of Osceola Cnty.*, 2023 WL 8437717, at *1 (M.D. Fla. Feb. 2, 2023). Accenture also highlights a purported inconsistency between FAC ¶ 171 (alleging all Vendor Defendants "joined and acted in furtherance" of a conspiracy) and FAC ¶ 175 (alleging "a single Vendor Defendant" reviewed Plaintiff's account). Dkt. 29 at 9.

## B.    The FAC Does Two Distinct Things, and Accenture Conflates Them

FAC ¶ 175 attributes the specific July 4, 2022 enforcement act—the race-visible final review and affirmation of the CSE designation—to a single Vendor Defendant. FAC ¶ 171 separately alleges that all Vendor Defendants joined the broader conspiracy through the operational enforcement pipeline they collectively staffed. These are not inconsistent allegations. Paragraph 175 pleads execution of a specific act. Paragraph 171 pleads agreement within a shared operational structure. Accenture conflates them. They are structurally distinct.

## C.    Barmapov Is Distinguishable

*Barmapov* involved undifferentiated group pleading—identical acts attributed to all defendants without distinction. The FAC does the opposite. It identifies the act (July 4, 2022 final review), attributes it to one actor (a single Vendor Defendant), and explains why precise identification is not possible pre-discovery: "The identity of the specific Vendor Defendant who conducted

8

Plaintiff's July 4–5, 2022 final review is within Defendants' exclusive possession." FAC ¶ 47. The FAC then specifies the categories of records that will resolve identification: "review-session telemetry, queue-assignment records, and tool-access logs." Id.

The Eleventh Circuit's shotgun-pleading doctrine identifies four categories. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). The FAC falls into none of them. It does not re-adopt every preceding paragraph indiscriminately into each count. It does not assert multiple claims against multiple defendants without differentiating which defendant is responsible for which act. The FAC identifies the act, attributes it to one actor, invokes Rule 8(d)(2)–(3) for alternative identification, and explains why the information necessary for precise identification is within defendants' exclusive control. That is textbook alternative pleading.

### D.    The Consequence

If the Court concludes it cannot evaluate the claims without knowing which Vendor Defendant reviewed Plaintiff's account, the remedy is discovery—not dismissal. The queue-assignment records, tool-access logs, and review-session telemetry that would resolve identification are in Defendants' possession. Dismissal with prejudice for a pleading deficiency that the plaintiff cannot cure without information the defendant controls is inconsistent with Rule 8's notice-pleading standard.

## III.   ACCENTURE'S DISCRETIONARY AFFIRMATION IS A BUT-FOR CAUSE OF PLAINTIFF'S INJURIES

Accenture argues it cannot be the but-for cause of Plaintiff's injuries because it "lacked authority to disable his account" and could only "issue a recommendation." Dkt. 29 at 10. *Staub v. Proctor Hospital* forecloses this argument. In *Staub*, the Supreme Court held that "if a supervisor performs an act motivated by [discriminatory] animus that is intended by the supervisor to cause an adverse . . . action, and if that act is a proximate cause of the ultimate . . . action, then the employer is liable." 562 U.S. 411, 422 (2011). The subordinate's recommendation need not be the final decision. It need only be a proximate cause of the adverse action. Id. at 420–22.

The FAC alleges a vendor reviewer conducted final human review, exercised operational discretion, and affirmed a CSE designation that Meta then ratified. FAC ¶¶ 55, 112, 142. That is the configuration addressed in Staub: a biased subordinate determination adopted by a decision-maker with independent authority. Accenture's motion does not cite Staub. It does not distinguish Staub. It does not acknowledge Staub.

Accenture's own background section confirms the causal chain the FAC alleges. The motion states: "On Meta's request, a human moderator at either Accenture, TaskUs, or Genpact reviewed Ballentine's account. After the review, Meta terminated Ballentine's account." Dkt. 29 at 5. Meta flagged. A vendor reviewed. Meta terminated after the review. On Accenture's own telling, the vendor review is a causal step between the initial flag and the termination. If the review had no causal significance, Accenture would not have recited it in its own factual narrative. Staub holds that a biased recommendation adopted by a decision-maker with independent authority is a proximate cause of the adverse

10

action. 562 U.S. at 420–22. Accenture's motion describes the configuration Staub addresses—and does not cite, distinguish, or acknowledge Staub.

