# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

April 15, 2026

Marvelle J. Ballentine
7862 W IRLO BRONSON MEMORIAL HWY #82
KISSIMMEE, FL 34747

Appeal Number:  26-11229-F
Case Style:  In re: Marvelle Ballentine
District Court Docket No:  6:26-cv-00376-AGM-DCI

## PETITION FOR WRIT DOCKETING NOTICE

Your petition for a writ of mandamus, a writ of prohibition, or an extraordinary writ has been filed.

Please use the appeal number for all filings in this Court.

Docketing Fee
The docketing fee has not yet been paid to the clerk of this court. Pursuant to 11th Cir. R. 42-1(b), this petition will be dismissed without further notice unless, within 14 days after the date of this letter, you (i) pay the docketing fee to the clerk of this court **or** (ii) file in this court a Motion for Permission to Appeal In Forma Pauperis with Affidavit, which is available on the Court's website.

Web-Based CIP
Only parties represented by counsel must complete the web-based Certificate of Interested Persons and Corporate Disclosure Statement (CIP). Counsel must complete the web-based CIP, through the Web-Based CIP link on the Court's website, on the same day the CIP is first filed. See 11th Cir. R. 26.1-1(b).

Obligation to Notify Court of Change of Addresses
Each pro se party and attorney has a continuing obligation to notify this Court of any changes to the party's or attorney's addresses during the pendency of the case. See 11th Cir. R. 25-7.

Clerk's Office Phone Numbers
| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

PRO-2B Mandamus deficiency letter

No. _____



# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

In re MARVELLE J. BALLENTINE,
Petitioner.

## ON PETITION FOR A WRIT OF MANDAMUS TO THE
### UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF FLORIDA

Relates to:

Case No. 6:26-cv-00376-AGM-DCI
Case No. 6:26-cv-00286-AGM-DCI
Case No. 5:26-cv-00213-AGM-PRL

## PETITION FOR WRIT OF MANDAMUS

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Petitioner Marvelle J. Ballentine, proceeding pro se, certifies that the following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this petition, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of a party's stock, and other identifiable legal entities related to a party:

- Accenture LLP — Defendant in Case Nos. 6:26-cv-00376 and 5:26-cv-00213
- Accenture plc — Indirect parent corporation of Accenture LLP; Accenture LLP is an indirect wholly-owned subsidiary of Accenture plc (publicly traded; NYSE: ACN)
- Anderson, Devin S. — Defendant in Case No. 6:26-cv-00286; counsel of record for Accenture LLP in Case No. 6:26-cv-00376 (admitted pro hac vice)
- Ballentine, Marvelle J. — Petitioner, proceeding pro se

2

- Blackstone Inc. — Beneficial owner, through affiliated investment funds, of ten percent (10%) or more of the common stock of TaskUs, Inc. (publicly traded; NYSE: BX)

- Chapleau, Marianna C. — Defendant in Case No. 5:26-cv-00213; counsel of record for Accenture LLP in Case Nos. 6:26-cv-00376 and 5:26-cv-00213; counsel of record for Devin S. Anderson and Christopher W. Keegan in Case No. 6:26-cv-00286

- Fassbender, Diana Marie — Counsel of record for Genpact Limited in Case No. 6:26-cv-00376; counsel of record for Meta Platforms, Inc. in Case Nos. 6:26-cv-00376 and 6:26-cv-00286

- Generotti, Stephanie — Counsel of record for TaskUs, Inc. in Case No. 6:26-cv-00376 (Ogletree, Deakins, Nash, Smoak & Stewart, P.C.)

- Genpact Limited — Defendant in Case No. 6:26-cv-00376 (publicly traded; NYSE: G)

- Howard, Marcia Morales — Chief United States District Judge, Middle District of Florida (recipient of petitions for administrative reassignment under 28 U.S.C. § 137 in Case Nos. 6:26-cv-00376 and 6:26-cv-00286)

- Irick, Daniel C. — United States Magistrate Judge, Middle District of Florida (currently assigned to Case Nos. 6:26-cv-00376 and 6:26-cv-00286)

3

- Jozsi, Elizabeth Turner — Counsel of record for TaskUs, Inc. in Case No. 6:26-cv-00376 (Ogletree, Deakins, Nash, Smoak & Stewart, P.C.)

- Keegan, Christopher W. — Defendant in Case No. 6:26-cv-00286

- Kirkland & Ellis LLP — Counsel for Accenture LLP in Case Nos. 6:26-cv-00376 and 5:26-cv-00213; counsel for Devin S. Anderson and Christopher W. Keegan in Case No. 6:26-cv-00286

- Lammens, Philip R. — United States Magistrate Judge, Middle District of Florida (currently assigned to Case No. 5:26-cv-00213)

- Meta Platforms, Inc. — Defendant in Case Nos. 6:26-cv-00376 and 6:26-cv-00286 (publicly traded; NASDAQ: META)

- Moe, Anne-Leigh Gaylord — United States District Judge, Middle District of Florida (currently assigned to Case Nos. 6:26-cv-00376, 6:26-cv-00286, and 5:26-cv-00213)

- Norway, Robert M. — United States Magistrate Judge, Middle District of Florida (formerly assigned to Case No. 6:26-cv-00376; recused under 28 U.S.C. § 455(b)(4) on March 23, 2026)

- Ogletree, Deakins, Nash, Smoak & Stewart, P.C. — Counsel for TaskUs, Inc. in Case No. 6:26-cv-00376

- Orrick, Herrington & Sutcliffe LLP — Counsel for Genpact Limited and Meta Platforms, Inc. in Case No. 6:26-cv-00376; counsel for Meta Platforms, Inc. in Case No. 6:26-cv-00286

4

- Pratt, Jordan Emery — United States District Judge, Middle District of Florida (formerly assigned to Case No. 5:26-cv-00213; entered sua sponte transfer order under Local Rule 1.07(a)(2)(A) on April 1, 2026)

- Sneed, Julie S. — United States District Judge, Middle District of Florida (formerly assigned to Case No. 6:26-cv-00376; entered transfer order under Local Rule 1.07(a)(2)(B) on February 18, 2026)

- Spiwak, Lauren M. — Counsel of record for Devin S. Anderson and Christopher W. Keegan in Case No. 6:26-cv-00286 (Kirkland & Ellis LLP; admitted pro hac vice)

- TaskUs, Inc. — Defendant in Case No. 6:26-cv-00376

**Corporate Disclosure Statement.** Petitioner Marvelle J. Ballentine is a natural person. Petitioner is not a corporation, has no parent corporation, and no publicly held corporation owns any stock in petitioner. Petitioner proceeds pro se and is not represented by counsel.

Date: April 15, 2026

Marvelle J. Ballentine

5

## I.   JURISDICTION AND AUTHORITY

This Court has jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a), and Federal Rule of Appellate Procedure 21(a)(1). The petition concerns pretrial orders of the United States District Court for the Middle District of Florida issued by a district judge and a magistrate judge acting under 28 U.S.C. § 636(b)(1)(A).

Petitioner has served this petition on the respondent judge and all parties to the proceedings below in accordance with FRAP 21(a)(1). A certificate of service is attached.

## II.   INTRODUCTION AND RELIEF REQUESTED

This petition concerns three related civil actions pending in the Middle District of Florida — Case Nos. 6:26-cv-00376, 6:26-cv-00286, and 5:26-cv-00213 — all presently assigned to District Judge Anne-Leigh Gaylord Moe and Magistrate Judge Daniel C. Irick. Petitioner is proceeding pro se. Defendants are represented by Kirkland & Ellis LLP, Orrick Herrington & Sutcliffe LLP, and Ogletree Deakins. The procedural record documented in Section IV reflects a pattern of sua sponte orders directed at petitioner: stricken oppositions to dispositive motions, a deletion directive removing ten filed documents from the docket, a prospective filing restriction, and same-day denial of recusal and intra-district reassignment requests. A

6

defense motion to transfer venue under 28 U.S.C. § 1404(a) is pending. If granted, this Circuit loses mandamus jurisdiction over the orders this petition addresses. The petition seeks ministerial corrections, a service determination, structural reassignment under *United States v. Torkington*, 874 F.2d 1441 (11th Cir. 1989), and a stay of the transfer motion pending resolution.

**Relief Tier 1 — Ministerial**

**A.**    Direct the district court to afford Plaintiff a cure period to file oppositions compliant with the twenty-page limit identified for the first time in the order at Dkt. 79 — the same order that afforded zero days to cure — consistent with the twenty-one-day response period provided by Local Rule 3.01(d).

**B.**    Direct the district court to determine whether Plaintiff's oppositions to the Accenture motion to dismiss (Dkt. 29) and the TaskUs motion to dismiss (Dkt. 48) are being treated as unopposed, and if so, to vacate any such treatment pending the cure period afforded under paragraph A.

**C.**    Direct the district court to determine whether service of Accenture's motion to dismiss (Dkt. 29) was effected on Plaintiff consistent with Federal Rule of Civil Procedure 5(b)(2)(E), and if service was not

7

effected, to direct Accenture to serve the motion by authorized means before any response deadline commences.

### Relief Tier 2 — Structural

**D.**    Reassign Case Nos. 6:26-cv-00376-AGM-DCI and 6:26-cv-00286-AGM-DCI to a district judge and magistrate judge of the Tampa Division of the Middle District of Florida; reassign Case No. 5:26-cv-00213-AGM-PRL to a district judge and magistrate judge of the Ocala Division, vacating the intra-district transfer order entered April 1, 2026 (Case 213, Dkts. 18, 19).

### Stay (Filed as Simultaneous Time Sensitive Motion)

**E.**    Stay all proceedings in Case No. 6:26-cv-00376-AGM-DCI, including the pending motion to transfer venue under 28 U.S.C. § 1404(a) (Dkt. 87), pending resolution of this petition.

8

## III.  ISSUES PRESENTED

**Issue 1 (Ministerial — Cure Period and Deficiency Identification).**
Whether the district court violated Federal Rule of Civil Procedure 83(a)(2) and Middle District of Florida Local Rule 3.01(c) by striking a pro se plaintiff's timely oppositions to two dispositive motions for an unspecified local rule deficiency — imposing a uniform seven-day cure deadline that was two days shorter than the original response period for one motion and seven days shorter for the other — then, after Plaintiff refiled in reliance on orders that did not identify the deficiency, striking the refiled oppositions with zero days to cure upon identifying the deficiency for the first time.

**Issue 2 (Ministerial — Service).** Whether a motion to dismiss is properly before the court where the movant's certificate of service certifies CM/ECF transmission to a pro se plaintiff who is not a registered CM/ECF user, has not consented to electronic service under Federal Rule of Civil Procedure 5(b)(2)(E), and has not been served by any other means reflected on the docket — and where the district court has declined to address the deficiency despite the plaintiff raising it.

**Issue 3 (Structural — Reassignment).** Whether reassignment is warranted under the three-factor test of *United States v. Torkington,* 874 F.2d

9

1441, 1446–47 (11th Cir. 1989), where: (a) every district-level mechanism for structural relief has been exhausted without remedy; (b) a documented pattern of asymmetric procedural treatment is identical across two federal districts over nine months of litigation; and (c) a pending motion to transfer venue, if granted, would divest this Circuit of jurisdiction over the documented procedural defects before any is corrected.

## IV.  STATEMENT OF THE CASE

### A.  How All Three Cases Arrived Before Judge Moe

1.    Three civil actions are pending before Judge Moe. Each arrived by a different procedural path. None originated with Judge Moe except Case No. 286.

**Table 1: Three-Case Convergence**

| Case | Original Assignment | How Plaintiff Reached Moe | Alternative Eliminated |
|---|---|---|---|
| 376 (Civil Rights) | Judge Sneed (Orlando) | Plaintiff filed L.R. 1.07 transfer motion citing related 286 case (Dkt. 5). Granted with Moe's consent (Dkt. 8). | Voluntary — Plaintiff chose consolidation with 286. |
| 286 (Defamation) | Judge Moe / MJ Irick | Direct filing. Original assignment. | None — 286 was first filed. |
| 213 (IIED/ Defamation/ FDUTPA) | Judge Pratt / MJ Lammens (Ocala) | Accenture removed from state court 3/25/26 (Dkt. 1). Plaintiff filed transfer motion to Orlando (Dkt. 9), then withdrew it (Dkt. | Plaintiff withdrew his own transfer motion to preserve an independent assignment. Court |

10

| | | 15). Court denied withdrawn motion as moot (Dkt. 17). On 4/1/26 Judge Pratt sua sponte transferred to Judge Moe under L.R. 1.07(a)(2)(A) (Dkt. 18, 19). | transferred to Moe anyway. |
|---|---|---|---|

2.    After April 1, 2026, all three cases are before Judge Moe and Magistrate Judge Irick. No case remains before an independent judicial officer.

## B.    The NDCA Proceeding: The Transferee Forum

3.    Plaintiff initiated Case No. 3:25-cv-07671-CRB in the Northern District of California on September 9, 2025, before Judge Charles R. Breyer, against the same parties asserting the same claims. The procedural record is documented in the Request for Judicial Notice filed at case inception (Case 376, Dkt. 4, Att. 1) [Exhibit E-1].

**Table 2: Plaintiff's Procedural Requests — NDCA**

| Date | Request | Dkt. | Disposition |
|---|---|---|---|
| Oct. 7, 2025 | Motion to Shorten Time for Initial CMC | 20 | Denied |
| Oct. 7, 2025 | Motion for Preservation Order (Meta) | 21 | Denied w/o prejudice |
| Oct. 7, 2025 | Motion for Preservation Order (Accenture) | 22 | Denied w/o prejudice |
| Oct. 24, 2025 | Request for Sequential Meet-and-Confer | — | Declined by Defendants |

11

| Oct. 28, 2025 | Admin. Motion for Rule 26(f) Scheduling | 36 | Denied with prejudice |
|---|---|---|---|
| Oct. 29, 2025 | Motion to Shorten Time on Admin. Motion | 37 | Denied with prejudice |
| Jan. 29, 2026 | Request for Judicial Notice (Oversight Board) | 56 | No ruling |

4. 0 granted. 5 denied. 1 no ruling. 1 declined by Defendants.

**Table 3: Defendants' Procedural Requests — NDCA**

| Date | Request | Dkt. | Disposition |
|---|---|---|---|
| Nov. 18, 2025 | Stipulation for Extension of Time | 49 | Granted |
| Nov. 19, 2025 | Order on Extension of Reply Deadline | 50 | Granted |
| Nov. 19, 2025 | Vacatur of Case Management Conference | 51 | Granted |

5. 3 granted. 0 denied.

**Table 4: Case Status at Voluntary Dismissal — NDCA**

| Metric | Status |
|---|---|
| Duration | 5+ months |
| Rule 26(f) conference | Never held |
| Discovery | Never opened |
| Case Management Conference | Vacated; never reset |
| Plaintiff motions granted | 0 |
| Defendant requests granted | 3 |

## C.    The MDFL Procedural Record: Case 286

6.    On February 18, 2026 — one week after Plaintiff filed his First Amended Complaint (Dkt. 4) and before any defendant appeared or filed anything — Judge Moe entered a sua sponte Order to Show Cause directing Plaintiff to demonstrate why Case 286 should not be dismissed for failure to sufficiently allege diversity of citizenship under 28 U.S.C. § 1332 (Case 286, Dkt. 11) [Exhibit E-30] [Exhibit B, Dkt. 11]. The response deadline was March 4, 2026. Service on all defendants was completed February 12, 2026 (Dkts. 8–10). Under Rule 12(a)(1)(A)(i), defense responses were due no earlier than March 5, 2026. The Order to Show Cause required Plaintiff to respond one day before any defendant had any obligation to act.

7.    One week later, on February 25, 2026, Magistrate Judge Irick directed Plaintiff to file a Second Amended Complaint by the same March 4 deadline — seven days (Case 286, Dkt. 18) [Exhibit B, Dkt. 18]. Requirements: identify all defendants and citizenship, include all claims and allegations, not reference any prior pleading. The March 4 deadline coincided with the first defense response deadline.

8.    On March 20, 2026, Plaintiff filed his opposition to the Anderson/Keegan motion to dismiss (Case 286, Dkt. 29) [Exhibit E-31]. The

13

opposition was not stricken. No deficiency was identified. No dismissal-warning language was directed at any defendant in Case 286. This filing — same Plaintiff, same magistrate judge — is the structural comparator for the Case 376 strike orders discussed in Section D below.

9.    Between March 18 and March 30, 2026, Kirkland & Ellis filed four documents in Case 286 on behalf of defendants Anderson and Keegan: the motion to dismiss (Dkt. 26), a motion for leave to file a reply (Dkt. 33), a motion to appear pro hac vice (Dkt. 35), and a certificate of compliance with the third-party litigation funding order (Dkt. 38) [Exhibit B, Dkts. 26, 33, 35, 38]. Each certifies service through the CM/ECF system. Plaintiff is not a registered CM/ECF user. Plaintiff has not consented to electronic service. The certificate of service in Dkt. 26 — the motion to dismiss — states: "the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will serve Notice of Filing on all counsel of record." Plaintiff is not counsel. The certificate does not purport to serve unrepresented parties. The certificates in Dkts. 33, 35, and 38 certify CM/ECF transmission to "all unrepresented parties and counsel of record." CM/ECF does not transmit to non-registered users regardless of the certificate's recitation. No order addressed any service deficiency in any of these filings. On April 3, 2026 —

14

one day after Plaintiff filed his § 137 petition and supporting declaration documenting the CM/ECF service deficiency (Case 286, Dkts. 39, 40) — Kirkland & Ellis filed its reply (Dkt. 42) and for the first time served Plaintiff by FedEx. No court order directed the change in service method. Between February 18 and March 30, the court entered a sua sponte Order to Show Cause and a seven-day SAC deadline in response to Plaintiff's own motion — both imposing March 4, 2026 as the operative date. During the same period, defense counsel filed four documents without effecting service on Plaintiff. No order imposed any obligation, deadline, or corrective requirement on any defendant.

### D.   The MDFL Procedural Record: Case 376

#### 1.   *The Magistrate Judge Succession*

10.   Three magistrate judges have been assigned to Case 376 in 53 days.

11.   Magistrate Judge Norway was assigned at filing. Norway entered three substantive orders: denied Plaintiff's early-discovery motion (Dkt. 18); granted Anderson pro hac vice (Dkt. 32); and granted Genpact's extension without conferral (Dkt. 33). Norway recused on March 23, 2026 (Dkt. 45) [Exhibit A, Dkt. 45] under 28 U.S.C. § 455(b)(4) — financial interest

15

in an interested party. Anderson is a named individual defendant in Plaintiff's related case, No. 6:26-cv-00286-AGM-DCI, in which Plaintiff alleges Anderson participated in defamatory conduct. No judicial officer has revisited the pro hac vice order since Magistrate Judge Norway's recusal.

12. Magistrate Judge Irick was assigned on March 23, 2026. First substantive action: On March 24, 2026, Irick denied Plaintiff's Motion for Scheduling Directive Regarding Rule 26(f) Conference and Case Management Report (Dkt. 50; motion filed as Dkt. 39). The motion sought a framework for the Rule 26(f) conference required by the Federal Rules. The identical motion, filed in Case 286 before the same magistrate judge on March 23, 2026 (Case 286, Dkt. 28), has not been ruled on as of the filing of this petition. Magistrate Judge Norway's first substantive action following assignment was also denial of a plaintiff discovery-access motion (Dkt. 18). Every order imposing an obligation, cure deadline, warning, restriction, or sanction entered by Irick has been directed at Plaintiff. No order entered by Irick has imposed any obligation on any defendant.

## 2. *The Three Rounds of Striking*

**Table 5: Cure Period Compression**

16

| Round | Date | Dkt. | Filing Struck | Deficiency Identified | Cure Period | Warning Language |
|---|---|---|---|---|---|---|
| 1 | 3/30/26 | 56 | Opp. to Accenture MTD (Dkt. 40) | "failure to comply with Local Rule 3.01(c)" — no specification | 7 days (4/6/26) | Dismissal (Dkt. 23 quoted) |
| 1 | 3/30/26 | 57 | Opp. to TaskUs MTD (Dkt. 53) | "failure to comply with Local Rule 3.01(c)" — no specification | 7 days (4/6/26) | Dismissal (Dkt. 23 quoted) |
| 2 | 4/9/26 | 79 | Refiled Opps. (Dkts. 63, 64) | Exceeds 20-page limit — first time deficiency identified | Zero | Dismissal (Dkt. 23 quoted) |

13.    Local Rule 3.01(d) provides 21 days to respond to a motion to dismiss. The cure deadline was two days shorter than the original response period for the Accenture motion and seven days shorter for the TaskUs motion. After refiling, the cure period was zero. No party moved to strike. The deficiency was not identified until Round 2 — after Plaintiff had refiled in reliance on the Round 1 orders.

**Table 6: Cure Period Compression — Cross-Case**

| Case | Order | Deadline Imposed | Days Afforded | Defense Deadline Alignment |
|---|---|---|---|---|

17

| 286 | Moe Dkt. 11 (OSC) | March 4, 2026 | 14 | Plaintiff ordered to respond one day before first defense response deadline |
|---|---|---|---|---|
| 286 | Irick Dkt. 18 (SAC order) | March 4, 2026 | 7 | Coincided with first defense response deadline |
| 376 | Irick Dkt. 56 (Accenture opp.) | April 6, 2026 | 7 | Resolved Plaintiff's posture 3 days before Meta's Rule 15(a)(3) deadline |
| 376 | Irick Dkt. 57 (TaskUs opp.) | April 6, 2026 | 7 | Same |
| 376 | Irick Dkt. 79 (refiled opps.) | — | 0 | — |

14.    In Case 286, the SAC deadline (March 4) coincided with the first defense response deadline. Compliance with the SAC order mooted the defense's pending obligation to respond to the prior complaint. In Case 376, the April 6 cure deadline resolved Plaintiff's opposition posture three days before Meta's April 9 deadline under Rule 15(a)(3). On April 9 — the first business day after the cure period expired — Meta filed its motion to dismiss the First Amended Complaint (Dkt. 85), the refiled oppositions were struck with zero days to cure (Dkt. 79), and ten notices were struck and ordered deleted (Dkt. 80). In both instances, compressed deadlines imposed on the pro se Plaintiff aligned with defense deadlines in ways that produced defense-favorable procedural outcomes.

### 3.    The Service Question

18

15.   Accenture's motion to dismiss (Dkt. 29) [Exhibit E-2] was filed March 18, 2026. The certificate of service (Dkt. 29 at 24) certifies CM/ECF transmission "to all unrepresented parties and counsel of record." Plaintiff is not registered for CM/ECF. Plaintiff has never consented to electronic service. Federal Rule of Civil Procedure 5(b)(2)(E) permits electronic service only on a "registered user" or a person who "has consented in writing." Plaintiff is not a registered user under the Middle District of Florida's Administrative Procedures for Electronic Filing and has not consented in writing to electronic service. The docket reflects no other service of Dkt. 29 on Plaintiff.

16.   Genpact's motion for extension (Dkt. 31) [Exhibit E-3] was filed with no certificate of service. The requested relief was granted the next day (Dkt. 33) [Exhibit A, Dkt. 33]. No order has addressed either service deficiency. The identical CM/ECF service deficiency appears across four Kirkland & Ellis filings in Case 286 (Dkts. 26, 33, 35, 38) [Exhibit B, Dkts. 26, 33, 35, 38]. After Plaintiff documented the deficiency in his April 2, 2026 filings, counsel served its next Case 286 filing by U.S. mail for the first time (Dkt. 42, filed April 3, 2026). No court order directed the correction.

### 4.   *Asymmetric Enforcement*

19

## Table 7: Orders Imposing Obligations on Plaintiff — Case 376

| Date | Dkt. | Action |
|------|------|--------|
| 3/11/26 | 23 | Standing order; dismissal-warning language |
| 3/24/26 | 50 | Denied scheduling directive (first substantive action after assignment); identical motion in Case 286 pending without ruling before same MJ |
| 3/30/26 | 56 | Struck opposition; 7-day cure; dismissal warning |
| 3/30/26 | 57 | Struck opposition; 7-day cure; dismissal warning |
| 4/2/26 | 65 | Denied recusal; no reasoning |
| 4/2/26 | 66 | Denied § 137 petition addressed to Chief Judge |
| 4/9/26 | 79 | Struck refiled oppositions; no cure; dismissal warning |
| 4/9/26 | 80 | Struck 10 notices; ordered deletion; imposed filing restriction |

## Table 8: Orders Imposing Obligations on Any Defendant — Case 376

| Date | Dkt. | Action |
|------|------|--------|
| — | — | None |

## Table 9: Filing Deficiencies — Court Action Taken and Not Taken

| Dkt. | Filed By | Filing | Deficiency | Court Action | Judicial Officer |
|------|----------|--------|------------|--------------|------------------|
| 27 | Kirkland & Ellis (Accenture) | Notice of Appearance | Cert. of service certifies CM/ECF to non-registered pro se Plaintiff | None | Moe |
| 29 | Kirkland & Ellis (Accenture) | Motion to Dismiss | Cert. of service certifies CM/ECF to non-registered pro se Plaintiff; service not effected under Rule 5(b)(2)(E) | None | Moe / Norway |

20

| 30 | Kirkland & Ellis (Accenture) | Motion to Appear Pro Hac Vice | Cert. of service certifies CM/ECF to non-registered pro se Plaintiff | None; motion granted (Dkt. 32) | Norway |
| 31 | Orrick (Genpact) | Motion for Extension | No certificate of service filed | None; relief granted next day (Dkt. 33) | Norway |
| 37 | Ogletree Deakins (TaskUs) | Disclosure Statement | Wrong form under L.R. 3.03 | Stricken (Dkt. 47); deficiency identified; no cure deadline; no sanctions threat; no dismissal warning | Moe |
| 38 | Orrick (Genpact) | Notice of Lead Counsel | No certificate of service filed | None | Moe / Irick |
| 40 | Plaintiff | Opp. to Accenture MTD | "Failure to comply with L.R. 3.01(c)" — deficiency unspecified | Stricken and deleted (Dkt. 56); 7-day cure; unopposed treatment threatened; Dkt. 23 warning quoted | Irick |
| 53 | Plaintiff | Opp. to TaskUs MTD | "Failure to comply with L.R. 3.01(c)" — deficiency unspecified | Stricken and deleted (Dkt. 57); 7-day cure; unopposed treatment threatened; Dkt. 23 warning quoted | Irick |
| 54 | Kirkland & Ellis (Accenture) | Motion for Leave to File Reply | Directed to a filing (Dkt. 40) stricken on same date | Denied as moot (Dkt. 56); no deficiency noted | Irick |

17. Nine filings on the docket contain identifiable procedural deficiencies. Seven are defense filings. Two are Plaintiff's filings. Of the seven defense filings, one received corrective action — with the deficiency identified, no cure deadline, and no sanctions threat. Six received no action.

21

Both Plaintiff filings were stricken, deleted, given compressed cure deadlines, threatened with unopposed treatment, and quoted the Dkt. 23 dismissal warning.

18.    The TaskUs disclosure (Dkt. 37) is the control. Judge Moe struck a defendant's filing for failure to comply with a Local Rule. The order (Dkt. 47) [Exhibit A, Dkt. 47] identified the deficiency with specificity: "which requires the use of the standard form from the Clerk or the Court's website." No cure deadline imposed. No warning language included.

### E.    The Recusal Motion and What Followed

#### 1.    The April 2, 2026 Filing Package

19.    On April 2, 2026, Plaintiff filed: (1) a recusal motion (Dkt. 61) [Exhibit E-23] presenting 19 identified appellate issues with supporting tables; (2) a declaration (Dkt. 62) [Exhibit E-24] under 28 U.S.C. § 1746; (3) a petition for administrative reassignment (Dkt. 60) [Exhibit E-22] addressed to Chief Judge Howard under 28 U.S.C. § 137; and (4) a § 351 judicial misconduct complaint filed with this Circuit naming Judge Moe and Magistrate Judge Irick.

#### 2.    Moe's Same-Day Response

22

20.    On the same day, Judge Moe denied both the recusal motion (Dkt. 65) and the § 137 petition (Dkt. 66) by endorsed order, without written reasoning. The recusal motion presented the unspecified briefing deficiency, the compressed cure period, and the unresolved service question; the denial disposed of all three without addressing any. The § 137 petition was addressed to Chief Judge Howard, not Judge Moe; Chief Judge Howard has not acted. A direct email to Chief Judge Howard's chambers [Exhibit E-36] documented the routing irregularity. No response has been received from any source.

### 3.    The Seven-Day Silence (April 2–9)

21.    Between April 2 and April 9, no substantive order issued in Case 376. On April 7, Plaintiff filed ten notices documenting transmissions of correspondence to congressional oversight bodies and federal agencies (Dkts. 69–78) [Exhibit E-12]. On April 8, Magistrate Judge Irick entered a standing order on discovery motions (Dkt. 68) [Exhibit A, Dkt. 68] — a recycled order signed January 2, 2020. The order did not address the unidentified deficiency, the compressed cure period, the unresolved service question, the stricken oppositions, or any pending procedural irregularity.

### 4.    April 9, 2026: Five Filings and Three Orders

22.    On April 9, 2026, the following occurred on the same day.

23

23.    **Dkt. 79:** Struck refiled oppositions (Dkts. 63, 64) for exceeding 20-page limit under Local Rule 3.01(c). No cure period. Dismissal-warning language quoted for the third time. First time deficiency identified with specificity — after Plaintiff had refiled in reliance on Round 1 orders that did not identify it.

24.    **Dkt. 80:** Struck ten notices (Dkts. 69–78). Directed Clerk to delete them. Imposed prospective filing restriction: "Plaintiff shall refrain from filing such notices on the docket of this case." No rule cited. No findings. No prior notice. No opportunity to respond.

25.    **Dkt. 81:** Denied Accenture's motion for leave to file reply as moot — because Dkt. 79 struck the opposition.

26.    **Meta filings:** On the same day, Meta filed its motion to dismiss the First Amended Complaint (Dkt. 85) [Exhibit E-5] and its motion to transfer venue to NDCA (Dkt. 87) [Exhibit E-6], supported by the Allen declaration (Dkt. 88) [Exhibit E-7].

27.    The transfer motion would return the case to the forum documented in Tables 2–4 while three dispositive motions remain briefed only by defendants.

**Table 10: Docket Activity After Recusal Motion Filed (April 2–9, 2026)**

24

| Date | Dkt. | Action | Directed At | Cure Period | Warning |
|------|------|--------|-------------|-------------|---------|
| 4/2/26 | 65 | Denied recusal | Plaintiff | — | — |
| 4/2/26 | 66 | Denied § 137 petition | Plaintiff | — | — |
| 4/9/26 | 79 | Struck refiled oppositions | Plaintiff | Zero | Dismissal (Dkt. 23) |
| 4/9/26 | 80 | Struck 10 notices; deletion; filing restriction | Plaintiff | — | Prospective filing restriction |
| 4/9/26 | 81 | Denied Accenture reply as moot | — | — | — |
| 4/9/26 | 85 | Meta MTD of FAC filed | — | — | — |
| 4/9/26 | 87 | Meta transfer motion filed | — | — | — |

28.    Orders directed at any defendant in this period: None.

## 5.    *Dkt. 80 and the Filing Restriction*

29.    The following paragraphs are presented as part of the Torkington record; this petition does not seek mandamus relief specific to Dkt. 80. The Rule 72(a) objection at Dkt. 89 is the proper exhaustion mechanism and is pending. Dkt. 80 is cited in Section V.C.1 as record evidence of post-notice entrenchment bearing on the Torkington Factor One analysis. Dkt. 80 struck ten notices (Dkts. 69–78), directed the Clerk to delete them, and directed Plaintiff to "refrain from filing such notices on the docket

of this case." The order was entered sua sponte. No party moved to strike. The order cites no rule of procedure.

30. Federal Rule of Civil Procedure 12(f) authorizes striking matter "from a pleading." Notices are not pleadings under Rule 7(a). The order's stated rationale — that the notices "state that no relief is requested" and therefore have "no basis" on the docket — contradicts the Federal Rules, which require or authorize non-relief-seeking filings including corporate disclosure statements (Rule 7.1), notices of deposition (Rule 30(b)(1)), certificates of service (Rule 5(d)), and notices of supplemental authority (MDFL Local Rule 3.01(j)).

31. The prospective directive — "Plaintiff shall refrain from filing such notices" — is substantively a filing restriction. This Circuit has identified five considerations governing any order restricting a litigant's future filings: notice and an opportunity to respond; an individualized finding of frivolousness, harassment, or abuse; a record of prior misconduct supporting the restriction; narrow tailoring; and consideration of lesser measures. *Procup v. Strickland,* 792 F.2d 1069, 1071–74 (11th Cir. 1986) (en banc); *Miller v. Donald,* 541 F.3d 1091, 1096–98 (11th Cir. 2008). Dkt. 80 addresses none of these considerations. The order provides no notice and

26

no opportunity to respond. It makes no finding of frivolousness, harassment, or abuse. It documents no record of prior misconduct. It imposes a categorical prohibition rather than a narrowly tailored restriction. It considers no lesser measure.

32. The notices documented Plaintiff's transmissions of correspondence to members of Congress and federal executive-branch agencies. The order's prospective directive bars Plaintiff from filing court documents that record those transmissions. The order makes no finding that the notices were frivolous, harassing, or abusive, and identifies no prior conduct supporting a categorical prohibition.

33. The deletion directive removes filed documents from the public docket. The common-law right of public access to judicial records extends to pretrial filings. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007). MDFL Local Rule 1.11 governs sealing: it imposes a presumption of public access and requires a necessity finding. Sealing preserves the docket entry and permits later unsealing. Deletion removes all trace of the filing's existence. Dkt. 80 contains no good-cause balancing, no public-access analysis, and no consideration of less-restrictive alternatives.

34. Plaintiff filed a Rule 72(a) objection on April 10, 2026 (Dkt. 89) [Exhibit E-25], with a supporting declaration (Dkt. 90) [Exhibit E-26]. The objection is pending before Judge Moe.

35. If the Rule 72(a) objection is denied, the filing restriction and deletion issues may be raised independently.

36. The Clerk was directed to delete ten filed documents from the docket. If executed, those documents are no longer accessible on PACER and cannot be reviewed by any appellate court. A copy of the Senate Judiciary Committee notice, retrieved from the RECAP Archive, is attached as Exhibit E-12. The nine remaining notices are not submitted as exhibits; their existence, recipients, and transmission dates are attested in the accompanying declaration.

**F.    The Exhaustion Record**

Table 11: District-Level Requests for Structural Relief — Complete

| Date | Filing | Directed To | Relief Sought | Disposition | Reasoning |
|---|---|---|---|---|---|
| 4/2/26 | Recusal Motion (Dkt. 61) | Judge Moe | Recusal under § 455 | Denied same day (Dkt. 65) | None |
| 4/2/26 | § 137 Petition (Dkt. 60) | Chief Judge Howard | Administrative reassignment | Denied same day by Judge Moe (Dkt. 66) | None |

| 4/2–4/10/26 | Email to Chief Judge chambers | Chief Judge Howard | Exercise § 137 authority | No response | — |
|---|---|---|---|---|---|
| 4/2/26 | § 351 Complaint | Eleventh Circuit | Conduct review | Existence confirmed | — |
| 4/10/26 | Rule 72(a) Objection (Dkt. 89) | Judge Moe | Set aside Dkt. 80 | Pending | — |

37. The § 137 petition was denied by the subject of the petition. The recusal motion was denied by the subject of the motion. The Chief Judge has not responded. The Rule 72(a) objection is pending before the judge whose conduct it challenges.

## G. Meta's Motion to Transfer Venue

38. Meta filed its motion to transfer venue on April 9, 2026 — the same day Magistrate Judge Irick struck the refiled oppositions, struck ten notices, ordered their deletion, and imposed a prospective filing restriction. The transferee forum is NDCA. The procedural record of the prior NDCA proceeding is in Tables 2–4. In that proceeding: zero plaintiff motions granted; three defendant requests granted; Rule 26(f) conference never held; discovery never opened; case management conference vacated and never reset. Plaintiff voluntarily dismissed after five months.

29

**Table 12: Structural Requests — Comparative Disposition**

| Requesting Party | Relief Sought | Forum/Recipient | Disposition |
|---|---|---|---|
| Plaintiff | Intra-district transfer (NDCA → MDFL) | NDCA (Judge Breyer) | Never ruled upon; voluntary dismissal after 5 months |
| Plaintiff | Venue diversity in 213 (withdrew transfer motion) | MDFL (Judge Pratt, Ocala) | Sua sponte transferred to Moe after withdrawal |
| Plaintiff | Intra-district reassignment (§ 137) | Chief Judge Howard | Denied by subject judge; Chief Judge silent |
| Plaintiff | Recusal (§ 455) | Judge Moe | Denied same day; no reasoning |
| Defendant Meta | Inter-circuit transfer (MDFL → NDCA) | Judge Moe | Pending |

39. Every request by Plaintiff for a change in judicial assignment has been denied, overridden, or met with silence. The only pending request for structural change is filed by a defendant.

40. Procedural consequences of transfer:

a) The case returns to NDCA.

b) No pending motion to dismiss in MDFL is decided.

c) No cure period is afforded on the stricken oppositions.

d) No ruling issues on the pending Rule 72(a) objection.

e) The service question is never addressed.

30

f) The § 351 complaint remains pending at this Circuit concerning a case no longer within this Circuit's jurisdiction.

g) This Circuit retains a conduct file concerning judicial officers who no longer preside over the case.

h) The subpoena to NCMEC — the only entity capable of producing dispositive evidence on the central factual question of whether a CyberTipline report was filed under 18 U.S.C. § 2258A — would be transferred to a forum whose prior record on plaintiff's discovery requests is documented in Tables 2–4. Notice of intent to serve this subpoena was filed in both Case 376 (Dkt. 82) [Exhibit E-27] and Case 286 (Dkt. 47) on April 9, 2026.

## V.  REASONS WHY THE WRIT SHOULD ISSUE

### Standard

41.    Mandamus relief requires three conditions: (1) the petitioner has no other adequate means to attain the relief sought; (2) the petitioner's right to the writ is "clear and indisputable"; and (3) the issuing court, in its discretion, is satisfied that the writ is appropriate under the circumstances. *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380–81 (2004); *In re BellSouth Corp.*,

31

334 F.3d 941, 953 (11th Cir. 2003); *In re Essex Builders Grp., Inc.,* 432 F.3d 1323, 1327 (11th Cir. 2005); *In re Wellcare Health Plans, Inc.,* 754 F.3d 1234, 1238 (11th Cir. 2014).

### A.    No Other Adequate Means

42.    Table 11 is the exhaustion record. Each available district-level mechanism has been tried. Each produced a denial without reasoning or no response. Magistrate Judge Irick is necessarily within the same analysis: the mechanism for displacing an assigned magistrate judge runs through the district judge whose own recusal has been denied, leaving no district-level avenue undisturbed.

43.    Normal appellate review is inadequate because three converging mechanisms are removing the documented procedural record from the reach of any subsequent appellate court. First, a § 1404(a) transfer order is not a final order under 28 U.S.C. § 1291. Once the case file transmits to the transferee district, the transferor circuit ordinarily loses mandamus jurisdiction over the transferring court, subject to a narrow exception where there is a substantial question of the district court's power to order the transfer. *In re Briscoe,* 976 F.2d 1425, 1426 (11th Cir. 1992); *see also In re Volkswagen of Am., Inc.,* 545 F.3d 304, 318 (5th Cir. 2008) (en banc) (persuasive). Section 1292(b) certification depends on the discretion of the district judge whose conduct this petition challenges; the exhaustion record

32

in Table 11 forecloses any expectation that such certification would issue here. Second, the stricken oppositions (Dkt. 79) — with the briefing deficiency identified for the first time in the order affording zero days to cure — may result in unopposed treatment producing a dismissal record from which the oppositions are absent. Third, the deletion directive in Dkt. 80 removes filed documents from the docket. An appellate court cannot review what the docket no longer contains. The mechanisms converge: whether the case is transferred, dismissed as unopposed, or both, the procedural record at issue in this petition will not be available for review by any subsequent court.

### B.  Clear and Indisputable Right — Tier 1 (Ministerial)

The "clear and indisputable right" prong of *Cheney* is satisfied where the asserted right rests on the plain text of the Federal Rules of Civil Procedure and the alleged deficiency is established by the docket record itself. Both elements are present here. Rule 83(a)(2) and Rule 5(b)(2)(E) are non-discretionary by their terms. The docket reflects no compliance with either. No factual development is required to establish the deficiency.

#### 1.  *Rule 83(a)(2) and Local Rule Deviation*

44.  Federal Rule of Civil Procedure 83(a)(2) provides: "A local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply."

33

45.    Local Rule 3.01(c) imposes a requirement of form within the meaning of Rule 83(a)(2). The district court struck Plaintiff's oppositions for "failure to comply" without identifying the requirement at issue. A party cannot willfully fail to comply with a requirement that has not been identified. Rule 83(a)(2) is non-discretionary by its terms: a local rule imposing a requirement of form "must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply." Fed. R. Civ. P. 83(a)(2). The 1995 Advisory Committee Notes to Rule 83(a)(2) state that the rule's "aim is to protect against loss of rights in the enforcement of local rules relating to matters of form" and offer the example that "a party should not be deprived of a right to a jury trial because its attorney, unaware of—or forgetting—a local rule directing that jury demands be noted in the caption of the case, includes a jury demand only in the body of the pleading." Fed. R. Civ. P. 83 advisory committee's note to 1995 amendment. If a represented attorney's mere unawareness of a local rule's requirement is the prototypical nonwillful failure under the Notes, a pro se litigant's failure to satisfy a requirement the district court did not identify is a fortiori nonwillful. The Eleventh Circuit has institutionally adopted the same standard at the appellate level: Federal Rule of Appellate Procedure 47(a)(2)

34

provides, in language identical to Rule 83(a)(2), that "a local rule imposing a requirement of form must not be enforced in a manner that causes a party to lose rights because of a nonwillful failure to comply with the requirement." Persuasive authority from other circuits confirms that local rules of form may not be enforced to strip litigants of substantive rights. *Al-Qarqani v. Saudi Arabian Oil Co.*, 2021 WL 5711555, at *3–4 (5th Cir. Dec. 2, 2021) (holding that local rules requiring a certificate of conference and proposed order are "merely formal" and that enforcing them to strip a litigant of appellate rights would be "contrary to Federal Rule of Civil Procedure 83(a)(2)"); *Farley v. Koepp*, 786 F.3d 545, 548 (7th Cir. 2015) (holding that "[n]othing in Rule 5(d)(3) alters substantive rights or displaces Rule 5(d)(4) or Rule 83(a)(2)" and that an electronic filing defect was a "mere error of form" that did not defeat timely filing). The liberal-construction mandate applicable to pro se filings reinforces this construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

46.     Table 5 documents the compression. The cure deadline was two days shorter than the original response period for the Accenture motion and seven days shorter for the TaskUs motion. After refiling, the cure period

was zero. The district court identified the deficiency for the first time in the order that afforded zero days to cure.

47.   The deficiency was not identified until the order that afforded zero days to cure. Plaintiff refiled in reliance on Round 1 orders that cited Local Rule 3.01(c) without specifying which requirement was at issue. The defense identified the page-count deficiency in its motion for leave to file a reply (Dkt. 67). The court adopted that identification in Dkt. 79 — simultaneously identifying the deficiency and foreclosing any opportunity to cure it. The Case 286 opposition (Dkt. 29) [Exhibit E-31] — same Plaintiff, same magistrate judge — was not stricken. Rule 83(a)(2) prohibits enforcement of a local rule imposing a requirement of form in a way that causes a party to lose any right because of a nonwillful failure to comply. A plaintiff who is not told what is wrong cannot willfully fail to fix it. A plaintiff who is told what is wrong and given zero days to fix it has lost the right to oppose.

### 2.   *Service*

48.   Federal Rule of Civil Procedure 5(b)(2)(E) permits electronic service only on a "registered user" or a person who "has consented in writing." Plaintiff is not a registered user under the Middle District of

Florida's Administrative Procedures for Electronic Filing and has not consented in writing to electronic service. If Accenture's motion to dismiss was never served, the response period never commenced and neither opposition was untimely. The district court has declined to address this question despite Plaintiff raising it in Dkt. 61 and Dkt. 62. The Genpact comparator (Dkt. 31 / Dkt. 33) — no certificate of service, relief granted the next day — is documented in Table 9. Counsel's own conduct corroborates the deficiency: after Plaintiff documented the CM/ECF service issue in his April 2, 2026 filings, Kirkland & Ellis served its next filing in Case 286 by U.S. mail for the first time (Case 286, Dkt. 42, filed April 3, 2026). No court order directed the change.

### 3.   *Status of Oppositions*

49.   The docket reflects no operative opposition to any pending motion to dismiss. Three motions to dismiss are pending — Accenture (Dkt. 29), TaskUs (Dkt. 48), Meta (Dkt. 85). No operative opposition to the first two remains of record; the oppositions Plaintiff filed at Dkts. 40, 53, 63, and 64 were stricken by Dkts. 56, 57, and 79. The third was filed the same day the refiled oppositions were struck.

### C.   Clear and Indisputable Right — Tier 2 (Reassignment)

37

50.    Reassignment is governed by three factors: (1) whether the original judge would have difficulty putting aside previously expressed views or findings; (2) whether reassignment is advisable to preserve the appearance of justice; and (3) whether reassignment would cause waste and duplication. *United States v. Torkington*, 874 F.2d 1441, 1446–47 (11th Cir. 1989) (per curiam); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1373 (11th Cir. 1997); *United States v. Plate*, 839 F.3d 950, 958 (11th Cir. 2016).

### 1.    *Factor One — Difficulty Putting Prior Views Aside*

51.    *Liteky v. United States*, 510 U.S. 540, 555 (1994), instructs that judicial rulings alone almost never constitute a basis for recusal or reassignment; the exception requires circumstances demonstrating entrenchment beyond the rulings themselves. This petition does not rest on adverse rulings. It rests on a post-notice administrative pattern: the April 2, 2026 filing package placed the court on express notice of the unidentified briefing deficiency, the unresolved service question, the unrevisited orders entered by a recused magistrate judge, and the asymmetric enforcement record documented in Tables 7–9. The April 9, 2026 orders (Dkts. 79, 80, 81) continued the same pattern without corresponding defendant-facing corrective action. Five expressions of entrenchment appear on the record.

First, the district court has three times quoted the Dkt. 23 dismissal-warning language against Plaintiff's procedural conduct (Dkts. 56, 57, 79) and has applied no comparable characterization to any defendant despite the deficiencies documented in Table 9. Second, the district court has declined to revisit the three substantive orders entered by Magistrate Judge Norway prior to his recusal under 28 U.S.C. § 455(b)(4) (Dkts. 18, 32, 33), including the pro hac vice order admitting Defendant Anderson — the same party whose presence triggered the § 455(b)(4) recusal. *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 868 (1988), identifies the obligation to rectify oversight once an appearance problem is known; no analogous independent review has occurred here. Third, Magistrate Judge Irick, within 24 hours of assignment to Case 376, denied Plaintiff's scheduling-directive motion (Dkt. 50) while the identical motion filed the same week in Case 286 remains pending before the same magistrate judge. Fourth, the district court denied the recusal motion and the § 137 petition on the same day they were filed, by endorsed order, without reasoning (Dkts. 65, 66), resolving nineteen identified appellate issues without substantive engagement with any. Fifth, the filing restriction imposed by Dkt. 80 cites no rule of procedure and identifies no finding of frivolousness, harassment,

39

or abuse; its absence of stated legal basis is an expression of a fixed view about Plaintiff's filings that precedes their individual review. *Torkington* identifies difficulty putting prior views aside as a basis for reassignment where the prior judge has expressed views in a manner that would make impartial reconsideration difficult. 874 F.2d at 1447. Each of the five expressions catalogued above is a view the assigned judicial officers would have difficulty setting aside on continued assignment.

### 2. *Factor Two — Appearance of Justice*

52. The MDFL record documented in Tables 5–10 establishes asymmetric procedural treatment by Judge Moe and Magistrate Judge Irick across Cases 376 and 286. Three-case consolidation proceeded over Plaintiff's objection — Table 1 documents the sua sponte transfer of Case 213 into the same judicial cluster on April 1, 2026. The § 137 petition was denied by the subject judge. The Chief Judge has not responded. The Rule 72(a) objection is pending before the challenged judge. The NDCA record documented in Tables 2–4 corroborates the outcome pattern as background context.

53. A person Plaintiff has sued for defamation in Case 286 is simultaneously appearing as counsel of record against him in Case 376. The

40

pro hac vice order was entered by a magistrate judge who subsequently recused. No judicial officer has revisited the order.

54.    *Torkington* directs that reassignment is advisable to preserve the appearance of justice where the totality of circumstances would lead a reasonable observer to question the fairness of further proceedings before the same judge. 874 F.2d at 1447. In *Chudasama v. Mazda Motor Corp.*, this Circuit applied the same factor and held that "the extent of the judge's abuse of discretion-and·the partiality of the practices constituting that abuse-would have a significant effect on the appearance of justice should he remain assigned to this case." 123 F.3d 1353, 1373 (11th Cir. 1997). The Court found that factor "the most telling" of the three. *Id.* The cross-district pattern documented in Tables 2–9, the dual-role conflict involving Defendant Anderson, and the unrevisited pro hac vice order entered by the recused magistrate judge satisfy that condition. A reasonable observer, reviewing this record, would not conclude that the proceedings carry the appearance of justice.

### 3.    *Factor Three — Waste and Duplication*

55.    No dispositive motion has been decided. No scheduling order has been entered. No Rule 26(f) conference has been held. Discovery has not

41

opened. Reassignment requires a successor judicial officer to review a defined cluster of docket entries. In Case 376, the cluster consists of: the Accenture motion to dismiss (Dkt. 29), the Norway pro hac vice order (Dkt. 32), the TaskUs motion to dismiss (Dkt. 48), the strike orders (Dkts. 56, 57, 79), the denials of recusal and § 137 relief (Dkts. 65, 66), the Dkt. 80 strike and deletion order, the Dkt. 81 mootness order, the Meta motion to dismiss (Dkt. 85), the Meta transfer motion (Dkt. 87), and the pending Rule 72(a) objection (Dkt. 89). In Case 286, the cluster consists of: the Order to Show Cause (Dkt. 11), the Anderson/Keegan motion to dismiss (Dkt. 26), and the pending scheduling directive motion (Dkt. 28). In Case 213, the cluster consists of: the pleadings and the April 1, 2026 sua sponte transfer order (Dkts. 18, 19). The early posture of all three cases — no Rule 26(f) conference held, no scheduling order entered, no dispositive motion decided — places this matter at the lowest end of the *Torkington* waste-and-duplication spectrum. 874 F.2d at 1447.

### 4. The § 351 Conduct File as Context

56.    The existence of a § 351 complaint filed by Plaintiff naming Judge Moe and Magistrate Judge Irick has been confirmed by this Circuit. The fact is attested in the accompanying declaration. The complaint serves two

42

functions in this analysis: support for the exhaustion record and post-recusal context. The orders in Section IV.E.4 were entered after the conduct file was opened. This is institutional context, not an independent legal basis for mandamus relief.

### 5. Transfer Motion as the Jurisdictional Precipice

57. If the transfer motion is granted, the case returns to NDCA. The transferor circuit ordinarily loses jurisdiction the moment the case file transmits, *Briscoe*, 976 F.2d at 1426, and no practicable mechanism exists to bring the procedural defects documented in this petition, the pending conduct file, or any reassignment request back before this Circuit thereafter.

### D. The Writ Is Appropriate Under the Circumstances

58. This Circuit is the only court with supervisory authority over the judicial officers whose conduct is documented in the record.

59. A § 1404(a) transfer order is not subject to interlocutory appeal as of right. The transferor circuit ordinarily loses mandamus jurisdiction the moment the case file transmits. *Briscoe*, 976 F.2d at 1426. The transferred litigant has no interlocutory appeal and no post-judgment vehicle to reach the transfer decision; post-transfer proceedings occur before a transferee court in a different circuit reviewing only its own subsequent rulings. Denial

43

of this petition is not a deferral of review of the Middle District of Florida record. It is the end of it.

60. The pattern documented in Tables 5–12 is not a pattern of unfavorable rulings on contested legal questions. It is a structural condition of asymmetric procedural treatment maintained by Judge Moe and Magistrate Judge Irick across Cases 376 and 286 between February 18 and April 9, 2026, producing the same outcome in every instance.

61. The petitioner is proceeding pro se without resources comparable to those available to defendants represented by Kirkland & Ellis, Orrick Herrington & Sutcliffe, and Ogletree Deakins. The liberal-construction mandate exists for this procedural posture. *Haines*, 404 U.S. at 520.

## VI. EXHIBIT LIST

Per FRAP 21(a)(2)(C) and Eleventh Circuit Local Rule 21-1:

### Docket Sheets

1. Exhibit A — Case No. 6:26-cv-00376-AGM-DCI Full Docket (M.D. Fla.)

2. Exhibit B — Case No. 6:26-cv-00286-AGM-DCI Full Docket (M.D. Fla.)

3. Exhibit C — Case No. 5:26-cv-00213-AGM-PRL Full Docket (M.D. Fla.)

4. Exhibit D — Case No. 3:25-cv-07671-CRB Full Docket (N.D. Cal.)

### NDCA Proceeding

5. Exhibit E-1 — Case 376, Dkt. 4 (Att. 1): RJN — Summary of NDCA
   Proceedings

### Case 376 — Defense Filings (PACER)

6. Exhibit E-2 — Dkt. 29: Accenture MTD (27 pp.; certificate of service at
   p. 24)

7. Exhibit E-3 — Dkt. 31: Genpact motion for extension (no certificate of
   service)

8. Exhibit E-4 — Dkt. 48: TaskUs MTD

45

9. Exhibit E-5 — Dkt. 85: Meta MTD of First Amended Complaint (filed 4/9/26)

10. Exhibit E-6 — Dkt. 87: Meta motion to transfer venue under § 1404(a) (filed 4/9/26)

11. Exhibit E-7 — Dkt. 88: Declaration of Jennifer Allen in support of transfer (with Exhibits A, B)

### Case 376 — Stricken Plaintiff Oppositions (RECAP Archive)

12. Exhibit E-8 — Dkt. 40: Original opposition to Accenture MTD (stricken by Dkt. 56)

13. Exhibit E-9 — Dkt. 53: Original opposition to TaskUs MTD (stricken by Dkt. 57)

14. Exhibit E-10 — Dkt. 63: Refiled opposition to TaskUs MTD (stricken by Dkt. 79)

15. Exhibit E-11 — Dkt. 64: Refiled opposition to Accenture MTD (stricken by Dkt. 79)

### Case 376 — Stricken Notice (RECAP Archive)

16. Exhibit E-12 — Dkt. 69: Notice of referral — Senate Judiciary Committee (retrieved from RECAP Archive)

46

*Exhibits E-13 through E-21 — intentionally omitted. Nine additional stricken notices were filed as Dkts. 70 through 78. They are not submitted as exhibits. Their existence, recipients, and transmission dates are attested in the accompanying declaration.*

### Case 376 — Recusal and Reassignment Filings (PACER)

17. Exhibit E-22 — Dkt. 60: Time-Sensitive Petition for Administrative Reassignment under 28 U.S.C. § 137

18. Exhibit E-23 — Dkt. 61: Urgent Motion for Recusal (with Tables C–G; Exhibits A, B)

19. Exhibit E-24 — Dkt. 62: Declaration of Marvelle J. Ballentine in support of recusal motion

### Case 376 — Rule 72(a) Objection (PACER)

20. Exhibit E-25 — Dkt. 89: Rule 72(a) Objection to Dkt. 80 (filed 4/10/26)

21. Exhibit E-26 — Dkt. 90: Declaration in support of Rule 72(a) Objection (filed 4/10/26)

### NCMEC Subpoena Notice (PACER)

47

22. Exhibit E-27 — Case 376 Dkt. 82 / Case 286 Dkt. 47: Notice of Intent to Serve Subpoena on NCMEC (filed 4/9/26)

## Case 376 & 286 — Scheduling Directives (PACER)

23. Exhibit E-28 — Case 376, Dkt. 39: Motion for Scheduling Directive Regarding Rule 26(f) Conference

24. Exhibit E-29 — Case 286, Dkt. 28: Identical Motion for Scheduling Directive (pending without ruling)

## Case 286 — Court Order (PACER)

25. Exhibit E-30 — Dkt. 11: Order to Show Cause — Diversity Jurisdiction (signed by Judge Moe 2/18/26; 4 pp.)

## Case 286 — Plaintiff Filing (PACER)

26. Exhibit E-31 — Dkt. 29: Opposition to Anderson/Keegan MTD (not stricken — Case 286 comparator)

## Case 213 — Plaintiff Filings (PACER)

27. Exhibit E-32 — Dkt. 9: Plaintiff's motion to transfer to Orlando Division

28. Exhibit E-33 — Dkt. 15: Plaintiff's withdrawal of transfer motion

48

## Non-Docket Documents (Authenticated by Declaration)

29. Exhibit E-36 — Email to Chief Judge Howard — cover letter to § 137 petition; documents routing error

Date: April 14, 2026

Respectfully submitted,

Marvelle J. Ballentine
Petitioner, *pro se*
7862 W. Irlo Bronson
Memorial Hwy, #82
Kissimmee, FL 34747

# CERTIFICATE OF SERVICE

I certify that on April 14, 2026, I served a copy of this Petition for Writ of Mandamus and all accompanying documents on the following by U.S. Mail:

Hon. Anne-Leigh Gaylord Moe
United States District Judge
U.S. District Court, Middle District of Florida
George C. Young U.S. Courthouse
401 West Central Boulevard, Chambers 5-600
Orlando, Florida 32801

Hon. Daniel C. Irick
United States Magistrate Judge
U.S. District Court, Middle District of Florida
George C. Young U.S. Courthouse
401 West Central Boulevard, Chambers 5-550
Orlando, Florida 32801

Diana Marie Fassbender
Orrick, Herrington & Sutcliffe LLP
215 NW 24th Street, Suite 200
Miami, FL 33127
Counsel for Defendant Meta Platforms, Inc.

Diana Marie Fassbender
Orrick, Herrington & Sutcliffe LLP
215 NW 24th Street, Suite 200
Miami, FL 33127
Counsel for Defendant Genpact Limited

Marianna Chapleau
Kirkland & Ellis LLP
98 S.E. 7th Street, Suite 700
Miami, FL 33131
Counsel for Defendant Accenture LLP

Stephanie Generotti
Ogletree Deakins Nash Smoak & Stewart, P.C.
100 N Tampa St, Suite 3600
Tampa, FL 33602-5867
Counsel for Defendant TaskUs, Inc.

Marvelle J. Ballentine

No. _____

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

In re MARVELLE J. BALLENTINE,

*Petitioner.*

## ON PETITION FOR A WRIT OF MANDAMUS TO THE

## UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF FLORIDA

Relates to:

Case No. 6:26-cv-00376-AGM-DCI
Case No. 6:26-cv-00286-AGM-DCI
Case No. 5:26-cv-00213-AGM-PRL

## DECLARATION OF MARVELLE J. BALLENTINE IN SUPPORT OF

## PETITION FOR WRIT OF MANDAMUS

I, Marvelle J. Ballentine, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

## I. INTRODUCTION

1.    I am the petitioner in the above-captioned matter and the plaintiff in the three underlying district court actions identified in the caption. I am proceeding pro se. I am over the age of eighteen, am competent to testify, and have personal knowledge of the matters set forth in this declaration except where stated to be on information and belief. I submit this declaration in support of the accompanying Petition for Writ of Mandamus.

2.    I am not a member of the bar of any state or federal court. I am not represented by counsel in any of the three underlying actions or in this proceeding.

## II.    THE § 351 JUDICIAL CONDUCT COMPLAINT

3.    On April 2, 2026, I filed a complaint of judicial misconduct under 28 U.S.C. § 351(a) with the Office of the Clerk of the United States Court of

Appeals for the Eleventh Circuit. The Eleventh Circuit has acknowledged the existence of the complaint.

### III. EMAIL TO CHIEF JUDGE HOWARD

4. On April 2, 2026, I filed with the Clerk of the United States District Court for the Middle District of Florida a Time-Sensitive Petition for Administrative Reassignment under 28 U.S.C. § 137 in all three underlying actions (Case No. 6:26-cv-00376, Dkt. 60; Case No. 6:26-cv-00286, Dkt. 39; Case No. 5:26-cv-00213, Dkt. 29). The petition was addressed to the Honorable Marcia Morales Howard, Chief United States District Judge, in her administrative capacity under § 137. Due to a procedural error on my part, the petition was not routed through the Clerk to Chief Judge Howard's chambers. On the same date, Judge Moe entered endorsed orders denying the petition in each of the three cases (Case No. 6:26-cv-00376, Dkt. 66; Case No. 6:26-cv-00286, Dkt. 41; Case No. 5:26-cv-00213, Dkt. 29).

5. To correct the routing error, I transmitted a copy of the petition directly to Chief Judge Howard's chambers by email addressed to chambers_flmd_howard@flmd.uscourts.gov. The transmission was sent on

April 2, 2026, from my email address of record, jayballentine@protonmail.com.

6. The email identified the routing error, transmitted the petition to Chief Judge Howard for review under 28 U.S.C. § 137, and requested in the alternative written confirmation that the petition had reached the office to which it was addressed.

7. The email identified time-sensitive obligations operative in Case No. 5:26-cv-00213. Defendant Accenture LLP had been served with interrogatories in the state court proceeding before removal, with responses due April 10, 2026. A videotaped Federal Rule of Civil Procedure 30(b)(6) deposition of Accenture LLP had been noticed for April 17, 2026. Both obligations originated in state court before removal and continued under 28 U.S.C. § 1450. As of the date of the email, no scheduling order had been entered in Case No. 5:26-cv-00213 and no case management conference had been set.

8. I have not received any response to the email from Chief Judge Howard's chambers, from any other chambers in the Middle District of

Florida, or from any other source. I have not received any non-delivery message, bounce-back, or automatic acknowledgment indicating that the email did not reach its addressed destination. The absence of response is attested through the date of execution of this declaration.

9.  A true and correct copy of the email I transmitted to Chief Judge Howard's chambers on April 2, 2026 is attached to this declaration as Exhibit E-36.

## IV.  SERVICE OF DEFENSE FILINGS — CASE NO. 6:26-cv-00286

10.  Between March 18, 2026 and March 30, 2026, Kirkland & Ellis LLP filed four documents in Case No. 6:26-cv-00286-AGM-DCI on behalf of defendants Devin S. Anderson and Christopher W. Keegan: the motion to dismiss (Dkt. 26, filed March 18, 2026); a motion for leave to file a reply (Dkt. 33, filed March 27, 2026); a motion for Lauren M. Spiwak to appear pro hac vice (Dkt. 35, filed March 27, 2026); and a certificate of compliance with the third-party litigation funding standing order (Dkt. 38, filed March 30, 2026). I reviewed each of these filings on PACER. Each filing contains a certificate

of service certifying service through the Middle District of Florida's CM/ECF system.

11.     The certificate of service in Dkt. 26 (the motion to dismiss) states, in its entirety: *"I hereby certify that on March 18, 2026, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will serve Notice of Filing on all counsel of record."* The quoted language is a verbatim reproduction of the certificate as it appears in the filed document. The certificate certifies service on *"all counsel of record."* I am not counsel. I am an unrepresented party proceeding pro se. The certificate does not purport to serve unrepresented parties.

12.     The certificates of service in Dkts. 33, 35, and 38 each certify that the filing was *"electronically filed through Middle District of Florida's CM/ECF System, which will send a copy to all unrepresented parties and counsel of record."* The quoted language is a verbatim reproduction of the certificate as it appears in each filed document. Regardless of the recitation, the CM/ECF system does not transmit filings to parties who are not registered CM/ECF users.

13.   I am not a registered user of the Middle District of Florida's CM/ECF system. I have never registered for CM/ECF in any federal court. I have not consented in writing to electronic service under Federal Rule of Civil Procedure 5(b)(2)(E) in Case No. 6:26-cv-00286 or in any related case. No written consent to electronic service bearing my signature or authorization exists.

14.   On April 3, 2026, Kirkland & Ellis filed a reply in support of the motion to dismiss (Case No. 6:26-cv-00286, Dkt. 42). This filing was served on me by FedEx. It was the first Kirkland & Ellis filing in Case No. 286 that reflected service by any method other than CM/ECF. No court order entered between March 30, 2026 and April 3, 2026 directed Kirkland & Ellis to change its method of service. The only filings entered on the docket during that interval that addressed the CM/ECF service deficiency were my own Time-Sensitive Petition for Administrative Reassignment (Case No. 6:26-cv-00286, Dkt. 39, filed April 2, 2026) and supporting Declaration (Case No. 6:26-cv-00286, Dkt. 40, filed April 2, 2026), both of which documented the deficiency.

15. As of the date of this declaration, no order has been entered in Case No. 6:26-cv-00286 addressing the certificates of service in Dkts. 26, 33, 35, or 38, or directing any party to re-serve any filing by alternative means.

## V. SERVICE OF ACCENTURE'S MOTION TO DISMISS — CASE NO. 6:26-cv-00376

16. On March 18, 2026, Kirkland & Ellis LLP filed a motion to dismiss on behalf of defendant Accenture LLP in Case No. 6:26-cv-00376-AGM-DCI (Dkt. 29). I reviewed Dkt. 29 on PACER. The certificate of service in Dkt. 29 states, in relevant part: *"I HEREBY CERTIFY that on March 18, 2026, I electronically filed the foregoing through Middle District of Florida's CM/ECF System, which will send a copy to all unrepresented parties and counsel of record."* The quoted language is a verbatim reproduction of the certificate as it appears in the filed document.

17. I am not a registered user of the Middle District of Florida's CM/ECF system. I have never registered for CM/ECF in any federal court. I have not consented in writing to electronic service under Federal Rule of Civil Procedure 5(b)(2)(E) in Case No. 6:26-cv-00376 or in any related case.

No written consent to electronic service bearing my signature or authorization exists.

18. I have not received Accenture's motion to dismiss (Case No. 6:26-cv-00376, Dkt. 29) by United States mail, FedEx, hand delivery, courier, facsimile, or any other method authorized by Federal Rule of Civil Procedure 5(b)(2). The CM/ECF system did not transmit Dkt. 29 to me because I am not a registered user. I first became aware of the contents of Dkt. 29 by accessing PACER. As of the date of this declaration, I have received no service of Dkt. 29 by any means authorized under Rule 5(b)(2). The district court has not entered any order addressing the deficiency, notwithstanding that I raised it in my Urgent Motion for Recusal (Case No. 6:26-cv-00376, Dkt. 61) and supporting Declaration (Case No. 6:26-cv-00376, Dkt. 62), both filed April 2, 2026.

## VI.   THE STRIKE ORDERS AND THE REFILED RESPONSES

19. On March 30, 2026, Magistrate Judge Daniel C. Irick entered two endorsed orders in Case No. 6:26-cv-00376: Dkt. 56, striking my opposition to Accenture's motion to dismiss (Dkt. 40), and Dkt. 57, striking my

opposition to TaskUs's motion to dismiss (Dkt. 53). Each order stated that the response was stricken for failure to comply with Local Rule 3.01(c). Each order afforded a cure deadline of April 6, 2026. Neither order identified which requirement of Local Rule 3.01(c) was at issue.

20.    Local Rule 3.01(c), as amended effective November 1, 2025, is titled "LENGTH AND CONTENT OF A RESPONSE." It contains three numerical limits: a twenty-page limit on a response memorandum; a ten-page limit on a response to an objection to a magistrate judge's order or report and recommendation; and a three-page limit on any motion for leave to file a response exceeding the page limit. Upon receipt of Dkts. 56 and 57, I reviewed Local Rule 3.01(c) in its entirety. Neither order specified which of these requirements my responses had failed to satisfy.

21.    On April 2, 2026, I refiled the responses with a prefatory statement (Case No. 6:26-cv-00376, Dkts. 63 and 64). Dkt. 63 is the refiled response to TaskUs's motion to dismiss. Dkt. 64 is the refiled response to Accenture's motion to dismiss.

22.   At no point between the entry of Dkts. 56 and 57 on March 30, 2026 and the filing of Dkt. 67 on April 7, 2026 was I advised — by the court, by defense counsel, or by any other source — that the page-count limit was the requirement of Local Rule 3.01(c) on which Dkts. 56 and 57 were based. I first became aware that the page-count limit had been identified as the basis for the strike orders upon reviewing Dkt. 67, Accenture LLP's Motion for Leave to File a Reply in Support of Its Motion to Dismiss, filed April 7, 2026. Dkt. 67 stated that my refiled Opposition at Dkt. 64 was "twenty-five pages, which is in excess of the twenty-page limit for a response to a motion pursuant to Local Rule 3.01(c)." Prior to the filing of Dkt. 67, neither Dkt. 56 nor Dkt. 57 had identified the page-count limit as the operative requirement. On April 9, 2026, the court entered Dkt. 79, which adopted the page-count limit as the deficiency, quoted the rule text directly — "A party responding to a motion or brief may file a legal memorandum no longer than twenty pages" — and afforded zero days to cure.

## VII.   THE NOTICES STRUCK BY DKT. 80

23.   On April 7, 2026, I filed ten notices in Case No. 6:26-cv-00376, docketed as Dkts. 69 through 78. The dates of filing and the docket text descriptions are reflected on the Case 376 docket. On April 9, 2026, Magistrate Judge Daniel C. Irick entered Dkt. 80, which struck Dkts. 69 through 78 and directed the Clerk to delete them from the docket.

24.   A true and correct copy of Dkt. 69 — the Notice of Referral to the United States Senate Committee on the Judiciary — retrieved from the RECAP Archive operated by the Free Law Project, is attached to this declaration as Exhibit E-12. Exhibit E-12 bears the original PACER filing stamp.

## VIII.   SERVICE OF THE PETITION AND ACCOMPANYING DOCUMENTS

25.   On April 14, 2026, I served true and correct copies of the Petition for Writ of Mandamus, the Time Sensitive Motion for Stay, this Declaration, and the exhibits attached to this Declaration on the Honorable Anne-Leigh Gaylord Moe, the Honorable Daniel C. Irick, Diana Marie Fassbender (counsel for Meta Platforms, Inc. and Genpact Limited), Marianna Chapleau

(counsel for Accenture LLP), and Stephanie Generotti (counsel for TaskUs, Inc.) by United Parcel Service. Service addresses for each recipient are set forth in the Certificate of Service accompanying the Petition.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: April 14, 2026

Marvelle J. Ballentine
Petitioner, *pro se*
7862 W. Irlo Bronson Memorial Hwy, #82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com

# EXHIBIT A

Case No. 6:26-cv-00376-AGM-DCI
Full Docket (M.D. Fla.)

# U.S. District Court
## Middle District of Florida (Orlando)
## CIVIL DOCKET FOR CASE #: 6:26-cv-00376-AGM-DCI

Ballentine v. Meta Platforms, Inc. et al
Assigned to: Judge Anne-Leigh Gaylord Moe
Referred to: Magistrate Judge Daniel C. Irick
Demand: $9,999,000
Cause: 42:1983 Civil Rights Act

Date Filed: 02/17/2026
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

### Plaintiff

**Marvelle J. Ballentine**
*also known as*
Jay

represented by **Marvelle J. Ballentine**
7862 W. Irlo Bronson Memorial Hwy.
82
Kissimmee, FL 34747
407-794-6503
PRO SE

V.

### )efendant

**Meta Platforms, Inc.**

represented by **Diana Marie Fassbender**
Orrick, Herrington & Sutcliffe LLP
215 NW 24th Street
Suite 200
Miami, FL 33127
202-339-8533
Fax: 202-339-8500
Email: dszego@orrick.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

### Defendant

**Accenture LLP**

represented by **Marianna Chapleau**
Kirkland & Ellis LLP
98 S.E. 7th Street
Suite 700
Miami, FL 33131
203-675-7650
Email: mchapleau@kirkland.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Devin S. Anderson**
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
202-389-5198

Email: devin.anderson@kirkland.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Taskus, Inc.**                           represented by   **Stephanie Generotti**
Ogletree Deakins Nash Smoak & Stewart,
P.C. - Tampa
100 N Tampa St Ste 3600
Tampa, FL 33602-5867
813-221-7442
Fax: 813-289-6530
Email: stephanie.generotti@ogletree.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Turner Jozsi**
Ogletree, Deakins, Nash, Smoak & Stewart,
P.C.
100 North Tampa Street
Suite 3600
Tampa, FL 33602
813-221-7232
Fax: 813-289-6530
Email: elizabeth.jozsi@ogletree.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Genpact USA, Inc.**
*TERMINATED: 03/04/2026*

**Defendant**

**Genpact Limited**                        represented by   **Diana Marie Fassbender**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 02/17/2026 | 1 | COMPLAINT against All Defendants with Jury Demand (Filing fee $405, receipt number 117791) filed by Marvelle J. Ballentine. (Attachments: # 1 Civil Cover Sheet)(LJC) (Entered: 02/17/2026) |
| 02/17/2026 | 2 | SUMMONS issued as to All Defendants (in person). (LJC) (Entered: 02/17/2026) |
| 02/17/2026 | 3 | NOTICE of a related action per Local Rule 1.07(c) by Marvelle J. Ballentine. Related case(s): Yes (LJC) (Entered: 02/17/2026) |
| 02/17/2026 | 4 | NOTICE to the Courts to take judicial notice regarding NDCA Proceedings by Marvelle J. Ballentine. (Attachments: # 1 Exhibit A)(LJC) (Entered: 02/17/2026) |
| 02/17/2026 | 5 | Motion to Transfer by Marvelle J. Ballentine. (LJC) Modified on 2/17/2026 (AJL). (Entered: 02/17/2026) |

| | | |
|---|---|---|
| 02/18/2026 | 6 | **INITIAL ORDER re: Case Management and Deadlines. Signed by Judge Julie S. Sneed on 2/18/2026. (GNB) (Entered: 02/18/2026)** |
| 02/18/2026 | 7 | Time-Sensitive MOTION for Miscellaneous Relief, specifically For Leave to Serve Limited Early Discovery by Marvelle J. Ballentine. (Attachments: # 1 Exhibit A) Chambers notified. (LJC) Modified on 2/19/2026 as to docket text (LJC). (Entered: 02/18/2026) |
| 02/18/2026 | 8 | **ORDER. Plaintiff moves to transfer this case to Judge Anne-Leigh Gaylord Moe. (Dkt. 5.) The motion is GRANTED. Pursuant to Local Rule 1.07(a)(2)(B), this case is TRANSFERRED to United States District Judge Anne-Leigh Gaylord Moe with her consent. See United States v. Stone, 411 F.2d 597, 599 (5th Cir. 1969) ("District [j]udges have the inherent power to transfer cases from one to another for the expeditious administration of justice."). Signed by Judge Julie S. Sneed on 2/18/2026. (MSB) (Entered: 02/18/2026)** |
| 02/18/2026 | 9 | RETURN of service executed on 02/17/2026 by Marvelle J. Ballentine as to Accenture LLP. (LJC) (Entered: 02/19/2026) |
| 02/18/2026 | 10 | RETURN of service executed on 02/17/2026 by Marvelle J. Ballentine as to Taskus, Inc. (LJC) (Entered: 02/19/2026) |
| 02/18/2026 | 11 | RETURN of service executed on 02/17/2026 by Marvelle J. Ballentine as to Meta Platforms, Inc. (LJC) (Entered: 02/19/2026) |
| 02/18/2026 | 12 | RETURN of service executed on 02/17/2026 by Marvelle J. Ballentine as to Genpact USA, Inc. (LJC) (Entered: 02/19/2026) |
| 02/19/2026 | 13 | Case Reassigned to Judge Anne-Leigh Gaylord Moe. New case number: 6:26-cv-376-AGM-RMN. Judge Julie S. Sneed no longer assigned to the case. (RPB) (Entered: 02/19/2026) |
| 02/19/2026 | 14 | NOTICE of Erratum Regarding Exhibit A re 7 MOTION for Miscellaneous Relief, specifically to Serve Limited Early Discovery by Marvelle J. Ballentine (Attachments: # 1 Exhibit A)(LJC) Modified on 2/20/2026 as to docket text (ARL). (Entered: 02/19/2026) |
| 02/19/2026 | 15 | NOTICE of Supplemental Local Rule 3.01(g) Certification by Marvelle J. Ballentine re 7 MOTION for Miscellaneous Relief, specifically to Serve Limited Early Discovery (LJC) (Entered: 02/19/2026) |
| 02/23/2026 | 16 | DISCLOSURE STATEMENT under Rule 7.1, Federal Rules of Civil Procedure, and Local Rule 3.03 by Marvelle J. Ballentine. (LJC) (Entered: 02/23/2026) |
| 02/23/2026 | 17 | CERTIFICATE of service by Marvelle J. Ballentine re 7 MOTION for Miscellaneous Relief, specifically to Serve Limited Early Discovery. (LJC) (Entered: 02/23/2026) |
| 02/25/2026 | 18 | **ORDER denying 7 Plaintiff's Motion for Leave to Serve Limited Early Discovery. Signed by Magistrate Judge Robert M. Norway on 2/25/2026. (CFG) (Entered: 02/25/2026)** |
| 03/04/2026 | 19 | AMENDED COMPLAINT against Accenture LLP, Genpact Limited, Meta Platforms, Inc., Taskus, Inc. with Jury Demand. filed by Marvelle J. Ballentine. Related document: 1 Complaint filed by Marvelle J. Ballentine.(LJC) (Entered: 03/04/2026) |
| 03/04/2026 | 20 | CERTIFICATE of service by Marvelle J. Ballentine re 19 Amended Complaint. (LJC) (Entered: 03/04/2026) |
| 03/04/2026 | 21 | CERTIFICATE of service by Marvelle J. Ballentine re 19 Amended Complaint. (LJC) (Entered: 03/04/2026) |

| 03/09/2026 | 22 | NOTICE of a related action per Local Rule 1.07(c) by Marvelle J. Ballentine. Related case(s): Yes (LJC) (Entered: 03/09/2026) |
|---|---|---|
| 03/11/2026 | 23 | **NOTICE TO COUNSEL AND PARTIES: The Middle District of Florida's revised Local Rules became effective November 1, 2025, and can be found on the Court's public website https://www.flmd.uscourts.gov/local-rules. For a just and efficient resolution of this case, the parties are DIRECTED to read and comply with the Middle District of Florida's Local Rules. See Local Rule 1.01(a). Failure to comply with ANY Local Rules or Court Orders may result in the imposition of sanctions including, but not limited to, the dismissal of this action or entry of default without further notice. Signed by Judge Anne-Leigh Gaylord Moe on 3/11/2026. (RMF)** (Entered: 03/11/2026) |
| 03/11/2026 | 24 | NOTICE of Local Rule 3.02(a)(2), which requires the parties in every civil proceeding, except those described in subsection (d), to file a case management report (CMR) using the uniform form at www.flmd.uscourts.gov. The CMR must be filed (1) within forty days after any defendant appears in an action originating in this court, (2) within forty days after the docketing of an action removed or transferred to this court, or (3) within seventy days after service on the United States attorney in an action against the United States, its agencies or employees. Judges may have a special CMR form for certain types of cases. These forms can be found at www.flmd.uscourts.gov under the Forms tab for each judge. (Signed by Deputy Clerk). (RMF) (Entered: 03/11/2026) |
| 03/12/2026 | 25 | **STANDING ORDER REQUIRING DISCLOSURE OF THIRD-PARTY LITIGATION FUNDING. Signed by Judge Anne-Leigh Gaylord Moe on 3/12/2026. (RMF)** (Entered: 03/12/2026) |
| 03/16/2026 | 26 | NOTICE of No Third Party-Litigation Funding by Marvelle J. Ballentine re 25 Standing Order (LJC) (Entered: 03/16/2026) |
| 03/18/2026 | 27 | NOTICE of Appearance by Marianna Chapleau on behalf of Accenture LLP (Chapleau, Marianna) (Entered: 03/18/2026) |
| 03/18/2026 | 28 | DISCLOSURE STATEMENT under Rule 7.1, Federal Rules of Civil Procedure, and Local Rule 3.03 by Accenture LLP identifying Corporate Parent Accenture plc for Accenture LLP. (Chapleau, Marianna) Modified text on 3/19/2026 (AW). (Entered: 03/18/2026) |
| 03/18/2026 | 29 | MOTION to Dismiss for Failure to State a Claim by Accenture LLP. (Chapleau, Marianna) (Entered: 03/18/2026) |
| 03/19/2026 | 30 | Unopposed MOTION for Devin S. Anderson to appear pro hac vice, Special Admission fee paid, Receipt No. AFLMDC-24640271 for $150 by Accenture LLP. (Chapleau, Marianna) Motions referred to Magistrate Judge Robert M. Norway. (Entered: 03/19/2026) |
| 03/19/2026 | 31 | Time Sensitive MOTION for Extension of Time to File Answer re 19 Amended Complaint by Genpact Limited. (Fassbender, Diana) Motions referred to Magistrate Judge Robert M. Norway. (Entered: 03/19/2026) |
| 03/20/2026 | 32 | **ENDORSED ORDER granting 30 Motion to Appear Pro Hac Vice provided counsel shall register for and use the Court's electronic filing system. Counsel can register for a CM/ECF login password through the website at www.flmd.uscourts.gov under "CM/ECF." Signed by Magistrate Judge Robert M. Norway on 3/20/2026. (CFG)** (Entered: 03/20/2026) |
| 03/20/2026 | 33 | **ENDORSED ORDER granting 31 Motion for Extension of Time to Answer. The Court finds good cause to grant the Motion. Defendant Genpact Limited shall answer or otherwise respond to the Amended Complaint on or before April 22, 2026. Additionally, all parties must engage in Local Rule 3.01(g)'s conferral requirement.** |

The Rule requires a good faith effort to resolve the motion, which requires parties to respond to each other within a reasonable amount of time. Failure to comply with these requirements may result in sanctions. Signed by Magistrate Judge Robert M. Norway on 3/20/2026. (CFG) (Entered: 03/20/2026)

| 03/20/2026 | 34 | TIME SENSITIVE MOTION for Extension of Time to File Answer re 19 Amended Complaint by Taskus, Inc.. (Generotti, Stephanie) Motions referred to Magistrate Judge Robert M. Norway. Modified on 3/20/2026 to edit docket text (JDR). (Entered: 03/20/2026) |
|---|---|---|
| 03/20/2026 | 35 | NOTICE of Lead Counsel Designation by Stephanie Generotti on behalf of Taskus, Inc.. Lead Counsel: Stephanie C. Generotti. (Generotti, Stephanie) (Entered: 03/20/2026) |
| 03/20/2026 | 36 | NOTICE of a related action per Local Rule 1.07(c) by Taskus, Inc.. Related case(s): Yes (Generotti, Stephanie) (Entered: 03/20/2026) |
| 03/20/2026 | 37 | **STRICKEN per Endorsed Order 47.** DISCLOSURE STATEMENT under Rule 7.1, Federal Rules of Civil Procedure, and Local Rule 3.03 by Taskus, Inc. identifying Other Affiliate Blackstone Inc. for Taskus, Inc. (Generotti, Stephanie) Modified text on 3/24/2026 (BD). (Entered: 03/20/2026) |
| 03/20/2026 | 38 | NOTICE of Lead Counsel Designation by Genpact Limited. (Fassbender, Diana) Modified on 3/23/2026 to edit text. (JVC) (Entered: 03/20/2026) |
| 03/20/2026 | 40 | STRICKEN AND REMOVED PER 56 ORDER. RESPONSE in Opposition re 29 MOTION to Dismiss for Failure to State a Claim filed by Marvelle J. Ballentine. (MLB) Modified docket text on 3/30/2026 (JOS). (Entered: 03/23/2026) |
| 03/20/2026 | 41 | CERTIFICATE of service re 40 Response in Opposition to Motion by Marvelle J. Ballentine. (MLB) (Entered: 03/23/2026) |
| 03/20/2026 | 42 | NOTICE of Designated Communication Protocol by Marvelle J. Ballentine (Attachments: # 1 Declaration of Marvelle J. Ballentine)(MLB) (Entered: 03/23/2026) |
| 03/23/2026 | 39 | Time Sensitive MOTION for Miscellaneous Relief, specifically for Scheduling Directive Regarding Rule 26(f) Conference and Case Management Report by Marvelle J. Ballentine. (MLB) (Chambers Notified) (Entered: 03/23/2026) |
| 03/23/2026 | 43 | CERTIFICATE of service re 19 Amended Complaint by Marvelle J. Ballentine. (MLB) (Entered: 03/23/2026) |
| 03/23/2026 | 44 | NOTICE of Appearance by Elizabeth Turner Jozsi on behalf of Taskus, Inc. (Jozsi, Elizabeth) (Entered: 03/23/2026) |
| 03/23/2026 | 45 | **ORDER of recusal. The Clerk is DIRECTED to reassign this case to another United States Magistrate Judge. Signed by Magistrate Judge Robert M. Norway on 3/23/2026. (CFG)** (Entered: 03/23/2026) |
| 03/23/2026 | 46 | Case Reassigned to Magistrate Judge Daniel C. Irick. New case number: 6:26-cv-376-AGM-DCI. Magistrate Judge Robert M. Norway no longer assigned to the case. Motion(s) REFERRED: 34 MOTION for Extension of Time to File Answer re 19 Amended Complaint . Motion(s) referred to Magistrate Judge Daniel C. Irick. (RN) (Entered: 03/23/2026) |
| 03/23/2026 | 47 | **ENDORSED ORDER striking 37 Disclosure Statement for failure to comply with Local Rule 3.03, which requires the use of the standard form from the Clerk or the Court's website. The Clerk is directed to strike 37 Disclosure Statement. Signed by Judge Anne-Leigh Gaylord Moe on 3/23/2026. (LIA)** (Entered: 03/23/2026) |

| 03/23/2026 | 48 | MOTION to Dismiss for Failure to State a Claim by Taskus, Inc.. (Generotti, Stephanie) (Entered: 03/23/2026) |
| 03/24/2026 | 49 | **ENDORSED ORDER finding as moot 34 Time-Sensitive Motion for Extension of Time, as a motion to dismiss was filed. Signed by Magistrate Judge Daniel C. Irick on 3/24/2026. (Irick, Daniel) (Entered: 03/24/2026)** |
| 03/24/2026 | 50 | **ENDORSED ORDER denying 39 Time-Sensitive Motion for Scheduling Directive Regarding Rule 26(f) Conference and Case Management Report. The parties shall comply with the Federal Rules of Civil Procedure, the Local Rules, and the orders of this Court. Signed by Magistrate Judge Daniel C. Irick on 3/24/2026. (Irick, Daniel) (Entered: 03/24/2026)** |
| 03/24/2026 | 51 | DISCLOSURE STATEMENT under Rule 7.1, Federal Rules of Civil Procedure, and Local Rule 3.03 by Taskus, Inc. identifying Other Affiliate Blackstone Inc. for Taskus, Inc. (Generotti, Stephanie) Modified text on 3/24/2026 (AW). (Entered: 03/24/2026) |
| 03/26/2026 | 52 | NOTICE of Supplement to Local rule 3.01(g) re; by Taskus, Inc. re 48 MOTION to Dismiss (Jozsi, Elizabeth) Modified text on 3/26/2026 (BD). (Entered: 03/26/2026) |
| 03/27/2026 | 53 | STRICKEN AND REMOVED PER 57 ORDER. RESPONSE in Opposition re 48 MOTION to Dismiss for Failure to State a Claim filed by Marvelle J. Ballentine. (LJC) Modified docket text on 3/31/2026 (JOS). (Entered: 03/27/2026) |
| 03/27/2026 | 54 | MOTION for Leave to File a Reply in Support of Its Motion to Dismiss by Accenture LLP. (Chapleau, Marianna) Motions referred to Magistrate Judge Daniel C. Irick. (Entered: 03/27/2026) |
| 03/27/2026 | 55 | NOTICE of a related action per Local Rule 1.07(c) by Accenture LLP. Related case(s): Yes (Chapleau, Marianna) (Entered: 03/27/2026) |
| 03/30/2026 | 56 | **ENDORSED ORDER denying as moot 54 Motion for Leave to File Reply, as the 40 Response to which the reply is directed is hereby STRICKEN for a failure to comply with Local Rule 3.01(c). The Clerk is directed to delete the 40 Response. On or before 4/6/2026, Plaintiff shall file a response that complies with the Local Rules. Failure to file a compliant response by that date may result in the 29 Motion to Dismiss being treated as unopposed. Further, Plaintiff is reminded that, "Failure to comply with ANY Local Rules or Court Orders may result in the imposition of sanctions including, but not limited to, the dismissal of this action or entry of default without further notice." Doc 23. Signed by Magistrate Judge Daniel C. Irick on 3/30/2026. (Irick, Daniel) Modified on 3/30/2026 (TNP). (Entered: 03/30/2026)** |
| 03/30/2026 | 57 | **ENDORSED ORDER to strike 53 Response in Opposition to Motion to Dismiss filed by Marvelle J. Ballentine for a failure to comply with Local Rule 3.01(c). The Clerk is directed to delete the 53 Response. On or before 4/6/2026, Plaintiff shall file a response that complies with the Local Rules. Failure to file a compliant response by that date may result in the 48 Motion to Dismiss being treated as unopposed. Further, Plaintiff is reminded that, "Failure to comply with ANY Local Rules or Court Orders may result in the imposition of sanctions including, but not limited to, the dismissal of this action or entry of default without further notice." Doc 23. Signed by Magistrate Judge Daniel C. Irick on 3/30/2026. (Irick, Daniel) (Entered: 03/30/2026)** |
| 03/30/2026 | 58 | CERTIFICATE of compliance re 25 Standing Order / *Certification of No Third-Party Litigation Funding* by Accenture LLP. (Chapleau, Marianna) (Entered: 03/30/2026) |
| 03/31/2026 | 59 | CERTIFICATE of compliance re 25 Standing Order /*Certification of No Third-Party Litigation Funding* by Taskus, Inc.. (Generotti, Stephanie) (Entered: 03/31/2026) |

| 04/02/2026 | 60 | Time-Sensitive MOTION for Miscellaneous Relief, specifically for Administrative Reassignment by Marvelle J. Ballentine. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C) (chambers notified)(LJC) (Entered: 04/02/2026) |
|---|---|---|
| 04/02/2026 | 61 | Urgent MOTION for Recusal and to Identify Deficiency, Toll Cure Period, and Clarify Service re 57 Order to Strike, 56 Order on Motion for Leave to File Document, by Marvelle J. Ballentine. (Attachments: # 1 Exhibit A, # 2 Exhibit B) Chambers notified. (LJC) (Entered: 04/02/2026) |
| 04/02/2026 | 62 | DECLARATION of Marvelle J. Ballentine in Support of 61 MOTION for Recusal re 57 Order to Strike, 56 Order on Motion for Leave to File Document, by Marvelle J. Ballentine. (LJC) (Entered: 04/02/2026) |
| 04/02/2026 | 63 | STRICKEN AND IMAGES REMOVED PER COURT'S ENDORSED ORDER 79***RESPONSE in Opposition re 48 MOTION to Dismiss for Failure to State a Claim filed by Marvelle J. Ballentine. (LJC) Modified text on 4/10/2026 (ABM). (Entered: 04/02/2026) |
| 04/02/2026 | 64 | STRICKEN AND IMAGES REMOVED PER COURT'S ENDORSED ORDER 79***RESPONSE in Opposition re 29 MOTION to Dismiss for Failure to State a Claim filed by Marvelle J. Ballentine. (LJC) Modified text on 4/10/2026 (ABM). (Entered: 04/02/2026) |
| 04/02/2026 | 65 | **ENDORSED ORDER denying 61 Plaintiff's Urgent Motion for Recusal and to Identify Deficiency, Toll Cure Period, and Clarify Service. Signed by Judge Anne-Leigh Gaylord Moe on 4/2/2026. (TAH)** (Entered: 04/02/2026) |
| 04/02/2026 | 66 | **ENDORSED ORDER denying 60 Time-Sensitive Petition for Administrative Reassignment. Signed by Judge Anne-Leigh Gaylord Moe on 4/2/2026. (TAH)** (Entered: 04/02/2026) |
| 04/07/2026 | 67 | MOTION for Leave to File Reply in Support of Motion to Dismiss by Accenture LLP. (Chapleau, Marianna) Motions referred to Magistrate Judge Daniel C. Irick. (Entered: 04/07/2026) |
| 04/07/2026 | 69 | STRICKEN AND IMAGES REMOVED PER COURT'S ENDORSED ORDER 80***NOTICE of Referral to The United States Senate Committee on the Judiciary by Marvelle J. Ballentine. (Attachments: # 1 Exhibit A)(MLB) Modified text on 4/10/2026 (ABM). (Entered: 04/08/2026) |
| 04/07/2026 | 70 | STRICKEN AND IMAGES REMOVED PER COURT'S ENDORSED ORDER 80***NOTICE of Referral to the Department of Justice, Child Exploitation and Obscenity Section by Marvelle J. Ballentine. (Attachments: # 1 Exhibit A)(MLB) Modified text on 4/10/2026 (ABM). (Entered: 04/08/2026) |
| 04/07/2026 | 71 | STRICKEN AND IMAGES REMOVED PER COURT'S ENDORSED ORDER 80***NOTICE of Referral to the Congressional Black Caucus by Marvelle J. Ballentine. (Attachments: # 1 Exhibit A)(MLB) Modified text on 4/10/2026 (ABM). (Entered: 04/08/2026) |
| 04/07/2026 | 72 | STRICKEN AND IMAGES REMOVED PER COURT'S ENDORSED ORDER 80***NOTICE of Referral to the United States House Committee on the Judiciary by Marvelle J. Ballentine. (Attachments: # 1 Exhibit A)(MLB) Modified text on 4/10/2026 (ABM). (Entered: 04/08/2026) |
| 04/07/2026 | 73 | STRICKEN AND IMAGES REMOVED PER COURT'S ENDORSED ORDER 80***NOTICE of Referral to the Federal Trade Commission by Marvelle J. Ballentine. |

| | | |
|---|---|---|
| | | (Attachments: # 1 Exhibit A)(MLB) Modified text on 4/10/2026 (ABM). (Entered: 04/08/2026) |
| 04/07/2026 | 74 | STRICKEN AND IMAGES REMOVED PER COURT'S ENDORSED ORDER 80***NOTICE of Referral to the United States House Committee on Energy and Commerce by Marvelle J. Ballentine. (Attachments: # 1 Exhibit A)(MLB) Modified text on 4/10/2026 (ABM). (Entered: 04/08/2026) |
| 04/07/2026 | 75 | STRICKEN AND IMAGES REMOVED PER COURT'S ENDORSED ORDER 80***NOTICE of Referral to the United States Senate Committee on Commerce, SCience, and Transportation by Marvelle J. Ballentine. (Attachments: # 1 Exhibit A)(MLB) Modified text on 4/10/2026 (ABM). (Entered: 04/08/2026) |
| 04/07/2026 | 76 | STRICKEN AND IMAGES REMOVED PER COURT'S ENDORSED ORDER 80***NOTICE of Constituent Correspondence to the Honorable Rick Scott, United States Senator by Marvelle J. Ballentine. (Attachments: # 1 Exhibit A)(MLB) Modified text on 4/10/2026 (ABM). (Entered: 04/08/2026) |
| 04/07/2026 | 77 | STRICKEN AND IMAGES REMOVED PER COURT'S ENDORSED ORDER 80***NOTICE of Constituent Correspondence to the Honorable Ashley Moody, United States Senator by Marvelle J. Ballentine. (Attachments: # 1 Exhibit A)(MLB) Modified text on 4/10/2026 (ABM). (Entered: 04/08/2026) |
| 04/07/2026 | 78 | STRICKEN AND IMAGES REMOVED PER COURT'S ENDORSED ORDER 80***NOTICE of Constituent Correspondence to the Honorable Daniel Webster, United States Representative by Marvelle J. Ballentine. (Attachments: # 1 Exhibit A)(MLB) Modified text on 4/10/2026 (ABM). (Entered: 04/08/2026) |
| 04/08/2026 | 68 | **ORDER ON DISCOVERY MOTIONS. Signed by Magistrate Judge Daniel C. Irick on 1/2/2020. (TNP)** (Entered: 04/08/2026) |
| 04/09/2026 | 79 | **ENDORSED ORDER to strike 63 Plaintiff's Opposition to Defendant Taskus, Inc.'s Motion to Dismiss and 64 Plaintiff's Opposition to Defendant Accenture's Motion to Dismiss. The responses violate Local Rule 3.01(c) ("A party responding to a motion or brief may file a legal memorandum no longer than twenty pages."); see also Orders at Docs. 56 and 57. The Clerk is directed to delete the documents. Further, Plaintiff is again reminded that, "Failure to comply with ANY Local Rules or Court Orders may result in the imposition of sanctions including, but not limited to, the dismissal of this action or entry of default without further notice." Doc 23. Signed by Magistrate Judge Daniel C. Irick on 4/9/2026. (Irick, Daniel)** (Entered: 04/09/2026) |
| 04/09/2026 | 80 | **ENDORSED ORDER to strike 70 Notice filed by Marvelle J. Ballentine, 72 Notice filed by Marvelle J. Ballentine, 69 Notice filed by Marvelle J. Ballentine, 77 Notice filed by Marvelle J. Ballentine, 74 Notice filed by Marvelle J. Ballentine, 76 Notice filed by Marvelle J. Ballentine, 71 Notice filed by Marvelle J. Ballentine, 78 Notice filed by Marvelle J. Ballentine, 75 Notice filed by Marvelle J. Ballentine, 73 Notice filed by Marvelle J. Ballentine. Plaintiff's notices attach correspondence to non-parties and state that no relief is requested. Thus, there is no basis to file such documents on the docket of this case. Plaintiff shall refrain from filing such notices on the docket of this case. The Clerk is directed to delete the documents. Signed by Magistrate Judge Daniel C. Irick on 4/9/2026. (Irick, Daniel)** (Entered: 04/09/2026) |
| 04/09/2026 | 81 | **ENDORSED ORDER denying as moot 67 Motion for Leave to File Reply. Signed by Magistrate Judge Daniel C. Irick on 4/9/2026. (Irick, Daniel)** (Entered: 04/09/2026) |
| 04/09/2026 | 82 | NOTICE of Intent to Serve Subpoena on National Center for Missing & Exploited Children by Marvelle J. Ballentine (Attachments: # 1 Exhibit A)(LJC) (Entered: 04/09/2026) |

| 04/09/2026 | 83 | NOTICE of Lead Counsel Designation by Diana Marie Fassbender on behalf of Meta Platforms, Inc.. Lead Counsel: Diana Marie Fassbender. (Fassbender, Diana) (Entered: 04/09/2026) |
| --- | --- | --- |
| 04/09/2026 | 84 | DISCLOSURE STATEMENT under Rule 7.1, Federal Rules of Civil Procedure, and Local Rule 3.03 by Meta Platforms, Inc.. (Fassbender, Diana) (Entered: 04/09/2026) |
| 04/09/2026 | 85 | MOTION to Dismiss Plaintiff's First Amended Complaint by Meta Platforms, Inc.. (Fassbender, Diana) (Entered: 04/09/2026) |
| 04/09/2026 | 86 | DECLARATION of Michael Duffey re 85 MOTION to Dismiss Plaintiff's First Amended Complaint by Meta Platforms, Inc.. (Attachments: # 1 Exhibit A)(Fassbender, Diana) (Entered: 04/09/2026) |
| 04/09/2026 | 87 | MOTION to Change Venue / Transfer Case by Meta Platforms, Inc.. (Fassbender, Diana) (Entered: 04/09/2026) |
| 04/09/2026 | 88 | DECLARATION of Jennifer Allen re 87 MOTION to Change Venue / Transfer Case by Meta Platforms, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Fassbender, Diana) (Entered: 04/09/2026) |
| 04/10/2026 | 89 | OBJECTION re 80 Order to Strike, by Marvelle J. Ballentine by Marvelle J. Ballentine. (ARL) (Entered: 04/10/2026) |
| 04/10/2026 | 90 | DECLARATION of Marvelle J. Ballentine re 89 Objection by Marvelle J. Ballentine. (ARL) (Entered: 04/10/2026) |

| PACER Service Center | | | |
| --- | --- | --- | --- |
| **Transaction Receipt** | | | |
| 04/10/2026 22:09:34 | | | |
| **PACER Login:** | glazuser | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 6:26-cv-00376-AGM-DCI |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

# EXHIBIT B

Case No. 6:26-cv-00286-AGM-DCI
Full Docket (M.D. Fla.)

Query   Reports   Utilities   Help   Log Out

# U.S. District Court
## Middle District of Florida (Orlando)
### CIVIL DOCKET FOR CASE #: 6:26-cv-00286-AGM-DCI

| | |
|---|---|
| Ballentine v. Accenture LLP et al | Date Filed: 02/09/2026 |
| Assigned to: Judge Anne-Leigh Gaylord Moe | Jury Demand: Plaintiff |
| Referred to: Magistrate Judge Daniel C. Irick | Nature of Suit: 320 Assault Libel & Slander |
| Demand: $9,999,000 | Jurisdiction: Diversity |
| Cause: 28:1332 Diversity-Libel, Assault, Slander | |

**Plaintiff**

**Marvelle J. Ballentine**
*also known as*
Jay

represented by **Marvelle J. Ballentine**
7862 W. Irlo Bronson Memorial Hwy.
#82
Kissimmee, FL 34747
407-794-6503
PRO SE

V.

**Defendant**

**Accenture LLP**
*TERMINATED: 03/04/2026*

**Defendant**

**Devin S. Anderson**

represented by **Marianna Chapleau**
Kirkland & Ellis LLP
98 S.E. 7th Street
Suite 700
Miami, FL 33131
203-675-7650
Email: mchapleau@kirkland.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ariel Deray Deitchman**
Kirkland & Ellis LLP
98 S.E. 7th Street
Miami, FL 33131
305-432-5676
Email: ariel.deitchman@kirkland.com
*ATTORNEY TO BE NOTICED*

**Lauren M. Spiwak**
Kirkland & Ellis LLP
4550 Travis Street
Dallas, TX 75205
214-432-5042

Fax: 214-972-1771
Email: lauren.spiwak@kirkland.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Patrick Owen Malone**
Kirkland & Ellis LLP
Three Brickell City Centre, 98 S.E. 7th
Street
Suite 700
Miami, FL 33131
305-432-5703
Email: patrick.malone@kirkland.com
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**Kirkland & Ellis LLP**
*TERMINATED: 03/04/2026*

<u>Defendant</u>

**Meta Platforms, Inc.**                    represented by **Diana Marie Fassbender**
Orrick, Herrington & Sutcliffe LLP
215 NW 24th Street
Suite 200
Miami, FL 33127
202-339-8533
Fax: 202-339-8500
Email: dszego@orrick.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**Christopher W. Keegan**                    represented by **Marianna Chapleau**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ariel Deray Deitchman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lauren M. Spiwak**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Patrick Owen Malone**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|

| 02/09/2026 | 1 | COMPLAINT against All Defendants with Jury Demand Filing fee $405, receipt number 117712 filed by Marvelle J. Ballentine. (Attachments: # 1 Civil Cover Sheet)(LJC) Modified on 2/9/2026 as to docket text (LJC). (Entered: 02/09/2026) |
|---|---|---|
| 02/09/2026 | 2 | SUMMONS issued as to Accenture LLP, Kirland & Ellis LLP, Meta Platforms, Inc. (in person). (LJC) (Entered: 02/09/2026) |
| 02/09/2026 | 3 | MOTION for Miscellaneous Relief, specifically to File Electronically by Marvelle J. Ballentine. (LJC) (Entered: 02/09/2026) |
| 02/11/2026 | 4 | AMENDED COMPLAINT against All Defendants with Jury Demand. filed by Marvelle J. Ballentine. Related document: 1 Complaint, filed by Marvelle J. Ballentine.(LJC) (Entered: 02/11/2026) |
| 02/11/2026 | 5 | SUMMONS issued as to All Defendants (in person). (LJC) Modified on 2/11/2026 as to docket text (LJC). (Entered: 02/11/2026) |
| 02/13/2026 | 6 | **NOTICE TO COUNSEL AND PARTIES: The Middle District of Florida's revised Local Rules became effective November 1, 2025, and can be found on the Court's public website https://www.flmd.uscourts.gov/local-rules. For a just and efficient resolution of this case, the parties are DIRECTED to read and comply with the Middle District of Florida's Local Rules. See Local Rule 1.01(a). Failure to comply with ANY Local Rules or Court Orders may result in the imposition of sanctions including, but not limited to, the dismissal of this action or entry of default without further notice. Signed by Judge Anne-Leigh Gaylord Moe on 2/13/2026. (RMF)** (Entered: 02/13/2026) |
| 02/13/2026 | 7 | NOTICE of Local Rule 3.02(a)(2), which requires the parties in every civil proceeding, except those described in subsection (d), to file a case management report (CMR) using the uniform form at www.flmd.uscourts.gov. The CMR must be filed (1) within forty days after any defendant appears in an action originating in this court, (2) within forty days after the docketing of an action removed or transferred to this court, or (3) within seventy days after service on the United States attorney in an action against the United States, its agencies or employees. Judges may have a special CMR form for certain types of cases. These forms can be found at www.flmd.uscourts.gov under the Forms tab for each judge. (Signed by Deputy Clerk). (RMF) (Entered: 02/13/2026) |
| 02/17/2026 | 8 | RETURN of service executed on 02/12/2026 by Marvelle J. Ballentine as to Meta Platforms, Inc. (LJC) (Entered: 02/17/2026) |
| 02/17/2026 | 9 | RETURN of service executed on 02/12/2026 by Marvelle J. Ballentine as to Devin S. Anderson. (LJC) (Entered: 02/17/2026) |
| 02/17/2026 | 10 | RETURN of service executed on 02/12/2026 by Marvelle J. Ballentine as to Accenture LLP. (LJC) (Entered: 02/17/2026) |
| 02/18/2026 | 11 | **ORDER: Plaintiff Marvelle J. Ballentine is ordered to show cause as to why the case should not be dismissed for failure to sufficiently allege diversity of citizenship to support federal subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Show Cause Response due by 3/4/2026. Signed by Judge Anne-Leigh Gaylord Moe on 2/18/2026. (LIA)** (Entered: 02/18/2026) |
| 02/18/2026 | 12 | RETURN of service executed on 02/12/2026 by Marvelle J. Ballentine as to Kirkland & Ellis LLP. (LJC) (Entered: 02/19/2026) |
| 02/19/2026 | 13 | **ORDER ON DISCOVERY MOTIONS. Signed by Magistrate Judge Daniel C. Irick on 1/2/2020. (TNP)** (Entered: 02/19/2026) |

| 02/19/2026 | 14 | RESPONSE TO ORDER TO SHOW CAUSE re 11 Order to show cause filed by Marvelle J. Ballentine. (LJC) (Entered: 02/19/2026) |
|---|---|---|
| 02/19/2026 | 15 | MOTION to Amend 4 Amended Complaint by Marvelle J. Ballentine. (LJC) Motions referred to Magistrate Judge Daniel C. Irick. (Proposed Order not provided). Modified on 2/19/2026 as to docket text (LJC). (Entered: 02/19/2026) |
| 02/23/2026 | 16 | DISCLOSURE STATEMENT under Rule 7.1, Federal Rules of Civil Procedure, and Local Rule 3.03 by Marvelle J. Ballentine. (LJC) (Entered: 02/23/2026) |
| 02/23/2026 | 17 | NOTICE of a related action per Local Rule 1.07(c) by Marvelle J. Ballentine. Related case(s): Yes (LJC) (Entered: 02/23/2026) |
| 02/25/2026 | 18 | **ENDORSED ORDER granting in part 15 Motion Under Fed.R.Civ.P. 21 to Drop Certain Defendants Without Prejudice. The Motion is granted to the extent that, on or before 3/4/2026, Plaintiff is directed to file a Second Amended Complaint that identifies the Defendants in this case and the citizenship of all remaining parties. The Second Amended Complaint may not reference or incorporate any prior pleading, and must include all claims, allegations, and parties. This Order does not purport to discharge or rule upon the pending 11 Order to Show Cause. The Motion is denied without prejudice to the extent it requests further relief. Signed by Magistrate Judge Daniel C. Irick on 2/25/2026. (Irick, Daniel) (Entered: 02/25/2026)** |
| 03/04/2026 | 19 | WAIVER of service returned executed on 03/03/2026 by Marvelle J. Ballentine as to Christopher W. Keegan. (LJC) (Entered: 03/04/2026) |
| 03/04/2026 | 20 | Second AMENDED COMPLAINT against Devin S. Anderson, Christopher W. Keegan, Meta Platforms, Inc. with Jury Demand. Terminating Accenture LLP and Kirkland & Ellis LLP filed by Marvelle J. Ballentine. Related document: 4 Amended Complaint filed by Marvelle J. Ballentine.(LJC) (Entered: 03/04/2026) |
| 03/05/2026 | 21 | **STANDING ORDER REQUIRING DISCLOSURE OF THIRD-PARTY LITIGATION FUNDING. Signed by Judge Anne-Leigh Gaylord Moe on 3/5/2026. (RMF) (Entered: 03/05/2026)** |
| 03/09/2026 | 22 | NOTICE of a related action per Local Rule 1.07(c) by Marvelle J. Ballentine. Related case(s): Yes (LJC) (Entered: 03/09/2026) |
| 03/09/2026 | 23 | NOTICE by Marvelle J. Ballentine re 21 Standing Order, Certification of No Third-Party Litigation Funding. (LJC) (Entered: 03/09/2026) |
| 03/18/2026 | 24 | DISCLOSURE STATEMENT under Rule 7.1, Federal Rules of Civil Procedure, and Local Rule 3.03 by Devin S. Anderson. (Chapleau, Marianna) (Entered: 03/18/2026) |
| 03/18/2026 | 25 | DISCLOSURE STATEMENT under Rule 7.1, Federal Rules of Civil Procedure, and Local Rule 3.03 by Christopher W. Keegan. (Chapleau, Marianna) (Entered: 03/18/2026) |
| 03/18/2026 | 26 | MOTION to Dismiss 20 Second Amended Complaint for Failure to State a Claim by Devin S. Anderson, Christopher W. Keegan. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(Chapleau, Marianna) Modified on 3/19/2026 as to docket text (LJC). (Entered: 03/18/2026) |
| 03/19/2026 | 27 | NOTICE TO COUNSEL Lauren M. Spiwak Local Rule 2.01(c), Special Admission - File a Motion to Appear Pro Hac Vice. Co-counsel with filing rights may electronically file the motion on behalf of the lawyer seeking Special Admission or the motion may be filed in paper format; Pay the Special Admission Fee; (Signed by Deputy Clerk). (LJC) (Entered: 03/19/2026) |

| | | |
|---|---|---|
| 03/20/2026 | 29 | RESPONSE in Opposition re 26 MOTION to Dismiss for Failure to State a Claim filed by Marvelle J. Ballentine. (MLB) (Entered: 03/23/2026) |
| 03/20/2026 | 30 | CERTIFICATE of service re 29 Response in Opposition to Motion by Marvelle J. Ballentine. (MLB) (Entered: 03/23/2026) |
| 03/20/2026 | 31 | NOTICE of Designated Communication Protocol by Marvelle J. Ballentine. (Attachments: # 1 Declaration of Marvelle J. Ballentine)(MLB) (Entered: 03/23/2026) |
| 03/23/2026 | 28 | Time Sensitive MOTION for Miscellaneous Relief, specifically for Scheduling Directive Regarding Rule 26(f) Conference and Case Management Report by Marvelle J. Ballentine. (MLB) (Chambers Notified) (Entered: 03/23/2026) |
| 03/23/2026 | 32 | CERTIFICATE of Service re 20 Amended Complaint by Marvelle J. Ballentine. (MLB) (Entered: 03/23/2026) |
| 03/27/2026 | 33 | MOTION for Leave to File a Reply in Support of Their Motion to Dismiss by Devin S. Anderson, Christopher W. Keegan. (Chapleau, Marianna) Motions referred to Magistrate Judge Daniel C. Irick. (Entered: 03/27/2026) |
| 03/27/2026 | 34 | NOTICE of a related action per Local Rule 1.07(c) by Devin S. Anderson, Christopher W. Keegan. Related case(s): Yes (Chapleau, Marianna) (Entered: 03/27/2026) |
| 03/27/2026 | 35 | MOTION for Lauren M. Spiwak to appear pro hac vice, Special Admission fee paid, Receipt No. AFLMDC-24683151 for $150 by Devin S. Anderson, Christopher W. Keegan. (Chapleau, Marianna) Motions referred to Magistrate Judge Daniel C. Irick. (Entered: 03/27/2026) |
| 03/30/2026 | 36 | **ENDORSED ORDER granting 33 Motion for Leave to File Reply. On or before 4/3/2026, Defendants may file the requested reply. Signed by Magistrate Judge Daniel C. Irick on 3/30/2026. (Irick, Daniel)** (Entered: 03/30/2026) |
| 03/30/2026 | 37 | **ENDORSED ORDER granting 35 Motion to Appear Pro Hac Vice. Lauren M. Spiwak is granted special admission to practice in the Middle District for purposes of this action pursuant to Local Rule 2.01(c), provided counsel shall register for and use the electronic filing system as adopted by the Court. Signed by Magistrate Judge Daniel C. Irick on 3/30/2026. (Irick, Daniel)** (Entered: 03/30/2026) |
| 03/30/2026 | 38 | CERTIFICATE of compliance re 21 Standing Order / *Certification of No Third-Party Litigation Funding* by Devin S. Anderson, Christopher W. Keegan. (Chapleau, Marianna) (Entered: 03/30/2026) |
| 04/02/2026 | 39 | Time-Sensitive MOTION for Miscellaneous Relief, specifically for Administrative Reassignment by Marvelle J. Ballentine. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(LJC) (Entered: 04/02/2026) |
| 04/02/2026 | 40 | DECLARATION of Marvelle J. Ballentine in Support of Plaintiff's Urgent Motion for Recusal and to Identify Deficiency, Toll Cure Period, and Clarify Service by Marvelle J. Ballentine (Per Plaintiff, motion not to be filed in this case). (LJC) (Entered: 04/02/2026) |
| 04/02/2026 | 41 | **ENDORSED ORDER denying 39 Time-Sensitive Petition for Administrative Reassignment. Signed by Judge Anne-Leigh Gaylord Moe on 4/2/2026. (TAH)** (Entered: 04/02/2026) |
| 04/03/2026 | 42 | REPLY to Response to Motion re 26 MOTION to Dismiss for Failure to State a Claim / *Reply in Support of Their Motion to Dismiss All Claims Against Them* filed by Devin S. Anderson, Christopher W. Keegan. (Attachments: # 1 Exhibit 1)(Chapleau, Marianna) (Entered: 04/03/2026) |

| 04/03/2026 | 43 | NOTICE of Lead Counsel Designation by Diana Marie Fassbender on behalf of Meta Platforms, Inc.. Lead Counsel: Diana Marie Fassbender. (Fassbender, Diana) (Entered: 04/03/2026) |
|---|---|---|
| 04/03/2026 | 44 | MOTION to Dismiss Plaintiff's Second Amended Complaint by Meta Platforms, Inc.. (Fassbender, Diana) (Entered: 04/03/2026) |
| 04/03/2026 | 45 | DISCLOSURE STATEMENT under Rule 7.1, Federal Rules of Civil Procedure, and Local Rule 3.03 by Meta Platforms, Inc.. (Fassbender, Diana) (Entered: 04/03/2026) |
| 04/09/2026 | 46 | MOTION for Extension of Time to File Response/Reply as to 44 MOTION to Dismiss Plaintiff's Second Amended Complaint by Marvelle J. Ballentine. (ARL) Motions referred to Magistrate Judge Daniel C. Irick. (Entered: 04/09/2026) |
| 04/09/2026 | 47 | NOTICE of Intent to Serve Subpoena on National Center for Missing & Exploited Children by Marvelle J. Ballentine (Attachments: # 1 Exhibit A)(LJC) (Entered: 04/09/2026) |
| 04/10/2026 | 48 | **ENDORSED ORDER granting 46 Motion for Extension of Time to File Response to 44 Motion to Dismiss. Plaintiff's response to the Motion to Dismiss is due by 5/8/2026. However, the Federal Rules of Civil Procedure in many instances provide for additional time for parties who receive service by mail. See Fed.R.Civ.P. 6(d), so service by mail alone is not good cause to extend a deadline. Signed by Magistrate Judge Daniel C. Irick on 4/10/2026. (Irick, Daniel) (Entered: 04/10/2026)** |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/10/2026 22:10:24 | | |
| **PACER Login:** | glazuser | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 6:26-cv-00286-AGM-DCI |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

# EXHIBIT C

Case No. 5:26-cv-00213-AGM-PRL
Full Docket (M.D. Fla.)

**Query** **Reports** **Utilities** **Help** **Log Out**

## U.S. District Court
## Middle District of Florida (Ocala)
## CIVIL DOCKET FOR CASE #: 5:26-cv-00213-AGM-PRL

Ballentine v. Meta Platforms, Inc. et al
Assigned to: Judge Anne-Leigh Gaylord Moe
Referred to: Magistrate Judge Philip R. Lammens
Demand: $9,999,000
Case in other court: Circuit Court of the Fifth Judicial Circuit, 35-
02026-CA-000494-AX
Cause: 28:1332 Diversity-Libel, Assault, Slander

Date Filed: 03/25/2026
Jury Demand: Plaintiff
Nature of Suit: 320 Assault Libel & Slander
Jurisdiction: Diversity

**Plaintiff**

**Marvelle J. Ballentine**                          represented by **Marvelle J. Ballentine**
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
(407) 794-6503
PRO SE

V.

**Defendant**

**Meta Platforms, Inc.**

**Defendant**

**Accenture LLP**                                  represented by **Marianna Chapleau**
Kirkland & Ellis LLP
98 S.E. 7th Street
Suite 700
Miami, FL 33131
203-675-7650
Email: mchapleau@kirkland.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Devin S. Anderson**
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
202-389-5198
Email: devin.anderson@kirkland.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**TaskUs, Inc.**

**Defendant**

**Genpact USA, Inc.**
*TERMINATED: 04/02/2026*

**Defendant**

**Devin S. Anderson**                    represented by    **Marianna Chapleau**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ariel Deray Deitchman**
Kirkland & Ellis LLP
98 S.E. 7th Street
Miami, FL 33131
305-432-5676
Email: ariel.deitchman@kirkland.com
*ATTORNEY TO BE NOTICED*

**Patrick Owen Malone**
Kirkland & Ellis LLP
Three Brickell City Centre, 98 S.E. 7th
Street
Suite 700
Miami, FL 33131
305-432-5703
Email: patrick.malone@kirkland.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kirkland & Ellis LLP**
*TERMINATED: 04/02/2026*

**Defendant**

**Christopher W. Keegan**                    represented by    **Marianna Chapleau**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ariel Deray Deitchman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patrick Owen Malone**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Genpact Limited**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/25/2026 | 1 | COMPLAINT and NOTICE OF REMOVAL from Circuit Court of the Fifth Judicial Circuit in and for Lake County, case number 35-2026-CA-000494-AXXX-01 filed in State Court on March 2, 2026. Filing fee $405, receipt number AFLMDC-24669529 filed by |

| | | |
|---|---|---|
| | | Accenture LLP. (Attachments: # 1 State Court COMPLAINT, # 2 State Court Docket Sheet, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8, # 11 Exhibit 9, # 12 Exhibit 10, # 13 Exhibit 11, # 14 Civil Cover Sheet)(Chapleau, Marianna) (Entered: 03/25/2026) |
| 03/25/2026 | 2 | NOTICE of Lead Counsel Designation by Marianna Chapleau on behalf of Accenture LLP. Lead Counsel: Marianna C. Chapleau. (Chapleau, Marianna) (Entered: 03/25/2026) |
| 03/25/2026 | 3 | DISCLOSURE STATEMENT under Rule 7.1, Federal Rules of Civil Procedure, and Local Rule 3.03 by Accenture LLP identifying Corporate Parent Accenture plc for Accenture LLP.. (Chapleau, Marianna) (Entered: 03/25/2026) |
| 03/25/2026 | 4 | NOTICE of a related action per Local Rule 1.07(c) by Accenture LLP. Related case(s): Yes (Chapleau, Marianna) (Entered: 03/25/2026) |
| 03/26/2026 | 5 | NEW CASE ASSIGNED to Judge Jordan Emery Pratt and Magistrate Judge Philip R. Lammens. New case number: 5:26-cv-213-JEP-PRL. (RLD) (Entered: 03/26/2026) |
| 03/26/2026 | 6 | SUMMONS issued as to Devin S. Anderson, Genpact USA, Inc., Christopher W. Keegan, Meta Platforms, Inc., TaskUs, Inc.. (RLD) (Entered: 03/26/2026) |
| 03/26/2026 | 7 | CONSENT to Removal by Marvelle J. Ballentine. (RLD) (Entered: 03/26/2026) |
| 03/26/2026 | 8 | MOTION for Miscellaneous Relief, specifically for Court Ordered Service of Process on Defendant Devin S. Anderson by Marvelle J. Ballentine. (RLD) (Entered: 03/26/2026) |
| 03/26/2026 | 9 | MOTION to Change Venue / Transfer Case to the Orlando Division by Marvelle J. Ballentine. (RLD) (Entered: 03/26/2026) |
| 03/26/2026 | 10 | MOTION for Miscellaneous Relief, specifically to drop party by Marvelle J. Ballentine. (RLD) (Entered: 03/26/2026) |
| 03/26/2026 | 11 | **NOTICE to pro se litigant. Signed by Magistrate Judge Philip R. Lammens on 3/26/2026. (HAI) (Entered: 03/26/2026)** |
| 03/27/2026 | 12 | NOTICE of Local Rule 3.02(a)(2), which requires the parties in every civil proceeding, except those described in subsection (d), to file a case management report (CMR) using the uniform form at www.flmd.uscourts.gov. The CMR must be filed (1) within forty days after any defendant appears in an action originating in this court, (2) within forty days after the docketing of an action removed or transferred to this court, or (3) within seventy days after service on the United States attorney in an action against the United States, its agencies or employees. Judges may have a special CMR form for certain types of cases. These forms can be found at www.flmd.uscourts.gov under the Forms tab for each judge. (Signed by Deputy Clerk). (TPL) (Entered: 03/27/2026) |
| 03/27/2026 | 13 | MOTION for Devin S. Anderson to appear pro hac vice, Special Admission fee paid, Receipt No. AFLMDC-24683168 for $150 by Accenture LLP. (Chapleau, Marianna) Motions referred to Magistrate Judge Philip R. Lammens. (Entered: 03/27/2026) |
| 03/30/2026 | 14 | NOTICE of WITHDRAWAL of motion re 8 Motion for Miscellaneous Relief filed by Marvelle J. Ballentine by Marvelle J. Ballentine. (RLD) (Entered: 03/30/2026) |
| 03/30/2026 | 15 | NOTICE of WITHDRAWAL of motion re 9 Motion to Change Venue / Transfer Case filed by Marvelle J. Ballentine by Marvelle J. Ballentine. (RLD) (Entered: 03/30/2026) |
| 03/31/2026 | 16 | **ORDER granting 13 motion of Devin S. Anderson, Esq. to appear pro hac vice. Signed by Magistrate Judge Philip R. Lammens on 3/31/2026. (AR) (Entered: 03/31/2026)** |

| 03/31/2026 | 17 | **ENDORSED ORDER** denying as moot **8** Plaintiff's "Motion for Court-Ordered Service of Process on Defendant Devin S. Anderson" and **9** Plaintiff's "Motion to Transfer to Orlando Division" in light of **14** Plaintiff's "Notice of Withdrawal of Motion for Court-Ordered Service (Dkt. 8) and **15** Plaintiff's "Notice of Withdrawal of Motion to Transfer (Dkt. 9)." Signed by Judge Jordan Emery Pratt on 3/31/2026. (TAV) (Entered: 03/31/2026) |
| 04/01/2026 | 18 | **ORDER directing the Clerk to transfer this case to the Honorable Judge Anne-Leigh Gaylord Moe pursuant to Local Rule 1.07(a). Signed by Judge Jordan Emery Pratt on 4/1/2026. (TAV)** (Entered: 04/01/2026) |
| 04/01/2026 | 19 | Case Reassigned to Judge Anne-Leigh Gaylord Moe. New case number: 5:26-cv-213-AGM-PRL. Judge Jordan Emery Pratt no longer assigned to the case. (LMF) (Entered: 04/01/2026) |
| 04/01/2026 | 20 | MOTION to Dismiss for Failure to State a Claim by Accenture LLP. (Attachments: # 1 Exhibit 1)(Chapleau, Marianna) (Entered: 04/01/2026) |
| 04/01/2026 | 21 | DISCLOSURE STATEMENT under Rule 7.1, Federal Rules of Civil Procedure, and Local Rule 3.03 by Devin S. Anderson. (Chapleau, Marianna) (Entered: 04/01/2026) |
| 04/01/2026 | 22 | DISCLOSURE STATEMENT under Rule 7.1, Federal Rules of Civil Procedure, and Local Rule 3.03 by Christopher W. Keegan. (Chapleau, Marianna) (Entered: 04/01/2026) |
| 04/01/2026 | 23 | NOTICE of Lead Counsel Designation by Marianna Chapleau on behalf of Devin S. Anderson, Christopher W. Keegan. Lead Counsel: Marianna C. Chapleau. (Chapleau, Marianna) (Entered: 04/01/2026) |
| 04/01/2026 | 24 | MOTION to Dismiss all Claims Against Them by Devin S. Anderson, Christopher W. Keegan. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Chapleau, Marianna) (Entered: 04/01/2026) |
| 04/02/2026 | 25 | Time-sensitive MOTION for Miscellaneous Relief, specifically for Administrative Reassignment by Marvelle J. Ballentine. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C) (chambers notified)(LJC) (Entered: 04/02/2026) |
| 04/02/2026 | 26 | DECLARATION of Marvelle J. Ballentine in Support of Plaintiff's Urgent Motion for Recusal and to Identify Deficiency, Toll Cure Period, and Clarify Service by Marvelle J. Ballentine. (Per Plaintiff, motion not to be filed in this case). (LJC) (Entered: 04/02/2026) |
| 04/02/2026 | 27 | **STANDING ORDER REQUIRING DISCLOSURE OF THIRD-PARTY LITIGATION FUNDING. Signed by Judge Anne-Leigh Gaylord Moe on 4/2/2026. (RMF)** (Entered: 04/02/2026) |
| 04/02/2026 | 28 | **NOTICE TO COUNSEL AND PARTIES: The Middle District of Florida's revised Local Rules became effective November 1, 2025, and can be found on the Court's public website https://www.flmd.uscourts.gov/local-rules. For a just and efficient resolution of this case, the parties are DIRECTED to read and comply with the Middle District of Florida's Local Rules. See Local Rule 1.01(a). Failure to comply with ANY Local Rules or Court Orders may result in the imposition of sanctions including, but not limited to, the dismissal of this action or entry of default without further notice. Signed by Judge Anne-Leigh Gaylord Moe on 4/2/2026. (RMF)** (Entered: 04/02/2026) |
| 04/02/2026 | 29 | **ENDORSED ORDER** denying **25** Time-Sensitive Petition for Administrative Reassignment. Signed by Judge Anne-Leigh Gaylord Moe on 4/2/2026. (TAH) (Entered: 04/02/2026) |

| 04/02/2026 | 30 | NOTICE by Accenture LLP re 27 Standing Order - *Defendant Accenture LLP's Certification of No Third-Party Litigation Funding* (Chapleau, Marianna) (Entered: 04/02/2026) |
| 04/02/2026 | 31 | NOTICE by Devin S. Anderson, Christopher W. Keegan re 27 Standing Order - *Defendants Devin S. Anderson and Christopher W. Keegan's Certification of No Third-Party Litigation Funding* (Chapleau, Marianna) (Entered: 04/02/2026) |
| 04/02/2026 | 32 | First AMENDED COMPLAINT against Accenture LLP, Devin S. Anderson, Genpact USA, Inc., Christopher W. Keegan, Meta Platforms, Inc., TaskUs, Inc. with Jury Demand. Terminating Kirkland & Ellis LLP filed by Marvelle J. Ballentine.(JG) (Entered: 04/02/2026) |
| 04/07/2026 | 33 | NOTICE of Constituent Correspondence by Marvelle J. Ballentine. (Attachments: # 1 Exhibit Letter)(JG) (Entered: 04/09/2026) |
| 04/08/2026 | 34 | NOTICE of filing Certification of No Third-Party Litigation by Marvelle J. Ballentine re 27 Standing Order. (Attachments: # 1 Mailing Envelope)(JG) (Entered: 04/09/2026) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/10/2026 22:17:06 | | |
| **PACER Login:** | glazuser | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 5:26-cv-00213-AGM-PRL |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

# EXHIBIT D

Case No. 3:25-cv-07671-CRB
Full Docket (N.D. Cal.)

**Query** **Reports** **Utilities** **Help** **Log Out**

ADRMOP,CLOSED,E-ProSe,ProSe,REFDIS

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:25-cv-07671-CRB

Ballentine v. Meta Platforms, Inc
Assigned to: Judge Charles R. Breyer
Referred to: Magistrate Judge Peter H Kang
Cause: 42:1981 Civil Rights

Date Filed: 09/09/2025
Date Terminated: 02/17/2026
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Marvelle J. Ballentine**                      represented by **Marvelle J. Ballentine**
7862 W. Irlo Bronson Memorial Hwy # 82
Kissimmee, FL 34747
407-794-6503
Email: jayballentine@protonmail.com
PRO SE

V.

**Defendant**

**Meta Platforms, Inc**                          represented by **Michelle Lynn Visser**
Orrick, Herrington & Sutcliffe
The Orrick Building
405 Howard Street
San Francisco, CA 94105
(415) 773-5518
Fax: (415) 773-5759
Email: mvisser@orrick.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Accenture LLP**                                represented by **Christopher William Keegan**
Kirkland & Ellis LLP
555 California
27th Floor
San Francisco, CA 94104
415-439-1400
Fax: 415-439-1500
Email: chris.keegan@kirkland.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Devin Anderson**
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004

202-389-5198
Email: devin.anderson@kirkland.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/09/2025 | 1 | COMPLAINT against Accenture LLP, Meta Platforms, Inc (Filing fee $ 405.). Filed by MARVELLE J. BALLENTINE. Consent/Declination due by 9/23/2025. (Attachments: # 1 Civil Cover Sheet, # 2 receipt)(amf, COURT STAFF) (Filed on 9/9/2025) (Entered: 09/09/2025) |
| 09/09/2025 | 2 | **Initial Case Management Scheduling Order with ADR Deadlines: Case Management Statement due by 12/5/2025. Initial Case Management Conference set for 12/12/2025 02:00 PM in San Francisco, - Videoconference Only. (amf, COURT STAFF) (Filed on 9/9/2025)** <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br><br> **(Entered: 09/09/2025)** |
| 09/09/2025 | 3 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by MARVELLE J. BALLENTINE.. (amf, COURT STAFF) (Filed on 9/9/2025) (Entered: 09/09/2025) |
| 09/10/2025 | 4 | Summons Issued as to Accenture LLP, Meta Platforms, Inc. (kmm2, COURT STAFF) (Filed on 9/10/2025) (Entered: 09/10/2025) |
| 09/15/2025 | 5 | CERTIFICATE OF SERVICE by Marvelle J. Ballentine (Ballentine, Marvelle) (Filed on 9/15/2025) (Entered: 09/15/2025) |
| 09/15/2025 | 6 | CERTIFICATE OF SERVICE by Marvelle J. Ballentine *for Accenture LLP* (Ballentine, Marvelle) (Filed on 9/15/2025) (Entered: 09/15/2025) |
| 09/17/2025 | 7 | CLERK'S NOTICE OF IMPENDING REASSIGNMENT TO A U.S. DISTRICT COURT JUDGE: The Clerk of this Court will now reassign this case to a District Judge because a party has not consented to the jurisdiction of a Magistrate Judge. You will be informed by separate notice of the district judge to whom this case is reassigned. <br><br> ALL HEARING DATES PRESENTLY SCHEDULED BEFORE THE CURRENT MAGISTRATE JUDGE ARE VACATED AND SHOULD BE RE-NOTICED FOR HEARING BEFORE THE JUDGE TO WHOM THIS CASE IS REASSIGNED. <br><br> *This is a text only docket entry; there is no document associated with this notice.* (shy, COURT STAFF) (Filed on 9/17/2025) <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br><br> (Entered: 09/17/2025) |
| 09/18/2025 | 8 | **ORDER REASSIGNING CASE** <br><br> IT IS ORDERED that this case is reassigned using a proportionate, random and blind system pursuant to General Order No. 44 to Judge Charles R. Breyer. Magistrate Judge Alex G. Tse no longer assigned to the case. <br><br> Counsel are instructed that all future filings shall bear the updated judicial initials immediately after the case number. Counsel are reminded to verify the location of the judge on the court website. All hearing and trial dates presently scheduled are vacated. |

However, existing briefing schedules for motions remain unchanged. Motions must be renoticed for hearing before the judge to whom the case has been reassigned, but the renoticing of the hearing does not affect the prior briefing schedule. Other deadlines such as those for ADR compliance and discovery cutoff also remain unchanged.

Notice: The assigned judge participates in the Cameras in the Courtroom Pilot Project. See General Order 65 and cand.uscourts.gov/cameras.

Mark B. Busby
Clerk, United States District Court
*(This is a text-only entry generated by the court. There is no document associated with this entry.)*

Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)

(mbc, COURT STAFF) (Filed on 9/18/2025) (Entered: 09/18/2025)

| Date | No. | Entry |
|---|---|---|
| 09/18/2025 | 9 | CLERK'S NOTICE: A Joint Case Management Statement due by 12/12/2025. Initial Case Management Conference set for 12/19/2025 at 8:30 AM in San Francisco - Videoconference Only. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (ls, COURT STAFF) (Filed on 9/18/2025) <br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 09/18/2025) |
| 09/25/2025 | 10 | Rule 7.1 Disclosures by Meta Platforms, Inc (Visser, Michelle) (Filed on 9/25/2025) (Entered: 09/25/2025) |
| 09/25/2025 | 11 | STIPULATION *for Extension of Defendant Meta Platforms, Inc.'s Time to Respond to Complaint* filed by Meta Platforms, Inc. (Visser, Michelle) (Filed on 9/25/2025) (Entered: 09/25/2025) |
| 09/26/2025 | 12 | NOTICE of Appearance filed by Christopher William Keegan on behalf of Accenture LLP (Keegan, Christopher) (Filed on 9/26/2025) (Entered: 09/26/2025) |
| 09/26/2025 | 13 | Corporate Disclosure Statement by Accenture LLP (Keegan, Christopher) (Filed on 9/26/2025) (Entered: 09/26/2025) |
| 09/26/2025 | 14 | Certificate of Interested Entities by Accenture LLP (Keegan, Christopher) (Filed on 9/26/2025) (Entered: 09/26/2025) |
| 09/26/2025 | 15 | STIPULATION *re Extension of Time To File Response to Plaintiff's Complaint* filed by Accenture LLP. (Keegan, Christopher) (Filed on 9/26/2025) (Entered: 09/26/2025) |
| 09/26/2025 | | Electronic filing error. Filer did not add all interested parties when prompted. Re-file this document in its entirety and when prompted, enter all affiliates or corporate parents. Re: 13 Certificate of Interested Entities filed by Accenture LLP, 14 Certificate of Interested Entities filed by Accenture LLP (jml, COURT STAFF) (Filed on 9/26/2025) (Entered: 09/26/2025) |
| 09/26/2025 | 16 | Corporate Disclosure Statement by Accenture LLP identifying Corporate Parent Accenture plc (Ireland) for Accenture LLP. (Keegan, Christopher) (Filed on 9/26/2025) (Entered: 09/26/2025) |
| 09/26/2025 | 17 | Certificate of Interested Entities by Accenture LLP identifying Corporate Parent Accenture plc (Ireland) for Accenture LLP. (Keegan, Christopher) (Filed on 9/26/2025) (Entered: 09/26/2025) |

| 10/03/2025 | 18 | MOTION for leave to appear in Pro Hac Vice *for Devin S. Anderson* ( Filing fee $ 328, receipt number ACANDC-21203140.) Filing fee previously paid on 10/03/2025 filed by Accenture LLP. (Attachments: # 1 Exhibit Certificate of Good Standing)(Anderson, Devin) (Filed on 10/3/2025) (Entered: 10/03/2025) |
|---|---|---|
| 10/07/2025 | 19 | **ORDER by Judge Charles R. Breyer: Granting 18 Motion for Pro Hac Vice, Devin S. Anderson. (ls, COURT STAFF) (Filed on 10/7/2025)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br><br>**(Entered: 10/07/2025)** |
| 10/08/2025 | 20 | MOTION to Shorten Time *Initial Case Management Conference*, MOTION for Extension of Time to File Response/Reply *Opposition to Defendants' Rule 12 Motions* filed by Marvelle J. Ballentine. (Attachments: # 1 Proposed Order)(Ballentine, Marvelle) (Filed on 10/8/2025) (Entered: 10/08/2025) |
| 10/09/2025 | 21 | MOTION for Protective Order *re Preservation of Evidence* filed by Marvelle J. Ballentine. Responses due by 10/23/2025. Replies due by 10/30/2025. (Attachments: # 1 Proposed Order)(Ballentine, Marvelle) (Filed on 10/9/2025) (Entered: 10/09/2025) |
| 10/09/2025 | 22 | MOTION for Protective Order *re Preservation of Evidence (Accenture LLP)* filed by Marvelle J. Ballentine. Responses due by 10/23/2025. Replies due by 10/30/2025. (Attachments: # 1 Proposed Order)(Ballentine, Marvelle) (Filed on 10/9/2025) (Entered: 10/09/2025) |
| 10/10/2025 | 23 | **ORDER REFERRING CASE to Magistrate Judge for Discovery purposes. Signed by Judge Charles R. Breyer on 10/10/2025. (ls, COURT STAFF) (Filed on 10/10/2025)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br><br>**(Entered: 10/10/2025)** |
| 10/10/2025 | 24 | CASE REFERRED to Magistrate Judge Peter H Kang for Discovery. (ejk, COURT STAFF) (Filed on 10/10/2025) (Entered: 10/10/2025) |
| 10/14/2025 | 25 | **[IN-CHAMBERS TEXT ONLY ORDER]:** This case has been referred to the undersigned for discovery. *See* Dkt. 23 . Accordingly, the Parties shall review and comply with this Court's Standing Order for Discovery, particularly Section H relating to discovery disputes, which is now applicable to this case.<br><br>The Court has reviewed Plaintiff's 21 22 motions for a targeted preservation order and hereby **ORDERS** the Parties to meet and confer regarding this dispute, as required by Section H.2 of this Court's Standing Order for discovery, by no later than **October 31, 2025**. The Court further **ORDERS** the Parties to file a joint status report regarding the outcome of their conferral on this dispute, including whether the dispute has been resolved, narrowed, or remains wholly unresolved, by no later than **November 4, 2025**. Upon receipt of the joint status report, the Court will direct the Parties thereafter.<br><br>**Signed by Judge Peter H. Kang on 10/14/2025.**<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (phklc2, COURT STAFF) (Filed on 10/14/2025)<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>(Entered: 10/14/2025) |
| 10/14/2025 | 26 | OPPOSITION/RESPONSE (re 20 MOTION to Shorten Time *Initial Case Management Conference* MOTION for Extension of Time to File Response/Reply *Opposition to* |

| | | |
|---|---|---|
| | | *Defendants' Rule 12 Motions* ) filed byAccenture LLP. (Attachments: # 1 Declaration of Devin S. Anderson, # 2 Proposed Order)(Anderson, Devin) (Filed on 10/14/2025) (Entered: 10/14/2025) |
| 10/14/2025 | 27 | OPPOSITION/RESPONSE (re 20 MOTION to Shorten Time *Initial Case Management Conference* MOTION for Extension of Time to File Response/Reply *Opposition to Defendants' Rule 12 Motions* ) and *Cross-Motion to Continue the Case Management Conference* filed byMeta Platforms, Inc. (Attachments: # 1 Declaration of Michelle Visser, # 2 Proposed Order)(Visser, Michelle) (Filed on 10/14/2025) (Entered: 10/14/2025) |
| 10/15/2025 | 28 | REPLY (re 20 MOTION to Shorten Time *Initial Case Management Conference* MOTION for Extension of Time to File Response/Reply *Opposition to Defendants' Rule 12 Motions* ) *Plaintiffs Reply in Support of Civil L.R. 6-3 Motion to Change Time and Opposition to Defendants Cross-Motions* filed byMarvelle J. Ballentine. (Attachments: # 1 Declaration) (Ballentine, Marvelle) (Filed on 10/15/2025) (Entered: 10/15/2025) |
| 10/15/2025 | 29 | MOTION to Shorten Time *for Decision On Pending Civil L.R. 6-3 Motion* filed by Marvelle J. Ballentine. (Attachments: # 1 Declaration)(Ballentine, Marvelle) (Filed on 10/15/2025) (Entered: 10/15/2025) |
| 10/15/2025 | 30 | Notice Of Motion And MOTION to Dismiss *Plaintiffs Complaint Pursuant To Rule 12(B)(6); Memorandum Of Points And Authorities* filed by Meta Platforms, Inc. Motion to Dismiss Hearing set for 12/12/2025 10:00 AM in San Francisco, Courtroom 06, 17th Floor. Responses due by 10/29/2025. Replies due by 11/5/2025. (Attachments: # 1 Duffey Decl, # 2 Ex. A to Duffey Decl, # 3 Proposed Order)(Visser, Michelle) (Filed on 10/15/2025) Modified on 10/16/2025 (jml, COURT STAFF). (Entered: 10/15/2025) |
| 10/15/2025 | 31 | Request for Judicial Notice re 30 MOTION to Dismiss *Defendant Meta Platforms, Inc.s Notice Of Motion And Motion To Dismiss Plaintiffs Complaint Pursuant To Rule 12(B)(6); Memorandum Of Points And Authorities* filed byMeta Platforms, Inc. (Related document(s) 30 ) (Visser, Michelle) (Filed on 10/15/2025) (Entered: 10/15/2025) |
| 10/16/2025 | 32 | **ORDER by Judge Charles R. Breyer denying 20 Motion to Shorten Time; granting 20 Motion for Extension of Time to File Response/Reply. (crblc1, COURT STAFF) (Filed on 10/16/2025)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br><br>**(Entered: 10/16/2025)** |
| 10/16/2025 | 33 | MOTION to Dismiss *Plaintiff's Complaint Pursuant to Rule 12(B)(6); Memorandum of Points and Authorities* filed by Accenture LLP. Motion to Dismiss Hearing set for 1/30/2026 10:00 AM in San Francisco, Courtroom 06, 17th Floor. Responses due by 10/30/2025. Replies due by 11/6/2025. (Attachments: # 1 Declaration of Devin S. Anderson, # 2 Proposed Order)(Anderson, Devin) (Filed on 10/16/2025) (Entered: 10/16/2025) |
| 10/17/2025 | 34 | AMENDED COMPLAINT against All Defendants. Filed by Marvelle J. Ballentine. (Ballentine, Marvelle) (Filed on 10/17/2025) (Entered: 10/17/2025) |
| 10/28/2025 | 35 | CLERK'S NOTICE VACATING MOTIONS TO DISMISS hearing set for December 12, 2025 and January 20, 2026 before the Honorable Charles R. Breyer. An amended complaint was filed on October 17, 2025. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (ls, COURT STAFF) (Filed on 10/28/2025)<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br><br>(Entered: 10/28/2025) |

| 10/28/2025 | 36 | ADMINISTRATIVE MOTION Discovery Management Scheduling Directive *Before Magistrate Judge Peter H. Kang, Discovery Referral);* filed by Marvelle J. Ballentine. Responses due by 11/3/2025. (Attachments: # 1 Proposed Order, # 2 Declaration) (Ballentine, Marvelle) (Filed on 10/28/2025) (Entered: 10/28/2025) |
|---|---|---|
| 10/29/2025 | 37 | MOTION to Shorten Time *for Decision on Plaintiffs Civil L.R. 7-11 Administrative Motion (Rule 26(f) scheduling directive)* filed by Marvelle J. Ballentine. (Attachments: # 1 Proposed Order, # 2 Declaration)(Ballentine, Marvelle) (Filed on 10/29/2025) (Entered: 10/29/2025) |
| 10/30/2025 | 38 | OPPOSITION/RESPONSE (re 36 ADMINISTRATIVE MOTION Discovery Management Scheduling Directive *Before Magistrate Judge Peter H. Kang, Discovery Referral);* ) filed byMeta Platforms, Inc. (Visser, Michelle) (Filed on 10/30/2025) (Entered: 10/30/2025) |
| 10/30/2025 | 39 | REPLY (re 36 ADMINISTRATIVE MOTION Discovery Management Scheduling Directive *Before Magistrate Judge Peter H. Kang, Discovery Referral);* ) *Plaintiff's Opposition to Meta's Cross-Motion and Statement in Further Support of Civil L.R. 7-11 Administrative Motion* filed byMarvelle J. Ballentine. (Attachments: # 1 Proposed Order, # 2 Declaration)(Ballentine, Marvelle) (Filed on 10/30/2025) (Entered: 10/30/2025) |
| 10/31/2025 | | Set Deadline re: 25 Order. Status Report due by 11/4/2025. (jlg, COURT STAFF) (Filed on 10/31/2025) (Entered: 10/31/2025) |
| 10/31/2025 | 40 | MOTION to Dismiss *Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(6); Memorandum of Points and Authorities* filed by Accenture LLP. Motion to Dismiss Hearing set for 1/30/2026 10:00 AM in San Francisco, Courtroom 06, 17th Floor. Responses due by 11/14/2025. Replies due by 11/21/2025. (Attachments: # 1 Declaration of Devin S. Anderson, # 2 Proposed Order)(Anderson, Devin) (Filed on 10/31/2025) (Entered: 10/31/2025) |
| 10/31/2025 | 41 | MOTION to Dismiss filed by Meta Platforms, Inc. Motion to Dismiss Hearing set for 1/30/2026 10:00 AM in San Francisco, Courtroom 06, 17th Floor. Responses due by 11/14/2025. Replies due by 11/21/2025. (Attachments: # 1 Declaration of Michael Duffey, # 2 Exhibit A to Decl. of Michael Duffey, # 3 Proposed Order)(Visser, Michelle) (Filed on 10/31/2025) (Entered: 10/31/2025) |
| 10/31/2025 | 42 | Request for Judicial Notice re 41 MOTION to Dismiss filed byMeta Platforms, Inc. (Related document(s) 41 ) (Visser, Michelle) (Filed on 10/31/2025) (Entered: 10/31/2025) |
| 11/03/2025 | 43 | OPPOSITION/RESPONSE (re 36 ADMINISTRATIVE MOTION Discovery Management Scheduling Directive *Before Magistrate Judge Peter H. Kang, Discovery Referral);* ) filed byAccenture LLP. (Attachments: # 1 Declaration of Devin Anderson, # 2 Proposed Order) (Anderson, Devin) (Filed on 11/3/2025) (Entered: 11/03/2025) |
| 11/03/2025 | 44 | OPPOSITION/RESPONSE (re 40 MOTION to Dismiss *Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(6); Memorandum of Points and Authorities* ) *Plaintiff's Opposition to Accenture's Motion to Dismiss First Amended Complaint* filed byMarvelle J. Ballentine. (Attachments: # 1 Declaration)(Ballentine, Marvelle) (Filed on 11/3/2025) (Entered: 11/03/2025) |
| 11/04/2025 | 45 | STATUS REPORT *Plaintiff's Notice Regarding Dkt. 25 Status Report Submission And Exhibits* by Marvelle J. Ballentine. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit) (Ballentine, Marvelle) (Filed on 11/4/2025) (Entered: 11/04/2025) |
| 11/04/2025 | 46 | JOINT STATUS REPORT by Meta Platforms, Inc. (Visser, Michelle) (Filed on 11/4/2025) Modified on 11/5/2025 (kmm2, COURT STAFF). (Entered: 11/04/2025) |
| 11/10/2025 | 47 | **[IN-CHAMBERS TEXT ONLY ORDER]:** |

Plaintiff's 36 administrative motion seeking a "discovery-management scheduling directive" is **DENIED WITH PREJUDICE** given that the Initial Case Management Conference has already been vacated and the basis for the motion is thus no longer operative.

Plaintiff's 37 motion to shorten time for a decision on the administrative motion is **DENIED WITH PREJUDICE** for failure to demonstrate sufficient good cause or sufficient particularity as to why shortened time was required, especially in light of the fact that the Initial Case Management Conference has already been vacated. *See* Civil L.R. 6-3(a)(1).

Plaintiff's 21 22 motions for a targeted preservation order are **DENIED WITHOUT PREJUDICE** for failure to show entitlement to the relief sought. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding that trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"); *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion.").

**Signed by Judge Peter H. Kang on 11/10/2025.**

*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (phklc2, COURT STAFF) (Filed on 11/10/2025)

Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)

(Entered: 11/10/2025)

| 11/12/2025 | 48 | OPPOSITION/RESPONSE (re 41 MOTION to Dismiss ) *Plaintiffs Opposition To Meta Platform Inc.s Motion To Dismiss First Amended Complaint* filed byMarvelle J. Ballentine. (Ballentine, Marvelle) (Filed on 11/12/2025) (Entered: 11/12/2025) |
|---|---|---|
| 11/18/2025 | 49 | STIPULATION WITH PROPOSED ORDER re 48 Opposition/Response to Motion, 44 Opposition/Response to Motion, *for Extension of Defendant Meta Platforms, Inc. and Accenture LLP's Time to File Reply in Support of Motion to Dismiss* filed by Meta Platforms, Inc. (Attachments: # 1 Proposed Order)(Visser, Michelle) (Filed on 11/18/2025) (Entered: 11/18/2025) |
| 11/19/2025 | 50 | **STIPULATION AND ORDER FOR EXTENSION OF DEFENDANT META PLATFORMS, INC. AND ACCENTURE LLPS TIME TO FILE REPLY IN SUPPORT OF MOTION TO DISMISS by Judge Charles R. Breyer: Granting 49 Stipulation. Replies due by 12/5/2025. (ls, COURT STAFF) (Filed on 11/19/2025)** <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br><br> **(Entered: 11/19/2025)** |
| 11/19/2025 | 51 | CLERK'S NOTICE VACATING CASE MANAGEMENT CONFERENCE set for December 19, 2025 before the Honorable Charles R. Breyer. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (ls, COURT STAFF) (Filed on 11/19/2025) <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br><br> (Entered: 11/19/2025) |
| 12/05/2025 | 52 | REPLY (re 41 MOTION to Dismiss ) filed byMeta Platforms, Inc. (Visser, Michelle) (Filed on 12/5/2025) (Entered: 12/05/2025) |

| 12/05/2025 | 53 | REPLY (re 40 MOTION to Dismiss *Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(6); Memorandum of Points and Authorities* ) filed byAccenture LLP. (Anderson, Devin) (Filed on 12/5/2025) (Entered: 12/05/2025) |
| 01/06/2026 | 54 | Clerk's Notice of Video Recording Request. Video Camera hearing set for 1/30/2026 at 10:00 AM. Objections to Video Recording due 1/13/2026. (ls, COURT STAFF) (Filed on 1/6/2026) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 01/06/2026) |
| 01/20/2026 | 55 | CLERK'S NOTICE VACATING MOTIONS TO DISMISS hearing set for January 30, 2026 before the Honorable Charles R. Breyer. *(This is a text-only entry generated by the court. There is no document associated with this entry.)*. Motion Hearing set for 2/13/2026 at 10:00 AM in San Francisco - Videoconference Only before Judge Charles R. Breyer. This proceeding will be held via a Zoom webinar.<br><br>**Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/crb<br><br>**Court Appearances:** Advanced notice is required of counsel or parties who wish to be identified by the court as making an appearance or will be participating in the argument at the hearing. A list of names and emails must be sent to the CRD at crbcrd@cand.uscourts.gov no later than February 17, 2026 at 3:00 PM PST.<br><br>**Civ LR 77-3(d).** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>Motion Hearing set for 2/13/2026 at 10:00 AM in San Francisco - Videoconference Only before Judge Charles R. Breyer. (ls, COURT STAFF) (Filed on 1/20/2026)<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 01/20/2026) |
| 01/29/2026 | 56 | ADMINISTRATIVE MOTION Plaintiff respectfully requests that the Court take judicial notice of the existence, date, and public-comment window stated in the Oversight Board Announcement. filed by Marvelle J. Ballentine. Responses due by 2/2/2026. (Attachments: # 1 Proposed Order, # 2 Declaration, # 3 Exhibit)(Ballentine, Marvelle) (Filed on 1/29/2026) (Entered: 01/29/2026) |
| 02/09/2026 | 57 | CLERK'S NOTICE VACATING MOTIONS TO DISMISS hearing set for February 13, 2026 before the Honorable Charles R. Breyer. *(This is a text-only entry generated by the court. There is no document associated with this entry.)*. Motion Hearing set for 2/20/2026 at 10:00 AM in San Francisco - Videoconference Only before Judge Charles R. Breyer. This proceeding will be held via a Zoom webinar.<br><br>**Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/crb<br><br>**Court Appearances:** Advanced notice is required of counsel or parties who wish to be identified by the court as making an appearance or will be participating in the argument at the hearing. A list of names and emails must be sent to the CRD at crbcrd@cand.uscourts.gov no later than February 17, 2026 at 3:00 PM PST. |

**Civ LR 77-3(d).** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.

**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.

Motion Hearing set for 2/20/2026 at 10:00 AM in San Francisco - Videoconference Only before Judge Charles R. Breyer. (ls, COURT STAFF) (Filed on 2/9/2026)

Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 02/09/2026)

| Date | # | Description |
|---|---|---|
| 02/09/2026 | 58 | NOTICE of Pendency of Other Action or Proceeding by Marvelle J. Ballentine (Ballentine, Marvelle) (Filed on 2/9/2026) (Entered: 02/09/2026) |
| 02/12/2026 | 59 | MOTION to Transfer Case *to the Middle District of Florida* filed by Marvelle J. Ballentine. Responses due by 2/26/2026. Replies due by 3/5/2026. (Attachments: # 1 Declaration)(Ballentine, Marvelle) (Filed on 2/12/2026) (Entered: 02/12/2026) |
| 02/13/2026 | 60 | MOTION to Shorten Time *on Plaintiff's Motion to Transfer Case to the Middle District of Florida* filed by Marvelle J. Ballentine. (Attachments: # 1 Declaration)(Ballentine, Marvelle) (Filed on 2/13/2026) (Entered: 02/13/2026) |
| 02/13/2026 | 61 | EXHIBITS re 59 MOTION to Transfer Case *to the Middle District of Florida -Plaintiff's Supplemental Declaration in Support of Motion to Transfer Case to the Middle District of Florida* filed byMarvelle J. Ballentine. (Related document(s) 59 ) (Ballentine, Marvelle) (Filed on 2/13/2026) (Entered: 02/13/2026) |
| 02/13/2026 | 62 | CLERK'S NOTICE VACATING MOTION TO DISMISS hearing set for February 20, 2026 before the Honorable Charles R. Breyer. *(This is a text-only entry generated by the court. There is no document associated with this entry.).* Motion Hearing set for 3/27/2026 at 10:00 AM in San Francisco - Videoconference Only before Judge Charles R. Breyer. This proceeding will be held via a Zoom webinar. **Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/crb **Court Appearances:** Advanced notice is required of counsel or parties who wish to be identified by the court as making an appearance or will be participating in the argument at the hearing. A list of names and emails must be sent to the CRD at crbcrd@cand.uscourts.gov no later than March 24, 2026 at 3:00 PM PST. **Civ LR 77-3(d).** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited. **Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/. Motion Hearing set for 3/27/2026 at 10:00 AM in San Francisco - Videoconference Only before Judge Charles R. Breyer. (ls, COURT STAFF) (Filed on 2/13/2026) Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 02/13/2026) |
| 02/13/2026 | 63 | NOTICE of Voluntary Dismissal by Marvelle J. Ballentine (Ballentine, Marvelle) (Filed on 2/13/2026) (Entered: 02/13/2026) |

| 02/17/2026 | ***Civil Case Terminated. (ls, COURT STAFF) (Filed on 2/17/2026) (Entered: 02/17/2026) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/06/2026 11:50:46 | | |
| **PACER Login:** glazuser | **Client Code:** | |
| **Description:** Docket Report | **Search Criteria:** | 3:25-cv-07671-CRB |
| **Billable Pages:** 9 | **Cost:** | 0.90 |

# EXHIBIT E-1

Case 376, Dkt. 4 (Att. 1): RJN — Summary of NDCA Proceedings

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF FLORIDA

### ORLANDO DIVISION

MARVELLE J. "JAY" BALLENTINE,

*Plaintiff,*

v.

META PLATFORMS, INC.; ACCENTURE LLP;

TASKUS, INC.; and GENPACT USA, INC.,

*Defendants.*

Case No.: _____

## REQUEST FOR JUDICIAL NOTICE OF NDCA PROCEEDINGS

Plaintiff Marvelle J. Ballentine, proceeding *pro se*, respectfully requests

that this Court take judicial notice of the docket and specified filings from the

related proceeding in the United States District Court for the Northern District of

California, Case No. 3:25-cv-07671-CRB, pursuant to Federal Rule of Evidence

201(b)(2).

# I. LEGAL STANDARD

A court may take judicial notice of facts that are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Courts routinely take judicial notice of court records from other proceedings. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); *Universal Express, Inc. v. U.S. SEC*, 177 F. App'x 52, 53 (11th Cir. 2006).

# II. DOCUMENTS FOR JUDICIAL NOTICE

Plaintiff requests that the Court take judicial notice of the following:

**Exhibit A:** Summary of NDCA Proceedings, Case No. 3:25-cv-07671-CRB

**Exhibit B:** NDCA Docket Sheet (complete)

# III. RELEVANCE

The NDCA proceedings involve the same parties and claims now before this Court. The procedural history of the NDCA action provides context for this Court's case management.

# IV. CONCLUSION

2

Plaintiff respectfully requests that this Court take judicial notice of the

documents identified above.


Date: February 17, 2026                                 Respectfully submitted,


_____

MARVELLE J. "JAY" BALLENTINE
Plaintiff, pro se
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com

3

# EXHIBIT A

## SUMMARY OF NDCA PROCEEDINGS

### Case No. 3:25-cv-07671-CRB

*Ballentine v. Meta Platforms, Inc., et al.*

United States District Court, Northern District of California

### TABLE 1: PLAINTIFF'S PROCEDURAL REQUESTS

| Date | Request | Docket | Disposition |
|---|---|---|---|
| Oct. 7, 2025 | Motion to Shorten Time for Initial CMC | Dkt. 20 | **Denied** |
| Oct. 7, 2025 | Motion for Preservation Order (Meta) | Dkt. 21 | **Denied without prejudice** |
| Oct. 7, 2025 | Motion for Preservation Order (Accenture) | Dkt. 22 | **Denied without prejudice** |
| Oct. 24, 2025 | Request for Sequential Meet-and-Confer Sessions | — | **Declined by Defendants** |
| Oct. 28, 2025 | Administrative Motion for Rule 26(f) Scheduling Directive | Dkt. 36 | **Denied with prejudice** |
| Oct. 29, 2025 | Motion to Shorten Time on Administrative Motion | Dkt. 37 | **Denied with prejudice** |
| Jan. 29, 2026 | Request for Judicial Notice (Oversight Board) | Dkt. 56 | **No ruling** |

**Summary:** 0 granted. 5 denied. 1 no ruling. 1 declined by Defendants.

## TABLE 2: DEFENDANTS' PROCEDURAL REQUESTS

| Date | Request | Docket | Disposition |
|---|---|---|---|
| Nov. 18, 2025 | Stipulation for Extension of Time to File Reply | Dkt. 49 | **Granted** |
| Nov. 19, 2025 | Order on Extension of Reply Deadline | Dkt. 50 | **Granted** |
| Nov. 19, 2025 | Vacatur of Case Management Conference | Dkt. 51 | **Granted** |

**Summary:** 3 granted. 0 denied.

## TABLE 3: HEARING SCHEDULE CHANGES

| Date of Change | Original Setting | New Setting | Motion or Stipulation |
|---|---|---|---|
| Jan. 20, 2026 | Jan. 30, 2026, 10:00 AM, In-Person, Courtroom 6 | Feb. 13, 2026, 10:00 AM, Zoom | **None reflected on docket** |
| Feb. 9, 2026 | Feb. 13, 2026, 10:00 AM, Zoom | Feb. 20, 2026, 10:00 AM, Zoom | **None reflected on docket** |
| Feb. 13, 2026 | Feb. 20, 2026, 10:00 AM, Zoom | Mar. 27, 2026, 10:00 AM, Zoom | **None reflected on docket** |

**Note:** No party filed a motion requesting any of the above hearing changes. Plaintiff notified the Courtroom Deputy and defense counsel in writing on January 8, 2026 that travel and lodging arrangements had been made for the January 30, 2026 in-person hearing. Plaintiff incurred non-recoverable costs as a result of the format change.

5

## TABLE 4: TRANSFER MOTION SEQUENCE — FEBRUARY 13, 2026

| Time | Event | Docket |
|------|-------|--------|
| — | Plaintiff files Motion to Transfer Venue to MDFL | Dkt. 59 |
| AM | Plaintiff files Motion to Shorten Time on Transfer Motion | Dkt. 60 |
| PM | Court resets MTD hearing from February 20 to March 27, 2026 | Dkt. 62 |

## TABLE 5: COURTROOM DEPUTY COMMUNICATIONS

| Date | Event |
|------|-------|
| Jan. 7, 2026 | Defense counsel communicated intention to contact courtroom deputy regarding hearing logistics |
| Jan. 8, 2026 | Defense counsel communicated with courtroom deputy outside noticed motion practice |
| Jan. 8, 2026 | Deputy advised that civil law and motion matters are conducted via Zoom and that, if the Court had not ruled by January 30, the hearing would be reset to February |
| Jan. 8, 2026 | Plaintiff notified courtroom deputy and defense counsel in writing that travel and lodging arrangements had been made for January 30 in-person hearing and requested any format change be reflected by docketed entry |

## TABLE 6: CASE STATUS AT DISMISSAL

| Metric | Status |
|--------|--------|
| | |

6

| Case filed | **September 9, 2025** |
|---|---|
| Voluntary dismissal filed | **February 13, 2026** |
| Duration | **5+ months** |
| Rule 26(f) conference held | **No** |
| Discovery opened | **No** |
| Case Management Conference | **Vacated; never reset** |
| Plaintiff motions granted | **0** |
| Defendant requests granted | **3** |

*This summary is derived from the official docket of Case No. 3:25-cv-07671-CRB, United States District Court, Northern District of California.*

*— End of Exhibit A —*

Case 6:26-cv-00376-AGM-DCI    Document 91    Filed 04/15/26    Page 109 of 481 PageID
Case 6:26-cv-00376-AGM-DCI    Document 841    Filed 02/17/26    Page 5 of 13 PageID 81
ADRMOP,E-ProSe,ProSe,REFDIS

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:25-cv-07671-CRB

Ballentine v. Meta Platforms, Inc
Assigned to: Judge Charles R. Breyer
Referred to: Magistrate Judge Peter H Kang
Cause: 42:1981 Civil Rights

Date Filed: 09/09/2025
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Marvelle J. Ballentine**                        represented by **Marvelle J. Ballentine**
7862 W. Irlo Bronson Memorial Hwy # 82
Kissimmee, FL 34747
407-794-6503
Email: jayballentine@protonmail.com
PRO SE

V.

**Defendant**

**Meta Platforms, Inc**                           represented by **Michelle Lynn Visser**
Orrick, Herrington & Sutcliffe
The Orrick Building
405 Howard Street
San Francisco, CA 94105
(415) 773-5518
Fax: (415) 773-5759
Email: mvisser@orrick.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Accenture LLP**                                 represented by **Christopher William Keegan**
Kirkland & Ellis LLP
555 California
27th Floor
San Francisco, CA 94104
415-439-1400
Fax: 415-439-1500
Email: chris.keegan@kirkland.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Devin Anderson**
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
202-389-5198
Email: devin.anderson@kirkland.com

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/09/2025 | 1 | COMPLAINT against Accenture LLP, Meta Platforms, Inc (Filing fee $ 405.). Filed by MARVELLE J. BALLENTINE. Consent/Declination due by 9/23/2025. (Attachments: # 1 Civil Cover Sheet, # 2 receipt)(amf, COURT STAFF) (Filed on 9/9/2025) (Entered: 09/09/2025) |
| 09/09/2025 | 2 | **Initial Case Management Scheduling Order with ADR Deadlines: Case Management Statement due by 12/5/2025. Initial Case Management Conference set for 12/12/2025 02:00 PM in San Francisco, - Videoconference Only. (amf, COURT STAFF) (Filed on 9/9/2025)** <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br><br> **(Entered: 09/09/2025)** |
| 09/09/2025 | 3 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by MARVELLE J. BALLENTINE.. (amf, COURT STAFF) (Filed on 9/9/2025) (Entered: 09/09/2025) |
| 09/10/2025 | 4 | Summons Issued as to Accenture LLP, Meta Platforms, Inc. (kmm2, COURT STAFF) (Filed on 9/10/2025) (Entered: 09/10/2025) |
| 09/15/2025 | 5 | CERTIFICATE OF SERVICE by Marvelle J. Ballentine (Ballentine, Marvelle) (Filed on 9/15/2025) (Entered: 09/15/2025) |
| 09/15/2025 | 6 | CERTIFICATE OF SERVICE by Marvelle J. Ballentine *for Accenture LLP* (Ballentine, Marvelle) (Filed on 9/15/2025) (Entered: 09/15/2025) |
| 09/17/2025 | 7 | CLERK'S NOTICE OF IMPENDING REASSIGNMENT TO A U.S. DISTRICT COURT JUDGE: The Clerk of this Court will now reassign this case to a District Judge because a party has not consented to the jurisdiction of a Magistrate Judge. You will be informed by separate notice of the district judge to whom this case is reassigned. <br><br> ALL HEARING DATES PRESENTLY SCHEDULED BEFORE THE CURRENT MAGISTRATE JUDGE ARE VACATED AND SHOULD BE RE-NOTICED FOR HEARING BEFORE THE JUDGE TO WHOM THIS CASE IS REASSIGNED. <br><br> *This is a text only docket entry; there is no document associated with this notice.* (shy, COURT STAFF) (Filed on 9/17/2025) <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br> (Entered: 09/17/2025) |
| 09/18/2025 | 8 | **ORDER REASSIGNING CASE** <br><br> IT IS ORDERED that this case is reassigned using a proportionate, random and blind system pursuant to General Order No. 44 to Judge Charles R. Breyer. Magistrate Judge Alex G. Tse no longer assigned to the case. <br><br> Counsel are instructed that all future filings shall bear the updated judicial initials immediately after the case number. Counsel are reminded to verify the location of the judge on the court website. All hearing and trial dates presently scheduled are vacated. However, existing briefing schedules for motions remain unchanged. Motions must be renoticed for hearing before the judge to whom the case has been reassigned, but the |

renoticing of the hearing does not affect the prior briefing schedule. Other deadlines such as those for ADR compliance and discovery cutoff also remain unchanged.

Notice: The assigned judge participates in the Cameras in the Courtroom Pilot Project. See General Order 65 and cand.uscourts.gov/cameras.

Mark B. Busby
Clerk, United States District Court
*(This is a text-only entry generated by the court. There is no document associated with this entry.)*

Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)

(mbc, COURT STAFF) (Filed on 9/18/2025) (Entered: 09/18/2025)

| Date | No. | Description |
|---|---|---|
| 09/18/2025 | 9 | CLERK'S NOTICE: A Joint Case Management Statement due by 12/12/2025. Initial Case Management Conference set for 12/19/2025 at 8:30 AM in San Francisco - Videoconference Only. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (ls, COURT STAFF) (Filed on 9/18/2025) Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 09/18/2025) |
| 09/25/2025 | 10 | Rule 7.1 Disclosures by Meta Platforms, Inc (Visser, Michelle) (Filed on 9/25/2025) (Entered: 09/25/2025) |
| 09/25/2025 | 11 | STIPULATION *for Extension of Defendant Meta Platforms, Inc.'s Time to Respond to Complaint* filed by Meta Platforms, Inc. (Visser, Michelle) (Filed on 9/25/2025) (Entered: 09/25/2025) |
| 09/26/2025 | 12 | NOTICE of Appearance filed by Christopher William Keegan on behalf of Accenture LLP (Keegan, Christopher) (Filed on 9/26/2025) (Entered: 09/26/2025) |
| 09/26/2025 | 13 | Corporate Disclosure Statement by Accenture LLP (Keegan, Christopher) (Filed on 9/26/2025) (Entered: 09/26/2025) |
| 09/26/2025 | 14 | Certificate of Interested Entities by Accenture LLP (Keegan, Christopher) (Filed on 9/26/2025) (Entered: 09/26/2025) |
| 09/26/2025 | 15 | STIPULATION *re Extension of Time To File Response to Plaintiff's Complaint* filed by Accenture LLP. (Keegan, Christopher) (Filed on 9/26/2025) (Entered: 09/26/2025) |
| 09/26/2025 | | Electronic filing error. Filer did not add all interested parties when prompted. Re-file this document in its entirety and when prompted, enter all affiliates or corporate parents. Re: 13 Certificate of Interested Entities filed by Accenture LLP, 14 Certificate of Interested Entities filed by Accenture LLP (jml, COURT STAFF) (Filed on 9/26/2025) (Entered: 09/26/2025) |
| 09/26/2025 | 16 | Corporate Disclosure Statement by Accenture LLP identifying Corporate Parent Accenture plc (Ireland) for Accenture LLP. (Keegan, Christopher) (Filed on 9/26/2025) (Entered: 09/26/2025) |
| 09/26/2025 | 17 | Certificate of Interested Entities by Accenture LLP identifying Corporate Parent Accenture plc (Ireland) for Accenture LLP. (Keegan, Christopher) (Filed on 9/26/2025) (Entered: 09/26/2025) |
| 10/03/2025 | 18 | MOTION for leave to appear in Pro Hac Vice *for Devin S. Anderson* ( Filing fee $ 328, receipt number ACANDC-21203140.) Filing fee previously paid on 10/03/2025 filed by |

| | | |
|---|---|---|
| | | Accenture LLP. (Attachments: # 1 Exhibit Certificate of Good Standing)(Anderson, Devin) (Filed on 10/3/2025) (Entered: 10/03/2025) |
| 10/07/2025 | 19 | **ORDER by Judge Charles R. Breyer: Granting 18 Motion for Pro Hac Vice, Devin S. Anderson. (ls, COURT STAFF) (Filed on 10/7/2025)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br><br>**(Entered: 10/07/2025)** |
| 10/08/2025 | 20 | MOTION to Shorten Time *Initial Case Management Conference*, MOTION for Extension of Time to File Response/Reply *Opposition to Defendants' Rule 12 Motions* filed by Marvelle J. Ballentine. (Attachments: # 1 Proposed Order)(Ballentine, Marvelle) (Filed on 10/8/2025) (Entered: 10/08/2025) |
| 10/09/2025 | 21 | MOTION for Protective Order *re Preservation of Evidence* filed by Marvelle J. Ballentine. Responses due by 10/23/2025. Replies due by 10/30/2025. (Attachments: # 1 Proposed Order)(Ballentine, Marvelle) (Filed on 10/9/2025) (Entered: 10/09/2025) |
| 10/09/2025 | 22 | MOTION for Protective Order *re Preservation of Evidence (Accenture LLP)* filed by Marvelle J. Ballentine. Responses due by 10/23/2025. Replies due by 10/30/2025. (Attachments: # 1 Proposed Order)(Ballentine, Marvelle) (Filed on 10/9/2025) (Entered: 10/09/2025) |
| 10/10/2025 | 23 | **ORDER REFERRING CASE to Magistrate Judge for Discovery purposes. Signed by Judge Charles R. Breyer on 10/10/2025. (ls, COURT STAFF) (Filed on 10/10/2025)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br><br>**(Entered: 10/10/2025)** |
| 10/10/2025 | 24 | CASE REFERRED to Magistrate Judge Peter H Kang for Discovery. (ejk, COURT STAFF) (Filed on 10/10/2025) (Entered: 10/10/2025) |
| 10/14/2025 | 25 | **[IN-CHAMBERS TEXT ONLY ORDER]:** This case has been referred to the undersigned for discovery. *See* Dkt. 23 . Accordingly, the Parties shall review and comply with this Court's Standing Order for Discovery, particularly Section H relating to discovery disputes, which is now applicable to this case.<br><br>The Court has reviewed Plaintiff's 21 22 motions for a targeted preservation order and hereby **ORDERS** the Parties to meet and confer regarding this dispute, as required by Section H.2 of this Court's Standing Order for discovery, by no later than **October 31, 2025**. The Court further **ORDERS** the Parties to file a joint status report regarding the outcome of their conferral on this dispute, including whether the dispute has been resolved, narrowed, or remains wholly unresolved, by no later than **November 4, 2025**. Upon receipt of the joint status report, the Court will direct the Parties thereafter.<br><br>**Signed by Judge Peter H. Kang on 10/14/2025.**<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (phklc2, COURT STAFF) (Filed on 10/14/2025)<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>(Entered: 10/14/2025) |
| 10/14/2025 | 26 | OPPOSITION/RESPONSE (re 20 MOTION to Shorten Time *Initial Case Management Conference* MOTION for Extension of Time to File Response/Reply *Opposition to Defendants' Rule 12 Motions* ) filed by Accenture LLP. (Attachments: # 1 Declaration of |

| | | |
|---|---|---|
| | | Devin S. Anderson, # 2 Proposed Order)(Anderson, Devin) (Filed on 10/14/2025) (Entered: 10/14/2025) |
| 10/14/2025 | 27 | OPPOSITION/RESPONSE (re 20 MOTION to Shorten Time *Initial Case Management Conference* MOTION for Extension of Time to File Response/Reply *Opposition to Defendants' Rule 12 Motions* ) *and Cross-Motion to Continue the Case Management Conference* filed byMeta Platforms, Inc. (Attachments: # 1 Declaration of Michelle Visser, # 2 Proposed Order)(Visser, Michelle) (Filed on 10/14/2025) (Entered: 10/14/2025) |
| 10/15/2025 | 28 | REPLY (re 20 MOTION to Shorten Time *Initial Case Management Conference* MOTION for Extension of Time to File Response/Reply *Opposition to Defendants' Rule 12 Motions* ) *Plaintiffs Reply in Support of Civil L.R. 6-3 Motion to Change Time and Opposition to Defendants Cross-Motions* filed byMarvelle J. Ballentine. (Attachments: # 1 Declaration) (Ballentine, Marvelle) (Filed on 10/15/2025) (Entered: 10/15/2025) |
| 10/15/2025 | 29 | MOTION to Shorten Time *for Decision On Pending Civil L.R. 6-3 Motion* filed by Marvelle J. Ballentine. (Attachments: # 1 Declaration)(Ballentine, Marvelle) (Filed on 10/15/2025) (Entered: 10/15/2025) |
| 10/15/2025 | 30 | Notice Of Motion And MOTION to Dismiss *Plaintiffs Complaint Pursuant To Rule 12(B) (6); Memorandum Of Points And Authorities* filed by Meta Platforms, Inc. Motion to Dismiss Hearing set for 12/12/2025 10:00 AM in San Francisco, Courtroom 06, 17th Floor. Responses due by 10/29/2025. Replies due by 11/5/2025. (Attachments: # 1 Duffey Decl, # 2 Ex. A to Duffey Decl, # 3 Proposed Order)(Visser, Michelle) (Filed on 10/15/2025) Modified on 10/16/2025 (jml, COURT STAFF). (Entered: 10/15/2025) |
| 10/15/2025 | 31 | Request for Judicial Notice re 30 MOTION to Dismiss *Defendant Meta Platforms, Inc.s Notice Of Motion And Motion To Dismiss Plaintiffs Complaint Pursuant To Rule 12(B)(6); Memorandum Of Points And Authorities* filed byMeta Platforms, Inc. (Related document(s) 30 ) (Visser, Michelle) (Filed on 10/15/2025) (Entered: 10/15/2025) |
| 10/16/2025 | 32 | **ORDER by Judge Charles R. Breyer denying 20 Motion to Shorten Time; granting 20 Motion for Extension of Time to File Response/Reply. (crblc1, COURT STAFF) (Filed on 10/16/2025)** <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br><br> **(Entered: 10/16/2025)** |
| 10/16/2025 | 33 | MOTION to Dismiss *Plaintiff's Complaint Pursuant to Rule 12(B)(6); Memorandum of Points and Authorities* filed by Accenture LLP. Motion to Dismiss Hearing set for 1/30/2026 10:00 AM in San Francisco, Courtroom 06, 17th Floor. Responses due by 10/30/2025. Replies due by 11/6/2025. (Attachments: # 1 Declaration of Devin S. Anderson, # 2 Proposed Order)(Anderson, Devin) (Filed on 10/16/2025) (Entered: 10/16/2025) |
| 10/17/2025 | 34 | AMENDED COMPLAINT against All Defendants. Filed by Marvelle J. Ballentine. (Ballentine, Marvelle) (Filed on 10/17/2025) (Entered: 10/17/2025) |
| 10/28/2025 | 35 | CLERK'S NOTICE VACATING MOTIONS TO DISMISS hearing set for December 12, 2025 and January 20, 2026 before the Honorable Charles R. Breyer. An amended complaint was filed on October 17, 2025. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (ls, COURT STAFF) (Filed on 10/28/2025) <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br><br> (Entered: 10/28/2025) |

| 10/28/2025 | 36 | ADMINISTRATIVE MOTION Discovery Management Scheduling Directive *Before Magistrate Judge Peter H. Kang, Discovery Referral);* filed by Marvelle J. Ballentine. Responses due by 11/3/2025. (Attachments: # 1 Proposed Order, # 2 Declaration) (Ballentine, Marvelle) (Filed on 10/28/2025) (Entered: 10/28/2025) |
| 10/29/2025 | 37 | MOTION to Shorten Time *for Decision on Plaintiffs Civil L.R. 7-11 Administrative Motion (Rule 26(f) scheduling directive)* filed by Marvelle J. Ballentine. (Attachments: # 1 Proposed Order, # 2 Declaration)(Ballentine, Marvelle) (Filed on 10/29/2025) (Entered: 10/29/2025) |
| 10/30/2025 | 38 | OPPOSITION/RESPONSE (re 36 ADMINISTRATIVE MOTION Discovery Management Scheduling Directive *Before Magistrate Judge Peter H. Kang, Discovery Referral);* ) filed byMeta Platforms, Inc. (Visser, Michelle) (Filed on 10/30/2025) (Entered: 10/30/2025) |
| 10/30/2025 | 39 | REPLY (re 36 ADMINISTRATIVE MOTION Discovery Management Scheduling Directive *Before Magistrate Judge Peter H. Kang, Discovery Referral);* ) *Plaintiff's Opposition to Meta's Cross-Motion and Statement in Further Support of Civil L.R. 7-11 Administrative Motion* filed byMarvelle J. Ballentine. (Attachments: # 1 Proposed Order, # 2 Declaration)(Ballentine, Marvelle) (Filed on 10/30/2025) (Entered: 10/30/2025) |
| 10/31/2025 | | Set Deadline re: 25 Order. Status Report due by 11/4/2025. (jlg, COURT STAFF) (Filed on 10/31/2025) (Entered: 10/31/2025) |
| 10/31/2025 | 40 | MOTION to Dismiss *Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(6); Memorandum of Points and Authorities* filed by Accenture LLP. Motion to Dismiss Hearing set for 1/30/2026 10:00 AM in San Francisco, Courtroom 06, 17th Floor. Responses due by 11/14/2025. Replies due by 11/21/2025. (Attachments: # 1 Declaration of Devin S. Anderson, # 2 Proposed Order)(Anderson, Devin) (Filed on 10/31/2025) (Entered: 10/31/2025) |
| 10/31/2025 | 41 | MOTION to Dismiss filed by Meta Platforms, Inc. Motion to Dismiss Hearing set for 1/30/2026 10:00 AM in San Francisco, Courtroom 06, 17th Floor. Responses due by 11/14/2025. Replies due by 11/21/2025. (Attachments: # 1 Declaration of Michael Duffey, # 2 Exhibit A to Decl. of Michael Duffey, # 3 Proposed Order)(Visser, Michelle) (Filed on 10/31/2025) (Entered: 10/31/2025) |
| 10/31/2025 | 42 | Request for Judicial Notice re 41 MOTION to Dismiss filed byMeta Platforms, Inc. (Related document(s) 41 ) (Visser, Michelle) (Filed on 10/31/2025) (Entered: 10/31/2025) |
| 11/03/2025 | 43 | OPPOSITION/RESPONSE (re 36 ADMINISTRATIVE MOTION Discovery Management Scheduling Directive *Before Magistrate Judge Peter H. Kang, Discovery Referral);* ) filed byAccenture LLP. (Attachments: # 1 Declaration of Devin Anderson, # 2 Proposed Order) (Anderson, Devin) (Filed on 11/3/2025) (Entered: 11/03/2025) |
| 11/03/2025 | 44 | OPPOSITION/RESPONSE (re 40 MOTION to Dismiss *Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(6); Memorandum of Points and Authorities* ) *Plaintiff's Opposition to Accenture's Motion to Dismiss First Amended Complaint* filed byMarvelle J. Ballentine. (Attachments: # 1 Declaration)(Ballentine, Marvelle) (Filed on 11/3/2025) (Entered: 11/03/2025) |
| 11/04/2025 | 45 | STATUS REPORT *Plaintiff's Notice Regarding Dkt. 25 Status Report Submission And Exhibits* by Marvelle J. Ballentine. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit) (Ballentine, Marvelle) (Filed on 11/4/2025) (Entered: 11/04/2025) |
| 11/04/2025 | 46 | JOINT STATUS REPORT by Meta Platforms, Inc. (Visser, Michelle) (Filed on 11/4/2025) Modified on 11/5/2025 (kmm2, COURT STAFF). (Entered: 11/04/2025) |
| 11/10/2025 | 47 | **[IN-CHAMBERS TEXT ONLY ORDER]:** |

Plaintiff's 36 administrative motion seeking a "discovery-management scheduling directive" is **DENIED WITH PREJUDICE** given that the Initial Case Management Conference has already been vacated and the basis for the motion is thus no longer operative.

Plaintiff's 37 motion to shorten time for a decision on the administrative motion is **DENIED WITH PREJUDICE** for failure to demonstrate sufficient good cause or sufficient particularity as to why shortened time was required, especially in light of the fact that the Initial Case Management Conference has already been vacated. *See* Civil L.R. 6-3(a)(1).

Plaintiff's 21 22 motions for a targeted preservation order are **DENIED WITHOUT PREJUDICE** for failure to show entitlement to the relief sought. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding that trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"); *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion.").

**Signed by Judge Peter H. Kang on 11/10/2025.**

*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (phklc2, COURT STAFF) (Filed on 11/10/2025)

Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)
(Entered: 11/10/2025)

| | | |
|---|---|---|
| 11/12/2025 | 48 | OPPOSITION/RESPONSE (re 41 MOTION to Dismiss ) *Plaintiffs Opposition To Meta Platform Inc.s Motion To Dismiss First Amended Complaint* filed byMarvelle J. Ballentine. (Ballentine, Marvelle) (Filed on 11/12/2025) (Entered: 11/12/2025) |
| 11/18/2025 | 49 | STIPULATION WITH PROPOSED ORDER re 48 Opposition/Response to Motion, 44 Opposition/Response to Motion, *for Extension of Defendant Meta Platforms, Inc. and Accenture LLP's Time to File Reply in Support of Motion to Dismiss* filed by Meta Platforms, Inc. (Attachments: # 1 Proposed Order)(Visser, Michelle) (Filed on 11/18/2025) (Entered: 11/18/2025) |
| 11/19/2025 | 50 | **STIPULATION AND ORDER FOR EXTENSION OF DEFENDANT META PLATFORMS, INC. AND ACCENTURE LLPS TIME TO FILE REPLY IN SUPPORT OF MOTION TO DISMISS by Judge Charles R. Breyer: Granting 49 Stipulation. Replies due by 12/5/2025. (ls, COURT STAFF) (Filed on 11/19/2025)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br><br>**(Entered: 11/19/2025)** |
| 11/19/2025 | 51 | CLERK'S NOTICE VACATING CASE MANAGEMENT CONFERENCE set for December 19, 2025 before the Honorable Charles R. Breyer. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (ls, COURT STAFF) (Filed on 11/19/2025)<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br><br>(Entered: 11/19/2025) |
| 12/05/2025 | 52 | REPLY (re 41 MOTION to Dismiss ) filed byMeta Platforms, Inc. (Visser, Michelle) (Filed on 12/5/2025) (Entered: 12/05/2025) |

| 12/05/2025 | 53 | REPLY (re 40 MOTION to Dismiss *Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(6); Memorandum of Points and Authorities* ) filed byAccenture LLP. (Anderson, Devin) (Filed on 12/5/2025) (Entered: 12/05/2025) |
|---|---|---|
| 01/06/2026 | 54 | Clerk's Notice of Video Recording Request. Video Camera hearing set for 1/30/2026 at 10:00 AM. Objections to Video Recording due 1/13/2026. (ls, COURT STAFF) (Filed on 1/6/2026)<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>(Entered: 01/06/2026) |
| 01/20/2026 | 55 | CLERK'S NOTICE VACATING MOTIONS TO DISMISS hearing set for January 30, 2026 before the Honorable Charles R. Breyer. *(This is a text-only entry generated by the court. There is no document associated with this entry.).* Motion Hearing set for 2/13/2026 at 10:00 AM in San Francisco - Videoconference Only before Judge Charles R. Breyer. This proceeding will be held via a Zoom webinar.<br><br>**Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/crb<br><br>**Court Appearances:** Advanced notice is required of counsel or parties who wish to be identified by the court as making an appearance or will be participating in the argument at the hearing. A list of names and emails must be sent to the CRD at crbcrd@cand.uscourts.gov no later than February 17, 2026 at 3:00 PM PST.<br><br>**Civ LR 77-3(d).** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>Motion Hearing set for 2/13/2026 at 10:00 AM in San Francisco - Videoconference Only before Judge Charles R. Breyer. (ls, COURT STAFF) (Filed on 1/20/2026)<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>(Entered: 01/20/2026) |
| 01/29/2026 | 56 | ADMINISTRATIVE MOTION Plaintiff respectfully requests that the Court take judicial notice of the existence, date, and public-comment window stated in the Oversight Board Announcement. filed by Marvelle J. Ballentine. Responses due by 2/2/2026. (Attachments: # 1 Proposed Order, # 2 Declaration, # 3 Exhibit)(Ballentine, Marvelle) (Filed on 1/29/2026) (Entered: 01/29/2026) |
| 02/09/2026 | 57 | CLERK'S NOTICE VACATING MOTIONS TO DISMISS hearing set for February 13, 2026 before the Honorable Charles R. Breyer. *(This is a text-only entry generated by the court. There is no document associated with this entry.).* Motion Hearing set for 2/20/2026 at 10:00 AM in San Francisco - Videoconference Only before Judge Charles R. Breyer. This proceeding will be held via a Zoom webinar.<br><br>**Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/crb<br><br>**Court Appearances:** Advanced notice is required of counsel or parties who wish to be identified by the court as making an appearance or will be participating in the argument at the hearing. A list of names and emails must be sent to the CRD at crbcrd@cand.uscourts.gov no later than February 17, 2026 at 3:00 PM PST. |

**Civ LR 77-3(d).** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.

**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.

Motion Hearing set for 2/20/2026 at 10:00 AM in San Francisco - Videoconference Only before Judge Charles R. Breyer. (ls, COURT STAFF) (Filed on 2/9/2026)

Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)
(Entered: 02/09/2026)

| 02/09/2026 | 58 | NOTICE by Marvelle J. Ballentine *Notice Of Pendency Of Other Action Or Proceeding* (Ballentine, Marvelle) (Filed on 2/9/2026) (Entered: 02/09/2026) |
|---|---|---|
| 02/12/2026 | 59 | MOTION to Transfer Case *to the Middle District of Florida* filed by Marvelle J. Ballentine. Responses due by 2/26/2026. Replies due by 3/5/2026. (Attachments: # 1 Declaration)(Ballentine, Marvelle) (Filed on 2/12/2026) (Entered: 02/12/2026) |
| 02/13/2026 | 60 | MOTION to Shorten Time *on Plaintiff's Motion to Transfer Case to the Middle District of Florida* filed by Marvelle J. Ballentine. (Attachments: # 1 Declaration)(Ballentine, Marvelle) (Filed on 2/13/2026) (Entered: 02/13/2026) |
| 02/13/2026 | 61 | EXHIBITS re 59 MOTION to Transfer Case *to the Middle District of Florida -Plaintiff's Supplemental Declaration in Support of Motion to Transfer Case to the Middle District of Florida* filed byMarvelle J. Ballentine. (Related document(s) 59 ) (Ballentine, Marvelle) (Filed on 2/13/2026) (Entered: 02/13/2026) |
| 02/13/2026 | 62 | CLERK'S NOTICE VACATING MOTION TO DISMISS hearing set for February 20, 2026 before the Honorable Charles R. Breyer. *(This is a text-only entry generated by the court. There is no document associated with this entry.)*. Motion Hearing set for 3/27/2026 at 10:00 AM in San Francisco - Videoconference Only before Judge Charles R. Breyer. This proceeding will be held via a Zoom webinar.<br><br>**Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/crb<br><br>**Court Appearances:** Advanced notice is required of counsel or parties who wish to be identified by the court as making an appearance or will be participating in the argument at the hearing. A list of names and emails must be sent to the CRD at crbcrd@cand.uscourts.gov no later than March 24, 2026 at 3:00 PM PST.<br><br>**Civ LR 77-3(d).** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>Motion Hearing set for 3/27/2026 at 10:00 AM in San Francisco - Videoconference Only before Judge Charles R. Breyer. (ls, COURT STAFF) (Filed on 2/13/2026)<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>(Entered: 02/13/2026) |
| 02/13/2026 | 63 | NOTICE of Voluntary Dismissal by Marvelle J. Ballentine (Ballentine, Marvelle) (Filed on 2/13/2026) (Entered: 02/13/2026) |

# EXHIBIT E-2

Dkt. 29: Accenture MTD (27 pp.; certificate of service at p. 24)

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MARVELLE J. "JAY"
BALLENTINE,

      Plaintiff,              Civil Action No. 6:26-cv-00376

    v.                   Judge Anne-Leigh Gaylord Moe

META PLATFORMS, INC.;
ACCENTURE LLP; TASKUS, INC;
and GENPACT USA, INC.

      Defendants.       /

## DEFENDANT ACCENTURE LLP'S
## MOTION TO DISMISS PLAINTIFF'S CLAIMS

Defendant Accenture LLP moves to dismiss all claims asserted in plaintiff Marvelle J. "Jay" Ballentine's amended complaint against it with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) because plaintiff has not stated and cannot state a claim against Accenture LLP upon which relief can be granted.

## INTRODUCTION[1]

Plaintiff Ballentine has not pleaded valid claims. According to the amended complaint, defendant Meta Platforms, Inc. terminated Ballentine's Facebook advertising account after flagging it for child sexual exploitation ("CSE") material. The amended complaint also alleges that one of three third-party service vendors—

---

[1] All citations are cleaned up with emphasis added, unless otherwise noted.

Case 6:26-cv-00376-AGM-DCI   Document 91   Filed 04/15/26   Page 120 of 481 PageID
Case 6:26-cv-00376-AGM-DCI   Document 35   Filed 03/18/26   Page 2 of 27 PageID 218
852

Accenture LLP, TaskUs, Inc., or Genpact Ltd.—assisted in reviewing Ballentine's account nearly four years ago.  Ballentine theorizes that his Facebook account was terminated because of his race.  But even taking Ballentine's pro se status into account, the amended complaint simply does not supply the many necessary allegations to turn an adverse action on a Facebook account into a far-fetched conspiracy among four businesses to discriminate against Black entrepreneurs.  Ballentine's claims should be dismissed.

First and foremost, Ballentine has not plausibly alleged facts to show that Accenture—an entity he acknowledges had no technical ability to terminate his account—caused his injuries.  Nor has Ballentine alleged facts that show that Accenture acted with racial animus, as each of his claims requires.  Instead, the amended complaint piles speculative inference upon speculative inference:  a vendor *may* have been able to see Ballentine's race during the review process; that vendor *may* have been Accenture; and therefore Accenture *must* have recommended a ban based on race.  But he offers no allegations to support that speculative leap.  Nothing in the amended complaint either directly or indirectly supports the entirely false allegation that Accenture acted because of Ballentine's race, much less that it did so as a government actor.  Indeed, across the eight complaints that Ballentine has filed relating to these claims, he has never actually alleged anything about the content he allegedly posted and that he claims was improperly removed.

Moreover, the Communications Decency Act ("CDA") shields Accenture from liability for its content moderation.  Because Section 230(c)(1) of the CDA bars claims

against interactive computer service providers based on the removal of content (including accounts) from their services, it follows that third-party content-moderation service providers are also immune from liability for assisting with those publication decisions. Similarly, Section 230(c)(2) of the CDA protects content moderators' voluntary and good-faith efforts to keep the internet safe, including by assisting others in eliminating objectionable material on their websites.

Ballentine's latest attempt to embark on a fishing expedition to try to find facts that support his unfounded theory of invidious racial discrimination should be rejected. Ballentine already once voluntarily withdrew his complaint against Meta and Accenture in the Northern District of California after the briefing on defendants' motions to dismiss concluded. But four days later, he filed this nearly identical case in a new jurisdiction. And remarkably, Ballentine has now filed separate lawsuits against Accenture, its counsel, and others in which he claims that Accenture's counsel's accurate recitation of his complaint in a federal court pleading constitutes defamation—a proposition that even a simple search would refute. The Court should dismiss Ballentine's amended complaint.

## BACKGROUND[2]

Meta Platforms, Inc. operates social-media platforms like Facebook and Instagram that enable millions of users worldwide to connect, communicate, and advertise online. *See* ECF No. 19 ("FAC") ¶ 30. As the host of a wide range of user

---

[2]  Accenture accepts as true the factual allegations in the amended complaint solely for the purposes of this motion to dismiss; it does not otherwise concede the truth of any of those allegations.

content across its platforms, Meta takes significant steps to ensure a safe experience for users: it establishes community and advertising standards, *see id.* ¶ 60, reviews user content for violations of those standards, *id.* ¶ 34, and retains authority to suspend or ban accounts that do not follow its standards, *id.* ¶ 33. Relevant here, Meta also actively screens for materials that violate its policy against CSE. *Id.* ¶ 34.

Accenture LLP, TaskUs, Inc., and Genpact Ltd. assist Meta in its content-moderation efforts, including by reviewing appeals from users whose material has been flagged under Meta's CSE policy. *Id.* ¶ 42. Meta flags potential violations and sets the rules for review, *id.*, and vendor teams perform a human review of the Meta-flagged content under Meta's policies and training, *id.* ¶¶ 108–10. When Meta identifies an "apparent" violation of child exploitation laws, it is required by law to report the violation to the National Center for Missing and Exploited Children (NCMEC) for further investigation. *Id.* ¶ 74. As the platform operator, Meta retains full control over the NCMEC reporting process, *see id.*, reserves "override authority" over vendors' enforcement recommendations, *id.* ¶ 33, and "ratifie[s]" the outcome of vendors' review, *id.* ¶ 124.

Plaintiff Marvelle J. "Jay" Ballentine promoted and sourced work for his RV-repair-services business using a Facebook advertising account beginning in June 2022. *Id.* ¶ 53. He also used his account to access continuing-education materials through the National RV Training Academy's Alumni Facebook Group. *Id.* ¶ 52. Plaintiff is a Black man. *Id.* ¶ 18.

On July 4, 2022, Meta flagged Ballentine's account for a violation of its CSE policy and disabled the account. *Id.* ¶¶ 54, 56. Ballentine appealed, and Meta requested identity verification before processing the appeal. *Id.* ¶ 54. Ballentine submitted his passport. *Id.* On Meta's request, a human moderator at either Accenture, TaskUs, or Genpact reviewed Ballentine's account. *Id.* ¶ 7. After the review, Meta terminated Ballentine's account. *Id.* ¶ 56. Ballentine claims he lost out on pending RV service requests, access to educational materials, and the ability to acquire customers after his account was terminated. *Id.* ¶¶ 63–65.

On September 9, 2025, Ballentine filed a complaint against Meta and Accenture in the United States District Court for the Northern District of California in which he claimed that his Facebook account was terminated because of his race and not because of a CSE violation. *See* ECF No. 4 at 6.[3] Meta and Accenture moved to dismiss Ballentine's complaint for failure to state a claim upon which relief could be granted. *Id.* at 9. Ballentine amended his complaint the following day. *Id.* Meta and Accenture then moved to dismiss Ballentine's amended complaint. *Id.* at 10. None of Ballentine's submissions has ever provided details about the content he attempted to post on Facebook before Meta terminated his account.

Approximately one week before the hearing on defendants' motions to dismiss, Ballentine moved to transfer the action from the Northern District of California to this

---

[3] Accenture does not oppose Ballentine's motion to take judicial notice of the public docket in his previous action in the Northern District of California. ECF No. 4. It opposes as improper his motion to take judicial notice of his personal summary of those proceedings. *Id.*

Court. *Id.* at 59. Before any party could respond to Ballentine's transfer motion, Ballentine voluntarily dismissed his action and refiled a new complaint in this Court. *Id.* at 63.

Ballentine's new complaint added two other "vendor defendants"—TaskUs and Genpact. It explained that Ballentine does not know which vendor defendant reviewed his account, but that one of them did. ECF No. 1, at ¶ 47. The initial complaint also asserted four new state-law claims against Accenture: tortious interference with business relationships, intentional infliction of emotional distress, civil rights conspiracy, and a violation of Florida's Deceptive and Unfair Trade Practices Act. *Id.* ¶¶ 210, 222, 227, 233. Ballentine sought declaratory relief, public injunctive relief, attorney's fees, and monetary damages "in an amount exceeding $250,000,000." *Id.* ¶ 250A–E.

Ballentine amended his complaint to drop the state claims, *see* FAC ¶ 1, which he has since refiled in state court along with various other claims against a total of seven defendants, ECF No. 22. He also separately sued Meta and Accenture's counsel in this Court and in state court for defamation, civil conspiracy to defame, and intentional infliction of emotional distress based on a legal argument in Accenture's motion to dismiss Ballentine's previous complaint in the Northern District of California. *See* ECF Nos. 3, 22. Ballentine has now filed eight complaints related to his claims.

Ballentine brings four federal claims against Accenture in this action: violations of 42 U.S.C. §§ 1981, 1982, 1983, and 1985(3). FAC ¶¶ 138, 150, 160, 169. He now

6

seeks declaratory relief, public injunctive relief, and monetary damages "in an amount not less than $500,000,000." *Id.* ¶ 178.

## LEGAL STANDARD

A motion to dismiss should be granted if the complaint fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Pleadings that are "no more than conclusions[] are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## ARGUMENT

Ballentine's claims against Accenture fail as a matter of law. First and foremost, the amended complaint does not sufficiently allege that Accenture either caused Ballentine's alleged injuries or discriminated against him because of his race. Ballentine's claims are also separately barred by Section 230 of the CDA because they seek to hold Accenture liable for Meta's protected publication decisions as well as Accenture's good-faith efforts to filter objectionable material. And Ballentine's Section 1983 and 1985(3) claims fail for additional, independent reasons: the amended complaint does not plausibly suggest that Accenture is a state actor, nor does it plausibly suggest that Meta's termination of Ballentine's account was in fact part of a multi-level conspiracy to discriminate against Ballentine. The Court should dismiss Ballentine's claims against Accenture with prejudice.

.

7

I. **Ballentine's Claims Fail Because His Allegations Do Not Establish That Accenture Caused His Injuries or Acted Out of Racial Animus**

Ballentine's claims fail because they are not supported by sufficient allegations to support the claims. First, the allegations in the amended complaint do not establish that, but for Accenture's alleged actions, Ballentine would not have suffered his alleged injuries. And second, Ballentine's allegations do not support his conclusion that Accenture acted with racial animus.

A. **The Amended Complaint Does Not Sufficiently Allege That Accenture Caused Ballentine's Injuries**

Nothing in Ballentine's amended complaint plausibly suggests that Accenture caused his alleged injuries. "It is 'textbook tort law' that a plaintiff seeking redress for a defendant's legal wrong typically must prove but-for causation." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 331 (2020). This means the plaintiff must "show that the harm would not have occurred in the absence of . . . the defendant's conduct." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346–47 (2013). The "but for" causation test "supplies the 'default' or 'background' rule against which Congress is normally presumed to have legislated when creating its own new causes of action," including antidiscrimination laws like those at issue here. *Comcast*, 589 U.S. at 332. And because "the essential elements of a claim remain constant through the life of a lawsuit," this requirement applies equally at the motion-to-dismiss stage: a plaintiff must "plausibly allege" but-for causation for each defendant. *Id.*

Ballentine's amended complaint does not meet this standard. To start, it improperly "assert[s] multiple claims against multiple [vendor] defendants without

8

specifying which of the [vendor] defendants are responsible for which acts or omissions." *Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021). Although it specifies that "the claim is brought against" all vendor defendants, *id.*, it does not clearly indicate whether *all three* vendor defendants reviewed the account, or whether it is merely guessing that *one* of the three vendors must have reviewed the account. *Compare* FAC ¶ 171 (asserting that all three "Vendor Defendants joined and acted in furtherance" of a conspiracy to terminate Ballentine's account), *with id.* ¶ 175 (asserting that a single "Vendor Defendant" reviewed Ballentine's account). That alone warrants dismissal. *See Lyles v. Sch. Dist. of Osceola Cnty.*, 2023 WL 8437717, at *1 (M.D. Fla. Feb. 2, 2023) (dismissing shotgun pleading).

Even if the amended complaint properly attributed conduct to a specific vendor defendant (or plausibly pleaded alternative causation), it still would fail to state a claim. The amended complaint makes numerous allegations that cut *against* the inference that any vendor defendant—let alone Accenture specifically—caused Ballentine's injuries. For one, it affirmatively alleges that Meta controlled the content moderation for the Facebook service at issue. According to the amended complaint, Meta set content policies for its "enforcement pipeline," FAC ¶ 42; made initial CSE designations, *see id.*; "directly trained Accenture reviewer teams" and "provid[ed] instruction on Meta's policies and review procedures," *id.* ¶ 107; submitted official CSE reports, *id.* ¶ 38; retained "override authority" over and "ratified the final outcome" of any vendor recommendation before actioning an account, *id.* ¶¶ 42, 142;

9

and held exclusive power to approve, restrict, terminate, or reinstate accounts, and to return any lost data, *see id.* ¶¶ 53–57.

Accenture, meanwhile, operated in a more limited sphere consistent with its role as a third-party service provider. The amended complaint asserts that, if Accenture reviewed Ballentine's account at all, it relied on "Meta-provided account-review tools," *id.* ¶ 110; acted "within Meta's enforcement framework," *id.*; made "client guided" recommendations, *id.* ¶ 114; and was subject to Meta's unilateral "override authority" in doing so, *id.* ¶ 33.

Given these affirmative allegations, Accenture cannot be the but-for cause of Ballentine's alleged injuries. Indeed, by the amended complaint's own terms, Ballentine's account was flagged for CSE *before Accenture was ever involved* in the review process. *Id.* ¶ 54. When Accenture (or another vendor defendant) later reviewed the alleged violation, it acted according to extrinsic training, policies, and procedures. *Id.* ¶ 110. And when Accenture completed its review, the most it could do was issue a recommendation for action; as Ballentine acknowledges, Accenture lacked authority to disable his account. *See id.* ¶¶ 42, 142.

The amended complaint's "naked assertion" that Accenture caused Ballentine's injuries is thus not only "devoid of [ ] factual enhancement," *Iqbal*, 556 U.S. at 678—it *directly contradicts* the very allegations on which it relies. Because Ballentine's amended complaint fails to plead—and affirmatively eliminates—the "essential element[]" of but-for causation against Accenture, *Comcast*, 589 U.S. at 332, the Court

10

cannot "draw the reasonable inference that [Accenture] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Ballentine's claims should be dismissed.

## B. The Amended Complaint Does Not Sufficiently Allege That Accenture's Actions Were Based on Racial Animus

Ballentine's claims also fail for the independent reason that the allegations in the amended complaint do not plausibly support an inference of racial animus or discriminatory intent. In *Comcast*, the Supreme Court held that a Section 1981 plaintiff must plead and prove that racial animus is not just *one* of the reasons behind the defendant's actions, but *the* reason for those actions. *See* 589 U.S. at 333. Similarly, because Section 1982 "uses nearly identical language" to Section 1981, *id.* at 336, courts have extended *Comcast*'s but-for requirement to Section 1982 claims. *See, e.g.*, *Christian v. Rancho Grande Manufactured Home Cmty.*, 2024 WL 3372687, at *1 (9th Cir. July 11, 2024), *cert denied*, 145 S. Ct. 1057 (2025); *James v. City of Evanston*, 2021 WL 4459508, at *9 (N.D. Ill. Sept. 29, 2021). Claims brought under Sections 1983 and 1985(3) also require a showing of discriminatory intent or animus. *See Washington v. Davis*, 426 U.S. 229, 239–40 (1976) (claims based on equal protection[4]); *Chua v. Ekonomou*, 1 F.4th 948, 955 (11th Cir. 2021) (Section 1985(3) claims).

Ballentine's amended complaint does not meet this threshold requirement. According to the amended complaint, one of the vendor defendants "had access to account-level identifiers, including profile photos, names, and in some cases

---

[4]    Although Ballentine's "alternative" Section 1983 claim that the defendants violated his procedural due process rights does not require allegations plausibly suggesting racial animus, that claim fails because Accenture is not a state actor. FAC ¶ 160; *infra* Part III.A.

11

government-issued ID images, sufficient to reveal a user's race" during the review process. FAC ¶ 44. The amended complaint also alleges Accenture was aware that "automated models can be 'wrong' more often for some groups." *Id.* ¶ 46. And it asserts that Meta permanently terminated Ballentine's account "[w]ithin hours of receiving [his] identification." *Id.* ¶ 56. Based on these allegations, the amended complaint hypothesizes that Accenture (or another vendor defendant) had Ballentine's identification "visible on-screen," saw the color of his skin, and recommended that Meta affirm his ban because he is Black. *Id.* ¶ 154.

From start to finish, Ballentine's series of speculative inferences lacks the requisite support to state a claim as a matter of law. To begin, the amended complaint makes clear that Ballentine does not know whether Accenture's reviewers even had *access* to his photograph. *See, e.g., id.* ¶ 193 (requesting relief from the vendor defendants in the form of an online publication explaining "*[w]hether* reviewers could view users' profile photos and government identification images during review"); *id.* ¶ 190 (requesting relief from Meta in the form of an "audit log" explaining "[w]hether identity-revealing imagery was displayed" during "human review" of accounts). Ballentine's personal belief that Accenture's reviewers *may* have seen his race during the review process cannot support his conclusion that they *must* have recommended a ban based on race. *See Twombly*, 550 U.S. at 570 (explaining that naked speculation cannot "nudge[] [a plaintiff's] claims across the line from conceivable to plausible"). Many courts within the Eleventh Circuit have dismissed discrimination claims for similar deficiencies, and this Court should do the same. *See, e.g., Jackson v. BellSouth*

12

*Telecomms.*, 372 F.3d 1250, 1274 (11th Cir. 2004); *Lang v. SPM Prop. Mgmt.*, 2020 WL 13695197, at *16 (S.D. Ala. Feb. 27, 2020); *Potwin v. Dynasty Bldg. Sols., LLC*, 2024 WL 4881385, at *2–3 (M.D. Fla. Nov. 25, 2024).

Even assuming Accenture's reviewers had access to Ballentine's photograph, the amended complaint does not plausibly allege that race was a factor in their review. Generally, a plaintiff may raise an inference of discrimination by identifying and describing "comparators of a different race who were 'similarly situated in all material respects' and were not subject to the same mistreatment." *Horton v. Beacon Woods East*, 2025 WL 3089014, at *6 (M.D. Fla. Nov. 5, 2025). But "[w]hen the plaintiff takes this route . . . [he] must plead sufficient detail about the proposed comparator so that the court can reasonably infer that racial animus accounts for the difference in treatment." *Snoqualmie Indian Tribe v. City of Snoqualmie*, 186 F. Supp. 3d 1155, 1163 (W.D. Wash. May 16, 2016) (collecting cases); *Lang*, 2020 WL 13695197, at *15.

Ballentine does not begin to satisfy this standard. Although he references a handful of white "comparators" whom he believes were treated differently, not one of those comparators is similarly situated to Ballentine "in all material respects." *Horton*, 2025 WL 3089014, at *6. First, three of Ballentine's five comparators allegedly had their accounts flagged for violations *entirely unrelated* to CSE. FAC at 17-18 (table of comparators alleging that white users who posted "artistic" nudity, "[a]dult [n]udity/[s]olicitation," and "[h]uman [e]xploitation" materials later had their accounts reinstated). And though another comparator's account was flagged for a violation of Meta's CSE policy, it was later determined to contain "a medical C-section

13

video." *Id.* That four white individuals with what appear to be entirely different account types had their accounts flagged and restored under entirely different circumstances does not plausibly raise any inference that Accenture engaged in invidious racial discrimination against Ballentine.

That leaves Ballentine with a single, unnamed comparator—"COMP-1"—whom he alleges he discovered through a single post from an unnamed author on the social-media platform X. *Id.* ¶ 71. But even that mysterious comparator cannot advance Ballentine's assertion of racial animus. The amended complaint itself offers *no* details—none—about the post or posts that allegedly led to Meta's termination of Ballentine's account. Ballentine's failure to describe the content of *his own advertisements*—even when pressed by Accenture in the parties' previous briefing and across eight complaints that he has now filed in three different courts—makes any meaningful comparison impossible. And the amended complaint's description of COMP-1 is similarly vague: it does not give any specific details about COMP-1's flagged content. Without *any* information about each party's specific posts, Ballentine's amended complaint does not plausibly state a claim that any alleged disparate treatment was based on race and not on content. *Henley v. Turner Broad. Sys., Inc.*, 267 F. Supp. 3d 1341, 1352–54 (N.D. Ga. 2017) (dismissing Section 1981 discrimination claim where the plaintiff "fail[ed] to identify or describe the comparators in enough detail to show that [she] and the employees [were] similarly situated in all relevant respects or that they [were] nearly identical"); *Pillitieri v. City of Flagler Beach*, 2017 WL 3840433, at *4 (M.D. Fla. Sept. 1, 2017) ("Where a plaintiff

14

has not demonstrated that a comparator was similarly situated in all relevant respects, dismissal is appropriate."); *Scribner v. Collier County*, 2011 WL 2746813, at *4 (M.D. Fla. Jul. 14, 2011) (similar); *Halstrbrison, LLC v. Se. Overtown/Park W. Cmty. Redevelopment Agency*, 2024 WL 5493421, at *3 (S.D. Fla. Mar. 27, 2025) (similar).

Finally, even assuming Accenture's reviewers (1) could access users' photographs, (2) were assigned Ballentine's case, (3) recommended that Meta affirm his ban in the absence of a CSE violation, the amended complaint does not plausibly suggest Ballentine is entitled to relief. In making the plausibility determination, "courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Doe v. Samford Univ.*, 29 F.4th 675, 686 (11th Cir. 2022) (affirming dismissal of Title IX discrimination claim).

Here, the amended complaint does not eliminate all alternative, non-discriminatory explanations for Accenture's alleged recommendation. For example, although Ballentine alleges there was no CSE violation associated with his account, *id.* ¶ 8, the amended complaint does not allege that Ballentine's account complied with all of Meta's community standards. *See, e.g.*, FAC ¶ 8 (alleging only that "no violation existed *to report [to NCMEC]*"). Ballentine does not describe Meta's community standards. Nor does he detail the content of his own account. *Supra* p. 14. Without more, the Court can infer from the amended complaint that Ballentine's account was

15

terminated for non-discriminatory reasons,[5] and the amended complaint does not "plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 681.

Ballentine's claims require establishing that Accenture acted with racial animus. The amended complaint impermissibly piles speculative inference upon speculative inference: Ballentine's account *may* have complied with Meta's community standards; a vendor *may* have been able to see Ballentine's race during the review process; that vendor *may* have been Accenture; and therefore Accenture *must* have recommended a ban based on race. But because the allegations in the amended complaint do not support this speculative leap, they cannot "nudge[] [Ballentine's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Ballentine's claims are "precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told [courts] to ignore when evaluating a complaint's sufficiency." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013). Ballentine's claims should be dismissed.

---

[5] Remarkably, Ballentine has filed two lawsuits against Accenture, its counsel, and others for defamation and IIED based on this legal argument. ECF No. 3 (notice of related action in federal court); ECF No. 22 (notice of related action in state court). Ballentine then refused to engage with Accenture's counsel in the Northern District of California on the basis that he had filed a lawsuit against them. Ballentine's lawsuit is obviously baseless. *Jackson*, 372 F.3d at 1274 ("Florida's litigation privilege affords absolute immunity for acts occurring during the course of judicial proceedings."). Indeed, there are numerous cases in which parties have raised (and courts have accepted) the "obvious alternative explanation" defense. *See, e.g.*, *Iqbal*, 556 U.S. at 682; *Henley*, 267 F. Supp. 3d at 1353–54 (collecting cases). Ballentine's additional lawsuits only underscore the lack of merit to his claims.

16

## II.     The Communications Decency Act Bars Ballentine's Claims

Ballentine's claims should be dismissed for another independent reason: both section 230(c)(1) and section 230(c)(2) of the CDA shield Accenture from liability for its content-moderation efforts.  47 U.S.C. §§ 230(c)(1), (2).  Section 230(c)(1) provides protection to any "provider or user of an interactive computer service" that is treated as the "publisher" of third-party content.  47 U.S.C. § 230(c)(1); *Roca Labs, Inc. v. Consumer Op. Corp.*, 140 F. Supp. 3d 1311, 1319 (M.D. Fla. 2015) ("Lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional functions—such as deciding whether to publish, withdraw, postpone, or alter content—are barred.").  And Section 230(c)(2) provides protection to any "provider or user of an interactive computer service" for good-faith actions "to restrict access to . . . material that the provider or user considers to be . . . objectionable."  47 U.S.C. § 230(c)(2).  Accenture's content-moderation efforts fall squarely within these immunity-granting provisions.

To begin, whether as a "user" of an "interactive computer service" or a third-party service to a "provider" of an "interactive computer service," Accenture qualifies for CDA protection.  Accenture is clearly a "user" of an interactive computer service—Meta and its content-moderation services—because Accenture necessarily accesses Meta-housed content and uses Meta-developed tools to assist Meta with content moderation.[6]  *See* FAC ¶ 110.  Although the CDA does not define or give examples of

---

[6]     The Eleventh Circuit has acknowledged that "website exchange systems and online message boards are interactive computer services." *See, e.g.*, *McCall v. Zotos*, 2023 WL 3946827, at *2 (11th

17

who qualifies as a "user," courts have held that CDA immunity encompasses traditional account holders and content moderators alike. *See, e.g., E. Coast Test Prep LLC v. Allnurses.com, Inc.*, 307 F. Supp. 3d 952, 965 (D. Minn. 2018), *aff'd*, 971 F.3d 747 (8th Cir. 2020) ("Moderator of third-party content" was entitled to CDA immunity against defamation claims under Section 230(c)(1)). This reading aligns with common sense: a "user" under the CDA is simply someone who uses an interactive computer service. *See User*, Webster's Ninth New Collegiate Dictionary (1990) (defining "user" in the years leading up to the passing of the CDA as "one that uses").

Accenture is also entitled to protection in its content-moderation role through Meta's status as a "provider." Because the CDA shields from liability those who, like Meta, provide "software . . . or enabling tools that . . . filter, screen, allow, or disallow content," 47 U.S.C. § 230(f)(4), it follows that content-moderation services like Accenture—whose contractual purpose is to assist Meta in its efforts to filter and screen Meta's content, *see* FAC ¶ 100—are also immune from liability for those actions.

Under Section 230(c)(1), Accenture cannot be held liable for recommending that Meta remove Ballentine's account. Indeed, "[a]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is

Cir. June 12, 2023). Other circuits have held more specifically that Meta's social-media platforms, including Facebook, are interactive service providers. *See, e.g., Sikhs for Just., Inc. v. Facebook, Inc.*, 697 F. App'x 526, 526 (9th Cir. 2017).

18

perforce immune under Section 230." *Mezey v. Twitter, Inc.*, 2018 WL 5306769, at *1 (S.D. Fla. July 19, 2018). Courts have consistently dismissed claims where, as here, those claims are based on a defendant's decision to suspend or terminate a user's account.[7] *See, e.g., id.; Elansari v. Meta, Inc.*, 2024 WL 163080, at *2 (3d Cir. Jan. 16, 2024); *King v. Facebook, Inc.*, 572 F. Supp. 3d 776, 795 (N.D. Cal. 2021).

Similarly, under Section 230(c)(2), Accenture cannot be held liable for its "voluntar[y]" and "good faith" actions to recommend removing content Meta deems objectionable. 47 U.S.C. § 230(c)(2)(A). As explained, Ballentine has not sufficiently alleged that Accenture acted in bad faith. Indeed, Ballentine does not (and cannot) say "[w]hether [Accenture's] reviewers could [even] view users'" identification during the review process. FAC ¶ 193. Ballentine's belief that Accenture's reviewers *may* have been able to see his race during the review process does not support his conclusion that they *must* have acted in bad faith. *See Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1105 (N.D. Cal. 2011) (dismissing claim under Section 230(c)(2) where plaintiff's conclusory allegations did not adequately plead "an absence of good faith"); *see also e360Insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605, 609 (N.D. Ill. 2008)

---

[7] As explained above, the amended complaint does not adequately allege that Accenture caused Ballentine's alleged injuries. *See supra* Part I.A. But even if it did, Ballentine has pleaded himself right into the CDA by asserting that Accenture played a role in Meta's publication decision. As Florida courts have acknowledged in other contexts, "every one who takes part in the publication . . . is charged with publication." *Doe v. Am. Online, Inc.*, 783 So.2d 1010, 1017 (Fla. 2001); *see generally Doe on Behalf of Doe v. Grindr, LLC*, 2023 WL 7053471, at *2 (M.D. Fla. Oct. 26, 2023) (holding that a defendant is treated as a publisher when a plaintiff's claim is "inextricably linked" to a publication decision). Ballentine's amended complaint is therefore at odds with itself: either Accenture's alleged review did not cause Ballentine's injuries, or Accenture assisted with a protected editorial decision. Either way, Ballentine's claims fail.

19

(same). Accenture acted in accordance with Meta's content policies throughout the review process, FAC ¶ 110, and ultimately concluded Ballentine's content was "objectionable" under those policies, 47 U.S.C. § 230(c)(2)(A). The amended complaint does not allege otherwise, and Ballentine's claims against Accenture should be dismissed. *See Republican Nat'l Comm. v. Google, Inc.*, 2023 WL 5487311, at \*5–6 (E.D. Cal. Aug. 24, 2023) (dismissing claims of bad faith where factual allegations did "not rise above the speculative level").

Affording CDA protection to third-party content-moderation services is consistent with the congressional goal of "encourag[ing] service providers to self-regulate the dissemination of offensive material over their service." *M.H. v. Omegle.com, LLC*, 2022 WL 93575, at \*6 (M.D. Fla. Jan. 10, 2022), *aff'd sub nom. M.H. on behalf of C.H. v. Omegle.com LLC*, 122 F.4th 1266 (11th Cir. 2024). To that end, this Court has explained that the CDA "establish[es] broad federal immunity." *Roca Labs, Inc.*, 140 F. Supp. 3d at 1319. This liberal construction allows "computer service providers to establish standards of decency without risking liability for doing so." *Omegle.com*, 2022 WL 93575 at \*6. Accenture's moderation efforts are precisely the type of conduct the CDA protects. And because this lawsuit seeks to hold Accenture liable for its role in blocking and screening online material, the CDA bars Ballentine's claims.

20

## III. Ballentine's Section 1983 and Section 1985(3) Claims Fail for Additional, Independent Reasons

Even beyond the factual and legal deficiencies described above, Ballentine's Section 1983 and Section 1985(3) claims cannot survive for additional, independent reasons: the amended complaint does not plausibly suggest that Accenture is a state actor or that Meta's termination of Ballentine's account was in fact part of a large-scale conspiracy to discriminate against Ballentine.

### A. Accenture's Private Review of Ballentine's Account Is Not "State Action" Under Section 1983

Ballentine has not alleged facts to support his Section 1983 claim against Accenture, either through an alleged equal-protection or procedural-due-process violation. Regardless of the underlying constitutional argument, Section 1983 "only provides for claims to redress State action." *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001). A defendant's actions are attributable to the state only if (1) the alleged deprivation of rights was "caused by the exercise of some right or privilege created by the State," and (2) "the party charged with the deprivation . . . may fairly be said to be a state actor." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992).

Neither element is met here. First, Meta did not exercise a state-created right by enforcing its own private community standards though the termination of Ballentine's account. Accenture's review of Ballentine's account—performed (if at all) under Meta's privately set terms, FAC ¶ 107—therefore was also not an exercise of a state-created right. *See Sabeta v. Baptist Hosp. of Miami, Inc.*, 410 F. Supp. 2d 1224, 1244

21

(S.D. Fla. 2005) ("[T]he specific conduct attributed to [the defendant] arises not from any relationship with the government, but from its own alleged policies."). Second, Accenture is not a state actor. Indeed, Accenture is three times removed from any direct state conduct: according to the amended complaint, vendors make a recommendation to Meta (who retains override authority), FAC ¶¶ 33, 118; Meta reports any "apparent" CSE violations to NCMEC, *id.* ¶ 98; and NCMEC reports those violations to law enforcement, *id.* ¶ 75. This attenuated connection cannot support Ballentine's conclusion that vendors like Accenture are at the "chokepoint between platform enforcement and state investigation," *id.* ¶ 82, or that Accenture was "pervasively entwined with law-enforcement-facing functions such that the state is responsible for the decision," *id.* ¶ 162.

Further, even if the amended complaint alleged that Accenture personally had *any* interaction with law enforcement, courts have made clear in other contexts that mere compliance with reporting requirements is insufficient to transform a private actor into a state actor. *Lindbloom v. Manatee Mem'l Found., Inc.*, 2023 WL 11891890, at *3 (M.D. Fla. Apr. 13, 2023), *report and recommendation adopted*, 2023 WL 11891892 (M.D. Fla. Nov. 30, 2023) (holding that a hospital which acted in accordance with its statutory duty is not a state actor under Section 1983); *United States v. Williamson*, 2023 WL 4056324, at *14 (M.D. Fla. Feb. 10, 2023) ("[T]he mere fact that Yahoo has developed protocols to facilitate its interactions with the government" in relation to its duty to report child pornography does not render it a state actor); *United States v. Robinson*, 2025 WL 3039333, at *3 (M.D. Fla. Oct. 31, 2025) (noting in a parenthetical

22

that "a private actor does not become a government agent simply by complying with a mandatory reporting statute"). Ballentine's Section 1983 claim should therefore be dismissed.

## B. The Complaint Does Not Plausibly Allege a Conspiracy Between Meta and the Vendor Defendants

Ballentine's Section 1985(3) claim fails for the additional reason that the amended complaint does not plausibly allege a conspiracy between Meta and the vendor defendants. Once again, the amended complaint has no factual support for this remarkable assertion. It claims that, because the number of Meta's CSE enforcement actions exceeds the number of violations Meta reports to NCMEC, Meta must have engaged in discriminatory targeting against him. And because the vendor defendants perform "staff[ed] human review within Meta's enforcement pipeline," they must have made an "agreement" with Meta to participate in that discrimination. FAC ¶ 171.

Ballentine's bare allegation of conspiracy is insufficient to state a claim. According to the amended complaint, Accenture employs nearly 6,000 reviewers dedicated exclusively to Meta's platforms, and the other vendor defendants employ thousands more. FAC ¶¶ 21–23. But "[f]or a conspiracy of the scale alleged by this complaint, one would expect at least some evidentiary facts to have been located and pled." *Kelsey K. v. NFL Enters.*, 254 F. Supp. 3d 1140, 1144 (N.D. Cal. 2017), *aff'd*, 757 F. App'x 524 (9th Cir. 2018). This stringent standard is both intuitive and pragmatic: "it is only by taking care to require allegations that reach the level suggesting

23

conspiracy that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the discovery process will reveal relevant evidence." *Twombly*, 550 U.S. at 559. Because such allegations are not present here, the Court should dismiss Ballentine's Section 1985(3) claim.

## CONCLUSION

The Court should dismiss with prejudice all claims against Accenture LLP.

24

Dated: March 18, 2026

Respectfully submitted,

/s/ Marianna C. Chapleau
Marianna C. Chapleau
LEAD COUNSEL
Florida Bar No. 1059142
KIRKLAND & ELLIS LLP
Three Brickell City Centre
98 S.E. 7th Street, Suite 700
Miami, FL 33131
Telephone: 305 432-5687
Fax: 305 432-5601
mchapleau@kirkland.com

Devin S. Anderson (pro hac vice
forthcoming)
KIRKLAND & ELLIS LLP
95 South State Street
Salt Lake City, UT 84111
Telephone: 801 877 8115
Fax: 801 877 8101
devin.anderson@kirkland.com

Counsel for Defendant Accenture LLP

# LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), counsel for Defendant Accenture LLP certifies that counsel conferred with Plaintiff via email, and Plaintiff opposes the relief requested in this motion.

/s/ Marianna C. Chapleau
Marianna C. Chapleau

26

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 18, 2026, I electronically filed the foregoing through Middle District of Florida's CM/ECF System, which will send a copy to all unrepresented parties and counsel of record.

_/s/ Marianna C. Chapleau_
Marianna C. Chapleau

# EXHIBIT E-3

Dkt. 31: Genpact motion for extension (no certificate of service)

# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF FLORIDA

MARVELLE J. "JAY" BALLENTINE

Plaintiff,

v.

META PLATFORMS, INC.,
ACCENTURE LLP; TASKUS, INC,
and GENPACT USA, INC.,

Defendants.

Case No 6:26-cv-376

## DEFENDANT GENPACT LTD.'S TIME SENSITIVE MOTION TO EXTEND TIME TO RESPOND TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant Genpact Ltd. ("Genpact"), by and through its undersigned counsel, hereby specially appears to respectfully move the Court to extend the time for Genpact to respond to Plaintiff's First Amended Complaint (the "FAC") in this action until April 22, 2026. Genpact respectfully designates this Motion as time-sensitive given its upcoming deadline to respond to the First Amended Complaint on March 23, 2026; accordingly, Genpact requests a ruling by March 20, 2026.

Genpact respectfully states the following as good cause in support of its motion:

1. The FAC in this action was filed and served on Genpact on March 4, 2026, via USPS Priority Mail. (Dkt. Nos. 19 and 20). Genpact did not receive the FAC until March 10, 2026. Accordingly, absent an extension Genpact's response to the FAC is due to be filed on March 23, 2026.

2. The FAC raises substantially similar claims against Genpact, Meta Platforms Inc. ("Meta")[1], Accenture LLP ("Accenture")[2], and TaskUs, Inc. ("TaskUs") (collectively, "Defendants") based on a common set of factual allegations.

---

[1] As of March 19, 2026, Plaintiff has not yet served the FAC on Meta.
[2] Accenture filed a Motion to Dismiss Plaintiff's FAC on March 18, 2026. *See* Dkt. No. 29.

- 1 -

3. Genpact requires additional time to evaluate Plaintiff's claims in the FAC, particularly in light of the fact that Genpact did not receive the FAC until March 10 and only recently retained undersigned counsel. Furthermore, additional time would be helpful to determine whether consolidated briefing among some or all of the Defendants on forthcoming Motions to Dismiss the FAC may be appropriate, in light of the similar nature of the claims and allegations against each Defendant.

4. Accordingly, a 30-day extension of the time for Genpact to respond to the Complaint, from March 23, 2026 to April 22, 2026, will not cause prejudice or unduly delay the litigation.

## MEMORANDUM OF LAW

Federal Rule of Civil Procedure 6(b) provides that the Court, in its discretion for good cause shown, may enlarge a period of time provided by the rules for a party to act, when requested to do so before the expiration of the original period of time to respond or its extension expires. Such authority is within the Court's broad discretion to manage its cases, including scheduling. *See Chrysler Int'l Corp. v. Chemaly*, 280 F. 3d 1358, 1360 (11th Cir. 2002) (citing *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001). As set forth above, good cause exists for Genpact request for an extension of its deadline to respond to the FAC, to allow Genpact to evaluate

- 2 -

the allegations of the FAC and assess whether consolidated briefing on Motions to Dismiss the FAC would be appropriate in order to conserve party and judicial resources.

For the foregoing reasons, Genpact respectfully moves that the date for filing any response to the FAC in this action be extended until April 22, 2026, without waiver of any defenses or rights it may have under Rule 12 or otherwise.

## Local Rule 3.01(g) Certification

Pursuant to Local Rule 3.01(g), on March 4, 2026, Plaintiff informed undersigned counsel that he had filed an amended complaint and would not be granting any party an extension and stated his position applies "with particular force to Genpact Limited and TaskUs, Inc." In addition, on March 19, 2026, Plaintiff informed counsel that he was applying a filter to emails from Orrick, Herrington & Sutcliffe LLP so that he would not receive them and that we should direct the firm's future communications to Yuliya Glazman. My colleague thereafter sought clarification as to whether Ms. Glazman was Plaintiff's counsel. Orrick has yet to receive a response.

.

- 3 -

Dated: March 19, 2026  Respectfully submitted,

          ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Diana Marie Fassbender*
   DIANA MARIE FASSBENDER (SBN 17095)
   dszego@orrick.com
   215 NW 24th Street
   Suite 200
   Miami, FL 33127
   Telephone: (202) 339-8533
   Facsimile: (202) 339-8500

   *Attorneys for Defendant Genpact Ltd.*

# EXHIBIT E-4

Dkt. 48: TaskUs MTD

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

MARVELLE J. "JAY"
BALLENTINE,

       Plaintiff,

v.

META PLATFORMS, INC.,
ACCENTURE LLP, TASKUS, INC.,
and GENPACT LIMITED.

       Defendants.

_____ /

Case No. 6:26-cv-00376-AGM-RMN

## DEFENDANT TASKUS INC.'S MOTION TO DISMISS[1]

Defendant TASKUS, INC. ("TaskUs"), through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 12, moves the Court to dismiss the Amended Complaint[2] filed by Plaintiff MARVELLE J. "JAY" BALLENTINE

---

[1] On March 20, 2026, Defendant TaskUs, Inc. filed a Time Sensitive Motion to Extend Time to Respond to Plaintiff's First Amended Complaint ("Motion to Extend") (ECF No. 34), seeking an additional 30 days to respond to the First Amended Complaint. The Court granted a similar motion by co-Defendant Genpact Ltd. (*see* ECF Nos. 30 and 31), but has not ruled on Defendant TaskUs' Motion to Extend. As noted in the Motion to Extend, while service of the First Amended Complaint was not proper, in an abundance of caution, if service *is* deemed proper, TaskUs' response is due today (March 23, 2026). So as not to waive any available defenses, TaskUs hereby files this Motion to Dismiss.

[2] TaskUs maintains Plaintiff failed to properly serve the Amended Complaint as TaskUs was not represented at the time of the filing of the Amended Complaint. Thus, service by priority mail is not an appropriate method of service. *See* Fed. R. Civ. P. 4 and 5. Moreover, as stated in the Time Sensitive Motion to Extend Time to Respond to Plaintiff's First Amended Complaint, Defendant received notification of the Amended Complaint through a CT Corporation Service of Process Notification dated Monday, 03/09/2026. Plaintiff contends the proper service date is Saturday, 03/07/2026 based off the Priority Mail tracking number. Using either date and again assuming proper service, pursuant to Rule 6(a)(1)(c), the proper 14-day count is Monday, March 23, 2026.

("Plaintiff" or "Ballentine") for failure to state a claim upon which relief may be granted.

## INTRODUCTION

Plaintiff failed to plead any valid claim against TaskUs. According to the First Amended Complaint ("FAC") (ECF No. 19), Defendant Meta Platforms, Inc. ("Meta") terminated Ballentine's Facebook advertising account after flagging it for child sexual exploitation ("CSE") material. The FAC alleges that one of three third-party service vendors (Defendants Accenture LLP ("Accenture"), TaskUs, or Genpact Limited ("Genpact")) assisted in reviewing Ballentine's account before it was terminated nearly four years ago. Ballentine theorizes that his Facebook account was terminated because of his race. The FAC, however, supplies no facts to support that theory, and dismissal is warranted for three reasons.

First, Ballentine has not plausibly alleged facts to show that TaskUs—an entity he acknowledges had no technical ability to terminate his account—caused his injuries. He concedes that Meta controlled every meaningful step of the content-moderation process—flagging his account, setting the review policies, retaining override authority over vendor recommendations, and ultimately terminating his account. The FAC does not even identify *which* vendor reviewed his account; it merely guesses that one of three vendors did. Ballentine's failure to plead but-for causation as to TaskUs is fatal to all four of his claims.

Second, Ballentine has not plausibly alleged racial animus. He does not describe the content of his own account, identifies no similarly situated comparator whose

2

account was treated differently, and admits he does not even know whether any vendor could see his race during the review process. His speculation that a reviewer *may* have seen his race and *therefore* must have recommended a ban based on race does not come close to stating a plausible claim of racial discrimination.

Third, the Communications Decency Act ("CDA") shields TaskUs from any alleged liability for its content moderation. Because Section 230(c)(1) of the CDA bars claims against interactive computer service providers based on the removal of content (including accounts) from their services, third-party content-moderation service providers are also immune from liability for assisting with those publication decisions. Similarly, Section 230(c)(2) of the CDA protects content moderators' voluntary and good-faith efforts to keep the internet safe, including by assisting others in eliminating objectionable material on their websites.

Ballentine's attempt to embark on a fishing expedition to try to find facts that support his unfounded theory of invidious racial discrimination should be rejected. Ballentine already voluntarily withdrew his complaint against Defendants Meta and Accenture in the Northern District of California after the briefing on their respective motions to dismiss concluded. But four days later, he filed this nearly identical case in a new jurisdiction, alleging claims against TaskUs for the first time. The Court should dismiss Ballentine's FAC.

3

## BACKGROUND[3]

Meta operates social-media platforms like Facebook and Instagram and takes significant steps to ensure a safe experience for users: it establishes community and advertising standards, reviews user content for violations of those standards, and retains authority to suspend or ban accounts that do not follow its standards. *See* FAC ¶¶ 30, 33, 34, and 60. Relevant to Plaintiff's claims, Meta also actively screens for materials that violate its policy against CSE, and is required by law to report apparent violations to the National Center for Missing and Exploited Children (NCMEC) for further investigation. FAC ¶¶ 34, 74.

Accenture, TaskUs, and Genpact assist Meta in its content-moderation efforts, including by reviewing appeals from users whose material has been flagged under Meta's CSE policy. FAC ¶ 42. Meta flags potential violations and sets the rules for review, and vendor teams perform a human review of the Meta-flagged content under Meta's policies and training. FAC ¶¶ 42, 108–112. As the platform operator, Meta retains full control over the NCMEC reporting process, reserves "override authority" over vendors' enforcement recommendations, and "ratifie[s]" the outcome of vendors' review. FAC ¶¶ 33, 74, 124.

Ballentine promoted and sourced work for his RV-repair-services business using a Facebook advertising account beginning in June 2022. FAC ¶ 53. He also used his

---

[3] TaskUs accepts as true the factual allegations in the Amended Complaint solely for the purposes of this Motion to Dismiss; it does not otherwise concede the truth of any of those allegations.

4

account to access continuing-education materials through the National RV Training Academy's Alumni Facebook Group. FAC ¶ 52. Plaintiff is a Black man. FAC ¶ 18.

On July 4, 2022, Meta flagged Ballentine's account for violating its CSE policy and disabled his Facebook account. FAC ¶¶ 54, 56. Ballentine appealed, and Meta requested identity verification before processing the appeal. FAC ¶ 54. Ballentine submitted his passport. *Id.* On Meta's request, a human moderator at either Accenture, TaskUs, or Genpact reviewed Ballentine's account. FAC ¶ 7. After the review, Meta terminated Ballentine's account. FAC ¶ 56. Ballentine claims he lost out on pending RV service requests, access to educational materials, and the ability to acquire customers after his account was terminated. FAC ¶¶ 63–65.

On September 9, 2025, Ballentine filed a complaint against Defendants Meta and Accenture in the United States District Court for the Northern District of California in which he claimed that his Facebook account was terminated because of his race and not because of a CSE violation. *See generally* ECF No. 4.[4] After Meta and Accenture moved to dismiss Ballentine's complaint (as amended), and approximately one week before the hearing on defendants' motions to dismiss, Ballentine voluntarily dismissed his action and refiled a new complaint in this Court, this time adding TaskUs and Genpact as additional defendants. *Id.*

---

[4] TaskUs does not oppose Ballentine's motion to take judicial notice of the public docket in his previous action in the Northern District of California. ECF No. 4. However, TaskUs does oppose the inclusion of Plaintiff's personal summary of those proceedings. *Id.*

For the first time, Ballentine stated that he does not know which vendor defendant reviewed his account, but that one of them did. ECF No. 1 at ¶ 47. The initial complaint also asserted several new state-law claims against the Defendants. Ballentine amended his complaint to drop the state claims, *see* FAC ¶ 1, which he has since refiled in state court along with various other claims against seven defendants. *See* ECF No. 22.[5]

Ballentine brings four federal claims against TaskUs: violations of 42 U.S.C. §§ 1981, 1982, 1983, and 1985(3). FAC ¶¶ 138, 150, 160, 169. He now seeks declaratory relief, public injunctive relief, and monetary damages "in an amount not less than $500,000,000." FAC ¶ 178.

## LEGAL MEMORANDUM

### A.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." A complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint "does not need detailed factual allegations," but "requires more than labels and conclusions" and requires factual allegations "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Specifically, a complaint must include "enough facts to state

---

[5] Of note, Ballentine has also separately sued Meta and Accenture's counsel in this Court and in state court for defamation, civil conspiracy to defame, and intentional infliction of emotional distress based on a legal argument in Accenture's motion to dismiss Ballentine's previous complaint in the Northern District of California. See ECF Nos. 3, 22.

6

a claim to relief that is plausible on its face." *Id.* at 570. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

**B.    Ballentine Fails to Establish TaskUs Caused His Injuries or Acted Out of Racial Animus**

Ballentine's claims fail first because the allegations in the Amended Complaint do not establish that, but for TaskUs' alleged actions, Ballentine would not have suffered his alleged injuries. Second, Ballentine's allegations do not support his conclusion that TaskUs acted with racial animus.

**i.    The Amended Complaint Does Not Sufficiently Allege That TaskUs Caused Ballentine's Injuries**

Nothing in Ballentine's Amended Complaint plausibly suggests that TaskUs caused his alleged injuries. "It is 'textbook tort law' that a plaintiff seeking redress for a defendant's legal wrong typically must prove but-for causation." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 331 (2020). This means the plaintiff must "show that the harm would not have occurred in the absence of . . . the defendant's conduct." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346–47 (2013)(internal quotations omitted). The "but for" causation test "supplies the 'default'

7

or 'background' rule against which Congress is normally presumed to have legislated when creating its own new causes of action," including antidiscrimination laws like those at issue here. *Comcast*, 589 U.S. at 332. And because "the essential elements of a claim remain constant through the life of a lawsuit," this requirement applies equally at the motion-to-dismiss stage: a plaintiff must "plausibly allege" but-for causation for each defendant. *Id.*

Ballentine's Amended Complaint does not meet this standard. To start, it improperly "assert[s] multiple claims against multiple [vendor] defendants without specifying which of the [vendor] defendants are responsible for which acts or omissions." *Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021). Although it specifies that "the claim is brought against" all vendor defendants, it does not clearly indicate whether *all three* vendor defendants reviewed the account, or whether he is merely guessing that *just one* of the three vendors must have reviewed the account. *Compare* FAC ¶ 171 (asserting that all three "Vendor Defendants joined and acted in furtherance" of a conspiracy to terminate Ballentine's account), with ¶ 175 (asserting that a single "Vendor Defendant" reviewed Ballentine's account).[6] This deficiency alone warrants dismissal. *See Lyles v. Sch. Dist. of Osceola Cnty.*, 2023 WL 8437717, at *1 (M.D. Fla. Feb. 2, 2023) (dismissing shotgun pleading).

---

[6] Furthermore, in Plaintiff's own Response in Opposition to the Motion to Dismiss filed by Accenture, Plaintiff seemingly affirmatively believes that it was "an Accenture reviewer" who conducted the human review. *See* ECF No. 40, pg. 3. Plaintiff's conflicting narrative further warrants dismissal.

Even if the Amended Complaint properly attributed conduct to a specific vendor defendant (or plausibly pleaded alternative causation), which it does not, it still would fail to state a claim. The Amended Complaint makes numerous allegations that cut against the inference that any vendor defendant, let alone TaskUs specifically, caused Ballentine's injuries. For one, it affirmatively alleges that Meta controlled the content moderation for the Facebook service at issue. According to the Amended Complaint, Meta set content policies for its "enforcement pipeline"; made initial CSE designations; provided "standard operating procedures, policy updates, and training materials for CSE-labeled enforcement maters" to TaskUs; submitted official CSE reports; retained "override authority" over and "ratified the final outcome" of any vendor recommendation before actioning an account,; and held exclusive power to approve, restrict, terminate, or reinstate accounts, and to return any lost data. *See* FAC ¶¶ 38, 42, 53–57, 108, 142.

TaskUs, meanwhile, operated in a more limited sphere consistent with its role as a third-party service provider. The Amended Complaint asserts that, if TaskUs reviewed Ballentine's account, it relied on "Meta-provided reviewer interfaces." FAC ¶ 111.

Given these affirmative allegations, TaskUs cannot be the but-for cause of Ballentine's alleged injuries. By the Amended Complaint's own terms, Ballentine's account was flagged by Meta for CSE *before* TaskUs was ever involved in the review process. FAC ¶ 54. When a vendor (whoever it may be) later reviewed the alleged violation, it acted according to extrinsic training, policies, and procedures. FAC ¶ 111.

9

And if TaskUs performed the review, the most it could do was issue a recommendation for action; as Ballentine acknowledges, TaskUs lacked authority to disable his account. *See* FAC ¶¶ 42, 142.

The Amended Complaint's "naked assertion" that TaskUs caused Ballentine's injuries is thus not only "devoid of [ ] factual enhancement," *Iqbal*, 556 U.S. at 678—it directly contradicts the allegations on which it relies. Because Ballentine's Amended Complaint fails to plead—and affirmatively eliminates—the essential element of but-for causation against TaskUs, the Court cannot "draw the reasonable inference that [TaskUs] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Ballentine's claims should be dismissed.

### ii. The Amended Complaint Does Not Sufficiently Allege That TaskUs' Actions Were Based on Racial Animus

Ballentine's claims also fail because the allegations in the Amended Complaint do not plausibly support an inference of racial animus or discriminatory intent. In *Comcast*, the Supreme Court held that a Section 1981 plaintiff must plead and prove that racial animus is not just <u>one</u> reason behind the defendant's actions, but <u>the</u> reason for those actions. *See* 589 U.S. at 333. Similarly, because Section 1982 "uses nearly identical language" to Section 1981, *id.* at 336, courts have extended *Comcast's* but-for requirement to Section 1982 claims. *See, e.g., Christian v. Rancho Grande Manufactured Home Cmty.*, 2024 WL 3372687, at *1 (9th Cir. July 11, 2024), cert denied, 145 S. Ct. 1057 (2025); *James v. City of Evanston*, 2021 WL 4459508, at *9 (N.D. Ill. Sept. 29, 2021). Claims brought under Sections 1983 and 1985(3) also require showing

10

discriminatory intent or animus. *See Washington v. Davis*, 426 U.S. 229, 239–40 (1976) (claims based on equal protection)[7]; *Chua v. Ekonomou*, 1 F.4th 948, 955 (11th Cir. 2021) (Section 1985(3) claims).

Ballentine's Amended Complaint does not meet this threshold requirement. According to the Amended Complaint, one of the vendor defendants "had access to account-level identifiers, including profile photos, names, and in some cases government-issued ID images, sufficient to reveal a user's race" during the review process. FAC ¶ 44. The Amended Complaint also asserts that Meta permanently terminated Ballentine's account "[w]ithin hours of receiving [his] identification." FAC ¶ 56. Based on these allegations, the Amended Complaint hypothesizes that TaskUs (or another vendor defendant) had Ballentine's identification "visible on-screen," saw the color of his skin, and recommended that Meta affirm his ban because he is Black. FAC ¶ 154.

First, the Amended Complaint makes clear that Ballentine does not know whether any vendor defendant, let alone TaskUs' reviewers, even had access to his photograph. *See, e.g.*, FAC ¶ 193 (requesting relief from the vendor defendants in the form of an online publication explaining "[w]hether reviewers could view users' profile photos and government identification images during review"); FAC ¶ 190 (requesting relief from Meta in the form of an "audit log" explaining "[w]hether identity-revealing

---

[7] Although Ballentine's "alternative" Section 1983 claim that the defendants violated his procedural due process rights does not require allegations plausibly suggesting racial animus, that claim fails because TaskUs is not a state actor. FAC ¶ 160.

11

imagery was displayed" during "human review of accounts). Ballentine's personal belief that TaskUs' reviewers may have seen his race during the review process cannot support his conclusion that they must have recommended a ban based on race. *See Twombly*, 550 U.S. at 570 (explaining that naked speculation cannot "nudge[] [a plaintiff's] claims across the line from conceivable to plausible"). This Court, and others in the Eleventh Circuit, have dismissed discrimination claims for similar deficiencies, and this Court should do the same. *See, e.g., Potwin v. Dynasty Bldg. Sols., LLC*, 2024 WL 4881385, at *2–3 (M.D. Fla. Nov. 25, 2024); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1274 (11th Cir. 2004); *Lang v. SPM Prop. Mgmt.*, 2020 WL 13695197, at *16 (S.D. Ala. Feb. 27, 2020).

Even assuming TaskUs' reviewers had access to Ballentine's photograph, the Amended Complaint does not plausibly allege that race was a factor in their review. Generally, a plaintiff may raise an inference of discrimination by identifying and describing "comparators of a different race who were 'similarly situated in all material respects' and were not subject to the same mistreatment." *Horton v. Beacon Woods East*, 2025 WL 3089014, at *6 (M.D. Fla. Nov. 5, 2025). But "[w]hen the plaintiff takes this route . . . [he] must plead sufficient detail about the proposed comparator so that the court can reasonably infer that racial animus accounts for the difference in treatment." *Snoqualmie Indian Tribe v. City of Snoqualmie*, 186 F. Supp. 3d 1155, 1163 (W.D. Wash. May 16, 2016) (collecting cases); *Lang*, 2020 WL 13695197, at *15.

Ballentine does not begin to satisfy this standard. Although he references a handful of white "comparators" whom he believes were treated differently, not one of

12

those comparators is similarly situated to Ballentine "in all material respects." *Horton*, 2025 WL 3089014, at *6. First, three of Ballentine's five comparators allegedly had their accounts flagged for violations unrelated to CSE. FAC at pgs. 17-18 (table of comparators alleging that white users who posted "artistic" nudity, "[a]dult [n]udity/[s]olicitation," and "[h]uman [e]xploitation" materials later had their accounts reinstated). And though another comparator's account was flagged for violating Meta's CSE policy, it was later determined to contain "a medical C-section video." *Id.* That four white individuals with what appear to be entirely different account types had their accounts flagged and restored under entirely different circumstances does not plausibly raise any inference that TaskUs engaged in invidious racial discrimination against Ballentine.

That leaves Ballentine with a single, unnamed comparator— "COMP-1"— whom he alleges he discovered through a single post from an unnamed author on the social-media platform X. FAC ¶ 71. But even that mysterious comparator cannot advance Ballentine's assertion of racial animus. The Amended Complaint itself offers no details—none—about the post or posts that allegedly led to Meta's termination of Ballentine's account. Ballentine's failure to describe the content of his own advertisements makes any meaningful comparison impossible. And the Amended Complaint's description of COMP-1 is similarly vague: it gives no specific details about COMP-1's flagged content. With no information about each party's specific posts, Ballentine's Amended Complaint does not plausibly state a claim that any alleged disparate treatment was based on race and not on content. *Henley v. Turner*

13

*Broad. Sys., Inc.*, 267 F. Supp. 3d 1341, 1352–54 (N.D. Ga. 2017) (dismissing Section 1981 discrimination claim where the plaintiff "fail[ed] to identify or describe the comparators in enough detail to show that [the plaintiff] and the employees [were] similarly situated in all relevant respects or that they [were] nearly identical" (internal quotations and citations omitted); *Pillitieri v. City of Flagler Beach*, 2017 WL 3840433, at *4 (M.D. Fla. Sept. 1, 2017) ("Where a plaintiff has not demonstrated that a comparator was similarly situated in all relevant respects, dismissal is appropriate."); *Scribner v. Collier County*, 2011 WL 2746813, at *4 (M.D. Fla. Jul. 14, 2011) (similar); *Halstrbrison, LLC v. Se. Overtown/Park W. Cmty. Redevelopment Agency*, 2024 WL 5493421, at *3 (S.D. Fla. Mar. 27, 2025) (similar).

Finally, even assuming TaskUs reviewers (1) could access users' photographs, (2) were assigned Ballentine's case, (3) recommended that Meta affirm his ban absent a CSE violation, the Amended Complaint does not plausibly suggest Ballentine is entitled to relief. In making the plausibility determination, "courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Doe v. Samford Univ.*, 29 F.4th 675, 686 (11th Cir. 2022) (affirming dismissal of Title IX discrimination claim).

Here, the Amended Complaint does not eliminate all alternative, non-discriminatory explanations for TaskUs' alleged recommendation. For example, although Ballentine alleges there was no CSE violation associated with his account, the Amended Complaint does not allege that Ballentine's account complied with all

14

of Meta's community standards. *See, e.g.,* FAC ¶ 8 (alleging only that "no violation existed to report [to NCMEC]"). Ballentine does not describe Meta's community standards. Nor does he detail the content of his own account. Without more, the Court can infer from the Amended Complaint that Ballentine's account was terminated for non-discriminatory reasons,[8] and the Amended Complaint does not "plausibly suggest an entitlement to relief." *Iqbal,* 556 U.S. at 681.

Ballentine's claims require establishing that TaskUs acted with racial animus. The Amended Complaint impermissibly piles speculative inference upon speculative inference: Ballentine's account *may* have complied with Meta's community standards; a vendor *may* have seen Ballentine's race during the review process; that vendor *may* have been TaskUs; and therefore TaskUs *must* have recommended a ban based on race. Ballentine's claims are "precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told [courts] to ignore when evaluating a complaint's sufficiency." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.,* 727 F.3d 502, 506 (6th Cir. 2013). Ballentine's claims should be dismissed.

---

[8] Ballentine has filed additional lawsuits against Defendant Accenture, its counsel, and others for defamation and intentional infliction of emotional distress based on this legal argument. ECF No. 3 (notice of related action in federal court); ECF No. 22 (notice of related action in state court). There are numerous cases in which parties have raised (and courts have accepted) the "obvious alternative explanation" defense. *See, e.g., Iqbal,* 556 U.S. at 682; *Henley,* 267 F. Supp. 3d at 1353–54 (collecting cases). Ballentine's additional lawsuits only underscore the lack of merit to his claims.

### C.   The Communications Decency Act Bars Ballentine's Claims

Ballentine's claims should be dismissed for another independent reason: both section 230(c)(1) and section 230(c)(2) of the CDA shield TaskUs from liability for its alleged content-moderation efforts in this case. 47 U.S.C. §§ 230(c)(1), (2). Section 230(c)(1) protects any "provider or user of an interactive computer service" that is treated as the "publisher" of third-party content. 47 U.S.C. § 230(c)(1); *Roca Labs, Inc. v. Consumer Op. Corp.*, 140 F. Supp. 3d 1311, 1319 (M.D. Fla. 2015) ("Lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional functions—such as deciding whether to publish, withdraw, postpone, or alter content—are barred."). And Section 230(c)(2) protects any "provider or user of an interactive computer service" for good-faith actions "to restrict access to . . . material that the provider or user considers to be . . . objectionable." 47 U.S.C. § 230(c)(2). TaskUs' alleged content-moderation efforts in this case fall squarely within these immunity-granting provisions.

To begin, whether as a "user" of an "interactive computer service" or a third-party service to a "provider" of an "interactive computer service," TaskUs qualifies for CDA protection. TaskUs is a "user" of an interactive computer service—Meta and its content-moderation services—because TaskUs accesses Meta-housed content and uses Meta-developed tools to assist Meta with content moderation.[9] *See* FAC ¶ 110.

---

[9] The Eleventh Circuit has acknowledged that "website exchange systems and online message boards are interactive computer services." *See, e.g., McCall v. Zotos*, 2023 WL 3946827, at *2 (11th Cir. June 12, 2023). Other circuits have held more specifically that Meta's social-media platforms,

16

Although the CDA does not define or give examples of who qualifies as a "user," courts have held that CDA immunity encompasses traditional account holders and content moderators alike. *See, e.g., E. Coast Test Prep LLC v. Allnurses.com, Inc.*, 307 F. Supp. 3d 952, 965 (D. Minn. 2018), aff'd, 971 F.3d 747 (8th Cir. 2020) (moderator of third-party content was entitled to CDA immunity against defamation claims under Section 230(c)(1)). This reading aligns with common sense: a "user" under the CDA is simply someone who uses an interactive computer service. *See User*, Webster's Ninth New Collegiate Dictionary (1990) (defining "user" in the years leading up to the passing of the CDA as "one that uses").

TaskUs is also entitled to protection in its alleged content-moderation role in this case through Meta's status as a "provider." Because the CDA shields from liability those who, like Meta, provide "software . . . or enabling tools that . . . filter, screen, allow, or disallow content," 47 U.S.C. § 230(f)(4), content-moderation services like TaskUs—whose contractual purpose is to assist Meta in its efforts to filter and screen Meta's content—are also immune from liability for those actions.

Under Section 230(c)(1), TaskUs cannot be held liable for allegedly recommending that Meta remove Ballentine's account. Indeed, "[a]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under Section 230." *Mezey v. Twitter, Inc.*, No. 1:18-cv-21069-KMM, 2018 U.S. Dist. LEXIS 121775, at *3 (S.D. Fla. July 19, 2018) (quoting

---

including Facebook, are interactive service providers. *See, e.g., Sikhs for Just., Inc. v. Facebook, Inc.*,697 F. App'x 526, 526 (9th Cir. 2017).

17

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008)). Courts have consistently dismissed claims where, as here, those claims are based on a defendant's decision to suspend or terminate a user's account.[10] *See, e.g., id.; Elansari v. Meta, Inc.*, 2024 WL 163080, at *2 (3d Cir. Jan. 16, 2024); *King v. Facebook, Inc.*, 572 F. Supp. 3d 776, 795 (N.D. Cal. 2021).

Similarly, under Section 230(c)(2), TaskUs cannot be held liable for its "voluntar[y]" and "good faith" actions to allegedly recommend removing content Meta deems objectionable. 47 U.S.C. § 230(c)(2)(A). Ballentine has not sufficiently alleged that TaskUs acted in bad faith. Ballentine does not (and cannot) say "[w]hether [TaskUs'] reviewers could [even] view users'" identification during the review process. FAC ¶ 193. Ballentine's belief that TaskUs' reviewers *may* have allegedly seen his race during the review process does not support his conclusion that they *must* have acted in bad faith. *See Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1105 (N.D. Cal. 2011) (dismissing claim under Section 230(c)(2) where plaintiff's conclusory allegations did not adequately plead "an absence of good faith"); *see also e360Insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605, 609 (N.D. Ill. 2008) (same). TaskUs

---

[10] As explained above, the amended complaint does not adequately allege that TaskUs caused Ballentine's alleged injuries. But even if it did, Ballentine has pleaded himself right into the CDA by asserting that TaskUs allegedly played a role in Meta's publication decision. As Florida courts have acknowledged in other contexts, "every one who takes part in the publication. . . is charged with publication." *Doe v. Am. Online, Inc.*, 783 So.2d 1010, 1017 (Fla. 2001); *see generally Doe on Behalf of Doe v. Grindr, LLC*, 2023 WL 7053471, at *2 (M.D. Fla. Oct. 26, 2023) (holding that a defendant is treated as a publisher when a plaintiff's claim is "inextricably linked" to a publication decision). Ballentine's Amended Complaint is therefore at odds with itself: either TaskUs' alleged review did not cause Ballentine's injuries, or TaskUs assisted with a protected editorial decision. Either way, Ballentine's claims fail.

18

followed Meta's content policies throughout the review process, FAC ¶ 111, and ultimately concluded Ballentine's content was "objectionable" under those policies, 47 U.S.C. § 230(c)(2)(A). The Amended Complaint does not allege otherwise, and Ballentine's claims against TaskUs should be dismissed. *See Republican Nat'l Comm. v. Google, Inc.*, 2023 WL 5487311, at *5–6 (E.D. Cal. Aug. 24, 2023) (dismissing claims of bad faith where factual allegations did "not rise above the speculative level").

Affording CDA protection to third-party content-moderation services follows the congressional goal of "encourag[ing] service providers to self-regulate the dissemination of offensive material over their service." *M.H. v. Omegle.com, LLC*, 2022 WL 93575, at *6 (M.D. Fla. Jan. 10, 2022), *aff'd sub nom. M.H. on behalf of C.H. v. Omegle.com LLC*, 122 F.4th 1266 (11th Cir. 2024). This Court has explained that the CDA "establish[es] broad federal immunity." *Roca Labs, Inc.*, 140 F. Supp. 3d at 1319. This liberal construction allows "computer service providers to establish standards of decency without risking liability for doing so." *Omegle.com*, 2022 WL 93575 at *6. TaskUs' alleged moderation efforts are precisely the conduct the CDA protects. And because this lawsuit seeks to hold TaskUs liable for its alleged role in blocking and screening online material, the CDA bars Ballentine's claims.

## D. Ballentine's Section 1983 and Section 1985(3) Claims Fail for Additional, Independent Reasons

Even beyond the factual and legal deficiencies described above, Ballentine's Section 1983 and Section 1985(3) claims cannot survive for additional, independent reasons: the Amended Complaint does not plausibly suggest that TaskUs is a state

actor or that Meta's termination of Ballentine's account was part of a large-scale conspiracy to discriminate against Ballentine.

i.     A. TaskUs' Private Review of Ballentine's Account Is Not "State Action" Under Section 1983

Ballentine has not alleged facts to support his Section 1983 claim against TaskUs, either through an alleged equal-protection or procedural-due-process violation. Section 1983 "only provides for claims to redress State action." *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001). A defendant's actions are attributable to the state only if (1) the alleged deprivation of rights was "caused by the exercise of some right or privilege created by the State," and (2) "the party charged with the deprivation . . . may fairly be said to be a state actor." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992).

Neither element is met here. First, Meta did not exercise a state-created right by enforcing its own private community standards though the termination of Ballentine's account. TaskUs' review of Ballentine's account—performed (if at all) under Meta's privately set terms—therefore was also not an exercise of a state-created right. *See Sabeta v. Baptist Hosp. of Miami, Inc.*, 410 F. Supp. 2d 1224, 1244 (S.D. Fla. 2005) ("[T]he specific conduct attributed to [the defendant] arises not from any relationship with the government, but from its own alleged policies.").

Second, TaskUs is not a state actor. TaskUs is three times removed from any direct state conduct: according to the Amended Complaint, vendors make a recommendation to Meta (who retains override authority), FAC ¶¶ 33, 119; Meta

20

reports any "apparent" CSE violations to NCMEC, FAC ¶ 98; and NCMEC reports those violations to law enforcement, FAC ¶ 75. This attenuated connection cannot support Ballentine's conclusion that vendors like TaskUs are at the "chokepoint between platform enforcement and state investigation," FAC ¶ 82, or that TaskUs was "pervasively entwined with law-enforcement-facing functions such that the state is responsible for the decision," FAC ¶ 162(c).

Further, even if the Amended Complaint alleged that TaskUs had any interaction with law enforcement, courts have made clear in other contexts that mere compliance with reporting requirements is insufficient to transform a private actor into a state actor. *Lindbloom v. Manatee Mem'l Found., Inc.*, 2023 WL 11891890, at *3 (M.D. Fla. Apr. 13, 2023), report and recommendation adopted, 2023 WL 11891892 (M.D. Fla. Nov. 30, 2023) (holding that a hospital which followed its statutory duty is not a state actor under Section 1983); *United States v. Williamson*, 2023 WL 4056324, at *14 (M.D. Fla. Feb. 10, 2023) ("[T]he mere fact that Yahoo has developed protocols to facilitate its interactions with the government" in relation to its duty to report child pornography does not render it a state actor); *United States v. Robinson*, 2025 WL 3039333, at *3 (M.D. Fla. Oct. 31, 2025) (noting in a parenthetical that "a private actor does not become a government agent simply by complying with a mandatory reporting statute"). Ballentine's Section 1983 claim should therefore be dismissed.

21

### ii.    The Complaint Does Not Plausibly Allege a Conspiracy Between Meta and the Vendor Defendants

Ballentine's Section 1985(3) claim also fails because the Amended Complaint does not plausibly allege a conspiracy between Meta and the vendor defendants. Once again, the Amended Complaint has no factual support for this assertion. It claims that, because the number of Meta's CSE enforcement actions exceeds the number of violations Meta reports to NCMEC, Meta must have engaged in discriminatory targeting against him. And because the vendor defendants perform "staff[ed] human review within Meta's enforcement pipeline," they must have made an "agreement" with Meta to participate in that discrimination. FAC ¶ 171.

Ballentine's bare allegation of conspiracy is insufficient to state a claim. According to the Amended Complaint, the vendor defendants collectively employ thousands of reviewers for their partnerships with Meta. FAC ¶¶ 21–23. But "[f]or a conspiracy of the scale alleged by this complaint, one would expect at least some evidentiary facts to have been located and pled." *Kelsey K. v. NFL Enters.*, 254 F. Supp. 3d 1140, 1144 (N.D. Cal. 2017), aff'd, 757 F. App'x 524 (9th Cir. 2018). This stringent standard is both intuitive and pragmatic: "it is only by taking care to require allegations that reach the level suggesting conspiracy that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the discovery process will reveal relevant evidence." *Twombly*, 550 U.S. at 559. Because such allegations are not present here, the Court should dismiss Ballentine's Section 1985(3) claim.

22

## CONCLUSION

Defendant TASKUS, INC. respectfully requests this Court dismiss with prejudice all claims against TaskUs, and grant any other relief which the Court deems just and proper.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), TaskUs' counsel attempted to confer with Plaintiff by e-mail on March 23, 2026. Although Plaintiff sent other e-mail communications through Yuliya Glazman following TaskUs' attempted conferral, as of the date of filing, Plaintiff did not respond to the conferral e-mail. Undersigned counsel will update this conferral should Plaintiff respond to same.

Dated: March 23, 2026                 Respectfully submitted,

                                      */s/ Stephanie C. Generotti*
                                      Stephanie C. Generotti
                                      Florida Bar No. 112924
                                      stephanie.generotti@ogletree.com
                                      Elizabeth T. Jozsi
                                      Florida Bar No. 119428
                                      elizabeth.jozsi@ogletree.com
                                      OGLETREE, DEAKINS, NASH, SMOAK
                                        & STEWART, P.C.
                                      100 North Tampa Street
                                      Suite 3600
                                      Tampa, FL 33602
                                      Telephone: 813.221.7239
                                      Facsimile: 813.289.6530
                                      Secondary emails:
                                      angie.jackson@ogletree.com
                                      melissa.salazar@ogletree.com
                                      TAMDocketing@ogletree.com
                                      *Attorneys for TaskUs*

23

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that on March 23, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, and sent the foregoing via U.S. Mail to:

Marvelle J. Ballentine
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
Jayballentine@protonmail.com
*Pro se Plaintiff*

*/s/ Stephanie Generotti*
Attorney

# EXHIBIT E-5

Dkt. 85: Meta MTD of First Amended Complaint (filed 4/9/26)

# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF FLORIDA

MARVELLE J. "JAY" BALLENTINE

    Plaintiff,

    v.

META PLATFORMS, INC., ACCENTURE
LLP; TASKUS, INC, and GENPACT USA,
INC.,

    Defendants.

Case No 6:26-cv-376

## DEFENDANT META PLATFORMS, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

## I.    INTRODUCTION

This case arises out of Meta Platforms, Inc.'s ("Meta") policy against "Child Sexual Exploitation" ("CSE"), whereby Meta prohibits content that exploits or endangers children. Pro se Plaintiff Marvelle J. "Jay" Ballentine brings this suit against Accenture, TaskUs, Inc., and Genpact USA, Inc. (together, the "Vendor Defendants") and Meta.  He alleges that Meta disabled his Facebook account for violating Meta's CSE policy, and an unnamed Vendor Defendant affirmed the disablement. Based solely on his allegations that a Vendor Defendant was aware that Plaintiff was Black when it upheld the disablement and that, in a handful of other CSE enforcement cases (out of millions), Meta allegedly reversed the initial determinations for white users, Plaintiff summarily accuses Meta of disabling his account based on his race and asserts claims under several federal civil rights statutes.

Plaintiff originally brought his claims against Accenture and Meta in the Northern District of California.  But he dismissed that action and refiled his claims here after the Northern District of California court took the defendants' motions to dismiss under submission and declined to permit Plaintiff to seek discovery while those motions were pending.

Plaintiff's present claims against Meta fail at the outset because this Court, unlike the court where Plaintiff first filed his claims, does not have personal jurisdiction over Meta. As Plaintiff acknowledges, Meta is a Delaware

- 1 -

corporation with its principal place of business in California. As such, there is no general jurisdiction over Meta. And Plaintiff does not allege that Meta engaged in any suit-related conduct in or directed to Florida, so this Court also lacks specific jurisdiction over Meta.

Plaintiff's claims against Meta are also barred by Section 230(c)(1) of the Communications Decency Act ("Section 230"), which bars claims against interactive computer service providers based on the removal of content, including user accounts, from their services.

Plaintiff's claims against Meta are also insufficiently pled under Rule 12(b)(6), for multiple, independent reasons, including because Plaintiff fails to plead any facts showing that Meta engaged in intentional racial discrimination. Accordingly, even if the Court had jurisdiction, Plaintiff's claims must be dismissed without leave to amend.

## II.   BACKGROUND

**Meta's Terms and CSE Policy:** Meta operates Facebook, a service that enables users to create accounts to connect, share, discover, and communicate with friends, family, and communities on mobile devices and personal computers. All users of Facebook must agree to Meta's Terms of Service, which in turn require users to follow Meta's Community Standards. The Community Standards outline what is and is not allowed on Meta services, including Facebook, and the Community Standards incorporate the CSE policy. Meta's

CSE policy generally prohibits "content or activity that sexually exploits or endangers children" on Meta's services.[1] Decl. of Michael Duffey, Ex. A. As stated in Meta's policy, "[w]hen [Meta] becomes aware of apparent child exploitation"—a subset of the content and activity prohibited by Meta's policy—Meta "report[s] it to the National Center for Missing and Exploited Children ("NCMEC"), in compliance with applicable law." *Id.* As also explained in Meta's CSE policy, Meta prohibits and removes content beyond its statutory reporting requirements to NCMEC. For example, Meta may remove content under its CSE policy when "people share nude images of their own children with good intentions." *Id.*

**Plaintiff's Allegations**: Plaintiff alleges that he is a "Black business owner" who "operated [a] mobile RV repair business." Dkt. No. 19, First Amended Complaint ("FAC") ¶ 28. According to Plaintiff, in June 2022 he began using Facebook for advertising purposes for his RV repair business. *Id.* ¶ 53. Plaintiff contends that he first posted advertisements for his business between June 27-30, 2022. *Id.*

---

[1] Meta's CSE policy is incorporated by reference in the FAC and is, therefore, properly considered here. *See* FAC ¶¶ 127-128 (alleging that Plaintiff's Facebook account is "governed by Meta's terms and commercial service agreements" and that "Plaintiff's access to his" Facebook account was disabled based on Meta's "invocation of its [CSE] policy"); *see also Watson v. Kingdom of Saudi Arabia,* 159 F.4th 1234, 1267 n.4 (11th Cir. 2025) ("[U]nder the incorporation-by-reference doctrine, a court may properly consider a document when resolving a motion to dismiss "if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged.") (quoting *Johnson v. City of Atlanta,* 107 F.4th 1292 (11th Cir. 2024)).

Several days later, on July 4, 2022, Meta allegedly disabled his Facebook account, "invok[ing] its CSE policy." FAC ¶ 54. Plaintiff alleges that he appealed his disablement for the CSE violation, but a human reviewer from one of the Vendor Defendants affirmed the ban after they received a copy of Plaintiff's U.S. passport, which included his photo. *Id.* ¶¶ 55-56.

Plaintiff also alleges that in 2022, "Meta actioned approximately *105.9 million items* under its [CSE] enforcement category[,]" including 92.2 million items on Facebook alone. FAC ¶ 34 (emphasis added). Plaintiff also alleges that out of 105.9 million actions, 8,100 were reversed on appeal through review, and five of those reversals involved white users. *Id.* ¶¶ 67, 69-73. Based on these allegations, Plaintiff asserts that Meta disabled his account "because of Plaintiff's race," FAC ¶ 134, and brings claims under 42 U.S.C. § 1981, 42 U.S.C. § 1982, 42 U.S.C. § 1983, and 42 U.S.C. § 1985(3). FAC ¶¶ 125-177.

**Procedural History:** The claims and allegations in Plaintiff's First Amended Complaint ("FAC") were first alleged in the complaint that he filed against Meta and Accenture in the United States District Court for the Northern District of California, captioned *Ballentine v. Meta Platforms, Inc. et al*, No. 3:25-cv-7671 (the "California Action"). As Plaintiff conceded in his original Complaint in this action, Meta and Accenture moved to dismiss his claims and Plaintiff brought five different motions, including to advance the 26(f) conference so that he could pursue early discovery, which were all denied.

- 4 -

*See* Dkt. No. 1, Complaint ("Compl.") ¶¶ 9-10. Apparently frustrated with the Northern District of California's rulings on his motions and the direction of the litigation, (Compl. ¶¶ 9-12), Plaintiff decided to—in blatant contravention of the forum selection clause in the Terms—dismiss the California Action and refile in this Court on February 17, 2025.  Compl. ¶12.[2]

## III.  THE FAC SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OVER META

"A court must dismiss an action against a defendant over which it has no personal jurisdiction." *Kinney v. Mindsize, LLC*, 2021 WL 3911859, at *2 (S.D. Fla. June 7, 2021). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). "[V]ague and conclusory allegations. . . are insufficient to establish a prima facie case of personal jurisdiction[.]" *Snow v. DirectTV, Inc.*, 450 F. 3d 1314, 1318 (11th Cir. 2006).

The FAC does not contain *any* jurisdictional allegation specific to Meta, alleging only that Plaintiff "accessed [Meta's] platforms and services from

---

[2] Meta is concurrently filing a Motion to Transfer back to the Northern District of California pursuant to the mandatory forum section clause in the Terms, and explicitly reserves all rights to re-raise, on a renewed motion to dismiss, the applicable statute of limitations defenses that bar Plaintiff's federal civil rights claim if they had been brought in the proper forum.

Florida, and suffered the injuries alleged herein in Florida." FAC ¶ 15. This is plainly insufficient to show either general or specific jurisdiction over Meta.

### 1. Meta is not subject to general personal jurisdiction in Florida.

A court may assert general jurisdiction over nonresident defendants only when their "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe v. Washington,* 326 U.S. 310, 317(1945)); *see* Fla. Stat. § 48.193(2). Absent exceptional circumstances, a corporate defendant is only "at home" in a forum where it is either incorporated or has its principal place of business. *Daimler AG v. Bauman,* 571 U.S. 117, 137 (2014).

Meta is undisputedly not "at home" in Florida. The FAC concedes that Meta is a Delaware corporation with its principal place of business in California. *See* FAC ¶ 20. And courts have consistently held that allegations that Meta transacts business in a state do not suffice to show that Meta is "at home" in the state for purposes of establishing general jurisdiction. *See, e.g., Garrett-Alfred v. Facebook, Inc.,* 540 F. Supp. 3d 1129, 1136 (M.D. Fla. 2021) (finding no general jurisdiction over Facebook in Florida).

### 2. Meta is not subject to specific personal jurisdiction in Florida.

To establish specific jurisdiction over a nonresident defendant like Meta,

- 6 -

Plaintiff must show that his claims "arise out of or relate to a defendant's contacts with Florida." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015); *see* Fla. Stat. § 48.193(1). The key inquiry is whether the defendant's "conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This turns on "whether *the defendant's* actions connect [it] to the *forum*." *Walden v. Fiore*, 571 U.S. 277, 288-89 (2014).

Here, Plaintiff fails to allege any conduct by Meta in Florida whatsoever—let alone conduct related to Plaintiff's claims—that would give rise to specific jurisdiction. Plaintiff's only jurisdictional allegation as to Meta is that Meta's services are accessible in Florida. *See* FAC ¶ 16. But courts routinely reject similar allegations regarding the availability of Meta's services in the forum as insufficient to establish specific jurisdiction. *Harrison v. Facebook, Inc.*, 2019 WL 1090779, at *4 (S.D. Ala. Jan. 17, 2019) ("This Court agrees with other courts that have held that 'personal jurisdiction over Facebook may not exist simply because a user avails himself of Facebook's services in a state other than the states in which Facebook is incorporated and has its principal place of business.'") (quoting *Ralls v. Facebook*, 221 F. Supp. 3d 1237, 1244 (W.D. Wash. 2016)); *see Atmos Nation, LLC v. All Fun Gifts Distribution, Inc.*, 2017 WL 5171174, at *4 (S.D. Fla. July 18, 2017) (holding

- 7 -

the "mere existence of a website accessible in Florida does not by itself support specific jurisdiction over the defendant in Florida.").

As in the above cases, Plaintiff does not identify any suit-related conduct by Meta in or directed to Florida. Rather, the FAC alleges claims based solely on Meta's alleged disablement of Plaintiff's Facebook account. *See, e.g.,* FAC ¶¶ 54-56. Plaintiff does not, and cannot, allege any specific acts directed to Florida in connection with the alleged decision.

Plaintiff's allegation that he was injured in Florida, which appears to be based solely on Plaintiff's residence in Florida, FAC ¶¶ 15-17, is irrelevant to the specific jurisdiction inquiry. Because specific jurisdiction focuses on the defendant's conduct, a plaintiff's allegation that he suffered injury in a state does not suffice to subject a defendant to personal jurisdiction there. *See Walden,* 571 U.S. at 288-89 (recognizing that specific jurisdiction over a defendant depends on "whether the *defendant's* actions" and not merely the plaintiff's conduct "connect [it] to the forum."); *ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332, 1342 (11th Cir. 2025) ("Personal jurisdiction cannot be predicated on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff.") (internal quotes omitted).

There is, accordingly, no specific jurisdiction over Meta. *See GarrettAlfred,* 540 F. Supp. 3d at 1136 (concluding that no specific jurisdiction existed over Facebook for claims that were not sufficiently related to its Florida

- 8 -

contacts); *Facebook, LLC v. Grind Hard Holdings, LLC*, 390 So. 3d 142, 145 (Fla. Dist. Ct. App. 2024) (same).[3]   Accordingly the FAC should be dismissed for lack of personal jurisdiction alone.

## IV.   THE FAC SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

### A.   Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Legal conclusions—even if couched as factual allegations—need not be accepted as true. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although pleadings from *pro se* litigants are generally construed "liberally," a court cannot "serve as *de facto* counsel" or "rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jam, Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014).

### B.   Plaintiff's Claims Are Barred by Section 230

---

[3] Nor can Plaintiff rely on Fed. R. Civ. P. 4(k)(2) to establish jurisdiction in this Court over Meta as he suggests (*see* FAC ¶ 26), because Meta is subject to California's courts of general jurisdiction. *See Unbeatablesale.com, Inc. v. Meta Platforms, Inc.*, No. 22-6369 (MAS) (RLS), 2023 WL 4764813, at *3 (D.N.J. July 26, 2023) ("[N]umerous courts have held that Meta is subject to general jurisdiction in California[.]")

- 9 -

The FAC fails because it is barred in its entirety by Section 230(c)(1) of the Communications Decency Act, 47 U.S.C. § 230. Section 230(c)(1) states that "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). "The majority of federal circuits have interpreted the CDA to establish broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'" *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006); *see also M.H. v. Omegle.com, LLC*, 2022 WL 93575, at *5-6 (M.D. Fla. Jan. 10, 2022) (dismissing state and federal claims as barred by Section 230). (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir 1997). Courts accordingly hold that, under Section 230(c)(1), an interactive computer service provider like Meta cannot be held liable for removing content posted on its services by a third party. *See, e.g., Mezey v. Twitter, Inc.*, 2018 WL 5306769, at *1 (S.D. Fla. July 19, 2018) (dismissing claims predicated on suspension on Twitter account under Section 230 finding "[p]laintiff seeks to hold Twitter 'liable for its exercise of a publisher's traditional editorial functions"). And where it is apparent that Section 230(c)(1) applies on the face of the pleading, claims are properly disposed of at the motion to dismiss stage. *See id.; see also Castronuova v. Meta Platforms, Inc.*, 2025 WL 1914860, at *1 (N.D. Cal. June 10, 2025).

- 10 -

Under Section 230, a claim should be dismissed if (1) the defendant is a "provider ... of an interactive computer service[;]" (2) the content at issue was "provided by another information content provider[;]" and (3) the plaintiff's claims treat the defendant as the "publisher or speaker" of that content. 47 U.S.C. § 230(c)(1). All three conditions are satisfied here.

## 1. Meta Is An Interactive Computer Service Provider

Courts have uniformly held that Meta, which provides interactive services like Facebook, is an interactive computer service provider. *See, e.g., Loomer v. Zuckerberg*, 2023 WL 6464133, at *12 (N.D. Cal. Sept. 30, 2023), *aff'd*, 2025 WL 927186 (9th Cir. Mar. 27, 2025) (Meta qualifies as an interactive computer service provider); *Fed. Agency of News LLC v. Facebook, Inc.* 432 F. Supp. 3d 1107, 1117 (N.D. Cal. 2020) ("Facebook is unquestionably an interactive computer service."). Accordingly, the first Section 230 requirement is satisfied.

## 2. The Content at Issue Was Provided by Plaintiff Himself, Not Meta

Section 230(c)(1)'s second requirement is also met because the content at issue was provided by an "information content provider" other than Meta—namely, by Plaintiff himself. *See* 47 U.S.C. § 230(c)(1). This inquiry is simple where, as here, Plaintiff "created the relevant content associated with his [online] account." *Mezey*, 2018 WL 5306769, at *1 (citing *Sikhs for Justice*

- 11 -

*"SFJ," Inc. v. Facebook, Inc.*, 697 Fed. Appx. 526, 526-27 (9th Cir. 2017) (creator of Facebook page is "information content provider" under the CDA)); *see also Roca Labs, Inc. v. Consumer Op. Corp.*, 140 F. Supp. 3d 1311, 1323 (M.D. Fla. 2015) (holding creator of post is the "information content provider" not the hosting website). Plaintiff's claims all stem from the alleged disablement of his Facebook account, and he does not allege Meta played a role in developing the content at issue. *See* FAC ¶¶ 29, 53. The second Section 230 requirement is satisfied.

### 3. The FAC Seeks to Hold Meta Liable for Its Purported Exercise of a Publisher's Traditional Editorial Function

Section 230(c)(1)'s final requirement is met because Plaintiff's claims all seek to treat Meta as a "publisher" of third-party content. Under Section 230(c)(1), a claim treats a defendant as a "publisher" if it seeks to hold the defendant liable for its purported exercise of traditional "editorial functions"—such as deciding "whether to publish, withdraw, postpone or alter content created by third parties." *Doe v. Fenix Int'l*, 2025 WL 336741, at *7 (S.D. Fla. Jan. 23, 2025) "What matters in this analysis 'is not the name of the cause of action,' but 'whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another.'" *Montano v. Wash. State Dep't of Health*, 2024 WL 309155, at *14 (S.D. Fla. May 28, 2024) (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-02 (9th Cir.

- 12 -

2009)); *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1095 (N.D. Cal. 2015), *aff'd* 697 F. App'x 526 (9th Cir. 2017) (holding that "removing content is something publishers do" and that Section 230 barred a discrimination claim).

Here, all of Plaintiff's claims arise out of Meta's alleged disablement of his Facebook account, which is "precisely the kind of activity for which [S]ection 230 was meant to provide immunity." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170 (9th Cir. 2008); *see, e.g.*, FAC ¶¶ 53; 128 (alleging that "Plaintiff began marketing his RV repair business on Facebook" and that Meta "sever[ed] Plaintiff's access" to his account and that the "disablement cut of [plaintiff's] ability to purchase and run ads"). Courts have routinely dismissed claims, such as those here, premised on a defendant's decision to suspend or disable a user's account, restricting their ability to post content or otherwise access their account. *see, e.g., Castronuova*, 2025 WL 1914680, at *4 (collecting cases and dismissing discrimination claims predicated on Facebook account termination because account disablement was "protected publisher activity").

Accordingly, all three requirements of Section 230 are met. Plaintiff's claims should be dismissed in their entirety on this ground, as well.

### C. Each of Plaintiff's Claims Against Meta Also Fails as a Matter of Law

- 13 -

1. **Plaintiff Fails to State a Claim Under 42 U.S.C. § 1981 (Counts I & II)**

"To state a claim of race discrimination under § 1981, plaintiffs must allege facts establishing: (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute[]" relating to the right to make and enforce contracts. *Horton v. Beacon Woods E. Master Ass'n*, 2025 WL 3089014, at *5 (M.D. Fla. Nov. 5, 2025) (quoting *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1270 (11th Cir. 2004). Critically, § 1981 "can only be violated by purposeful discrimination[,]" so to survive a motion to dismiss, a plaintiff must plead facts sufficient to show intentional discrimination based on race. *Horton*, 2025 WL 3089014, at *5 (quoting *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982)). "[A] plaintiff may establish intentional racism directly or circumstantially." *Horton*, 2025 WL 3089014, at *5. But "unsupported conclusions of law or of mixed law and fact are not sufficient to withstand a dismissal under Rule 12(b)(6)." *Jackson*, 372 F.3d at 1271.

Plaintiff fails to sufficiently plead either § 1981 claim because he does not plead *any* facts that plausibly support his assertion that Meta disabled his Facebook account because of his race. To the contrary, Plaintiff alleges only that (i) when a Vendor Defendant upheld the account disablement, the

- 14 -

reviewer was able to see his profile picture and government-issued identification, and (ii) Meta restored accounts for a handful of white users flagged under the same policy. FAC ¶¶ 147-150.[4] That is insufficient to plead either direct or circumstantial intentional discrimination.

To start, Plaintiff does not attempt to plead—nor could he—direct racial discrimination. To state a claim for direct racial discrimination, a plaintiff must allege the overt invocation of race by the alleged discriminator—for instance, the use of a racial slur or racially charged language." *Horton*, 2025 WL 3089014, at *5. Plaintiff makes no such allegation and thus does not plead a claim for direct racial discrimination.

Nor does Plaintiff plead any facts that could support a plausible circumstantial case of racial discrimination. Where, like here, a plaintiff asserts a disparate impact theory by pointing to white "comparators" who were treated differently, the *McDonnell Douglas* burden shifting framework applies. *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1217 (11th Cir. 2019) (en banc). "Under that framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination by proving, among other things, that []he was treated differently from another 'similarly situated'

---

[4] Elsewhere in the FAC Plaintiff attempts to fault Meta for commissioning a Civil Rights Audit and a survey where the results allegedly suggested that Meta's automated content moderation tools "could exacerbate racial inequities." FAC ¶ 92. At most, these allegations show that Meta was actively trying to detect and address potential racial inequalities.

- 15 -

individual—in court-speak, a 'comparator.'" *Id.* To survive a motion to dismiss, Plaintiff must plead facts—not "unsupported conclusions of law or of mixed law and fact"—sufficient to raise a plausible inference that "he was treated differently from comparators who were similarly situated to him *in all material respects.*" *Horton*, 2025 WL 3089014, at *6 (emphasis added) (citing *Jackon*, 372 F.3d at 1270-71).

The Eleventh Circuit is unequivocal that this is an exacting standard: "wholly unsupported charge[s]" that "defendants acted differently in cases not involving minority plaintiffs, even if it were supported by some specific facts or examples, is not sufficient to state a claim for racially motivated discrimination." *Jackson*, 372 F.3d at 1273. Rather, plaintiff must plead facts showing that the comparators are "similarly situated in all relevant respects besides race, since different treatment of dissimilarly situated persons does not violate the law." *Id.* (internal citations omitted). As such, courts in this District routinely dismiss complaints alleging discrimination "for failing to allege sufficient factual support for the comparators." *Horton*, 2025 WL 3089014, at *6 (collecting cases); *see also Mallory v. Gartner, Inc.*, 2021 WL 3857652, at *3 (M.D. Fla. Aug. 30, 2021) ("[Plaintiff] has not plausibly alleged that any similarly situated employees were treated differently.").

Here, like in *Jackson*, Plaintiff fails to identify a single similarly situated nonminority comparator that was treated differently. To the contrary, on the

- 16 -

face of the FAC, the alleged comparators are all differently situated. Plaintiff, for example, categorizes himself as a business owner, but his list of purported comparators includes no similarly situated Facebook users. *See* FAC at 17, ¶ 69. Instead, the alleged comparators are listed as one organization, two individuals, one content creator, and one artist. *Id.* The purported comparators' alleged violations are similarly all over the map. *Id.* The organization on the list, for example, allegedly received a CSE flag for posting a medical c-section video, and Plaintiff does not, and cannot, allege that his account was suspended for posting similar content. *Id.* Thus, far from being "similarly situated in all relevant respects beside race"—each appears differently situated from Plaintiff in all respects. *Jackson*, 372 F.3d at 1273. And thus, Plaintiff's conclusory allegations of intentional discrimination are "wholly unsupported by any specific factual averments," and his § 1981 claims should be dismissed. *Id.* at 1274.

### 2. Plaintiff Fails to State a Claim Under 42 U.S.C. § 1982 (Count III)

Plaintiff's § 1982 claim fails for the same reasons as his § 1981 claim—he fails to plead any facts that raise a plausible inference of intentional discrimination. Because both claims require proof of intentional discrimination, courts analyze claims of racial discrimination under § 1982 and §1981 under the same framework. *CBOCS West, Inc. v. Humphries*, 553 U.S.

442, 447 (2008). Here, Plaintiff's § 1982 claim is based on the same underlying conduct as his § 1981 claim–the alleged disablement of his account based on a CSE violation. *Compare* FAC ¶¶ 125-148 *with id.* ¶¶149-158. As explained, Plaintiff fails to plausibly allege intentional racial discrimination for his §1981 claim, and his § 1982 claim suffers the same defects and should similarly be dismissed. *See supra* at 14-17; *Horton,* 2025 WL 3089014, at *6 (dismissing § 1982 claim where plaintiff failed to plead "facts sufficient to show that the restrictions. . . were imposed on him because of his race").

### 3.    Plaintiff Fails to State a Claim Under 42 U.S.C. § 1983 (Count IV)

Plaintiff's § 1983 claim fails because Meta is a private company, not a state actor. "To state a claim for relief in an action brought under § 1983, plaintiffs must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed **under color of state law.**" *Myers v. US Bank Nat'l Ass'n,* 2025 WL 305924, at *3 (M.D. Fla. Jan. 27, 2025) (emphasis added). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Id.* "The Eleventh Circuit has explained that 'only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes.'" *Woods v. Nat'l Ass'n of Realtors,* 2026 WL 445041, at *7 (M.D. Fla. Feb. 17, 2026). While the state action

- 18 -

doctrine can be complex, its application here is not. Here, Plaintiff argues that Meta can be treated as a state actor in connection with the alleged disablement of Plaintiff's account because (i) Meta allegedly reports some CSE violations to law enforcement and/or NCMEC and (ii) when it so reports, Meta is acting pursuant to a statutory requirement. *See* FAC ¶¶ 159-167. Not so.

Courts within the Eleventh Circuit analyze state action under the two-step framework in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982). *See, e.g., McDonough v. Porter*, 2019 U.S. Dist. LEXIS 165921, at *2 (S.D. Fla. Sep. 25, 2019) (utilizing two-part *Lugar* framework to find plaintiff failed to plead state action). Under this framework, the first question is whether the alleged constitutional violation was "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." *Id.* (internal quotations omitted). If the first step is satisfied, the next question is whether "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Id.* (quoting *Lugar,* 457 U.S. at 937).

Here, Plaintiff's claim fails the first step: Meta "did not exercise a state-created right when it ... suspended his account." *O'Handley v. Weber*, 62 F.4th 1145, 1156 (9th Cir. 2023); *see also McDonough*, 2019 U.S. Dist. LEXIS 165921, at *4 (removing content from a Facebook pages "was not caused by the exercise of some right or privilege created by the state") (internal quotations omitted)

While this alone is fatal to his claim, Plaintiff also fails the second step.

Courts in the Eleventh Circuit apply three tests to determine whether a private company may fairly be said to be a state actor: "(1) the public function test, (2) the state compulsion test, and (3) the nexus test/joint action test." *Ridley v. Stewart*, 2008 U.S. Dist. LEXIS 32463, at *8-9 (M.D. Fla. Mar. 5, 2008) (quoting *Nat'l Broad. Co. v. Comm'ns Workers of Am.*, 860 F.2d 1022, 1026 (11th Cir. 1988)). Here, Plaintiff appears to base his claim on the state joint action and state compulsion tests, but he fails to adequately plead either.

Joint action exists only where the government has "so far insinuated itself into a position of interdependence with a private entity that [it] must be recognized as a joint participant in the challenged activity." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1278 (11th Cir. 2003); *Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 755-56 (9th Cir. 2024) (same). And "specificity" is required: "the plaintiff must 'plead in detail, through reference to material facts, the relationship or nature of the conspiracy' between the private person and the state actor." *Boles v. Riva*, 2013 WL 6388582, at *3 (M.D. Fla. Dec. 6, 2013) (quoting *Cox v. Mills*, 465 Fed. App'x 885, 887 (11th Cir. 2012)). "It is insufficient to 'merely string together discrete events, without showing support for a reasoned inference that the private and state actors agreed to violate the plaintiff's rights." *Id.*

Plaintiff does not plead any such interdependence or conspiracy. To the

- 20 -

contrary, Plaintiff alleges that Meta and the Vendor Defendants decide whether content violates the CSE policy and nowhere alleges government involvement in those decisions. FAC ¶¶ 82-85; *see Williams v. Google, LLC,* 2024 WL 5319216, at *3 (M.D. Ala. Nov. 26, 2024) (dismissing § 1983 claim where there were "no allegations in the complaint suggesting that Google acted jointly with the government…to take action against his YouTube channel"). Rather, Plaintiff's only allegation purporting to support "joint action" is that *if* "Meta submitted a [CyberTipline] report [for Plaintiff], NCMEC disseminated it to Florida law enforcement under § 2258A(g)(3), triggering state investigative processes and making [Meta] and state agencies joint actors." *Id.* ¶ 84; *see also id.* ¶ 162 (similar). Even crediting that hypothetical (and elsewhere contradicted)[5] allegation, it is well established that providing information to law enforcement is insufficient to establish joint action. *See Arline v. City of Jacksonville,* 359 F. Supp. 2d 1300, 1312-13 (M.D. Fla. 2005) ("This Court recognizes that merely alerting the authorities and providing information that may lead to an arrest is not sufficient to convert a private persons actions into public action."); *Rose v. Harris,* 2025 WL 1880311, at *13 (S.D. Fla. July 7, 2025) (reporting suspected child abuse did not satisfy the joint action test); *see also United States v. Rosenow,* 50 F.4th 715, 730, 733 (9th

---

[5] *See* FAC ¶ 8 ("Meta filed no CyberTipline report.")

-21-

Cir. 2022) ("Our caselaw is clear that a private actor does not become a government agent simply by complying with a mandatory reporting statute," and "the record establishes that" Facebook has "legitimate, independent motivations" for investigating and reporting CSE material on its platform).

Plaintiff does not fare any better under the state compulsion test. Contrary to Plaintiff's arguments, compliance with a statutorily mandated reporting regime cannot make a party a state actor for purposes of § 1983. *See Arline v. City of Jacksonville,* 359 F, Supp. 2d 1300, 1312-1313 (M.D. Fla. 2005) (rejecting argument that compliance with law mandating reporting of suspected child abuse is sufficient to demonstrate state compulsion). Notably, this district and the Ninth Circuit have both already recognized, for Fourth Amendment purposes, that an online service provider's compliance with the NCMEC reporting statute does not convert it into a state actor. *See United States v. Williamson,* 2023 WL 4056324, at *13 (M.D. Fla. Feb. 10, 2023) (holding Yahoo!'s compliance with mandatory reporting to NCMEC under 18 U.S.C. § 2258A did not transform it into a state actor); *Rosenow,* 50 F.4th at 730 (same as to Meta). Accordingly, Plaintiff fails to show that this is one of the "rare circumstances [where] a private party [can] be viewed as a 'state actor' for section 1983 purposes.'" *Woods,* 2026 WL 445041, at *7.

Plaintiff's § 1983 claim also fails for the separate and independent reason that he fails to plead a violation of the Equal Protection Clause. Like

- 22 -

his other statutory claims, claims under the Equal Protection Clause require a showing of discriminatory intent. *Sumrall v. Georgia Dep't of Corrections*, 154 F. 4th 1304, 1313 (11th Cir. 2025) (noting that "to make out an equal protection claim, a plaintiff must prove purposeful, intentional discrimination") (internal quotations omitted). Accordingly, Plaintiff's reliance on conclusory allegations of intentional racial discrimination is also fatal to establishing a claim under the Equal Protection Clause. *See supra* at 14-17.

### 4. Plaintiff Fails to State a Claim For Violation of 42 U.S.C.§ 1985(3) (Count V)

To state a claim under § 1985(3), Plaintiff must establish (1) defendants engaged in a conspiracy; (2) the conspiracy's purpose was to directly or indirectly deprive a protected person or class the equal protection of the laws, or equal privileges and immunities under the laws; (3) a conspirator committed an act to further the conspiracy; and (4) as a result, the plaintiff suffered injury to either his person or his property, or was deprived of a right or privilege of a citizen of the United States. *Johnson v. City of Fort Lauderdale*, 126 F.3d 1372, 1379 (11th Cir. 1997).

The constitutional rights that are enforceable under § 1985(3), however, are limited against private actors, like Meta. "The purpose of § 1985 was to stifle the serious class-based deprivation of constitutional rights by private parties, not to serve as a general federal tort law, and, as such, a claim under

- 23 -

§ 1985(3) requires the proof of invidious discriminatory intent as well as the violation of a serious constitutional right protected not just from official, but also from private encroachment." *Trawinski v. United Techs.*, 313 F.3d 1295, 1299 (11th Cir. 2002). "The list of protected rights under § 1985(3) is short." *Id.* (citing *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68, 113 S. Ct. 753, 122 L. Ed. 2d 34 (1993)). Only "select 'serious constitutional right[s]'" are included. *Jimenez v. WellStar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010) (citing *Cook v. Randolph County*, 573 F.3d 1143, 1157 (11th Cir. 2009)). "[T]he Eleventh Circuit has stated '[t]he only rights the Supreme Court has expressly declared enforceable against private conspirators under § 1985(3) are the right to interstate travel and the right against involuntary servitude.'" *S. Fla. Muslim Fed'n Inc. v. Atrium TRS I LP*, 2025 U.S. Dist. LEXIS 89812, at *32 (S.D. Fla. May 12, 2025) (quoting *Jimenez*, 596 F.3d at 1312).

Critically, the Eleventh Circuit has explicitly recognized that "conspiracies to violate rights protected under § 1981 are…insufficient to form the basis of a § 1985(3)," and multiple courts within the Circuit have recognized that § 1982 claims are insufficient under the same rationale. *Jimenez*, 596 F.3d at 1312; *Horton*, 2025 WL 3089014, at *9 (dismissing § 1985(3) claim predicated on § 1982 holding "the [c]ourt cannot find, nor does [p]laintiff cite, any binding caselaw showing that a Section 1982 claim is cognizable under Section 1985(3)"); *Jones v. Scott Davis Chip Mill*, 2016 WL 3548810, at *5 (N.D.

- 24 -

Ala. June 30, 2016) (dismissing § 1985(3) claim predicated on alleged violations of § 1981 and § 1982 as non-actionable under *Jimenez*). Accordingly, since Plaintiff's 1985(3) claim is predicated solely on alleged violations of § 1981 and § 1982 (FAC ¶ 174), it is not actionable and must be dismissed.[6]

## V.   PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND

Leave to amend is inappropriate where amendment would be futile. *See In re Engle Cases*, 767 F.3d 1082, 1108-09 (11th Cir. 2014). Plaintiff has already amended once, and any additional attempt will be futile, including because this court lacks personal jurisdiction over Meta. Moreover, Plaintiff is challenging Meta's alleged decision to disable his account and so all his claims will be barred by Section 230(c)(1) no matter what additional facts he pleads. *See, e.g., Doe v. Kik Interactive*, 482 F. Supp. 3d 1242, 1252 (S.D. Fla. 2020) (denying leave to amend where plaintiff could not allege additional plausible facts to escape Section 230).

## VI.   CONCLUSION

For the foregoing reasons, Meta respectfully requests that the Court dismiss the FAC without leave to amend.

---

[6] Even if such claims were actionable under § 1985(3), they are still insufficiently pleaded because, as shown above, he fails to state a claim under the predicate statutes and because he fails to plead any non-conclusory allegations of the alleged conspiracy. *Jimenez*, 596 F.3d at 1312 (failure to plead predicate violation was a separate independent basis to dismiss the 1985(3) claim); *Roy v. Bd. of Cty. Comm'rs Walton Cty.*, 2007 WL 9736174, at *12 (N.D. Fla. Mar. 20, 2007) (conclusory allegations of conspiracy are insufficient to state a claim—plaintiff must make specific averments of an agreement that "must be supported by facts bearing out the existence of a conspiracy").

## Local Rule 3.01(g) Certification

Pursuant to Local Rule 3.01(g), on April 8, 2026, counsel for Meta contacted Plaintiff via email regarding this Motion to Transfer. As of the time of this filing, Plaintiff has not responded to the conferral email. Undersigned counsel will update this certification should Plaintiff respond to the conferral email.

Respectfully submitted,

Dated: April 9, 2026        ORRICK, HERRINGTON & SUTCLIFFE LLP

By:    /s/ *Diana Marie Fassbender*
DIANA MARIE FASSBENDER (BN 17095)
dszego@orrick.com
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone: (202) 339-8533
Facsimile: (202) 339-8500

*Attorneys for Defendant*
*Meta Platforms, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 9, 2026, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system, and the foregoing

via Email and U.S. Mail to:

Marvelle J. Ballentine
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
jayballentine@protonmail.com
yglazman.litigation@protonmail.com

s/ *Diana Marie Fassbender*
DIANA MARIE FASSBENDER

# EXHIBIT E-6

Dkt. 87: Meta motion to transfer venue under § 1404(a) (filed 4/9/26)

# UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA

MARVELLE J. "JAY" BALLENTINE

        Plaintiff,

v.

META PLATFORMS, INC., ACCENTURE LLP; TASKUS, INC, and GENPACT USA, INC.,

        Defendants.

Case No 6:26-cv-376

## DEFENDANT META PLATFORMS, INC.'S MOTION TO TRANSFER PLAINTIFF'S FIRST AMENDED COMPLAINT

i

Defendant Meta Platforms, Inc. ("Meta") has moved to dismiss Plaintiff Marvelle J. "Jay" Ballentine's First Amended Complaint ("FAC") in its entirety. In the alternative, Meta hereby concurrently moves to transfer this action to the Northern District of California (the forum in which Plaintiff originally brought identical claims to those raised here) under 28 U.S.C. § 1404(a) pursuant to Meta's mandatory forum selection clause in the Meta Terms of Service ("Terms"), which Plaintiff concedes he agreed to in order to use the Facebook service.

## I.   RELEVANT BACKGROUND

### A. Procedural History

Plaintiff Marvelle J. "Jay" Ballentine's FAC asserts claims against Meta, Accenture, LLP ("Accenture"), TaskUs, Inc. ("TaskUs"), and Genpact USA, Inc. ("Genpact") alleging violations of 42 U.S.C. §§ 1981, 1982, 1983, 1985(3). *See* Dkt. No. 19. Plaintiff's factual allegations relating to Meta in this action mirror those he previously raised in a separate case against Meta and Accenture in the United States District Court for the Northern District of California, captioned *Ballentine v. Meta Platforms, Inc. et al*, No. 3:25-cv-7671 (the "California Action"). In the California Action, Meta filed a motion to dismiss Plaintiff's operative complaint, which was fully briefed and pending decision by the Court. *See* Dkt. No 41, *Ballentine v. Meta Platforms, Inc. et al*, No. 3:25-cv-7671 (N.D. Cal. Oct. 31, 2025). During the pendency of the California Action,

4129-7513-4566.9

Plaintiff also filed several requests seeking to advance the case to discovery, including a motion to advance the initial case management conference (Dkt. No. 20, *Ballentine v. Meta Platforms, Inc. et al*, No. 3:25-cv-7671 (N.D. Cal. Oct. 31, 2025)) and a motion for a discovery management scheduling directive seeking an order directing the parties to conduct a Rule 26(f) conference (Dkt. No. 36, *Ballentine v. Meta Platforms, Inc. et al*, No. 3:25-cv-7671 (N.D. Cal. Oct. 31, 2025)). The court in the California Action denied each of these requests. *See* Dkt. No. 1, Complaint ("Compl.") ¶ 9; *see also* Dkt. Nos. 32 and 47, *Ballentine v. Meta Platforms, Inc. et al*, No. 3:25-cv-7671 (N.D. Cal. Oct. 31, 2025).

Rather than await the Court's decision on Meta's Motion to Dismiss, Plaintiff chose to voluntarily dismiss the California Action and re-file his claims in this Court. *See* Dkt. No. 63 ("Notice of Voluntary Dismissal"), *Ballentine v. Meta Platforms, Inc. et al*, No. 3:25-cv-7671 (N.D. Cal. Feb. 13, 2026).

## B. **Plaintiff's Complaint**

In his FAC, Plaintiff alleges that he is a "Black individual" who "operated a mobile RV repair business in Florida." FAC ¶ 18. According to Plaintiff, in June 2022 he "began marketing his RV repair business on Facebook." *Id.* ¶ 53. Plaintiff contends that he first posted advertisements for his business between

-2-

June 27-30, 2022. *Id.* ¶ 56. Plaintiff alleges that his use of Facebook was governed by "Meta's terms and commercial service agreements." *Id.* ¶ 127.

Several days later, on July 4, 2022, Meta allegedly disabled Plaintiff's Facebook account, "invok[ing] its CSE policy." *Id.* ¶ 54. Plaintiff alleges that he appealed his disablement for the CSE violation, but a reviewer from Accenture, TaskUs, or Genpact (collectively, the "Vendor Defendants") affirmed the disablement after they received a copy of Plaintiff's U.S. passport, which included his photo. *Id.* ¶¶ 54-55.

Plaintiff also alleges that in 2022, when Meta allegedly disabled his account under its CSE policy, "Meta actioned approximately 105.9 million items under its [CSE] enforcement category[,]" including 92.2 million on Facebook alone. FAC ¶ 34. Plaintiff further alleges that out of 105.9 million actions, 8,100 were reversed on appeal through review, and five (5) of those reversals involved white Facebook users. *Id.* ¶¶ 67, 69-73.

Based on these allegations, Plaintiff summarily asserts that Meta disabled his account "because of Plaintiff's race," FAC ¶ 133, and brings claims under 42 U.S.C. § 1981, 42 U.S.C. § 1982, 42 U.S.C. § 1983, 42 U.S.C. § 1985(3).

### C. Meta's Terms of Service

Meta operates Facebook, a service that enables users to connect, share, discover, and communicate with friends, and communities on mobile devices

- 3 -

and personal companies. As Plaintiff acknowledges, Meta's relationship with users of the Facebook service is governed by the Terms, to which all users must agree in order to create a Facebook account. *See* Decl. of Jennifer Allen ("Allen Decl."), Ex. A at 1, ¶3; FAC ¶ 127. Section 4.4 of the Terms contains a mandatory forum selection clause, providing that any litigation arising out of an individual's use of the Facebook service must be brought in the Northern District of California or a state court located in San Mateo County and will be governed by California law. The Terms in effect at the time of Plaintiff's alleged account termination provide:

> For any claim, cause of action or dispute, you have against us that arises out of relates to these Terms or the Meta Products . . . you agree that it will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County. You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim and that the laws of the State of California will govern these Terms and any claim, without regard to conflict of law provisions.

Allen Decl., Ex. A at § 4.4.

The Terms incorporate the Meta Commercial Terms of Service (the "Commercial Terms") which apply "to access or use of the Meta Products. . . for a business or commercial purpose." Allen Decl., Ex. B; Allen Decl., Ex. A at § 5. In turn, the Commercial Terms in place at the time Meta allegedly disabled Plaintiff's account contain a similar forum selection clause providing that "any claim, cause of action or dispute that arises out of relates to any access or use

-4-

of the Meta products for business or commercial purposes. . . not subject to arbitration . . . must be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County." Allen Decl., Ex. B at § 5(b)-(c). The Commercial Terms further provide that all claims "will be governed by California law." *Id.* at §5(c)(ii).

## II.    ARGUMENT

Having agreed to Meta's Terms and Commercial Terms as a condition for using Facebook, Plaintiff is subject to the mandatory forum selection clauses contained therein. Whether a forum selection clause is enforced is determined pursuant to the analysis governing motions to transfer under 28 U.S.C. § 1404(a). *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013) ("Section 1404(a) therefore provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district."). When a forum selection clause is present, courts no longer must consider the private interest factors under the usual § 1404(a) analysis. *St. Francis Holdings, LLC v. Pawnee Leasing Corp.*, No. 20-cv-1101-T-02AAS, 2020 WL 6746329, at *2 (M.D. Fla. Nov. 17, 2020); *MoistTech Corp. v. Sensortech Sys., Inc.*, No. 15-cv-0043, 2015 WL 3952341, at *8 (M.D. Fla. June 26, 2015) ("all private interests are expressed in the forum-selection clause, which would weigh in support of transfer" (citation omitted)).

- 5 -

Where there is a valid and enforceable forum selection clause, like that applicable here, a court should transfer the case to the specified forum absent "extraordinary circumstances unrelated to the convenience of the parties." *Id.* at 62; *Alexander v. Charter Commc'ns, Inc.*, No. 20-cv-1127-T-35JSS, 2020 WL 12656395, at *1 (M.D. Fla. Dec. 18, 2020) ("forum selection clauses are presumptively valid and enforceable" (citation omitted)). Moreover, the party opposing enforcement of the forum selection clause, "bears the burden of showing exceptional circumstances." *See e.g.*, *McArthur v. Kerzner Int'l Bah. Ltd.*, 607 F. App'x. 845, 847 (11th Cir. 2015). Here, Meta's forum selection clauses are mandatory and encompass Plaintiff's claims, and there are no grounds why the forum selection clauses should not be enforced.

A. **Meta's Forum Selection Clauses Are Mandatory and Apply to Plaintiff's Claims**

Meta's forum selection clauses are mandatory and apply to Plaintiff's claims. As an initial matter, when analyzing a forum selection clause, the Court "[m]ust determine whether the clause is mandatory or permissive." *See e.g.*, *Arthrex, Inc. v. Orthogen Aktiengesellschaft*, No. 05-cv-121-FtM-33DNF, 2006 WL 8438756, at *3-4 (M.D. Fla. May 10, 2006). Forum selection clauses are mandatory when they "dictate[] an exclusive forum for litigation under the contract." *Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1330 (11th Cir. 2011) (citation omitted). Use of mandatory terms like "must" or "any" indicates

- 6 -

that the clause is mandatory. *See Exceptional Urgent Care Ctr., Inc. v. Protomed Medical Mgmt., Corp.*, No. 08-cv-284-Oc-10GRJ, 2009 WL 2151181, at *9 (M.D. Fla. July 13, 2009) ("Mandatory forum selection clauses must be clear, unequivocal and contain language of exclusivity." (citation omitted)); *MoistTech Corp.*, 2015 WL 3952341, at *6 ("Use of the word 'shall' is most reasonably interpreted to mandate venue." (internal citation omitted)); *Blue Ocean Int'l Bank LLC v. Golden Eagle Cap. Advisors, Inc.*, 408 F. Supp. 3d 57, 65 (D.P.R. 2019); *see also Don't Tread On Us, LLC v. Twitter, Inc.*, No. 23-cv-20943, 2023 WL 7277183, at *3 (S.D. Fla. May 19, 2023) ("The use of 'all' and 'solely' clearly demonstrate the forum-selection clause is mandatory." (citation omitted)). And forum selection clauses that contain words like "aris[es] out of" are construed "to broadly cover 'all causes of action arising directly or indirectly from the business relationship evidenced by the contract.'" *Don't Tread On Us, LLC*, 2023 WL 7277183, at *4 (citation omitted).

Here, under the Terms, the forum selection clause is mandatory: "*any* claim, cause of action, or dispute that arises out of or relates to these Terms or the Meta Products [] *will* be resolved *exclusively* in the U.S. District Court for the Northern District of California or a state court located in San Mateo County." Allen Decl., Ex. A at § 4.4 (emphasis added). The forum selection clause in the Commercial Terms is similar, providing that "*any* claim, cause of action or dispute that arises out of relates to any access or use of the Meta

- 7 -

products for business or commercial purposes. . . not subject to arbitration . . . *must* be resolved *exclusively* in the U.S. District Court for the Northern District of California or a state court located in San Mato County." Allen Decl., Ex. B at § 5(b)-(c). The forum selection clause also plainly encompasses the allegations of Plaintiff's FAC, which all arise from the alleged disablement of his Facebook account. *See e.g.,* FAC ¶¶ 128-133 (alleging that Meta "severed Plaintiff's access to his Meta for Business and Facebook Account"); *see also Dean v. Meta Platforms, Inc.,* No. 8:24-cv-2242, Dkt. No. 55 at 5 ("Order Granting Motion to Transfer") (M.D. Fla. Oct. 28, 2025) (finding that claims were subject to the forum selection clause and noting that "many cases arising out of Meta's moderation of users' content on its platform have been transferred pursuant to the forum selection clause"); *Loomer v. Facebook, Inc.,* No. 19-cv-80893, 2020 WL 2926357, at *3 (S.D. Fla. Apr. 13, 2020) (finding the terms of nearly identical forum selection clause to be "broad").

Accordingly, the forum selection clauses are mandatory, and encompass the conduct alleged by Plaintiff.

## B. The Forum Selection Clauses Are Valid and Enforceable and the Public Interest Factors Do Not Weigh Against Transfer

Under 28 U.S.C. § 1404(a), district courts may transfer civil actions to another district to which the parties have consented. When there is a valid forum selection clause in an agreement between the parties, they are to "be

given controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co.*, 571 U.S. at 59-60; *see also Dean*, No. 8:24-cv-2242, Dkt. No. 55 at 5-6 (enforcing forum selection clause in Meta's Terms of Service and Commercial Terms, finding that the clause "governs this lawsuit and mandates transfer to the NDCA"); *McCarthy v. Meta Platforms, Inc.*, No. 24-cv-14322, 2025 WL 3755430, at *1-2 (S.D. Fla. Jan. 27, 2025) (transferring case to the Northern District of California based on forum selection clause in Meta's Terms of Service); *Borrero v. Meta Platforms, Inc.*, No. 8:25-cv-2469, Dkt. No. 6 ("Order Granting Motion to Transfer Case") (M.D. Fla. Nov. 12, 2025) (same); *Loomer*, 2020 WL 2926357, at *2 (same). And, conversely, a plaintiff's choice of forum is given no weight in the presence of a valid forum selection clause. *Alexander*, 2020 WL 12656395, at *1. "Forum-selection clauses are presumptively valid and enforceable unless the plaintiff makes a strong showing that enforcement would be unfair or unreasonable under the circumstances." *Loomer*, 2020 WL 2926357, at *2 (cleaned up and quoting *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009)); *see also GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014) ("an enforceable forum-selection clause carries near-determinative weight").

A forum selection clause must be enforced unless "(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day

- 9 -

in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Krenkel*, 579 F.3d at 1281. It is a plaintiff's burden to "show[] why the court should not transfer the case to the forum to which the parties agreed." *Atl. Marine*, 571 U.S. at 63-64. Here, Plaintiff has not, and cannot, allege any facts demonstrating the forum selection clause should not be enforced.

*First*, the forum selection clause was not the product of fraud or overreaching. The clause was contained in the Terms, which Plaintiff consented to upon creating a Facebook account. *See* Allen Decl. ¶ 3; FAC ¶ 127 (alleging that Meta "formed and enforced contracts with Plaintiff, including" an "account governed by Meta's terms"). There are no allegations in the Complaint that Plaintiff's agreement to the forum selection clause was induced by fraud or overreaching. Courts routinely enforce the forum selection clause in Meta's Terms.[1] *See, e.g., Dean*, No. 8:24-cv-2242, Dkt. No. 55 at 5-6 (enforcing forum selection clause in Meta's Terms of Service and Commercial Terms); *Borrero*, No. 8:25-cv-2469, Dkt. No. 6 (enforcing Meta's forum selection clause); *Loomer*, 2020 WL 2926357, at *3 (listing cases); *Franklin v. Facebook Inc.*, No. 1:15-cv-00655-LMM, 2015 WL 7755670, at *2 (N.D. Ga. Nov. 24, 2015)

---

[1] As explained above, the forum selection clause of the Meta Terms and the Commercial Terms are nearly identical.

(enforcing forum selection clause); *Miller v. Facebook, Inc.*, No. 1:09-cv-2810-RLV, 2010 WL 9525523, at *1 (N.D. Ga. Jan. 15, 2010) (enforcing forum selection clause); *see also Thomas v. Facebook, Inc.*, No. 118-cv-00856-LJO-BAM, 2018 WL 3915585, at *4 (E.D. Cal. Aug. 15, 2018) ("[T]he Court is not aware of any case concluding that the forum selection clause in Facebook's [Terms of Service] is invalid." (listing cases)).

*Second*, enforcement of the forum selection clause would not deprive Plaintiff of his day in court, as the action would simply be transferred to the Northern District of California. To the extent Plaintiff asserts that litigating in California is burdensome, this is undercut by the fact that Plaintiff previously filed a case containing substantially similar allegations in the Northern District of California and extensively litigated the case over a period of "five months and sixty-two docket entries." Compl. ¶ 9. In any event, even if litigation in California were burdensome for Plaintiff, this is not a sufficient basis to set aside a forum selection clause. *See, e.g., P&S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) ("The financial difficulty that a party might have in litigating in the selected forum is not a sufficient ground by itself for refusal to enforce a valid forum selection clause."); *MoistTech Corp.*, 2015 WL 3952341, at *5 ("Any potential financial difficulty that a party may have in litigating in the selected forum is not a sufficient ground standing alone to prevent enforcement of a valid forum-selection

- 11 -

clause."). Moreover, "any inconvenience the plaintiff[] would suffer by being forced to litigate in [California] was foreseeable at the time of contracting." *Rucker v. Oasis Legal Fin., L.L.C.*, 632 F.3d 1231, 1237 (11th Cir. 2011).

*Third,* Plaintiff brings claims under federal civil rights statutes, 42 U.S.C. §§ 1981, 1982, 1983, 1985(3), and Plaintiff can (indeed, already has) seek the same relief in the Northern District of California. *See, e.g., Evans v. Absolute Results*, No. 21-cv-280, 2021 WL 3621691, at *3 (S.D.N.Y. Aug. 16, 2021) (enforcing forum selection clause as to 42 U.S.C. § 1981 claim, noting "prosecution of this action in Delaware federal court will not result in the application of fundamentally unfair law").

*Fourth,* enforcing the forum selection clause here will not undermine public policy. To the contrary, "striking [Meta's] forum selection clause could wreak havoc on the entire social-networking internet industry," because "the company could face litigation in every state in this country and in nations around the globe which would have potential adverse consequences for the users of Facebook's social-networking site and for other internet companies." *Miller,* 2010 WL 9525523, at *1.

Moreover, since Meta's principal place of business is based in the Northern District of California, venue in that district is appropriate because of the "strong interest in deciding controversies involving Facebook at home and the familiarity of its judges with applying California law." *Kidstar v. Facebook,*

- 12 -

*Inc.*, No. 2:18-cv-13558, 2020 WL 4382279, at *5 (D.N.J. July 31, 2020). And to the extent Plaintiff argues he should be entitled to choose the forum where he brings his action, the Supreme Court has stressed that, when there is a valid forum selection clause, "the plaintiff's choice of forum merits no weight"; rather, "the interest of justice" is served by holding parties to their contractually-bargained for forum. *Atl. Marine*, 571 U.S. at 63, 66. Indeed, by previously bringing substantially similar claims in that district, Plaintiff himself recognized the Northern District of California is an appropriate venue for his claims.

Lastly, while the Court can consider the public interest factors, "[t]hose factors will rarely defeat a transfer motion." *Atl. Marine*, 571 U.S. at 51.[2] And, in any event, Plaintiff cannot show that the public interest factors weigh against transfer, particularly since the Northern District of California is an adequate forum to hear this dispute. Because Meta's principal place of business is in California, transfer to the Northern District of California "would not burden citizens of an unrelated forum because that District has an interest in the case." *MoistTech Corp.*, 2015 WL 3952341, at *9. For the same reason,

---

[2] "Public-interest factors include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.'" *MoistTech Corp.*, 2015 WL 3952341, at *9.

- 13 -

there is no localized interest that must be decided in Florida. And as discussed above, the Terms provide for the application of California law. *St. Francis Holdings, LLC*, 2020 WL 6746329, at \*4 ("The pre-selected forum is therefore at home with the applicable law, which weighs in favor of transfer.").

The forum selection clauses are, therefore, valid and enforceable, and no exceptional circumstances exist that would weigh against transfer. *Alexander*, 2020 WL 12656395, at \*1 ("There is no dispute that the Parties have agreed to a valid forum selection clause, and Plaintiffs fail to prove the existence of extraordinary circumstances sufficient to convince the Court that the case should not be transferred.")

## III. CONCLUSION

For these reasons, in the alternative to dismissal, Meta respectfully requests that the Court transfer this action to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

### Local Rule 3.01(g) Certification

Pursuant to Local Rule 3.01(g), on April 8, 2026, counsel for Meta contacted Plaintiff via email regarding this Motion to Transfer. As of the time of this filing, Plaintiff has not responded to the conferral email. Undersigned counsel will update this certification should Plaintiff respond to the conferral email.

Respectfully submitted,

- 14 -

Dated: April 9, 2026                    ORRICK, HERRINGTON & SUTCLIFFE LLP

                                 By:    /s/ *Diana Marie Fassbender*
                                        DIANA MARIE FASSBENDER (BN 17095)
                                        dszego@orrick.com
                                        2100 Pennsylvania Avenue NW
                                        Washington, D.C. 20037
                                        Telephone: (202) 339-8533
                                        Facsimile: (202) 339-8500

                                        *Attorneys for Defendant*
                                        *Meta Platforms, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2026, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system, and the foregoing

via Email and U.S. Mail to:

Marvelle J. Ballentine
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
jayballentine@protonmail.com
yglazman.litigation@protonmail.com

s/ *Diana Marie Fassbender*
DIANA MARIE FASSBENDER

# EXHIBIT E-7

Dkt. 88: Declaration of Jennifer Allen in support of transfer (with Exhibits A, B)

# UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA

MARVELLE J. "JAY" BALLENTINE

      Plaintiff,

      v.

META PLATFORMS, INC., ACCENTURE
LLP; TASKUS, INC, and GENPACT USA,
INC.,

      Defendants.

Case No 6:26-cv-376

## DECLARATION OF JENNIFER ALLEN IN SUPPORT OF META PLATFORMS, INC.'S MOTION TO TRANSFER PLAINTIFF'S FIRST AMENDED COMPLAINT

I, JENNIFER ALLEN, declare as follows:

1.     I am a Case Manager on the eDiscovery and Information Governance Team at Meta Platforms, Inc. ("Meta"). I am familiar with the facts and circumstances set forth herein and submit this declaration in support of Meta's Motion to Transfer Plaintiff's First Amended Complaint.

2.     As part of my current role, I am regularly involved in assisting with the collection of documents, data, and information related to the services Meta provides, such as Facebook, including Meta's Terms of Service ("Terms") and Meta's Commercial Terms ("Commercial Terms").

3.     Every person who registers for, uses, and continues to use the Facebook service (or other products, websites, features, services, technologies, and software offered by Meta) agrees to the Terms of Service as a condition of using the Facebook service. Every person who uses the Facebook service for business or commercial purposes also agrees to the Commercial Terms as a condition of using the Facebook service for such purposes.

4.     A true and correct copy of the Terms in effect at the time of the events alleged in the First Amended Complaint (*i.e.,* between June

2

2022 and July 4, 2022) is attached as **Exhibit A.**

5.    A true and correct copy of the Commercial Terms in effect at the time of the events alleged in the First Amended Complaint (*i.e.,* between June 2022 and July 4, 2022) is attached as **Exhibit B.**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 9, 2026

*Jennifer Allen*

_____

JENNIFER ALLEN

3

# EXHIBIT A

An update to our Terms of Service will be effective on July 26, 2022. You can preview the updated version here.

The Facebook company is now Meta. We've updated our Terms of Use, Data Policy, and Cookies Policy to reflect the new name on January 4, 2022. While our company name has changed, we are continuing to offer the same products, including the Facebook app from Meta. Our Data Policy and Terms of Service remain in effect, and this name change does not affect how we use or share data. Learn more about Meta and our vision for the metaverse.

# Terms of Service

Meta builds technologies and services that enable people to connect with each other, build communities, and grow businesses. These Terms govern your use of Facebook, Messenger, and the other products, features, apps, services, technologies, and software we offer (the Meta Products or Products), except where we expressly state that separate terms (and not these) apply. These Products are provided to you by Meta Platforms, Inc.

We don't charge you to use Facebook or the other products and services covered by these Terms. Instead, businesses and organizations pay us to show you ads for their products and services. By using our Products, you agree that we can show you ads that we think will be relevant to you and your interests. We use your personal data to help determine which ads to show you.

We don't sell your personal data to advertisers, and we don't share information that directly identifies you (such as your name, email address or other contact information) with advertisers unless you give us specific permission. Instead, advertisers can tell us things like the kind of audience they want to see their ads, and we show those ads to people who may be interested. We provide advertisers with reports about the performance of their ads that help them understand how people are interacting with their content. See Section 2 below to learn more.

Our Data Policy explains how we collect and use your personal data to determine some of the ads you see and provide all of the other services described below. You can also go to your settings at any time to review the privacy choices you have about how we use your data.

## 1. The services we provide

Our mission is to give people the power to build community and bring the world closer together. To help advance this mission, we provide the Products and services described below to you:

- **Provide a personalized experience for you:** Your experience on Facebook is unlike anyone else's: from the posts, stories, events, ads, and other content you see in News Feed or our video platform to the Facebook Pages you follow and other features you might use, such as Trending, Facebook Marketplace, and search. We use the data we have - for example, about the connections you make, the choices and settings you select, and what you share and do on and off our Products - to personalize your experience.

- **Connect you with people and organizations you care about:** We help you find and connect with people, groups, businesses, organizations, and others that matter to you across the Facebook Products you use. We use the data we have to make suggestions for you and others - for example, groups to join, events to attend, Pages to follow or send a message to, shows to watch, and people you may want to become friends with. Stronger ties make for better communities, and we believe our services are most useful when people are connected to people, groups, and organizations they care about.

- **Empower you to express yourself and communicate about what matters to you:** There are many ways to express yourself on Facebook and to communicate with friends, family, and others about what matters to you - for example, sharing status updates, photos, videos, and stories across the Meta Products you use, sending messages to a friend or several people, creating events or groups, or adding content to your profile. We have also developed, and continue to explore, new ways for people to use technology, such as augmented reality and 360 video to create and share more expressive and engaging content on Meta Products.

- **Help you discover content, products, and services that may interest you:** We show you ads, offers, and other sponsored content to help you discover content, products, and services that are offered by the many businesses and organizations that use Facebook and other Meta Products. Section 2 below explains this in more detail.

- **Combat harmful conduct and protect and support our community:** People will only build community on Meta Products if they feel safe. We employ dedicated teams around the world and develop advanced technical systems to detect misuse of our Products, harmful conduct towards others, and situations where we may be able to help support or protect our community. If we learn of content or conduct like this, we will take appropriate action - for example, offering help, removing content, removing or restricting access to certain features, disabling an account, or contacting law enforcement. We share data with other Meta Companies when we detect misuse or harmful conduct by someone using one of our Products.

We use and develop advanced technologies - such as artificial intelligence, machine learning systems, and augmented reality - so that people can use our Products safely regardless of physical ability or geographic location. For example, technology like this helps people who have visual impairments understand what or who is in photos or videos shared on Facebook or Instagram. We also build sophisticated network and communication technology to help more people connect to the internet in areas with limited access. And we develop automated systems to improve our ability to detect and remove abusive and dangerous activity that may harm our community and the integrity of our Products.

- **Research ways to make our services better:** We engage in research to develop, test, and improve our Products. This includes analyzing the data we have about our users and understanding how people use our Products, for example by conducting surveys and testing and troubleshooting new features. Our Data Policy explains how we use data to support this research for the purposes of developing and improving our services.

- **Provide consistent and seamless experiences across the Meta Company Products:** Our Products help you find and connect with people, groups, businesses, organizations, and others that are important to you. We design our systems so that your experience is consistent and seamless across the different Meta Company Products that you use. For example, we use data about the people you engage with on Facebook to make it easier for you to connect with them on Instagram or Messenger, and we enable you to communicate with a business you follow on Facebook through Messenger.

- **Enable global access to our services:** To operate our global service, we need to store and distribute content and data in our data centers and systems around the world, including outside your country of residence. This infrastructure may be operated or controlled by Meta Platforms, Inc., Facebook Ireland Limited, or its affiliates.

## 2. How our services are funded

Instead of paying to use Facebook and the other products and services we offer, by using the Facebook Products covered by these Terms, you agree that we can show you ads that businesses and organizations pay us to promote on and off the Facebook Company Products. We use your personal data, such as information about your activity and interests, to show you ads that are more relevant to you.

Protecting people's privacy is central to how we've designed our ad system. This means that we can show you relevant and useful ads without telling advertisers who you are. We don't sell your personal data. We allow advertisers to tell us things like their business goal, and the kind of audience they want to see their ads (for example, people between the age of 18-35 who like cycling). We then show their ad to people who might be interested.

We also provide advertisers with reports about the performance of their ads to help them understand how people are interacting with their content on and off Facebook. For example, we provide general demographic and interest information to advertisers (for example, that an ad was seen by a woman between the ages of 25 and 34 who lives in Madrid and likes software engineering) to help them better understand their audience. We don't share information that directly identifies you (information such as your name or email address that by itself can be used to contact you or identifies who you are) unless you give us specific permission. Learn more about how Facebook ads work here.

We collect and use your personal data in order to provide the services described above to you. You can learn about how we collect and use your data in our Data Policy. You have controls over the types of ads and advertisers you see, and the types of information we use to determine which ads we show you. Learn more.

## 3. Your commitments to Facebook and our community

We provide these services to you and others to help advance our mission. In exchange, we need you to make the following commitments:

1. Who can use Facebook

   When people stand behind their opinions and actions, our community is safer and more accountable. For this reason, you must:

   - Use the same name that you use in everyday life.
   - Provide accurate information about yourself.
   - Create only one account (your own) and use your timeline for personal purposes.
   - Not share your password, give access to your Facebook account to others, or transfer your account to anyone else (without our permission).

   We try to make Facebook broadly available to everyone, but you cannot use Facebook if:

   - You are under 13 years old.
   - You are a convicted sex offender.
   - We've previously disabled your account for violations of our Terms or Policies.
   - You are prohibited from receiving our products, services, or software under applicable laws.

Case 6:26-cv-00376-AGM-DCI    Document 88-1    Filed 04/09/26    Page 4 of 7    Page 38

2. What you can share and do on Meta Products

We want people to use Meta Products to express themselves and to share content that is important to them, but not at the expense of the safety and well-being of others or the integrity of our community. You therefore agree not to engage in the conduct described below (or to facilitate or support others in doing so):

1. You may not use our Products to do or share anything:

   - That violates these Terms, our Community Standards, and other terms and policies that apply to your use of our Products.

   - That is unlawful, misleading, discriminatory or fraudulent.

   - That infringes or violates someone else's rights, including their intellectual property rights.

2. You may not upload viruses or malicious code or do anything that could disable, overburden, or impair the proper working or appearance of our Products.

3. You may not access or collect data from our Products using automated means (without our prior permission) or attempt to access data you do not have permission to access.

We can remove or restrict access to content that is in violation of these provisions.

If we remove content that you have shared in violation of our Community Standards, we'll let you know and explain any options you have to request another review, unless you seriously or repeatedly violate these Terms or if doing so may expose us or others to legal liability; harm our community of users; compromise or interfere with the integrity or operation of any of our services, systems or Products; where we are restricted due to technical limitations; or where we are prohibited from doing so for legal reasons.

To help support our community, we encourage you to report content or conduct that you believe violates your rights (including intellectual property rights) or our terms and policies.

We also can remove or restrict access to your content, services or information if we determine that doing so is reasonably necessary to avoid or mitigate adverse legal or regulatory impacts to Meta.

3. The permissions you give us

We need certain permissions from you to provide our services:

1. Permission to use content you create and share: Some content that you share or upload, such as photos or videos, may be protected by intellectual property laws.

   You own the intellectual property rights (things like copyright or trademarks) in any such content that you create and share on Facebook and other Meta Company Products you use. Nothing in these Terms takes away the rights you have to your own content. You are free to share your content with anyone else, wherever you want.

   However, to provide our services we need you to give us some legal permissions (known as a 'license') to use this content. This is solely for the purposes of providing and improving our Products and services as described in Section 1 above.

   Specifically, when you share, post, or upload content that is covered by intellectual property rights on or in connection with our Products, you grant us a non-exclusive, transferable, sub-licensable, royalty-free, and worldwide license to host, use, distribute, modify, run, copy, publicly perform or display, translate, and create derivative works of your content (consistent with your privacy and application settings). This means, for example, that if you share a photo on Facebook, you give us permission to store, copy, and share it with others (again, consistent with your settings) such as service providers that support our service or other Meta Products you use. This license will end when your content is deleted from our systems.

   You can delete content individually or all at once by deleting your account. Learn more about how to delete your account. You can download a copy of your data at any time before deleting your account.

   When you delete content, it's no longer visible to other users, however it may continue to exist elsewhere on our systems where:

   - immediate deletion is not possible due to technical limitations (in which case, your content will be deleted within a maximum of 90 days from when you delete it);
   - your content has been used by others in accordance with this license and they have not deleted it (in which case this license will continue to apply until that content is deleted); or
   - where immediate deletion would restrict our ability to:

     - investigate or identify illegal activity or violations of our terms and policies (for example, to identify or investigate misuse of our Products or systems);
     - comply with a legal obligation, such as the preservation of evidence; or
     - comply with a request of a judicial or administrative authority, law enforcement or a government agency;

been retained (the exact duration will vary on a case-by-case basis).

In each of the above cases, this license will continue until the content has been fully deleted.

2. <u>Permission to use your name, profile picture, and information about your actions with ads and sponsored content:</u> You give us permission to use your name and profile picture and information about actions you have taken on Facebook next to or in connection with ads, offers, and other sponsored content that we display across our Products, without any compensation to you. For example, we may show your friends that you are interested in an advertised event or have liked a Facebook Page created by a brand that has paid us to display its ads on Facebook. Ads like this can be seen only by people who have your permission to see the actions you've taken on Meta Products. You can learn more about your ad settings and preferences.

3. <u>Permission to update software you use or download:</u> If you download or use our software, you give us permission to download and install updates to the software where available.

4. <u>Limits on using our intellectual property</u>

If you use content covered by intellectual property rights that we have and make available in our Products (for example, images, designs, videos, or sounds we provide that you add to content you create or share on Facebook), we retain all rights to that content (but not yours). You can only use our copyrights or trademarks (or any similar marks) as expressly permitted by our Brand Usage Guidelines or with our prior written permission. You must obtain our written permission (or permission under an open source license) to modify, create derivative works of, decompile, or otherwise attempt to extract source code from us.

## 4. Additional provisions

1. <u>Updating our Terms</u>

We work constantly to improve our services and develop new features to make our Products better for you and our community. As a result, we may need to update these Terms from time to time to accurately reflect our services and practices. Unless otherwise required by law, we will notify you before we make changes to these Terms and give you an opportunity to review them before they go into effect. Once any updated Terms are in effect, you will be bound by them if you continue to use our Products.

We hope that you will continue using our Products, but if you do not agree to our updated Terms and no longer want to be a part of the Facebook community, you can delete your account at any time.

2. <u>Account suspension or termination</u>

We want Facebook to be a place where people feel welcome and safe to express themselves and share their thoughts and ideas.

If we determine that you have clearly, seriously or repeatedly breached our Terms or Policies, including in particular our Community Standards, we may suspend or permanently disable access to your account. We may also suspend or disable your account if you repeatedly infringe other people's intellectual property rights or where we are required to do so for legal reasons.

Where we take such action we'll let you know and explain any options you have to request a review, unless doing so may expose us or others to legal liability; harm our community of users; compromise or interfere with the integrity or operation of any of our services, systems or Products; or where we are restricted due to technical limitations; or where we are prohibited from doing so for legal reasons.

You can learn more about what you can do if your account has been disabled and how to contact us if you think we have disabled your account by mistake.

If you delete or we disable your account, these Terms shall terminate as an agreement between you and us, but the following provisions will remain in place: 3, 4.2-4.5.

3. <u>Limits on liability</u>

We work hard to provide the best Products we can and to specify clear guidelines for everyone who uses them. Our Products, however, are provided "as is," and we make no guarantees that they always will be safe, secure, or error-free, or that they will function without disruptions, delays, or imperfections. To the extent permitted by law, we also DISCLAIM ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, AND NON-INFRINGEMENT. We do not control or direct what people and others do or say, and we are not responsible for their actions or conduct (whether online or offline) or any content they share (including offensive, inappropriate, obscene, unlawful, and other objectionable content).

We cannot predict when issues might arise with our Products. Accordingly, our liability shall be limited to the fullest extent permitted by applicable law, and under no circumstance will we be liable to you for any lost profits, revenues, information, or data, or consequential, special, indirect, exemplary, punitive, or incidental damages

Case 6:26-cv-00376-AGM-DCI Document 86-1 Filed 04/09/26 Page 6 of 7 PageID 258

of such damages. Our aggregate liability arising out of or relating to these Terms or the Facebook Products will not exceed the greater of $100 or the amount you have paid us in the past twelve months.

4. Disputes

We try to provide clear rules so that we can limit or hopefully avoid disputes between you and us. If a dispute does arise, however, it's useful to know up front where it can be resolved and what laws will apply.

For any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms or the Meta Products ("claim"), you agree that it will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County. You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim, and that the laws of the State of California will govern these Terms and any claim, without regard to conflict of law provisions.

5. Other

1. These Terms (formerly known as the Statement of Rights and Responsibilities) make up the entire agreement between you and Facebook, Inc. regarding your use of our Products. They supersede any prior agreements.

2. Some of the Products we offer are also governed by supplemental terms. If you use any of those Products, supplemental terms will be made available and will become part of our agreement with you. For instance, if you access or use our Products for commercial or business purposes, such as buying ads, selling products, developing apps, managing a group or Page for your business, or using our measurement services, you must agree to our Commercial Terms. If you post or share content containing music, you must comply with our Music Guidelines. To the extent any supplemental terms conflict with these Terms, the supplemental terms shall govern to the extent of the conflict.

3. If any portion of these Terms is found to be unenforceable, the remaining portion will remain in full force and effect. If we fail to enforce any of these Terms, it will not be considered a waiver. Any amendment to or waiver of these Terms must be made in writing and signed by us.

4. You will not transfer any of your rights or obligations under these Terms to anyone else without our consent.

5. You may designate a person (called a legacy contact) to manage your account if it is memorialized. Only your legacy contact or a person who you have identified in a valid will or similar document expressing clear consent to disclose your content upon death or incapacity will be able to seek disclosure from your account after it is memorialized.

6. These Terms do not confer any third-party beneficiary rights. All of our rights and obligations under these Terms are freely assignable by us in connection with a merger, acquisition, or sale of assets, or by operation of law or otherwise.

7. You should know that we may need to change the username for your account in certain circumstances (for example, if someone else claims the username and it appears unrelated to the name you use in everyday life).

8. We always appreciate your feedback and other suggestions about our products and services. But you should know that we may use them without any restriction or obligation to compensate you, and we are under no obligation to keep them confidential.

9. We reserve all rights not expressly granted to you.

## 5. Other terms and policies that may apply to you

- Community Standards: These guidelines outline our standards regarding the content you post to Facebook and your activity on Facebook and other Meta Products.

- Commercial Terms: These terms apply if you also access or use our Products for any commercial or business purpose, including advertising, operating an app on our Platform, using our measurement services, managing a group or a Page for a business, or selling goods or services.

- Advertising Policies: These policies specify what types of ad content are allowed by partners who advertise across the Meta Products.

- Self-Serve Ad Terms: These terms apply when you use self-serve advertising interfaces to create, submit, or deliver advertising or other commercial or sponsored activity or content.

- Pages, Groups and Events Policy: These guidelines apply if you create or administer a Facebook Page, group, or event, or if you use Facebook to communicate or administer a promotion.

- Meta Platform Terms: These guidelines outline the policies that apply to your use of our Platform (for example, for developers or operators of a Platform application or website or if you use social plugins).

Case 6:26-cv-00376-AGM-DCI   Document 88-1   Filed 04/09/26   Page 7 of 7 PageID 259

- **Community Payment Terms:** These terms apply to payments made on or through Meta Products.

- **Commerce Policies:** These guidelines outline the policies that apply when you offer products and services for sale on Facebook.

- **Meta Brand Resources:** These guidelines outline the policies that apply to use of Meta trademarks, logos, and screenshots.

- **Music Guidelines:** These guidelines outline the policies that apply if you post or share content containing music on Meta Products.

- **Live Policies:** These policies apply to all content broadcast to Facebook Live.

Date of Last Revision: January 4, 2022

# EXHIBIT B

*The Facebook company is now Meta. We've updated our Terms of Use, Data Policy, and Cookies Policy to reflect the new name on January 4, 2022. While our company name has changed, we are continuing to offer the same products, including the Facebook app from Meta. Our Data Policy and Terms of Service remain in effect, and this name change does not affect how we use or share data. Learn more about Meta and our vision for the metaverse.*

These terms reflect our updated European Data Transfer Addendum incorporating new Standard Contractual Clauses effective September 27, 2021.

## Meta Commercial Terms ("Commercial Terms")

These Commercial Terms apply to access or use of the Meta Products (or "**Products**"), for a business or commercial purpose (except where we state that separate terms, and not these Commercial Terms, apply to such access or use of a Facebook Product). Business or commercial purposes include using ads, selling products, developing apps, managing a Page, managing a Group for business purposes, or using our measurement services regardless of the entity type.

You agree that you will ensure that any third party on whose behalf you access or use any Meta Product for any business or commercial purpose will abide by the applicable terms of use, including these Commercial Terms, the Meta Terms of Service ("**Terms**"), and any applicable supplemental terms, and you represent and warrant that you have the authority to bind that third party to such terms.

As more fully described below, if you reside in the United States or your business is located in the United States, these Commercial Terms require the resolution of most disputes between you and us by binding arbitration on an individual basis; class actions and jury trials are not permitted.

1. **Licenses:** As described in *"The permissions you give us"* section in our Terms, you grant us a license to content that is covered by intellectual property rights (like photos or videos) you share, post, or upload on or in connection with our Meta Products. For any access or use of the Meta Products, that license applies to content you or someone on your behalf (such as your agency that places an ad for you or your service provider that manages your Page content for you) makes available on or in connection with any Meta Product. You also will ensure that you own or have secured all rights necessary to grant the licenses and rights you (or someone on your behalf) grant to us under the Commercial Terms and any applicable supplemental terms, including permission to display, distribute and deliver your content within the Meta Products.

2. **Compliance with Law:** You represent and warrant that your access or use of the Meta Products for business or commercial purposes complies with all applicable laws, rules, and regulations. You further represent that you will restrict access to your content and apps in accordance with all applicable laws, rules, and regulations, including geo-filtering or age-gating access where required. In addition to and without limiting the requirements about who can use the Meta Products under our Terms, if you are located in a country that is subject to embargo under the laws of the United States (or under similar laws applicable to you) you may not engage in commercial activities on the Meta Products unless authorized by applicable laws. If you are on the U.S. Treasury Department's list of Specially Designated Nationals (or an equivalent list), you may not engage in commercial or business activities on the Meta Products (such as advertising or payments). You also may not access or use the Meta Products if you are prohibited from receiving products, services, or software under applicable law.

3. **Data Restrictions:** You may not send us information prohibited by the supplemental terms or policies. In addition, you may not send to us, or use Meta Products to collect from people, information that: (i) you know or reasonably should know is from or about children under the age of 13; or (ii) includes health, financial, biometrics, or other categories of similarly sensitive information (including any information defined as sensitive under applicable law); except in cases where (a) the terms for that Meta Product specifically allow it or (b) you are sending financial information for the express purpose of effecting a financial transaction either with us or as enabled by a Meta Product.

4. **Limits on Liability:** In addition to and without limiting the scope of the *"Limits on liability"* section in our Terms, you agree that we are not responsible for the actions, services, content, or data of third parties and you release us, our directors, officers, employees, and agents from any claims and damages, known or unknown,

arising out of or in any way connected with any claim you have against any such third parties.

If you are a California resident, you agree to waive California Civil Code § 1542, which says:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Our aggregate liability arising out of or relating to any access or use of the Meta Products, the Terms (for any access or use of the Meta Products for business or commercial purposes), or these Commercial Terms will not exceed the greater of one hundred dollars ($100) or the amount you have paid us in the past twelve months.

5. **Disputes:**

    a. <u>Third Party Claims:</u> If anyone brings a claim, cause of action, or dispute against us related to your services, actions, content or information on Facebook or other Meta Products or your use of any Meta Products, you agree to indemnify and hold us harmless from and against any damages, losses, and expenses of any kind (including reasonable legal fees and costs) related to any such claim, cause of action, or dispute.

    b. <u>Commercial Claims:</u> Sections 5.c and 5.d below apply to any claim, cause of action, or dispute that arises out of or relates to any access or use of the Meta Products for business or commercial purposes ("**Commercial Claim**") between you and Meta.

    c. <u>U.S. Commercial Claims:</u> If you reside in the United States or your business is located in the United States:

        i. You agree to arbitrate Commercial Claims between you and Meta Platforms, Inc. This provision does not cover any commercial claims relating to violations of your or our intellectual property rights, including, but not limited to, copyright infringement, patent infringement, trademark infringement, violations of the Brand Usage Guidelines, violations of your or our confidential information or trade secrets, or efforts to interfere with our Products or engage with our Products in unauthorized ways (for example, automated ways). If a Commercial Claim between you and Meta Platforms, Inc. is not subject to arbitration, you agree that the claim must be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County, and that you submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim.

        ii. We and you agree that, by entering into this arbitration provision, all parties are waiving their respective rights to a trial by jury or to participate in a class or representative action. THE PARTIES AGREE THAT EACH MAY BRING COMMERCIAL CLAIMS AGAINST THE OTHER ONLY IN ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, REPRESENTATIVE, OR PRIVATE ATTORNEY GENERAL PROCEEDING. You may bring a Commercial Claim only on your own behalf and cannot seek relief that would affect other parties. If there is a final judicial determination that any particular Commercial Claim (or a request for particular relief) cannot be arbitrated according to the limitations of this Section 5.c, then only that Commercial Claim (or only that request for relief) may be brought in court. All other Commercial Claims (or requests for relief) will remain subject to this Section 5.c. The Federal Arbitration Act governs the interpretation and enforcement of this arbitration provision. All issues are for an arbitrator to decide, except that only a court may decide issues relating to the scope or enforceability of this arbitration provision or the interpretation of the prohibition of class and representative actions. If any party intends to seek arbitration of a dispute, that party must provide the other party with notice in writing. This notice of dispute to us must be sent to the following address: Meta Platforms, Inc. 1601 Willow Rd. Menlo Park, CA 94025. The arbitration will be governed by the AAA's Commercial Arbitration Rules ("**AAA Rules**"), as modified by these Commercial Terms, and will be administered by the AAA. If the AAA is unavailable, the parties will agree to another arbitration provider or the court will appoint a substitute. The arbitrator will not be bound by rulings in other arbitrations in which you are not a party. To the fullest extent permitted by applicable law, any evidentiary submissions made in arbitration will be maintained as confidential in the absence of good cause for its disclosure. The arbitrator's award will be maintained as confidential only to the extent necessary to protect either

party's trade secrets or proprietary business information or to comply with a legal requirement mandating confidentiality. Each party will be responsible for paying any AAA filing, administrative and arbitrator fees in accordance with AAA Rules, except that we will pay for your filing, administrative, and arbitrator fees if your Commercial Claim for damages does not exceed $75,000 and is non-frivolous (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)). If you do not wish to be bound by this provision (including its waiver of class and representative claims), you must notify us as set forth below within 30 days of the first acceptance date of any version of these Commercial Terms containing an arbitration provision. Your notice to us under this Section 5.c must be submitted to the address here: Meta Platforms, Inc. 1601 Willow Rd. Menlo Park, CA 94025. All Commercial Claims between us, whether subject to arbitration or not, will be governed by California law, excluding California's conflict of laws rules, except to the extent that California law is contrary to or preempted by federal law. If a Commercial Claim between you and us is not subject to arbitration, you agree that the claim must be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County, and that you submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim.

d. <u>Commercial Claims outside the United States:</u> If you reside outside the United States or your business is located outside the United States, you agree that:

   i. Any Commercial Claim between you and Meta Platforms, Inc. must be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County, that you submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim, and that the laws of the State of California will govern these Commercial Terms and any such claim, without regard to conflict of law provisions.

   ii. Any Commercial Claim between you and Meta Platforms Ireland Limited must be resolved exclusively in the courts of the Republic of Ireland, that you submit to the personal jurisdiction of the Republic of Ireland for the purpose of litigating any such claim, and the laws of the Republic of Ireland will govern these Commercial Terms and any such claim, without regard to conflict of law provisions.

   iii. Notwithstanding (i) and (ii) above, any Commercial Claim between you and both Meta Platforms, Inc. and Meta Platforms Ireland Limited must be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County, that you submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim, and that the laws of the State of California will govern these Commercial Terms and any such claim, without regard to conflict of law provisions.

   iv. Without prejudice to the foregoing, you agree that, in our sole discretion, we may also bring any claim we have against you related to efforts to abuse, interfere, or engage with our Products in unauthorized ways in the country in which you reside that has jurisdiction over the claim.

e. <u>Severability:</u> If any provision of this Section 5 is found unenforceable, that provision will be severed and the balance of this Section 5 will remain in full force and effect.

6. **Updates:** We may need to update these Commercial Terms from time to time, including to accurately reflect the access or uses of our Products for business or commercial purposes, and so we encourage you to check them regularly for any updates. By continuing any access or use of any Meta Products for business or commercial purposes after any notice of an update to these Commercial Terms, you agree to be bound by them. Any updates to Section 5 of these Commercial Terms will apply only to disputes that arise after notice of the update takes place. If you do not agree to the updated terms, please stop all access or use of our Products for business or commercial purposes.

7. **Conflicts and Supplemental Terms:** If there is a conflict between these Commercial Terms and the Terms, these Commercial Terms will govern with respect to your access and use of the Meta Products for business or commercial purposes to the extent of the conflict. Supplemental terms and policies may also apply to your use of certain Meta Products. To the extent those supplemental terms conflict with the Commercial Terms, the supplemental terms will govern with respect to your use of those Meta Products to the extent of the conflict.

a. If any portion of these Commercial Terms are found to be unenforceable, then (except as otherwise provided) that portion will be severed and the remaining portion will remain in full force and effect.

b. If we fail to enforce any of these Commercial Terms, it will not be considered a waiver.

c. Except as permitted in Section 6, any amendment to or waiver of these Commercial Terms must be made in writing and signed by us.

d. You will not transfer any of your rights or obligations under these Commercial Terms to anyone else without our consent.

e. These Commercial Terms do not confer any third party beneficiary rights.

f. We offer tools to provide transparency and controls to our users about the Facebook experience, including information to show them why they are being shown specific content or provide feedback about content, and controls to block content or stop seeing certain types of content (such as by removing themselves from interests used for advertising). You agree that information about you and your use of Meta Products for commercial or business purposes may be included in these tools. For clarity, our license to content extends to the display of content in conjunction with providing these tools.

g. You consent that we may disclose your advertising content and Facebook Page posts ("**Commercial Content**"), and all information associated with such Commercial Content, including information associated with the delivery of that Commercial Content, in response to valid legal process related to an electoral matter or to a governmental entity or body if Meta believes that disclosure would assist in a lawful investigation.

h. Please note that our retention policies for Commercial Content may differ from those set forth in the Terms. We retain Commercial Content as necessary to provide our services to users, for internal record keeping, and for product improvement and safety purposes.

i. All of our rights and obligations under these Commercial Terms are freely assignable by us in connection with a merger, acquisition, or sale of assets, or by operation of law or otherwise.

j. Nothing in these Commercial Terms or any applicable supplemental terms will prevent us from complying with the law.

k. We reserve all rights not expressly granted to you.

Note: For purposes of these Commercial Terms, references in existing terms or agreements to (i) "the Statement of Rights and Responsibilities," "Statement," or "SRR," will now mean the Meta Terms or Terms and (ii) "Facebook" (when used to refer to our products and services) or "Facebook Services" or "Services" will now mean Meta Products.

Effective Date: January 4, 2022

# EXHIBIT E-8

Dkt. 40: Original opposition to Accenture MTD (stricken by Dkt. 56)

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

MARVELLE J. "JAY" BALLENTINE,

    *Plaintiff,*

v.

                    Case No. 6:26-cv-00376-AGM-RMN

META PLATFORMS, INC.; ACCENTURE LLP;
TASKUS, INC.; and GENPACT USA, INC.,

    *Defendants.*

## PLAINTIFF'S OPPOSITION TO DEFENDANT

## ACCENTURE LLP'S MOTION TO DISMISS (Dkt. 29)

### RELIEF REQUESTED

    Plaintiff respectfully requests that the Court deny Defendant Accenture LLP's Motion to Dismiss (Dkt. 29) in its entirety. Plaintiff notes that the First Amended Complaint (Dkt. 19) is the operative pleading in this action and that Accenture LLP has not been served the First Amended Complaint. Plaintiff responds on the merits without waiving any objection to the procedural sequence in which the Motion to Dismiss (Dkt. 29) was filed.

### STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should deny Accenture LLP's motion to dismiss where:

1.     Accenture's motion depends on at least four factual premises that do not appear in the First Amended Complaint and contradict the FAC's affirmative allegations on every material point;

2.     The FAC identifies the specific enforcement act, attributes it to a single Vendor Defendant, invokes Rule 8(d)(2)–(3) for alternative identification, and explains why precise identification is within Defendants' exclusive control;

3.     The FAC alleges that Accenture's reviewer was authorized to validate or invalidate Meta's CSE invocation, exercised operational discretion in conducting final human review, and that the review was a but-for cause of Plaintiff's injuries under *Staub v. Proctor Hospital*, 562 U.S. 411 (2011);

4.     The FAC alleges four reinforcing predicates of discriminatory intent: identity visibility at the decision point, temporal proximity between visibility and adverse action, differential treatment of a similarly situated white comparator with a confirmed CSE violation, and Accenture's documented awareness of racial bias in automated moderation systems;

5.     The FAC challenges Accenture's enforcement conduct at the human-review stage, not Meta's editorial decision to remove content, and no Eleventh Circuit case holds that Section 230 bars a federal civil rights claim premised on the decision-making process rather than the publication outcome;

6.     The FAC alleges that Accenture executed the routing decision determining whether Plaintiff's case entered the NCMEC/CyberTipline workflow or bypassed law enforcement, placing Accenture at the operational gateway between platform enforcement and criminal investigation;

7.     The FAC alleges coordinated action within a shared operational structure—shared contracts, shared training, common standard operating

2

procedures, a sequential workflow, race-visible review, and differential restoration outcomes—sufficient to state a claim under 42 U.S.C. § 1985(3) and *Griffin v. Breckenridge*, 403 U.S. 88 (1971); and

8.     The informational asymmetry identified throughout this opposition—where the factual predicates for Accenture's defenses are within Accenture's exclusive possession—is curable through ordinary discovery, and dismissal with prejudice for deficiencies a pro se plaintiff cannot cure without access to the defendant's records is inconsistent with the federal policy favoring amendment.

**PRELIMINARY STATEMENT**

On July 4, 2022, an Accenture reviewer conducting final human review of Plaintiff's Facebook account had Plaintiff's profile photograph and government-issued identification visible on screen. The reviewer affirmed a CSE designation. No CyberTipline report followed. The absence of a CyberTipline report undercuts any claim that Plaintiff's matter involved an apparent child-exploitation violation requiring statutory reporting under 18 U.S.C. § 2258A, and supports the inference that the CSE label was not grounded in an actual reportable determination. In Q3 2022—the same quarter as Plaintiff's enforcement—4,000 CSE designations were reversed through the enforcement pipeline Defendants jointly operated, the highest reversal rate in Meta's documented history. FAC ¶¶ 44–46, 55–56, 70–73.

Accenture's motion responds to a different complaint—one in which reviewers might not have seen identity information, in which the CSE designation might have been legitimate, and in which Accenture's role might have been limited to a non-binding recommendation. The FAC alleges the opposite on each point.

The Court cannot resolve these factual disputes against Plaintiff on a Rule 12(b)(6) record. If the Court relies on Accenture's extra-pleading premises rather than excluding them, Rule 12(d) requires conversion to summary judgment with notice and an opportunity for discovery. Accenture has not requested conversion.

The FAC alleges a race-visible enforcement sequence. Accenture's motion asks the Court to accept an alternative factual account—one the FAC contradicts on every material point. Rule 12(b)(6) does not permit that. The motion should be denied.

## I.   THRESHOLD: ACCENTURE'S MOTION DEPENDS ON FACTUAL PREMISES NOT FOUND IN THE FAC

At Rule 12(b)(6), the Court accepts well-pled factual allegations as true, draws reasonable inferences in the plaintiff's favor, and does not resolve factual disputes. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Chaparro v. Carnival Corp.,* 693 F.3d 1333, 1337 (11th Cir. 2012). The movant may not introduce factual premises from outside the complaint to defeat pleading sufficiency. *Speaker v. U.S. Dep't of HHS,* 623 F.3d 1371, 1381 (11th Cir. 2010). Accenture's motion depends on at least four factual premises that do not appear in the FAC and, in each case, contradict what the FAC alleges.

### A.   "Reviewer Visibility Is Uncertain"

Accenture asserts: "the amended complaint makes clear that Ballentine does not know whether Accenture's reviewers even had access to his photograph." Dkt. 29 at 12. The FAC alleges: "Vendor Defendant personnel performing final-review enforcement had access to account-level identifiers, including profile photos, names, and in some cases government-issued ID images, sufficient to

reveal a user's race." FAC ¶ 45. "The CSE designation was affirmed by a vendor reviewer who, during the identity verification process, had full visibility of Plaintiff's Black face through his profile photo and government-issued ID." FAC ¶ 45.

The FAC does not allege uncertainty. Accenture derives "uncertainty" from the prayer for relief, which seeks disclosure of reviewer visibility practices. A request for injunctive transparency does not retract a factual allegation. At Rule 12, the FAC's affirmative allegation of visibility controls.

### B.   "Accenture Could Only Issue a Recommendation"

Accenture asserts it "lacked authority to disable his account" and "the most it could do was issue a recommendation for action." Dkt. 29 at 10. The FAC alleges the reviewer was "authorized to validate or invalidate Meta's invocation of its Child Sexual Exploitation (CSE) policy." FAC ¶ 55. Accenture "exercised operational discretion in conducting final human review." FAC ¶ 112.

"Validate or invalidate" is binary decisional authority. The FAC does not use the word "recommendation." The 8,100 CSE enforcement reversals through human review in 2022 (FAC ¶ 70) prove the pipeline produced different outcomes in different cases. At Rule 12, the FAC's characterization of the reviewer's authority controls.

### C.   "Plaintiff's Content Violated an Unidentified 'Other Community Standard'"

Accenture asserts: "the Court can infer from the amended complaint that Ballentine's account was terminated for non-discriminatory reasons." Dkt. 29 at 15. The motion invokes "a legitimate violation of another community standard

unrelated to CSE"—a formulation that first appeared in Accenture's second MTD in the NDCA action and has never been accompanied by identification of any content, any standard, or any factual basis. The FAC alleges: "No content has been identified. No standard has been cited. No factual basis has been provided." FAC ¶ 8.

An "obvious alternative explanation" within the meaning of *Iqbal* must be inferable from the complaint's own factual allegations. *Doe v. Samford Univ.*, 29 F.4th 675, 686 (11th Cir. 2022). An explanation that requires the Court to accept a community-standard violation that has never been identified—in any filing, in any court, across three separate actions—is not "obvious." It is an unpleaded, undefined, defendant-controlled hypothetical. The FAC alleges no violation existed. That allegation is accepted as true at this stage.

## D. "Accenture 'Concluded Ballentine's Content Was Objectionable'"

Accenture asserts it "acted in accordance with Meta's content policies throughout the review process . . . and ultimately concluded Ballentine's content was 'objectionable.'" Dkt. 29 at 20. This is an affirmative factual assertion about what Accenture's reviewer actually concluded during the July 4, 2022 review. The FAC does not allege this. The FAC alleges the reviewer affirmed a baseless CSE invocation after viewing Plaintiff's identity. What the reviewer actually concluded, what content was before the reviewer, and what policies the reviewer applied are within Accenture's exclusive possession. This is not a premise the Court can accept on a Rule 12(b)(6) record.

6

Each of the foregoing premises is a factual assertion Accenture asks the Court to accept on a record that consists solely of the FAC. Rule 12(b)(6) does not permit this. *Chaparro*, 693 F.3d at 1337. The Court cannot resolve these disputes against Plaintiff on a Rule 12(b)(6) record. If the Court relies on any of these extra-pleading premises rather than excluding them, Rule 12(d) requires conversion to summary judgment with notice and an opportunity for discovery. Accenture has not requested conversion.

## II.    THE FAC IS NOT A SHOTGUN PLEADING—RULE 8(d) PERMITS ALTERNATIVE IDENTIFICATION

### A.    Accenture's Argument

Accenture asserts the FAC "improperly assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions," citing *Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021), and *Lyles v. Sch. Dist. of Osceola Cnty.*, 2023 WL 8437717, at *1 (M.D. Fla. Feb. 2, 2023). Accenture also highlights a purported inconsistency between FAC ¶ 171 (alleging all Vendor Defendants "joined and acted in furtherance" of a conspiracy) and FAC ¶ 175 (alleging "a single Vendor Defendant" reviewed Plaintiff's account). Dkt. 29 at 9.

### B.    The FAC Does Two Distinct Things, and Accenture Conflates Them

FAC ¶ 175 attributes the specific July 4, 2022 enforcement act—the race-visible final review and affirmation of the CSE designation—to a single Vendor Defendant. FAC ¶ 171 separately alleges that all Vendor Defendants joined the broader conspiracy through the operational enforcement pipeline they collectively

7

staffed. These are not inconsistent allegations. Paragraph 175 pleads execution of a specific act. Paragraph 171 pleads agreement within a shared operational structure. Accenture conflates them. They are structurally distinct.

### C.    Barmapov Is Distinguishable

*Barmapov* involved undifferentiated group pleading—identical acts attributed to all defendants without distinction. The FAC does the opposite. It identifies the act (July 4, 2022 final review), attributes it to one actor (a single Vendor Defendant), and explains why precise identification is not possible pre-discovery: "The identity of the specific Vendor Defendant who conducted Plaintiff's July 4–5, 2022 final review is within Defendants' exclusive possession." FAC ¶ 47. The FAC then specifies the categories of records that will resolve identification: "review-session telemetry, queue-assignment records, and tool-access logs." Id.

The Eleventh Circuit's shotgun-pleading doctrine identifies four categories. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). The FAC falls into none of them. It does not re-adopt every preceding paragraph indiscriminately into each count. It does not assert multiple claims against multiple defendants without differentiating which defendant is responsible for which act. The FAC identifies the act, attributes it to one actor, invokes Rule 8(d)(2)–(3) for alternative identification, and explains why the information necessary for precise identification is within defendants' exclusive control. That is textbook alternative pleading.

### D.    The Consequence

If the Court concludes it cannot evaluate the claims without knowing which Vendor Defendant reviewed Plaintiff's account, the remedy is discovery—not dismissal. The queue-assignment records, tool-access logs, and review-session telemetry that would resolve identification are in Defendants' possession. Dismissal with prejudice for a pleading deficiency that the plaintiff cannot cure without information the defendant controls is inconsistent with Rule 8's notice-pleading standard.

## III.  ACCENTURE'S DISCRETIONARY AFFIRMATION IS A BUT-FOR CAUSE OF PLAINTIFF'S INJURIES

Accenture argues it cannot be the but-for cause of Plaintiff's injuries because it "lacked authority to disable his account" and could only "issue a recommendation." Dkt. 29 at 10. *Staub v. Proctor Hospital* forecloses this argument. In *Staub*, the Supreme Court held that "if a supervisor performs an act motivated by [discriminatory] animus that is intended by the supervisor to cause an adverse . . . action, and if that act is a proximate cause of the ultimate . . . action, then the employer is liable." 562 U.S. 411, 422 (2011). The subordinate's recommendation need not be the final decision. It need only be a proximate cause of the adverse action. Id. at 420–22.

The FAC alleges a vendor reviewer conducted final human review, exercised operational discretion, and affirmed a CSE designation that Meta then ratified. FAC ¶¶ 55, 112, 142. That is the configuration addressed in Staub: a biased subordinate determination adopted by a decision-maker with independent authority. Accenture's motion does not cite Staub. It does not distinguish Staub. It does not acknowledge Staub.

9

Accenture's own background section confirms the causal chain the FAC alleges. The motion states: "On Meta's request, a human moderator at either Accenture, TaskUs, or Genpact reviewed Ballentine's account. After the review, Meta terminated Ballentine's account." Dkt. 29 at 5. Meta flagged. A vendor reviewed. Meta terminated after the review. On Accenture's own telling, the vendor review is a causal step between the initial flag and the termination. If the review had no causal significance, Accenture would not have recited it in its own factual narrative. Staub holds that a biased recommendation adopted by a decision-maker with independent authority is a proximate cause of the adverse action. 562 U.S. at 420–22. Accenture's motion describes the configuration Staub addresses—and does not cite, distinguish, or acknowledge Staub.

Accenture asserts the FAC's characterization of the reviewer's authority as "validate or invalidate" is contradicted by the FAC's own allegations that Meta retained override authority. Dkt. 29 at 10. Those are competing factual narratives. The FAC alleges the reviewer exercised discretionary authority within the pipeline. Accenture asserts the reviewer's role was ministerial. The Court cannot resolve this dispute on the pleadings. If the Court relies on Accenture's extra-pleading characterization rather than excluding it, Rule 12(d) requires conversion. Accenture has not requested conversion.

Accenture argues the FAC's own sequence—Meta flags, vendor reviews under Meta's training, Meta ratifies—shows the vendor's review was ministerial. Dkt. 29 at 9–10. The FAC alleges the opposite. The reviewer was "authorized to validate or invalidate" the CSE invocation. FAC ¶ 55. Accenture "exercised operational discretion in conducting final human review of platform policy violations and edge cases." FAC ¶ 112. The fact that Meta set policies and provided

10

training does not eliminate the reviewer's independent causal contribution any more than the existence of workplace policies eliminates a subordinate's liability for discrimination carried out under those policies. *Staub*, 562 U.S. at 420–22. The 8,100 CSE enforcement reversals through human review in 2022 (FAC ¶ 70) demonstrate the pipeline produced different outcomes depending on reviewer judgment. If the reviewer always affirmed, no reversal would ever occur. The pipeline's reversal rate proves reviewer discretion existed and was outcome-determinative.

## IV.    IDENTITY VISIBILITY, TEMPORAL PROXIMITY, COMPARATOR TREATMENT, AND KNOWN BIAS ESTABLISH DISCRIMINATORY INTENT

Accenture argues the FAC does not plausibly allege discriminatory intent. Dkt. 29 at 11–16. The FAC alleges four reinforcing predicates. Taken together, they cross the plausibility threshold under *Iqbal*, 556 U.S. at 678.

### A.    Identity Visibility at the Decision Point

The FAC alleges the reviewer had Plaintiff's profile photograph and government-issued identification visible during the final review. FAC ¶ 45. The enforcement outcome was affirmed within hours of that visibility. FAC ¶ 56. Visibility of race at the moment of an adverse decision is a recognized predicate for discriminatory-intent analysis. Accenture does not dispute visibility; it disputes whether its reviewer was assigned to the case. That is a factual question the Court cannot resolve on these pleadings.

### B.    Temporal Proximity

11

The FAC alleges permanent account termination occurred within hours of Plaintiff's submission of identity verification. FAC ¶ 56. The temporal proximity between visibility of Plaintiff's race and the adverse action supports an inference of discriminatory motive at the pleading stage.

### C.    Comparator Treatment

Accenture argues Plaintiff's comparators are not similarly situated. Dkt. 29 at 13–14. The FAC alleges Steven Ertelt, a white user, was flagged under the same CSE policy as Plaintiff. FAC ¶ 64. Ertelt submitted a reinstatement demand through counsel and was restored to full platform access. *Id.* Plaintiff, a Black user flagged under the same CSE policy, submitted a formal reinstatement demand on April 22, 2025. Meta constructively denied it. *Id.* Ertelt and Plaintiff were flagged under the identical policy, processed through the same enforcement apparatus, and submitted parallel demands. The only variable the FAC identifies between their outcomes is race. That comparison supports an inference of discriminatory intent at the pleading stage.

COMP-1 reinforces the inference. COMP-1, a white user whose content Meta confirmed violated its CSE policy, received only a temporary suspension and was restored. FAC ¶¶ 71–74. That a user with a confirmed CSE violation was restored while Plaintiff—with no confirmed violation—was permanently excluded further demonstrates the discretionary and differential character of the enforcement pipeline. The FAC's claim of discriminatory intent does not depend on any single comparator. The comparator evidence reinforces the other three predicates—identity visibility, temporal proximity, and known bias—and the reversal statistics. Whether the comparisons hold under full factual development

is a question for summary judgment, not a motion to dismiss. *Horton v. Beacon Woods East*, 2025 WL 3089014, at *6 (M.D. Fla. Nov. 5, 2025).

### D.    Known Bias in Automated Systems

The FAC alleges Accenture was aware that "automated models can be 'wrong' more often for some groups." FAC ¶ 46. Awareness of a known risk of racial bias in the systems feeding the human-review queue is relevant to the plausibility of discriminatory intent, particularly when combined with the other three predicates.

### E.    Accenture's "Obvious Alternative Explanation" Fails

Accenture invokes *Doe v. Samford University*, 29 F.4th 675, 686 (11th Cir. 2022), for the proposition that the Court may infer "obvious alternative explanations" from the complaint. Dkt. 29 at 15. An obvious alternative explanation must be apparent from the factual allegations in the complaint. *Samford*, 29 F.4th at 686. Accenture's "alternative" is that Plaintiff violated some unidentified community standard unrelated to CSE. Dkt. 29 at 15–16. That is not an obvious alternative explanation. It is an unpleaded, undefined, defendant-controlled hypothetical. Accenture has never identified the content. Accenture has never identified the standard. Accenture has never identified the factual basis. Across three separate actions, two courts, and eight filings, no defendant has ever stated what Plaintiff did wrong. An "obvious" alternative explanation that the party best positioned to supply it has failed to articulate in over a year of litigation is not obvious. It is speculation.

### F.    Rule 8 Does Not Require Plaintiff to Plead the Defendant's Evidence

Accenture's repeated insistence that Plaintiff has not described "the content he allegedly posted" (Dkt. 29 at 6, 14) misidentifies the pleading obligation. Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Nothing in Rule 8 requires a plaintiff to plead the defendant's evidence. The FAC alleges no violation existed (FAC ¶ 8), no report was filed (FAC ¶ 56), and no law enforcement contact has occurred in over three years (FAC ¶ 8). If those allegations are true—and they must be accepted as true—the content of Plaintiff's posts is irrelevant to plausibility. The content becomes relevant at summary judgment or trial. At Rule 12, the FAC's allegation of non-violation controls.

### G.    Accenture's "Eight Complaints" Characterization

Accenture counts "eight complaints." Dkt. 29 at 2, 6, 14. The actual count of distinct civil actions is three. The motion inflates the number by counting amendments as separate complaints. The Federal Rules contemplate and encourage amendment. Fed. R. Civ. P. 15(a). Counting an amended pleading as a separate lawsuit is a rhetorical device, not a legal argument. The Court should disregard it.

## V.  SECTION 230 DOES NOT IMMUNIZE RACE-VISIBLE ENFORCEMENT CONDUCT

### A.    The Claims Do Not Treat Accenture as a Publisher

Section 230(c)(1) provides: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The operative

14

question is whether the FAC seeks to hold Accenture liable in its capacity as a publisher of Plaintiff's content. It does not.

The FAC challenges Accenture's own enforcement conduct at the human-review stage: race-visible decision-making, discretionary affirmation of a baseless CSE invocation, and routing through a non-report workflow. FAC ¶¶ 44–46, 55–56, 112, 142. These are allegations about the process by which an enforcement decision was made—not about the decision to publish or remove third-party content. Section 230 immunizes the what—the editorial decision to remove content. It does not immunize the how—the discriminatory process by which the decision was reached.

Every case Accenture cites involves a plaintiff who sought to hold the defendant liable for removing content from a platform. See *Mezey v. Twitter, Inc.*, 2018 WL 5306769 (S.D. Fla. July 19, 2018) (challenge to account suspension); *Elansari v. Meta, Inc.*, 2024 WL 163080 (3d Cir. Jan. 16, 2024) (same); *King v. Facebook, Inc.*, 572 F. Supp. 3d 776 (N.D. Cal. 2021) (same). The FAC does not challenge the removal of content. It challenges the motive and process behind an enforcement determination made by a vendor reviewer who was looking at Plaintiff's Black face at the moment of decision. No Eleventh Circuit case has held that Section 230 bars a federal civil rights claim premised on the decision-making process rather than the editorial outcome.

## B.    Accenture's Footnote 7 Catch-22 Fails

Accenture argues the FAC is self-contradicting: "either Accenture's alleged review did not cause Ballentine's injuries, or Accenture assisted with a protected editorial decision." Dkt. 29 at 19 n.7. The dichotomy is false. The FAC alleges

15

Accenture caused injury through a discriminatory enforcement decision. Civil rights liability attaches to the discriminatory motive, not the publication outcome. A vendor may participate in a content-moderation workflow and simultaneously violate federal civil rights law through racially motivated decision-making within that workflow. If Accenture's reading were correct, any vendor could engage in racial discrimination with impunity so long as the discrimination occurred during content review. Congress did not enact Section 230 for that purpose.

### C.    Section 230(c)(2) Good Faith Cannot Be Resolved on These Pleadings

Even if the Court concludes Section 230(c)(1) is potentially applicable, the claims survive under Section 230(c)(2)'s good-faith requirement. The litigation-position chronology undermines any presumption of good faith at this stage. On October 16, 2025, Accenture filed its first MTD in the NDCA action asserting "a legitimate community standards violation by Ballentine." On October 24, 2025, Plaintiff requested clarification that Accenture did not contend Plaintiff violated child-protection laws. On October 28, 2025, Accenture's counsel stated the argument "expressly accepts as true" the complaint's assertion of no CSE violation and represented that the forthcoming filing would "include language reinforcing this point." On October 31, 2025, Accenture filed a second MTD changing "a legitimate community standards violation by Ballentine" to "a legitimate violation of another community standard unrelated to CSE"—without identifying any content, any standard, or any factual basis. Whether this sequence reflects good faith within the meaning of § 230(c)(2) is a factual question the Court cannot resolve on the pleadings. See *Enigma Software Grp. USA, LLC v. Malwarebytes,*

*Inc.*, 946 F.3d 1040, 1052–53 (9th Cir. 2019) (reversing dismissal where allegations of pretext defeated (c)(2) immunity at Rule 12). The Court cannot resolve the good-faith question against Plaintiff on a Rule 12(b)(6) record. If the Court relies on Accenture's extra-pleading assertion of good faith rather than excluding it, Rule 12(d) requires conversion. Accenture has not requested conversion.

## VI. ACCENTURE'S ROUTING FUNCTION IS PROSECUTORIAL SCREENING, NOT REPORTING COMPLIANCE

### A.    The Eleventh Circuit's State-Action Framework

Section 1983 requires that the alleged deprivation be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). The Eleventh Circuit recognizes four alternative tests: (1) public function; (2) state compulsion; (3) nexus/joint action; and (4) pervasive entwinement. *Focus on the Family, Inc. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003) (citing *Lugar*). The FAC invokes (3) and (4). Plaintiff need prevail on only one.

### B.    Primary Theory: Discretionary Screening Within a Statutory Framework

The FAC does not allege mere compliance with 18 U.S.C. § 2258A. It alleges discretionary screening within a statutory regime that determines which cases enter state criminal processes.

The FAC alleges: A Vendor Defendant executed the routing decision that determined whether Plaintiff's case entered the NCMEC/CyberTipline workflow— triggering mandatory law enforcement notification under 18 U.S.C. § 2258A—or bypassed law enforcement entirely through an alternative workflow. FAC ¶¶ 45–

46. This routing decision placed the Vendor Defendant "at the chokepoint between platform enforcement and criminal investigation." FAC ¶ 46.

State ICAC task forces investigate what Meta reports. They cannot investigate what Meta withholds. FAC ¶¶ 78–80. The Vendor Defendant's routing decision is the operational gateway. Cases routed to the NCMEC workflow triggered state law enforcement review. Cases routed to the alternative workflow did not. FAC ¶ 85. That is not compliance with a reporting obligation. It is the exercise of discretion over which cases enter the state criminal pipeline.

*Lugar* holds that private conduct is fairly attributable to the state when the deprivation results from the exercise of a right or privilege created by the state and the party charged with the deprivation may fairly be said to be a state actor. 457 U.S. at 937. *Dennis v. Sparks* holds that willful participation in joint activity with state officials satisfies § 1983's color-of-law requirement. 449 U.S. 24, 27–28 (1980). The FAC alleges Defendants' routing decision and Meta's reporting determination jointly selected which cases entered the prosecutorial pipeline. FAC ¶¶ 87–89. That is willful participation in joint activity with state agencies—the agencies that depend on those routing decisions for case origination.

### C.   The Compliance Cases Are Distinguishable

Accenture cites three cases for the proposition that compliance with reporting requirements does not create state action. Dkt. 29 at 22–23. Each is distinguishable on the same ground.

*Lindbloom v. Manatee Mem'l Found., Inc.*, 2023 WL 11891890, at *3 (M.D. Fla. Apr. 13, 2023): A hospital acted in accordance with its statutory duty. The hospital reported. It did not decide whether to report.

*United States v. Williamson*, 2023 WL 4056324, at *14 (M.D. Fla. Feb. 10, 2023): Yahoo developed protocols to facilitate interactions with the government in relation to its reporting duty. Yahoo reported. It did not screen cases for prosecution.

*United States v. Robinson*, 2025 WL 3039333, at *3 (M.D. Fla. Oct. 31, 2025): A private actor complied with a mandatory reporting statute. The actor reported. It did not exercise discretion over which cases reached law enforcement.

In each case, the private actor reported suspected violations. The FAC does not allege that Accenture reported. It alleges Accenture decided whether to route Plaintiff's case toward law enforcement—and decided not to, while simultaneously affirming a CSE designation and permanently terminating the account. FAC ¶¶ 56, 82–85, 87. That is the distinction between compliance and screening. The compliance cases do not address it because they did not involve it.

## D.    Entwinement as a Fact-Bound Alternative

Alternatively, the FAC pleads pervasive entwinement sufficient to attribute Accenture's conduct to the state. *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298–302 (2001). *Brentwood* holds that whether private conduct is attributable to the state is a "necessarily fact-bound inquiry." Id. at 298.

The FAC alleges: Meta directly trained Accenture reviewer teams, providing instruction on Meta's policies and review procedures. FAC ¶ 109. Accenture reviewers used Meta-provided account-review tools. FAC ¶ 112. Meta conducted weekly calls, regular site visits, and monthly and quarterly business reviews with its moderation vendors. FAC ¶ 108. Meta issued standard operating procedures,

19

quality assurance protocols, and policy updates to each Vendor Defendant. FAC ¶ 108. Accenture dedicated approximately 5,800 reviewers exclusively to Meta's platform review queues. FAC ¶ 109.

These allegations describe a vendor that uses the platform operator's tools, follows the platform operator's procedures, processes the platform operator's queues, and operates under the platform operator's supervision. Whether this operational integration constitutes entwinement sufficient to attribute the vendor's conduct to the state is a fact-bound inquiry the Court cannot resolve on the pleadings. *Brentwood*, 531 U.S. at 298–302. Accenture's motion does not address entwinement. Dkt. 29 at 21–23. Whether operational integration constitutes entwinement is a fact-bound question the Court cannot resolve against Plaintiff on a Rule 12(b)(6) record. If the Court relies on extra-pleading material to do so, Rule 12(d) requires conversion. Accenture has not requested conversion.

## E.   Summary

The FAC alleges state action under two independent theories: (1) joint action through discretionary screening within the § 2258A framework, and (2) pervasive entwinement through operational integration into Meta's enforcement pipeline. Accenture's motion addresses only the general proposition that reporting compliance is insufficient. It does not address the screening theory. It does not address entwinement. Plaintiff need survive on only one theory. The motion should be denied as to § 1983.

## VII. THE OPERATIONAL ENFORCEMENT PIPELINE STATES A § 1985(3) CLAIM

### A.   Elements and Standard

Section 1985(3) requires: (1) a conspiracy; (2) to deprive the plaintiff of equal protection or equal privileges and immunities; (3) an overt act in furtherance of the conspiracy; and (4) resulting injury—together with class-based, invidiously discriminatory animus. *Griffin v. Breckenridge,* 403 U.S. 88, 101–03 (1971); *Chua v. Ekonomou,* 1 F.4th 948, 955 (11th Cir. 2021). These are Rule 8 allegations judged under *Twombly/Iqbal* plausibility. Direct proof of an agreement is not required; agreement may be inferred from circumstantial evidence. *Twombly,* 550 U.S. at 556–57.

### B.   Plus Factors Establishing Agreement

The FAC does not allege a clandestine agreement. It alleges an operational one. The following circumstantial facts, taken together, permit an inference of concerted action within the meaning of § 1985(3):

(a) Shared contracts: Each Vendor Defendant entered into a contract with Meta to staff enforcement queues. FAC ¶¶ 42, 102–106.

(b) Shared training: Meta directly trained Accenture reviewer teams on Meta's policies and review procedures. FAC ¶ 109.

(c) Common SOPs: Meta issued standard operating procedures, quality assurance protocols, and policy updates to each Vendor Defendant from California. FAC ¶ 108.

(d) Sequential workflow: Meta flags → Vendor Defendant conducts final human review → Vendor Defendant affirms or invalidates → Meta ratifies. FAC ¶¶ 42, 55–56.

**21**

(e) Race-visible review at the decision point: The reviewer had Plaintiff's profile photograph and government-issued identification visible during review. FAC ¶¶ 44–45.

(f) Differential restoration outcomes: During Q3 2022, the very quarter of Plaintiff's enforcement, 4,000 CSE designations were reversed through the pipeline Defendants jointly operated—the highest reversal rate in Meta's documented history. Yet Plaintiff, with no confirmed violation, remained permanently excluded. FAC ¶¶ 70–73. COMP-1, a white user with a confirmed CSE violation, was restored. FAC ¶¶ 73–74. Steven Ertelt, a white user flagged under the same CSE policy, was restored after submitting a demand through counsel; Plaintiff's parallel demand was denied. FAC ¶ 64.

These are not parallel acts by unrelated entities. They are coordinated steps within a shared operational structure that produced a specific discriminatory outcome. *Twombly*, 550 U.S. at 556–57.

## C.    Kelsey K. Is Distinguishable

Accenture cites *Kelsey K. v. NFL Enterprises*, 254 F. Supp. 3d 1140, 1144 (N.D. Cal. 2017), for the proposition that "for a conspiracy of the scale alleged . . . one would expect at least some evidentiary facts." Dkt. 29 at 23. *Kelsey K.* involved a mass conspiracy theory with no operational connection between the alleged conspirators and the specific plaintiff. Here, the FAC alleges concrete operational structure—a shared enforcement pipeline through which Plaintiff's specific account was processed—and a specific enforcement event on a specific date. That is not a free-floating enterprise-scale conspiracy. It is a coordinated workflow that produced a discriminatory outcome in Plaintiff's case.

22

### D.   Overt Act and Injury

The overt act is the affirmation of the CSE designation during the July 4–5, 2022 final human review. FAC ¶¶ 55–56. The resulting injuries include permanent loss of Plaintiff's advertising account, loss of pending RV service requests, loss of access to educational materials, and loss of the ability to acquire customers through the platform. FAC ¶¶ 63–65.

### E.   Animus

The class-based, invidiously discriminatory animus required by § 1985(3) is established by the four reinforcing predicates set forth in Section IV, supra, and incorporated here by reference.

## VIII.  ACCENTURE'S FACT-BOUND ASSERTIONS REQUIRE DISCOVERY, NOT DISMISSAL

The factual disputes identified in Sections I, III, V, and VI cannot be resolved on a Rule 12(b)(6) record. Whether the reviewer saw Plaintiff's identity, whether the reviewer exercised independent discretion, what content was before the reviewer, and whether Accenture's routing decision placed it at the gateway to state criminal processes are questions of fact within Accenture's exclusive possession. The Court should permit discovery to proceed.

## CONCLUSION

Accenture asks this Court to accept its version of what happened on July 4, 2022. The FAC alleges the opposite on every material point. At Rule 12(b)(6), the FAC's allegations control.

The motion depends on factual premises not found in the FAC: that reviewer visibility is uncertain, that Accenture merely recommended, that Plaintiff

23

violated an unidentified community standard, and that Accenture concluded Plaintiff's content was objectionable. None of these premises appears in the operative complaint. Each contradicts what the FAC alleges. The Court cannot resolve these disputes on the pleadings.

Accenture's motion argues against a pleading Plaintiff did not file. Deny the motion in full.

Date: March 19, 2026                                    Respectfully submitted,

Marvelle J. Ballentine
Plaintiff, *pro se*
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com

# EXHIBIT E-9

Dkt. 53: Original opposition to TaskUs MTD (stricken by Dkt. 57)

Case 6:26-cv-00376-AGM-DCI    Document 91    Filed 04/15/26    Page 266 of 481 PageID
998
Case 6:26-cv-00376-AGM-DCI    Document 59    Filed 03/27/26    Page 1 of 26 PageID 355

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MARVELLE J. "JAY" BALLENTINE,

    *Plaintiff,*

    v.                          Case No. 6:26-cv-00376-AGM-DCI

META PLATFORMS, INC.; ACCENTURE LLP;
TASKUS, INC.; and GENPACT USA, INC.,

    *Defendants.*

## PLAINTIFF'S OPPOSITION TO DEFENDANT

## TASKUS, INC.'S MOTION TO DISMISS (Dkt. 48)

**RELIEF REQUESTED**

Plaintiff respectfully requests that the Court deny Defendant TaskUs, Inc.'s Motion to Dismiss (Dkt. 48) in its entirety. The First Amended Complaint (Dkt. 19) is the operative pleading in this action. Plaintiff responds on the merits without waiving any objection to: (a) the unresolved service dispute (Dkt. 48 at 1 n.2); or (b) the procedural posture, including the unruled-upon extension motion (Dkt. 34) referred to a magistrate judge who has since recused (Dkt. 45). TaskUs's appearance and merits-based filing waive any service objection not separately preserved. Fed. R. Civ. P. 12(h)(1).

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the Court should deny TaskUs, Inc.'s motion to dismiss where:

1.     TaskUs's motion presents the same arguments, case citations, and analytical structure as co-Defendant Accenture LLP's motion at Dkt. 29, without any analysis tailored to TaskUs's own position within the enforcement pipeline;

2.     The FAC identifies a specific enforcement act on a specific date, attributes it to a single Vendor Defendant, invokes Rule 8(d)(2)–(3) for alternative identification, and explains why precise identification is within Defendants' exclusive control (FAC ¶ 47);

3.     The FAC alleges that the reviewing Vendor Defendant was authorized to validate or invalidate Meta's CSE invocation, exercised operational discretion in conducting final human review, and that the review was a but-for and proximate cause of Plaintiff's injuries under *Staub v. Proctor Hospital*, 562 U.S. 411 (2011);

4.     The FAC alleges four reinforcing predicates of discriminatory intent: identity visibility at the decision point, temporal proximity between visibility and adverse action, differential treatment of a similarly situated white comparator with a confirmed CSE violation, and documented awareness of racial bias in automated moderation systems;

5.     The FAC challenges the Vendor Defendant's enforcement conduct at the human-review stage, not Meta's editorial decision to remove content, and TaskUs cannot simultaneously disclaim independent authority for causation purposes and claim protected editorial judgment for Section 230 purposes;

6.     The FAC alleges that the Vendor Defendant executed the routing decision determining whether Plaintiff's case entered the NCMEC/CyberTipline workflow or bypassed law enforcement, placing the reviewing vendor at the operational gateway between platform enforcement and criminal investigation;

7.    The FAC alleges coordinated action within a shared operational structure—shared contracts, shared training, common standard operating procedures, a sequential workflow, race-visible review, and differential restoration outcomes—sufficient to state a claim under 42 U.S.C. § 1985(3) and *Griffin v. Breckenridge*, 403 U.S. 88 (1971); and

8.    The informational asymmetry identified throughout this opposition—where the factual predicates for TaskUs's defenses are within Defendants' exclusive possession—is curable through ordinary discovery, and dismissal with prejudice for deficiencies a pro se plaintiff cannot cure without access to the defendant's records is inconsistent with the federal policy favoring amendment.

## PRELIMINARY STATEMENT

On July 4, 2022, a Vendor Defendant reviewer conducting final human review of Plaintiff's Facebook account had Plaintiff's profile photograph and government-issued identification visible on screen. The reviewer affirmed a CSE designation. No CyberTipline report followed. The absence of a CyberTipline report undercuts any claim that Plaintiff's matter involved an apparent child-exploitation violation requiring statutory reporting under 18 U.S.C. § 2258A, and supports the inference that the CSE label was not grounded in an actual reportable determination. In Q3 2022—the same quarter as Plaintiff's enforcement—4,000 CSE designations were reversed through the enforcement pipeline Defendants jointly operated, the highest reversal rate in Meta's documented history. FAC ¶¶ 44–46, 55–56, 70–73.

TaskUs's motion responds to a different complaint—one in which reviewers might not have seen identity information, in which the CSE designation might

3

have been legitimate, and in which TaskUs's role might have been limited to a non-binding recommendation. The FAC alleges the opposite on each point.

The Court cannot resolve these factual disputes against Plaintiff on a Rule 12(b)(6) record. If the Court relies on TaskUs's extra-pleading premises rather than excluding them, Rule 12(d) requires conversion to summary judgment with notice and an opportunity for discovery. TaskUs has not requested conversion.

TaskUs's motion presents the same four-part analytical structure as co-Defendant Accenture LLP's motion at Dkt. 29: (A) but-for causation, (B) racial animus, (C) CDA § 230, (D) § 1983 and § 1985(3). It cites the same cases in the same sequence. It uses the same dictionary definition. Webster's Ninth New Collegiate Dictionary (1990). Dkt. 48 at 17; Dkt. 29 at 18. It uses the same rhetorical formulations. TaskUs and Accenture are represented by different law firms. TaskUs's motion does not identify a single argument specific to TaskUs's position in the enforcement pipeline. TaskUs states it filed the motion "so as not to waive any available defenses" because its extension motion had not been ruled upon. Dkt. 48 at 1 n.1.

The FAC alleges a race-visible enforcement sequence. TaskUs asks the Court to accept an alternative factual account—one the FAC contradicts on every material point—using arguments developed for a different defendant. Rule 12(b)(6) does not permit that. The motion should be denied.

## I.     THRESHOLD: TASKUS'S MOTION DEPENDS ON FACTUAL PREMISES NOT FOUND IN THE FAC

At Rule 12(b)(6), the Court accepts well-pled factual allegations as true, draws reasonable inferences in the plaintiff's favor, and does not resolve factual

4

disputes. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Chaparro v. Carnival Corp.,* 693 F.3d 1333, 1337 (11th Cir. 2012). The movant may not introduce factual premises from outside the complaint to defeat pleading sufficiency. *Speaker v. U.S. Dep't of HHS,* 623 F.3d 1371, 1381 (11th Cir. 2010). TaskUs's motion depends on at least four factual premises that do not appear in the FAC and, in each case, contradict what the FAC alleges.

### A.    "Reviewer Visibility Is Uncertain"

TaskUs asserts: "the Amended Complaint makes clear that Ballentine does not know whether any vendor defendant, let alone TaskUs' reviewers, even had access to his photograph." Dkt. 48 at 11. The FAC alleges: "Vendor Defendant personnel performing final-review enforcement had access to account-level identifiers, including profile photos, names, and in some cases government-issued ID images, sufficient to reveal a user's race." FAC ¶ 45. "The CSE designation was affirmed by a vendor reviewer who, during the identity verification process, had full visibility of Plaintiff's Black face through his profile photo and government-issued ID." FAC ¶ 45.

The FAC does not allege uncertainty. TaskUs derives "uncertainty" from the prayer for relief, which seeks disclosure of reviewer visibility practices. A request for injunctive transparency does not retract a factual allegation. At Rule 12, the FAC's affirmative allegation of visibility controls.

### B.    "TaskUs Could Only Issue a Recommendation"

TaskUs asserts it "lacked authority to disable his account" and that "the most it could do was issue a recommendation for action." Dkt. 48 at 9–10. The FAC alleges the reviewer was "authorized to validate or invalidate Meta's

5

invocation of its Child Sexual Exploitation (CSE) policy." FAC ¶ 55. The Vendor Defendant "exercised operational discretion in conducting final human review." FAC ¶ 112.

"Validate or invalidate" is binary decisional authority. The FAC does not use the word "recommendation." The 8,100 CSE enforcement reversals through human review in 2022 (FAC ¶ 70) prove the pipeline produced different outcomes in different cases. At Rule 12, the FAC's characterization of the reviewer's authority controls.

## C.    "Plaintiff's Content Violated an Unidentified 'Other Community Standard'"

TaskUs asserts that "the Court can infer from the Amended Complaint that Ballentine's account was terminated for non-discriminatory reasons." Dkt. 48 at 14–15. The motion invokes an unidentified community-standard violation—a formulation that has never been accompanied by identification of any content, any standard, or any factual basis. The FAC alleges: "No content has been identified. No standard has been cited. No factual basis has been provided." FAC ¶ 8.

An "obvious alternative explanation" within the meaning of *Iqbal* must be inferable from the complaint's own factual allegations. *Doe v. Samford Univ.*, 29 F.4th 675, 686 (11th Cir. 2022). An explanation that requires the Court to accept a community-standard violation that has never been identified—in any filing, in any court, across three separate actions—is not "obvious." It is an unpleaded, undefined, defendant-controlled hypothetical. The FAC alleges no violation existed. That allegation is accepted as true at this stage.

6

### D. "TaskUs 'Concluded Ballentine's Content Was Objectionable'"

TaskUs asserts it "followed Meta's content policies throughout the review process" and "ultimately concluded Ballentine's content was 'objectionable.'" Dkt. 48 at 19. This is an affirmative factual assertion about what a reviewer actually concluded during the July 4, 2022 review. The FAC does not allege this. The FAC alleges the reviewer affirmed a baseless CSE invocation after viewing Plaintiff's identity. What the reviewer actually concluded, what content was before the reviewer, and what policies the reviewer applied are within TaskUs's exclusive possession. This is not a premise the Court can accept on a Rule 12(b)(6) record.

Each of the foregoing premises is a factual assertion TaskUs asks the Court to accept on a record that consists solely of the FAC. Rule 12(b)(6) does not permit this. *Chaparro*, 693 F.3d at 1337. The Court cannot resolve these disputes against Plaintiff on a Rule 12(b)(6) record. If the Court relies on any of these extra-pleading premises rather than excluding them, Rule 12(d) requires conversion to summary judgment with notice and an opportunity for discovery. TaskUs has not requested conversion.

### II. THE FAC IS NOT A SHOTGUN PLEADING—RULE 8(d) PERMITS ALTERNATIVE IDENTIFICATION

#### A. TaskUs's Argument

TaskUs asserts the FAC "improperly assert[s] multiple claims against multiple [vendor] defendants without specifying which of the [vendor] defendants are responsible for which acts or omissions," citing *Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021), and *Lyles v. Sch. Dist. of Osceola Cnty.*, 2023 WL

7

8437717, at *1 (M.D. Fla. Feb. 2, 2023). TaskUs also highlights a purported inconsistency between FAC ¶ 171 (alleging all Vendor Defendants "joined and acted in furtherance" of a conspiracy) and FAC ¶ 175 (alleging "a single Vendor Defendant" reviewed Plaintiff's account). Dkt. 48 at 7–8.

## B.    The FAC Does Two Distinct Things, and TaskUs Conflates Them

FAC ¶ 175 attributes the specific July 4, 2022 enforcement act—the race-visible final review and affirmation of the CSE designation—to a single Vendor Defendant. FAC ¶ 171 separately alleges that all Vendor Defendants joined the broader conspiracy through the operational enforcement pipeline they collectively staffed. These are not inconsistent allegations. Paragraph 175 pleads execution of a specific act. Paragraph 171 pleads agreement within a shared operational structure. TaskUs conflates them. They are structurally distinct.

## C.    Barmapov Is Distinguishable

*Barmapov* involved undifferentiated group pleading—identical acts attributed to all defendants without distinction. The FAC does the opposite. It identifies the act (July 4, 2022 final review), attributes it to one actor (a single Vendor Defendant), and explains why precise identification is not possible pre-discovery: "The identity of the specific Vendor Defendant who conducted Plaintiff's July 4–5, 2022 final review is within Defendants' exclusive possession." FAC ¶ 47. The FAC then specifies the categories of records that will resolve identification: "review-session telemetry, queue-assignment records, and tool-access logs." Id.

8

The Eleventh Circuit's shotgun-pleading doctrine identifies four categories. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). The FAC falls into none of them. It does not re-adopt every preceding paragraph indiscriminately into each count. It does not assert multiple claims against multiple defendants without differentiating which defendant is responsible for which act. The FAC identifies the act, attributes it to one actor, invokes Rule 8(d)(2)–(3) for alternative identification, and explains why the information necessary for precise identification is within defendants' exclusive control. That is textbook alternative pleading.

### D.    TaskUs's Footnote 6 Misapprehends the Record

TaskUs argues at footnote 6 that Plaintiff's opposition to Accenture's motion "seemingly affirmatively believes that it was 'an Accenture reviewer' who conducted the human review," and that this "conflicting narrative further warrants dismissal." Dkt. 48 at 8 n.6.

An opposition brief is not a pleading. Characterizations in an advocacy document do not amend the operative complaint. The FAC controls at Rule 12. The FAC pleads in the alternative under Rule 8(d)(2)–(3).

If the Court credits footnote 6's premise—that Plaintiff believes the reviewer was employed by Accenture—the consequence is dismissal without prejudice as to TaskUs, not dismissal with prejudice. TaskUs seeks the latter. The appropriate resolution is discovery: the queue-assignment records will identify the reviewer. Dismissal with prejudice for an identification deficiency that ordinary discovery will cure is inconsistent with Rule 8's notice-pleading standard.

### E.    The Consequence

If the Court concludes it cannot evaluate the claims without knowing which Vendor Defendant reviewed Plaintiff's account, the remedy is discovery—not dismissal. The queue-assignment records, tool-access logs, and review-session telemetry that would resolve identification are in Defendants' possession. Dismissal with prejudice for a pleading deficiency that the plaintiff cannot cure without information the defendant controls is inconsistent with Rule 8's notice-pleading standard.

## III.    THE    VENDOR    DEFENDANT'S    DISCRETIONARY AFFIRMATION IS A BUT-FOR CAUSE OF PLAINTIFF'S INJURIES

TaskUs argues it cannot be the but-for cause of Plaintiff's injuries because it "lacked authority to disable his account" and could only "issue a recommendation." Dkt. 48 at 9–10. *Staub v. Proctor Hospital* forecloses this argument. In *Staub*, the Supreme Court held that "if a supervisor performs an act motivated by [discriminatory] animus that is intended by the supervisor to cause an adverse . . . action, and if that act is a proximate cause of the ultimate . . . action, then the employer is liable." 562 U.S. 411, 422 (2011). The subordinate's recommendation need not be the final decision. It need only be a proximate cause of the adverse action. Id. at 420–22.

The FAC alleges a vendor reviewer conducted final human review, exercised operational discretion, and affirmed a CSE designation that Meta then ratified. FAC ¶¶ 55, 112, 142. That is the configuration addressed in *Staub*: a biased subordinate determination adopted by a decision-maker with independent

10

authority. TaskUs's motion does not cite *Staub*. It does not distinguish *Staub*. It does not acknowledge *Staub*.

TaskUs's own background section confirms the causal chain the FAC alleges. The motion states: "On Meta's request, a human moderator at either Accenture, TaskUs, or Genpact reviewed Ballentine's account. After the review, Meta terminated Ballentine's account." Dkt. 48 at 5. Meta flagged. A vendor reviewed. Meta terminated after the review. On TaskUs's own telling, the vendor review is a causal step between the initial flag and the termination. If the review had no causal significance, TaskUs would not have recited it in its own factual narrative.

The 8,100 CSE enforcement reversals through human review in 2022 (FAC ¶ 70) demonstrate the pipeline produced different outcomes depending on reviewer judgment. If the reviewer always affirmed, no reversal would ever occur. The pipeline's reversal rate proves reviewer discretion existed and was outcome-determinative.

TaskUs asserts the FAC's characterization of the reviewer's authority as "validate or invalidate" is contradicted by the FAC's own allegations that Meta retained override authority. Dkt. 48 at 9. Those are competing factual narratives. The FAC alleges the reviewer exercised discretionary authority within the pipeline. TaskUs asserts the reviewer's role was ministerial. The Court cannot resolve this dispute on the pleadings. If the Court relies on TaskUs's extra-pleading characterization rather than excluding it, Rule 12(d) requires conversion. TaskUs has not requested conversion.

11

## IV. IDENTITY VISIBILITY, TEMPORAL PROXIMITY, COMPARATOR TREATMENT, AND KNOWN BIAS ESTABLISH DISCRIMINATORY INTENT

TaskUs argues the FAC does not plausibly allege discriminatory intent. Dkt. 48 at 10–15. The FAC alleges four reinforcing predicates. Taken together, they cross the plausibility threshold under *Iqbal*, 556 U.S. at 678.

### A. Identity Visibility at the Decision Point

The FAC alleges the reviewer had Plaintiff's profile photograph and government-issued identification visible during the final review. FAC ¶ 45. The enforcement outcome was affirmed within hours of that visibility. FAC ¶ 56. Visibility of race at the moment of an adverse decision is a recognized predicate for discriminatory-intent analysis. TaskUs does not dispute visibility; it disputes whether its reviewer was assigned to the case. That is a factual question the Court cannot resolve on these pleadings.

### B. Temporal Proximity

The FAC alleges permanent account termination occurred within hours of Plaintiff's submission of identity verification. FAC ¶ 56. The temporal proximity between visibility of Plaintiff's race and the adverse action supports an inference of discriminatory motive at the pleading stage.

### C. Comparator Treatment

TaskUs argues Plaintiff's comparators are not similarly situated. Dkt. 48 at 12–13. The FAC alleges Steven Ertelt, a white user, was flagged under the same CSE policy as Plaintiff. FAC ¶ 64. Ertelt submitted a reinstatement demand through counsel and was restored to full platform access. Id. Plaintiff, a Black user

12

flagged under the same CSE policy, submitted a formal reinstatement demand on April 22, 2025. Meta constructively denied it. Id. Ertelt and Plaintiff were flagged under the identical policy, processed through the same enforcement apparatus, and submitted parallel demands. The only variable the FAC identifies between their outcomes is race. That comparison supports an inference of discriminatory intent at the pleading stage.

COMP-1 reinforces the inference. COMP-1, a white user whose content Meta confirmed violated its CSE policy, received only a temporary suspension and was restored. FAC ¶¶ 71–74. That a user with a confirmed CSE violation was restored while Plaintiff—with no confirmed violation—was permanently excluded further demonstrates the discretionary and differential character of the enforcement pipeline. Whether the comparisons hold under full factual development is a question for summary judgment, not a motion to dismiss. *Horton v. Beacon Woods East*, 2025 WL 3089014, at *6 (M.D. Fla. Nov. 5, 2025).

## D.   Known Bias in Automated Systems

The FAC alleges the Vendor Defendants were aware that "automated models can be 'wrong' more often for some groups." FAC ¶ 46. Awareness of a known risk of racial bias in the systems feeding the human-review queue is relevant to the plausibility of discriminatory intent, particularly when combined with the other three predicates.

## E.   TaskUs's "Obvious Alternative Explanation" Fails

TaskUs invokes *Doe v. Samford University*, 29 F.4th 675, 686 (11th Cir. 2022), for the proposition that the Court may infer "obvious alternative explanations" from the complaint. Dkt. 48 at 14. An obvious alternative

13

explanation must be apparent from the factual allegations in the complaint. *Samford*, 29 F.4th at 686. TaskUs's "alternative" is that Plaintiff violated some unidentified community standard unrelated to CSE. Dkt. 48 at 14–15. That is not an obvious alternative explanation. It is an unpleaded, undefined, defendant-controlled hypothetical. No defendant has ever identified the content. No defendant has ever identified the standard. No defendant has ever identified the factual basis. Across three separate actions, two courts, and multiple filings, no defendant has ever stated what Plaintiff did wrong. An "obvious" alternative explanation that the party best positioned to supply it has failed to articulate is not obvious. It is speculation.

### F.    Rule 8 Does Not Require Plaintiff to Plead the Defendant's Evidence

TaskUs's repeated insistence that Plaintiff has not described "the content he allegedly posted" (Dkt. 48 at 5, 13–14) misidentifies the pleading obligation. Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Nothing in Rule 8 requires a plaintiff to plead the defendant's evidence. The FAC alleges no violation existed (FAC ¶ 8), no report was filed (FAC ¶ 56), and no law enforcement contact has occurred in over three years (FAC ¶ 8). If those allegations are true—and they must be accepted as true— the content of Plaintiff's posts is irrelevant to plausibility. The content becomes relevant at summary judgment or trial. At Rule 12, the FAC's allegation of non-violation controls.

### G.    TaskUs's Litigation-History Characterization

TaskUs characterizes Plaintiff's litigation history as evidence undermining his claims. Dkt. 48 at 3–4, 15 n.5, n.8. The actual count of distinct civil actions is three. The Federal Rules contemplate and encourage amendment. Fed. R. Civ. P. 15(a). Counting an amended pleading as a separate complaint is a rhetorical device, not a legal argument. The Court should disregard it.

## V. SECTION 230 DOES NOT IMMUNIZE RACE-VISIBLE ENFORCEMENT CONDUCT

### A. The Claims Do Not Treat TaskUs as a Publisher

Section 230(c)(1) provides: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The operative question is whether the FAC seeks to hold TaskUs liable in its capacity as a publisher of Plaintiff's content. It does not.

The FAC challenges the Vendor Defendant's own enforcement conduct at the human-review stage: race-visible decision-making, discretionary affirmation of a baseless CSE invocation, and routing through a non-report workflow. FAC ¶¶ 44–46, 55–56, 112, 142. These are allegations about the process by which an enforcement decision was made—not about the decision to publish or remove third-party content. Section 230 immunizes the what—the editorial decision to remove content. It does not immunize the how—the discriminatory process by which the decision was reached.

Every case TaskUs cites involves a plaintiff who sought to hold the defendant liable for removing content from a platform. See *Mezey v. Twitter, Inc.*, 2018 WL 5306769 (S.D. Fla. July 19, 2018) (challenge to account suspension);

*Elansari v. Meta, Inc.*, 2024 WL 163080 (3d Cir. Jan. 16, 2024) (same); *King v. Facebook, Inc.*, 572 F. Supp. 3d 776 (N.D. Cal. 2021) (same). The FAC does not challenge the removal of content. It challenges the motive and process behind an enforcement determination made by a vendor reviewer who was looking at Plaintiff's Black face at the moment of decision. No Eleventh Circuit case has held that Section 230 bars a federal civil rights claim premised on the decision-making process rather than the editorial outcome.

## B. TaskUs's Causation and Section 230 Arguments Are Irreconcilable

TaskUs argues for causation purposes that it had no independent authority—it followed Meta's policies, used Meta's tools, and issued non-binding recommendations. Dkt. 48 at 9. TaskUs then argues for Section 230 purposes that it exercised protected editorial judgment as a "user" of an interactive computer service. Dkt. 48 at 16–17.

These positions are irreconcilable. Section 230 protects "the publisher's traditional editorial functions." *Roca Labs, Inc. v. Consumer Op. Corp.*, 140 F. Supp. 3d 1311, 1319 (M.D. Fla. 2015). A vendor executing another entity's content policies on that entity's platform using that entity's tools is not exercising traditional editorial functions—it is performing contracted services. TaskUs cannot disclaim editorial authority to defeat causation and then claim editorial authority to invoke Section 230. Those are competing characterizations of the same conduct. TaskUs must choose one.

## C. TaskUs's Catch-22 Footnote Fails

16

TaskUs argues the FAC is self-contradicting: "either TaskUs' alleged review did not cause Ballentine's injuries, or TaskUs assisted with a protected editorial decision." Dkt. 48 at 18 n.10. The dichotomy is false. The FAC alleges TaskUs caused injury through a discriminatory enforcement decision. Civil rights liability attaches to the discriminatory motive, not the publication outcome. A vendor may participate in a content-moderation workflow and simultaneously violate federal civil rights law through racially motivated decision-making within that workflow. If TaskUs's reading were correct, any vendor could engage in racial discrimination with impunity so long as the discrimination occurred during content review. Congress did not enact Section 230 for that purpose.

### D.   Section 230(c)(2) Good Faith Cannot Be Resolved on These Pleadings

Even if the Court concludes Section 230(c)(1) is potentially applicable, the claims survive under Section 230(c)(2)'s good-faith requirement. 47 U.S.C. § 230(c)(2)(A). The FAC's allegations undermine any presumption of good faith at this stage.

First, the FAC alleges no CyberTipline report was filed following the CSE designation. FAC ¶ 56. A CSE designation that does not produce a statutory report plausibly suggests the designation was not grounded in an actual reportable determination. That undercuts good faith. Second, the FAC alleges the enforcement outcome was affirmed within hours of the reviewer viewing Plaintiff's identity. FAC ¶ 56. Temporal proximity between identity visibility and adverse action, combined with the absence of a report, plausibly negates good faith at the pleading stage. Third, the FAC alleges 4,000 CSE reversals in Q3 2022,

17

the highest in Meta's documented history. FAC ¶¶ 70–73. Yet Plaintiff, with no confirmed violation, remained permanently excluded. Whether the reviewing Vendor Defendant acted in good faith under those circumstances is a factual question.

See *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1052–53 (9th Cir. 2019) (reversing dismissal where allegations of pretext defeated (c)(2) immunity at Rule 12). The Court cannot resolve the good-faith question against Plaintiff on a Rule 12(b)(6) record. If the Court relies on TaskUs's extra-pleading assertion of good faith rather than excluding it, Rule 12(d) requires conversion. TaskUs has not requested conversion.

## VI. THE ROUTING FUNCTION IS PROSECUTORIAL SCREENING, NOT REPORTING COMPLIANCE

### A. The Eleventh Circuit's State-Action Framework

Section 1983 requires that the alleged deprivation be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). The Eleventh Circuit recognizes four alternative tests: (1) public function; (2) state compulsion; (3) nexus/joint action; and (4) pervasive entwinement. *Focus on the Family, Inc. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003). The FAC invokes (3) and (4). Plaintiff need prevail on only one.

### B. Primary Theory: Discretionary Screening Within a Statutory Framework

The FAC does not allege mere compliance with 18 U.S.C. § 2258A. It alleges discretionary screening within a statutory regime that determines which cases enter state criminal processes.

The FAC alleges: A Vendor Defendant executed the routing decision that determined whether Plaintiff's case entered the NCMEC/CyberTipline workflow— triggering mandatory law enforcement notification under 18 U.S.C. § 2258A—or bypassed law enforcement entirely through an alternative workflow. FAC ¶¶ 45–46, 82–85, 87. State ICAC task forces investigate what Meta reports. They cannot investigate what Meta withholds. FAC ¶¶ 78–80. The Vendor Defendant's routing decision is the operational gateway. Cases routed to the NCMEC workflow triggered state law enforcement review. Cases routed to the alternative workflow did not. FAC ¶ 85. That is not compliance with a reporting obligation. It is the exercise of discretion over which cases enter the state criminal pipeline.

*Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980), holds that willful participation in joint activity with state officials satisfies § 1983's color-of-law requirement. The FAC alleges the Vendor Defendant's routing decision and Meta's reporting determination jointly selected which cases entered the prosecutorial pipeline. FAC ¶¶ 87–89. That is willful participation in joint activity with the state agencies that depend on those routing decisions for case origination.

## C.   The Compliance Cases Are Distinguishable

TaskUs cites three cases for the proposition that compliance with reporting requirements does not create state action. Dkt. 48 at 21. Each is distinguishable on the same ground.

*Lindbloom v. Manatee Mem'l Found., Inc.*, 2023 WL 11891890, at *3 (M.D. Fla. Apr. 13, 2023): A hospital acted in accordance with its statutory duty. The hospital reported. It did not decide whether to report.

19

*United States v. Williamson*, 2023 WL 4056324, at *14 (M.D. Fla. Feb. 10, 2023): Yahoo developed protocols to facilitate interactions with the government in relation to its reporting duty. Yahoo reported. It did not screen cases for prosecution.

*United States v. Robinson*, 2025 WL 3039333, at *3 (M.D. Fla. Oct. 31, 2025): A private actor complied with a mandatory reporting statute. The actor reported. It did not exercise discretion over which cases reached law enforcement.

In each case, the private actor reported suspected violations. The FAC does not allege that the Vendor Defendant reported. It alleges the Vendor Defendant decided whether to route Plaintiff's case toward law enforcement—and decided not to, while simultaneously affirming a CSE designation and permanently terminating the account. FAC ¶¶ 56, 82–85, 87. That is the distinction between compliance and screening. The compliance cases do not address it because they did not involve it.

### D.    Entwinement as a Fact-Bound Alternative

Alternatively, the FAC pleads pervasive entwinement sufficient to attribute the Vendor Defendant's conduct to the state. *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298–302 (2001). *Brentwood* holds that whether private conduct is attributable to the state is a "necessarily fact-bound inquiry." Id. at 298.

The FAC alleges: Meta directly trained Vendor Defendant reviewer teams, providing instruction on Meta's policies and review procedures. FAC ¶ 109. Vendor Defendant reviewers used Meta-provided account-review tools. FAC ¶ 112. Meta conducted weekly calls, regular site visits, and monthly and quarterly

**20**

business reviews with its moderation vendors. FAC ¶ 108. Meta issued standard operating procedures, quality assurance protocols, and policy updates to each Vendor Defendant. FAC ¶ 108.

These allegations describe a vendor that uses the platform operator's tools, follows the platform operator's procedures, processes the platform operator's queues, and operates under the platform operator's supervision. Whether this operational integration constitutes entwinement sufficient to attribute the vendor's conduct to the state is a fact-bound inquiry the Court cannot resolve on the pleadings. *Brentwood,* 531 U.S. at 298–302. TaskUs's motion does not address entwinement. If the Court relies on extra-pleading material to resolve this question, Rule 12(d) requires conversion. TaskUs has not requested conversion.

### E.    Summary

The FAC alleges state action under two independent theories: (1) joint action through discretionary screening within the § 2258A framework, and (2) pervasive entwinement through operational integration into Meta's enforcement pipeline. TaskUs's motion addresses only the general proposition that reporting compliance is insufficient. It does not address the screening theory. It does not address entwinement. Plaintiff need survive on only one theory. The motion should be denied as to § 1983.

## VII. THE OPERATIONAL ENFORCEMENT PIPELINE STATES A § 1985(3) CLAIM

### A.    Elements and Standard

Section 1985(3) requires: (1) a conspiracy; (2) to deprive the plaintiff of equal protection or equal privileges and immunities; (3) an overt act in

21

furtherance of the conspiracy; and (4) resulting injury—together with class-based, invidiously discriminatory animus. *Griffin v. Breckenridge,* 403 U.S. 88, 101–03 (1971); *Chua v. Ekonomou,* 1 F.4th 948, 955 (11th Cir. 2021). These are Rule 8 allegations judged under *Twombly/Iqbal* plausibility. Direct proof of an agreement is not required; agreement may be inferred from circumstantial evidence. *Twombly,* 550 U.S. at 556–57.

### B.    Plus Factors Establishing Agreement

The FAC does not allege a clandestine agreement. It alleges an operational one. The following circumstantial facts, taken together, permit an inference of concerted action within the meaning of § 1985(3):

(a) Shared contracts: Each Vendor Defendant entered into a contract with Meta to staff enforcement queues. FAC ¶¶ 42, 102–106. (b) Shared training: Meta directly trained Vendor Defendant reviewer teams on Meta's policies and review procedures. FAC ¶ 109. (c) Common SOPs: Meta issued standard operating procedures, quality assurance protocols, and policy updates to each Vendor Defendant. FAC ¶ 108. (d) Sequential workflow: Meta flags → Vendor Defendant conducts final human review → Vendor Defendant affirms or invalidates → Meta ratifies. FAC ¶¶ 42, 55–56. (e) Race-visible review at the decision point: The reviewer had Plaintiff's profile photograph and government-issued identification visible during review. FAC ¶¶ 44–45. (f) Differential restoration outcomes: During Q3 2022, 4,000 CSE designations were reversed through the pipeline Defendants jointly operated. Yet Plaintiff, with no confirmed violation, remained permanently excluded. FAC ¶¶ 70–73. COMP-1, a white user with a confirmed CSE violation, was restored. FAC ¶¶ 73–74.

These are not parallel acts by unrelated entities. They are coordinated steps within a shared operational structure that produced a specific discriminatory outcome. *Twombly*, 550 U.S. at 556–57.

## C.   Kelsey K. Is Distinguishable

TaskUs cites *Kelsey K. v. NFL Enterprises*, 254 F. Supp. 3d 1140, 1144 (N.D. Cal. 2017), for the proposition that "for a conspiracy of the scale alleged . . . one would expect at least some evidentiary facts." Dkt. 48 at 22. *Kelsey K.* involved a mass conspiracy theory with no operational connection between the alleged conspirators and the specific plaintiff. Here, the FAC alleges concrete operational structure—a shared enforcement pipeline through which Plaintiff's specific account was processed—and a specific enforcement event on a specific date. That is not a free-floating enterprise-scale conspiracy. It is a coordinated workflow that produced a discriminatory outcome in Plaintiff's case.

## D.   Overt Act and Injury

The overt act is the affirmation of the CSE designation during the July 4–5, 2022 final human review. FAC ¶¶ 55–56. The resulting injuries include permanent loss of Plaintiff's advertising account, loss of pending RV service requests, loss of access to educational materials, and loss of the ability to acquire customers through the platform. FAC ¶¶ 63–65.

## E.   Animus

The class-based, invidiously discriminatory animus required by § 1985(3) is established by the four reinforcing predicates set forth in Section IV, supra: identity visibility at the decision point, temporal proximity between visibility and adverse action, differential treatment of similarly situated white comparators, and

23

documented awareness of racial bias in automated moderation systems. These predicates, combined with the plus factors establishing agreement, state a claim under § 1985(3).

## VIII.    DISMISSAL WITH PREJUDICE IS UNWARRANTED

The factual disputes identified in Sections I, III, V, and VI cannot be resolved on a Rule 12(b)(6) record. Whether the reviewer saw Plaintiff's identity, whether the reviewer exercised independent discretion, what content was before the reviewer, and whether the Vendor Defendant's routing decision placed it at the gateway to state criminal processes are questions of fact within Defendants' exclusive possession. The Court should permit discovery to proceed.

TaskUs seeks dismissal with prejudice. The standard under *Foman v. Davis*, 371 U.S. 178, 182 (1962), requires a showing of futility, undue delay, bad faith, or repeated failure to cure. TaskUs has identified no basis for any of these. The informational asymmetry documented throughout this opposition—where the factual predicates for TaskUs's defenses are within Defendants' exclusive possession—is curable through ordinary discovery. The queue-assignment records, tool-access logs, and review-session telemetry that would resolve the identification question and confirm or refute the factual premises underlying every argument in TaskUs's motion are in Defendants' possession. Dismissal with prejudice for deficiencies a pro se plaintiff cannot cure without access to the defendant's records is inconsistent with the federal policy favoring resolution on the merits.

## CONCLUSION

TaskUs asks this Court to accept its version of what happened on July 4, 2022. The FAC alleges the opposite on every material point. At Rule 12(b)(6), the FAC's allegations control.

The motion depends on factual premises not found in the FAC: that reviewer visibility is uncertain, that TaskUs merely recommended, that Plaintiff violated an unidentified community standard, and that TaskUs concluded Plaintiff's content was objectionable. None of these premises appears in the operative complaint. Each contradicts what the FAC alleges. The Court cannot resolve these disputes on the pleadings.

TaskUs's motion argues against a pleading Plaintiff did not file. Deny the motion in full.


Date: March 24, 2026                                    Respectfully submitted,


Marvelle J. Ballentine
Plaintiff, *pro se*
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 27, 2026, I filed the foregoing with the

Clerk of the Court, which will send a copy to all counsel of record.


Marvelle J. Ballentine
Plaintiff, *pro se*

# EXHIBIT E-10

Dkt. 63: Refiled opposition to TaskUs MTD (stricken by Dkt. 79)

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MARVELLE J. "JAY" BALLENTINE,

*Plaintiff,*

v.                                              Case No. 6:26-cv-00376-AGM-DCI

META PLATFORMS, INC.; ACCENTURE LLP;
TASKUS, INC.; and GENPACT LIMITED.,

*Defendants.*

## PLAINTIFF'S OPPOSITION TO DEFENDANT

## TASKUS, INC.'S MOTION TO DISMISS (Dkt. 48)

**PREFATORY STATEMENT**

Plaintiff refiles this Opposition pursuant to the Court's March 30, 2026

Order (Dkt. 57). This refiling is made without waiver of Plaintiff's concurrently

filed Urgent Motion for Recusal and to Identify Deficiency, Toll Cure Period, and

Clarify Service, and without waiver of Plaintiff's concurrently filed Petition for

Reassignment to the Chief District Judge. This refiling is further made without

waiver of Plaintiff's objections regarding: (1) the unspecified nature of the cited

deficiency; (2) the compression of the cure period below the twenty-one days

provided by Local Rule 3.01(d); (3) the asymmetric enforcement of Local Rules as

documented in the concurrently filed motion; (4) the continued validity of orders entered by Magistrate Judge Norway prior to his recusal; and (5) Plaintiff's protection under Fed. R. Civ. P. 83(a)(2) against loss of rights from nonwillful noncompliance with requirements of form. These objections are preserved for appeal.

**RELIEF REQUESTED**

Plaintiff respectfully requests that the Court deny Defendant TaskUs, Inc.'s Motion to Dismiss (Dkt. 48) in its entirety. The First Amended Complaint (Dkt. 19) is the operative pleading in this action. Plaintiff responds on the merits without waiving any objection to: (a) the unresolved service dispute (Dkt. 48 at 1 n.2); or (b) the procedural posture, including the unruled-upon extension motion (Dkt. 34) referred to a magistrate judge who has since recused (Dkt. 45). TaskUs's appearance and merits-based filing waive any service objection not separately preserved. Fed. R. Civ. P. 12(h)(1).

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the Court should deny TaskUs, Inc.'s motion to dismiss where:

1. TaskUs's motion presents the same arguments, case citations, and analytical structure as co-Defendant Accenture LLP's motion at Dkt. 29, without any analysis tailored to TaskUs's own position within the enforcement pipeline;

2. The FAC identifies a specific enforcement act on a specific date, attributes it to a single Vendor Defendant, invokes Rule 8(d)(2)–(3) for alternative identification, and explains why precise identification is within Defendants' exclusive control (FAC ¶ 47);

3. The FAC alleges that the reviewing Vendor Defendant was authorized to validate or invalidate Meta's CSE invocation, exercised operational discretion in conducting final human review, and that the review was a but-for and proximate cause of Plaintiff's injuries under *Staub v. Proctor Hospital*, 562 U.S. 411 (2011);

4. The FAC alleges four reinforcing predicates of discriminatory intent: identity visibility at the decision point, temporal proximity between visibility and adverse action, differential treatment of a similarly situated white comparator with a confirmed CSE violation, and documented awareness of racial bias in automated moderation systems;

5. The FAC challenges the Vendor Defendant's enforcement conduct at the human-review stage, not Meta's editorial decision to remove content, and TaskUs cannot simultaneously disclaim independent authority for causation purposes and claim protected editorial judgment for Section 230 purposes;

6. The FAC alleges that the Vendor Defendant executed the routing decision determining whether Plaintiff's case entered the NCMEC/CyberTipline workflow or bypassed law enforcement, placing the reviewing vendor at the operational gateway between platform enforcement and criminal investigation;

7. The FAC alleges coordinated action within a shared operational structure—shared contracts, shared training, common standard operating procedures, a sequential workflow, race-visible review, and differential restoration outcomes—sufficient to state a claim under 42 U.S.C. § 1985(3) and *Griffin v. Breckenridge*, 403 U.S. 88 (1971); and

8. The informational asymmetry identified throughout this opposition— where the factual predicates for TaskUs's defenses are within Defendants'

3

exclusive possession—is curable through ordinary discovery, and dismissal with prejudice for deficiencies a pro se plaintiff cannot cure without access to the defendant's records is inconsistent with the federal policy favoring amendment.

## PRELIMINARY STATEMENT

On July 4, 2022, a Vendor Defendant reviewer conducting final human review of Plaintiff's Facebook account had Plaintiff's profile photograph and government-issued identification visible on screen. The reviewer affirmed a CSE designation. No CyberTipline report followed. The absence of a CyberTipline report undercuts any claim that Plaintiff's matter involved an apparent child-exploitation violation requiring statutory reporting under 18 U.S.C. § 2258A, and supports the inference that the CSE label was not grounded in an actual reportable determination. In Q3 2022—the same quarter as Plaintiff's enforcement—4,000 CSE designations were reversed through the enforcement pipeline Defendants jointly operated, the highest reversal rate in Meta's documented history. FAC ¶¶ 44–46, 55–56, 70–73.

TaskUs's motion responds to a different complaint—one in which reviewers might not have seen identity information, in which the CSE designation might have been legitimate, and in which TaskUs's role might have been limited to a non-binding recommendation. The FAC alleges the opposite on each point.

The Court cannot resolve these factual disputes against Plaintiff on a Rule 12(b)(6) record. If the Court relies on TaskUs's extra-pleading premises rather than excluding them, Rule 12(d) requires conversion to summary judgment with notice and an opportunity for discovery. TaskUs has not requested conversion.

TaskUs's motion presents the same four-part analytical structure as co-Defendant Accenture LLP's motion at Dkt. 29: (A) but-for causation, (B) racial

animus, (C) CDA § 230, (D) § 1983 and § 1985(3). It cites the same cases in the same sequence. It uses the same dictionary definition. Webster's Ninth New Collegiate Dictionary (1990). Dkt. 48 at 17; Dkt. 29 at 18. It uses the same rhetorical formulations. TaskUs and Accenture are represented by different law firms. TaskUs's motion does not identify a single argument specific to TaskUs's position in the enforcement pipeline. TaskUs states it filed the motion "so as not to waive any available defenses" because its extension motion had not been ruled upon. Dkt. 48 at 1 n.1.

The FAC alleges a race-visible enforcement sequence. TaskUs asks the Court to accept an alternative factual account—one the FAC contradicts on every material point—using arguments developed for a different defendant. Rule 12(b)(6) does not permit that. The motion should be denied.

## I.   THRESHOLD: TASKUS'S MOTION DEPENDS ON FACTUAL PREMISES NOT FOUND IN THE FAC

At Rule 12(b)(6), the Court accepts well-pled factual allegations as true, draws reasonable inferences in the plaintiff's favor, and does not resolve factual disputes. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). The movant may not introduce factual premises from outside the complaint to defeat pleading sufficiency. *Speaker v. U.S. Dep't of HHS*, 623 F.3d 1371, 1381 (11th Cir. 2010). TaskUs's motion depends on at least four factual premises that do not appear in the FAC and, in each case, contradict what the FAC alleges.

### A.   "Reviewer Visibility Is Uncertain"

TaskUs asserts: "the Amended Complaint makes clear that Ballentine does not know whether any vendor defendant, let alone TaskUs' reviewers, even had access to his photograph." Dkt. 48 at 11. The FAC alleges: "Vendor Defendant personnel performing final-review enforcement had access to account-level identifiers, including profile photos, names, and in some cases government-issued ID images, sufficient to reveal a user's race." FAC ¶ 45. "The CSE designation was affirmed by a vendor reviewer who, during the identity verification process, had full visibility of Plaintiff's Black face through his profile photo and government-issued ID." FAC ¶ 45.

The FAC does not allege uncertainty. TaskUs derives "uncertainty" from the prayer for relief, which seeks disclosure of reviewer visibility practices. A request for injunctive transparency does not retract a factual allegation. At Rule 12, the FAC's affirmative allegation of visibility controls.

## B.    "TaskUs Could Only Issue a Recommendation"

TaskUs asserts it "lacked authority to disable his account" and that "the most it could do was issue a recommendation for action." Dkt. 48 at 9–10. The FAC alleges the reviewer was "authorized to validate or invalidate Meta's invocation of its Child Sexual Exploitation (CSE) policy." FAC ¶ 55. The Vendor Defendant "exercised operational discretion in conducting final human review." FAC ¶ 112.

"Validate or invalidate" is binary decisional authority. The FAC does not use the word "recommendation." The 8,100 CSE enforcement reversals through human review in 2022 (FAC ¶ 70) prove the pipeline produced different outcomes

6

in different cases. At Rule 12, the FAC's characterization of the reviewer's authority controls.

### C. "Plaintiff's Content Violated an Unidentified 'Other Community Standard'"

TaskUs asserts that "the Court can infer from the Amended Complaint that Ballentine's account was terminated for non-discriminatory reasons." Dkt. 48 at 14–15. The motion invokes an unidentified community-standard violation—a formulation that has never been accompanied by identification of any content, any standard, or any factual basis. The FAC alleges: "No content has been identified. No standard has been cited. No factual basis has been provided." FAC ¶ 8.

An "obvious alternative explanation" within the meaning of *Iqbal* must be inferable from the complaint's own factual allegations. *Doe v. Samford Univ.*, 29 F.4th 675, 686 (11th Cir. 2022). An explanation that requires the Court to accept a community-standard violation that has never been identified—in any filing, in any court, across three separate actions—is not "obvious." It is an unpleaded, undefined, defendant-controlled hypothetical. The FAC alleges no violation existed. That allegation is accepted as true at this stage.

### D. "TaskUs 'Concluded Ballentine's Content Was Objectionable'"

TaskUs asserts it "followed Meta's content policies throughout the review process" and "ultimately concluded Ballentine's content was 'objectionable.'" Dkt. 48 at 19. This is an affirmative factual assertion about what a reviewer actually concluded during the July 4, 2022 review. The FAC does not allege this. The FAC alleges the reviewer affirmed a baseless CSE invocation after viewing Plaintiff's

7

identity. What the reviewer actually concluded, what content was before the reviewer, and what policies the reviewer applied are within TaskUs's exclusive possession. This is not a premise the Court can accept on a Rule 12(b)(6) record.

Each of the foregoing premises is a factual assertion TaskUs asks the Court to accept on a record that consists solely of the FAC. Rule 12(b)(6) does not permit this. *Chaparro*, 693 F.3d at 1337. The Court cannot resolve these disputes against Plaintiff on a Rule 12(b)(6) record. If the Court relies on any of these extra-pleading premises rather than excluding them, Rule 12(d) requires conversion to summary judgment with notice and an opportunity for discovery. TaskUs has not requested conversion.

## II. THE FAC IS NOT A SHOTGUN PLEADING—RULE 8(d) PERMITS ALTERNATIVE IDENTIFICATION

### A. TaskUs's Argument

TaskUs asserts the FAC "improperly assert[s] multiple claims against multiple [vendor] defendants without specifying which of the [vendor] defendants are responsible for which acts or omissions," citing *Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021), and *Lyles v. Sch. Dist. of Osceola Cnty.*, 2023 WL 8437717, at *1 (M.D. Fla. Feb. 2, 2023). TaskUs also highlights a purported inconsistency between FAC ¶ 171 (alleging all Vendor Defendants "joined and acted in furtherance" of a conspiracy) and FAC ¶ 175 (alleging "a single Vendor Defendant" reviewed Plaintiff's account). Dkt. 48 at 7–8.

### B. The FAC Does Two Distinct Things, and TaskUs Conflates Them

FAC ¶ 175 attributes the specific July 4, 2022 enforcement act—the race-visible final review and affirmation of the CSE designation—to a single Vendor Defendant. FAC ¶ 171 separately alleges that all Vendor Defendants joined the broader conspiracy through the operational enforcement pipeline they collectively staffed. These are not inconsistent allegations. Paragraph 175 pleads execution of a specific act. Paragraph 171 pleads agreement within a shared operational structure. TaskUs conflates them. They are structurally distinct.

### C.    Barmapov Is Distinguishable

*Barmapov* involved undifferentiated group pleading—identical acts attributed to all defendants without distinction. The FAC does the opposite. It identifies the act (July 4, 2022 final review), attributes it to one actor (a single Vendor Defendant), and explains why precise identification is not possible pre-discovery: "The identity of the specific Vendor Defendant who conducted Plaintiff's July 4–5, 2022 final review is within Defendants' exclusive possession." FAC ¶ 47. The FAC then specifies the categories of records that will resolve identification: "review-session telemetry, queue-assignment records, and tool-access logs." Id.

The Eleventh Circuit's shotgun-pleading doctrine identifies four categories. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). The FAC falls into none of them. It does not re-adopt every preceding paragraph indiscriminately into each count. It does not assert multiple claims against multiple defendants without differentiating which defendant is responsible for which act. The FAC identifies the act, attributes it to one actor, invokes Rule 8(d)(2)–(3) for alternative identification, and explains why the

information necessary for precise identification is within defendants' exclusive control. That is textbook alternative pleading.

### D.    TaskUs's Footnote 6 Misapprehends the Record

TaskUs argues at footnote 6 that Plaintiff's opposition to Accenture's motion "seemingly affirmatively believes that it was 'an Accenture reviewer' who conducted the human review," and that this "conflicting narrative further warrants dismissal." Dkt. 48 at 8 n.6.

An opposition brief is not a pleading. Characterizations in an advocacy document do not amend the operative complaint. The FAC controls at Rule 12. The FAC pleads in the alternative under Rule 8(d)(2)–(3).

If the Court credits footnote 6's premise—that Plaintiff believes the reviewer was employed by Accenture—the consequence is dismissal without prejudice as to TaskUs, not dismissal with prejudice. TaskUs seeks the latter. The appropriate resolution is discovery: the queue-assignment records will identify the reviewer. Dismissal with prejudice for an identification deficiency that ordinary discovery will cure is inconsistent with Rule 8's notice-pleading standard.

### E.    The Consequence

If the Court concludes it cannot evaluate the claims without knowing which Vendor Defendant reviewed Plaintiff's account, the remedy is discovery—not dismissal. The queue-assignment records, tool-access logs, and review-session telemetry that would resolve identification are in Defendants' possession. Dismissal with prejudice for a pleading deficiency that the plaintiff cannot cure without information the defendant controls is inconsistent with Rule 8's notice-pleading standard.

## III.   THE   VENDOR   DEFENDANT'S   DISCRETIONARY AFFIRMATION   IS   A   BUT-FOR   CAUSE   OF   PLAINTIFF'S INJURIES

TaskUs argues it cannot be the but-for cause of Plaintiff's injuries because it "lacked authority to disable his account" and could only "issue a recommendation." Dkt. 48 at 9–10. *Staub v. Proctor Hospital* forecloses this argument. In *Staub*, the Supreme Court held that "if a supervisor performs an act motivated by [discriminatory] animus that is intended by the supervisor to cause an adverse . . . action, and if that act is a proximate cause of the ultimate . . . action, then the employer is liable." 562 U.S. 411, 422 (2011). The subordinate's recommendation need not be the final decision. It need only be a proximate cause of the adverse action. Id. at 420–22.

The FAC alleges a vendor reviewer conducted final human review, exercised operational discretion, and affirmed a CSE designation that Meta then ratified. FAC ¶¶ 55, 112, 142. That is the configuration addressed in *Staub*: a biased subordinate determination adopted by a decision-maker with independent authority. TaskUs's motion does not cite *Staub*. It does not distinguish *Staub*. It does not acknowledge *Staub*.

TaskUs's own background section confirms the causal chain the FAC alleges. The motion states: "On Meta's request, a human moderator at either Accenture, TaskUs, or Genpact reviewed Ballentine's account. After the review, Meta terminated Ballentine's account." Dkt. 48 at 5. Meta flagged. A vendor reviewed. Meta terminated after the review. On TaskUs's own telling, the vendor review is a causal step between the initial flag and the termination. If the review

11

had no causal significance, TaskUs would not have recited it in its own factual narrative.

The 8,100 CSE enforcement reversals through human review in 2022 (FAC ¶ 70) demonstrate the pipeline produced different outcomes depending on reviewer judgment. If the reviewer always affirmed, no reversal would ever occur. The pipeline's reversal rate proves reviewer discretion existed and was outcome-determinative.

TaskUs asserts the FAC's characterization of the reviewer's authority as "validate or invalidate" is contradicted by the FAC's own allegations that Meta retained override authority. Dkt. 48 at 9. Those are competing factual narratives. The FAC alleges the reviewer exercised discretionary authority within the pipeline. TaskUs asserts the reviewer's role was ministerial. The Court cannot resolve this dispute on the pleadings. If the Court relies on TaskUs's extra-pleading characterization rather than excluding it, Rule 12(d) requires conversion. TaskUs has not requested conversion.

## IV. IDENTITY VISIBILITY, TEMPORAL PROXIMITY, COMPARATOR TREATMENT, AND KNOWN BIAS ESTABLISH DISCRIMINATORY INTENT

TaskUs argues the FAC does not plausibly allege discriminatory intent. Dkt. 48 at 10–15. The FAC alleges four reinforcing predicates. Taken together, they cross the plausibility threshold under *Iqbal*, 556 U.S. at 678.

### A.    Identity Visibility at the Decision Point

The FAC alleges the reviewer had Plaintiff's profile photograph and government-issued identification visible during the final review. FAC ¶ 45. The

12

enforcement outcome was affirmed within hours of that visibility. FAC ¶ 56. Visibility of race at the moment of an adverse decision is a recognized predicate for discriminatory-intent analysis. TaskUs does not dispute visibility; it disputes whether its reviewer was assigned to the case. That is a factual question the Court cannot resolve on these pleadings.

## B.    Temporal Proximity

The FAC alleges permanent account termination occurred within hours of Plaintiff's submission of identity verification. FAC ¶ 56. The temporal proximity between visibility of Plaintiff's race and the adverse action supports an inference of discriminatory motive at the pleading stage.

## C.    Comparator Treatment

TaskUs argues Plaintiff's comparators are not similarly situated. Dkt. 48 at 12–13. The FAC alleges Steven Ertelt, a white user, was flagged under the same CSE policy as Plaintiff. FAC ¶ 64. Ertelt submitted a reinstatement demand through counsel and was restored to full platform access. Id. Plaintiff, a Black user flagged under the same CSE policy, submitted a formal reinstatement demand on April 22, 2025. Meta constructively denied it. Id. Ertelt and Plaintiff were flagged under the identical policy, processed through the same enforcement apparatus, and submitted parallel demands. The only variable the FAC identifies between their outcomes is race. That comparison supports an inference of discriminatory intent at the pleading stage.

COMP-1 reinforces the inference. COMP-1, a white user whose content Meta confirmed violated its CSE policy, received only a temporary suspension and was restored. FAC ¶¶ 71–74. That a user with a confirmed CSE violation was

13

restored while Plaintiff—with no confirmed violation—was permanently excluded further demonstrates the discretionary and differential character of the enforcement pipeline. Whether the comparisons hold under full factual development is a question for summary judgment, not a motion to dismiss. *Horton v. Beacon Woods East*, 2025 WL 3089014, at \*6 (M.D. Fla. Nov. 5, 2025).

### D.    Known Bias in Automated Systems

The FAC alleges the Vendor Defendants were aware that "automated models can be 'wrong' more often for some groups." FAC ¶ 46. Awareness of a known risk of racial bias in the systems feeding the human-review queue is relevant to the plausibility of discriminatory intent, particularly when combined with the other three predicates.

### E.    TaskUs's "Obvious Alternative Explanation" Fails

TaskUs invokes *Doe v. Samford University*, 29 F.4th 675, 686 (11th Cir. 2022), for the proposition that the Court may infer "obvious alternative explanations" from the complaint. Dkt. 48 at 14. An obvious alternative explanation must be apparent from the factual allegations in the complaint. *Samford*, 29 F.4th at 686. TaskUs's "alternative" is that Plaintiff violated some unidentified community standard unrelated to CSE. Dkt. 48 at 14–15. That is not an obvious alternative explanation. It is an unpleaded, undefined, defendant-controlled hypothetical. No defendant has ever identified the content. No defendant has ever identified the standard. No defendant has ever identified the factual basis. Across three separate actions, two courts, and multiple filings, no defendant has ever stated what Plaintiff did wrong. An "obvious" alternative

explanation that the party best positioned to supply it has failed to articulate is not obvious. It is speculation.

### F.   Rule 8 Does Not Require Plaintiff to Plead the Defendant's Evidence

TaskUs's repeated insistence that Plaintiff has not described "the content he allegedly posted" (Dkt. 48 at 5, 13–14) misidentifies the pleading obligation. Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Nothing in Rule 8 requires a plaintiff to plead the defendant's evidence. The FAC alleges no violation existed (FAC ¶ 8), no report was filed (FAC ¶ 56), and no law enforcement contact has occurred in over three years (FAC ¶ 8). If those allegations are true—and they must be accepted as true— the content of Plaintiff's posts is irrelevant to plausibility. The content becomes relevant at summary judgment or trial. At Rule 12, the FAC's allegation of non-violation controls.

### G.   TaskUs's Litigation-History Characterization

TaskUs characterizes Plaintiff's litigation history as evidence undermining his claims. Dkt. 48 at 3–4, 15 n.5, n.8. The actual count of distinct civil actions is three. The Federal Rules contemplate and encourage amendment. Fed. R. Civ. P. 15(a). Counting an amended pleading as a separate complaint is a rhetorical device, not a legal argument. The Court should disregard it.

### V.   SECTION 230 DOES NOT IMMUNIZE RACE-VISIBLE ENFORCEMENT CONDUCT

### A.   The Claims Do Not Treat TaskUs as a Publisher

Section 230(c)(1) provides: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The operative question is whether the FAC seeks to hold TaskUs liable in its capacity as a publisher of Plaintiff's content. It does not.

The FAC challenges the Vendor Defendant's own enforcement conduct at the human-review stage: race-visible decision-making, discretionary affirmation of a baseless CSE invocation, and routing through a non-report workflow. FAC ¶¶ 44–46, 55–56, 112, 142. These are allegations about the process by which an enforcement decision was made—not about the decision to publish or remove third-party content. Section 230 immunizes the what—the editorial decision to remove content. It does not immunize the how—the discriminatory process by which the decision was reached.

Every case TaskUs cites involves a plaintiff who sought to hold the defendant liable for removing content from a platform. See *Mezey v. Twitter, Inc.*, 2018 WL 5306769 (S.D. Fla. July 19, 2018) (challenge to account suspension); *Elansari v. Meta, Inc.*, 2024 WL 163080 (3d Cir. Jan. 16, 2024) (same); *King v. Facebook, Inc.*, 572 F. Supp. 3d 776 (N.D. Cal. 2021) (same). The FAC does not challenge the removal of content. It challenges the motive and process behind an enforcement determination made by a vendor reviewer who was looking at Plaintiff's Black face at the moment of decision. No Eleventh Circuit case has held that Section 230 bars a federal civil rights claim premised on the decision-making process rather than the editorial outcome.

16

## B. TaskUs's Causation and Section 230 Arguments Are Irreconcilable

TaskUs argues for causation purposes that it had no independent authority—it followed Meta's policies, used Meta's tools, and issued non-binding recommendations. Dkt. 48 at 9. TaskUs then argues for Section 230 purposes that it exercised protected editorial judgment as a "user" of an interactive computer service. Dkt. 48 at 16–17.

These positions are irreconcilable. Section 230 protects "the publisher's traditional editorial functions." *Roca Labs, Inc. v. Consumer Op. Corp.*, 140 F. Supp. 3d 1311, 1319 (M.D. Fla. 2015). A vendor executing another entity's content policies on that entity's platform using that entity's tools is not exercising traditional editorial functions—it is performing contracted services. TaskUs cannot disclaim editorial authority to defeat causation and then claim editorial authority to invoke Section 230. Those are competing characterizations of the same conduct. TaskUs must choose one.

## C. TaskUs's Catch-22 Footnote Fails

TaskUs argues the FAC is self-contradicting: "either TaskUs' alleged review did not cause Ballentine's injuries, or TaskUs assisted with a protected editorial decision." Dkt. 48 at 18 n.10. The dichotomy is false. The FAC alleges TaskUs caused injury through a discriminatory enforcement decision. Civil rights liability attaches to the discriminatory motive, not the publication outcome. A vendor may participate in a content-moderation workflow and simultaneously violate federal civil rights law through racially motivated decision-making within that workflow. If TaskUs's reading were correct, any vendor could engage in racial discrimination

17

with impunity so long as the discrimination occurred during content review. Congress did not enact Section 230 for that purpose.

### D.    Section 230(c)(2) Good Faith Cannot Be Resolved on These Pleadings

Even if the Court concludes Section 230(c)(1) is potentially applicable, the claims survive under Section 230(c)(2)'s good-faith requirement. 47 U.S.C. § 230(c)(2)(A). The FAC's allegations undermine any presumption of good faith at this stage.

First, the FAC alleges no CyberTipline report was filed following the CSE designation. FAC ¶ 56. A CSE designation that does not produce a statutory report plausibly suggests the designation was not grounded in an actual reportable determination. That undercuts good faith. Second, the FAC alleges the enforcement outcome was affirmed within hours of the reviewer viewing Plaintiff's identity. FAC ¶ 56. Temporal proximity between identity visibility and adverse action, combined with the absence of a report, plausibly negates good faith at the pleading stage. Third, the FAC alleges 4,000 CSE reversals in Q3 2022, the highest in Meta's documented history. FAC ¶¶ 70–73. Yet Plaintiff, with no confirmed violation, remained permanently excluded. Whether the reviewing Vendor Defendant acted in good faith under those circumstances is a factual question.

See *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1052–53 (9th Cir. 2019) (reversing dismissal where allegations of pretext defeated (c)(2) immunity at Rule 12). The Court cannot resolve the good-faith question against Plaintiff on a Rule 12(b)(6) record. If the Court relies on TaskUs's

18

extra-pleading assertion of good faith rather than excluding it, Rule 12(d) requires conversion. TaskUs has not requested conversion.

## VI. THE ROUTING FUNCTION IS PROSECUTORIAL SCREENING, NOT REPORTING COMPLIANCE

### A. The Eleventh Circuit's State-Action Framework

Section 1983 requires that the alleged deprivation be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). The Eleventh Circuit recognizes four alternative tests: (1) public function; (2) state compulsion; (3) nexus/joint action; and (4) pervasive entwinement. *Focus on the Family, Inc. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003). The FAC invokes (3) and (4). Plaintiff need prevail on only one.

### B. Primary Theory: Discretionary Screening Within a Statutory Framework

The FAC does not allege mere compliance with 18 U.S.C. § 2258A. It alleges discretionary screening within a statutory regime that determines which cases enter state criminal processes.

The FAC alleges: A Vendor Defendant executed the routing decision that determined whether Plaintiff's case entered the NCMEC/CyberTipline workflow—triggering mandatory law enforcement notification under 18 U.S.C. § 2258A—or bypassed law enforcement entirely through an alternative workflow. FAC ¶¶ 45–46, 82–85, 87. State ICAC task forces investigate what Meta reports. They cannot investigate what Meta withholds. FAC ¶¶ 78–80. The Vendor Defendant's routing decision is the operational gateway. Cases routed to the NCMEC workflow triggered state law enforcement review. Cases routed to the alternative workflow

19

did not. FAC ¶ 85. That is not compliance with a reporting obligation. It is the exercise of discretion over which cases enter the state criminal pipeline.

*Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980), holds that willful participation in joint activity with state officials satisfies § 1983's color-of-law requirement. The FAC alleges the Vendor Defendant's routing decision and Meta's reporting determination jointly selected which cases entered the prosecutorial pipeline. FAC ¶¶ 87–89. That is willful participation in joint activity with the state agencies that depend on those routing decisions for case origination.

## C.    The Compliance Cases Are Distinguishable

TaskUs cites three cases for the proposition that compliance with reporting requirements does not create state action. Dkt. 48 at 21. Each is distinguishable on the same ground.

*Lindbloom v. Manatee Mem'l Found., Inc.*, 2023 WL 11891890, at *3 (M.D. Fla. Apr. 13, 2023): A hospital acted in accordance with its statutory duty. The hospital reported. It did not decide whether to report.

*United States v. Williamson*, 2023 WL 4056324, at *14 (M.D. Fla. Feb. 10, 2023): Yahoo developed protocols to facilitate interactions with the government in relation to its reporting duty. Yahoo reported. It did not screen cases for prosecution.

*United States v. Robinson*, 2025 WL 3039333, at *3 (M.D. Fla. Oct. 31, 2025): A private actor complied with a mandatory reporting statute. The actor reported. It did not exercise discretion over which cases reached law enforcement.

In each case, the private actor reported suspected violations. The FAC does not allege that the Vendor Defendant reported. It alleges the Vendor Defendant

decided whether to route Plaintiff's case toward law enforcement—and decided not to, while simultaneously affirming a CSE designation and permanently terminating the account. FAC ¶¶ 56, 82–85, 87. That is the distinction between compliance and screening. The compliance cases do not address it because they did not involve it.

## D.    Entwinement as a Fact-Bound Alternative

Alternatively, the FAC pleads pervasive entwinement sufficient to attribute the Vendor Defendant's conduct to the state. *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298–302 (2001). *Brentwood* holds that whether private conduct is attributable to the state is a "necessarily fact-bound inquiry." Id. at 298.

The FAC alleges: Meta directly trained Vendor Defendant reviewer teams, providing instruction on Meta's policies and review procedures. FAC ¶ 109. Vendor Defendant reviewers used Meta-provided account-review tools. FAC ¶ 112. Meta conducted weekly calls, regular site visits, and monthly and quarterly business reviews with its moderation vendors. FAC ¶ 108. Meta issued standard operating procedures, quality assurance protocols, and policy updates to each Vendor Defendant. FAC ¶ 108.

These allegations describe a vendor that uses the platform operator's tools, follows the platform operator's procedures, processes the platform operator's queues, and operates under the platform operator's supervision. Whether this operational integration constitutes entwinement sufficient to attribute the vendor's conduct to the state is a fact-bound inquiry the Court cannot resolve on the pleadings. *Brentwood*, 531 U.S. at 298–302. TaskUs's motion does not

21

address entwinement. If the Court relies on extra-pleading material to resolve this question, Rule 12(d) requires conversion. TaskUs has not requested conversion.

### E.    Summary

The FAC alleges state action under two independent theories: (1) joint action through discretionary screening within the § 2258A framework, and (2) pervasive entwinement through operational integration into Meta's enforcement pipeline. TaskUs's motion addresses only the general proposition that reporting compliance is insufficient. It does not address the screening theory. It does not address entwinement. Plaintiff need survive on only one theory. The motion should be denied as to § 1983.

## VII. THE OPERATIONAL ENFORCEMENT PIPELINE STATES A § 1985(3) CLAIM

### A.    Elements and Standard

Section 1985(3) requires: (1) a conspiracy; (2) to deprive the plaintiff of equal protection or equal privileges and immunities; (3) an overt act in furtherance of the conspiracy; and (4) resulting injury—together with class-based, invidiously discriminatory animus. *Griffin v. Breckenridge*, 403 U.S. 88, 101–03 (1971); *Chua v. Ekonomou*, 1 F.4th 948, 955 (11th Cir. 2021). These are Rule 8 allegations judged under *Twombly/Iqbal* plausibility. Direct proof of an agreement is not required; agreement may be inferred from circumstantial evidence. *Twombly*, 550 U.S. at 556–57.

### B.    Plus Factors Establishing Agreement

22

The FAC does not allege a clandestine agreement. It alleges an operational one. The following circumstantial facts, taken together, permit an inference of concerted action within the meaning of § 1985(3):

(a) Shared contracts: Each Vendor Defendant entered into a contract with Meta to staff enforcement queues. FAC ¶¶ 42, 102–106. (b) Shared training: Meta directly trained Vendor Defendant reviewer teams on Meta's policies and review procedures. FAC ¶ 109. (c) Common SOPs: Meta issued standard operating procedures, quality assurance protocols, and policy updates to each Vendor Defendant. FAC ¶ 108. (d) Sequential workflow: Meta flags → Vendor Defendant conducts final human review → Vendor Defendant affirms or invalidates → Meta ratifies. FAC ¶¶ 42, 55–56. (e) Race-visible review at the decision point: The reviewer had Plaintiff's profile photograph and government-issued identification visible during review. FAC ¶¶ 44–45. (f) Differential restoration outcomes: During Q3 2022, 4,000 CSE designations were reversed through the pipeline Defendants jointly operated. Yet Plaintiff, with no confirmed violation, remained permanently excluded. FAC ¶¶ 70–73. COMP-1, a white user with a confirmed CSE violation, was restored. FAC ¶¶ 73–74.

These are not parallel acts by unrelated entities. They are coordinated steps within a shared operational structure that produced a specific discriminatory outcome. *Twombly*, 550 U.S. at 556–57.

## C.    Kelsey K. Is Distinguishable

TaskUs cites *Kelsey K. v. NFL Enterprises*, 254 F. Supp. 3d 1140, 1144 (N.D. Cal. 2017), for the proposition that "for a conspiracy of the scale alleged . . . one would expect at least some evidentiary facts." Dkt. 48 at 22. *Kelsey K.* involved a

mass conspiracy theory with no operational connection between the alleged conspirators and the specific plaintiff. Here, the FAC alleges concrete operational structure—a shared enforcement pipeline through which Plaintiff's specific account was processed—and a specific enforcement event on a specific date. That is not a free-floating enterprise-scale conspiracy. It is a coordinated workflow that produced a discriminatory outcome in Plaintiff's case.

### D.    Overt Act and Injury

The overt act is the affirmation of the CSE designation during the July 4–5, 2022 final human review. FAC ¶¶ 55–56. The resulting injuries include permanent loss of Plaintiff's advertising account, loss of pending RV service requests, loss of access to educational materials, and loss of the ability to acquire customers through the platform. FAC ¶¶ 63–65.

### E.    Animus

The class-based, invidiously discriminatory animus required by § 1985(3) is established by the four reinforcing predicates set forth in Section IV, supra: identity visibility at the decision point, temporal proximity between visibility and adverse action, differential treatment of similarly situated white comparators, and documented awareness of racial bias in automated moderation systems. These predicates, combined with the plus factors establishing agreement, state a claim under § 1985(3).

### VIII.    DISMISSAL WITH PREJUDICE IS UNWARRANTED

The factual disputes identified in Sections I, III, V, and VI cannot be resolved on a Rule 12(b)(6) record. Whether the reviewer saw Plaintiff's identity, whether the reviewer exercised independent discretion, what content was before

the reviewer, and whether the Vendor Defendant's routing decision placed it at the gateway to state criminal processes are questions of fact within Defendants' exclusive possession. The Court should permit discovery to proceed.

TaskUs seeks dismissal with prejudice. The standard under *Foman v. Davis*, 371 U.S. 178, 182 (1962), requires a showing of futility, undue delay, bad faith, or repeated failure to cure. TaskUs has identified no basis for any of these. The informational asymmetry documented throughout this opposition—where the factual predicates for TaskUs's defenses are within Defendants' exclusive possession—is curable through ordinary discovery. The queue-assignment records, tool-access logs, and review-session telemetry that would resolve the identification question and confirm or refute the factual premises underlying every argument in TaskUs's motion are in Defendants' possession. Dismissal with prejudice for deficiencies a pro se plaintiff cannot cure without access to the defendant's records is inconsistent with the federal policy favoring resolution on the merits.

**CONCLUSION**

TaskUs asks this Court to accept its version of what happened on July 4, 2022. The FAC alleges the opposite on every material point. At Rule 12(b)(6), the FAC's allegations control.

The motion depends on factual premises not found in the FAC: that reviewer visibility is uncertain, that TaskUs merely recommended, that Plaintiff violated an unidentified community standard, and that TaskUs concluded

25

Plaintiff's content was objectionable. None of these premises appears in the operative complaint. Each contradicts what the FAC alleges. The Court cannot resolve these disputes on the pleadings.

TaskUs's motion argues against a pleading Plaintiff did not file. Deny the motion in full.

Date: March 24, 2026                                        Respectfully submitted,

Marvelle J. Ballentine
Plaintiff, *pro se*
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 27z, 2026, I filed the foregoing with the

Clerk of the Court, which will send a copy to all counsel of record.

Marvelle J. Ballentine
Plaintiff, *pro se*

# EXHIBIT E-11

Dkt. 64: Refiled opposition to Accenture MTD (stricken by Dkt. 79)

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MARVELLE J. "JAY" BALLENTINE,

*Plaintiff,*

v.                                          Case No. 6:26-cv-00376-AGM-DCI

META PLATFORMS, INC.; ACCENTURE LLP;
TASKUS, INC.; and GENPACT LIMITED.,

*Defendants.*

## PLAINTIFF'S OPPOSITION TO DEFENDANT

## TASKUS, INC.'S MOTION TO DISMISS (Dkt. 48)

**PREFATORY STATEMENT**

Plaintiff refiles this Opposition pursuant to the Court's March 30, 2026

Order (Dkt. 57). This refiling is made without waiver of Plaintiff's concurrently

filed Urgent Motion for Recusal and to Identify Deficiency, Toll Cure Period, and

Clarify Service, and without waiver of Plaintiff's concurrently filed Petition for

Reassignment to the Chief District Judge. This refiling is further made without

waiver of Plaintiff's objections regarding: (1) the unspecified nature of the cited

deficiency; (2) the compression of the cure period below the twenty-one days

provided by Local Rule 3.01(d); (3) the asymmetric enforcement of Local Rules as

documented in the concurrently filed motion; (4) the continued validity of orders entered by Magistrate Judge Norway prior to his recusal; and (5) Plaintiff's protection under Fed. R. Civ. P. 83(a)(2) against loss of rights from nonwillful noncompliance with requirements of form. These objections are preserved for appeal.

**RELIEF REQUESTED**

Plaintiff respectfully requests that the Court deny Defendant TaskUs, Inc.'s Motion to Dismiss (Dkt. 48) in its entirety. The First Amended Complaint (Dkt. 19) is the operative pleading in this action. Plaintiff responds on the merits without waiving any objection to: (a) the unresolved service dispute (Dkt. 48 at 1 n.2); or (b) the procedural posture, including the unruled-upon extension motion (Dkt. 34) referred to a magistrate judge who has since recused (Dkt. 45). TaskUs's appearance and merits-based filing waive any service objection not separately preserved. Fed. R. Civ. P. 12(h)(1).

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the Court should deny TaskUs, Inc.'s motion to dismiss where:

1.    TaskUs's motion presents the same arguments, case citations, and analytical structure as co-Defendant Accenture LLP's motion at Dkt. 29, without any analysis tailored to TaskUs's own position within the enforcement pipeline;

2.    The FAC identifies a specific enforcement act on a specific date, attributes it to a single Vendor Defendant, invokes Rule 8(d)(2)–(3) for alternative identification, and explains why precise identification is within Defendants' exclusive control (FAC ¶ 47);

2

3.    The FAC alleges that the reviewing Vendor Defendant was authorized to validate or invalidate Meta's CSE invocation, exercised operational discretion in conducting final human review, and that the review was a but-for and proximate cause of Plaintiff's injuries under *Staub v. Proctor Hospital*, 562 U.S. 411 (2011);

4.    The FAC alleges four reinforcing predicates of discriminatory intent: identity visibility at the decision point, temporal proximity between visibility and adverse action, differential treatment of a similarly situated white comparator with a confirmed CSE violation, and documented awareness of racial bias in automated moderation systems;

5.    The FAC challenges the Vendor Defendant's enforcement conduct at the human-review stage, not Meta's editorial decision to remove content, and TaskUs cannot simultaneously disclaim independent authority for causation purposes and claim protected editorial judgment for Section 230 purposes;

6.    The FAC alleges that the Vendor Defendant executed the routing decision determining whether Plaintiff's case entered the NCMEC/CyberTipline workflow or bypassed law enforcement, placing the reviewing vendor at the operational gateway between platform enforcement and criminal investigation;

7.    The FAC alleges coordinated action within a shared operational structure—shared contracts, shared training, common standard operating procedures, a sequential workflow, race-visible review, and differential restoration outcomes—sufficient to state a claim under 42 U.S.C. § 1985(3) and *Griffin v. Breckenridge*, 403 U.S. 88 (1971); and

8.    The informational asymmetry identified throughout this opposition—where the factual predicates for TaskUs's defenses are within Defendants'

3

exclusive possession—is curable through ordinary discovery, and dismissal with prejudice for deficiencies a pro se plaintiff cannot cure without access to the defendant's records is inconsistent with the federal policy favoring amendment.

**PRELIMINARY STATEMENT**

On July 4, 2022, a Vendor Defendant reviewer conducting final human review of Plaintiff's Facebook account had Plaintiff's profile photograph and government-issued identification visible on screen. The reviewer affirmed a CSE designation. No CyberTipline report followed. The absence of a CyberTipline report undercuts any claim that Plaintiff's matter involved an apparent child-exploitation violation requiring statutory reporting under 18 U.S.C. § 2258A, and supports the inference that the CSE label was not grounded in an actual reportable determination. In Q3 2022—the same quarter as Plaintiff's enforcement—4,000 CSE designations were reversed through the enforcement pipeline Defendants jointly operated, the highest reversal rate in Meta's documented history. FAC ¶¶ 44–46, 55–56, 70–73.

TaskUs's motion responds to a different complaint—one in which reviewers might not have seen identity information, in which the CSE designation might have been legitimate, and in which TaskUs's role might have been limited to a non-binding recommendation. The FAC alleges the opposite on each point.

The Court cannot resolve these factual disputes against Plaintiff on a Rule 12(b)(6) record. If the Court relies on TaskUs's extra-pleading premises rather than excluding them, Rule 12(d) requires conversion to summary judgment with notice and an opportunity for discovery. TaskUs has not requested conversion.

TaskUs's motion presents the same four-part analytical structure as co-Defendant Accenture LLP's motion at Dkt. 29: (A) but-for causation, (B) racial

animus, (C) CDA § 230, (D) § 1983 and § 1985(3). It cites the same cases in the same sequence. It uses the same dictionary definition. Webster's Ninth New Collegiate Dictionary (1990). Dkt. 48 at 17; Dkt. 29 at 18. It uses the same rhetorical formulations. TaskUs and Accenture are represented by different law firms. TaskUs's motion does not identify a single argument specific to TaskUs's position in the enforcement pipeline. TaskUs states it filed the motion "so as not to waive any available defenses" because its extension motion had not been ruled upon. Dkt. 48 at 1 n.1.

The FAC alleges a race-visible enforcement sequence. TaskUs asks the Court to accept an alternative factual account—one the FAC contradicts on every material point—using arguments developed for a different defendant. Rule 12(b)(6) does not permit that. The motion should be denied.

## I.   THRESHOLD: TASKUS'S MOTION DEPENDS ON FACTUAL PREMISES NOT FOUND IN THE FAC

At Rule 12(b)(6), the Court accepts well-pled factual allegations as true, draws reasonable inferences in the plaintiff's favor, and does not resolve factual disputes. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). The movant may not introduce factual premises from outside the complaint to defeat pleading sufficiency. *Speaker v. U.S. Dep't of HHS*, 623 F.3d 1371, 1381 (11th Cir. 2010). TaskUs's motion depends on at least four factual premises that do not appear in the FAC and, in each case, contradict what the FAC alleges.

### A.   "Reviewer Visibility Is Uncertain"

TaskUs asserts: "the Amended Complaint makes clear that Ballentine does not know whether any vendor defendant, let alone TaskUs' reviewers, even had access to his photograph." Dkt. 48 at 11. The FAC alleges: "Vendor Defendant personnel performing final-review enforcement had access to account-level identifiers, including profile photos, names, and in some cases government-issued ID images, sufficient to reveal a user's race." FAC ¶ 45. "The CSE designation was affirmed by a vendor reviewer who, during the identity verification process, had full visibility of Plaintiff's Black face through his profile photo and government-issued ID." FAC ¶ 45.

The FAC does not allege uncertainty. TaskUs derives "uncertainty" from the prayer for relief, which seeks disclosure of reviewer visibility practices. A request for injunctive transparency does not retract a factual allegation. At Rule 12, the FAC's affirmative allegation of visibility controls.

## B.    "TaskUs Could Only Issue a Recommendation"

TaskUs asserts it "lacked authority to disable his account" and that "the most it could do was issue a recommendation for action." Dkt. 48 at 9–10. The FAC alleges the reviewer was "authorized to validate or invalidate Meta's invocation of its Child Sexual Exploitation (CSE) policy." FAC ¶ 55. The Vendor Defendant "exercised operational discretion in conducting final human review." FAC ¶ 112.

"Validate or invalidate" is binary decisional authority. The FAC does not use the word "recommendation." The 8,100 CSE enforcement reversals through human review in 2022 (FAC ¶ 70) prove the pipeline produced different outcomes

6

in different cases. At Rule 12, the FAC's characterization of the reviewer's authority controls.

## C. "Plaintiff's Content Violated an Unidentified 'Other Community Standard'"

TaskUs asserts that "the Court can infer from the Amended Complaint that Ballentine's account was terminated for non-discriminatory reasons." Dkt. 48 at 14–15. The motion invokes an unidentified community-standard violation—a formulation that has never been accompanied by identification of any content, any standard, or any factual basis. The FAC alleges: "No content has been identified. No standard has been cited. No factual basis has been provided." FAC ¶ 8.

An "obvious alternative explanation" within the meaning of *Iqbal* must be inferable from the complaint's own factual allegations. *Doe v. Samford Univ.*, 29 F.4th 675, 686 (11th Cir. 2022). An explanation that requires the Court to accept a community-standard violation that has never been identified—in any filing, in any court, across three separate actions—is not "obvious." It is an unpleaded, undefined, defendant-controlled hypothetical. The FAC alleges no violation existed. That allegation is accepted as true at this stage.

## D. "TaskUs 'Concluded Ballentine's Content Was Objectionable'"

TaskUs asserts it "followed Meta's content policies throughout the review process" and "ultimately concluded Ballentine's content was 'objectionable.'" Dkt. 48 at 19. This is an affirmative factual assertion about what a reviewer actually concluded during the July 4, 2022 review. The FAC does not allege this. The FAC alleges the reviewer affirmed a baseless CSE invocation after viewing Plaintiff's

7

identity. What the reviewer actually concluded, what content was before the reviewer, and what policies the reviewer applied are within TaskUs's exclusive possession. This is not a premise the Court can accept on a Rule 12(b)(6) record.

Each of the foregoing premises is a factual assertion TaskUs asks the Court to accept on a record that consists solely of the FAC. Rule 12(b)(6) does not permit this. *Chaparro*, 693 F.3d at 1337. The Court cannot resolve these disputes against Plaintiff on a Rule 12(b)(6) record. If the Court relies on any of these extra-pleading premises rather than excluding them, Rule 12(d) requires conversion to summary judgment with notice and an opportunity for discovery. TaskUs has not requested conversion.

## II.    THE FAC IS NOT A SHOTGUN PLEADING—RULE 8(d) PERMITS ALTERNATIVE IDENTIFICATION

### A.    TaskUs's Argument

TaskUs asserts the FAC "improperly assert[s] multiple claims against multiple [vendor] defendants without specifying which of the [vendor] defendants are responsible for which acts or omissions," citing *Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021), and *Lyles v. Sch. Dist. of Osceola Cnty.*, 2023 WL 8437717, at *1 (M.D. Fla. Feb. 2, 2023). TaskUs also highlights a purported inconsistency between FAC ¶ 171 (alleging all Vendor Defendants "joined and acted in furtherance" of a conspiracy) and FAC ¶ 175 (alleging "a single Vendor Defendant" reviewed Plaintiff's account). Dkt. 48 at 7–8.

### B.    The FAC Does Two Distinct Things, and TaskUs Conflates Them

FAC ¶ 175 attributes the specific July 4, 2022 enforcement act—the race-visible final review and affirmation of the CSE designation—to a single Vendor Defendant. FAC ¶ 171 separately alleges that all Vendor Defendants joined the broader conspiracy through the operational enforcement pipeline they collectively staffed. These are not inconsistent allegations. Paragraph 175 pleads execution of a specific act. Paragraph 171 pleads agreement within a shared operational structure. TaskUs conflates them. They are structurally distinct.

### C.    Barmapov Is Distinguishable

*Barmapov* involved undifferentiated group pleading—identical acts attributed to all defendants without distinction. The FAC does the opposite. It identifies the act (July 4, 2022 final review), attributes it to one actor (a single Vendor Defendant), and explains why precise identification is not possible pre-discovery: "The identity of the specific Vendor Defendant who conducted Plaintiff's July 4–5, 2022 final review is within Defendants' exclusive possession." FAC ¶ 47. The FAC then specifies the categories of records that will resolve identification: "review-session telemetry, queue-assignment records, and tool-access logs." Id.

The Eleventh Circuit's shotgun-pleading doctrine identifies four categories. *Weiland v. Palm Beach Cnty. Sheriff's Office,* 792 F.3d 1313, 1321–23 (11th Cir. 2015). The FAC falls into none of them. It does not re-adopt every preceding paragraph indiscriminately into each count. It does not assert multiple claims against multiple defendants without differentiating which defendant is responsible for which act. The FAC identifies the act, attributes it to one actor, invokes Rule 8(d)(2)–(3) for alternative identification, and explains why the

9

information necessary for precise identification is within defendants' exclusive control. That is textbook alternative pleading.

### D.    TaskUs's Footnote 6 Misapprehends the Record

TaskUs argues at footnote 6 that Plaintiff's opposition to Accenture's motion "seemingly affirmatively believes that it was 'an Accenture reviewer' who conducted the human review," and that this "conflicting narrative further warrants dismissal." Dkt. 48 at 8 n.6.

An opposition brief is not a pleading. Characterizations in an advocacy document do not amend the operative complaint. The FAC controls at Rule 12. The FAC pleads in the alternative under Rule 8(d)(2)–(3).

If the Court credits footnote 6's premise—that Plaintiff believes the reviewer was employed by Accenture—the consequence is dismissal without prejudice as to TaskUs, not dismissal with prejudice. TaskUs seeks the latter. The appropriate resolution is discovery: the queue-assignment records will identify the reviewer. Dismissal with prejudice for an identification deficiency that ordinary discovery will cure is inconsistent with Rule 8's notice-pleading standard.

### E.    The Consequence

If the Court concludes it cannot evaluate the claims without knowing which Vendor Defendant reviewed Plaintiff's account, the remedy is discovery—not dismissal. The queue-assignment records, tool-access logs, and review-session telemetry that would resolve identification are in Defendants' possession. Dismissal with prejudice for a pleading deficiency that the plaintiff cannot cure without information the defendant controls is inconsistent with Rule 8's notice-pleading standard.

## III.  THE  VENDOR  DEFENDANT'S  DISCRETIONARY  AFFIRMATION  IS  A  BUT-FOR  CAUSE  OF  PLAINTIFF'S  INJURIES

TaskUs argues it cannot be the but-for cause of Plaintiff's injuries because it "lacked authority to disable his account" and could only "issue a recommendation." Dkt. 48 at 9–10. *Staub v. Proctor Hospital* forecloses this argument. In *Staub*, the Supreme Court held that "if a supervisor performs an act motivated by [discriminatory] animus that is intended by the supervisor to cause an adverse . . . action, and if that act is a proximate cause of the ultimate . . . action, then the employer is liable." 562 U.S. 411, 422 (2011). The subordinate's recommendation need not be the final decision. It need only be a proximate cause of the adverse action. Id. at 420–22.

The FAC alleges a vendor reviewer conducted final human review, exercised operational discretion, and affirmed a CSE designation that Meta then ratified. FAC ¶¶ 55, 112, 142. That is the configuration addressed in *Staub*: a biased subordinate determination adopted by a decision-maker with independent authority. TaskUs's motion does not cite *Staub*. It does not distinguish *Staub*. It does not acknowledge *Staub*.

TaskUs's own background section confirms the causal chain the FAC alleges. The motion states: "On Meta's request, a human moderator at either Accenture, TaskUs, or Genpact reviewed Ballentine's account. After the review, Meta terminated Ballentine's account." Dkt. 48 at 5. Meta flagged. A vendor reviewed. Meta terminated after the review. On TaskUs's own telling, the vendor review is a causal step between the initial flag and the termination. If the review

11

had no causal significance, TaskUs would not have recited it in its own factual narrative.

The 8,100 CSE enforcement reversals through human review in 2022 (FAC ¶ 70) demonstrate the pipeline produced different outcomes depending on reviewer judgment. If the reviewer always affirmed, no reversal would ever occur. The pipeline's reversal rate proves reviewer discretion existed and was outcome-determinative.

TaskUs asserts the FAC's characterization of the reviewer's authority as "validate or invalidate" is contradicted by the FAC's own allegations that Meta retained override authority. Dkt. 48 at 9. Those are competing factual narratives. The FAC alleges the reviewer exercised discretionary authority within the pipeline. TaskUs asserts the reviewer's role was ministerial. The Court cannot resolve this dispute on the pleadings. If the Court relies on TaskUs's extra-pleading characterization rather than excluding it, Rule 12(d) requires conversion. TaskUs has not requested conversion.

## IV. IDENTITY VISIBILITY, TEMPORAL PROXIMITY, COMPARATOR TREATMENT, AND KNOWN BIAS ESTABLISH DISCRIMINATORY INTENT

TaskUs argues the FAC does not plausibly allege discriminatory intent. Dkt. 48 at 10–15. The FAC alleges four reinforcing predicates. Taken together, they cross the plausibility threshold under *Iqbal*, 556 U.S. at 678.

### A.    Identity Visibility at the Decision Point

The FAC alleges the reviewer had Plaintiff's profile photograph and government-issued identification visible during the final review. FAC ¶ 45. The

12

enforcement outcome was affirmed within hours of that visibility. FAC ¶ 56. Visibility of race at the moment of an adverse decision is a recognized predicate for discriminatory-intent analysis. TaskUs does not dispute visibility; it disputes whether its reviewer was assigned to the case. That is a factual question the Court cannot resolve on these pleadings.

### B.    Temporal Proximity

The FAC alleges permanent account termination occurred within hours of Plaintiff's submission of identity verification. FAC ¶ 56. The temporal proximity between visibility of Plaintiff's race and the adverse action supports an inference of discriminatory motive at the pleading stage.

### C.    Comparator Treatment

TaskUs argues Plaintiff's comparators are not similarly situated. Dkt. 48 at 12–13. The FAC alleges Steven Ertelt, a white user, was flagged under the same CSE policy as Plaintiff. FAC ¶ 64. Ertelt submitted a reinstatement demand through counsel and was restored to full platform access. Id. Plaintiff, a Black user flagged under the same CSE policy, submitted a formal reinstatement demand on April 22, 2025. Meta constructively denied it. Id. Ertelt and Plaintiff were flagged under the identical policy, processed through the same enforcement apparatus, and submitted parallel demands. The only variable the FAC identifies between their outcomes is race. That comparison supports an inference of discriminatory intent at the pleading stage.

COMP-1 reinforces the inference. COMP-1, a white user whose content Meta confirmed violated its CSE policy, received only a temporary suspension and was restored. FAC ¶¶ 71–74. That a user with a confirmed CSE violation was

13

restored while Plaintiff—with no confirmed violation—was permanently excluded further demonstrates the discretionary and differential character of the enforcement pipeline. Whether the comparisons hold under full factual development is a question for summary judgment, not a motion to dismiss. *Horton v. Beacon Woods East*, 2025 WL 3089014, at *6 (M.D. Fla. Nov. 5, 2025).

### D.   Known Bias in Automated Systems

The FAC alleges the Vendor Defendants were aware that "automated models can be 'wrong' more often for some groups." FAC ¶ 46. Awareness of a known risk of racial bias in the systems feeding the human-review queue is relevant to the plausibility of discriminatory intent, particularly when combined with the other three predicates.

### E.   TaskUs's "Obvious Alternative Explanation" Fails

TaskUs invokes *Doe v. Samford University*, 29 F.4th 675, 686 (11th Cir. 2022), for the proposition that the Court may infer "obvious alternative explanations" from the complaint. Dkt. 48 at 14. An obvious alternative explanation must be apparent from the factual allegations in the complaint. *Samford*, 29 F.4th at 686. TaskUs's "alternative" is that Plaintiff violated some unidentified community standard unrelated to CSE. Dkt. 48 at 14–15. That is not an obvious alternative explanation. It is an unpleaded, undefined, defendant-controlled hypothetical. No defendant has ever identified the content. No defendant has ever identified the standard. No defendant has ever identified the factual basis. Across three separate actions, two courts, and multiple filings, no defendant has ever stated what Plaintiff did wrong. An "obvious" alternative

14

explanation that the party best positioned to supply it has failed to articulate is not obvious. It is speculation.

### F.    Rule 8 Does Not Require Plaintiff to Plead the Defendant's Evidence

TaskUs's repeated insistence that Plaintiff has not described "the content he allegedly posted" (Dkt. 48 at 5, 13–14) misidentifies the pleading obligation. Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Nothing in Rule 8 requires a plaintiff to plead the defendant's evidence. The FAC alleges no violation existed (FAC ¶ 8), no report was filed (FAC ¶ 56), and no law enforcement contact has occurred in over three years (FAC ¶ 8). If those allegations are true—and they must be accepted as true— the content of Plaintiff's posts is irrelevant to plausibility. The content becomes relevant at summary judgment or trial. At Rule 12, the FAC's allegation of non-violation controls.

### G.    TaskUs's Litigation-History Characterization

TaskUs characterizes Plaintiff's litigation history as evidence undermining his claims. Dkt. 48 at 3–4, 15 n.5, n.8. The actual count of distinct civil actions is three. The Federal Rules contemplate and encourage amendment. Fed. R. Civ. P. 15(a). Counting an amended pleading as a separate complaint is a rhetorical device, not a legal argument. The Court should disregard it.

## V.    SECTION 230 DOES NOT IMMUNIZE RACE-VISIBLE ENFORCEMENT CONDUCT

### A.    The Claims Do Not Treat TaskUs as a Publisher

15

Section 230(c)(1) provides: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The operative question is whether the FAC seeks to hold TaskUs liable in its capacity as a publisher of Plaintiff's content. It does not.

The FAC challenges the Vendor Defendant's own enforcement conduct at the human-review stage: race-visible decision-making, discretionary affirmation of a baseless CSE invocation, and routing through a non-report workflow. FAC ¶¶ 44–46, 55–56, 112, 142. These are allegations about the process by which an enforcement decision was made—not about the decision to publish or remove third-party content. Section 230 immunizes the what—the editorial decision to remove content. It does not immunize the how—the discriminatory process by which the decision was reached.

Every case TaskUs cites involves a plaintiff who sought to hold the defendant liable for removing content from a platform. See *Mezey v. Twitter, Inc.*, 2018 WL 5306769 (S.D. Fla. July 19, 2018) (challenge to account suspension); *Elansari v. Meta, Inc.*, 2024 WL 163080 (3d Cir. Jan. 16, 2024) (same); *King v. Facebook, Inc.*, 572 F. Supp. 3d 776 (N.D. Cal. 2021) (same). The FAC does not challenge the removal of content. It challenges the motive and process behind an enforcement determination made by a vendor reviewer who was looking at Plaintiff's Black face at the moment of decision. No Eleventh Circuit case has held that Section 230 bars a federal civil rights claim premised on the decision-making process rather than the editorial outcome.

16

## B. TaskUs's Causation and Section 230 Arguments Are Irreconcilable

TaskUs argues for causation purposes that it had no independent authority—it followed Meta's policies, used Meta's tools, and issued non-binding recommendations. Dkt. 48 at 9. TaskUs then argues for Section 230 purposes that it exercised protected editorial judgment as a "user" of an interactive computer service. Dkt. 48 at 16–17.

These positions are irreconcilable. Section 230 protects "the publisher's traditional editorial functions." *Roca Labs, Inc. v. Consumer Op. Corp.*, 140 F. Supp. 3d 1311, 1319 (M.D. Fla. 2015). A vendor executing another entity's content policies on that entity's platform using that entity's tools is not exercising traditional editorial functions—it is performing contracted services. TaskUs cannot disclaim editorial authority to defeat causation and then claim editorial authority to invoke Section 230. Those are competing characterizations of the same conduct. TaskUs must choose one.

## C. TaskUs's Catch-22 Footnote Fails

TaskUs argues the FAC is self-contradicting: "either TaskUs' alleged review did not cause Ballentine's injuries, or TaskUs assisted with a protected editorial decision." Dkt. 48 at 18 n.10. The dichotomy is false. The FAC alleges TaskUs caused injury through a discriminatory enforcement decision. Civil rights liability attaches to the discriminatory motive, not the publication outcome. A vendor may participate in a content-moderation workflow and simultaneously violate federal civil rights law through racially motivated decision-making within that workflow. If TaskUs's reading were correct, any vendor could engage in racial discrimination

with impunity so long as the discrimination occurred during content review. Congress did not enact Section 230 for that purpose.

## D.    Section 230(c)(2) Good Faith Cannot Be Resolved on These Pleadings

Even if the Court concludes Section 230(c)(1) is potentially applicable, the claims survive under Section 230(c)(2)'s good-faith requirement. 47 U.S.C. § 230(c)(2)(A). The FAC's allegations undermine any presumption of good faith at this stage.

First, the FAC alleges no CyberTipline report was filed following the CSE designation. FAC ¶ 56. A CSE designation that does not produce a statutory report plausibly suggests the designation was not grounded in an actual reportable determination. That undercuts good faith. Second, the FAC alleges the enforcement outcome was affirmed within hours of the reviewer viewing Plaintiff's identity. FAC ¶ 56. Temporal proximity between identity visibility and adverse action, combined with the absence of a report, plausibly negates good faith at the pleading stage. Third, the FAC alleges 4,000 CSE reversals in Q3 2022, the highest in Meta's documented history. FAC ¶¶ 70–73. Yet Plaintiff, with no confirmed violation, remained permanently excluded. Whether the reviewing Vendor Defendant acted in good faith under those circumstances is a factual question.

See *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1052–53 (9th Cir. 2019) (reversing dismissal where allegations of pretext defeated (c)(2) immunity at Rule 12). The Court cannot resolve the good-faith question against Plaintiff on a Rule 12(b)(6) record. If the Court relies on TaskUs's

18

extra-pleading assertion of good faith rather than excluding it, Rule 12(d) requires conversion. TaskUs has not requested conversion.

## VI.  THE  ROUTING  FUNCTION  IS  PROSECUTORIAL SCREENING, NOT REPORTING COMPLIANCE

### A.    The Eleventh Circuit's State-Action Framework

Section 1983 requires that the alleged deprivation be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). The Eleventh Circuit recognizes four alternative tests: (1) public function; (2) state compulsion; (3) nexus/joint action; and (4) pervasive entwinement. *Focus on the Family, Inc. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003). The FAC invokes (3) and (4). Plaintiff need prevail on only one.

### B.    Primary  Theory:  Discretionary  Screening  Within  a Statutory Framework

The FAC does not allege mere compliance with 18 U.S.C. § 2258A. It alleges discretionary screening within a statutory regime that determines which cases enter state criminal processes.

The FAC alleges: A Vendor Defendant executed the routing decision that determined whether Plaintiff's case entered the NCMEC/CyberTipline workflow—triggering mandatory law enforcement notification under 18 U.S.C. § 2258A—or bypassed law enforcement entirely through an alternative workflow. FAC ¶¶ 45–46, 82–85, 87. State ICAC task forces investigate what Meta reports. They cannot investigate what Meta withholds. FAC ¶¶ 78–80. The Vendor Defendant's routing decision is the operational gateway. Cases routed to the NCMEC workflow triggered state law enforcement review. Cases routed to the alternative workflow

did not. FAC ¶ 85. That is not compliance with a reporting obligation. It is the exercise of discretion over which cases enter the state criminal pipeline.

*Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980), holds that willful participation in joint activity with state officials satisfies § 1983's color-of-law requirement. The FAC alleges the Vendor Defendant's routing decision and Meta's reporting determination jointly selected which cases entered the prosecutorial pipeline. FAC ¶¶ 87–89. That is willful participation in joint activity with the state agencies that depend on those routing decisions for case origination.

## C.   The Compliance Cases Are Distinguishable

TaskUs cites three cases for the proposition that compliance with reporting requirements does not create state action. Dkt. 48 at 21. Each is distinguishable on the same ground.

*Lindbloom v. Manatee Mem'l Found., Inc.*, 2023 WL 11891890, at *3 (M.D. Fla. Apr. 13, 2023): A hospital acted in accordance with its statutory duty. The hospital reported. It did not decide whether to report.

*United States v. Williamson*, 2023 WL 4056324, at *14 (M.D. Fla. Feb. 10, 2023): Yahoo developed protocols to facilitate interactions with the government in relation to its reporting duty. Yahoo reported. It did not screen cases for prosecution.

*United States v. Robinson*, 2025 WL 3039333, at *3 (M.D. Fla. Oct. 31, 2025): A private actor complied with a mandatory reporting statute. The actor reported. It did not exercise discretion over which cases reached law enforcement.

In each case, the private actor reported suspected violations. The FAC does not allege that the Vendor Defendant reported. It alleges the Vendor Defendant

decided whether to route Plaintiff's case toward law enforcement—and decided not to, while simultaneously affirming a CSE designation and permanently terminating the account. FAC ¶¶ 56, 82–85, 87. That is the distinction between compliance and screening. The compliance cases do not address it because they did not involve it.

### D.    Entwinement as a Fact-Bound Alternative

Alternatively, the FAC pleads pervasive entwinement sufficient to attribute the Vendor Defendant's conduct to the state. *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298–302 (2001). *Brentwood* holds that whether private conduct is attributable to the state is a "necessarily fact-bound inquiry." Id. at 298.

The FAC alleges: Meta directly trained Vendor Defendant reviewer teams, providing instruction on Meta's policies and review procedures. FAC ¶ 109. Vendor Defendant reviewers used Meta-provided account-review tools. FAC ¶ 112. Meta conducted weekly calls, regular site visits, and monthly and quarterly business reviews with its moderation vendors. FAC ¶ 108. Meta issued standard operating procedures, quality assurance protocols, and policy updates to each Vendor Defendant. FAC ¶ 108.

These allegations describe a vendor that uses the platform operator's tools, follows the platform operator's procedures, processes the platform operator's queues, and operates under the platform operator's supervision. Whether this operational integration constitutes entwinement sufficient to attribute the vendor's conduct to the state is a fact-bound inquiry the Court cannot resolve on the pleadings. *Brentwood*, 531 U.S. at 298–302. TaskUs's motion does not

address entwinement. If the Court relies on extra-pleading material to resolve this question, Rule 12(d) requires conversion. TaskUs has not requested conversion.

### E.    Summary

The FAC alleges state action under two independent theories: (1) joint action through discretionary screening within the § 2258A framework, and (2) pervasive entwinement through operational integration into Meta's enforcement pipeline. TaskUs's motion addresses only the general proposition that reporting compliance is insufficient. It does not address the screening theory. It does not address entwinement. Plaintiff need survive on only one theory. The motion should be denied as to § 1983.

## VII. THE OPERATIONAL ENFORCEMENT PIPELINE STATES A § 1985(3) CLAIM

### A.    Elements and Standard

Section 1985(3) requires: (1) a conspiracy; (2) to deprive the plaintiff of equal protection or equal privileges and immunities; (3) an overt act in furtherance of the conspiracy; and (4) resulting injury—together with class-based, invidiously discriminatory animus. *Griffin v. Breckenridge*, 403 U.S. 88, 101–03 (1971); *Chua v. Ekonomou*, 1 F.4th 948, 955 (11th Cir. 2021). These are Rule 8 allegations judged under *Twombly/Iqbal* plausibility. Direct proof of an agreement is not required; agreement may be inferred from circumstantial evidence. *Twombly*, 550 U.S. at 556–57.

### B.    Plus Factors Establishing Agreement

The FAC does not allege a clandestine agreement. It alleges an operational one. The following circumstantial facts, taken together, permit an inference of concerted action within the meaning of § 1985(3):

(a) Shared contracts: Each Vendor Defendant entered into a contract with Meta to staff enforcement queues. FAC ¶¶ 42, 102–106. (b) Shared training: Meta directly trained Vendor Defendant reviewer teams on Meta's policies and review procedures. FAC ¶ 109. (c) Common SOPs: Meta issued standard operating procedures, quality assurance protocols, and policy updates to each Vendor Defendant. FAC ¶ 108. (d) Sequential workflow: Meta flags → Vendor Defendant conducts final human review → Vendor Defendant affirms or invalidates → Meta ratifies. FAC ¶¶ 42, 55–56. (e) Race-visible review at the decision point: The reviewer had Plaintiff's profile photograph and government-issued identification visible during review. FAC ¶¶ 44–45. (f) Differential restoration outcomes: During Q3 2022, 4,000 CSE designations were reversed through the pipeline Defendants jointly operated. Yet Plaintiff, with no confirmed violation, remained permanently excluded. FAC ¶¶ 70–73. COMP-1, a white user with a confirmed CSE violation, was restored. FAC ¶¶ 73–74.

These are not parallel acts by unrelated entities. They are coordinated steps within a shared operational structure that produced a specific discriminatory outcome. *Twombly*, 550 U.S. at 556–57.

### C.  Kelsey K. Is Distinguishable

TaskUs cites *Kelsey K. v. NFL Enterprises*, 254 F. Supp. 3d 1140, 1144 (N.D. Cal. 2017), for the proposition that "for a conspiracy of the scale alleged . . . one would expect at least some evidentiary facts." Dkt. 48 at 22. *Kelsey K.* involved a

23

mass conspiracy theory with no operational connection between the alleged conspirators and the specific plaintiff. Here, the FAC alleges concrete operational structure—a shared enforcement pipeline through which Plaintiff's specific account was processed—and a specific enforcement event on a specific date. That is not a free-floating enterprise-scale conspiracy. It is a coordinated workflow that produced a discriminatory outcome in Plaintiff's case.

### D.    Overt Act and Injury

The overt act is the affirmation of the CSE designation during the July 4–5, 2022 final human review. FAC ¶¶ 55–56. The resulting injuries include permanent loss of Plaintiff's advertising account, loss of pending RV service requests, loss of access to educational materials, and loss of the ability to acquire customers through the platform. FAC ¶¶ 63–65.

### E.    Animus

The class-based, invidiously discriminatory animus required by § 1985(3) is established by the four reinforcing predicates set forth in Section IV, supra: identity visibility at the decision point, temporal proximity between visibility and adverse action, differential treatment of similarly situated white comparators, and documented awareness of racial bias in automated moderation systems. These predicates, combined with the plus factors establishing agreement, state a claim under § 1985(3).

### VIII.    DISMISSAL WITH PREJUDICE IS UNWARRANTED

The factual disputes identified in Sections I, III, V, and VI cannot be resolved on a Rule 12(b)(6) record. Whether the reviewer saw Plaintiff's identity, whether the reviewer exercised independent discretion, what content was before

the reviewer, and whether the Vendor Defendant's routing decision placed it at the gateway to state criminal processes are questions of fact within Defendants' exclusive possession. The Court should permit discovery to proceed.

TaskUs seeks dismissal with prejudice. The standard under *Foman v. Davis*, 371 U.S. 178, 182 (1962), requires a showing of futility, undue delay, bad faith, or repeated failure to cure. TaskUs has identified no basis for any of these. The informational asymmetry documented throughout this opposition—where the factual predicates for TaskUs's defenses are within Defendants' exclusive possession—is curable through ordinary discovery. The queue-assignment records, tool-access logs, and review-session telemetry that would resolve the identification question and confirm or refute the factual premises underlying every argument in TaskUs's motion are in Defendants' possession. Dismissal with prejudice for deficiencies a pro se plaintiff cannot cure without access to the defendant's records is inconsistent with the federal policy favoring resolution on the merits.

## CONCLUSION

TaskUs asks this Court to accept its version of what happened on July 4, 2022. The FAC alleges the opposite on every material point. At Rule 12(b)(6), the FAC's allegations control.

The motion depends on factual premises not found in the FAC: that reviewer visibility is uncertain, that TaskUs merely recommended, that Plaintiff violated an unidentified community standard, and that TaskUs concluded

Plaintiff's content was objectionable. None of these premises appears in the operative complaint. Each contradicts what the FAC alleges. The Court cannot resolve these disputes on the pleadings.

TaskUs's motion argues against a pleading Plaintiff did not file. Deny the motion in full.

Date: March 24, 2026                                          Respectfully submitted,

Marvelle J. Ballentine
Plaintiff, *pro se*
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 27z, 2026, I filed the foregoing with the

Clerk of the Court, which will send a copy to all counsel of record.

Marvelle J. Ballentine
Plaintiff, *pro se*

# EXHIBIT E-12

Dkt. 69: Notice of referral — Senate Judiciary Committee (retrieved from
RECAP Archive)

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MARVELLE J. "JAY" BALLENTINE,

     *Plaintiff,*

v.                                                    Case No. 6:26-cv-00376-AGM-DCI

META PLATFORMS, INC., et al.,

     *Defendants.*

## <u>NOTICE OF REFERRAL TO THE UNITED STATES SENATE</u>

## <u>COMMITTEE ON THE JUDICIARY</u>

Plaintiff gives notice that on April 7, 2026, correspondence was transmitted

to the Honorable Charles E. Grassley, Chair, and the Honorable Richard J. Durbin,

Ranking Member, United States Senate Committee on the Judiciary. A true and

correct copy is attached as Exhibit A. This notice is informational. No relief is

requested.

Date: April 7, 2026                                   Respectfully submitted

                                                   Marvelle J. Ballentine
                                                   Plaintiff, *pro se*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 7, 2026, the foregoing was filed with the Clerk of Court via the CM/ECF system, which effectuates service on all counsel of record. A copy was separately transmitted via email to counsel for Meta Platforms, Inc. at sdavis@orrick.com and mvisser@orrick.com.

Marvelle J. Ballentine
Plaintiff, *pro se*

# EXHIBIT A

April 7, 2026

The Honorable Charles E. Grassley
Chair, Committee on the Judiciary
United States Senate
224 Dirksen Senate Office Building
Washington, DC 20510

The Honorable Richard J. Durbin
Ranking Member, Committee on the Judiciary
United States Senate
152 Dirksen Senate Office Building
Washington, DC 20510

**Re: Procedural Conduct of Two Senate-Confirmed Article III District Judges in a Civil Rights Matter Across Two Federal Districts Implicating 18 U.S.C. § 2258A**

Dear Chair Grassley and Ranking Member Durbin:

*"If you are reading this, you are probably thinking about bringing or defending a lawsuit without a lawyer's help."*

*"Federal court can be an intimidating place."*

*"Lawyers go to college for four years, go to law school for three years, prepare for and take a two-day examination to become bar members."*

*"This website may only scratch the surface of what you might need to know in filing, pursuing, and defending a case."*

That is the Middle District of Florida's public-facing guidance to self-represented litigants. It does not cite *Haines v. Kerner*, 404 U.S. 519 (1972).

It does not mention liberal construction. It does not reference 28 U.S.C. § 1654.

A pro se litigant in the Middle District of Florida navigates to that page because he has no other option. He has been permanently terminated from a platform under a Child Sexual Exploitation designation. The designation carries criminal connotation in every professional room he enters. No attorney will accept the case. He navigates to the court's own website looking for guidance on how to vindicate his rights under federal law, and the court tells him that federal court is intimidating, that lawyers train for seven years, and that the website may only scratch the surface of what he needs to know. The guidance does not tell him that the court is required to construe his filings liberally. It does not tell him that 28 U.S.C. § 1654 guarantees his right to appear. It tells him what he is not.

On October 21, 2025, this Committee confirmed Anne-Leigh Gaylord Moe as a United States District Judge for the Middle District of Florida. Five months later, Judge Moe supervised a ten-year Article I magistrate judge as he stripped a pro se civil rights plaintiff of procedural rights that the Local Rules guarantee — rights that remained available to every represented defendant on the same docket. She has not corrected him.

*I am that litigant. I am writing as the plaintiff in three related federal civil rights actions in which the procedural record across two districts and two Senate-confirmed benches has prevented a single binary factual question from reaching the evidentiary record: whether a CyberTipline report was filed on my Facebook account under 18 U.S.C. § 2258A. The record of how that has occurred is now before the United States Court of Appeals for the Eleventh Circuit under 28 U.S.C. § 351(a).*

On July 4, 2022, Meta Platforms, Inc. permanently terminated my Facebook account and the associated right to contract on the platform under its Child Sexual Exploitation policy designation. No content was cited. No report was filed with the National Center for Missing and Exploited Children under 18 U.S.C. § 2258A. Meta publicly represents that it reports "all apparent" CSE to NCMEC. Approximately 80 million CSE-labeled

enforcement actions taken by Meta in 2022 were not reported to NCMEC. Mine was one of them.

**The Northern District of California.** A judge confirmed by this Committee — the Honorable Charles R. Breyer — presided over Case No. 3:25-cv-07671 for five months. In those five months, no defendant filed an answer. No Rule 26(f) conference occurred. No discovery was permitted. The plaintiff's preservation motions were denied. The plaintiff's request for a discovery scheduling directive was denied with prejudice. Every defense request for an extension of time was granted. The hearing on the defendants' motions to dismiss was vacated and rescheduled three times. No hearing was ever held. The plaintiff voluntarily dismissed in February 2026 — five months after filing — before any substantive proceeding took place.

**The Middle District of Florida.** A judge confirmed by this Committee supervised a ten-year Article I magistrate judge as he stripped a pro se civil rights plaintiff of procedural rights that the Local Rules guarantee — rights that remained available to every represented defendant on the same docket. She has not corrected him.

A judge confirmed by this Committee denied — by endorsed order, with no reasoning, on the day it was filed — a motion requesting that the court identify the deficiency in the stricken filings, restore the cure period the Local Rules guarantee, and determine whether the plaintiff had ever been served. She denied the plaintiff access to the information required to comply with her own court's orders.

A judge confirmed by this Committee transferred a case from the division where it was filed and where venue was proper to her own docket, without motion from any party and without notice to me.

The procedural record of this conduct is documented in the attached exhibits with specificity. I am not asking the Committee to accept characterization. I am asking the Committee to read a docket.

**The § 351 complaint.** On April 1, 2026, I filed a complaint with the United States Court of Appeals for the Eleventh Circuit under 28 U.S.C. § 351(a) naming Judge Moe and Magistrate Judge Irick. The Eleventh Circuit is processing the complaint. The complaint does not challenge the correctness of any ruling. It documents the pattern set forth above and places it on file with the circuit.

I am submitting this record to the Committee for two reasons.

First: The Committee's oversight jurisdiction extends to the administration of the federal courts. The record before this Committee documents a procedural pattern across two districts and two Senate-confirmed Article III judges in a civil rights matter alleging racial disparity in the enforcement of a federal child safety reporting obligation. The pattern is preserved on the federal docket and is now before the Eleventh Circuit. The Committee is the institutional location where such a pattern becomes a question the judiciary is required to answer.

Second: The Committee's advice-and-consent function produces the judges who then produce the records the Committee reviews in oversight. The record in my matter is a record produced by judges this Committee confirmed. It is offered in that posture, without characterization, for whatever use the Committee's oversight staff determines is appropriate.

I understand the weight of the designation at issue, and I understand why institutions reasonably keep distance until the underlying fact is established. I would do the same. If a friend told me he had been terminated for CSE, I would step back — as a father, as an adult, out of an abundance of caution — until I knew more. I am asking the Committee to approach this matter with that same caution, not engagement. The specific request is to monitor the dockets quietly as discovery unfolds. Quiet institutional attention is what permits a pro se plaintiff to affirmatively establish — on the record, in open court — whether a CyberTipline report was filed on his account under 18 U.S.C. § 2258A. The answer to that question resolves this matter in one direction or the other. I am asking only that the Committee be in a position to see the answer when it arrives.

I am available to Committee staff for any additional documentation, clarification, or testimony.

Respectfully,

Marvelle J. Ballentine
7862 W. Irlo Bronson Memorial Hwy
#82 Kissimmee,
FL 34747 (407) 794-6503
jayballentine@protonmail.com


Case Nos. 6:26-cv-00376-AGM-DCI; 6:26-cv-00286-AGM-DCI; 5:26-cv-00213-AGM-PRL (M.D. Fla.)

## Exhibits

A. Declaration of Marvelle J. Ballentine (Apr. 1, 2026)

B. Urgent Motion for Recusal, with Tables C–G (Apr. 1, 2026)

C. Complaint of Judicial Misconduct under 28 U.S.C. § 351(a) (Apr. 1, 2026)

D. Petition for Administrative Reassignment under 28 U.S.C. § 137 (Apr. 1, 2026)

E. Final Docket Sheet, Ballentine v. Meta Platforms, Inc., No. 3:25-cv-07671 (N.D. Cal.)

F. Printout of Middle District of Florida "Litigants without Lawyers" webpage

# EXHIBIT E-22

Dkt. 60: Time-Sensitive Petition for Administrative Reassignment under 28 U.S.C. § 137

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

**MARVELLE J. BALLENTINE,**
    Plaintiff,

v.

**META PLATFORMS, INC.,** *et al.,*

    Defendants.
                  Case No. 6:26-cv-00376-AGM-DCI
                  Case No. 6:26-cv-00286-AGM-DCI
                  Case No. 5:26-cv-00213-AGM-PRL

## TIME-SENSITIVE PETITION FOR ADMINISTRATIVE REASSIGNMENT

**TO:** The Honorable Marcia Morales Howard, Chief United States District Judge

This petition is designated time-sensitive under Local Rule 3.01(e). Defendant Accenture LLP was served with interrogatories on March 10–11, 2026, in the state court proceeding before removal. Responses are due April 10, 2026. A videotaped organizational deposition of Accenture LLP is noticed for April 17, 2026. These obligations carried into federal court under 28 U.S.C. § 1450, which provides that all state court orders and discovery "shall be held to be binding" after removal. Accenture's own Notice of Removal attaches exhibits acknowledging service of the discovery package. Case No. 213, Dkt. 1. On April 1, 2026, Case No. 213 was sua sponte transferred to Judge Moe. No scheduling order has been entered. No case management conference has been set. The Case

Management Report is not due until May 4, 2026. Without judicial action before April 10, no enforcement mechanism exists for discovery obligations that are currently running. Plaintiff has incurred costs arranging the April 17 deposition. Plaintiff respectfully requests that the Chief Judge consider this petition by April 9, 2026.

1.     Plaintiff petitions the Chief Judge to exercise her authority under 28 U.S.C. § 137 to reassign the above-captioned cases. Plaintiff does not seek recusal under 28 U.S.C. § 455 and makes no allegation of bias.

## CASES AND COMMON PARTIES

1.     Case No. 376 and Case No. 286 are assigned to District Judge Anne-Leigh Gaylord Moe and Magistrate Judge Daniel C. Irick. Case No. 213 was originally assigned to District Judge Jordan Emery Pratt and Magistrate Judge Philip R. Lammens in the Ocala Division. On April 1, 2026, Judge Pratt sua sponte transferred Case 213 to Judge Moe under Local Rule 1.07(a). Case 213, Dkt. 18, 19. All three cases are now before Judge Moe.

2.     All three cases arise from the same conduct: Facebooks' foreclosure of Plaintiff's right to make and modify contracts on July 4, 2022 under a Child Sexual Exploitation policy designation. Defendant Accenture LLP appears in two of the three cases. Kirkland & Ellis LLP represents Accenture in both cases in which Accenture LLP appears.

2

## **PROCEDURAL RECORD**

1.      On March 30, 2026, the Court struck Plaintiff's timely oppositions to two dispositive motions in Case No. 376 for "failure to comply with Local Rule 3.01(c)" without identifying the deficiency. Dkt. 56; Dkt. 57. The orders imposed a seven-day cure deadline. Local Rule 3.01(d) provides twenty-one days. Plaintiff filed early. The cure period imposed was **shorter** than the original response period.

2.      The orders warned that failure to comply "may result in the imposition of sanctions including, but not limited to, the dismissal of this action." Dkt. 56; Dkt. 57.

3.      On March 23, 2026, the Court struck a defendant's disclosure statement and identified the deficiency: "failure to comply with Local Rule 3.03, which requires the use of the standard form from the Clerk or the Court's website." Dkt. 47. No cure deadline was imposed. No unopposed-treatment warning was issued. No sanctions language was quoted.

4.      Kirkland & Ellis has filed certificates of service in Cases 376 and 286 certifying CM/ECF transmission to "all unrepresented parties." Plaintiff is not a registered CM/ECF user. Fed. R. Civ. P. 5(b)(2)(E) permits electronic service only on registered users or persons who have consented in writing. The docket does not reflect service on Plaintiff by any authorized means. The Court has taken no action.

3

5.     Orrick, Herrington & Sutcliffe LLP filed a motion and notice in Case 376 with no certificates of service. Dkt. 31; Dkt. 38. The Court granted relief on Dkt. 31 the following day. The docket does not reflect service on Plaintiff. The Court has taken no action.

6.     On March 23, 2026, Magistrate Judge Norway recused in Case 376. Dkt. 45. The case was reassigned to Magistrate Judge Irick, who was already assigned to Case No. 286 before the same district judge. Dkt. 46. The continued validity of three orders entered by Magistrate Judge Norway prior to recusal has not been reviewed.

7.     On April 3, 2026, Plaintiff filed a motion in Case No. 376 preserving nineteen issues for appellate review. Each issue is documented with docket citations and grounded in Fed. R. Civ. P. 83(a)(2), Fed. R. Civ. P. 5, Local Rule 3.01, 28 U.S.C. § 455, and the Fifth and Fourteenth Amendments. The motion is attached as Exhibit A.

## AUTHORITY

1.     Under 28 U.S.C. § 137, the Chief Judge "shall be responsible for the observance of such rules and orders, and shall divide the business and assign the cases."

## REQUEST

1.    Plaintiff requests that the Chief Judge reassign Case Nos. 376, 286, and 213 through the district's standard random assignment process, with no overlap of district judges or magistrate judges among the three cases.

2.    Plaintiff seeks symmetric application of the Local Rules, specific identification of any deficiencies, uniform enforcement of service requirements, and procedural treatment consistent with that afforded to defendants.

### Local Rule 3.01(g) Certification

This petition is directed to the Chief Judge's administrative and supervisory authority under 28 U.S.C. § 137. It does not seek relief against any party and is not subject to the conferral requirement of Local Rule 3.01(g).

Dated: April 1, 2026

Marvelle J. Ballentine
*Plaintiff, pro se*
7862 W. Irlo Bronson Memorial Hwy
#82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com

5

## <u>EXHIBITS</u>

**Exhibit A:** Plaintiff's Urgent Motion for Recusal and to Identify Deficiency, Toll

Cure Period, and Clarify Service, Case No. 6:26-cv-00376-AGM-DCI (as filed),

with Tables C through G

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 2, 2026, I filed the foregoing with the Clerk of Court. All counsel of record are registered CM/ECF users and will be served electronically through the Court's CM/ECF system upon docketing.

Marvelle J. Ballentine

Case 6:26-cv-00376-AGM-DCI   Document 91   Filed 04/15/26   Page 365 of 481 PageID
Case 6:26-cv-00376-AGM-DCI   Document 69-1   Filed 04/02/26   Page 2 of 27 PageID
403

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MARVELLE J. BALLENTINE,

 *Plaintiff,*

   v.        Case No. 6:26-cv-00376-AGM-DCI

META PLATFORMS, INC., ACCENTURE LLP,
GENPACT LIMITED, and TASKUS, INC.,

 *Defendants.*

## PLAINTIFF'S URGENT MOTION FOR RECUSAL AND TO IDENTIFY DEFICIENCY, TOLL CURE PERIOD, AND CLARIFY SERVICE

### BASIS FOR EXPEDITED CONSIDERATION

This motion requires resolution before April 6, 2026. The Court's orders at Dkt. 56 and Dkt. 57 direct Plaintiff to file compliant responses by that date but do not identify the deficiency Plaintiff must cure. Unless the Court identifies the deficiency before the cure deadline, Plaintiff cannot comply — and noncompliance will result in two dispositive motions proceeding as unopposed. The relief requested in this motion is a precondition to the compliance the Court's own orders require.

Case 6:26-cv-00376-AGM-DCI    Document 91    Filed 04/15/26    Page 366 of 481 PageID
Case 6:26-cv-00376-AGM-DCI    Document 1093    Filed 04/02/26    Page 3 of 27 PageID
404

### STATEMENT OF ISSUE TO BE DECIDED

Whether this district court may enforce an unspecified local-rule form defect to delete timely *pro se* oppositions, compress the cure period below the original response deadline, and threaten unopposed treatment — where proper service of the underlying motion never occurred and the Court knows the Plaintiff receives notice exclusively by U.S. mail — consistent with Fed. R. Civ. P. 83(a)(2); whether the imposition of compressed deadlines on the *pro se* Plaintiff that systematically align with defense deadlines and produce defense-favorable procedural outcomes reflects conduct consistent with the impartial administration of justice; and whether the cumulative procedural record requires recusal under 28 U.S.C. § 455(a).

### PRIOR PROCEEDINGS: NORTHERN DISTRICT OF CALIFORNIA

On February 17, 2026, Plaintiff filed a Request for Judicial Notice of proceedings in the Northern District of California, Case No. 3:25-cv-07671-CRB. Dkt. 4. The Court has taken no action on that request. The following summary is derived from the official docket of that case and from Exhibit A to Dkt. 4.

Case No. 3:25-cv-07671-CRB was filed on September 9, 2025 and involved two of the defendants in the present action — Meta Platforms, Inc. and Accenture LLP — and claims arising from the same underlying conduct. The case was pending for more than five months. During that period, no Rule 26(f) conference was held, discovery never opened, and the Case Management Conference was vacated and never reset. Every procedural request made by Plaintiff was denied. Every procedural request made by Defendants was granted. Plaintiff voluntarily dismissed the NDCA action on February 13, 2026 and filed the present action on February 17, 2026.

2

Case 6:26-cv-00376-AGM-DCI    Document 91    Filed 04/15/26    Page 367 of 481 PageID
Case 6:26-cv-00376-AGM-DCI    Document 1091    Filed 04/02/26    Page 4 of 27 PageID
405

## PROCEDURAL RECORD: THIS CASE

1.     On February 17, 2026, Plaintiff filed his Complaint. Dkt. 1.

2.     On February 18, 2026, Plaintiff filed a Motion for Leave to Serve Limited Early Discovery. Dkt. 7.

3.     On February 25, 2026, Magistrate Judge Norway denied Plaintiff's Motion for Leave to Serve Limited Early Discovery. Dkt. 18.

4.     On March 4, 2026, Plaintiff filed his Amended Complaint. Dkt. 19.

5.     On March 11, 2026, Judge Moe entered a notice directing the parties to read and comply with the Local Rules. Dkt. 23. The notice stated: "Failure to comply with ANY Local Rules or Court Orders may result in the imposition of sanctions including, but not limited to, the dismissal of this action or entry of default without further notice."

6.     On March 12, 2026, Judge Moe entered a standing order requiring disclosure of third-party litigation funding. Dkt. 25. Plaintiff filed his certification on March 16, 2026. Dkt. 26. The filing was two pages. Plaintiff was afforded approximately ten days.

7.     On March 18, 2026, Defendant Accenture LLP filed a Notice of Appearance (Dkt. 27) and a Motion to Dismiss (Dkt. 29). The certificate of service on Accenture's Motion states: "I HEREBY CERTIFY that on March 18, 2026, I electronically filed the foregoing through Middle District of Florida's CM/ECF System, which will send a copy to all unrepresented parties and counsel of record." Dkt. 29 at 24.

8.     Plaintiff is not registered for CM/ECF. The docket does not reflect service of Accenture's Motion on Plaintiff by any means other than the CM/ECF certification described in the preceding paragraph.

3

Case 6:26-cv-00376-AGM-DCI   Document 91   Filed 04/15/26   Page 368 of 481 PageID
Case 6:26-cv-00376-AGM-DCI   Document 60   Filed 04/02/26   Page 5 of 27 PageID
406

9. On March 19, 2026, Defendant Genpact Limited filed a Motion for Extension of Time to respond to the Amended Complaint. Dkt. 31. The docket does not reflect conferral with Plaintiff before filing. The docket does not reflect a certificate of service for Dkt. 31.

10. On March 20, 2026, Magistrate Judge Norway granted Genpact's Motion for Extension of Time. Dkt. 33. The order extended Genpact's response deadline to April 22, 2026. The order imposed a conferral requirement on all parties with a sanctions warning. The docket does not reflect that Plaintiff was consulted before the extension was granted. The motion on which the Court acted (Dkt. 31) was not accompanied by a certificate of service reflecting service on Plaintiff by any means.

11. On March 20, 2026, Magistrate Judge Norway granted Devin S. Anderson's motion to appear pro hac vice on behalf of Accenture. Dkt. 32. Anderson is a named individual defendant in Plaintiff's related case, No. 6:26-cv-00286-AGM-DCI.

12. On March 20, 2026, Plaintiff filed his Opposition to Accenture's Motion to Dismiss. Dkt. 40. Under Local Rule 3.01(d), if service of Accenture's Motion had been properly effected on March 18, 2026, the response deadline would have been April 8, 2026. Plaintiff filed nineteen days before that deadline.

13. On March 23, 2026, Magistrate Judge Norway entered an order of recusal. Dkt. 45. Between February 25 and March 23, 2026, Magistrate Judge Norway entered three orders in this case: Dkt. 18 (February 25, 2026), Dkt. 32 (March 20, 2026), and Dkt. 33 (March 20, 2026).

14. On March 23, 2026, this case was reassigned to Magistrate Judge Daniel C. Irick. Dkt. 46. Magistrate Judge Irick was already presiding over Plaintiff's related case, No. 6:26-cv-00286-AGM-DCI, before the same district judge.

4

Case 6:26-cv-00376-AGM-DCI    Document 91    Filed 04/15/26    Page 369 of 481 PageID
Case 6:26-cv-00376-AGM-DCI    Document 60-1    Filed 04/02/26    Page 6 of 27 PageID
407

15.    On March 23, 2026, Judge Moe entered an endorsed order striking Defendant TaskUs's Disclosure Statement (Dkt. 37) for failure to comply with Local Rule 3.03. Dkt. 47. The order identified the specific deficiency: "which requires the use of the standard form from the Clerk or the Court's website." The order did not impose a cure deadline. The order did not threaten unopposed treatment. The order did not quote the warning language from Dkt. 23. At the time Dkt. 47 was entered, the docket reflected multiple filings by Kirkland & Ellis LLP with certificates of service certifying CM/ECF transmission to a pro se plaintiff who is not a registered CM/ECF user. The docket also reflected two filings by Orrick, Herrington & Sutcliffe LLP on behalf of Genpact (Dkt. 31 and Dkt. 38) with no certificates of service filed at all. The Court addressed none of these deficiencies.

16.    On March 23, 2026, Defendant TaskUs, Inc. filed a Motion to Dismiss. Dkt. 48. Under Local Rule 3.01(d), the response deadline was April 13, 2026.

17.    On March 24, 2026, Magistrate Judge Irick denied Plaintiff's Motion for Scheduling Directive Regarding Rule 26(f) Conference and Case Management Report. Dkt. 50. This was Magistrate Judge Irick's first substantive action in this case following reassignment. The scheduling directive had documented that Magistrate Judge Norway's grant of Genpact's extension (Dkt. 33) was entered without conferral, eliminating Plaintiff's ability to negotiate concessions during the conferral process. The docket does not reflect that any judicial officer has reviewed the continued validity of the three orders entered by Magistrate Judge Norway prior to his recusal.

Two magistrate judges have presided over this case. Each denied a motion seeking access to discovery as his first substantive action following assignment. The identical scheduling directive filed in the related case, No. 6:26-cv-00286-AGM-DCI, before the same magistrate judge, has not been ruled on.

Case 6:26-cv-00376-AGM-DCI    Document 91    Filed 04/15/26    Page 370 of 481 PageID
Case 6:26-cv-00376-AGM-DCI    Document 60-1    Filed 04/02/26    Page 7 of 27 PageID
408

**Table C: Discovery-Access Rulings**

| D kt. | Date | Magistrate Judge | Plaintiff's Filing | Ruling | First Substantive Action After Assignment | Identical Motion in Case No. 286 |
|---|---|---|---|---|---|---|
| 18 | Feb. 25, 2026 | Norway | Motion for Leave to Serve Limited Early Discovery (Dkt. 7) | Denied | Yes | N/A |
| 50 | Mar. 24, 2026 | Irick | Motion for Scheduling Directive re Rule 26(f) Conference (Dkt. 39) | Denied | Yes | Pending; no ruling as of March 31, 2026 |

18.     On March 27, 2026, Plaintiff filed his Opposition to TaskUs's Motion to Dismiss. Dkt. 53. Plaintiff filed seventeen days before the April 13 deadline.

19.     On March 30, 2026, the Court struck Plaintiff's Opposition to Accenture's Motion (Dkt. 40) for "failure to comply with Local Rule 3.01(c)." Dkt. 56. The order did not identify the deficiency. The order directed Plaintiff to file a compliant response on or before April 6, 2026. The order stated that failure to file a compliant response by that date "may result in the 29 Motion to Dismiss being treated as unopposed." The order quoted the warning language from Dkt. 23: "Failure to comply with ANY Local Rules or Court Orders may result in the imposition of

Case 6:26-cv-00376-AGM-DCI Document 91 Filed 04/15/26 Page 371 of 481 PageID
Case 6:26-cv-00376-AGM-DCI Document 60 31 Filed 04/02/26 Page 8 of 27 PageID
409

sanctions including, but not limited to, the dismissal of this action or entry of default without further notice."

20. On March 30, 2026, the Court struck Plaintiff's Opposition to TaskUs's Motion (Dkt. 53) for "failure to comply with Local Rule 3.01(c)." Dkt. 57. The order did not identify the deficiency. The order imposed the same April 6, 2026 cure deadline. The order quoted the same warning language from Dkt. 23.

21. The April 6, 2026 cure deadline provides seven days from the date of the orders. Plaintiff's original response period under Local Rule 3.01(d) was twenty-one days from service. For Accenture's Motion (Dkt. 29), the cure deadline is two days shorter than the original response period. For TaskUs's Motion (Dkt. 48), the cure deadline is seven days shorter than the original response period. Plaintiff filed both oppositions early. Plaintiff's early filing resulted in a cure period shorter than the time originally available to respond.

22. Plaintiff is not a registered CM/ECF user. The Court is aware of this. Every docket entry made by the Court in this case has been transmitted to Plaintiff by U.S. mail. The Court's own mailing practice confirms its knowledge that Plaintiff does not receive electronic notice of court orders.

23. U.S. mail transmission from the Middle District of Florida to Plaintiff's address takes approximately three days. The orders at Dkt. 56 and Dkt. 57 were entered on March 30, 2026. If transmitted by U.S. mail on the date of entry, Plaintiff would have received them on or about April 2, 2026. The April 6 cure deadline affords approximately four days from receipt — not seven days from entry.

24. Fed. R. Civ. P. 6(d) adds three days to any period measured from service under Rule 5(b)(2)(C) (mail). Rule 6(d) governs party-to-party service, not court orders. The policy it reflects — that the Federal Rules account for mail transmission time when a deadline is triggered by a mailed document — is directly applicable here.

7

Case 6:26-cv-00376-AGM-DCI    Document 91    Filed 04/15/26    Page 372 of 481 PageID
Case 6:26-cv-00376-AGM-DCI    Document 104-1    Filed 04/02/26    Page 9 of 27 PageID
410

The Court imposed a deadline triggered by its own order, transmitted by the same method (U.S. mail) that Rule 6(d) addresses, without accounting for the transmission time that the Federal Rules recognize. The effective cure period — approximately four days — is shorter than the seven days stated in the orders and substantially shorter than the twenty-one days Local Rule 3.01(d) provides.

25.    Under Fed. R. Civ. P. 15(a)(3), Meta's deadline to respond to the Amended Complaint in this case is April 9, 2026. The April 6 cure deadline resolves Plaintiff's procedural posture — whether the oppositions are restored, refiled, or treated as forfeited — three days before Meta must commit to its response. In Case No. 286, Magistrate Judge Irick's seven-day SAC order (Case No. 286, Dkt. 18) imposed a deadline that coincided with the defense response deadline and mooted the defense's pending obligation. In both instances, compressed deadlines imposed exclusively on the *pro se* Plaintiff interacted with defense deadlines in ways that produced defense-favorable procedural outcomes.

### COMPARATIVE RECORD: CASE NO. 6:26-cv-00286-AGM-DCI

Case No. 6:26-cv-00286-AGM-DCI is a related action before the same district judge (Judge Moe) and the same magistrate judge (Magistrate Judge Irick). The same pro se Plaintiff is a party in both cases.

On February 18, 2026, Judge Moe entered a standing order in Case No. 286 requiring disclosure of third-party litigation funding. Case No. 286, Dkt. 21. Plaintiff was afforded approximately ten days. The filing was two pages.

On February 25, 2026, Magistrate Judge Irick entered an order in Case No. 286 directing Plaintiff to file a Second Amended Complaint on or before March 4, 2026. Case No. 286, Dkt. 18. The order required that the Second Amended Complaint identify all defendants and the citizenship of all remaining parties, include all claims,

Case 6:26-cv-00376-AGM-DCI    Document 91    Filed 04/15/26    Page 373 of 481 PageID
Case 6:26-cv-00376-AGM-DCI    Document 1605    Filed 04/02/26    Page 10 of 27 PageID
411

allegations, and parties, and not reference or incorporate any prior pleading. The order provided seven days.

On March 20, 2026, Plaintiff filed his Opposition to the Anderson/Keegan Motion to Dismiss in Case No. 286. Case No. 286, Dkt. 29. That opposition has not been stricken.

## SUA SPONTE CONSOLIDATION: CASE NO. 5:26-cv-00213-AGM-PRL

On March 25, 2026, Accenture removed Case 213 to the Ocala Division. Dkt. 1. The case was assigned to Judge Jordan Emery Pratt. Dkt. 5. Plaintiff filed a motion to transfer to the Orlando Division (Dkt. 9), then withdrew it (Dkt. 15). The court denied the withdrawn motion as moot (Dkt. 17). On April 1, 2026, Judge Pratt sua sponte transferred Case 213 to Judge Moe under Local Rule 1.07(a). Dkt. 18, 19. All three cases are now before Judge Moe.

On March 30, 2026, Magistrate Judge Irick entered orders in the present case directing Plaintiff to refile two oppositions to dispositive motions on or before April 6, 2026. Dkt. 56, Dkt. 57. The orders provided seven days. The orders did not identify the deficiency.

The following table presents the deadlines imposed on the same pro se Plaintiff by the same judicial officers across both related cases.

### Table D: Deadlines Imposed on Plaintiff Across Related Cases

|  | 286 Lit. Funding (Moe) | 376 Lit. Funding (Moe) | 286 SAC (Irick) | 376 Opp. Acc. MTD (Irick) | 376 Opp. TaskUs MTD (Irick) |
|---|---|---|---|---|---|
| **Filing Required** | 2-page certification | 2-page certification | Complete complaint — all claims, all | Opposition to dispositive motion — | Opposition to dispositive motion — |

9

Case 6:26-cv-00376-AGM-DCI    Document 91    Filed 04/15/26    Page 374 of 481 PageID
Case 6:26-cv-00376-AGM-DCI    Document 60-1    Filed 04/02/26    Page 11 of 27 PageID
412

|  |  |  | parties, no incorporation | cure unspecified deficiency | cure unspecified deficiency |
|---|---|---|---|---|---|
| **Days Afforded** | ~10 | ~10 | 7 | 7 | 7 |
| **Standard Period** | N/A | N/A | Court-ordered | 21 days | 21 days |
| **Deficiency Specified** | N/A | N/A | Yes | No | No |
| **Judge** | Moe | Moe | Irick | Irick | Irick |

## SERVICE RECORD: DEFENSE COUNSEL

Three law firms represent defendants. Two have not complied with the service requirements of Fed. R. Civ. P. 5:

Kirkland & Ellis LLP (Accenture): Every certificate of service certifies CM/ECF transmission. Plaintiff is not a registered CM/ECF user and has not consented to electronic service. The docket does not reflect service by any authorized means.

Orrick, Herrington & Sutcliffe LLP (Genpact): No certificate of service filed for Dkt. 31 or Dkt. 38. The Court granted relief on Dkt. 31 the day after filing without any indication Plaintiff was served.

Ogletree Deakins (TaskUs): The docket reflects compliance with service requirements.

The deficiencies are documented in Table E. The Court has not addressed service noncompliance by either noncompliant firm. The Court struck Plaintiff's filings for an unspecified deficiency.

## COMPREHENSIVE DEFICIENCY RECORD

Case 6:26-cv-00376-AGM-DCI Document 91 Filed 04/15/26 Page 375 of 481 PageID
Case 6:26-cv-00376-AGM-DCI Document 60-1 Filed 04/02/26 Page 12 of 27 PageID
413

The following table identifies every filing on the docket with an identifiable procedural deficiency and the Court's action or inaction on each.

**Table E: Filing Deficiencies — Court Action Taken and Not Taken**

| Dkt. | Filed By | Filing | Deficiency | Court Action | Judicial Officer |
|---|---|---|---|---|---|
| 27 | Kirkland & Ellis (Accenture) | Notice of Appearance | Certificate of service certifies CM/ECF to non-registered pro se Plaintiff | None | Moe (docket supervision) |
| 29 | Kirkland & Ellis (Accenture) | Motion to Dismiss | Certificate of service certifies CM/ECF to non-registered pro se Plaintiff; service not effected under Rule 5(b)(2)(E) or Local Rule 1.02(b) | None | Moe / Norway |
| 30 | Kirkland & Ellis (Accenture) | Motion to Appear Pro Hac Vice | Certificate of service certifies CM/ECF to non-registered pro se Plaintiff | None; motion granted (Dkt. 32) | Norway |
| 31 | Orrick (Genpact) | Motion for Extension of Time | No certificate of service filed; Fed. R. Civ. P. 5(a)(1) requires service; Fed. R. Civ. P. 5(d) requires certificate | None; relief granted next day (Dkt. 33) | Norway |
| 37 | Ogletree Deakins (TaskUs) | Disclosure Statement | Wrong form under Local Rule 3.03 | Stricken (Dkt. 47); deficiency identified; no cure | Moe |

Case 6:26-cv-00376-AGM-DCI    Document 91    Filed 04/15/26    Page 376 of 481 PageID
Case 6:26-cv-00376-AGM-DCI    Document 100-1    Filed 04/02/26    Page 13 of 27 PageID
414

| | | | | deadline; no sanctions threat; no dismissal warning | |
|---|---|---|---|---|---|
| 38 | Orrick (Genpact) | Notice of Lead Counsel Designation | No certificate of service filed | None | Moe / Irick |
| 40 | Plaintiff | Opposition to Accenture MTD | "Failure to comply with Local Rule 3.01(c)" — deficiency unspecified | Stricken and deleted (Dkt. 56); 7-day cure deadline; unopposed treatment threatened; Dkt. 23 dismissal warning quoted | Irick |
| 53 | Plaintiff | Opposition to TaskUs MTD | "Failure to comply with Local Rule 3.01(c)" — deficiency unspecified | Stricken and deleted (Dkt. 57); 7-day cure deadline; unopposed treatment threatened; Dkt. 23 dismissal warning quoted | Irick |
| 54 | Kirkland & Ellis (Accenture) | Motion for Leave to File Reply | Directed to a filing (Dkt. 40) that was stricken on the same date | Denied as moot (Dkt. 56); no deficiency noted regarding service certificate | Irick |

Case 6:26-cv-00376-AGM-DCI    Document 91    Filed 04/15/26    Page 377 of 481 PageID
Case 6:26-cv-00376-AGM-DCI    Document 60-9    Filed 04/02/26    Page 14 of 27 PageID
415

Nine filings on the docket contain identifiable procedural deficiencies. Seven are defense filings. Two are Plaintiff's filings. Of the seven defense filings, one received corrective action with precise identification of the defect, no cure deadline, and no sanctions threat (Dkt. 47). Six received no action. Of the two Plaintiff filings, both were stricken, deleted, given compressed cure deadlines, threatened with unopposed treatment, and quoted the Dkt. 23 dismissal warning.

### APPLICABLE LAW

### I.    Fed. R. Civ. P. 83(a)(2)

Rule 83(a)(2) provides: "A local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply."

Local Rule 3.01(c) imposes requirements of form. The orders at Dkt. 56 and Dkt. 57 do not identify which requirement Plaintiff failed to satisfy.

A litigant cannot willfully violate a requirement he cannot identify. The orders do not identify the specific defect. Any noncompliance was nonwillful.

Enforcement through deletion of timely oppositions, compression of the cure period below the original response deadline, and threatened unopposed treatment would cause Plaintiff to lose the right to oppose two dispositive motions. Rule 83(a)(2) prohibits this result.

### II.    Fed. R. Civ. P. 5(b)(2)(E) and Local Rule 1.02(b)

Rule 5(b)(2)(E) permits electronic service only on registered CM/ECF users or persons who have consented in writing. Plaintiff is neither. Local Rule 1.02(b) requires service on non-CM/ECF parties by mail. The service deficiencies are documented in Table E. Local Rule 3.01(d) measures the response period from service. If service was not effected, the response period has not commenced.

13

Case 6:26-cv-00376-AGM-DCI     Document 91     Filed 04/15/26     Page 378 of 481 PageID
Case 6:26-cv-00376-AGM-DCI     Document 60-1     Filed 04/02/26     Page 15 of 27 PageID
416

## III.   Fed. R. Civ. P. 6(d) and the Mail-Delay Principle

Rule 6(d) adds three days to deadlines triggered by mail service, reflecting federal policy that mail transmission time must be accounted for. The Court transmits orders to Plaintiff by U.S. mail. A cure deadline measured from entry, without mail-delay adjustment, imposes an effective deadline shorter than stated. The effective four-day cure period documented in ¶¶ 23-24 is inconsistent with due process.

## IV.   Local Rule 3.01(d)

Local Rule 3.01(d) provides twenty-one days to respond. The cure deadlines imposed by Dkt. 56 and Dkt. 57 are shorter than the original response periods. The deadline math is set forth in ¶ 21.

## V. 28 U.S.C. § 455(a)

Section 455(a) provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

The standard is objective. Recusal is required where a reasonable person, knowing all the circumstances, would harbor doubts about the judge's impartiality. *Liteky v. United States*, 510 U.S. 540, 548 (1994). The inquiry is not whether the judge is actually biased. The inquiry is whether the cumulative procedural record would cause a reasonable observer to question impartiality.

The procedural record relevant to this inquiry is set forth in Tables C through G and the chronological docket history presented in this motion. No single ruling compels recusal. The aggregate is the relevant inquiry under § 455(a).

## ASYMMETRIC ENFORCEMENT

### Table F: Enforcement Disparity

14

Case 6:26-cv-00376-AGM-DCI    Document 91    Filed 04/15/26    Page 379 of 481 PageID
Case 6:26-cv-00376-AGM-DCI    Document 100-1    Filed 04/02/26    Page 16 of 27 PageID
417

|  | Def. TaskUs (Dkt. 37) | Plaintiff (Dkt. 40) | Plaintiff (Dkt. 53) |
|---|---|---|---|
| **Filing** | Disclosure Statement | Opp. to Accenture MTD | Opp. to TaskUs MTD |
| **Rule Cited** | Local Rule 3.03 | Local Rule 3.01(c) | Local Rule 3.01(c) |
| **Deficiency Identified** | Yes — "which requires the use of the standard form from the Clerk or the Court's website" | No | No |
| **Cure Deadline** | None imposed | April 6, 2026 (7 days) | April 6, 2026 (7 days) |
| **Unopposed Treatment Threatened** | No | Yes | Yes |
| **Dismissal Warning Quoted (Dkt. 23)** | No | Yes | Yes |
| **Order** | Dkt. 47 | Dkt. 56 | Dkt. 57 |

The warning language from Dkt. 23 was entered by Judge Moe. It has been quoted to Plaintiff in Dkt. 56 and Dkt. 57. The docket does not reflect that this warning language has been directed to any defendant in this case or in the related case, No. 6:26-cv-00286-AGM-DCI.

On March 23, 2026, Magistrate Judge Norway entered an order of recusal (Dkt. 45) and the case was reassigned to Magistrate Judge Irick (Dkt. 46). On the same date, Judge Moe entered an endorsed order striking one defense filing (Dkt. 47). The following table presents the docket activity on that date.

15

Case 6:26-cv-00376-AGM-DCI    Document 91    Filed 04/15/26    Page 380 of 481 PageID
Case 6:26-cv-00376-AGM-DCI    Document 60-2    Filed 04/02/26    Page 17 of 27 PageID
418

**Table G: Docket Activity — March 23, 2026**

| D kt. | Judicial Officer | Action |
|---|---|---|
| 45 | Norway | Order of recusal |
| 46 | Clerk | Reassignment to Magistrate Judge Irick |
| 47 | Moe | Struck TaskUs disclosure (Dkt. 37); identified deficiency ("which requires the use of the standard form from the Clerk or the Court's website"); no cure deadline; no sanctions threat; no dismissal warning |
| 48 | | TaskUs Filed Motion to Dismiss |

At the time Dkt. 47 was entered, the docket reflected six defense filings with identifiable deficiencies: three Kirkland & Ellis filings with certificates of service certifying CM/ECF transmission to a non-registered pro se party (Dkt. 27, 29, 30) and two Orrick filings with no certificates of service (Dkt. 31, 38), one of which formed the basis for a court order imposing obligations on all parties (Dkt. 33). The Court addressed one defense deficiency — a disclosure statement filed on the wrong form. The Court did not address any deficiency affecting service on the pro se Plaintiff.

Two of three defense firms in this case have failed to comply with the service requirements of Fed. R. Civ. P. 5. One filed certificates of service certifying a method of service that does not reach the pro se Plaintiff. One filed no certificates of service at all. The Court has not stricken, deleted, or otherwise addressed any defense filing for these deficiencies.

In the related case, Plaintiff's Opposition to the Anderson/Keegan Motion to Dismiss (Case No. 286, Dkt. 29) was filed on March 20, 2026 — the same date as the

16

Case 6:26-cv-00376-AGM-DCI   Document 91   Filed 04/15/26   Page 381 of 481 PageID
Case 6:26-cv-00376-AGM-DCI   Document 60-3   Filed 04/02/26   Page 18 of 27 PageID
419

Opposition stricken in this case (Dkt. 40). That opposition was filed by the same Plaintiff, before the same magistrate judge. It has not been stricken.

**STATEMENT OF PRESERVED APPELLATE ISSUES**

Plaintiff preserves the following issues for review by the United States Court of Appeals for the Eleventh Circuit and any subsequent proceeding. Each issue is supported by the procedural record established in this motion and on the docket of this case and the related case, No. 6:26-cv-00286-AGM-DCI.

**Issue 1.**   Whether the Court's deletion of Plaintiff's timely oppositions to two dispositive motions for unspecified "failure to comply with Local Rule 3.01(c)" — without identifying the deficiency — violates Fed. R. Civ. P. 83(a)(2), which prohibits enforcement of a local rule imposing a requirement of form in a way that causes a party to lose any right because of a nonwillful failure to comply. Dkt. 56; Dkt. 57.

**Issue 2.**   Whether *a pro se litigant's* noncompliance with a local rule can be deemed willful when the Court's orders do not identify the specific requirement the litigant failed to satisfy. Dkt. 56; Dkt. 57.

**Issue 3.**   Whether the imposition of a seven-day cure period — shorter than the twenty-one-day response period provided by Local Rule 3.01(d) — on a litigant who filed early is consistent with due process and the Federal Rules. Dkt. 56; Dkt. 57; Local Rule 3.01(d).

**Issue 4.**   Whether a motion to dismiss may be treated as unopposed when the movant's certificate of service certifies CM/ECF transmission to a pro se party who is not a registered CM/ECF user, has not consented in writing to electronic service, and has not been served by any other means reflected on the docket. Dkt. 29 at 24; Fed. R. Civ. P. 5(b)(2)(E); Local Rule 1.02(b).

17

Case 6:26-cv-00376-AGM-DCI    Document 91    Filed 04/15/26    Page 382 of 481 PageID
Case 6:26-cv-00376-AGM-DCI    Document 60-4    Filed 04/02/26    Page 19 of 27 PageID
420

**Issue 5.**    Whether the same magistrate judge's imposition of seven-day deadlines on the same pro se plaintiff in two related cases — seven days to draft a complete complaint in Case No. 286 (Case No. 286, Dkt. 18) and seven days to refile two oppositions to dispositive motions in the present case (Dkt. 56, Dkt. 57) — reflects a pattern of timeline compression inconsistent with the Federal Rules and Local Rules.

**Issue 6.**    Whether asymmetric enforcement of Local Rules — providing a defendant precise identification of its filing deficiency with no cure deadline, no unopposed-treatment threat, and no dismissal warning (Dkt. 47), while providing the pro se plaintiff no identification of his filing deficiency with a compressed cure deadline, unopposed-treatment threat, and dismissal warning (Dkt. 56, Dkt. 57) — is consistent with the equal administration of justice. U.S. Const. amends. V, XIV.

**Issue 7.**    Whether the docket reflects that dismissal-warning language from Dkt. 23 has been directed exclusively to the pro se plaintiff and never to any defendant in this case or the related case, No. 6:26-cv-00286-AGM-DCI.

**Issue 8.**    Whether the failure of two of three defense firms to comply with the service requirements of Fed. R. Civ. P. 5 — one filing certificates certifying CM/ECF transmission to a non-registered pro se plaintiff (Kirkland & Ellis LLP), and one filing no certificates of service at all (Orrick, Herrington & Sutcliffe LLP) — and the Court's silence on both, while striking Plaintiff's filings for an unspecified deficiency, constitutes asymmetric enforcement.

**Issue 9.**    Whether the continued validity of orders entered by Magistrate Judge Norway prior to his recusal (Dkt. 45) — including the grant of a defense extension without conferral with Plaintiff (Dkt. 33) — based on a motion (Dkt. 31) for which no certificate of service was filed and which the docket does not

Case 6:26-cv-00376-AGM-DCI   Document 91   Filed 04/15/26   Page 383 of 481 PageID
Case 6:26-cv-00376-AGM-DCI   Document 101-1   Filed 04/02/26   Page 20 of 27 PageID
421

reflect was served on Plaintiff by any means — which eliminated Plaintiff's ability to negotiate concessions — is consistent with the requirements of 28 U.S.C. § 455 and due process.

**Issue 10.**   Whether the reassignment of this case to the magistrate judge already presiding over Plaintiff's related case before the same district judge (Dkt. 46), following the prior magistrate judge's recusal, is consistent with the requirements of impartial adjudication.

**Issue 11.**   Whether the cumulative procedural record in this case — in which every contested procedural matter has been resolved adversely to Plaintiff — raises a question regarding the impartial administration of justice. U.S. Const. amends. V, XIV.

**Issue 12.**   Whether due process permits a court to grant relief on a motion (Dkt. 31) — extending a defendant's response deadline and imposing conferral obligations on all parties (Dkt. 33) — when the docket does not reflect a certificate of service for the motion, does not reflect service on the opposing party by any means, and the opposing party was afforded no notice or opportunity to oppose the relief before it was granted. U.S. Const. amends. V, XIV; Fed. R. Civ. P. 5(a)(1), 5(d).

**Issue 13.**   Whether the cumulative procedural record set forth in Tables C through G — in which every defense filing deficiency was either ignored or corrected without sanction, and every Plaintiff filing deficiency was met with deletion, compressed cure deadlines, unopposed-treatment threats, and dismissal warnings — requires recusal of the district judge under 28 U.S.C. § 455(a).

**Issue 14.**   Whether the cumulative procedural record set forth in this motion — in which every contested procedural matter has been resolved adversely to

Case 6:26-cv-00376-AGM-DCI    Document 91    Filed 04/15/26    Page 384 of 481 PageID
Case 6:26-cv-00376-AGM-DCI    Document 60    Filed 04/02/26    Page 21 of 27 PageID
422

Plaintiff, timely oppositions were stricken without identification of the deficiency, and the cure period was compressed below the original response deadline — requires recusal of the magistrate judge under 28 U.S.C. § 455(a).

**Issue 15.**    Whether the denial of Plaintiff's discovery-access motions by two successive magistrate judges — each as the magistrate judge's first substantive action in this case — while an identical motion remains pending without ruling in the related case before the same magistrate judge, reflects a pattern of foreclosing discovery inconsistent with the Federal Rules and due process. Dkt. 18; Dkt. 50; Case No. 6:26-cv-00286-AGM-DCI.

**Issue 16.**    Whether a seven-day cure period measured from the date of entry — imposed on a *pro se* plaintiff whom the Court knows receives orders exclusively by U.S. mail, as demonstrated by the Court's own practice of mailing every docket entry to Plaintiff — provides constitutionally adequate notice and opportunity to comply, where U.S. mail transmission reduces the effective cure period to approximately four days, and where Fed. R. Civ. P. 6(d) reflects a federal policy of accounting for mail transmission time when deadlines are triggered by service under Rule 5(b)(2)(C). U.S. Const. amends. V, XIV; Fed. R. Civ. P. 6(d).

**Issue 17.**    Whether the imposition of compressed seven-day deadlines on the *pro se* Plaintiff that systematically interact with defense deadlines — seven days to file a Second Amended Complaint in Case No. 286, coinciding with the defense response deadline and mooting the defense's pending obligation (Case No. 286, Dkt. 18); and seven days to cure unspecified deficiencies in Case No. 376, resolving Plaintiff's procedural posture three days before Meta's response deadline under Fed. R. Civ. P. 15(a)(3) (Dkt. 56; Dkt. 57) — reflects a pattern of compressed deadlines imposed exclusively on the *pro se* Plaintiff that produce

Case 6:26-cv-00376-AGM-DCI   Document 91   Filed 04/15/26   Page 385 of 481 PageID
Case 6:26-cv-00376-AGM-DCI   Document 60-1   Filed 04/02/26   Page 22 of 27 PageID
423

defense-favorable procedural outcomes inconsistent with the impartial administration of justice. U.S. Const. amends. V, XIV; 28 U.S.C. § 455(a).

**Issue 18.**   Whether the cumulative pattern of judicial conduct documented in this motion — asymmetric enforcement of procedural requirements, unidentified deficiencies, compressed deadlines calibrated to defense timelines, silence on defense service failures, and timeline compression imposed on a plaintiff the Court knows receives notice exclusively by U.S. mail — constitutes judicial coercion of a *pro se* litigant inconsistent with the due process guarantees of the Fifth and Fourteenth Amendments and the impartial administration of justice required by 28 U.S.C. § 455(a).

**Issue 19.**   Whether the sua sponte transfer of Case No. 5:26-cv-00213-AGM-PRL from the Ocala Division to Judge Moe — after Plaintiff withdrew his transfer motion and the court denied it as moot — consolidating all three cases before the district judge whose conduct is documented herein, two days after the March 30 orders, is consistent with impartial administration of justice. Case 213, Dkt. 15, 17, 18, 19; 28 U.S.C. § 455(a).

These issues are preserved regardless of the Court's disposition of this motion. A ruling granting the relief requested will resolve certain issues on the merits. A ruling denying the relief requested, or the absence of a ruling, will preserve all issues for appellate review upon entry of a final order.

Plaintiff is a pro se litigant proceeding without resources comparable to those available to the defendants in this action. Plaintiff has complied with every deadline imposed by this Court. Plaintiff has met every filing obligation. Plaintiff has conferred when required to confer. Plaintiff has served when required to serve. Plaintiff has not

Case 6:26-cv-00376-AGM-DCI    Document 91    Filed 04/15/26    Page 386 of 481 PageID
Case 6:26-cv-00376-AGM-DCI    Document160-1    Filed 04/02/26    Page 23 of 27 PageID
424

sought disqualification of opposing counsel, notwithstanding a procedural record that would support such relief. Plaintiff has pursued his claims through orderly process at every stage — in the Northern District of California, in this Court, and in related proceedings before this Court. The procedural record is what it is. Plaintiff did not create it. Plaintiff has documented it. That record now requires Plaintiff to ask whether the judicial officers presiding over this case can administer it impartially. Plaintiff makes that request under 28 U.S.C. § 455(a), on the basis of the cumulative procedural record set forth in this motion, and with the same confidence in orderly process that has governed his conduct throughout these proceedings. Should this matter require further proceedings beyond this Court, Plaintiff is prepared to continue for as long as the process requires. Plaintiff's commitment to these claims is not contingent on the convenience of any party or the pace of any docket. It is grounded in an unshakable confidence that the federal judiciary — across every level of review to which a litigant is entitled — will administer justice impartially when presented with a complete record. With that confidence, Plaintiff continues to proceed, *pro se*.[1]

---

[1] Government cannot make us equal; it can only recognize, respect, and protect us as equal before the law." *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 240 (1995) (Thomas, J., concurring in part and concurring in the judgment). "The Framers ensured that judges would decide cases according to the rule of law, and not of men." Clarence Thomas, Assoc. Justice, Supreme Court of the United States, Address Before the Federalist Society, National Lawyers Convention (Nov. 12, 1999). "In my humble opinion, those who come to engage in debates of consequence, and who challenge accepted wisdom, should expect to be treated badly. Nonetheless, they must stand undaunted. That is required. And that should be expected. For it is **bravery** that is required to secure freedom." Clarence Thomas, Assoc. Justice, Supreme Court of the United States, Address Before the National Bar Association, Memphis, Tennessee (July 28, 1998).

Case 6:26-cv-00376-AGM-DCI  Document 91  Filed 04/15/26  Page 387 of 481 PageID
Case 6:26-cv-00376-AGM-DCI  Document 160-4  Filed 04/02/26  Page 24 of 27 PageID
425

**RELIEF REQUESTED**

The procedural record requires the following:

A.      The Court shall identify the specific Local Rule 3.01(c) deficiency in Plaintiff's Oppositions (Dkt. 40 and Dkt. 53) so that Plaintiff may cure the deficiency.

B.      The cure period shall be tolled until the Court identifies the deficiency. Upon identification, Plaintiff shall be afforded twenty-one days to file compliant responses — the same period Local Rule 3.01(d) provides for the original response.

C.      Any deadline imposed on Plaintiff by this Court shall account for the time required for U.S. mail transmission from the Court to Plaintiff's address, consistent with the policy reflected in Fed. R. Civ. P. 6(d). Deadlines measured from the date of order entry, without adjustment for mail transmission, deprive Plaintiff of the effective compliance period stated in the order.

D.      The Court shall determine whether service of Accenture's Motion to Dismiss (Dkt. 29) was effected consistent with Fed. R. Civ. P. 5(b)(2)(E) and Local Rule 1.02(b). If service was not effected, Accenture shall be directed to serve the Motion by means authorized under Rule 5 before any response deadline commences.

E.      The Court shall determine whether Genpact's Motion for Extension of Time (Dkt. 31) was served on Plaintiff consistent with Fed. R. Civ. P. 5(a)(1) and 5(d). The docket does not reflect a certificate of service for Dkt. 31 or for Genpact's Notice of Lead Counsel Designation (Dkt. 38). If service was not effected, the Court shall determine the continued validity of the order granting the relief requested in that motion (Dkt. 33).

F.      The district judge shall determine whether recusal is required under 28 U.S.C. § 455(a) in light of the procedural record set forth in this motion, including the

23

Case 6:26-cv-00376-AGM-DCI     Document 91     Filed 04/15/26     Page 388 of 481 PageID
Case 6:26-cv-00376-AGM-DCI     Document 60     Filed 04/02/26     Page 25 of 27 PageID
426

selective enforcement documented in Tables E, F, and G, and the exclusive direction of the Dkt. 23 warning language to the pro se Plaintiff.

G.      The magistrate judge shall determine whether recusal is required under 28 U.S.C. § 455(a) in light of the procedural record set forth in this motion, including the deletion of Plaintiff's timely oppositions without identification of the deficiency, the compression of the cure period below the original response deadline, and the resolution of every contested procedural matter adversely to Plaintiff.

H.      Upon a determination that recusal is required, the Court shall direct the Clerk to reassign this case, the related case No. 6:26-cv-00286-AGM-DCI, and Case No. 5:26-cv-00213-AGM-PRL, through the district's standard random assignment process, with no overlap of judicial officers among the three cases.

I.      Such other relief as is consistent with the procedural record and applicable law.

Dated: April 1, 2026                              Respectfully submitted,

Marvelle J. Ballentine
Plaintiff, *pro se*
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com

24

Case 6:26-cv-00376-AGM-DCI    Document 91    Filed 04/15/26    Page 389 of 481 PageID
Case 6:26-cv-00376-AGM-DCI    Document 60-1    Filed 04/02/26    Page 26 of 27 PageID
427

## LOCAL RULE 3.01(g) CERTIFICATION

On April 1, 2026, Plaintiff contacted counsel for Accenture, TaskUs, and Genpact regarding the relief requested in this motion and requested a response the same day. No substantive conferral was completed before filing. Plaintiff files this motion in light of the Court's April 6, 2026 deadline and will promptly supplement this certification after completing the conferral process required by Local Rule 3.01(g)(3).

Dated: April 1, 2026                                   Respectfully submitted,

Marvelle J. Ballentine
Plaintiff, *pro se*
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com

Case 6:26-cv-00376-AGM-DCI    Document 91    Filed 04/15/26    Page 390 of 481 PageID
Case 6:26-cv-00376-AGM-DCI    Document 60-1    Filed 04/02/26    Page 27 of 27 PageID
428

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 2, 2026, I filed the foregoing with the Clerk

of Court. All counsel of record are registered CM/ECF users and will be served

electronically through the Court's CM/ECF system upon docketing.

Marvelle J. Ballentine

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

In re Complaint of Judicial Misconduct

Against: The Honorable Anne-Leigh Gaylord Moe, United States District Judge, Middle District of Florida; and The Honorable Daniel C. Irick, United States Magistrate Judge, Middle District of Florida

## COMPLAINT OF JUDICIAL MISCONDUCT
### Under 28 U.S.C. § 351(a)

### I. COMPLAINANT AND STATUTORY STANDARD

1.      Marvelle J. Ballentine, proceeding pro se, files this complaint under 28 U.S.C. § 351(a). Complainant is a party in three related civil actions in the Middle District of Florida: Case No. 6:26-cv-00376-AGM-DCI, Case No. 6:26-cv-00286-AGM-DCI, and Case No. 5:26-cv-00213-JEP-PRL. Cases 376 and 286 are assigned to Judge Moe and Magistrate Judge Irick. All three cases arise from Facebooks' foreclosure of Plaintiff's right to make and modify contracts on July 4, 2022 under a Child Sexual Exploitation policy designation.

2.      This complaint does not challenge the correctness of any ruling. It identifies a pattern of court administration — repeated across two related cases, by two judicial officers, directed exclusively at one party — in which the mechanism of time compression forfeited the pro se plaintiff's procedural rights while producing collateral procedural benefits for the opposing parties. The full docket-documented record is set forth in the motion attached as Exhibit A, including Tables C through G.

### II. THE PATTERN: TIME COMPRESSION AND RIGHTS FORFEITURE

3.      Each instance follows the same structure: the court imposed a compressed deadline exclusively on the pro se plaintiff; the deadline forfeited a specific procedural right; and the forfeiture produced a benefit for the defense that the defense did not request and could not have obtained through its own motion practice. This complaint presents the cumulative pattern, not any individual ruling, for evaluation under the statutory standard.

4.      **Forfeiture of the right to negotiate discovery concessions.** On March 19, 2026, Defendant Genpact filed a Motion for Extension of Time in

Case 376 (Dkt. 31). The docket reflects no certificate of service and no conferral with Complainant. One day later, Magistrate Judge Norway granted the motion (Dkt. 33), extending Genpact's deadline to April 22, 2026 and imposing conferral obligations on all parties. The docket does not reflect that Complainant was served with the motion or consulted before the court acted. Complainant was not aware the motion existed until after it was granted. In every other case across two federal districts, Complainant had applied a standard fourteen-day extension framework during conferral. The court's grant of a twenty-eight-day extension — without notice, without conferral, without service — eliminated Complainant's ability to negotiate a reciprocal framework for the Rule 26(f) conference. See Exhibit A, ¶¶ 9–10, 17.

5.    **Forfeiture of the right to respond on the original timeline.** On February 25, 2026, Magistrate Judge Irick ordered Complainant to file a Second Amended Complaint in Case 286 within seven days (Case 286, Dkt. 18). The order required all claims, all parties, and no incorporation by reference. The seven-day deadline coincided with the defense response deadline. Complainant's compliance mooted the defense's pending obligation. The defense received a deadline reset it did not request, produced by a court order directed at Complainant. See Exhibit A, *Comparative Record.*

6.    **Forfeiture of access to discovery.** Two magistrate judges have presided over Case 376. Each denied a motion by Complainant seeking access to discovery as his first substantive action following assignment: Magistrate Judge Norway (Dkt. 18, Feb. 25, 2026) and Magistrate Judge Irick (Dkt. 50, Mar. 24, 2026). An identical motion filed in Case 286 before the same magistrate judge has not been ruled on. See Exhibit A, ¶¶ 2–3, 17, Table C.

7.    **Forfeiture of the right to oppose two dispositive motions.** On March 20 and March 27, 2026, Complainant filed timely oppositions to motions to dismiss by Accenture (Dkt. 40) and TaskUs (Dkt. 53) in Case 376 — nineteen and seventeen days before their respective deadlines. On March 30, Magistrate Judge Irick struck both for "failure to comply with Local Rule 3.01(c)" without identifying the deficiency (Dkt. 56; Dkt. 57). The orders imposed an April 6 cure deadline — seven days from entry. The orders threatened unopposed treatment and quoted dismissal-warning language that has never appeared in any order directed to any defendant in Case 376 or Case 286. The cure period was shorter than the original twenty-one-day response period. Accenture's motion was never

properly served — its certificate of service certifies CM/ECF transmission to a pro se plaintiff who is not a CM/ECF registrant and has not consented to electronic service. Fed. R. Civ. P. 83(a)(2) prohibits enforcement of a form requirement in a way that causes rights loss through nonwillful noncompliance. Noncompliance with a requirement the litigant cannot identify is not willful. See Exhibit A, ¶¶ 7–8, 18–22, Tables E and F.

### III. MAIL-DELAY COMPOUNDING AND DEADLINE ALIGNMENT

8. The court knows Complainant receives orders exclusively by U.S. mail — the court's own practice of mailing every docket entry to Complainant confirms this. U.S. mail takes approximately three days. The March 30 orders would have reached Complainant on or about April 2, leaving approximately four days — not seven — to cure an unidentified deficiency in two opposition briefs to dispositive motions, while proceeding pro se without CM/ECF access or electronic alerts. Fed. R. Civ. P. 6(d) reflects a federal policy of accounting for mail transmission time. The court imposed a deadline triggered by its own order, transmitted by U.S. mail, without accounting for the transmission time the Federal Rules recognize. See Exhibit A, ¶¶ 22–24.

9. The April 6 cure deadline resolved Complainant's procedural posture three days before Meta's April 9 response deadline under Fed. R. Civ. P. 15(a)(3). In Case 286, the seven-day SAC order coincided with the defense response deadline and mooted the defense's pending obligation. In both instances, compressed deadlines imposed exclusively on the pro se plaintiff interacted with defense deadlines in ways that produced defense-favorable procedural outcomes. See Exhibit A, ¶ 25, *Comparative Record.*

### IV. ASYMMETRIC ENFORCEMENT AND SUPERVISORY INACTION

10. Nine filings on the Case 376 docket contain identifiable procedural deficiencies. Seven are defense filings. Two are Complainant's. Of the seven defense filings, one received corrective action with identified deficiency, no cure deadline, and no sanctions threat (Dkt. 47). Six received no action. Of the two Complainant filings, both were stricken, deleted, given compressed cure deadlines, threatened with unopposed treatment, and quoted dismissal-warning language. The Dkt. 23 warning language has never been directed to any defendant

in Case 376 or Case 286. See Exhibit A, *Service Record, Asymmetric Enforcement,* Tables E, F, and G.

11.    Judge Moe reviewed the docket on March 23, 2026, identified a defense filing on the wrong form (Dkt. 47), and did not address defense service failures affecting Complainant — including certificates certifying CM/ECF transmission to a non-registered pro se plaintiff and filings with no certificates of service. Seven days later, Magistrate Judge Irick deleted Complainant's timely oppositions under her supervision. Judge Moe has taken no supervisory action. See Exhibit A, *Asymmetric Enforcement.*

### V. THIS COMPLAINT IS NOT MERITS-RELATED

12.    Rule 4(b)(1) excludes allegations "directly related to the merits of a decision or procedural ruling." The Commentary provides that such allegations — "without more" — are merits-related. This complaint presents the "more": a unidirectional pattern of compressed deadlines imposed exclusively on one party, systematically aligned with opposing-party timelines, compounded by known mail delay, and enforced through deletion, sanctions threats, and dismissal warnings never directed at any other party. The Commentary on Rule 4(b)(2) confirms that "an allegation of a habitual pattern" arising from "an improper motive, is not merits-related." No individual ruling is presented as the misconduct. The pattern of administration is the misconduct.

### VI. PREJUDICE TO THE ADMINISTRATION OF THE COURTS

13.    The conduct documented in this complaint is "prejudicial to the effective and expeditious administration of the business of the courts" under 28 U.S.C. § 351(a) because it communicates that procedural rules in the Middle District of Florida are not administered impartially as between pro se plaintiffs and represented defendants. Complainant has alleged in Case 376 that attorneys declined representation because of the CSE designation. The procedural record compounds that barrier. A future litigant who proceeds pro se confronts the same method: compressed deadlines, unidentified deficiencies, mail-delay disregard, and the systematic forfeiture of procedural rights without adjudication on the merits. If unremedied, this conduct does not foreclose justice for one plaintiff — it communicates to every similarly situated person that the process is not administered impartially.

## VII. EXHIBITS

Exhibit A: Plaintiff's Urgent Motion for Recusal and to Identify Deficiency, Toll Cure Period, and Clarify Service, Case No. 6:26-cv-00376-AGM-DCI (as filed), with Tables C through G

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on April 1, 2026.

Marvelle J. Ballentine
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MARVELLE J. BALLENTINE,

   *Plaintiff,*

v.

Case No. 6:26-cv-00376-AGM-DCI
Case No. 6:26-cv-00286-AGM-DCI
Case No. 5:26-cv-00213-AGM-PRL

META PLATFORMS, INC., et al

   *Defendants.*

## DECLARATION OF MARVELLE J. BALLENTINE IN SUPPORT OF PLAINTIFF'S URGENT MOTION FOR RECUSAL AND TO IDENTIFY DEFICIENCY, TOLL CURE PERIOD, AND CLARIFY SERVICE

I, Marvelle J. Ballentine, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

A United States magistrate judge in the Middle District of Florida, clothed in the authority of Article I, seated in a courthouse built to administer justice impartially, issued an order on March 30, 2026 that deleted two timely oppositions to dispositive motions, declined to identify the deficiency, compressed the cure period below the twenty-one days the Local Rules provide, threatened to treat the motions as unopposed, and quoted dismissal-warning language that has never appeared in any order

directed to any defendant in this case or its related proceeding. The magistrate judge's function is to enforce the rules. The magistrate judge used that function to unmake them—but only against me.

An Article III judge in the Middle District of Florida—appointed for life, confirmed by the United States Senate, vested with the judicial power of the United States under the Constitution—conducted a docket review on March 23, 2026. She reviewed the filings. She identified a disclosure statement submitted on the wrong form. She struck it. She specified the deficiency with precision: "which requires the use of the standard form from the Clerk or the Court's website." She imposed no cure deadline. She issued no sanctions warning. She quoted no dismissal language.

On that same docket, on that same day, sat a Motion to Dismiss filed by Kirkland & Ellis with a certificate of service certifying CM/ECF transmission to a pro se plaintiff who is not registered for CM/ECF and has never consented to electronic service. On that same docket sat a Motion for Extension filed by Orrick with no certificate of service at all—a motion granted the day after filing, imposing conferral obligations on all parties, without any indication I was ever told it existed.

Judge Moe found the wrong form. Judge Moe did not find the unserved plaintiff.

Seven days later, her magistrate judge deleted my oppositions, declined to tell me why, compressed my cure period below what the rules provide, and quoted dismissal-warning language that has never appeared in any order directed to any defendant in any case I have filed before this Court. Judge Moe supervises Magistrate Judge Irick. Judge Moe has issued no order, no correction, no clarification. Judge Moe watched her magistrate judge strip procedural rights from a self-represented litigant and has said nothing.

The procedural record and my own experience have led me to the conclusion that what has occurred is a miscarriage of justice against a pro se litigant in a civil rights matter. The judges should recuse themselves out of respect for the rule of law, procedure, and the oath of office they took.

While I believe recusal is warranted by this record, that is not my choice to make. Should the judges choose not to recuse themselves they should know I will faithfully comply with ever order, every rule, and every deadline. The judges should know that while my intent is to continue to comply with everything I am instructed to do, I will do so out of obligation to the Rule of Law and the Rules of Procedure and not out of respect for the individuals occupying the robe.

Should the judges not recuse themselves, they should know that these Federal Actions are no longer about me. Every *pro se* litigant with plausible claims for relief and who is willing to play by the rules should have their day(s) in Court. I intend to proceed with those individuals in mind.

So help me God.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 1, 2026

Marvelle J. Ballentine

# EXHIBIT E-23

Dkt. 61: Urgent Motion for Recusal (with Tables C–G; Exhibits A, B)

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARVELLE J. BALLENTINE,

    *Plaintiff,*

    v.                            Case No. 6:26-cv-00376-AGM-DCI


META PLATFORMS, INC., ACCENTURE LLP,
GENPACT LIMITED, and TASKUS, INC.,

    *Defendants.*

## PLAINTIFF'S URGENT MOTION FOR RECUSAL AND TO IDENTIFY

## DEFICIENCY, TOLL CURE PERIOD, AND CLARIFY SERVICE

### BASIS FOR EXPEDITED CONSIDERATION

This motion requires resolution before April 6, 2026. The Court's orders at

Dkt. 56 and Dkt. 57 direct Plaintiff to file compliant responses by that date but do

not identify the deficiency Plaintiff must cure. Unless the Court identifies the

deficiency before the cure deadline, Plaintiff cannot comply — and noncompliance

will result in two dispositive motions proceeding as unopposed. The relief

requested in this motion is a precondition to the compliance the Court's own orders

require.

## STATEMENT OF ISSUE TO BE DECIDED

Whether this district court may enforce an unspecified local-rule form defect to delete timely *pro se* oppositions, compress the cure period below the original response deadline, and threaten unopposed treatment — where proper service of the underlying motion never occurred and the Court knows the Plaintiff receives notice exclusively by U.S. mail — consistent with Fed. R. Civ. P. 83(a)(2); whether the imposition of compressed deadlines on the *pro se* Plaintiff that systematically align with defense deadlines and produce defense-favorable procedural outcomes reflects conduct consistent with the impartial administration of justice; and whether the cumulative procedural record requires recusal under 28 U.S.C. § 455(a).

## PRIOR PROCEEDINGS: NORTHERN DISTRICT OF CALIFORNIA

On February 17, 2026, Plaintiff filed a Request for Judicial Notice of proceedings in the Northern District of California, Case No. 3:25-cv-07671-CRB. Dkt. 4. The Court has taken no action on that request. The following summary is derived from the official docket of that case and from Exhibit A to Dkt. 4.

Case No. 3:25-cv-07671-CRB was filed on September 9, 2025 and involved two of the defendants in the present action — Meta Platforms, Inc. and Accenture LLP — and claims arising from the same underlying conduct. The case was pending for more than five months. During that period, no Rule 26(f) conference was held, discovery never opened, and the Case Management Conference was vacated and never reset. Every procedural request made by Plaintiff was denied. Every procedural request made by Defendants was granted. Plaintiff voluntarily dismissed the NDCA action on February 13, 2026 and filed the present action on February 17, 2026.

2

## PROCEDURAL RECORD: THIS CASE

1.    On February 17, 2026, Plaintiff filed his Complaint. Dkt. 1.

2.    On February 18, 2026, Plaintiff filed a Motion for Leave to Serve Limited Early Discovery. Dkt. 7.

3.    On February 25, 2026, Magistrate Judge Norway denied Plaintiff's Motion for Leave to Serve Limited Early Discovery. Dkt. 18.

4.    On March 4, 2026, Plaintiff filed his Amended Complaint. Dkt. 19.

5.    On March 11, 2026, Judge Moe entered a notice directing the parties to read and comply with the Local Rules. Dkt. 23. The notice stated: "Failure to comply with ANY Local Rules or Court Orders may result in the imposition of sanctions including, but not limited to, the dismissal of this action or entry of default without further notice."

6.    On March 12, 2026, Judge Moe entered a standing order requiring disclosure of third-party litigation funding. Dkt. 25. Plaintiff filed his certification on March 16, 2026. Dkt. 26. The filing was two pages. Plaintiff was afforded approximately ten days.

7.    On March 18, 2026, Defendant Accenture LLP filed a Notice of Appearance (Dkt. 27) and a Motion to Dismiss (Dkt. 29). The certificate of service on Accenture's Motion states: "I HEREBY CERTIFY that on March 18, 2026, I electronically filed the foregoing through Middle District of Florida's CM/ECF System, which will send a copy to all unrepresented parties and counsel of record." Dkt. 29 at 24.

8.    Plaintiff is not registered for CM/ECF. The docket does not reflect service of Accenture's Motion on Plaintiff by any means other than the CM/ECF certification described in the preceding paragraph.

3

9. On March 19, 2026, Defendant Genpact Limited filed a Motion for Extension of Time to respond to the Amended Complaint. Dkt. 31. The docket does not reflect conferral with Plaintiff before filing. The docket does not reflect a certificate of service for Dkt. 31.

10. On March 20, 2026, Magistrate Judge Norway granted Genpact's Motion for Extension of Time. Dkt. 33. The order extended Genpact's response deadline to April 22, 2026. The order imposed a conferral requirement on all parties with a sanctions warning. The docket does not reflect that Plaintiff was consulted before the extension was granted. The motion on which the Court acted (Dkt. 31) was not accompanied by a certificate of service reflecting service on Plaintiff by any means.

11. On March 20, 2026, Magistrate Judge Norway granted Devin S. Anderson's motion to appear pro hac vice on behalf of Accenture. Dkt. 32. Anderson is a named individual defendant in Plaintiff's related case, No. 6:26-cv-00286-AGM-DCI.

12. On March 20, 2026, Plaintiff filed his Opposition to Accenture's Motion to Dismiss. Dkt. 40. Under Local Rule 3.01(d), if service of Accenture's Motion had been properly effected on March 18, 2026, the response deadline would have been April 8, 2026. Plaintiff filed nineteen days before that deadline.

13. On March 23, 2026, Magistrate Judge Norway entered an order of recusal. Dkt. 45. Between February 25 and March 23, 2026, Magistrate Judge Norway entered three orders in this case: Dkt. 18 (February 25, 2026), Dkt. 32 (March 20, 2026), and Dkt. 33 (March 20, 2026).

14. On March 23, 2026, this case was reassigned to Magistrate Judge Daniel C. Irick. Dkt. 46. Magistrate Judge Irick was already presiding over Plaintiff's related case, No. 6:26-cv-00286-AGM-DCI, before the same district judge.

4

15.     On March 23, 2026, Judge Moe entered an endorsed order striking Defendant TaskUs's Disclosure Statement (Dkt. 37) for failure to comply with Local Rule 3.03. Dkt. 47. The order identified the specific deficiency: "which requires the use of the standard form from the Clerk or the Court's website." The order did not impose a cure deadline. The order did not threaten unopposed treatment. The order did not quote the warning language from Dkt. 23. At the time Dkt. 47 was entered, the docket reflected multiple filings by Kirkland & Ellis LLP with certificates of service certifying CM/ECF transmission to a pro se plaintiff who is not a registered CM/ECF user. The docket also reflected two filings by Orrick, Herrington & Sutcliffe LLP on behalf of Genpact (Dkt. 31 and Dkt. 38) with no certificates of service filed at all. The Court addressed none of these deficiencies.

16.     On March 23, 2026, Defendant TaskUs, Inc. filed a Motion to Dismiss. Dkt. 48. Under Local Rule 3.01(d), the response deadline was April 13, 2026.

17.     On March 24, 2026, Magistrate Judge Irick denied Plaintiff's Motion for Scheduling Directive Regarding Rule 26(f) Conference and Case Management Report. Dkt. 50. This was Magistrate Judge Irick's first substantive action in this case following reassignment. The scheduling directive had documented that Magistrate Judge Norway's grant of Genpact's extension (Dkt. 33) was entered without conferral, eliminating Plaintiff's ability to negotiate concessions during the conferral process. The docket does not reflect that any judicial officer has reviewed the continued validity of the three orders entered by Magistrate Judge Norway prior to his recusal.

Two magistrate judges have presided over this case. Each denied a motion seeking access to discovery as his first substantive action following assignment. The identical scheduling directive filed in the related case, No. 6:26-cv-00286-AGM-DCI, before the same magistrate judge, has not been ruled on.

## Table C: Discovery-Access Rulings

| Dkt. | Date | Magistrate Judge | Plaintiff's Filing | Ruling | First Substantive Action After Assignment | Identical Motion in Case No. 286 |
|---|---|---|---|---|---|---|
| 18 | Feb. 25, 2026 | Norway | Motion for Leave to Serve Limited Early Discovery (Dkt. 7) | Denied | Yes | N/A |
| 50 | Mar. 24, 2026 | Irick | Motion for Scheduling Directive re Rule 26(f) Conference (Dkt. 39) | Denied | Yes | Pending; no ruling as of March 31, 2026 |

18. On March 27, 2026, Plaintiff filed his Opposition to TaskUs's Motion to Dismiss. Dkt. 53. Plaintiff filed seventeen days before the April 13 deadline.

19. On March 30, 2026, the Court struck Plaintiff's Opposition to Accenture's Motion (Dkt. 40) for "failure to comply with Local Rule 3.01(c)." Dkt. 56. The order did not identify the deficiency. The order directed Plaintiff to file a compliant response on or before April 6, 2026. The order stated that failure to file a compliant response by that date "may result in the 29 Motion to Dismiss being treated as unopposed." The order quoted the warning language from Dkt. 23: "Failure to comply with ANY Local Rules or Court Orders may result in the imposition of

6

sanctions including, but not limited to, the dismissal of this action or entry of default without further notice."

20.   On March 30, 2026, the Court struck Plaintiff's Opposition to TaskUs's Motion (Dkt. 53) for "failure to comply with Local Rule 3.01(c)." Dkt. 57. The order did not identify the deficiency. The order imposed the same April 6, 2026 cure deadline. The order quoted the same warning language from Dkt. 23.

21.   The April 6, 2026 cure deadline provides seven days from the date of the orders. Plaintiff's original response period under Local Rule 3.01(d) was twenty-one days from service. For Accenture's Motion (Dkt. 29), the cure deadline is two days shorter than the original response period. For TaskUs's Motion (Dkt. 48), the cure deadline is seven days shorter than the original response period. Plaintiff filed both oppositions early. Plaintiff's early filing resulted in a cure period shorter than the time originally available to respond.

22.   Plaintiff is not a registered CM/ECF user. The Court is aware of this. Every docket entry made by the Court in this case has been transmitted to Plaintiff by U.S. mail. The Court's own mailing practice confirms its knowledge that Plaintiff does not receive electronic notice of court orders.

23.   U.S. mail transmission from the Middle District of Florida to Plaintiff's address takes approximately three days. The orders at Dkt. 56 and Dkt. 57 were entered on March 30, 2026. If transmitted by U.S. mail on the date of entry, Plaintiff would have received them on or about April 2, 2026. The April 6 cure deadline affords approximately four days from receipt — not seven days from entry.

24.   Fed. R. Civ. P. 6(d) adds three days to any period measured from service under Rule 5(b)(2)(C) (mail). Rule 6(d) governs party-to-party service, not court orders. The policy it reflects — that the Federal Rules account for mail transmission time when a deadline is triggered by a mailed document — is directly applicable here.

7

The Court imposed a deadline triggered by its own order, transmitted by the same method (U.S. mail) that Rule 6(d) addresses, without accounting for the transmission time that the Federal Rules recognize. The effective cure period — approximately four days — is shorter than the seven days stated in the orders and substantially shorter than the twenty-one days Local Rule 3.01(d) provides.

25.    Under Fed. R. Civ. P. 15(a)(3), Meta's deadline to respond to the Amended Complaint in this case is April 9, 2026. The April 6 cure deadline resolves Plaintiff's procedural posture — whether the oppositions are restored, refiled, or treated as forfeited — three days before Meta must commit to its response. In Case No. 286, Magistrate Judge Irick's seven-day SAC order (Case No. 286, Dkt. 18) imposed a deadline that coincided with the defense response deadline and mooted the defense's pending obligation. In both instances, compressed deadlines imposed exclusively on the *pro se* Plaintiff interacted with defense deadlines in ways that produced defense-favorable procedural outcomes.

### COMPARATIVE RECORD: CASE NO. 6:26-cv-00286-AGM-DCI

Case No. 6:26-cv-00286-AGM-DCI is a related action before the same district judge (Judge Moe) and the same magistrate judge (Magistrate Judge Irick). The same pro se Plaintiff is a party in both cases.

On February 18, 2026, Judge Moe entered a standing order in Case No. 286 requiring disclosure of third-party litigation funding. Case No. 286, Dkt. 21. Plaintiff was afforded approximately ten days. The filing was two pages.

On February 25, 2026, Magistrate Judge Irick entered an order in Case No. 286 directing Plaintiff to file a Second Amended Complaint on or before March 4, 2026. Case No. 286, Dkt. 18. The order required that the Second Amended Complaint identify all defendants and the citizenship of all remaining parties, include all claims,

allegations, and parties, and not reference or incorporate any prior pleading. The order provided seven days.

On March 20, 2026, Plaintiff filed his Opposition to the Anderson/Keegan Motion to Dismiss in Case No. 286. Case No. 286, Dkt. 29. That opposition has not been stricken.

## SUA SPONTE CONSOLIDATION: CASE NO. 5:26-cv-00213-AGM-PRL

On March 25, 2026, Accenture removed Case 213 to the Ocala Division. Dkt. 1. The case was assigned to Judge Jordan Emery Pratt. Dkt. 5. Plaintiff filed a motion to transfer to the Orlando Division (Dkt. 9), then withdrew it (Dkt. 15). The court denied the withdrawn motion as moot (Dkt. 17). On April 1, 2026, Judge Pratt sua sponte transferred Case 213 to Judge Moe under Local Rule 1.07(a). Dkt. 18, 19. All three cases are now before Judge Moe.

On March 30, 2026, Magistrate Judge Irick entered orders in the present case directing Plaintiff to refile two oppositions to dispositive motions on or before April 6, 2026. Dkt. 56, Dkt. 57. The orders provided seven days. The orders did not identify the deficiency.

The following table presents the deadlines imposed on the same pro se Plaintiff by the same judicial officers across both related cases.

### Table D: Deadlines Imposed on Plaintiff Across Related Cases

|  | 286 Lit. Funding (Moe) | 376 Lit. Funding (Moe) | 286 SAC (Irick) | 376 Opp. Acc. MTD (Irick) | 376 Opp. TaskUs MTD (Irick) |
|---|---|---|---|---|---|
| **Filing Required** | 2-page certification | 2-page certification | Complete complaint — all claims, all | Opposition to dispositive motion — | Opposition to dispositive motion — |

9

|  |  |  | parties, no incorporation | cure unspecified deficiency | cure unspecified deficiency |
|---|---|---|---|---|---|
| **Days Afforded** | ~10 | ~10 | 7 | 7 | 7 |
| **Standard Period** | N/A | N/A | Court-ordered | 21 days | 21 days |
| **Deficiency Specified** | N/A | N/A | Yes | No | No |
| **Judge** | Moe | Moe | Irick | Irick | Irick |

## SERVICE RECORD: DEFENSE COUNSEL

Three law firms represent defendants. Two have not complied with the service requirements of Fed. R. Civ. P. 5:

Kirkland & Ellis LLP (Accenture): Every certificate of service certifies CM/ECF transmission. Plaintiff is not a registered CM/ECF user and has not consented to electronic service. The docket does not reflect service by any authorized means.

Orrick, Herrington & Sutcliffe LLP (Genpact): No certificate of service filed for Dkt. 31 or Dkt. 38. The Court granted relief on Dkt. 31 the day after filing without any indication Plaintiff was served.

Ogletree Deakins (TaskUs): The docket reflects compliance with service requirements.

The deficiencies are documented in Table E. The Court has not addressed service noncompliance by either noncompliant firm. The Court struck Plaintiff's filings for an unspecified deficiency.

## COMPREHENSIVE DEFICIENCY RECORD

10

The following table identifies every filing on the docket with an identifiable procedural deficiency and the Court's action or inaction on each.

## Table E: Filing Deficiencies — Court Action Taken and Not Taken

| Dkt. | Filed By | Filing | Deficiency | Court Action | Judicial Officer |
|---|---|---|---|---|---|
| 27 | Kirkland & Ellis (Accenture) | Notice of Appearance | Certificate of service certifies CM/ECF to non-registered pro se Plaintiff | None | Moe (docket supervision) |
| 29 | Kirkland & Ellis (Accenture) | Motion to Dismiss | Certificate of service certifies CM/ECF to non-registered pro se Plaintiff; service not effected under Rule 5(b)(2)(E) or Local Rule 1.02(b) | None | Moe / Norway |
| 30 | Kirkland & Ellis (Accenture) | Motion to Appear Pro Hac Vice | Certificate of service certifies CM/ECF to non-registered pro se Plaintiff | None; motion granted (Dkt. 32) | Norway |
| 31 | Orrick (Genpact) | Motion for Extension of Time | No certificate of service filed; Fed. R. Civ. P. 5(a)(1) requires service; Fed. R. Civ. P. 5(d) requires certificate | None; relief granted next day (Dkt. 33) | Norway |
| 37 | Ogletree Deakins (TaskUs) | Disclosure Statement | Wrong form under Local Rule 3.03 | Stricken (Dkt. 47); deficiency identified; no cure | Moe |

11

| | | | | deadline; no sanctions threat; no dismissal warning | |
|---|---|---|---|---|---|
| 38 | Orrick (Genpact) | Notice of Lead Counsel Designation | No certificate of service filed | None | Moe / Irick |
| 40 | Plaintiff | Opposition to Accenture MTD | "Failure to comply with Local Rule 3.01(c)" — deficiency unspecified | Stricken and deleted (Dkt. 56); 7-day cure deadline; unopposed treatment threatened; Dkt. 23 dismissal warning quoted | Irick |
| 53 | Plaintiff | Opposition to TaskUs MTD | "Failure to comply with Local Rule 3.01(c)" — deficiency unspecified | Stricken and deleted (Dkt. 57); 7-day cure deadline; unopposed treatment threatened; Dkt. 23 dismissal warning quoted | Irick |
| 54 | Kirkland & Ellis (Accenture) | Motion for Leave to File Reply | Directed to a filing (Dkt. 40) that was stricken on the same date | Denied as moot (Dkt. 56); no deficiency noted regarding service certificate | Irick |

12

Nine filings on the docket contain identifiable procedural deficiencies. Seven are defense filings. Two are Plaintiff's filings. Of the seven defense filings, one received corrective action with precise identification of the defect, no cure deadline, and no sanctions threat (Dkt. 47). Six received no action. Of the two Plaintiff filings, both were stricken, deleted, given compressed cure deadlines, threatened with unopposed treatment, and quoted the Dkt. 23 dismissal warning.

**APPLICABLE LAW**

### I.    Fed. R. Civ. P. 83(a)(2)

Rule 83(a)(2) provides: "A local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply."

Local Rule 3.01(c) imposes requirements of form. The orders at Dkt. 56 and Dkt. 57 do not identify which requirement Plaintiff failed to satisfy.

A litigant cannot willfully violate a requirement he cannot identify. The orders do not identify the specific defect. Any noncompliance was nonwillful.

Enforcement through deletion of timely oppositions, compression of the cure period below the original response deadline, and threatened unopposed treatment would cause Plaintiff to lose the right to oppose two dispositive motions. Rule 83(a)(2) prohibits this result.

### II.    Fed. R. Civ. P. 5(b)(2)(E) and Local Rule 1.02(b)

Rule 5(b)(2)(E) permits electronic service only on registered CM/ECF users or persons who have consented in writing. Plaintiff is neither. Local Rule 1.02(b) requires service on non-CM/ECF parties by mail. The service deficiencies are documented in Table E. Local Rule 3.01(d) measures the response period from service. If service was not effected, the response period has not commenced.

13

## III.   Fed. R. Civ. P. 6(d) and the Mail-Delay Principle

Rule 6(d) adds three days to deadlines triggered by mail service, reflecting federal policy that mail transmission time must be accounted for. The Court transmits orders to Plaintiff by U.S. mail. A cure deadline measured from entry, without mail-delay adjustment, imposes an effective deadline shorter than stated. The effective four-day cure period documented in ¶¶ 23-24 is inconsistent with due process.

## IV.   Local Rule 3.01(d)

Local Rule 3.01(d) provides twenty-one days to respond. The cure deadlines imposed by Dkt. 56 and Dkt. 57 are shorter than the original response periods. The deadline math is set forth in ¶ 21.

## V. 28 U.S.C. § 455(a)

Section 455(a) provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

The standard is objective. Recusal is required where a reasonable person, knowing all the circumstances, would harbor doubts about the judge's impartiality. *Liteky v. United States*, 510 U.S. 540, 548 (1994). The inquiry is not whether the judge is actually biased. The inquiry is whether the cumulative procedural record would cause a reasonable observer to question impartiality.

The procedural record relevant to this inquiry is set forth in Tables C through G and the chronological docket history presented in this motion. No single ruling compels recusal. The aggregate is the relevant inquiry under § 455(a).

## ASYMMETRIC ENFORCEMENT

### Table F: Enforcement Disparity

|  | Def. TaskUs (Dkt. 37) | Plaintiff (Dkt. 40) | Plaintiff (Dkt. 53) |
|---|---|---|---|
| Filing | Disclosure Statement | Opp. to Accenture MTD | Opp. to TaskUs MTD |
| Rule Cited | Local Rule 3.03 | Local Rule 3.01(c) | Local Rule 3.01(c) |
| Deficiency Identified | Yes — "which requires the use of the standard form from the Clerk or the Court's website" | No | No |
| Cure Deadline | None imposed | April 6, 2026 (7 days) | April 6, 2026 (7 days) |
| Unopposed Treatment Threatened | No | Yes | Yes |
| Dismissal Warning Quoted (Dkt. 23) | No | Yes | Yes |
| Order | Dkt. 47 | Dkt. 56 | Dkt. 57 |

The warning language from Dkt. 23 was entered by Judge Moe. It has been quoted to Plaintiff in Dkt. 56 and Dkt. 57. The docket does not reflect that this warning language has been directed to any defendant in this case or in the related case, No. 6:26-cv-00286-AGM-DCI.

On March 23, 2026, Magistrate Judge Norway entered an order of recusal (Dkt. 45) and the case was reassigned to Magistrate Judge Irick (Dkt. 46). On the same date, Judge Moe entered an endorsed order striking one defense filing (Dkt. 47). The following table presents the docket activity on that date.

**Table G: Docket Activity — March 23, 2026**

| D kt. | Judicial Officer | Action |
|---|---|---|
| 45 | Norway | Order of recusal |
| 46 | Clerk | Reassignment to Magistrate Judge Irick |
| 47 | Moe | Struck TaskUs disclosure (Dkt. 37); identified deficiency ("which requires the use of the standard form from the Clerk or the Court's website"); no cure deadline; no sanctions threat; no dismissal warning |
| 48 | | TaskUs Filed Motion to Dismiss |

At the time Dkt. 47 was entered, the docket reflected six defense filings with identifiable deficiencies: three Kirkland & Ellis filings with certificates of service certifying CM/ECF transmission to a non-registered pro se party (Dkt. 27, 29, 30) and two Orrick filings with no certificates of service (Dkt. 31, 38), one of which formed the basis for a court order imposing obligations on all parties (Dkt. 33). The Court addressed one defense deficiency — a disclosure statement filed on the wrong form. The Court did not address any deficiency affecting service on the pro se Plaintiff.

Two of three defense firms in this case have failed to comply with the service requirements of Fed. R. Civ. P. 5. One filed certificates of service certifying a method of service that does not reach the pro se Plaintiff. One filed no certificates of service at all. The Court has not stricken, deleted, or otherwise addressed any defense filing for these deficiencies.

In the related case, Plaintiff's Opposition to the Anderson/Keegan Motion to Dismiss (Case No. 286, Dkt. 29) was filed on March 20, 2026 — the same date as the

Opposition stricken in this case (Dkt. 40). That opposition was filed by the same Plaintiff, before the same magistrate judge. It has not been stricken.

## STATEMENT OF PRESERVED APPELLATE ISSUES

Plaintiff preserves the following issues for review by the United States Court of Appeals for the Eleventh Circuit and any subsequent proceeding. Each issue is supported by the procedural record established in this motion and on the docket of this case and the related case, No. 6:26-cv-00286-AGM-DCI.

**Issue 1.**    Whether the Court's deletion of Plaintiff's timely oppositions to two dispositive motions for unspecified "failure to comply with Local Rule 3.01(c)" — without identifying the deficiency — violates Fed. R. Civ. P. 83(a)(2), which prohibits enforcement of a local rule imposing a requirement of form in a way that causes a party to lose any right because of a nonwillful failure to comply. Dkt. 56; Dkt. 57.

**Issue 2.**    Whether *a pro se litigant's* noncompliance with a local rule can be deemed willful when the Court's orders do not identify the specific requirement the litigant failed to satisfy. Dkt. 56; Dkt. 57.

**Issue 3.**    Whether the imposition of a seven-day cure period — shorter than the twenty-one-day response period provided by Local Rule 3.01(d) — on a litigant who filed early is consistent with due process and the Federal Rules. Dkt. 56; Dkt. 57; Local Rule 3.01(d).

**Issue 4.**    Whether a motion to dismiss may be treated as unopposed when the movant's certificate of service certifies CM/ECF transmission to a pro se party who is not a registered CM/ECF user, has not consented in writing to electronic service, and has not been served by any other means reflected on the docket. Dkt. 29 at 24; Fed. R. Civ. P. 5(b)(2)(E); Local Rule 1.02(b).

17

**Issue 5.**    Whether the same magistrate judge's imposition of seven-day deadlines on the same pro se plaintiff in two related cases — seven days to draft a complete complaint in Case No. 286 (Case No. 286, Dkt. 18) and seven days to refile two oppositions to dispositive motions in the present case (Dkt. 56, Dkt. 57) — reflects a pattern of timeline compression inconsistent with the Federal Rules and Local Rules.

**Issue 6.**    Whether asymmetric enforcement of Local Rules — providing a defendant precise identification of its filing deficiency with no cure deadline, no unopposed-treatment threat, and no dismissal warning (Dkt. 47), while providing the pro se plaintiff no identification of his filing deficiency with a compressed cure deadline, unopposed-treatment threat, and dismissal warning (Dkt. 56, Dkt. 57) — is consistent with the equal administration of justice. U.S. Const. amends. V, XIV.

**Issue 7.**    Whether the docket reflects that dismissal-warning language from Dkt. 23 has been directed exclusively to the pro se plaintiff and never to any defendant in this case or the related case, No. 6:26-cv-00286-AGM-DCI.

**Issue 8.**    Whether the failure of two of three defense firms to comply with the service requirements of Fed. R. Civ. P. 5 — one filing certificates certifying CM/ECF transmission to a non-registered pro se plaintiff (Kirkland & Ellis LLP), and one filing no certificates of service at all (Orrick, Herrington & Sutcliffe LLP) — and the Court's silence on both, while striking Plaintiff's filings for an unspecified deficiency, constitutes asymmetric enforcement.

**Issue 9.**    Whether the continued validity of orders entered by Magistrate Judge Norway prior to his recusal (Dkt. 45) — including the grant of a defense extension without conferral with Plaintiff (Dkt. 33) — based on a motion (Dkt. 31) for which no certificate of service was filed and which the docket does not

reflect was served on Plaintiff by any means — which eliminated Plaintiff's ability to negotiate concessions — is consistent with the requirements of 28 U.S.C. § 455 and due process.

**Issue 10.** Whether the reassignment of this case to the magistrate judge already presiding over Plaintiff's related case before the same district judge (Dkt. 46), following the prior magistrate judge's recusal, is consistent with the requirements of impartial adjudication.

**Issue 11.** Whether the cumulative procedural record in this case — in which every contested procedural matter has been resolved adversely to Plaintiff — raises a question regarding the impartial administration of justice. U.S. Const. amends. V, XIV.

**Issue 12.** Whether due process permits a court to grant relief on a motion (Dkt. 31) — extending a defendant's response deadline and imposing conferral obligations on all parties (Dkt. 33) — when the docket does not reflect a certificate of service for the motion, does not reflect service on the opposing party by any means, and the opposing party was afforded no notice or opportunity to oppose the relief before it was granted. U.S. Const. amends. V, XIV; Fed. R. Civ. P. 5(a)(1), 5(d).

**Issue 13.** Whether the cumulative procedural record set forth in Tables C through G — in which every defense filing deficiency was either ignored or corrected without sanction, and every Plaintiff filing deficiency was met with deletion, compressed cure deadlines, unopposed-treatment threats, and dismissal warnings — requires recusal of the district judge under 28 U.S.C. § 455(a).

**Issue 14.** Whether the cumulative procedural record set forth in this motion — in which every contested procedural matter has been resolved adversely to

Plaintiff, timely oppositions were stricken without identification of the deficiency, and the cure period was compressed below the original response deadline — requires recusal of the magistrate judge under 28 U.S.C. § 455(a).

**Issue 15.**   Whether the denial of Plaintiff's discovery-access motions by two successive magistrate judges — each as the magistrate judge's first substantive action in this case — while an identical motion remains pending without ruling in the related case before the same magistrate judge, reflects a pattern of foreclosing discovery inconsistent with the Federal Rules and due process. Dkt. 18; Dkt. 50; Case No. 6:26-cv-00286-AGM-DCI.

**Issue 16.**   Whether a seven-day cure period measured from the date of entry — imposed on a *pro se* plaintiff whom the Court knows receives orders exclusively by U.S. mail, as demonstrated by the Court's own practice of mailing every docket entry to Plaintiff — provides constitutionally adequate notice and opportunity to comply, where U.S. mail transmission reduces the effective cure period to approximately four days, and where Fed. R. Civ. P. 6(d) reflects a federal policy of accounting for mail transmission time when deadlines are triggered by service under Rule 5(b)(2)(C). U.S. Const. amends. V, XIV; Fed. R. Civ. P. 6(d).

**Issue 17.**   Whether the imposition of compressed seven-day deadlines on the *pro se* Plaintiff that systematically interact with defense deadlines — seven days to file a Second Amended Complaint in Case No. 286, coinciding with the defense response deadline and mooting the defense's pending obligation (Case No. 286, Dkt. 18); and seven days to cure unspecified deficiencies in Case No. 376, resolving Plaintiff's procedural posture three days before Meta's response deadline under Fed. R. Civ. P. 15(a)(3) (Dkt. 56; Dkt. 57) — reflects a pattern of compressed deadlines imposed exclusively on the *pro se* Plaintiff that produce

defense-favorable procedural outcomes inconsistent with the impartial administration of justice. U.S. Const. amends. V, XIV; 28 U.S.C. § 455(a).

**Issue 18.**    Whether the cumulative pattern of judicial conduct documented in this motion — asymmetric enforcement of procedural requirements, unidentified deficiencies, compressed deadlines calibrated to defense timelines, silence on defense service failures, and timeline compression imposed on a plaintiff the Court knows receives notice exclusively by U.S. mail — constitutes judicial coercion of a *pro se* litigant inconsistent with the due process guarantees of the Fifth and Fourteenth Amendments and the impartial administration of justice required by 28 U.S.C. § 455(a).

**Issue 19.**    Whether the sua sponte transfer of Case No. 5:26-cv-00213-AGM-PRL from the Ocala Division to Judge Moe — after Plaintiff withdrew his transfer motion and the court denied it as moot — consolidating all three cases before the district judge whose conduct is documented herein, two days after the March 30 orders, is consistent with impartial administration of justice. Case 213, Dkt. 15, 17, 18, 19; 28 U.S.C. § 455(a).

These issues are preserved regardless of the Court's disposition of this motion. A ruling granting the relief requested will resolve certain issues on the merits. A ruling denying the relief requested, or the absence of a ruling, will preserve all issues for appellate review upon entry of a final order.

Plaintiff is a pro se litigant proceeding without resources comparable to those available to the defendants in this action. Plaintiff has complied with every deadline imposed by this Court. Plaintiff has met every filing obligation. Plaintiff has conferred when required to confer. Plaintiff has served when required to serve. Plaintiff has not

sought disqualification of opposing counsel, notwithstanding a procedural record that would support such relief. Plaintiff has pursued his claims through orderly process at every stage — in the Northern District of California, in this Court, and in related proceedings before this Court. The procedural record is what it is. Plaintiff did not create it. Plaintiff has documented it. That record now requires Plaintiff to ask whether the judicial officers presiding over this case can administer it impartially. Plaintiff makes that request under 28 U.S.C. § 455(a), on the basis of the cumulative procedural record set forth in this motion, and with the same confidence in orderly process that has governed his conduct throughout these proceedings. Should this matter require further proceedings beyond this Court, Plaintiff is prepared to continue for as long as the process requires. Plaintiff's commitment to these claims is not contingent on the convenience of any party or the pace of any docket. It is grounded in an unshakable confidence that the federal judiciary — across every level of review to which a litigant is entitled — will administer justice impartially when presented with a complete record. With that confidence, Plaintiff continues to proceed, *pro se.*[1]

---

[1] Government cannot make us equal; it can only recognize, respect, and protect us as equal before the law." *Adarand Constructors, Inc. v. Peña,* 515 U.S. 200, 240 (1995) (Thomas, J., concurring in part and concurring in the judgment). "The Framers ensured that judges would decide cases according to the rule of law, and not of men." Clarence Thomas, Assoc. Justice, Supreme Court of the United States, Address Before the Federalist Society, National Lawyers Convention (Nov. 12, 1999). "In my humble opinion, those who come to engage in debates of consequence, and who challenge accepted wisdom, should expect to be treated badly. Nonetheless, they must stand undaunted. That is required. And that should be expected. For it is **bravery** that is required to secure freedom." Clarence Thomas, Assoc. Justice, Supreme Court of the United States, Address Before the National Bar Association, Memphis, Tennessee (July 28, 1998).

**RELIEF REQUESTED**

The procedural record requires the following:

A.    The Court shall identify the specific Local Rule 3.01(c) deficiency in Plaintiff's Oppositions (Dkt. 40 and Dkt. 53) so that Plaintiff may cure the deficiency.

B.    The cure period shall be tolled until the Court identifies the deficiency. Upon identification, Plaintiff shall be afforded twenty-one days to file compliant responses — the same period Local Rule 3.01(d) provides for the original response.

C.    Any deadline imposed on Plaintiff by this Court shall account for the time required for U.S. mail transmission from the Court to Plaintiff's address, consistent with the policy reflected in Fed. R. Civ. P. 6(d). Deadlines measured from the date of order entry, without adjustment for mail transmission, deprive Plaintiff of the effective compliance period stated in the order.

D.    The Court shall determine whether service of Accenture's Motion to Dismiss (Dkt. 29) was effected consistent with Fed. R. Civ. P. 5(b)(2)(E) and Local Rule 1.02(b). If service was not effected, Accenture shall be directed to serve the Motion by means authorized under Rule 5 before any response deadline commences.

E.    The Court shall determine whether Genpact's Motion for Extension of Time (Dkt. 31) was served on Plaintiff consistent with Fed. R. Civ. P. 5(a)(1) and 5(d). The docket does not reflect a certificate of service for Dkt. 31 or for Genpact's Notice of Lead Counsel Designation (Dkt. 38). If service was not effected, the Court shall determine the continued validity of the order granting the relief requested in that motion (Dkt. 33).

F.    The district judge shall determine whether recusal is required under 28 U.S.C. § 455(a) in light of the procedural record set forth in this motion, including the

selective enforcement documented in Tables E, F, and G, and the exclusive direction of the Dkt. 23 warning language to the pro se Plaintiff.

G.    The magistrate judge shall determine whether recusal is required under 28 U.S.C. § 455(a) in light of the procedural record set forth in this motion, including the deletion of Plaintiff's timely oppositions without identification of the deficiency, the compression of the cure period below the original response deadline, and the resolution of every contested procedural matter adversely to Plaintiff.

H.    Upon a determination that recusal is required, the Court shall direct the Clerk to reassign this case, the related case No. 6:26-cv-00286-AGM-DCI, and Case No. 5:26-cv-00213-AGM-PRL, through the district's standard random assignment process, with no overlap of judicial officers among the three cases.

I.    Such other relief as is consistent with the procedural record and applicable law.

Dated: April 1, 2026                                      Respectfully submitted,


                                                         Marvelle J. Ballentine
                                                         Plaintiff, *pro se*
                                         7862 W. Irlo Bronson Memorial Hwy #82
                                                         Kissimmee, FL 34747
                                                         (407) 794-6503
                                                         jayballentine@protonmail.com

24

## LOCAL RULE 3.01(g) CERTIFICATION

On April 1, 2026, Plaintiff contacted counsel for Accenture, TaskUs, and Genpact regarding the relief requested in this motion and requested a response the same day. No substantive conferral was completed before filing. Plaintiff files this motion in light of the Court's April 6, 2026 deadline and will promptly supplement this certification after completing the conferral process required by Local Rule 3.01(g)(3).

Dated: April 1, 2026                                       Respectfully submitted,

Marvelle J. Ballentine
Plaintiff, *pro se*
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 2, 2026, I filed the foregoing with the Clerk of Court. All counsel of record are registered CM/ECF users and will be served electronically through the Court's CM/ECF system upon docketing.


Marvelle J. Ballentine

# EXHIBIT A

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

In re Complaint of Judicial Misconduct

Against: The Honorable Anne-Leigh Gaylord Moe, United States District Judge, Middle District of Florida; and The Honorable Daniel C. Irick, United States Magistrate Judge, Middle District of Florida

## COMPLAINT OF JUDICIAL MISCONDUCT
### Under 28 U.S.C. § 351(a)

### I. COMPLAINANT AND STATUTORY STANDARD

1.    Marvelle J. Ballentine, proceeding pro se, files this complaint under 28 U.S.C. § 351(a). Complainant is a party in three related civil actions in the Middle District of Florida: Case No. 6:26-cv-00376-AGM-DCI, Case No. 6:26-cv-00286-AGM-DCI, and Case No. 5:26-cv-00213-JEP-PRL. Cases 376 and 286 are assigned to Judge Moe and Magistrate Judge Irick. All three cases arise from Facebooks' foreclosure of Plaintiff's right to make and modify contracts on July 4, 2022 under a Child Sexual Exploitation policy designation.

2.    This complaint does not challenge the correctness of any ruling. It identifies a pattern of court administration — repeated across two related cases, by two judicial officers, directed exclusively at one party — in which the mechanism of time compression forfeited the pro se plaintiff's procedural rights while producing collateral procedural benefits for the opposing parties. The full docket-documented record is set forth in the motion attached as Exhibit A, including Tables C through G.

### II. THE PATTERN: TIME COMPRESSION AND RIGHTS FORFEITURE

3.    Each instance follows the same structure: the court imposed a compressed deadline exclusively on the pro se plaintiff; the deadline forfeited a specific procedural right; and the forfeiture produced a benefit for the defense that the defense did not request and could not have obtained through its own motion practice. This complaint presents the cumulative pattern, not any individual ruling, for evaluation under the statutory standard.

4.    **Forfeiture of the right to negotiate discovery concessions.** On March 19, 2026, Defendant Genpact filed a Motion for Extension of Time in

Case 376 (Dkt. 31). The docket reflects no certificate of service and no conferral with Complainant. One day later, Magistrate Judge Norway granted the motion (Dkt. 33), extending Genpact's deadline to April 22, 2026 and imposing conferral obligations on all parties. The docket does not reflect that Complainant was served with the motion or consulted before the court acted. Complainant was not aware the motion existed until after it was granted. In every other case across two federal districts, Complainant had applied a standard fourteen-day extension framework during conferral. The court's grant of a twenty-eight-day extension — without notice, without conferral, without service — eliminated Complainant's ability to negotiate a reciprocal framework for the Rule 26(f) conference. See Exhibit A, ¶¶ 9–10, 17.

5. **Forfeiture of the right to respond on the original timeline.** On February 25, 2026, Magistrate Judge Irick ordered Complainant to file a Second Amended Complaint in Case 286 within seven days (Case 286, Dkt. 18). The order required all claims, all parties, and no incorporation by reference. The seven-day deadline coincided with the defense response deadline. Complainant's compliance mooted the defense's pending obligation. The defense received a deadline reset it did not request, produced by a court order directed at Complainant. See Exhibit A, *Comparative Record*.

6. **Forfeiture of access to discovery.** Two magistrate judges have presided over Case 376. Each denied a motion by Complainant seeking access to discovery as his first substantive action following assignment: Magistrate Judge Norway (Dkt. 18, Feb. 25, 2026) and Magistrate Judge Irick (Dkt. 50, Mar. 24, 2026). An identical motion filed in Case 286 before the same magistrate judge has not been ruled on. See Exhibit A, ¶¶ 2–3, 17, Table C.

7. **Forfeiture of the right to oppose two dispositive motions.** On March 20 and March 27, 2026, Complainant filed timely oppositions to motions to dismiss by Accenture (Dkt. 40) and TaskUs (Dkt. 53) in Case 376 — nineteen and seventeen days before their respective deadlines. On March 30, Magistrate Judge Irick struck both for "failure to comply with Local Rule 3.01(c)" without identifying the deficiency (Dkt. 56; Dkt. 57). The orders imposed an April 6 cure deadline — seven days from entry. The orders threatened unopposed treatment and quoted dismissal-warning language that has never appeared in any order directed to any defendant in Case 376 or Case 286. The cure period was shorter than the original twenty-one-day response period. Accenture's motion was never

properly served — its certificate of service certifies CM/ECF transmission to a pro se plaintiff who is not a CM/ECF registrant and has not consented to electronic service. Fed. R. Civ. P. 83(a)(2) prohibits enforcement of a form requirement in a way that causes rights loss through nonwillful noncompliance. Noncompliance with a requirement the litigant cannot identify is not willful. See Exhibit A, ¶¶ 7–8, 18–22, Tables E and F.

## III. MAIL-DELAY COMPOUNDING AND DEADLINE ALIGNMENT

8. The court knows Complainant receives orders exclusively by U.S. mail — the court's own practice of mailing every docket entry to Complainant confirms this. U.S. mail takes approximately three days. The March 30 orders would have reached Complainant on or about April 2, leaving approximately four days — not seven — to cure an unidentified deficiency in two opposition briefs to dispositive motions, while proceeding pro se without CM/ECF access or electronic alerts. Fed. R. Civ. P. 6(d) reflects a federal policy of accounting for mail transmission time. The court imposed a deadline triggered by its own order, transmitted by U.S. mail, without accounting for the transmission time the Federal Rules recognize. See Exhibit A, ¶¶ 22–24.

9. The April 6 cure deadline resolved Complainant's procedural posture three days before Meta's April 9 response deadline under Fed. R. Civ. P. 15(a)(3). In Case 286, the seven-day SAC order coincided with the defense response deadline and mooted the defense's pending obligation. In both instances, compressed deadlines imposed exclusively on the pro se plaintiff interacted with defense deadlines in ways that produced defense-favorable procedural outcomes. See Exhibit A, ¶ 25, *Comparative Record*.

## IV. ASYMMETRIC ENFORCEMENT AND SUPERVISORY INACTION

10. Nine filings on the Case 376 docket contain identifiable procedural deficiencies. Seven are defense filings. Two are Complainant's. Of the seven defense filings, one received corrective action with identified deficiency, no cure deadline, and no sanctions threat (Dkt. 47). Six received no action. Of the two Complainant filings, both were stricken, deleted, given compressed cure deadlines, threatened with unopposed treatment, and quoted dismissal-warning language. The Dkt. 23 warning language has never been directed to any defendant

in Case 376 or Case 286. See Exhibit A, *Service Record, Asymmetric Enforcement,* Tables E, F, and G.

11.    Judge Moe reviewed the docket on March 23, 2026, identified a defense filing on the wrong form (Dkt. 47), and did not address defense service failures affecting Complainant — including certificates certifying CM/ECF transmission to a non-registered pro se plaintiff and filings with no certificates of service. Seven days later, Magistrate Judge Irick deleted Complainant's timely oppositions under her supervision. Judge Moe has taken no supervisory action. See Exhibit A, *Asymmetric Enforcement.*

## V. THIS COMPLAINT IS NOT MERITS-RELATED

12.    Rule 4(b)(1) excludes allegations "directly related to the merits of a decision or procedural ruling." The Commentary provides that such allegations — "without more" — are merits-related. This complaint presents the "more": a unidirectional pattern of compressed deadlines imposed exclusively on one party, systematically aligned with opposing-party timelines, compounded by known mail delay, and enforced through deletion, sanctions threats, and dismissal warnings never directed at any other party. The Commentary on Rule 4(b)(2) confirms that "an allegation of a habitual pattern" arising from "an improper motive, is not merits-related." No individual ruling is presented as the misconduct. The pattern of administration is the misconduct.

## VI. PREJUDICE TO THE ADMINISTRATION OF THE COURTS

13.    The conduct documented in this complaint is "prejudicial to the effective and expeditious administration of the business of the courts" under 28 U.S.C. § 351(a) because it communicates that procedural rules in the Middle District of Florida are not administered impartially as between pro se plaintiffs and represented defendants. Complainant has alleged in Case 376 that attorneys declined representation because of the CSE designation. The procedural record compounds that barrier. A future litigant who proceeds pro se confronts the same method: compressed deadlines, unidentified deficiencies, mail-delay disregard, and the systematic forfeiture of procedural rights without adjudication on the merits. If unremedied, this conduct does not foreclose justice for one plaintiff — it communicates to every similarly situated person that the process is not administered impartially.

## VII. EXHIBITS

Exhibit A: Plaintiff's Urgent Motion for Recusal and to Identify Deficiency, Toll Cure Period, and Clarify Service, Case No. 6:26-cv-00376-AGM-DCI (as filed), with Tables C through G

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on April 1, 2026.

Marvelle J. Ballentine
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com

# EXHIBIT B

**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA**

**MARVELLE J. BALLENTINE,**
    Plaintiff,

v.

**META PLATFORMS, INC.,** ***et al.,***

    Defendants.

Case No. 6:26-cv-00376-AGM-DCI
Case No. 6:26-cv-00286-AGM-DCI
Case No. 5:26-cv-00213-AGM-PRL

**TIME-SENSITIVE PETITION FOR ADMINISTRATIVE
REASSIGNMENT**

**TO:** The Honorable Marcia Morales Howard, Chief United States District Judge

This petition is designated time-sensitive under Local Rule 3.01(e).

Defendant Accenture LLP was served with interrogatories on March 10–11, 2026,

in the state court proceeding before removal. Responses are due April 10, 2026. A

videotaped organizational deposition of Accenture LLP is noticed for April 17,

2026. These obligations carried into federal court under 28 U.S.C. § 1450, which

provides that all state court orders and discovery "shall be held to be binding"

after removal. Accenture's own Notice of Removal attaches exhibits

acknowledging service of the discovery package. Case No. 213, Dkt. 1. On April 1,

2026, Case No. 213 was sua sponte transferred to Judge Moe. No scheduling

order has been entered. No case management conference has been set. The Case

1

Management Report is not due until May 4, 2026. Without judicial action before April 10, no enforcement mechanism exists for discovery obligations that are currently running. Plaintiff has incurred costs arranging the April 17 deposition. Plaintiff respectfully requests that the Chief Judge consider this petition by April 9, 2026.

1. Plaintiff petitions the Chief Judge to exercise her authority under 28 U.S.C. § 137 to reassign the above-captioned cases. Plaintiff does not seek recusal under 28 U.S.C. § 455 and makes no allegation of bias.

## CASES AND COMMON PARTIES

1. Case No. 376 and Case No. 286 are assigned to District Judge Anne-Leigh Gaylord Moe and Magistrate Judge Daniel C. Irick. Case No. 213 was originally assigned to District Judge Jordan Emery Pratt and Magistrate Judge Philip R. Lammens in the Ocala Division. On April 1, 2026, Judge Pratt sua sponte transferred Case 213 to Judge Moe under Local Rule 1.07(a). Case 213, Dkt. 18, 19. All three cases are now before Judge Moe.

2. All three cases arise from the same conduct: Facebooks' foreclosure of Plaintiff's right to make and modify contracts on July 4, 2022 under a Child Sexual Exploitation policy designation. Defendant Accenture LLP appears in two of the three cases. Kirkland & Ellis LLP represents Accenture in both cases in which Accenture LLP appears.

2

## PROCEDURAL RECORD

1. On March 30, 2026, the Court struck Plaintiff's timely oppositions to two dispositive motions in Case No. 376 for "failure to comply with Local Rule 3.01(c)" without identifying the deficiency. Dkt. 56; Dkt. 57. The orders imposed a seven-day cure deadline. Local Rule 3.01(d) provides twenty-one days. Plaintiff filed early. The cure period imposed was **shorter** than the original response period.

2. The orders warned that failure to comply "may result in the imposition of sanctions including, but not limited to, the dismissal of this action." Dkt. 56; Dkt. 57.

3. On March 23, 2026, the Court struck a defendant's disclosure statement and identified the deficiency: "failure to comply with Local Rule 3.03, which requires the use of the standard form from the Clerk or the Court's website." Dkt. 47. No cure deadline was imposed. No unopposed-treatment warning was issued. No sanctions language was quoted.

4. Kirkland & Ellis has filed certificates of service in Cases 376 and 286 certifying CM/ECF transmission to "all unrepresented parties." Plaintiff is not a registered CM/ECF user. Fed. R. Civ. P. 5(b)(2)(E) permits electronic service only on registered users or persons who have consented in writing. The docket does not reflect service on Plaintiff by any authorized means. The Court has taken no action.

3

5.      Orrick, Herrington & Sutcliffe LLP filed a motion and notice in Case 376 with no certificates of service. Dkt. 31; Dkt. 38. The Court granted relief on Dkt. 31 the following day. The docket does not reflect service on Plaintiff. The Court has taken no action.

6.      On March 23, 2026, Magistrate Judge Norway recused in Case 376. Dkt. 45. The case was reassigned to Magistrate Judge Irick, who was already assigned to Case No. 286 before the same district judge. Dkt. 46. The continued validity of three orders entered by Magistrate Judge Norway prior to recusal has not been reviewed.

7.      On April 3, 2026, Plaintiff filed a motion in Case No. 376 preserving nineteen issues for appellate review. Each issue is documented with docket citations and grounded in Fed. R. Civ. P. 83(a)(2), Fed. R. Civ. P. 5, Local Rule 3.01, 28 U.S.C. § 455, and the Fifth and Fourteenth Amendments. The motion is attached as Exhibit A.

## AUTHORITY

1.      Under 28 U.S.C. § 137, the Chief Judge "shall be responsible for the observance of such rules and orders, and shall divide the business and assign the cases."

## REQUEST

1.      Plaintiff requests that the Chief Judge reassign Case Nos. 376, 286, and 213 through the district's standard random assignment process, with no overlap of district judges or magistrate judges among the three cases.

2.      Plaintiff seeks symmetric application of the Local Rules, specific identification of any deficiencies, uniform enforcement of service requirements, and procedural treatment consistent with that afforded to defendants.

### Local Rule 3.01(g) Certification

This petition is directed to the Chief Judge's administrative and supervisory authority under 28 U.S.C. § 137. It does not seek relief against any party and is not subject to the conferral requirement of Local Rule 3.01(g).

Dated: April 1, 2026

Marvelle J. Ballentine
*Plaintiff, pro se*
7862 W. Irlo Bronson Memorial Hwy
#82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com

5

## EXHIBITS

**Exhibit A:** Plaintiff's Urgent Motion for Recusal and to Identify Deficiency, Toll

Cure Period, and Clarify Service, Case No. 6:26-cv-00376-AGM-DCI (as filed),

with Tables C through G

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 2, 2026, I filed the foregoing with the Clerk

of Court. All counsel of record are registered CM/ECF users and will be served

electronically through the Court's CM/ECF system upon docketing.

Marvelle J. Ballentine

7

# EXHIBIT E-24

Dkt. 62: Declaration of Marvelle J. Ballentine in support of recusal motion

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MARVELLE J. BALLENTINE,

    *Plaintiff,*

    v.

                                           Case No. 6:26-cv-00376-AGM-DCI
                                           Case No. 6:26-cv-00286-AGM-DCI
                                           Case No. 5:26-cv-00213-AGM-PRL

META PLATFORMS, INC., et al

    *Defendants.*

## DECLARATION OF MARVELLE J. BALLENTINE IN SUPPORT OF PLAINTIFF'S URGENT MOTION FOR RECUSAL AND TO IDENTIFY DEFICIENCY, TOLL CURE PERIOD, AND CLARIFY SERVICE

I, Marvelle J. Ballentine, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

A United States magistrate judge in the Middle District of Florida, clothed in the authority of Article I, seated in a courthouse built to administer justice impartially, issued an order on March 30, 2026 that deleted two timely oppositions to dispositive motions, declined to identify the deficiency, compressed the cure period below the twenty-one days the Local Rules provide, threatened to treat the motions as unopposed, and quoted dismissal-warning language that has never appeared in any order

directed to any defendant in this case or its related proceeding. The magistrate judge's function is to enforce the rules. The magistrate judge used that function to unmake them—but only against me.

An Article III judge in the Middle District of Florida—appointed for life, confirmed by the United States Senate, vested with the judicial power of the United States under the Constitution—conducted a docket review on March 23, 2026. She reviewed the filings. She identified a disclosure statement submitted on the wrong form. She struck it. She specified the deficiency with precision: "which requires the use of the standard form from the Clerk or the Court's website." She imposed no cure deadline. She issued no sanctions warning. She quoted no dismissal language.

On that same docket, on that same day, sat a Motion to Dismiss filed by Kirkland & Ellis with a certificate of service certifying CM/ECF transmission to a pro se plaintiff who is not registered for CM/ECF and has never consented to electronic service. On that same docket sat a Motion for Extension filed by Orrick with no certificate of service at all—a motion granted the day after filing, imposing conferral obligations on all parties, without any indication I was ever told it existed.

Judge Moe found the wrong form. Judge Moe did not find the unserved plaintiff.

Seven days later, her magistrate judge deleted my oppositions, declined to tell me why, compressed my cure period below what the rules provide, and quoted dismissal-warning language that has never appeared in any order directed to any defendant in any case I have filed before this Court. Judge Moe supervises Magistrate Judge Irick. Judge Moe has issued no order, no correction, no clarification. Judge Moe watched her magistrate judge strip procedural rights from a self-represented litigant and has said nothing.

The procedural record and my own experience have led me to the conclusion that what has occurred is a miscarriage of justice against a pro se litigant in a civil rights matter. The judges should recuse themselves out of respect for the rule of law, procedure, and the oath of office they took.

While I believe recusal is warranted by this record, that is not my choice to make. Should the judges choose not to recuse themselves they should know I will faithfully comply with ever order, every rule, and every deadline. The judges should know that while my intent is to continue to comply with everything I am instructed to do, I will do so out of obligation to the Rule of Law and the Rules of Procedure and not out of respect for the individuals occupying the robe.

Should the judges not recuse themselves, they should know that these Federal Actions are no longer about me. Every *pro se* litigant with plausible claims for relief and who is willing to play by the rules should have their day(s) in Court. I intend to proceed with those individuals in mind.

So help me God.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 1, 2026

· Marvelle J. Ballentine

# EXHIBIT E-25

Dkt. 89: Rule 72(a) Objection to Dkt. 80 (filed 4/10/26)

.

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MARVELLE J. BALLENTINE,

     Plaintiff,

        v.                Case No. 6:26-cv-00376-AGM-DCI

META PLATFORMS, INC., ACCENTURE LLP,
GENPACT LIMITED, and TASKUS, INC.,

     Defendants.

**PLAINTIFF'S OBJECTION UNDER FEDERAL RULE OF CIVIL**

**PROCEDURE 72(a)**

**TO ENDORSED ORDER (DKT. 80)**

**Standard of Review:** Federal Rule of Civil Procedure 72(a) provides that a district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." 28 U.S.C. § 636(b)(1)(A). Legal conclusions are reviewed de novo under the "contrary to law" standard. Each argument presented below raises a legal question subject to de novo review.

**INTRODUCTION**

1.    On April 9, 2026, Magistrate Judge Daniel C. Irick entered an endorsed order (Dkt. 80) that strikes ten filed documents (Dkts. 69–78), directs the Clerk to "delete" them from the docket, and directs Plaintiff to "refrain from

filing such notices on the docket of this case." The order was entered sua sponte. No party moved to strike.

2. The order cites no rule of procedure. It makes no finding of frivolousness, bad faith, or harassment. It provides no prior notice. It affords no opportunity to be heard. It considers no lesser measure.

3. Four grounds support this objection:

a) The order cites no procedural rule that authorizes striking non-pleading filings and rests on a legal premise—that filings must request relief—that no authority supports.

b) The prospective directive constitutes a filing restriction subject to requirements the Eleventh Circuit has articulated and that the order does not satisfy.

c) The deletion directive removes judicial records from the public docket without satisfying the Eleventh Circuit's public-access framework.

d) A magistrate judge may lack statutory authority to enter a filing restriction directly under 28 U.S.C. § 636(b)(1)(A).

Each ground presents a legal question reviewable de novo.

## STATEMENT OF FACTS

### The Notices

4. On April 7, 2026, Plaintiff transmitted ten documents for in-person filing. See Dkts. 69–78.

5. Each document identified one recipient—a congressional committee, a federal agency, or a member of Congress. Each stated that Plaintiff had

2

transmitted correspondence to that recipient. Each attached a copy of the correspondence as an exhibit.

6. The ten recipients were: Senate Judiciary Committee, House Judiciary Committee, Congressional Black Caucus, House Energy and Commerce Committee, Senate Commerce Committee, Federal Trade Commission, Department of Justice Child Exploitation and Obscenity Section, Senator Rick Scott, Senator Ashley Moody, Representative Daniel Webster.

7. Each notice expressly stated that no relief was requested from the Court.

8. The notices were backward-looking informational filings. They documented completed transmissions to federal oversight bodies. The correspondence addressed matters arising from the litigation and from Plaintiff's pending § 351 Judicial Misconduct Complaint. The Eleventh Circuit acknowledged the § 351 complaint on April 2, 2026.

### The April 9, 2026 Orders

9. Three endorsed orders were entered by Magistrate Judge Irick on April 9, 2026.

10. Dkt. 79 struck Plaintiff's refiled oppositions to the Accenture and TaskUs motions to dismiss (Dkts. 63 and 64). The stated ground was exceeding the 20-page limit under Local Rule 3.01(c). The order quoted the dismissal-warning language from Dkt. 23. No cure period was afforded. No party moved to strike.

11.     Dkt. 80 struck ten notices of referral (Dkts. 69–78). It directed Plaintiff to "refrain from filing such notices." It directed the Clerk to "delete the documents." No party moved to strike.

12.     Dkt. 81 denied Accenture's Motion for Leave to File Reply (Dkt. 67) as moot because Dkt. 79 struck the opposition to which the reply would have been directed.

13.     The cumulative effect: Plaintiff's oppositions to both pending motions to dismiss were removed, Plaintiff's record of oversight referrals was removed, and no order entered on April 9, 2026, imposed any obligation on any defendant.

**LEGAL ARGUMENT**

### A.     No Procedural Rule Authorizes the Order, and the Stated Rationale Has No Support in Law

### Rule 12(f) Does Not Reach Non-Pleading Filings

14.     Federal Rule of Civil Procedure 12(f) provides: "The court may strike *from a pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

15.     Federal Rule of Civil Procedure 7(a) exhaustively defines "pleadings" as: a complaint; an answer to a complaint; an answer to a counterclaim; an answer to a crossclaim; a third-party complaint; an answer to a third-party complaint; and, if the court orders one, a reply to an answer. Notices are not pleadings.

16.     Courts in this district have held that Rule 12(f) "is limited to the matters contained within the pleadings." *Croom v. Balkwill*, 672 F. Supp. 2d 1280, 1285 (M.D. Fla. 2009). "A motion is not a pleading, and thus a motion to strike a motion is not proper." *Morroni v. Gunderson*, 169 F.R.D. 168, 170 (M.D. Fla.

1996). *See also McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290, 1298 (M.D. Ga. 2003). If Rule 12(f) does not authorize striking a motion, it does not authorize striking a notice.

### The "No Relief Requested" Rationale Contradicts the Federal Rules

17.    Dkt. 80 states: "Plaintiff's notices attach correspondence to non-parties and state that no relief is requested. Thus, there is no basis to file such documents on the docket of this case."

18.    The premise is false. The Federal Rules and Local Rules require or authorize numerous non-relief-seeking filings, including corporate disclosure statements (Rule 7.1), notices of supplemental authority (Local Rule 3.01(j)), notices of deposition (Rule 30(b)(1)), certificates of service (Rule 5(d)), and case management reports (Rule 26(f)). No authority supports the premise that a filing must request relief to have a basis on the docket.

### Inherent Authority Requires Procedural Safeguards

19.    If the order rests on the court's inherent authority rather than Rule 12(f), that authority is constrained. The Supreme Court has held that inherent powers "must be exercised with restraint and discretion" and that a court exercising inherent authority "must comply with the mandates of due process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 50 (1991). The Eleventh Circuit has held that "[i]nvocation of a court's inherent power requires a finding of bad faith." *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995). For sua sponte sanctions, the conduct must be "akin to contempt." *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255–56 (11th Cir. 2003).

5

20. Dkt. 80 contains no prior notice. It affords no opportunity to respond. It makes no finding of bad faith. It identifies no conduct akin to contempt. It cites no rule violated. It considers no lesser measure. The order is contrary to law.

## B. The Prospective Directive Is a Filing Restriction That Fails Every Procup/Miller Requirement

21. Dkt. 80 directs: "Plaintiff shall refrain from filing such notices on the docket of this case."

22. The Eleventh Circuit, sitting en banc, established binding requirements for any order restricting a litigant's future filings in *Procup v. Strickland*, 792 F.2d 1069 (11th Cir. 1986) (en banc). The court reinforced these requirements in *Miller v. Donald*, 541 F.3d 1091 (11th Cir. 2008), and *Cofield v. Alabama Public Service Commission*, 936 F.2d 512 (11th Cir. 1991). The Eleventh Circuit looks to the substance and effect of an order, not its label.

23. A directive to "refrain from filing" a category of documents is substantively a prospective filing restriction regardless of how it is styled.

24. The following table compares Dkt. 80 against the binding requirements:

| Requirement | Controlling Citation | Dkt. 80 |
|---|---|---|
| Notice and opportunity to respond | *Procup*, 792 F.2d at 1071–72 | None |
| Finding of frivolousness, | *Procup*, 792 F.2d at 1071; *Miller*, 541 F.3d at 1096 | None |

6

| | | |
|---|---|---|
| harassment, or abuse | | |
| Adequate record of prior misconduct | *Procup*, 792 F.2d at 1071; *Miller*, 541 F.3d at 1098 | None |
| Narrow tailoring | *Procup*, 792 F.2d at 1072, 1074; *Miller*, 541 F.3d at 1098 | Categorical prohibition |
| Consideration of lesser measures | *Procup*, 792 F.2d at 1072–73 | None |

25.    The order satisfies none of the five requirements. It imposes a categorical prohibition on a type of filing on the first occasion of that filing type, without prior warning, without any finding of abuse, and without considering any alternative measure.

**Narrow Tailoring and Chilling Effect**

26.    The notices documented Plaintiff's transmissions of correspondence to members of Congress and federal executive-branch agencies—activity protected by the First Amendment's Petition Clause. U.S. Const. amend. I. The prospective directive does not prohibit the underlying transmissions; it prohibits Plaintiff from filing court documents that record them. A restriction on filings documenting the exercise of a constitutional right implicates the narrow-tailoring requirement with particular force.

27.    A filing restriction must "bear some relationship to the litigant's objectionable actions in pending suits, and cannot be wholesale restrictions." *Miller*, 541 F.3d at 1098. A categorical prohibition on notices that do not request

7

relief and that document communications with federal oversight bodies does not satisfy this standard.

### C.    The Magistrate Judge May Lack Statutory Authority to Enter a Filing Restriction Directly

28.    The Eleventh Circuit consistently characterizes orders restricting a litigant's future filings as injunctions. *See Miller*, 541 F.3d at 1096 (reviewing "filing injunction"); *Procup*, 792 F.2d at 1073 (grounding the power to enter filing restrictions in the All Writs Act, 28 U.S.C. § 1651). A filing restriction prohibits future conduct. It is functionally injunctive.

29.    Under 28 U.S.C. § 636(b)(1)(A), a judge may designate a magistrate judge to "hear and determine any pretrial matter pending before the court, except a motion for injunctive relief." Motions for injunctive relief are among the enumerated categories excepted from a magistrate judge's authority to hear and determine directly.

30.    If a filing restriction is functionally injunctive, it falls within the category of matters excepted from a magistrate judge's direct authority under § 636(b)(1)(A). The proper procedure would be a report and recommendation under § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), subject to de novo review by the district judge.

31.    No published Eleventh Circuit opinion directly addresses whether a magistrate judge's filing-restriction order entered without a report-and-recommendation procedure exceeds the magistrate judge's statutory authority. The text of § 636(b)(1)(A) and the Eleventh Circuit's characterization of filing

8

restrictions as injunctive support the conclusion that Dkt. 80 was entered outside the magistrate judge's direct authority.

### D. The Deletion Directive Implicates the Public-Access Framework

32.  Dkt. 80 directs: "The Clerk is directed to delete the documents."

33.  The common-law right of public access to judicial records extends to pretrial filings. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1312–13 (11th Cir. 2001). "There is a presumptive right of public access to pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith." *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007). Restriction requires good-cause balancing. *Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC*, 918 F.3d 1161, 1167 (11th Cir. 2019).

34.  Local Rule 1.11 governs sealing: it imposes a presumption of public access, requires a necessity finding, and requires consideration of less-restrictive alternatives. Sealing preserves the docket entry and permits later unsealing. Deletion removes all trace of the filing's existence. No Local Rule, Administrative Order, or CM/ECF procedure authorizes deletion as distinguished from sealing.

35.  Dkt. 80 contains no determination whether the documents are judicial records. It contains no good-cause balancing. It contains no consideration of public-access interests. It contains no consideration of less-restrictive alternatives. It contains no specific findings.

36.  The deletion directive is contrary to law.

## E. The Order Compounds the Documented Pattern of Asymmetric Enforcement

37.    Plaintiff's recusal motion (Dkt. 61) and pending § 351 Complaint documented a pattern of asymmetric enforcement through tabulated docket analysis. The April 9, 2026, orders extend the pattern.

38.    The record is documented. The recusal motion (Dkt. 61, Tables C through G) identifies every filing on the docket with an identifiable procedural deficiency and the Court's action or inaction on each. Every order striking a filing has been directed at Plaintiff. Every order deleting a filing has been directed at Plaintiff. Every dismissal warning has been directed at Plaintiff. Every prospective restriction has been directed at Plaintiff. No order entered on the Case 376 docket has imposed any obligation, cure deadline, warning, or restriction on any defendant.

### RELIEF REQUESTED

The Court should:

A.    Set aside Dkt. 80 in its entirety as contrary to law.

B.    Direct the Clerk to restore Dkts. 69–78 to the public docket.

C.    Vacate the prospective directive prohibiting Plaintiff from filing notices of referral.

D.    In the alternative, if the Court determines that any component of the order is proper, specify the rule of procedure, the required findings, and the procedural basis that support that component.

E.    Grant such other relief as is consistent with applicable law.

Dated: April 10, 2026                                    Respectfully submitted,

                                                    Marvelle J. Ballentine
                                                    Plaintiff, *pro se*
                                        7862 W. Irlo Bronson Memorial Hwy. #82
                                                    Kissimmee, FL 34747
                                                 Telephone: (407) 794-6503
                                          Email: jayballentine@protonmail.co

## LOCAL RULE 3.01(g) CERTIFICATION

The relief sought is an objection to a sua sponte judicial order. No party moved for the relief the order grants. Conferral is inapplicable.

Marvelle J. Ballentine

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 10, 2026 I filed the foregoing with the

Clerk of Court. All counsel of record are registered CM/ECF users and will be

served electronically through the Court's CM/ECF system upon docketing.


Marvelle J. Ballentine

# EXHIBIT E-26

Dkt. 90: Declaration in support of Rule 72(a) Objection (filed 4/10/26)

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARVELLE J. BALLENTINE,

    *Plaintiff,*

    v.               Case No. 6:26-cv-00376-AGM-DCI

META PLATFORMS, INC., ACCENTURE LLP,
GENPACT LIMITED, and TASKUS, INC.,

    *Defendants.*

**DECLARATION OF MARVELLE J. BALLENTINE**

**IN SUPPORT OF PLAINTIFF'S OBJECTION UNDER**

**FEDERAL RULE OF CIVIL PROCEDURE 72(a)**

**TO ENDORSED ORDER (DKT. 80)**

I, Marvelle J. Ballentine, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

Between April 5, 2026 and April 7, 2026, I wrote ten letters. I wrote to the Senate Judiciary Committee. I wrote to the House Judiciary Committee. I wrote to the Congressional Black Caucus. I wrote to the House Energy and Commerce Committee. I wrote to the Senate Commerce Committee. I wrote to the Federal Trade Commission. I wrote to the Department of Justice Child Exploitation and

2

Obscenity Section. I wrote to Senator Rick Scott. I wrote to Senator Ashley Moody. I wrote to Representative Daniel Webster. Each letter described the procedural record in this litigation. Each letter was transmitted to the identified recipient. Each transmission was completed before any notice was filed with this Court.

On April 7, 2026, I filed ten notices on the docket of this case. Each notice identified one recipient. Each notice stated that correspondence had been transmitted to that recipient. Each notice attached a copy of the correspondence as an exhibit. Each notice expressly stated that no relief was requested from the Court.

I filed the notices because I believe a public docket should reflect what a litigant has done and to whom he has spoken about a matter pending before the Court. I filed them because a court that does not know what communications a party has transmitted to federal oversight bodies cannot manage a case with full information. I filed them because sunlight—not secrecy—serves the administration of justice.

On April 9, 2026, a magistrate judge struck all ten notices, directed the Clerk to delete them from the docket, and directed me to refrain from filing such notices in the future. The order was entered without a motion from any party. It was entered without prior notice to me. It was entered without affording me an opportunity to respond. It cited no rule of procedure. It made no finding of

3

frivolousness, bad faith, or harassment. It identified no conduct warranting sanction. Its stated rationale was that the notices did not request relief.

The order did not direct the Clerk to seal the documents. It directed the Clerk to delete them. Sealing restricts access but preserves the record. Deletion removes the record. When a document is deleted from a federal docket, no member of the public searching PACER will know it existed. No appellate court reviewing the record will see it. No oversight body examining the docket will find it.

The ten deleted documents recorded my communications with the United States Congress and the executive branch of the United States Government. The First Amendment protects the right to petition the Government for a redress of grievances. No order of any court can prohibit me from writing to my elected representatives or to the federal agencies charged with oversight of the subject matter of this litigation. The magistrate judge's order does not purport to prohibit the letters themselves. It does something different: it prohibits me from telling this Court—and the public—that the letters exist.

On April 2, 2026, I filed a complaint of judicial misconduct under 28 U.S.C. § 351 with the Eleventh Circuit Court of Appeals. The complaint names the district judge and the magistrate judge assigned to this case. The Eleventh Circuit acknowledged receipt and is processing the complaint. The deleted letters described the procedural record that is the subject of the § 351 complaint. The

4

magistrate judge who ordered the letters deleted is a subject of the § 351 complaint. The district judge who will now review this objection is a subject of the § 351 complaint.

I state these facts not to suggest that the § 351 complaint caused the deletion order. I state them because the public record should reflect the full procedural context in which the order was entered. The appearance of justice requires no less.

I am a pro se litigant. I do not have counsel. I do not have a law degree. I have the Constitution, the Federal Rules of Civil Procedure, and the obligation to comply with every order this Court enters. I have complied with every order. I will comply with this one. I will not file notices of referral on the docket of this case unless and until the objection is sustained or a higher court directs otherwise.

But compliance is not agreement. I do not agree that communicating with Congress is irrelevant to a federal civil rights case. I do not agree that a public docket should contain no record of a litigant's transmissions to federal oversight bodies. I do not agree that the appropriate remedy for a filing that requests no relief is deletion—not from the case, but from existence.

I declare under penalty of perjury that the foregoing is true and correct.

5

Date: April 10, 2026



Marvelle J. Ballentine
Plaintiff, pro se
7862 W. Irlo Bronson Memorial Hwy. #82
Kissimmee, FL 34747
Telephone: (407) 794-6503
Email: jayballentine@protonmail.co

# EXHIBIT E-27

Case 376 Dkt. 82 / Case 286 Dkt. 47: Notice of Intent to Serve Subpoena on NCMEC (filed 4/9/26)

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MARVELLE J. BALLENTINE,

    *Plaintiff,*

    v.                      Case No. 6:26-cv-00376-AGM-DCI

META PLATFORMS, INC.; ACCENTURE LLP;
GENPACT LIMITED; and TASKUS, INC.,

    *Defendants.*

## NOTICE OF INTENT TO SERVE SUBPOENA ON

## NATIONAL CENTER FOR MISSING & EXPLOITED CHILDREN

1.    Plaintiff Marvelle J. Ballentine, proceeding pro se, hereby gives notice to the Court and to all parties that, pursuant to Federal Rule of Civil Procedure 45 and the advance-notice procedure maintained by the National Center for Missing & Exploited Children (NCMEC), Plaintiff has on this date transmitted to NCMEC, via overnight express mail, a fourteen-day advance notice of an intended records subpoena concerning whether a CyberTipline report under 18 U.S.C. § 2258A was filed in connection with the Facebook account associated with Plaintiff and terminated on or about July 4, 2022.

2.    The advance-notice correspondence transmitted to NCMEC, the signed draft subpoena, and Exhibit A to the subpoena are attached hereto as Exhibit 1 and incorporated by reference. The subpoena will be formally served on NCMEC after expiration of the fourteen-day advance-notice period.

Dated: April 9, 2026                                     Regards,

Marvelle J. Ballentine
Plaintiff, *pro se*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 9, 2026, the foregoing was filed with the Clerk

of Court and served on all counsel of record via the Court's CM/ECF system.

Marvelle J. Ballentine



# EXHIBIT A

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

MARVELLE J. BALLENTINE,

    *Plaintiff,*

v.                               Case No. 6:26-cv-00376-AGM-DCI

META PLATFORMS, INC.; ACCENTURE LLP;
GENPACT LIMITED; and TASKUS, INC.,

    *Defendants.*

# NOTICE OF INTENT TO SERVE SUBPOENA DUCES TECUM

# ON NON-PARTY NATIONAL CENTER FOR MISSING AND

# EXPLOITED CHILDREN

Plaintiff Marvelle J. Ballentine, pro se, gives notice under Federal Rule of Civil Procedure 45(a)(4) and Middle District of Florida Local Rule 3.04 of his intent to serve the attached clerk-issued Subpoena to Produce Documents, Information, or Objects on non-party National Center for Missing and Exploited Children ("NCMEC"), 333 John Carlyle Street, Alexandria, Virginia 22314.

The subpoena was issued by the Clerk of Court on April 9, 2026 on Form AO 88B and is attached as Exhibit A. The subpoena has not yet been served on NCMEC.

The subpoena commands production of the documents identified in Schedule A to the subpoena.

The place of compliance stated in the subpoena is 1520 Belle View Blvd, Ste. #5847, Alexandria, VA 22307 which is within 100 miles of NCMEC's Alexandria, Virginia address.

Plaintiff will not serve the subpoena on NCMEC earlier than fourteen (14) days after service of this Notice. The earliest date of service on NCMEC is April 23, 2026.

This Notice and the attached subpoena are being served on all parties under Federal Rule of Civil Procedure 45(a)(4). This Notice is also being provided to NCMEC as the fourteen-day written notice required by Local Rule 3.04.

Dated: April 9, 2026                          Respectfully submitted,

Marvelle J. Ballentine
7862 W. Irlo Bronson Memorial Hwy, #82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com
Plaintiff, *pro se*

2

## CERTIFICATE OF SERVICE

I certify that on April 9, 2026, I served this Notice and the attached Exhibit A on counsel of record for all Defendants in this action by electronic mail to the email addresses on file for counsel of record.

I further certify that on April 9, 2026, I provided this Notice and the attached Exhibit A to non-party National Center for Missing and Exploited Children, 333 John Carlyle Street, Alexandria, Virginia 22314, as the fourteen-day written notice required by Middle District of Florida Local Rule 3.04, by United States Postal Service Priority Mail Express overnight delivery.

Marvelle J. Ballentine

Marvelle J. Ballentin
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
(407) 794-6403

April 9, 2026

**VIA OVERNIGHT EXPRESS MAIL**

National Center for Missing & Exploited Children Attn: Legal Department /
Subpoena Compliance 333 John Carlyle Street Alexandria, VA 22314

Re: Advance Notice of Intended Subpoenas — Two Separate Matters (1) *Ballentine v. Meta Platforms, Inc., et al.*, No. 6:26-cv-00376-AGM-DCI (M.D. Fla.) (2) *Ballentine v. Anderson, et al.*, No. 6:26-cv-00286-AGM-DCI (M.D. Fla.)

Dear Counsel:

This envelope contains **two separate advance notices** of intended subpoenas to the National Center for Missing & Exploited Children, one for each of the above-captioned matters. Each notice is transmitted pursuant to NCMEC's fourteen-day advance-notice procedure for records subpoenas and is accompanied by a signed copy of the draft subpoena that will be formally served after the notice period has run.

The enclosures are as follows:

1. Advance Notice of Intended Subpoena in Case No. 6:26-cv-00376-AGM-DCI, with signed draft subpoena attached.
2. Advance Notice of Intended Subpoena in Case No. 6:26-cv-00286-AGM-DCI, with signed draft subpoena attached.

Although transmitted in a single envelope for efficiency, the two notices are independent. Each identifies its own case caption, case number, and subpoena recipient, and each should be processed as a discrete matter. Both subpoenas seek the same categorical information: whether a CyberTipline report under 18 U.S.C.

§ 2258A was filed concerning the Facebook account associated with Marvelle J. Ballentine and terminated on or about July 4, 2022.

I am proceeding pro se in both matters. Please direct any questions, objections, or procedural correspondence regarding either notice to the contact information above, and please reference the applicable case number in any response so that the record in each matter remains distinct.

Thank you for your attention to these notices.

Regards,

Marvelle J. Ballentine

Plaintiff, *pro se*

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Middle District of Florida

| | |
|---|---|
| Marvelle J. Ballentine | ) |
| _Plaintiff_ | ) |
| v. | )    Civil Action No.   6:26-cv-00376-AGM-DCI |
| Meta Platforms, Inc.; Accenture LLP; Genpact Limited; and TaskUs, Inc. | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          Custodian of Records
         National Center for Missing and Exploited Children

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A.

| Place: Marvelle J. Ballentine<br>1520 Belle View Blvd, Ste. #5847, Alexandria, VA 22307 | Date and Time:<br><br>May 8, 2026, at 5:00 p.m. Eastern Time |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _April 9, 2026_

        _CLERK OF COURT_                      OR

        _____              _____
           _Signature of Clerk or Deputy Clerk_                 _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_   Marvelle J. Ballentine
pro se; 7862 W. Irlo Bronson Mem. Hwy #82, Kissimmee, FL 34747     , who issues or requests this subpoena, are:
E-mail: jayballentine@protonmail.com I Tel: (407) 794-6503

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## SCHEDULE A

*Ballentine v. Meta Platforms, Inc., et al.*, Case No. 6:26-cv-00376-AGM-DCI

United States District Court for the Middle District of Florida

The responding person must produce a document sufficient to show whether the National Center for Missing and Exploited Children ("NCMEC") received or maintains any CyberTipline report, referral, or submission concerning:

(1) Marvelle J. Ballentine;

(2) Jay Ballentine; and/or

(3) the account-level identifier jaychizza@icloud.com

for the period July 1, 2022 through the date of compliance.

If no such CyberTipline report, referral, or submission exists, the responding person must produce a written statement so stating after a reasonable search.

This subpoena does not request and NCMEC should not produce:

(a) the contents of any CyberTipline report;

(b) any narrative text;

(c) attachments;

(d) images, video, or media;

(e) investigative materials; or

(f) any material beyond what is necessary to show the existence or nonexistence of a CyberTipline report, referral, or submission.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MARVELLE J. BALLENTINE,

     *Plaintiff,*

     v.                          Case No. 6:26-cv-00286-AGM-DCI

DEVIN S. ANDERSON; CHRISTOPHER W. KEEGAN;
and META PLATFORMS, INC.

     *Defendants.*

## NOTICE OF INTENT TO SERVE SUBPOENA ON

## NATIONAL CENTER FOR MISSING & EXPLOITED CHILDREN

1.    Plaintiff Marvelle J. Ballentine, proceeding pro se, hereby gives notice to the Court and to all parties that, pursuant to Federal Rule of Civil Procedure 45 and the advance-notice procedure maintained by the National Center for Missing & Exploited Children (NCMEC), Plaintiff has on this date transmitted to NCMEC, via overnight express mail, a fourteen-day advance notice of an intended records subpoena concerning whether a CyberTipline report under 18 U.S.C. § 2258A was filed in connection with the Facebook account associated with Plaintiff and terminated on or about July 4, 2022.

2.      The advance-notice correspondence transmitted to NCMEC, the signed draft subpoena, and Exhibit A to the subpoena are attached hereto as Exhibit 1 and incorporated by reference. The subpoena will be formally served on NCMEC after expiration of the fourteen-day advance-notice period.

Dated: April 9, 2026                                        Respectfully submitted,

                                                            Marvelle J. Ballentine
                                                            Plaintiff, *pro se*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 9, 2026, the foregoing was filed with the Clerk

of Court and served on all counsel of record via the Court's CM/ECF system.


Marvelle J. Ballentine