Accenture asserts the FAC's characterization of the reviewer's authority as "validate or invalidate" is contradicted by the FAC's own allegations that Meta retained override authority. Dkt. 29 at 10. Those are competing factual narratives. The FAC alleges the reviewer exercised discretionary authority within the pipeline. Accenture asserts the reviewer's role was ministerial. The Court cannot resolve this dispute on the pleadings. If the Court relies on Accenture's extra-pleading characterization rather than excluding it, Rule 12(d) requires conversion. Accenture has not requested conversion.

Accenture argues the FAC's own sequence—Meta flags, vendor reviews under Meta's training, Meta ratifies—shows the vendor's review was ministerial. Dkt. 29 at 9–10. The FAC alleges the opposite. The reviewer was "authorized to validate or invalidate" the CSE invocation. FAC ¶ 55. Accenture "exercised operational discretion in conducting final human review of platform policy violations and edge cases." FAC ¶ 112. The fact that Meta set policies and provided training does not eliminate the reviewer's independent causal contribution any more than the existence of workplace policies eliminates a subordinate's liability for discrimination carried out under those policies. *Staub*, 562 U.S. at 420–22. The 8,100 CSE enforcement reversals through human review in 2022 (FAC ¶ 70) demonstrate the pipeline produced different outcomes depending on reviewer judgment. If the reviewer always affirmed, no reversal would ever occur. The pipeline's reversal rate proves reviewer discretion existed and was outcome-determinative.

11

## IV. IDENTITY VISIBILITY, TEMPORAL PROXIMITY, COMPARATOR TREATMENT, AND KNOWN BIAS ESTABLISH DISCRIMINATORY INTENT

Accenture argues the FAC does not plausibly allege discriminatory intent. Dkt. 29 at 11–16. The FAC alleges four reinforcing predicates. Taken together, they cross the plausibility threshold under *Iqbal,* 556 U.S. at 678.

### A.    Identity Visibility at the Decision Point

The FAC alleges the reviewer had Plaintiff's profile photograph and government-issued identification visible during the final review. FAC ¶ 45. The enforcement outcome was affirmed within hours of that visibility. FAC ¶ 56. Visibility of race at the moment of an adverse decision is a recognized predicate for discriminatory-intent analysis. Accenture does not dispute visibility; it disputes whether its reviewer was assigned to the case. That is a factual question the Court cannot resolve on these pleadings.

### B.    Temporal Proximity

The FAC alleges permanent account termination occurred within hours of Plaintiff's submission of identity verification. FAC ¶ 56. The temporal proximity between visibility of Plaintiff's race and the adverse action supports an inference of discriminatory motive at the pleading stage.

### C.    Comparator Treatment

Accenture argues Plaintiff's comparators are not similarly situated. Dkt. 29 at 13–14. The FAC alleges Steven Ertelt, a white user, was flagged under the same CSE policy as Plaintiff. FAC ¶ 64. Ertelt submitted a reinstatement demand through counsel and was restored to full platform access. *Id.* Plaintiff, a Black user

flagged under the same CSE policy, submitted a formal reinstatement demand on April 22, 2025. Meta constructively denied it. *Id.* Ertelt and Plaintiff were flagged under the identical policy, processed through the same enforcement apparatus, and submitted parallel demands. The only variable the FAC identifies between their outcomes is race. That comparison supports an inference of discriminatory intent at the pleading stage.

COMP-1 reinforces the inference. COMP-1, a white user whose content Meta confirmed violated its CSE policy, received only a temporary suspension and was restored. FAC ¶¶ 71–74. That a user with a confirmed CSE violation was restored while Plaintiff—with no confirmed violation—was permanently excluded further demonstrates the discretionary and differential character of the enforcement pipeline. The FAC's claim of discriminatory intent does not depend on any single comparator. The comparator evidence reinforces the other three predicates—identity visibility, temporal proximity, and known bias—and the reversal statistics. Whether the comparisons hold under full factual development is a question for summary judgment, not a motion to dismiss. *Horton v. Beacon Woods East*, 2025 WL 3089014, at *6 (M.D. Fla. Nov. 5, 2025).

### D.    Known Bias in Automated Systems

The FAC alleges Accenture was aware that "automated models can be 'wrong' more often for some groups." FAC ¶ 46. Awareness of a known risk of racial bias in the systems feeding the human-review queue is relevant to the plausibility of discriminatory intent, particularly when combined with the other three predicates.

### E.    Accenture's "Obvious Alternative Explanation" Fails

Accenture invokes *Doe v. Samford University*, 29 F.4th 675, 686 (11th Cir. 2022), for the proposition that the Court may infer "obvious alternative explanations" from the complaint. Dkt. 29 at 15. An obvious alternative explanation must be apparent from the factual allegations in the complaint. *Samford*, 29 F.4th at 686. Accenture's "alternative" is that Plaintiff violated some unidentified community standard unrelated to CSE. Dkt. 29 at 15–16. That is not an obvious alternative explanation. It is an unpleaded, undefined, defendant-controlled hypothetical. Accenture has never identified the content. Accenture has never identified the standard. Accenture has never identified the factual basis. Across three separate actions, two courts, and eight filings, no defendant has ever stated what Plaintiff did wrong. An "obvious" alternative explanation that the party best positioned to supply it has failed to articulate in over a year of litigation is not obvious. It is speculation.

**F.    Rule 8 Does Not Require Plaintiff to Plead the Defendant's Evidence**

Accenture's repeated insistence that Plaintiff has not described "the content he allegedly posted" (Dkt. 29 at 6, 14) misidentifies the pleading obligation. Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Nothing in Rule 8 requires a plaintiff to plead the defendant's evidence. The FAC alleges no violation existed (FAC ¶ 8), no report was filed (FAC ¶ 56), and no law enforcement contact has occurred in over three years (FAC ¶ 8). If those allegations are true—and they must be accepted as true—the content of Plaintiff's posts is irrelevant to plausibility. The content becomes relevant at

summary judgment or trial. At Rule 12, the FAC's allegation of non-violation controls.

### G.    Accenture's "Eight Complaints" Characterization

Accenture counts "eight complaints." Dkt. 29 at 2, 6, 14. The actual count of distinct civil actions is three. The motion inflates the number by counting amendments as separate complaints. The Federal Rules contemplate and encourage amendment. Fed. R. Civ. P. 15(a). Counting an amended pleading as a separate lawsuit is a rhetorical device, not a legal argument. The Court should disregard it.

## V.  SECTION 230 DOES NOT IMMUNIZE RACE-VISIBLE ENFORCEMENT CONDUCT

### A.    The Claims Do Not Treat Accenture as a Publisher

Section 230(c)(1) provides: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The operative question is whether the FAC seeks to hold Accenture liable in its capacity as a publisher of Plaintiff's content. It does not.

The FAC challenges Accenture's own enforcement conduct at the human-review stage: race-visible decision-making, discretionary affirmation of a baseless CSE invocation, and routing through a non-report workflow. FAC ¶¶ 44–46, 55–56, 112, 142. These are allegations about the process by which an enforcement decision was made—not about the decision to publish or remove third-party content. Section 230 immunizes the what—the editorial decision to remove

15

content. It does not immunize the how—the discriminatory process by which the decision was reached.

Every case Accenture cites involves a plaintiff who sought to hold the defendant liable for removing content from a platform. See *Mezey v. Twitter, Inc.*, 2018 WL 5306769 (S.D. Fla. July 19, 2018) (challenge to account suspension); *Elansari v. Meta, Inc.*, 2024 WL 163080 (3d Cir. Jan. 16, 2024) (same); *King v. Facebook, Inc.*, 572 F. Supp. 3d 776 (N.D. Cal. 2021) (same). The FAC does not challenge the removal of content. It challenges the motive and process behind an enforcement determination made by a vendor reviewer who was looking at Plaintiff's Black face at the moment of decision. No Eleventh Circuit case has held that Section 230 bars a federal civil rights claim premised on the decision-making process rather than the editorial outcome.

## B.    Accenture's Footnote 7 Catch-22 Fails

Accenture argues the FAC is self-contradicting: "either Accenture's alleged review did not cause Ballentine's injuries, or Accenture assisted with a protected editorial decision." Dkt. 29 at 19 n.7. The dichotomy is false. The FAC alleges Accenture caused injury through a discriminatory enforcement decision. Civil rights liability attaches to the discriminatory motive, not the publication outcome. A vendor may participate in a content-moderation workflow and simultaneously violate federal civil rights law through racially motivated decision-making within that workflow. If Accenture's reading were correct, any vendor could engage in racial discrimination with impunity so long as the discrimination occurred during content review. Congress did not enact Section 230 for that purpose.

**C.    Section 230(c)(2) Good Faith Cannot Be Resolved on These Pleadings**

Even if the Court concludes Section 230(c)(1) is potentially applicable, the claims survive under Section 230(c)(2)'s good-faith requirement. The litigation-position chronology undermines any presumption of good faith at this stage. On October 16, 2025, Accenture filed its first MTD in the NDCA action asserting "a legitimate community standards violation by Ballentine." On October 24, 2025, Plaintiff requested clarification that Accenture did not contend Plaintiff violated child-protection laws. On October 28, 2025, Accenture's counsel stated the argument "expressly accepts as true" the complaint's assertion of no CSE violation and represented that the forthcoming filing would "include language reinforcing this point." On October 31, 2025, Accenture filed a second MTD changing "a legitimate community standards violation by Ballentine" to "a legitimate violation of another community standard unrelated to CSE"—without identifying any content, any standard, or any factual basis. Whether this sequence reflects good faith within the meaning of § 230(c)(2) is a factual question the Court cannot resolve on the pleadings. See *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1052–53 (9th Cir. 2019) (reversing dismissal where allegations of pretext defeated (c)(2) immunity at Rule 12). The Court cannot resolve the good-faith question against Plaintiff on a Rule 12(b)(6) record. If the Court relies on Accenture's extra-pleading assertion of good faith rather than excluding it, Rule 12(d) requires conversion. Accenture has not requested conversion.

17

## VI. ACCENTURE'S ROUTING FUNCTION IS PROSECUTORIAL SCREENING, NOT REPORTING COMPLIANCE

### A.    The Eleventh Circuit's State-Action Framework

Section 1983 requires that the alleged deprivation be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). The Eleventh Circuit recognizes four alternative tests: (1) public function; (2) state compulsion; (3) nexus/joint action; and (4) pervasive entwinement. *Focus on the Family, Inc. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003) (citing *Lugar*). The FAC invokes (3) and (4). Plaintiff need prevail on only one.

### B.    Primary Theory: Discretionary Screening Within a Statutory Framework

The FAC does not allege mere compliance with 18 U.S.C. § 2258A. It alleges discretionary screening within a statutory regime that determines which cases enter state criminal processes.

The FAC alleges: A Vendor Defendant executed the routing decision that determined whether Plaintiff's case entered the NCMEC/CyberTipline workflow—triggering mandatory law enforcement notification under 18 U.S.C. § 2258A—or bypassed law enforcement entirely through an alternative workflow. FAC ¶¶ 45–46. This routing decision placed the Vendor Defendant "at the chokepoint between platform enforcement and criminal investigation." FAC ¶ 46.

State ICAC task forces investigate what Meta reports. They cannot investigate what Meta withholds. FAC ¶¶ 78–80. The Vendor Defendant's routing decision is the operational gateway. Cases routed to the NCMEC workflow triggered state law enforcement review. Cases routed to the alternative workflow

18

did not. FAC ¶ 85. That is not compliance with a reporting obligation. It is the exercise of discretion over which cases enter the state criminal pipeline.

*Lugar* holds that private conduct is fairly attributable to the state when the deprivation results from the exercise of a right or privilege created by the state and the party charged with the deprivation may fairly be said to be a state actor. 457 U.S. at 937. *Dennis v. Sparks* holds that willful participation in joint activity with state officials satisfies § 1983's color-of-law requirement. 449 U.S. 24, 27–28 (1980). The FAC alleges Defendants' routing decision and Meta's reporting determination jointly selected which cases entered the prosecutorial pipeline. FAC ¶¶ 87–89. That is willful participation in joint activity with state agencies—the agencies that depend on those routing decisions for case origination.

## C.    The Compliance Cases Are Distinguishable

Accenture cites three cases for the proposition that compliance with reporting requirements does not create state action. Dkt. 29 at 22–23. Each is distinguishable on the same ground.

*Lindbloom v. Manatee Mem'l Found., Inc.*, 2023 WL 11891890, at *3 (M.D. Fla. Apr. 13, 2023): A hospital acted in accordance with its statutory duty. The hospital reported. It did not decide whether to report.

*United States v. Williamson*, 2023 WL 4056324, at *14 (M.D. Fla. Feb. 10, 2023): Yahoo developed protocols to facilitate interactions with the government in relation to its reporting duty. Yahoo reported. It did not screen cases for prosecution.

*United States v. Robinson,* 2025 WL 3039333, at *3 (M.D. Fla. Oct. 31, 2025): A private actor complied with a mandatory reporting statute. The actor reported. It did not exercise discretion over which cases reached law enforcement.

In each case, the private actor reported suspected violations. The FAC does not allege that Accenture reported. It alleges Accenture decided whether to route Plaintiff's case toward law enforcement—and decided not to, while simultaneously affirming a CSE designation and permanently terminating the account. FAC ¶¶ 56, 82–85, 87. That is the distinction between compliance and screening. The compliance cases do not address it because they did not involve it.

### D.    Entwinement as a Fact-Bound Alternative

Alternatively, the FAC pleads pervasive entwinement sufficient to attribute Accenture's conduct to the state. *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 298–302 (2001). *Brentwood* holds that whether private conduct is attributable to the state is a "necessarily fact-bound inquiry." Id. at 298.

The FAC alleges: Meta directly trained Accenture reviewer teams, providing instruction on Meta's policies and review procedures. FAC ¶ 109. Accenture reviewers used Meta-provided account-review tools. FAC ¶ 112. Meta conducted weekly calls, regular site visits, and monthly and quarterly business reviews with its moderation vendors. FAC ¶ 108. Meta issued standard operating procedures, quality assurance protocols, and policy updates to each Vendor Defendant. FAC ¶ 108. Accenture dedicated approximately 5,800 reviewers exclusively to Meta's platform review queues. FAC ¶ 109.

These allegations describe a vendor that uses the platform operator's tools, follows the platform operator's procedures, processes the platform operator's queues, and operates under the platform operator's supervision. Whether this operational integration constitutes entwinement sufficient to attribute the vendor's conduct to the state is a fact-bound inquiry the Court cannot resolve on the pleadings. *Brentwood*, 531 U.S. at 298–302. Accenture's motion does not address entwinement. Dkt. 29 at 21–23. Whether operational integration constitutes entwinement is a fact-bound question the Court cannot resolve against Plaintiff on a Rule 12(b)(6) record. If the Court relies on extra-pleading material to do so, Rule 12(d) requires conversion. Accenture has not requested conversion.

### E.    Summary

The FAC alleges state action under two independent theories: (1) joint action through discretionary screening within the § 2258A framework, and (2) pervasive entwinement through operational integration into Meta's enforcement pipeline. Accenture's motion addresses only the general proposition that reporting compliance is insufficient. It does not address the screening theory. It does not address entwinement. Plaintiff need survive on only one theory. The motion should be denied as to § 1983.

## VII. THE OPERATIONAL ENFORCEMENT PIPELINE STATES A § 1985(3) CLAIM

### A.    Elements and Standard

Section 1985(3) requires: (1) a conspiracy; (2) to deprive the plaintiff of equal protection or equal privileges and immunities; (3) an overt act in furtherance of the conspiracy; and (4) resulting injury—together with class-based,

21

invidiously discriminatory animus. *Griffin v. Breckenridge,* 403 U.S. 88, 101–03 (1971); *Chua v. Ekonomou,* 1 F.4th 948, 955 (11th Cir. 2021). These are Rule 8 allegations judged under *Twombly/Iqbal* plausibility. Direct proof of an agreement is not required; agreement may be inferred from circumstantial evidence. *Twombly,* 550 U.S. at 556–57.

### B.    Plus Factors Establishing Agreement

The FAC does not allege a clandestine agreement. It alleges an operational one. The following circumstantial facts, taken together, permit an inference of concerted action within the meaning of § 1985(3):

(a) Shared contracts: Each Vendor Defendant entered into a contract with Meta to staff enforcement queues. FAC ¶¶ 42, 102–106.

(b) Shared training: Meta directly trained Accenture reviewer teams on Meta's policies and review procedures. FAC ¶ 109.

(c) Common SOPs: Meta issued standard operating procedures, quality assurance protocols, and policy updates to each Vendor Defendant from California. FAC ¶ 108.

(d) Sequential workflow: Meta flags → Vendor Defendant conducts final human review → Vendor Defendant affirms or invalidates → Meta ratifies. FAC ¶¶ 42, 55–56.

(e) Race-visible review at the decision point: The reviewer had Plaintiff's profile photograph and government-issued identification visible during review. FAC ¶¶ 44–45.

(f) Differential restoration outcomes: During Q3 2022, the very quarter of Plaintiff's enforcement, 4,000 CSE designations were reversed through the

pipeline Defendants jointly operated—the highest reversal rate in Meta's documented history. Yet Plaintiff, with no confirmed violation, remained permanently excluded. FAC ¶¶ 70–73. COMP-1, a white user with a confirmed CSE violation, was restored. FAC ¶¶ 73–74. Steven Ertelt, a white user flagged under the same CSE policy, was restored after submitting a demand through counsel; Plaintiff's parallel demand was denied. FAC ¶ 64.

These are not parallel acts by unrelated entities. They are coordinated steps within a shared operational structure that produced a specific discriminatory outcome. *Twombly*, 550 U.S. at 556–57.

## C.    Kelsey K. Is Distinguishable

Accenture cites *Kelsey K. v. NFL Enterprises*, 254 F. Supp. 3d 1140, 1144 (N.D. Cal. 2017), for the proposition that "for a conspiracy of the scale alleged . . . one would expect at least some evidentiary facts." Dkt. 29 at 23. *Kelsey K.* involved a mass conspiracy theory with no operational connection between the alleged conspirators and the specific plaintiff. Here, the FAC alleges concrete operational structure—a shared enforcement pipeline through which Plaintiff's specific account was processed—and a specific enforcement event on a specific date. That is not a free-floating enterprise-scale conspiracy. It is a coordinated workflow that produced a discriminatory outcome in Plaintiff's case.

## D.    Overt Act and Injury

The overt act is the affirmation of the CSE designation during the July 4–5, 2022 final human review. FAC ¶¶ 55–56. The resulting injuries include permanent loss of Plaintiff's advertising account, loss of pending RV service requests, loss of

access to educational materials, and loss of the ability to acquire customers through the platform. FAC ¶¶ 63–65.

### E.    Animus

The class-based, invidiously discriminatory animus required by § 1985(3) is established by the four reinforcing predicates set forth in Section IV, supra, and incorporated here by reference.

## VIII.  ACCENTURE'S FACT-BOUND ASSERTIONS REQUIRE DISCOVERY, NOT DISMISSAL

The factual disputes identified in Sections I, III, V, and VI cannot be resolved on a Rule 12(b)(6) record. Whether the reviewer saw Plaintiff's identity, whether the reviewer exercised independent discretion, what content was before the reviewer, and whether Accenture's routing decision placed it at the gateway to state criminal processes are questions of fact within Accenture's exclusive possession. The Court should permit discovery to proceed.

## CONCLUSION

Accenture asks this Court to accept its version of what happened on July 4, 2022. The FAC alleges the opposite on every material point. At Rule 12(b)(6), the FAC's allegations control.

The motion depends on factual premises not found in the FAC: that reviewer visibility is uncertain, that Accenture merely recommended, that Plaintiff violated an unidentified community standard, and that Accenture concluded Plaintiff's content was objectionable. None of these premises appears in the operative complaint. Each contradicts what the FAC alleges. The Court cannot resolve these disputes on the pleadings.

24

Accenture's motion argues against a pleading Plaintiff did not file. Deny the motion in full.

Date: March 19, 2026

Respectfully submitted,

Marvelle J. Ballentine
Plaintiff, *pro se*
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com

25