# EXHIBIT A

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

MARVELLE J. BALLENTINE,

    *Plaintiff,*

    v.                            Case No. 6:26-cv-00286-AGM-DCI

DEVIN S. ANDERSON; and
CHRISTOPHER W. KEEGAN,

    *Defendants.*

## NOTICE OF INTENT TO SERVE SUBPOENA DUCES TECUM

## ON NON-PARTY NATIONAL CENTER FOR MISSING AND

## EXPLOITED CHILDREN

Plaintiff Marvelle J. Ballentine, pro se, gives notice under Federal Rule of Civil Procedure 45(a)(4) and Middle District of Florida Local Rule 3.04 of his intent to serve the attached clerk-issued Subpoena to Produce Documents, Information, or Objects on non-party National Center for Missing and Exploited Children ("NCMEC"), 333 John Carlyle Street, Alexandria, Virginia 22314.

The subpoena was issued by the Clerk of Court on April 9, 2026 on Form AO 88B and is attached as Exhibit A. The subpoena has not yet been served on NCMEC.

The subpoena commands production of the documents identified in Schedule A to the subpoena.

The place of compliance stated in the subpoena is 1520 Belle View Blvd, Ste. #5847, Alexandria, VA 22307 which is within 100 miles of NCMEC's Alexandria, Virginia address.

Plaintiff will not serve the subpoena on NCMEC earlier than fourteen (14) days after service of this Notice. The earliest date of service on NCMEC is April 23, 2026.

This Notice and the attached subpoena are being served on all parties under Federal Rule of Civil Procedure 45(a)(4). This Notice is also being provided to NCMEC as the fourteen-day written notice required by Local Rule 3.04.

Dated: April 9 2026                                           Respectfully submitted,

Marvelle J. Ballentine
7862 W. Irlo Bronson Memorial Hwy, #82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com
Plaintiff, pro se

2

## CERTIFICATE OF SERVICE

I certify that on April 9 2026, I served this Notice and the attached Exhibit A on counsel of record for all Defendants in this action by electronic mail to the email addresses on file for counsel of record.

I further certify that on April 9, 2026, I provided this Notice and the attached Exhibit A to non-party National Center for Missing and Exploited Children, 333 John Carlyle Street, Alexandria, Virginia 22314, as the fourteen-day written notice required by Middle District of Florida Local Rule 3.04, by United States Postal Service Priority Mail Express overnight delivery.

Marvelle J. Ballentine

3

Marvelle J. Ballentin

7862 W. Irlo Bronson Memorial Hwy #82

Kissimmee, FL 34747

(407) 794-6403

April 9, 2026

**VIA OVERNIGHT EXPRESS MAIL**

National Center for Missing & Exploited Children Attn: Legal Department /
Subpoena Compliance 333 John Carlyle Street Alexandria, VA 22314

Re: Advance Notice of Intended Subpoenas — Two Separate Matters (1) *Ballentine
v. Meta Platforms, Inc., et al.*, No. 6:26-cv-00376-AGM-DCI (M.D. Fla.) (2)
*Ballentine v. Anderson, et al.*, No. 6:26-cv-00286-AGM-DCI (M.D. Fla.)

Dear Counsel:

This envelope contains **two separate advance notices** of intended subpoenas
to the National Center for Missing & Exploited Children, one for each of the above-
captioned matters. Each notice is transmitted pursuant to NCMEC's fourteen-day
advance-notice procedure for records subpoenas and is accompanied by a signed
copy of the draft subpoena that will be formally served after the notice period has
run.

The enclosures are as follows:

1. Advance Notice of Intended Subpoena in Case No. 6:26-cv-00376-AGM-
   DCI, with signed draft subpoena attached.
2. Advance Notice of Intended Subpoena in Case No. 6:26-cv-00286-AGM-
   DCI, with signed draft subpoena attached.

Although transmitted in a single envelope for efficiency, the two notices are
independent. Each identifies its own case caption, case number, and subpoena
recipient, and each should be processed as a discrete matter. Both subpoenas seek
the same categorical information: whether a CyberTipline report under 18 U.S.C.

§ 2258A was filed concerning the Facebook account associated with Marvelle J. Ballentine and terminated on or about July 4, 2022.

I am proceeding pro se in both matters. Please direct any questions, objections, or procedural correspondence regarding either notice to the contact information above, and please reference the applicable case number in any response so that the record in each matter remains distinct.

Thank you for your attention to these notices.

Regards,

Marvelle J. Ballentine
Plaintiff, *pro se*

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Middle District of Florida

| | |
|---|---|
| Marvelle J. Ballentine | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 6:26-cv-00286-AGM-DCI |
| Devin S. Anderson; Christopher W. Keegan; and Meta Platforms, Inc. | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Custodian of Records
National Center for Missing and Exploited Children

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A.

| Place: Marvelle J. Ballentine<br>1520 Belle View Blvd, Ste. #5847, Alexandria, VA 22307 | Date and Time:<br><br>May 8, 2026, at 5:00 p.m. Eastern Time |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: April 9, 2026

CLERK OF COURT

_____          OR          _____
*Signature of Clerk or Deputy Clerk*                              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Marvelle J. Ballentine pro se; 7862 W. Irlo Bronson Mem. Hwy #82, Kissimmee, FL 34747 _____, who issues or requests this subpoena, are: E-mail: jayballentine@protonmail.com I Tel: (407) 794-6503

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## SCHEDULE A

*Ballentine v. Meta Platforms, Inc., et al.*, Case No. 6:26-cv-00376-AGM-DCI
United States District Court for the Middle District of Florida

The responding person must produce a document sufficient to show whether the National Center for Missing and Exploited Children ("NCMEC") received or maintains any CyberTipline report, referral, or submission concerning:

(1) Marvelle J. Ballentine;

(2) Jay Ballentine; and/or

(3) the account-level identifier jaychizza@icloud.com

for the period July 1, 2022 through the date of compliance.

If no such CyberTipline report, referral, or submission exists, the responding person must produce a written statement so stating after a reasonable search.

This subpoena does not request and NCMEC should not produce:

(a) the contents of any CyberTipline report;

(b) any narrative text;

(c) attachments;

(d) images, video, or media;

(e) investigative materials; or

(f) any material beyond what is necessary to show the existence or nonexistence of a CyberTipline report, referral, or submission.

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i) is a party or a party's officer; or
      (ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
   (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
   (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information; or

      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
   (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT E-28

Case 376, Dkt. 39: Motion for Scheduling Directive Regarding Rule 26(f) Conference

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARVELLE J. BALLENTINE,

     *Plaintiff,*

     v.                       Case No. 6:26-cv-00376-AGM-RMN

META PLATFORMS, INC.; ACCENTURE LLP;
GENPACT LIMITED; and TASKUS, INC.,

     *Defendants.*

**PLAINTIFF'S TIME-SENSITIVE MOTION FOR SCHEDULING
DIRECTIVE
REGARDING RULE 26(f) CONFERENCE AND
CASE MANAGEMENT REPORT**

     Plaintiff Marvelle J. Ballentine, proceeding *pro se*, respectfully requests that the Court enter a scheduling directive establishing the timeline and format for the Rule 26(f) planning conference and the Case Management Report required under Local Rule 3.02(a)(2).

     **Time-Sensitive Designation (Local Rule 3.01(f)).** Plaintiff respectfully requests a ruling on this motion by April 4, 2026. The Case Management Report deadline under Local Rule 3.02(a)(2) is April 27, 2026, measured from the first defendant's appearance on March 18, 2026. Plaintiff's proposed schedule contemplates circulation of the proposed CMR to all counsel

by April 6, 2026. A ruling before that date is necessary for the parties to proceed under a court-directed framework in advance of the CMR deadline.

## CURRENT STATUS

1.     Defendant Accenture LLP appeared in this action on March 18, 2026, by filing a notice of appearance (Dkt. 27) and a motion to dismiss (Dkt. 29). The 40-day Case Management Report deadline under Local Rule 3.02(a)(2) began running on that date. The CMR is due on or before April 27, 2026.

2.     Defendant Genpact Limited appeared on March 19, 2026, by filing a time-sensitive motion for extension of time to respond to the Amended Complaint (Dkt. 31). The Court granted that motion on March 20, 2026 (Dkt. 33), extending Genpact's response deadline to April 22, 2026.

3.     Defendant Meta Platforms, Inc. was served with the Complaint via email on March 23, 2026. Meta has not appeared as of the date of this motion. Defendant TaskUs, Inc. has not appeared. Genpact and TaskUs were served with the Amended Complaint on March 4, 2026.

4.     On March 20, 2026, Plaintiff delivered to the Clerk the following: Plaintiff's Opposition to Accenture's Motion to Dismiss; and Plaintiff's Notice of Designated Communication Protocol. On the same date, Plaintiff transmitted a written proposal to all counsel proposing that the Rule 26(f) conference be conducted by written exchange, jointly among all appearing parties, with Plaintiff's proposed CMR circulated by April 6 and defendant responses due by April 13. Plaintiff requested confirmation of this structure by March 25, 2026.

## THE COMMUNICATION ENVIRONMENT

5.     Plaintiff is proceeding without counsel against four defendants in this action and against additional defendants in a related defamation action before this Court, Case No. 6:26-cv-00286-AGM-DCI. Two of the largest law firms in the country represent defendants across both matters. Orrick, Herrington & Sutcliffe LLP represents both Meta Platforms, Inc. and Genpact Limited in this action. Kirkland & Ellis LLP represents Accenture LLP in this action and represents Defendants Anderson and Keegan in the related defamation action. Multiple attorneys across both firms have appeared, filed motions, or communicated with Plaintiff in connection with these matters.

6.     In the weeks preceding the filing of the Amended Complaint in this action, Plaintiff received communications from both Kirkland and Orrick that required review within compressed timeframes. The volume and timing of these communications prompted Plaintiff to phase service of remaining defendants to allow for orderly plaintiff-side case management.

7.     In the related defamation action, Case No. 6:26-cv-00286-AGM-DCI, Defendant Anderson's response to the operative pleading was not due until April 3, 2026. Defendant Keegan's response was not due until April 21, 2026. On March 18, 2026 — sixteen days before Anderson's deadline and thirty-four days before Keegan's — Kirkland & Ellis LLP filed a joint motion to dismiss on behalf of both defendants.

8.     In this action, Defendant Accenture LLP was never served the Amended Complaint. Notwithstanding the absence of service, Accenture filed a motion to dismiss on March 18, 2026 (Dkt. 29) — the same date Kirkland filed the

3

joint motion to dismiss in the defamation action. The following day, March 19, 2026, Genpact filed its extension motion without conferral (Dkt. 31).

9.    Within a 48-hour window from March 18 to March 19, 2026, Plaintiff — a single individual managing three concurrent dockets — received two dispositive motions filed across two federal cases, a pro hac vice application, and an ex parte extension motion, generated by attorneys at two firms. Plaintiff also received multiple separate communications from Kirkland & Ellis LLP between March 17 and March 18, 2026, addressing distinct procedural matters that could have been consolidated into a single correspondence. This concentration of concurrent litigation activity directed at a single pro se litigant is the factual predicate for the communication protocol filed on March 20, 2026, and for the written exchange format requested in this motion.

10.    Between March 17 and March 18, 2026, Plaintiff transmitted settlement offers to Defendants Accenture, Anderson, and Keegan through Kirkland & Ellis LLP. Following those transmissions, Plaintiff received multiple communications from Kirkland in close succession. These included a request that Plaintiff state whether he agreed to the appearance of Defendant Anderson — a named defendant in the related defamation action — as *pro hac vice* counsel in the present civil rights action.

11.    On March 18, 2026, Plaintiff served a conferral request regarding potential disqualification of Kirkland & Ellis LLP from both federal matters. Upon reflection, Plaintiff rescinded that conferral on March 19, 2026, out of deference to the defendants' right to retain counsel of their choice. Plaintiff does not intend to pursue disqualification.

4

12.    On March 19, 2026, Plaintiff communicated the designated communication protocol to all counsel. On March 20, 2026, Plaintiff filed a Notice of Designated Communication Protocol and supporting Declaration with this Court. The protocol designates a communication intermediary through whom all correspondence from defense counsel is received and processed. Plaintiff's communications are reviewed on a defined schedule — Monday and Thursday — and all outbound communications are transmitted through the intermediary in PDF format.

13.    Kirkland & Ellis LLP raised objections to the protocol as initially communicated and proposed a modification: that counsel copy the intermediary on all correspondence directed to Plaintiff, rather than redirect communications to the intermediary as the primary recipient. *Plaintiff accepted Kirkland's proposed modification* and communicated the revised protocol to all counsel on March 20, 2026.

## WHY A WRITTEN EXCHANGE IS NECESSARY FOR THE RULE 26(f) CONFERENCE

14.    The communication protocol described above exists because the volume, timing, and compressed deadlines of defense communications have required Plaintiff to implement structural protections in order to continue prosecuting these actions. The review schedule — Monday and Thursday — reflects the pace at which a single individual managing three concurrent dockets can responsibly process, evaluate, and respond to litigation correspondence from multiple firms.

5

Case 6:26-cv-00376-AGM-DCI    Document 91-1    Filed 04/15/26    Page 16 of 350 PageID
Case 6:26-cv-00376-AGM-RMN    Document 39    Filed 03/23/26    Page 6 of 14 PageID 274
1289

15. A telephonic or video Rule 26(f) conference conducted in real time would bypass the communication protocol that is currently in effect and that both firms have been asked to confirm. A real-time conference would require Plaintiff to receive, process, and respond to proposals from counsel for four defendants — two of the largest law firms in the country — without the deliberation time that the protocol is designed to provide.

16. Plaintiff has observed a pattern across both federal matters in which defense counsel communicates conferral requests, extension requests, and other time-sensitive proposals with compressed response deadlines. Each such communication requires Plaintiff's individual review, evaluation, and response. Plaintiff acknowledges that defense counsel is entitled to employ whatever litigation strategy it determines is appropriate. Plaintiff is equally entitled to establish boundaries that allow him to meet his obligations to the Court while managing the demands of multi-party, multi-docket litigation as a sole individual. A written exchange for the Rule 26(f) conference is the least restrictive format that preserves Plaintiff's ability to participate on equal footing.

17. Local Rule 3.02(a)(1) expressly permits the planning conference to be conducted "by comparable means." A written exchange produces a complete record of each party's position, eliminates the asymmetry between a single pro se litigant and multiple defense teams conferring in real time, and is conducive to the deliberation required for meaningful case management proposals.

**THE GENPACT EXTENSION AND THE CONFERRAL REQUIREMENT**

6

18.     Plaintiff provides the following information to supplement the record in connection with the Court's March 20, 2026 order granting Genpact's motion for extension of time (Dkt. 33). Plaintiff does not seek reconsideration of that order. Rather, Plaintiff provides this chronology to inform the Court's oversight of future scheduling and procedural requests in this action.

19.     On February 5, 2026, a process server delivered to both Genpact and TaskUs a copy of the proposed operative pleading — the Second Amended Complaint contemplated in the related Northern District of California action, *Ballentine v. Meta Platforms, Inc., et al.*, Case No. 3:25-cv-07671-CRB. The Amended Complaint filed in this action on March 4, 2026 (Dkt. 19) is derived from that document. Both Genpact and TaskUs have had access to the substance of the operative claims since February 5, 2026.

20.     On March 4, 2026, Plaintiff transmitted a written communication to all defense counsel, including Orrick, Herrington & Sutcliffe LLP, stating that no extension requests for time to respond to any initial or amended pleading would be granted in any pending matter. That communication set forth the factual basis for this position: both Genpact and TaskUs received the operative claims on February 5, 2026, and by the response deadline would have had approximately 44 days of exposure to those claims — a period that exceeds the aggregate time defendants typically obtain through an initial response period plus a single extension.

21.     Diana Fassbender of Orrick, Herrington & Sutcliffe LLP was a named recipient of the March 4, 2026 communication. Ms. Fassbender appears on the docket in this action as counsel for Genpact Limited.

7

22. On March 19, 2026 — fifteen days after receiving the communication, Ms. Fassbender filed a time-sensitive motion for extension of time on behalf of Genpact (Dkt. 31). The motion was filed without prior conferral with Plaintiff. Local Rule 3.01(g) requires a movant to confer in good faith with opposing parties before filing any motion and to certify that conferral.

23. The absence of conferral foreclosed Plaintiff's opportunity to present the facts set forth in Paragraphs 19 and 20 to the Court before the motion was decided. It also foreclosed Plaintiff's opportunity to propose scheduling conditions — including the timing and format of the Rule 26(f) conference — as part of any negotiated resolution of the extension request. Had conferral occurred, Plaintiff would have proposed the same framework presented in this motion.

24. Orrick, Herrington & Sutcliffe LLP represents both Genpact Limited and Meta Platforms, Inc. in this action. The March 4, 2026 communication was directed to Orrick in connection with its representation of Meta. The firm received that communication, which stated in express terms that no extensions would be granted and identified the specific factual basis for that position. The same firm, through the same attorney who received that communication, subsequently filed Genpact's extension motion without conferring with Plaintiff.

25. The Court's order granting the extension (Dkt. 33) directed all parties to comply with Local Rule 3.01(g)'s conferral requirement. Plaintiff notes the Court's directive and submits this chronology to inform the Court's evaluation of any future scheduling requests.

## PLAINTIFF'S PATTERN OF ACCOMMODATION

26.     Notwithstanding the circumstances described above, Plaintiff has consistently sought to accommodate defense counsel's procedural needs where doing so does not compromise Plaintiff's ability to manage this litigation.

27.     On March 20, 2026, after TaskUs requested a 30-day extension of time to respond to the Amended Complaint, Plaintiff declined the 30-day request but offered an additional 14 days — bringing TaskUs's total period of exposure to the operative claims to approximately 59 days from the February 5, 2026 delivery date. This offer was made notwithstanding Plaintiff's stated no-extensions position.

28.     On March 19, 2026, Plaintiff rescinded a conferral request regarding disqualification of Kirkland & Ellis LLP from both federal matters, out of deference to the defendants' right to retain counsel of their choice.

29.     On March 20, 2026, Plaintiff accepted Kirkland & Ellis LLP's proposed modification to the communication protocol rather than insisting on the protocol as originally communicated or seeking a court order.

30.     This pattern of accommodation is consistent with Plaintiff's conduct throughout the related NDCA proceedings. In September 2025, when Meta requested a 30-day extension to respond to the original complaint in Case No. 3:25-cv-07671-CRB, Plaintiff granted 14 days. When Accenture's counsel requested a similar extension the following day, Plaintiff granted 14 days to maintain consistency. In November 2025, when Meta requested a two-week extension to file its reply brief, Plaintiff endorsed the stipulation. Plaintiff also made three separate attempts to engage defendants in resolution discussions between December 2025 and January 2026, each of which was declined.

31.   Plaintiff provides this record of accommodation to demonstrate that his request for a court-directed scheduling framework is not adversarial in nature. The conferral process is the sole mechanism available to a pro se plaintiff to negotiate scheduling conditions on equal footing. When that process is bypassed — as it was in connection with the Genpact extension — Plaintiff's only recourse is to seek the Court's intervention. That is the purpose of this motion.

## PLAINTIFF'S PROPOSED SCHEDULE

32.   Plaintiff proposes the following structure for the Rule 26(f) conference and Case Management Report, consistent with the written proposal transmitted to counsel on March 20, 2026:

**Format.** The Rule 26(f) conference shall be conducted by written exchange, consistent with Local Rule 3.02(a)(1). A written exchange produces a complete record of each party's position, preserves Plaintiff's established communication protocol, and is conducive to the deliberation required for meaningful case management proposals in a multi-defendant action involving four defendants, two law firms, and overlapping related proceedings.

**Joint Session.** The conference shall be conducted jointly among all parties who have appeared. There shall not be separate conferences with individual defendants.

**Timeline.** Plaintiff will circulate a proposed Case Management Report to all counsel by April 6, 2026. Each appearing defendant will submit its positions, objections, or modifications by April 13, 2026. The joint Case Management Report will be filed on or before April 27, 2026. If any party's positions differ from

Plaintiff's proposed CMR, the joint report will reflect each party's position on each item, as contemplated by Rule 26(f)(2).

### REQUESTED RELIEF

Plaintiff respectfully requests that the Court enter a scheduling directive providing as follows:

(a)     The Rule 26(f) planning conference shall be conducted by written exchange among all appearing parties, jointly, consistent with Local Rule 3.02(a)(1);

(b)     Plaintiff shall circulate a proposed Case Management Report by April 6, 2026, and each appearing defendant shall submit its positions by April 13, 2026;

(c)     The joint Case Management Report shall be filed on or before April 27, 2026;

(d)     Any party that has not appeared as of the date of this motion shall be bound by the resulting schedule upon its appearance and shall not be permitted to seek modification of the Rule 26(f) conference deadlines or the CMR filing date absent a showing of good cause;

(e)     Any future request by any party for an extension of time in this action shall be preceded by conferral with Plaintiff, consistent with the Court's order of March 20, 2026 (Dkt. 33) and the requirements of Local Rule 3.01(g); and

(f)     No further extension of time to respond to the Amended Complaint shall be granted to any defendant without conferral and without

consideration of the defendant's total period of exposure to the operative claims, including any pre-service access to the substance of those claims.

Plaintiff appreciates the Court's attention to this request and is available to comply with whatever schedule and procedures the Court directs.

Date: March 23, 2026                                Respectfully submitted,

Marvelle J. Ballentine
Plaintiff, Pro Se
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com

## LOCAL RULE 3.01(g) CERTIFICATE

Plaintiff certifies that on March 20, 2026, Plaintiff transmitted a written proposal to all counsel for all defendants regarding the format, structure, and timeline for the Rule 26(f) conference and Case Management Report. Plaintiff requested confirmation by March 25, 2026. As of the date of filing, the parties have not reached agreement on the proposed structure.

Date: March 23, 2026

Respectfully submitted,

Marvelle J. Ballentine
Plaintiff, Pro Se
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2026 a true and correct copy of the foregoing was served on all counsel of record via CM/ECF and on all served defendants who have not appeared via the method consistent with Rule 5.

Marvelle J. Ballentine

# EXHIBIT E-29

Case 286, Dkt. 28: Identical Motion for Scheduling Directive (pending without ruling)

Case 6:26-cv-00376-AGM-DCI    Document 91-1    Filed 04/15/26    Page 26 of 350 PageID
Case 6:26-cv-00286-AGM-DCI    Document 39    Filed 03/23/26    Page 1 of 13 PageID 234
1239

**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

MARVELLE J. BALLENTINE,

    *Plaintiff,*

    v.                      Case No. 6:26-cv-00286-AGM-DCI

DEVIN S. ANDERSON; CHRISTOPHER W.
KEEGAN; and META PLATFORMS, INC.,

    *Defendants.*

## PLAINTIFF'S TIME-SENSITIVE MOTION FOR SCHEDULING

### DIRECTIVE

### REGARDING RULE 26(f) CONFERENCE AND CASE MANAGEMENT REPORT

Plaintiff Marvelle J. Ballentine, proceeding *pro se*, respectfully requests that the Court enter a scheduling directive establishing the timeline and format for the Rule 26(f) planning conference and the Case Management Report required under Local Rule 3.02(a)(2).

**Time-Sensitive Designation (Local Rule 3.01(f)).** Plaintiff respectfully requests a ruling on this motion by April 4, 2026. The Case Management Report deadline under Local Rule 3.02(a)(2) is April 27, 2026 — forty days from March 18, 2026, the date of the first defendant's appearance. Plaintiff's proposed schedule contemplates circulation of the proposed CMR to all counsel by April 6, 2026. A ruling before that date is necessary for the parties to proceed under a court-directed framework in advance of the CMR deadline.

## CURRENT STATUS

1.     Defendants Anderson and Keegan appeared in this action on March 18, 2026, by filing a joint motion to dismiss (Dkt. 26). Anderson's response to the operative pleading was not due until April 3, 2026. Keegan's response was not due until April 21, 2026. The joint motion to dismiss was filed sixteen days before Anderson's deadline and thirty-four days before Keegan's deadline. The 40-day Case Management Report deadline under Local Rule 3.02(a)(2) began running on March 18, 2026. The CMR is due on or before April 27, 2026.

2.     Defendant Meta Platforms, Inc. was served with the Second Amended Complaint on March 20, 2026. As of the date of this motion, Meta has not appeared.

3.     On March 20, 2026, Plaintiff filed the following: Plaintiff's Opposition to Defendants Anderson and Keegan's Motion to Dismiss; and Plaintiff's Notice of Designated Communication Protocol. On the same date, Plaintiff transmitted a written proposal to all counsel proposing that the Rule 26(f) conference be conducted by written exchange, jointly among all appearing parties, with Plaintiff's proposed CMR circulated by April 6 and defendant responses due by April 13. Plaintiff requested confirmation of this structure by March 25, 2026.

## THE COMMUNICATION ENVIRONMENT

4.     Plaintiff is proceeding without counsel against three defendants in this action and against additional defendants in a related civil rights action before this Court, Ballentine v. Meta Platforms, Inc., et al., Case No. 6:26-cv-00376-

2

Case 6:26-cv-00376-AGM-DCl    Document 91-1    Filed 04/15/26    Page 28 of 350 PageID
Case 6:26-cv-00286-AGM-DCl    Document 28    Filed 03/23/26    Page 3 of 13 PageID 236
1241

AGM-RMN. Two of the largest law firms in the country represent defendants across both matters. Kirkland & Ellis LLP represents Defendants Anderson and Keegan in this action and represents Accenture LLP in the related 376 case. Orrick, Herrington & Sutcliffe LLP represents Defendant Meta Platforms, Inc. in this action and represents both Meta and Genpact Limited in the related 376 case. Multiple attorneys across both firms have appeared, filed motions, or communicated with Plaintiff in connection with these matters.

5.    In the weeks preceding the filing of the operative pleadings in both actions, Plaintiff received communications from both Kirkland and Orrick that required review within compressed timeframes. The volume and timing of these communications prompted Plaintiff to phase service of remaining defendants to allow for orderly plaintiff-side case management.

6.    Between March 17 and March 18, 2026, Plaintiff transmitted settlement offers to Defendants Anderson and Keegan, and to Defendant Accenture LLP in the related 376 case, through Kirkland & Ellis LLP. Following those transmissions, Plaintiff received multiple communications from Kirkland in close succession, including a request that Plaintiff state whether he agreed to the appearance of Defendant Anderson — a named defendant in this action — as *pro hac vice* counsel in the related civil rights action, Case No. 6:26-cv-00376-AGM-RMN.

7.    On March 18, 2026, Kirkland & Ellis LLP filed the joint motion to dismiss on behalf of Anderson and Keegan in this action (Dkt. 26). On the same date, Kirkland filed a motion to dismiss on behalf of Accenture LLP in the related 376 case (Case No. 6:26-cv-00376-AGM-RMN, Dkt. 29). The following day, March 19, 2026, Genpact Limited filed a motion for extension of time in the 376

3

case (Case No. 6:26-cv-00376-AGM-RMN, Dkt. 31) without conferral with Plaintiff.

8.     Within a 48-hour window from March 18 to March 19, 2026, Plaintiff — a single individual managing three concurrent dockets — received two dispositive motions filed across two federal cases, a pro hac vice application, and an ex parte extension motion, generated by attorneys at two firms. Plaintiff also received multiple separate communications from Kirkland & Ellis LLP between March 17 and March 18, 2026, addressing distinct procedural matters that could have been consolidated into a single correspondence. This concentration of concurrent litigation activity directed at a single pro se litigant is the factual predicate for the communication protocol filed on March 20, 2026, and for the written exchange format requested in this motion.

9.     On March 18, 2026, Plaintiff served a conferral request regarding potential disqualification of Kirkland & Ellis LLP from this action and from the related 376 case. Upon reflection, Plaintiff rescinded that conferral on March 19, 2026, out of deference to the defendants' right to retain counsel of their choice. Plaintiff does not intend to pursue disqualification.

10.    On March 19, 2026, Plaintiff communicated the designated communication protocol to all counsel. On March 20, 2026, Plaintiff filed a Notice of Designated Communication Protocol and supporting Declaration with this Court. The protocol designates a communication intermediary through whom all correspondence from defense counsel is received and processed. Plaintiff's communications are reviewed on a defined schedule — Monday and Thursday — and all outbound communications are transmitted through the intermediary in PDF format.

4

Case 6:26-cv-00376-AGM-DCI    Document 91-1    Filed 04/15/26    Page 30 of 350 PageID
1243
Case 6:26-cv-00286-AGM-DCI    Document 28    Filed 03/23/26    Page 5 of 13 PageID 238

11.   Kirkland & Ellis LLP raised objections to the protocol as initially communicated and proposed a modification: that counsel copy the intermediary on all correspondence directed to Plaintiff, rather than redirect communications to the intermediary as the primary recipient. *Plaintiff accepted Kirkland's proposed modification* and communicated the revised protocol to all counsel on March 20, 2026.

## WHY A WRITTEN EXCHANGE IS NECESSARY FOR THE RULE 26(f) CONFERENCE

12.   The communication protocol described above exists because the volume, timing, and compressed deadlines of defense communications have required Plaintiff to implement structural protections in order to continue prosecuting these actions. The review schedule — Monday and Thursday — reflects the pace at which a single individual managing three concurrent dockets can responsibly process, evaluate, and respond to litigation correspondence from multiple firms.

13.   A telephonic or video Rule 26(f) conference conducted in real time would bypass the communication protocol that is currently in effect and that both firms have been asked to confirm. A real-time conference would require Plaintiff to receive, process, and respond to proposals from counsel for three defendants — two of the largest law firms in the country — without the deliberation time that the protocol is designed to provide.

14.   Plaintiff has observed a pattern across both federal matters in which defense counsel communicates conferral requests, extension requests, and other time-sensitive proposals with compressed response deadlines. Each such

communication requires Plaintiff's individual review, evaluation, and response. Plaintiff acknowledges that defense counsel is entitled to employ whatever litigation strategy it determines is appropriate. Plaintiff is equally entitled to establish boundaries that allow him to meet his obligations to the Court while managing the demands of multi-party, multi-docket litigation as a sole individual. A written exchange for the Rule 26(f) conference is the least restrictive format that preserves Plaintiff's ability to participate on equal footing.

15. Local Rule 3.02(a)(1) expressly permits the planning conference to be conducted "by comparable means." A written exchange produces a complete record of each party's position, eliminates the asymmetry between a single pro se litigant and multiple defense teams conferring in real time, and is conducive to the deliberation required for meaningful case management proposals.

## THE ANDERSON/KEEGAN EARLY FILING AND THE CONFERRAL PROCESS

16. Plaintiff provides the following information to supplement the record in connection with the scheduling of this action. Plaintiff does not challenge any ruling or filing. Plaintiff provides this chronology to inform the Court's oversight of future scheduling and procedural requests.

17. Anderson's response to the operative pleading was due April 3, 2026. Keegan's response was due April 21, 2026. On March 18, 2026, Kirkland & Ellis LLP filed the joint motion to dismiss on behalf of both defendants — sixteen days before Anderson's deadline and thirty-four days before Keegan's.

18. The early filing is not itself the subject of this section. What is relevant is the timing: the motion to dismiss was filed on the same date as Accenture's

6

motion to dismiss in the related 376 case (Case No. 6:26-cv-00376-AGM-RMN, Dkt. 29), and one day before Genpact's extension motion in the 376 case (Case No. 6:26-cv-00376-AGM-RMN, Dkt. 31). The resulting concentration of filings across both dockets compressed Plaintiff's response timeline and foreclosed an orderly conferral process regarding scheduling.

19.    Plaintiff had anticipated that the period before defendants' response deadlines would provide an opportunity to confer on scheduling conditions — including the timing and format of the Rule 26(f) conference — before dispositive motions were filed. The early filing compressed that window.

20.    In the related 376 case, Genpact Limited filed a motion for extension of time on March 19, 2026 (Case No. 6:26-cv-00376-AGM-RMN, Dkt. 31) without conferral with Plaintiff. The Court granted that motion on March 20, 2026 (Case No. 6:26-cv-00376-AGM-RMN, Dkt. 33). The Court's order directed all parties to comply with Local Rule 3.01(g)'s conferral requirement.

21.    Orrick, Herrington & Sutcliffe LLP, counsel for both Genpact and Meta, had received a written communication from Plaintiff on March 4, 2026 stating that no extensions would be granted and identifying the specific factual basis for that position. The same firm subsequently filed Genpact's extension motion without conferring with Plaintiff.

22.    The absence of conferral in the 376 case foreclosed Plaintiff's opportunity to propose scheduling conditions as part of any negotiated resolution of the extension request. The present motion seeks to ensure that the conferral process in this action is preserved for future scheduling discussions.

## PLAINTIFF'S PATTERN OF ACCOMMODATION

23. Notwithstanding the circumstances described above, Plaintiff has consistently sought to accommodate defense counsel's procedural needs where doing so does not compromise Plaintiff's ability to manage this litigation.

24. On March 19, 2026, Plaintiff rescinded a conferral request regarding disqualification of Kirkland & Ellis LLP from this action and from the related 376 case, out of deference to the defendants' right to retain counsel of their choice. The rescission pertained in part to Kirkland's representation of Anderson and Keegan in this action.

25. On March 20, 2026, Plaintiff accepted Kirkland & Ellis LLP's proposed modification to the communication protocol rather than insisting on the protocol as originally communicated or seeking a court order.

26. In the related 376 case, after TaskUs requested a 30-day extension of time to respond to the Amended Complaint, Plaintiff declined the 30-day request but offered an additional 14 days. This offer was made notwithstanding Plaintiff's stated no-extensions position.

27. This pattern of accommodation is consistent with Plaintiff's conduct throughout the related Northern District of California proceedings. In September 2025, when Meta requested a 30-day extension to respond to the original complaint in *Ballentine v. Meta Platforms, Inc., et al.*, Case No. 3:25-cv-07671-CRB, Plaintiff granted 14 days. When Accenture's counsel requested a similar extension the following day, Plaintiff granted 14 days to maintain consistency. In November 2025, when Meta requested a two-week extension to file its reply brief, Plaintiff endorsed the stipulation. Plaintiff also made three separate attempts to engage defendants in resolution discussions between December 2025 and January 2026, each of which was declined.

8

28.   Plaintiff provides this record of accommodation to demonstrate that his request for a court-directed scheduling framework is not adversarial in nature. The conferral process is the sole mechanism available to a pro se plaintiff to negotiate scheduling conditions on equal footing. When that process is compressed or bypassed, Plaintiff's only recourse is to seek the Court's intervention. That is the purpose of this motion.

## PLAINTIFF'S PROPOSED SCHEDULE

29.   Plaintiff proposes the following structure for the Rule 26(f) conference and Case Management Report, consistent with the written proposal transmitted to counsel on March 20, 2026:

**Format.** The Rule 26(f) conference shall be conducted by written exchange, consistent with Local Rule 3.02(a)(1). A written exchange produces a complete record of each party's position, preserves Plaintiff's established communication protocol, and is conducive to the deliberation required for meaningful case management proposals in an action involving three defendants, two law firms, and overlapping related proceedings.

**Joint Session.** The conference shall be conducted jointly among all parties who have appeared. There shall not be separate conferences with individual defendants.

**Timeline.** Plaintiff will circulate a proposed Case Management Report to all counsel by April 6, 2026. Each appearing defendant will submit its positions, objections, or modifications by April 13, 2026. The joint Case Management Report will be filed on or before April 27, 2026. If any party's positions differ from

Plaintiff's proposed CMR, the joint report will reflect each party's position on each item, as contemplated by Rule 26(f)(2).

**REQUESTED RELIEF**

Plaintiff respectfully requests that the Court enter a scheduling directive providing as follows:

(a)  The Rule 26(f) planning conference shall be conducted by written exchange among all appearing parties, jointly, consistent with Local Rule 3.02(a)(1);

(b)  Plaintiff shall circulate a proposed Case Management Report by April 6, 2026, and each appearing defendant shall submit its positions by April 13, 2026;

(c)  The joint Case Management Report shall be filed on or before April 27, 2026;

(d)  Any party that has not appeared as of the date of this motion shall be bound by the resulting schedule upon its appearance and shall not be permitted to seek modification of the Rule 26(f) conference deadlines or the CMR filing date absent a showing of good cause;

(e)  Any future request by any party for an extension of time in this action shall be preceded by conferral with Plaintiff, consistent with the requirements of Local Rule 3.01(g); and

(f)  Any future request by any party for an extension of time to respond to any pleading in this action shall be preceded by conferral with Plaintiff and shall include a representation regarding the requesting party's

Case 6:26-cv-00376-AGM-DCI    Document 91-1    Filed 04/15/26    Page 36 of 350 PageID
Case 6:26-cv-00286-AGM-DCI    Document 28    Filed 03/23/26    Page 11 of 13 PageID 244
1249

total period of access to the operative claims, consistent with the conferral requirements of Local Rule 3.01(g).

Plaintiff appreciates the Court's attention to this request and is available to comply with whatever schedule and procedures the Court directs.

Date: March 22, 2026

Respectfully submitted,

Marvelle J. Ballentine
Plaintiff, Pro Se
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com

11

## LOCAL RULE 3.01(g) CERTIFICATE

Plaintiff certifies that on March 20, 2026, Plaintiff transmitted a written proposal to all counsel for appearing defendants regarding the format, structure, and timeline for the Rule 26(f) conference and Case Management Report. Plaintiff requested confirmation by March 25, 2026. As of the date of filing, the parties have not reached agreement on the proposed structure.

Date: March 23, 2026                                    Respectfully submitted,


                                                        Marvelle J. Ballentine
                                                        Plaintiff, Pro Se
                                          7862 W. Irlo Bronson Memorial Hwy #82
                                                        Kissimmee, FL 34747
                                                        (407) 794-6503
                                                jayballentine@protonmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2026 a true and correct copy of the foregoing was served on all counsel of record via CM/ECF and on Defendant Meta Platforms, Inc. via the method consistent with Rule 5.

Marvelle J. Ballentine

# EXHIBIT E-30

Dkt. 11: Order to Show Cause — Diversity Jurisdiction (signed by Judge Moe 2/18/26; 4 pp.)

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARVELLE J. BALLENTINE,

Plaintiff,

v.                                                  Case No.   6:26-cv-00286-AGM-DCI

ACCENTURE LLP; DEVIN S.
ANDERSON; KIRKLAND & ELLIS
LLP; META PLATFORMS, INC.;
AND CHRISTOPHER W. KEEGAN

Defendants.

## ORDER TO SHOW CAUSE

THIS CAUSE comes before the Court *sua sponte* on review of Plaintiff Marvelle

Ballentine's Amended Complaint.   (Doc. # 4.)   On February 11, 2026, Mr. Ballentine filed

the Amended Complaint against Defendants Accenture LLP ("Accenture"); Devin S.

Anderson; Kirkland & Ellis, LLP ("Kirkland"); Meta Platforms, Inc.; and Christopher W.

Keegan asserting defamation, civil conspiracy to defame, and intentional infliction of

emotional distress claims arising out of a defamatory publication.   (Doc. # 4.)   Mr. Ballentine

asserts subject matter jurisdiction based on diversity of citizenship.

Federal courts are courts of limited jurisdiction and therefore have an obligation to

inquire into their subject matter jurisdiction.   *See Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277,

1279-80 (11th Cir. 2001).   This obligation exists regardless of whether the parties have

challenged the existence of subject matter jurisdiction.   *See Univ. of S. Ala. v. Am. Tobacco Co.*,

168 F.3d 405, 410 (11th Cir. 1999) ("[I]t is well settled that a federal court is obligated to

inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking.").   Mr. Ballentine

has failed to properly allege the citizenship of Accenture and Kirkland.   Therefore, the Court

is unable to determine whether the diversity of citizenship requirement has been satisfied.

A district court has original jurisdiction over cases in which the parties are of diverse

citizenship and "the matter in controversy exceeds the sum or value of $75,000, exclusive of

interest and costs."   28 U.S.C. § 1332(a).   Federal jurisdiction pursuant to 28 U.S.C. § 1332

exists only when there is complete diversity between the plaintiffs and the defendants and the

amount in controversy requirement is met.   *Owen Equip. & Recreation Co. v. Kroger*, 437 U.S.

365 (1978).

Mr. Ballentine asserts that there is complete diversity of citizenship.   (Doc. # 4 at ¶ 7.)

Mr. Ballentine, however, has not properly alleged the citizenship of Accenture or Kirkland,

alleging only that:

> Defendant Accenture LLP ("Accenture") is a limited liability partnership whose
> partners are each citizens of States other than Florida; none is a citizen of
> Florida. Accordingly, Accenture LLP is not a citizen of Florida for purposes of
> diversity jurisdiction. ... Defendant Kirkland & Ellis LLP ("Kirkland") is a
> limited liability partnership whose partners are each citizens of States other than
> Florida; none is a citizen of Florida. Accordingly, Kirkland & Ellis LLP is not a
> citizen of Florida for purposes of diversity jurisdiction.

(*Id.* ¶¶ 11, 13.)   Based on Mr. Ballentine's allegations, both Accenture and Kirkland are limited

liability partnerships ("LLP").

It is insufficient to allege citizenship in the negative, i.e., that a party is not the citizen

of a particular state.   *See Cameron v. Hodges*, 127 U.S. 322, 324–25 (1888); *AFC Franchising, LLC

v. Purugganan*, No. 20-13849-AA, 2021 WL 1541511, at *1 (11th Cir. Apr. 6, 2021); *Meyerson v.

Showboat Marina Casino P'ship*, 312 F.3d 318, 320–21 (7th Cir. 2002).   Additionally, it is well

2

established that an LLP is a citizen of any state of which a partner of that entity is a citizen. *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C.*, 374 F.3d 1020, 1021–22 (11th Cir. 2004) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990)). Therefore, to properly allege the citizenship of Accenture and Kirkland, Mr. Ballentine must provide the Court with a list identifying the citizenship of each member of Accenture and Kirkland.[1] Failure to do so will require dismissal without prejudice of this action for lack of subject matter jurisdiction. *See Hedge Capital Inv. Ltd. v. Sustainable Growth Grp. Holdings LLC*, 593 F. App'x 937, 940 (11th Cir. 2014)[2] ("Complete diversity is an absolute requirement for a federal court to have jurisdiction under 28 U.S.C. § 1332.").

In light of the foregoing and "in the hope of preventing the needless expenditure of litigant and judicial resources that occurs when a case proceeds to trial in the absence of subject matter jurisdiction[,]" *see Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010), the Court will afford the party invoking jurisdiction an opportunity to submit sufficient information to establish this Court's diversity jurisdiction over the instant action.[3]

---

[1] Where a member of the party is also an unincorporated entity, its members must also be identified continuing on through however many layers of partners or members there may be. *See D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra*, 661 F.3d 124, 125–27 (1st Cir. 2011); *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1220 (11th Cir. 2017).

[2] Unpublished opinions of the Eleventh Circuit generally constitute persuasive, and not binding, authority. *See* 11th Cir. R. 36-2 and I.O.P. 6. This opinion, however, summarizes published case law describing the standard.

[3] Carefully ascertaining the citizenship of the parties and whether the Court has subject matter jurisdiction over this action is more than just an academic exercise, as is evident from two Eleventh Circuit decisions issued in 2017. *See Thermoset Corp. v. Bldg. Materials Corp of Am.*, 849 F.3d 1313, 1316-1317 (11th Cir. Mar. 2, 2017) (vacating summary judgment order after three years of litigation where court determined on appeal that the pleadings below had not sufficiently alleged the citizenship of a defendant limited liability company, and upon further inquiry, found that the defendant limited liability company had a non-diverse member); *see also Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1222, 1228 (11th Cir. Mar. 20, 2017) (discussing whether sanctions were warranted in a case where summary judgment was reversed on appeal after the appellate court discovered that the pleadings did not sufficiently allege the citizenship of the plaintiff

3

Accordingly, it is now

**ORDERED** and **ADJUDGED** that:

1.    Plaintiff Marvelle Ballentine is **ORDERED** to show cause within 14 days why the case should not be dismissed for failure to sufficiently allege diversity of citizenship to support federal subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

**DONE** and **ORDERED** this 17th day of February 2026, in Chambers, in Orlando, Florida.

**ANNE LEIGH GAYLORD MOE**
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

LLC, leading to the realization that there was no diversity jurisdiction) ("While the requirements of diversity jurisdiction in this scenario are complicated, they are the law. No party in this case acted with bad intentions, but the result was a colossal waste of time and effort. We trust that the damage done to the parties' credibility, finances, and time is enough of a sanction to curb their conduct and to serve as a warning to future diversity jurisdiction litigants. In the end, when the parties do not do their part, the burden falls on the courts to make sure parties satisfy the requirements of diversity jurisdiction. We must be vigilant in forcing parties to meet the unfortunate demands of diversity jurisdiction in the 21st century.").

4

# EXHIBIT E-31

Dkt. 29: Opposition to Anderson/Keegan MTD (not stricken — Case 286
comparator)

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MARVELLE J. BALLENTINE,

*Plaintiff,*

v.                                                    Case No. 6:26-cv-00286-AGM-DCI

DEVIN S. ANDERSON; META PLATFORMS, INC.; and
CHRISTOPHER W. KEEGAN,

*Defendants.*

## <u>PLAINTIFF'S OPPOSITION TO DEFENDANTS DEVIN ANDERSON AND CHRISTOPHER KEEGAN'S MOTION TO DISMISS (DKT. 26)</u>

### RELIEF REQUESTED

Plaintiff respectfully requests that the Court deny Defendants Devin Anderson and Christopher Keegan's Motion to Dismiss (Dkt. 26) in its entirety. In the alternative, Plaintiff requests that any dismissal be without prejudice with leave to amend.

### STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should deny Defendants' motion where:

1.    The litigation privilege is an affirmative defense that cannot be resolved at Rule 12(b)(6) where the Second Amended Complaint affirmatively

alleges facts negating the defense, including that the challenged statement was not pertinent to any legal argument in the First Motion (SAC ¶¶ 47–51), and Defendants' own Exhibit 4 confirms that Anderson acknowledged the absence of a CSE violation before filing the Second Motion;

2. The Second Amended Complaint states a claim for defamation by implication under the framework established in Jews for Jesus, Inc. v. Rapp, 997 So. 2d 1098 (Fla. 2008), supported by quantitative textual analysis showing that 85.7% of Background-section references to Plaintiff are paired with CSE terminology while the filing identifies zero content, zero standards, and zero factual basis for the asserted violation;

3. The Second Amended Complaint states a claim for intentional infliction of emotional distress where Defendants knew Plaintiff is a survivor of childhood sexual abuse before filing the First Motion, and the motion does not address the CSA-survivor disclosure; and

4. Dismissal with prejudice is not warranted where the privilege determination depends on unresolved factual questions.

**INTRODUCTION**

The Second Amended Complaint ("SAC") alleges three state-law tort claims against Defendants Anderson and Keegan: defamation (libel), civil conspiracy to defame, and intentional infliction of emotional distress ("IIED"). The SAC was filed March 4, 2026 pursuant to the Court's February 25, 2026 order granting leave to amend (Dkt. 18). Defendants' motion (Dkt. 26) seeks dismissal with prejudice of all claims under Rule 12(b)(6).

The motion advances two principal arguments: (1) Florida's litigation privilege bars all claims; and (2) the SAC independently fails to state a claim. Both

arguments ask the Court to resolve disputed factual questions on the pleadings. The SAC's allegations, accepted as true, preclude resolution of those questions at this stage.

Two facts the motion does not address are central to Plaintiff's opposition. First, the SAC alleges with specificity that the challenged statement—"a legitimate community standards violation by Ballentine"—was not pertinent to any legal argument presented in the First Motion. SAC ¶¶ 47–51. The First Motion's four legal arguments addressed statute of limitations, causation, Section 230 immunity, and comparator adequacy. None required or depended upon a determination that Plaintiff committed a community standards violation. SAC ¶ 50. The First Motion identified zero content, zero community standards, and zero factual basis for the assertion. SAC ¶¶ 61–63. The motion (Dkt. 26) does not engage with paragraphs 47 through 51.

Second, the SAC alleges that Anderson acknowledged in writing the absence of a CSE violation three days before filing the Second Motion, which still asserted an unidentified "legitimate violation." SAC ¶¶ 37–44. Defendants' own Exhibit 4 confirms this sequence: Anderson stated that Accenture "expressly accepts as true" the absence of a CSE violation and committed to "include language reinforcing this point" in its forthcoming motion. MTD Ex. 4. Three days later, the Second Motion asserted "a legitimate violation of another community standard unrelated to CSE" without identifying any standard, content, or factual basis. SAC ¶¶ 42–44.

Plaintiff respectfully requests that the Court deny the motion in full. In the alternative, Plaintiff requests that any dismissal be without prejudice with leave to amend.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept all well-pleaded allegations as true and draw all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678.

The litigation privilege is an affirmative defense. Binding Eleventh Circuit precedent holds that a complaint may be dismissed on an affirmative defense only when the complaint's allegations "on their face, show that an affirmative defense bars recovery on the claim." *Marsh v. Butler County*, 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc). *See also Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003); *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020) (complaints "should not ordinarily be dismissed based on an affirmative defense unless the defense is apparent on the face of the complaint"). "A plaintiff is not required to negate an affirmative defense in [its] complaint." *La Grasta v. First Union Securities*, 358 F.3d 840, 845 (11th Cir. 2004). Here, the SAC does not merely fail to establish the privilege—it affirmatively alleges facts negating the defense.

## ARGUMENT

### I.   THE LITIGATION PRIVILEGE CANNOT BE RESOLVED AT RULE 12.

### A.   The Privilege Is Not Per Se Immunity.

The motion treats the litigation privilege as categorical: statements in court filings are privileged, and that is the end of the analysis. The Eleventh Circuit has rejected that reading. In *Sun Life Assurance Co. of Canada v. Imperial Premium Finance, LLC*, 904 F.3d 1197, 1219–20 (11th Cir. 2018), the court stated that it does "not think that the Florida Supreme Court is of the view that the litigation privilege offers per se immunity against any and all causes of action that arise out of conduct in judicial proceedings." The privilege must be "assessed in light of the specific conduct for which the defendant seeks immunity," and it "should not be applied in novel ways that serve to 'eviscerate' long-standing sources of judicially available recovery." *Id.* at 1220.

The most recent Eleventh Circuit decision on this issue confirms that the privilege is narrow. *Grippa v. Rubin*, No. 23-11714, 2025 WL 997347 (11th Cir. Apr. 3, 2025). In *Grippa*, the court held that absolute privilege applies only to statements "made during judicial proceedings or in court filings" and only if "related to those proceedings." The court stated that "the fact that a communication relates to pending litigation does not alone shield it from a defamation suit." *Id.* The qualified privilege, by contrast, "is a fact-based defense" that turns on whether the defendant acted with express malice—a determination for the jury. Fridovich v. Fridovich, 598 So. 2d 65, 69–70 (Fla. 1992); DelMonico v. Traynor, 116 So. 3d 1205, 1215 (Fla. 2013).

The Florida Supreme Court reached the same conclusion in *Debrincat v. Fischer*, 217 So. 3d 68, 70 (Fla. 2017), holding that the litigation privilege does not bar certain tort claims and that applying it in such a manner would "eviscerate" long-established causes of action.

5

The cases the motion relies upon—*Jackson, Cherdak,* and *Emergency Recovery*—do not stand for the proposition that any statement in any court filing is absolutely privileged regardless of content. Each of those cases involved statements that were pertinent to the litigation at issue. The question here is whether *this* statement was pertinent to any argument in the First Motion—and that is a fact question the SAC's allegations place squarely before the Court.

## B.    The SAC Alleges Non-Pertinency With Specificity.

Florida's absolute litigation privilege requires that the statement bear "some relation to the proceeding." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.,* 639 So. 2d 606, 608 (Fla. 1994). The foundational Florida case, *Myers v. Hodges,* 53 Fla. 197, 44 So. 357, 359 (Fla. 1907), requires that statements be "connected with, or relevant or material to, the cause in hand or subject of inquiry." Statements not pertinent to the proceeding receive only qualified privilege. *DelMonico v. Traynor,* 116 So. 3d 1205, 1218–19 (Fla. 2013).

The SAC alleges, at paragraphs 47 through 51, that the "legitimate community standards violation" assertion was not pertinent to any legal argument in the First Motion. Specifically:

The First Motion did not state that resolving any issue presented required the Court to determine whether Plaintiff violated any specific community standard, and it did not identify any such standard. SAC ¶ 47. The First Motion did not explain how the assertion corresponded to any identified content, standard, or enforcement category other than the child-safety context discussed throughout the filing. SAC ¶ 48. The procedural posture was a Rule 12(b)(6)

6

motion testing legal sufficiency. SAC ¶ 49. The First Motion's legal arguments addressed statute of limitations, causation, Section 230 immunity, and comparator adequacy—none of which required or depended upon a determination that Plaintiff committed a community standards violation. SAC ¶ 50. The "legitimate community standards violation" assertion was not necessary to, and did not support, any legal argument in the First Motion. SAC ¶ 51.

The SAC's textual analysis, set forth in Section K (SAC ¶¶ 55–63), quantifies the absence of any factual predicate for the assertion. Table 1 establishes:

| Metric | Value |
|---|---|
| Total pages of substantive text in First Motion | 17 |
| Instances of Plaintiff's name in same sentence as CSE terminology | 9 |
| Instances concentrated in first 3 pages | 5 |
| Content identified to support "legitimate violation" assertion | 0 |
| Community standard identified to support assertion | 0 |
| Factual basis provided for assertion | 0 |

Across seventeen pages of substantive argument, the First Motion identified zero content, zero standards, and zero factual basis for the "legitimate violation" assertion. SAC ¶¶ 61–63. A statement with no identified factual predicate, supporting no legal argument in the filing, does not bear "some relation to the proceeding" under *Levin*. At minimum, these allegations create a fact question as to pertinency that cannot be resolved at Rule 12.

The motion does not address paragraphs 47 through 51. It does not identify what legal argument the "legitimate violation" assertion supported. It does not explain why the assertion was necessary when none of the four legal arguments (statute of limitations, causation, Section 230, comparators) depended on it. It

does not identify what content Plaintiff posted, what standard he violated, or what factual basis existed for the assertion. The motion argues the statement was "made in a pleading." It does not argue the statement was pertinent to any argument in that pleading.

The motion's reliance on *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250 (11th Cir. 2004), does not aid Defendants. *Jackson* itself states that the privilege applies at Rule 12 only when "the complaint affirmatively and clearly shows the conclusive applicability of the defense." *Id.* at 1277. The SAC does the opposite—it affirmatively alleges facts showing the privilege does not apply. *See also Spagnuolo v. Insurance Office of America, Inc.*, 356 So. 3d 908 (Fla. 5th DCA 2023) (neither absolute nor qualified privilege attached where the challenged conduct was "completely irrelevant to Appellants' litigation"); *LatAm Investments, LLC v. Holland & Knight, LLP*, 88 So. 3d 240, 245 (Fla. 3d DCA 2011) (privilege "can be adjudicated on a motion to dismiss if the applicability of the privilege can be clearly discerned from the face of the complaint"); *Fariello v. Gavin*, 873 So. 2d 1243, 1245 (Fla. 5th DCA 2004) ("The affirmative defense of qualified immunity presents a fact intensive issue that should ordinarily not be resolved by a motion to dismiss.").

## C. Even If Qualified Privilege Applies, Express Malice Creates a Triable Issue.

If the Court concludes the absolute privilege does not apply—or that the SAC's allegations create a fact question about absolute privilege—the fallback is qualified privilege. Under Florida law, qualified privilege is defeated by express malice: the defendant's "primary motive in making the statements was the intent

to injure the reputation of the plaintiff." *Fridovich v. Fridovich*, 598 So. 2d 65, 69–70 (Fla. 1992); *DelMonico v. Traynor*, 116 So. 3d 1205, 1215 (Fla. 2013).

The SAC pleads express malice at paragraph 80 based on the following sequence, which Defendants' own Exhibit 4 confirms:

Anderson acknowledged in writing that Accenture "expressly accepts as true" the absence of a CSE violation. SAC ¶¶ 39–41; MTD Ex. 4. Anderson stated Accenture would "include language reinforcing this point" in its forthcoming motion. SAC ¶ 41; MTD Ex. 4. Three days later, Anderson filed the Second Motion asserting "a legitimate violation of another community standard unrelated to CSE"—without identifying any standard, content, or factual basis. SAC ¶¶ 42–44.

Defendants placed the full October 28 email exchange before the Court as Exhibit 4. The Court may read it. It confirms the SAC's allegations at paragraphs 39 through 41. The motion quotes Anderson's statement that he "disagree[d] with Plaintiff's characterization" and that the revised language would be included "as a courtesy." MTD at 5. The motion does not quote or address the "expressly accepts as true" language in its privilege or falsity analysis. The full exhibit speaks for itself, and the sequence—acknowledgment, commitment, pivot without factual predicate—supports the SAC's express-malice theory.

The express-malice inquiry is a jury question. *Grippa*, 2025 WL 997347 ("The question of malice is for the jury and not appropriate for immediate appeal."). It cannot be resolved at Rule 12.

### D.    The Privilege Does Not Apply to All Asserted Claims

The motion argues the privilege applies "across the board," citing *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384

(Fla. 2007). But *Sun Life* and *Debrincat* have narrowed *Echevarria*. The privilege does not apply in "novel ways that serve to 'eviscerate' long-standing sources of judicially available recovery." *Sun Life*, 904 F.3d at 1220.

The IIED claim rests in part on independent conduct—the Keegan email re-additions—that is separate from the defamatory publication. The privilege analysis for that conduct must be assessed independently. The motion does not address whether the Keegan emails are independently privileged; it addresses only whether they are independently "outrageous." Those are different questions.

## II.    THE SAC STATES A CLAIM FOR DEFAMATION BY IMPLICATION.

### A.    The Legal Framework.

Florida recognizes defamation by implication. *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106–08 (Fla. 2008). Defamation by implication arises "not from what is stated, but from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts." *Id.* at 1106. Truth of the literal statements is not a complete defense—the defendant must prove the defamatory *implication* itself was true. *Id.* at 1108 n.13. *See also Ramos v. Miami Herald Media Co.*, 132 So. 3d 1236 (Fla. 2014).

*Heekin v. CBS Broadcasting, Inc.*, 789 So. 2d 355, 357–58 (Fla. 2d DCA 2001), held that truthful facts juxtaposed to create a false impression stated a claim for defamation by implication. *White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990), sets forth the leading national test: if a communication

"supplies additional, affirmative evidence suggesting that the defendant intends or endorses the defamatory inference," the claim proceeds.

### B.    The SAC's Textual Analysis Establishes the Juxtaposition.

The SAC's Section K (paragraphs 55–63) provides the quantitative foundation for the juxtaposition element. The First Motion is a seventeen-page filing containing 26 references to CSE terminology and 41 references to Plaintiff. SAC ¶¶ 55–57. Plaintiff's name appears in the same sentence as CSE terminology nine times. SAC ¶ 58. Five of those nine pairings are concentrated in the first three pages—the Introduction, Summary of Argument, and Background sections. SAC ¶ 59. In the Background section, Plaintiff's name appears seven times; six of those seven references (85.7%) place Plaintiff's name in the same sentence or immediately adjacent sentence as CSE terminology. SAC ¶ 60.

| Metric | Value |
|---|---|
| CSE references per page | 1.53 |
| Plaintiff references per page | 2.41 |
| Background section pairing rate (Plaintiff-CSE) | 85.7% |
| Plaintiff-CSE pairings in first 3 pages | 55.6% |
| Content identified to support assertion | 0 |
| Community standard identified | 0 |
| Factual basis provided | 0 |

The *Jews for Jesus* juxtaposition test asks whether the defendant "juxtaposes a series of facts so as to imply a defamatory connection between them." 997 So. 2d at 1106. The tables quantify the juxtaposition: Plaintiff's name appears alongside CSE terminology at a rate of 85.7% in the factual narrative, the association is front-loaded in the sections a reader encounters first, and the filing identifies nothing to explain or support the assertion. SAC ¶¶ 61–63. The reader

11

absorbs the CSE-Plaintiff association before reaching legal arguments that do not depend on any violation finding. SAC ¶¶ 47–51. The defamatory implication is that Plaintiff committed a CSE violation or a child-protection-law violation warranting enforcement action. SAC ¶ 77.

The motion does not engage with the SAC's Section K allegations. The concentration and pairing data are unaddressed. The tables are unaddressed. The 85.7% Background pairing rate is unaddressed.

### C.    The Motion's Defenses Do Not Defeat the Claim at Rule 12.

**The "truth" defense.** The motion asserts the statement is "a true statement" but does not identify what was true—what content Plaintiff posted, what standard was violated, or what factual basis existed. The tables' zero rows (0 content, 0 standards, 0 basis) quantify this absence. Under *Jews for Jesus*, truth of literal statements does not defeat a defamation-by-implication claim. The defendant must prove the defamatory *implication* was true. 997 So. 2d at 1108 n.13. The implication is that Plaintiff committed a CSE-related violation. Defendants have identified no factual predicate for that implication—and their own Exhibit 4 (Anderson's October 28 email) confirms that Anderson acknowledged the absence of a CSE violation.

**The "opinion" defense.** The motion cites *Turner v. Wells*, 879 F.3d 1254, 1262–64 (11th Cir. 2018), for the proposition that opinions about public documents are not actionable. Under *Turner*, a "pure opinion" is a "comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader." The tables defeat this defense. The factual predicates for the "legitimate violation" assertion are not set forth in the

publication—Table 1 shows zero content, zero standards, zero basis disclosed. SAC ¶¶ 61–63. A statement asserting a "legitimate violation" without disclosing any factual predicate is not a "pure opinion" based on disclosed facts. Whether a reasonable reader would understand the statement as fact or opinion is a question the Court cannot resolve at Rule 12.

**The "seventy times" argument.** The motion argues that the California Complaint itself referenced CSE more than 70 times, so the First Motion's use of CSE terminology in proximity to Plaintiff's name was unremarkable. This argument conflates frequency with editorial function. The California Complaint referenced CSE to allege that CSE was a false pretext for enforcement—Plaintiff's theory was that the designation was fabricated to mask racial discrimination. The First Motion referenced CSE in proximity to Plaintiff's name while asserting a "legitimate violation." Those are opposite editorial functions. The California Complaint said CSE was applied to Plaintiff and it was false; the First Motion said a legitimate violation occurred. Raw frequency comparisons between the two documents are inapt without accounting for the difference in what the CSE references communicate.

The concentration data further distinguishes the filings: 55.6% of all Plaintiff-CSE pairings in the First Motion are in the first three pages, and 85.7% of Plaintiff references in the Background section are paired with CSE terminology. SAC ¶¶ 59–60. The front-loading establishes the CSE-Plaintiff association in the reader's mind before the legal arguments begin—arguments that did not depend on any violation finding. SAC ¶¶ 47–51.

**The motion's truncation of the defamatory statement.** The motion isolates a single sentence and argues it was merely an assessment of the California

13

Complaint's allegations. The SAC's defamation theory is not about that sentence in isolation. It is about the totality of the First Motion as measured by Section K's textual analysis. The motion does not engage with the SAC's Section K allegations.

### III. THE SAC STATES A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

#### A.    The CSA-Survivor Disclosure Transforms the Analysis.

The motion does not mention the CSA-survivor disclosure. This is the most significant omission in the motion.

The SAC alleges: Plaintiff disclosed his status as a childhood sexual abuse survivor in the California Complaint in a footnote. SAC ¶ 25. Anderson, counsel for Accenture, reviewed the complaint containing this disclosure before preparing the First Motion. SAC ¶ 26. The First Motion then paired Plaintiff's name with CSE terminology nine times, concentrated in the first three pages, while asserting a "legitimate violation" with zero identified content, zero identified standards, and zero factual basis. SAC ¶¶ 55–63. Plaintiff suffered severe emotional distress. SAC ¶ 54.

Under Florida law, the outrageousness inquiry considers the defendant's knowledge of the plaintiff's particular vulnerability. *Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985). The motion's cases—*Williams v. Worldwide Flight SVCS.* (racial slurs at work), *Lay v. Roux Labs.* (verbal attacks and racial epithets), *Martinez v. Pavex* (racial slurs and workplace inconvenience)—all involved direct verbal conduct without a specific-vulnerability dimension.

The SAC alleges a different set of facts: the filing paired a disclosed CSA survivor's name with child sexual exploitation terminology at a measurable rate while asserting a violation with no factual predicate. The tables show this was not an isolated reference but a quantifiable pattern of association—nine pairings concentrated in narrative sections—directed at a person Defendants knew to be a CSA survivor. SAC ¶¶ 25–26, 55–63.

| Metric | Value |
|---|---|
| Background section Plaintiff-CSE pairing rate | 85.7% |
| Total Plaintiff-CSE pairings | 9 |
| First 3 pages concentration | 55.6% |
| Content identified to support assertion | 0 |
| Community standard identified | 0 |
| Factual basis provided | 0 |

Whether that pattern of conduct is "outrageous" when the knowledge elements are taken as true—as they must be at Rule 12—is a question for the factfinder.

## B.    The Keegan Emails Are Independent IIED Conduct.

The motion invokes Florida's single-action rule to argue that IIED based on the same publication as defamation is barred. That rule applies to the motion-to-dismiss statements—but the SAC's IIED claim also rests on independent conduct that is not part of the defamation count.

The SAC alleges: Keegan re-added Anderson to email communications with Plaintiff. SAC ¶¶ 65–72. Keegan did so after receiving: (a) Plaintiff's written refusal; (b) Plaintiff's stated basis for the refusal (that Anderson is alleged to have caused severe emotional distress); and (c) the February 9, 2026 notice disclosing

15

Plaintiff's CSA-survivor status and attaching the complaint. SAC ¶¶ 69, 72. Keegan sent both re-addition emails after receiving these materials. SAC ¶ 69.

The motion characterizes this as "standard communications made between attorneys and a pro se attorney during the course of pending litigation proceedings." MTD at 19. The motion addresses what Keegan did but not what Keegan knew when he did it. At Rule 12, the SAC's knowledge allegations must be accepted as true. SAC ¶¶ 103–104.

The single-action rule bars duplicative claims based on the same publication. It does not bar IIED claims alleging conduct beyond the defamatory publication. The Keegan email conduct is separate from the First Motion's publication—different actor, different conduct, different time period, different mechanism of harm. The motion does not address whether the Keegan conduct constitutes independent IIED conduct outside the single-action rule's scope.

## IV. THE CONSPIRACY CLAIM SURVIVES WITH DEFAMATION.

The motion's conspiracy argument is entirely derivative: conspiracy fails because defamation fails. If defamation survives—and it does—the conspiracy argument collapses. *See* SAC ¶¶ 83–92. The SAC alleges specific overt acts in furtherance of the conspiracy: Anderson's filing of the First and Second Motions (SAC ¶ 90) and Keegan's re-addition of Anderson to email communications after receiving Plaintiff's refusal and stated basis (SAC ¶¶ 92–93). The motion does not address these specific overt acts as independent bases for the conspiracy claim.

## V. DISMISSAL WITH PREJUDICE IS NOT WARRANTED.

16

Defendants' argument for dismissal with prejudice depends on the litigation privilege being resolved conclusively at Rule 12. If pertinency is a fact question—which the SAC's paragraphs 47 through 51 allege—then the privilege cannot be resolved at this stage, and futility has not been established. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1213 (11th Cir. 2001), applies only when "a more carefully drafted complaint could not state a claim." Here, the SAC already states a claim.

The motion cites *Brett v. Biden* and *Jean-Baptiste v. DOJ*. Both involved pro se litigants asserting facially implausible theories—sovereign-citizen arguments, conspiracy allegations against the Department of Justice. This case involves element-by-element pleading, specific factual allegations about the textual characteristics of a particular filing, a documented email exchange in which the filer acknowledged the absence of the implied violation, and a quantitative textual analysis. A court's determination that claims do not ultimately prevail is categorically distinct from a determination that they are "without arguable merit either in law or fact." *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001).

Leave to amend should be freely given. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Pro se pleadings are held to a less stringent standard and should be liberally construed. In the alternative, if any claim is dismissed, dismissal should be without prejudice with leave to amend.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss (Dkt. 26) in its entirety. In the alternative, Plaintiff requests that any dismissal be without prejudice with leave to amend.

Date: March 20, 2026                              Respectfully submitted,

                                                 Marvelle J. Ballentine
                                                 Plaintiff, pro se
                                  7862 W. Irlo Bronson Memorial Hwy #82
                                                 Kissimmee, FL 34747
                                                 Telephone: (407) 794-6503
                                                 jayballentine@protonmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2026, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will serve Notice of Filing on all counsel of record.

Marvelle J. "Jay" Ballentine

# EXHIBIT E-32

Dkt. 9: Plaintiff's motion to transfer to Orlando Division

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

MARVELLE J. BALLENTINE,

    *Plaintiff,*

v.

                                    Case No. 5:26-cv-00213

ACCENTURE LLP; META PLATFORMS, INC.;
TASKUS, INC.; GENPACT USA, INC.;
DEVIN S. ANDERSON; KIRKLAND & ELLIS LLP;
and CHRISTOPHER W. KEEGAN,

    *Defendants.*

## MOTION TO TRANSFER TO ORLANDO DIVISION

Plaintiff Marvelle J. Ballentine, proceeding pro se, respectfully moves

pursuant to 28 U.S.C. § 1404(a) and Local Rule 1.02(c) to transfer this action from

the Ocala Division to the Orlando Division of the Middle District of Florida.

1.      Plaintiff is domiciled in the Orlando Division of this Court. The Ocala

Division courthouse is approximately one hour and ten minutes from Plaintiff's

location. The Orlando Division courthouse is approximately fifty minutes. Plaintiff

is a pro se litigant with a high-mileage vehicle. The additional travel burden to

Ocala is substantial. Plaintiff does not have or desire electronic filing privileges.

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 3.01(g), the undersigned certifies that on March 26, 2026, Plaintiff conferred in good faith with counsel for Defendants regarding the relief requested in this motion by electronic correspondence. As of the date of filing, no response has been received.

Date: March 26, 2026                                    Respectfully submitted,

                                                        Marvelle J. Ballentine
                                                        Plaintiff, pro se
                                                        7862 W. Irlo Bronson Memorial Hwy #82
                                                        Kissimmee, FL 34747
                                                        Telephone: (407) 794-6503
                                                        jayballentine@protonmail.com

# CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2026, I served a true and correct copy of

the foregoing upon all counsel of record via CM/ECF.

Marvelle J. Ballentine

# EXHIBIT E-33

Dkt. 15: Plaintiff's withdrawal of transfer motion

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

MARVELLE J. BALLENTINE,

    Plaintiff,

v.

                                  Case No.: 5:26-cv-213-JEP-PRL

META PLATFORMS, INC.,
ACCENTURE LLP, TASKUS,
INC., GENPACT USA, INC.,
DEVIN S. ANDERSON,
KIRKLAND & ELLIS LLP and
CHRISTOPHER W. KEEGAN,

    Defendants.

                                       /

### ORDER

    **THIS CAUSE** is before this Court upon *sua sponte* review of the file. It

is **ORDERED** that this case is transferred to the Honorable Judge Anne-Leigh

Gaylord Moe pursuant to Local Rule 1.07(a), Middle District of Florida, and

with her consent, to be considered with related cases.

    **DONE** and **ORDERED** in Jacksonville, Florida on April 1, 2026.

                                      _____

                                           JORDAN E. PRATT
                            UNITED STATES DISTRICT JUDGE

-2-

Copies:
*Pro Se* Party
Counsel of Record

# EXHIBIT E-36

Email to Chief Judge Howard — cover letter to § 137 petition; documents
routing error

# Time-Sensitive Petition for Administrative Reassignment — Case Nos. 6:26-cv-00376-AGM-DCI, 6:26-cv-00286-AGM-DCI, 5:26-cv-00213-AGM-PRL

| | |
|---|---|
| From | jayballentine@protonmail.com <jayballentine@protonmail.com> |
| To | chambers_flmd_howard@flmd.uscourts.gov |
| BCC | jaychizza@icloud.com |
| Date | Thursday, April 2nd, 2026 at 2:10 PM |

To the Chief Judge of the United States District Court for the Middle District of Florida — The Honorable Ms. Marcia Morales Howard

My name is Marvelle J. Ballentine. I am a pro se plaintiff in three related civil actions currently assigned to District Judge Anne-Leigh Gaylord Moe in the Orlando Division. I write to you in your administrative capacity under 28 U.S.C. § 137.

On April 2, 2026, I prepared and filed a time-sensitive petition for administrative reassignment addressed to you by name, invoking your authority under 28 U.S.C. § 137 to reassign Case Nos. 6:26-cv-00376, 6:26-cv-00286, and 5:26-cv-00213. Due to a procedural error on my part, the petition was not properly routed to your office through the Clerk. I take full responsibility for the error and respectfully transmit the petition to you directly through this correspondence.

I bring the following to your attention. Notwithstanding the routing failure, Judge Moe entered an endorsed order on April 2, 2026, denying the petition. The petition was addressed to you. It invoked authority that 28 U.S.C. § 137 vests in the chief judge. It requested reassignment of cases away from Judge Moe. It was denied by the judge whose reassignment it requested. I am unable to determine from the docket whether the petition was reviewed by your office before it was denied.

The petition was designated time-sensitive under Local Rule 3.01(e). It requested consideration by April 9, 2026. The basis for that designation remains operative: Defendant Accenture LLP was served with interrogatories in the state court proceeding before removal, with responses due April 10, 2026. A videotaped organizational deposition of Accenture LLP is noticed for April 17, 2026. These obligations carried into federal court under 28 U.S.C. § 1450, which provides that all state court orders and discovery "shall be held to be binding" after removal. No scheduling order has been entered in Case No. 213. No case management conference has been set. Without judicial action before April 10, no enforcement mechanism exists for discovery obligations that are currently running.

Attached to this correspondence are docket-stamped copies of the following materials filed with the Clerk on April 2, 2026:

1. Petition for Administrative Reassignment (with Exhibits A, B, and C)
2. Plaintiff's Urgent Motion for Recusal and to Identify Deficiency, Toll Cure Period, and Clarify Service (Case No. 376)

3. Declaration of Marvelle J. Ballentine

4. Complaint of Judicial Misconduct Under 28 U.S.C. § 351(a), filed with the Clerk of the United States Court of Appeals for the Eleventh Circuit

I respectfully request that you review the petition in your administrative capacity under 28 U.S.C. § 137 and exercise the authority the statute vests in you. Should you determine that the petition does not warrant action, I respectfully request written confirmation that you have reviewed it, so that the record reflects that the petition reached the office to which it was addressed.

Respectfully,

Marvelle J. Ballentine

Plaintiff, *pro se*

---

**2.24 MB**    4 files attached

| 040226_Petition_to_Chief_Judge.pdf 425.46 KB | 040226_Plaintiff_Recusal_Motion.pdf 1.31 MB | 040226_351_Complaint.pdf 362.64 KB |

| 040226_Decl_MJB.pdf 163.37 KB |

No. _____

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

RAIL

U.S. COURT OF APPEALS
RECEIVED
CLERK
APR 1 4 2026
ATLANTA, GA

In re MARVELLE J. BALLENTINE,
Petitioner.

ON PETITION FOR A WRIT OF MANDAMUS TO THE
UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

Relates to:

Case No. 6:26-cv-00376-AGM-DCI
Case No. 6:26-cv-00286-AGM-DCI
Case No. 5:26-cv-00213-AGM-PRL

## TIME SENSITIVE MOTION FOR STAY OF DISTRICT COURT

## PROCEEDINGS

## PENDING RESOLUTION OF PETITION FOR WRIT OF MANDAMUS

## RULING REQUESTED BY APRIL 23, 2026

# INTRODUCTION

1.     Petitioner Marvelle J. Ballentine, proceeding pro se, respectfully moves this Court pursuant to Federal Rule of Appellate Procedure 8(a)(2) and the All Writs Act, 28 U.S.C. § 1651(a), for a stay of proceedings in Case No. 6:26-cv-00376-AGM-DCI, pending in the United States District Court for the Middle District of Florida. This motion is filed simultaneously with a Petition for Writ of Mandamus. The stay is sought pending this Court's resolution of that petition.

2.     The petition filed simultaneously with this motion concerns three related cases: (1) Case No. 6:26-cv-00376-AGM-DCI, asserting civil rights claims; (2) Case No. 6:26-cv-00286-AGM-DCI, asserting defamation claims; and (3) Case No. 5:26-cv-00213-AGM-PRL, asserting claims for intentional infliction of emotional distress, defamation, and violations of the Florida Deceptive and Unfair Trade Practices Act. All three cases are presently assigned to the Honorable Anne-Leigh Gaylord Moe, United States District Judge, and the Honorable Daniel C. Irick, United States Magistrate Judge. The stay sought here is limited to Case 376, where the

2

pending motion to transfer venue and three unopposed dispositive motions create the jurisdictional exposure described below.

3.    The stay is sought under Federal Rule of Appellate Procedure 8(a)(2)(A) because seeking a stay from the district court would be impracticable. The basis for impracticability is set forth in Section III below.

4.    The requested stay must encompass all proceedings in Case 376, including Meta Platforms, Inc.'s pending motion to transfer venue under 28 U.S.C. § 1404(a) (Case 376, Dkt. 87) [Ex. E], because a transfer order would divest this Circuit of jurisdiction over Case 376 before any procedural defect documented in the accompanying petition is corrected. There is no appeal from a § 1404(a) transfer order. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 318 (5th Cir. 2008) (en banc).

5.    This motion is filed on a time-sensitive basis under Federal Rule of Appellate Procedure 8(a)(2)(A) and Eleventh Circuit Rule 27-1(b). Three dispositive motions are pending as unopposed and could be decided at any time. Petitioner's response to the transfer motion is due on or about April 23, 2026, and will require briefing on a procedural foundation that the accompanying petition demonstrates is defective. Without a stay, Petitioner must brief the transfer motion — and risks dismissal on the unopposed motions to dismiss — before this Court has an opportunity to consider the petition. This motion could not have been filed earlier because Meta's

3

motion to dismiss (Dkt. 85) and motion to transfer venue (Dkt. 87) were filed on April 9, 2026, and Petitioner's Rule 72(a) objection to the filing-restriction order (Dkt. 89) was filed on April 10, 2026; the need for appellate intervention crystallized when the district-court record simultaneously reflected a pending transfer motion and the absence of any operative opposition to the pending dispositive motions.

## TIME-SENSITIVE NATURE OF RELIEF REQUESTED

6. The time-sensitive nature of the relief requested is established as follows.

7. The circumstances creating the time-sensitive posture are as follows. A motion to transfer venue under 28 U.S.C. § 1404(a) is pending in Case No. 6:26-cv-00376-AGM-DCI (Dkt. 87, filed April 9, 2026) [Ex. E]. Petitioner's response is due on or about April 23, 2026. Three dispositive motions — Accenture (Dkt. 29) [Ex. B], TaskUs (Dkt. 48) [Ex. C], and Meta (Dkt. 85) [Ex. D] — are pending without adversarial briefing and could be decided as unopposed at any time. If the transfer is granted, this Circuit permanently loses jurisdiction over Case 376 and over the procedural defects documented in the petition. There is no appeal from a § 1404(a) transfer order. If the dispositive motions are decided before the petition is considered, the resulting dismissals produce an appellate record that does not contain the oppositions the court refused to consider.

4

8.    Absent a stay, the following prejudice would result. If the transfer motion is granted, Case 376 moves to the Northern District of California and this Circuit permanently loses jurisdiction over the procedural defects documented in the petition as they pertain to that case. If the three unopposed dispositive motions are decided before the petition is considered, the resulting dismissals produce an appellate record that does not contain the oppositions the court refused to consider.

9.    ·The relief requested is a stay of all proceedings in Case No. 6:26-cv-00376-AGM-DCI, including the pending motion to transfer venue, pending this Court's resolution of the mandamus petition.

## CERTIFICATION OF IMPRACTICABILITY UNDER FRAP 8(a)(2)(A)

10.    Federal Rule of Appellate Procedure 8(a)(1) provides that a party must ordinarily move first in the district court for a stay of proceedings. Rule 8(a)(2)(A) provides that a party may move in the court of appeals when "moving first in the district court would be impracticable."

11.    Moving first in the district court is impracticable here. Every prior request to the district court for structural or procedural relief has produced a same-day denial without reasoning or no response.

5

12.    The exhaustion record is as follows. (1) On April 2, 2026, Petitioner filed a motion for recusal under 28 U.S.C. § 455 (Case 376, Dkt. 61) [Ex. G]. Judge Moe denied it on the same day by endorsed order (Dkt. 65) [Ex. A, Dkt. 65]. No written reasoning was provided. (2) On April 2, 2026, Petitioner filed a petition for administrative reassignment under 28 U.S.C. § 137 (Case 376, Dkt. 60) [Ex. F], addressed to Chief Judge Marcia Morales Howard. Judge Moe—the subject of the petition—denied it on the same day by endorsed order (Dkt. 66) [Ex. A, Dkt. 66]. No written reasoning was provided. (3) Between April 2 and April 10, 2026, Petitioner transmitted direct email to Chief Judge Howard's chambers requesting exercise of § 137 authority. No response was received. See Ballentine Decl. ¶ 2. (4) On April 10, 2026, Petitioner filed a Rule 72(a) objection (Dkt. 89) [Ex. H] to Magistrate Judge Irick's endorsed order (Dkt. 80) [Ex. A, Dkt. 80]. The objection is pending before Judge Moe—the judge whose authority Magistrate Judge Irick exercises.

13.    Seeking a stay from the district court would require filing a motion before Judge Moe asking Judge Moe to stay proceedings while this Court reviews the documented record of Judge Moe's own procedural conduct—including the same-day denial of the recusal motion and the

6

denial of a petition addressed to the Chief Judge. Such a request would be futile. *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1336 (11th Cir. 2002) (futility satisfies the exhaustion requirement).

14.   The § 351 judicial misconduct complaint filed with this Circuit on April 2, 2026—naming Judge Moe and Magistrate Judge Irick—has been acknowledged and is processing. Ballentine Decl. ¶ 3. The existence of an open conduct file at this Circuit, naming the judge from whom a stay would be sought, further supports the impracticability of seeking a stay from that judge.

## FACTUAL AND PROCEDURAL BACKGROUND

15.   Three cases are presently assigned to Judge Moe and Magistrate Judge Irick. Case 376 was originally assigned to Judge Sneed. Petitioner filed a Local Rule 1.07 transfer motion citing the related Case 286 (Dkt. 5) [Ex. A, Dkt. 5]; the transfer was granted with Judge Moe's consent (Dkt. 8) [Ex. A, Dkt. 8]. Case 286 was directly assigned to Judge Moe. Case 213 was originally assigned to Judge Pratt in the Ocala Division after Accenture removed it from state court on March 25, 2026 (Dkt. 1).

16.   Petitioner filed a motion to transfer Case 213 to Orlando (Dkt. 9), then withdrew it (Dkt. 15) to preserve venue diversity and maintain an

7

independent judicial assignment. The court denied the withdrawn motion as moot (Dkt. 17). On April 1, 2026, Judge Pratt sua sponte transferred Case 213 to Judge Moe under Local Rule 1.07(a) (Dkt. 18)—two days after the March 30 strike orders in Case 376. After April 1, 2026, no case remains before an independent judicial officer.

17.   The transferee forum identified in Meta's pending motion is the Northern District of California—the court where these claims were previously litigated for five months (Case No. 3:25-cv-07671-CRB, before Judge Charles R. Breyer). In that proceeding, zero plaintiff motions were granted; five were denied; three defendant requests were granted and zero denied. The Rule 26(f) conference was never held. Discovery never opened. The case management conference was vacated and never reset. Petitioner voluntarily dismissed after five months. [Ex. J].

18.   In Case 376, Magistrate Judge Irick struck Petitioner's oppositions to two motions to dismiss on March 30, 2026 (Dkts. 56, 57) [Ex. A, Dkts. 56, 57], for "failure to comply with Local Rule 3.01(c)" without specifying the deficiency. The cure period was seven days. Petitioner refiled the oppositions on April 2, 2026 (Dkts. 63, 64).

19.     On April 9, 2026, Magistrate Judge Irick struck the refiled oppositions (Dkt. 79) [Ex. A, Dkt. 79] for exceeding the twenty-page limit—the first time the deficiency was identified with specificity—with zero days to cure. The twenty-page limit is set by Local Rule 3.01(c), and Local Rule 3.01(d) provides twenty-one days to respond to a motion to dismiss. The cure period compressed from twenty-one days to seven days to zero. The deficiency was not identified until the order that afforded zero days to cure it.

20.     Accenture's motion to dismiss (Case 376, Dkt. 29) [Ex. B] certifies CM/ECF service on a pro se plaintiff who is not registered for CM/ECF and has never consented to electronic service, in violation of Federal Rule of Civil Procedure 5(b)(2)(E). The district court has not addressed this service deficiency despite Petitioner raising it in the recusal motion (Dkt. 61) and the supporting declaration (Dkt. 62).

21.     Three dispositive motions are pending in Case 376: Accenture (Dkt. 29) [Ex. B], TaskUs (Dkt. 48) [Ex. C], and Meta (Dkt. 85) [Ex. D]. No operative opposition to any of them is before the court.

22.     On April 9, 2026, the following occurred on the same day. Magistrate Judge Irick struck the refiled oppositions with zero days to cure

9

(Dkt. 79) [Ex. A, Dkt. 79]. Magistrate Judge Irick struck ten notices of referral to congressional and executive-branch oversight bodies, directed the Clerk to delete them from the docket, and imposed a prospective filing restriction (Dkt. 80) [Ex. A, Dkt. 80]. Magistrate Judge Irick denied Accenture's motion for leave to file a reply as moot (Dkt. 81) [Ex. A, Dkt. 81]. Meta filed its motion to dismiss the First Amended Complaint (Dkt. 85) [Ex. D]. Meta filed its motion to transfer venue to the Northern District of California under 28 U.S.C. § 1404(a) (Dkt. 87) [Ex. E].

23.   On April 2, 2026, Petitioner filed a recusal motion presenting nineteen identified appellate issues (Dkt. 61) [Ex. G], a supporting declaration (Dkt. 62), a petition for administrative reassignment addressed to Chief Judge Howard (Dkt. 60) [Ex. F], and a § 351 judicial misconduct complaint with this Circuit. Judge Moe denied both the recusal motion and the § 137 petition on the same day by endorsed orders, without written reasoning [Ex. A, Dkts. 65, 66]. This Circuit acknowledged receipt of the § 351 complaint on April 2, 2026. Ballentine Decl. ¶ 3.

24.   On April 9, 2026, Petitioner filed a notice of intent to serve a subpoena on the National Center for Missing & Exploited Children (Case 376, Dkt. 82; Case 286, Dkt. 47) [Ex. I]. NCMEC is the only entity capable of

10

producing dispositive evidence on the central factual question—whether a CyberTipline report was filed under 18 U.S.C. § 2258A. This discovery would be transferred to the Northern District of California if the transfer motion is granted.

25.    On April 10, 2026, Petitioner filed a Rule 72(a) objection to Dkt. 80 (Case 376, Dkt. 89) [Ex. H] with a supporting declaration, (Dkt. 90). The objection is pending before Judge Moe.

## THE STAY FACTORS

26.    The four factors governing a stay pending appellate proceedings are: (1) likelihood of success on the merits; (2) irreparable harm absent a stay; (3) balance of equities; and (4) the public interest. *Nken v. Holder*, 556 U.S. 418, 426 (2009); *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Each factor is addressed below.

### A. Likelihood of Success on the Merits of the Mandamus Petition

27.    Mandamus relief requires three elements: (1) no other adequate means to attain the relief sought; (2) a clear and indisputable right to the relief; and (3) the writ is appropriate under the circumstances. *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380–81 (2004); *In re BellSouth Corp.*, 334 F.3d 941,

11

953 (11th Cir. 2003); *In re Wellcare Health Plans, Inc.*, 754 F.3d 1234, 1238 (11th Cir. 2014).

28. No other adequate means. Table 11 of the petition documents the exhaustion record. Every district-level mechanism for structural relief has been attempted and has produced a denial without reasoning or no response. Normal appellate review is inadequate because the case may be transferred before final judgment, divesting this Circuit of appellate jurisdiction permanently. There is no appeal from a § 1404(a) transfer order. *Martin*, 307 F.3d at 1336 (futility satisfies the exhaustion requirement).

29. Clear and indisputable right—ministerial relief. Federal Rule of Civil Procedure 83(a)(2) provides: "A local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply." Noncompliance with a requirement the litigant cannot identify is not willful. The cure period compressed from twenty-one days to seven days to zero, and the deficiency was not identified until the order that afforded zero days to cure it. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001); *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003).

12

30. Clear and indisputable right—service. Federal Rule of Civil Procedure 5(b)(2)(E) permits electronic service only on a registered CM/ECF user or a person who has consented in writing. If Accenture's motion to dismiss was never served, the response period never commenced.

31. Clear and indisputable right—reassignment. Under *United States v. Torkington*, 874 F.2d 1441, 1446–47 (11th Cir. 1989), reassignment is evaluated under three factors: (1) whether the original judge would have difficulty putting prior views aside; (2) whether reassignment is appropriate to preserve the appearance of justice; and (3) whether reassignment would entail waste and duplication out of proportion to gains realized. The petition documents the record supporting each factor across twelve tables covering two districts, three cases, and nine months.

32. The writ is appropriate under the circumstances. This Circuit is the only court with supervisory authority over the judicial officers whose conduct is documented in the record. A § 1404(a) transfer would extinguish that authority permanently.

33. Petitioner has demonstrated a likelihood of success on the merits of the mandamus petition.

## B. Irreparable Harm Absent a Stay

13

34.  If no stay issues and the transfer motion is granted, this Circuit permanently loses jurisdiction over Case 376—the case that contains the operative docket record underlying the petition. The procedural defects documented in the petition are carried into the transferee forum without correction. There is no appeal from a § 1404(a) transfer order. There is no mechanism by which this Circuit reacquires jurisdiction.

35.  Three dispositive motions are pending without adversarial briefing. If the motions are decided as unopposed while the mandamus petition is pending, the resulting dismissal produces an appellate record that does not contain the oppositions the court refused to consider.

36.  Documents ordered deleted from the docket by Dkt. 80 [Ex. A, Dkt. 80]—including ten notices of referral to congressional and executive-branch oversight bodies—cannot be reviewed by any court that cannot see them. The deletion of docket entries is not reversible through normal appellate channels.

37.  The NCMEC subpoena—noticed on April 9, 2026 [Ex. I]—is the only mechanism for obtaining dispositive evidence on the central factual question. Transfer to the Northern District of California places this

14

discovery in a forum whose prior record on Petitioner's discovery requests is documented in the petition at Tables 2–4.

38.   Each of these harms is irreparable. None can be corrected after the fact through normal appellate review.

## C. Balance of Equities

39.   The stay imposes a limited burden on defendants. The cases are in early pretrial posture. No scheduling order has been entered. No Rule 26(f) conference has been held. Discovery has not opened in Case 376. No dispositive motion has been decided. A temporary stay preserves the status quo.

40.   The burden on defendants from a temporary stay is limited to a delay in the resolution of motions that cannot be properly resolved until the procedural baseline is clarified. The burden on Petitioner absent a stay is permanent: loss of circuit jurisdiction, loss of the right to oppose dispositive motions, and loss of access to deleted docket entries.

41.   The balance of equities favors a stay.

## D. Public Interest

42.   The public interest favors the orderly administration of justice. A temporary stay allows this Circuit to resolve threshold procedural

15

questions before the district court takes further action on a defective procedural foundation.

43. The public interest is served by ensuring that pro se litigants receive the procedural protections required by Federal Rule of Civil Procedure 83(a)(2) and the liberal-construction mandate of *Haines*, 404 U.S. at 520.

44. The public interest favors a stay.

## SCOPE OF THE REQUESTED STAY

45. The requested stay encompasses all proceedings in Case No. 6:26-cv-00376-AGM-DCI.

46. The stay specifically encompasses: (a) the pending motion to transfer venue under 28 U.S.C. § 1404(a) (Dkt. 87); (b) the pending motions to dismiss (Dkts. 29, 48, 85); (c) any briefing deadlines associated with these motions; (d) and any scheduling or case management orders. The petition separately seeks reassignment of all three cases; this stay preserves the jurisdictional predicate for that relief.

16

47. The stay is temporary and bounded by this Court's resolution of the mandamus petition. The stay does not resolve any claim on the merits.

## RELIEF REQUESTED

48. Petitioner respectfully requests that this Court stay all proceedings in Case No. 6:26-cv-00376-AGM-DCI, including the pending motion to transfer venue under 28 U.S.C. § 1404(a) (Dkt. 87), pending this Court's resolution of the simultaneously filed Petition for Writ of Mandamus.

# EXHIBIT LIST

Exhibit A — Case No. 6:26-cv-00376-AGM-DCI Full Docket (M.D. Fla.)

Exhibit B — Case 376, Dkt. 29: Accenture LLP's Motion to Dismiss (27 pp.; certificate of service at p. 24)

Exhibit C — Case 376, Dkt. 48: TaskUs, Inc.'s Motion to Dismiss

Exhibit D — Case 376, Dkt. 85: Meta Platforms, Inc.'s Motion to Dismiss First Amended Complaint (filed April 9, 2026)

Exhibit E — Case 376, Dkt. 87: Meta Platforms, Inc.'s Motion to Transfer Venue under 28 U.S.C. § 1404(a) to the Northern District of California (filed April 9, 2026)

Exhibit F — Case 376, Dkt. 60: Time-Sensitive Petition for Administrative Reassignment under 28 U.S.C. § 137, addressed to Chief Judge Marcia Morales Howard (filed April 2, 2026)

Exhibit G — Case 376, Dkt. 61: Urgent Motion for Recusal under 28 U.S.C. § 455, presenting 19 identified appellate issues (filed April 2, 2026)

Exhibit H — Case 376, Dkt. 89: Rule 72(a) Objection to Magistrate Judge Irick's Endorsed Order (Dkt. 80) (filed April 10, 2026)

18

Exhibit I — Case 376, Dkt. 82 (and Case 286, Dkt. 47): Notice of Intent to Serve Subpoena on the National Center for Missing & Exploited Children (NCMEC) under 18 U.S.C. § 2258A (filed April 9, 2026)

Exhibit J — Case No. 3:25-cv-07671-CRB (N.D. Cal.) Prior Proceedings Record — procedural history before Judge Charles R. Breyer (zero plaintiff motions granted; five denied; three defense requests granted; Rule 26(f) conference never held; case management conference vacated; voluntarily dismissed after five months)

## CERTIFICATE OF NOTICE TO PARTIES

Undersigned certifies that Petitioner notified counsel for all parties of this motion on April 10, 2026, by email. Petitioner transmitted notice to Diana Marie Fassbender (counsel for Meta Platforms, Inc.), Marianna Chapleau, Kirkland & Ellis LLP (counsel for Accenture LLP), Ogletree, Deakins, Nash, Smoak & Stewart, P.C. (counsel for TaskUs, Inc.), and counsel for Genpact Limited. The notice identified the relief sought and requested each party's position. No response was received as of the time of filing.

Dated: April 13, 2026                         Respectfully submitted,

Marvelle J. Ballentine
Petitioner, *pro se*
7862 W. Irlo Bronson Memorial Hwy #82
(407) 794-6503
jayballentine@protonmail.com

20

## CERTIFICATE OF SERVICE

I certify that on April 13, 2026, I served a copy of this Time Sensitive

Motion for Stay on the following by UPS.


Diana Marie Fassbender

Orrick, Herrington & Sutcliffe LLP

215 NW 24th Street, Suite 200

Miami, FL 33127

Counsel for Defendants Meta Platforms, Inc. and Genpact Limited


Marianna Chapleau

Kirkland & Ellis LLP

98 S.E. 7th Street, Suite 700

Miami, FL 33131

Counsel for Defendant Accenture LLP


Stephanie Generotti

Ogletree Deakins Nash Smoak & Stewart, P.C.

100 N Tampa St, Suite 3600

Tampa, FL 33602-5867

Counsel for Defendant TaskUs, Inc.




Marvelle J. Ballentine


21

No. _____



IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT



In re MARVELLE J. BALLENTINE,

Petitioner.

## ON PETITION FOR A WRIT OF MANDAMUS TO THE

## UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF FLORIDA

Relates to:

Case No. 6:26-cv-00376-AGM-DCI
Case No. 6:26-cv-00286-AGM-DCI
Case No. 5:26-cv-00213-AGM-PRL

## DECLARATION OF MARVELLE J. BALLENTINE IN SUPPORT OF

## TIME SENSITIVE MOTION FOR STAY OF DISTRICT COURT

## PROCEEDINGS PENDING RESOLUTION OF PETITION FOR

## WRIT OF MANDAMUS

I, Marvelle J. Ballentine, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

## I.   INTRODUCTION

1.  I am the petitioner in the above-captioned matter and the plaintiff in the three underlying district court actions identified in the caption. I am proceeding pro se. I am not a member of the bar of any state or federal court and am not represented by counsel in any of the three underlying actions or in this proceeding. I am over the age of eighteen, am competent to testify, and have personal knowledge of the matters set forth in this declaration except where stated to be on information and belief. I submit this declaration in support of the accompanying Time Sensitive Motion for Stay of District Court Proceedings Pending Resolution of Petition for Writ of Mandamus.

## II.   EMAIL TO CHIEF JUDGE HOWARD'S CHAMBERS

2.    On April 2, 2026, I transmitted an email from my email address       of       record,       jayballentine@protonmail.com,       to chambers_flmd_howard@flmd.uscourts.gov. The email was directed to

the Honorable Marcia Morales Howard, Chief United States District Judge for the Middle District of Florida, in her administrative capacity under 28 U.S.C. § 137. The email transmitted my Time-Sensitive Petition for Administrative Reassignment to Chief Judge Howard for review under § 137 and, in the alternative, requested written confirmation that the petition had reached the office to which it had been addressed. I have not received any response to that email from Chief Judge Howard's chambers, from any other chambers in the Middle District of Florida, or from any other source. I have not received any non-delivery message, bounce-back, or automatic acknowledgment indicating that the email did not reach its addressed destination. The absence of response is attested through the date of execution of this declaration.

## III.   § 351 JUDICIAL CONDUCT COMPLAINT

3.   On April 2, 2026, I filed a complaint of judicial misconduct under 28 U.S.C. § 351(a) with the Office of the Clerk of the United States Court of Appeals for the Eleventh Circuit. The Eleventh Circuit has acknowledged the existence of the complaint.

## IV.   NO PRIOR APPLICATION FOR STAY

4.    I have made no application for a stay of proceedings in Case No. 6:26-cv-00376-AGM-DCI in the United States District Court for the Middle District of Florida or in any other court. The basis for proceeding directly to this Court under Federal Rule of Appellate Procedure 8(a)(2)(A) is the impracticability of seeking a stay from the district court, which is set forth in the accompanying motion.

## V.    NOTICE TO PARTIES UNDER FRAP 27(a)(2)

5.    On April 10, 2026, I transmitted notice of intent to file the accompanying Time Sensitive Motion for Stay and Petition for Writ of Mandamus to counsel of record for the defendants in Case No. 6:26-cv-00376-AGM-DCI by email from my email address of record, jayballentine@protonmail.com. The notice was transmitted to Diana Marie Fassbender of Orrick, Herrington & Sutcliffe LLP, counsel for Meta Platforms, Inc. and Genpact Limited; to Marianna Chapleau of Kirkland & Ellis LLP, counsel for Accenture LLP; and to Stephanie Generotti of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., counsel for TaskUs, Inc.

6.    The text of the notice transmitted on April 10, 2026 is reproduced verbatim below:

April 10, 2026

Transmitted VIA Email RE: Notice of Emergency Motion for Stay — Eleventh Circuit — Case No. 6:26-cv-00376-AGM-DCI

Counsel,

This email serves as notice under Eleventh Circuit Local Rule 27(e) that Petitioner Marvelle J. Ballentine intends to file an Emergency Motion for Stay of District Court Proceedings and a Petition for Writ of Mandamus with the United States Court of Appeals for the Eleventh Circuit.

The motion seeks a stay of all proceedings in Case No. 6:26-cv-00376-AGM-DCI, including the pending motion to transfer venue (Case 376, Dkt. 87), pending the Court's resolution of the petition.

Please advise whether your client consents to, opposes, or takes no position on the requested stay.

7.    I have received no response from Ms. Fassbender, Ms. Chapleau, or Ms. Generotti to the April 10, 2026 notice. I have not received any non-delivery message, bounce-back, or automatic acknowledgment indicating that the notice did not reach any of the addressees. The absence of response is attested through the date of execution of this declaration.

## VI.    TIMELINESS OF THE STAY MOTION

8.   On April 9, 2026, three filings were entered on the docket of Case No. 6:26-cv-00376-AGM-DCI that, taken together, established the need for the relief requested in the accompanying motion: Meta Platforms, Inc.'s Motion to Dismiss the First Amended Complaint (Dkt. 85); Meta Platforms, Inc.'s Motion to Change Venue / Transfer Case under 28 U.S.C. § 1404(a) (Dkt. 87); and Magistrate Judge Daniel C. Irick's endorsed orders at Dkts. 79, 80, and 81. I became aware of each of these filings on April 9, 2026 by accessing the Public Access to Court Electronic Records (PACER) system.

9.   Between April 9, 2026 and April 13, 2026, I prepared the accompanying Petition for Writ of Mandamus, the accompanying Time Sensitive Motion for Stay, the supporting declarations, and the accompanying exhibits. On April 10, 2026, I filed an Objection under Federal Rule of Civil Procedure 72(a) to the order at Dkt. 80 (Case 376, Dkt. 89) and a supporting declaration (Case 376, Dkt. 90), and transmitted the notice to defense counsel described in Section V above. I filed the Petition for Writ of Mandamus and the Time Sensitive Motion for Stay with this Court on April 14, 2026.

## VII.  NCMEC SUBPOENA

10.    On April 9, 2026, I filed a Notice of Intent to Serve Subpoena on the National Center for Missing & Exploited Children in Case No. 6:26-cv-00376-AGM-DCI (Dkt. 82) and in Case No. 6:26-cv-00286-AGM-DCI (Dkt. 47), pursuant to Local Rule 3.04. Each notice identifies the National Center for Missing & Exploited Children as the recipient of the subpoena. The compliance location identified in the subpoena is within the geographic territory of the United States District Court for the Eastern District of Virginia.

11.    The subpoena seeks records bearing on whether a CyberTipline report under 18 U.S.C. § 2258A was filed by Meta Platforms, Inc. in connection with the July 4, 2022 designation of my Facebook account under the Child Sexual Exploitation policy, which is the central factual predicate of the operative pleadings in each of the three underlying actions.

12.    I am not aware of any source other than the National Center for Missing & Exploited Children from which the records described in the preceding paragraph can be obtained. To my knowledge, no party

has produced, in any of the three underlying actions or in the prior proceeding in the Northern District of California (Case No. 3:25-cv-07671-CRB), any document responsive to that question.

## VIII. NORTHERN DISTRICT OF CALIFORNIA PRIOR PROCEEDING

13. I was previously the plaintiff in Marvelle J. Ballentine v. Meta Platforms, Inc., et al., Case No. 3:25-cv-07671-CRB, in the United States District Court for the Northern District of California, before the Honorable Charles R. Breyer. I voluntarily dismissed that action prior to commencing the three actions presently pending in the Middle District of Florida. The transferee forum identified in Meta Platforms, Inc.'s pending motion to transfer (Case 376, Dkt. 87) is the United States District Court for the Northern District of California.

## IX.   AUTHENTICATION OF EXHIBITS

14. Exhibit A to the accompanying Time Sensitive Motion for Stay is a true and correct copy of the docket sheet for Case No. 6:26-cv-00376-AGM-DCI, retrieved from the Public Access to Court Electronic Records (PACER) system on or about April 13, 2026.

15.   Exhibits B, C, D, and E to the accompanying motion are true and correct copies of, respectively: Defendant Accenture LLP's Motion to Dismiss for Failure to State a Claim (Case 376, Dkt. 29, filed March 18, 2026); Defendant TaskUs, Inc.'s Motion to Dismiss (Case 376, Dkt. 48); Defendant Meta Platforms, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint (Case 376, Dkt. 85, filed April 9, 2026); and Defendant Meta Platforms, Inc.'s Motion to Change Venue / Transfer Case under 28 U.S.C. § 1404(a) (Case 376, Dkt. 87, filed April 9, 2026). Each of Exhibits B through E was retrieved from the Public Access to Court Electronic Records (PACER) system on or about April 13, 2026.

16.   Exhibits F, G, H, and I to the accompanying motion are true and correct copies of, respectively: my Time-Sensitive Petition for Administrative Reassignment under 28 U.S.C. § 137 (Case 376, Dkt. 60, filed April 2, 2026); my Urgent Motion for Recusal under 28 U.S.C. § 455 (Case 376, Dkt. 61, filed April 2, 2026); my Objection under Federal Rule of Civil Procedure 72(a) to the order at Dkt. 80 (Case 376, Dkt. 89, filed April 10, 2026); and my Notice of Intent to Serve Subpoena on the National Center for Missing & Exploited Children (Case 376, Dkt. 82,

filed April 9, 2026). I am the filer of each of the documents identified in this paragraph. Each of Exhibits F through I was retrieved from the Public Access to Court Electronic Records (PACER) system on or about April 13, 2026.

17.    Exhibit J to the accompanying motion is a true and correct copy of records from the docket of Marvelle J. Ballentine v. Meta Platforms, Inc., et al., Case No. 3:25-cv-07671-CRB, in the United States District Court for the Northern District of California, retrieved from the Public Access to Court Electronic Records (PACER) system on or about April 13, 2026.

## X.    SERVICE OF THE PETITION, MOTION, AND SUPPORTING DOCUMENTS

18.    On April 14, 2026, I served true and correct copies of the Petition for Writ of Mandamus, the Time Sensitive Motion for Stay, this Declaration, and the exhibits to the motion on the Honorable Anne-Leigh Gaylord Moe, the Honorable Daniel C. Irick, Diana Marie Fassbender (counsel for Meta Platforms, Inc. and Genpact Limited), Marianna Chapleau (counsel for Accenture LLP), and Stephanie Generotti (counsel

for TaskUs, Inc.) by United Parcel Service. Service addresses for each recipient are set forth in the Certificate of Service accompanying the motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: April 14, 2026

Marvelle J. Ballentine
Petitioner, pro se
7862 W. Irlo Bronson Memorial Hwy, #82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com

# EXHIBIT A

Case No. 6:26-cv-00376-AGM-DCI
Full Docket (M.D. Fla.)

.

# U.S. District Court
## Middle District of Florida (Orlando)
## CIVIL DOCKET FOR CASE #: 6:26-cv-00376-AGM-DCI

Ballentine v. Meta Platforms, Inc. et al
Assigned to: Judge Anne-Leigh Gaylord Moe
Referred to: Magistrate Judge Daniel C. Irick
Demand: $9,999,000
Cause: 42:1983 Civil Rights Act

Date Filed: 02/17/2026
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

## Plaintiff

**Marvelle J. Ballentine**
*also known as*
Jay

represented by **Marvelle J. Ballentine**
7862 W. Irlo Bronson Memorial Hwy.
82
Kissimmee, FL 34747
407-794-6503
PRO SE

V.

## Defendant

**Meta Platforms, Inc.**

represented by **Diana Marie Fassbender**
Orrick, Herrington & Sutcliffe LLP
215 NW 24th Street
Suite 200
Miami, FL 33127
202-339-8533
Fax: 202-339-8500
Email: dszego@orrick.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

## Defendant

**Accenture LLP**

represented by **Marianna Chapleau**
Kirkland & Ellis LLP
98 S.E. 7th Street
Suite 700
Miami, FL 33131
203-675-7650
Email: mchapleau@kirkland.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Devin S. Anderson**
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
202-389-5198

Email: devin.anderson@kirkland.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Taskus, Inc.**                                              represented by **Stephanie Generotti**
                                                                      Ogletree Deakins Nash Smoak & Stewart,
                                                                      P.C. - Tampa
                                                                      100 N Tampa St Ste 3600
                                                                      Tampa, FL 33602-5867
                                                                      813-221-7442
                                                                      Fax: 813-289-6530
                                                                      Email: stephanie.generotti@ogletree.com
                                                                      *LEAD ATTORNEY*
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Elizabeth Turner Jozsi**
                                                                      Ogletree, Deakins, Nash, Smoak & Stewart,
                                                                      P.C.
                                                                      100 North Tampa Street
                                                                      Suite 3600
                                                                      Tampa, FL 33602
                                                                      813-221-7232
                                                                      Fax: 813-289-6530
                                                                      Email: elizabeth.jozsi@ogletree.com
                                                                      *ATTORNEY TO BE NOTICED*

**Defendant**

**Genpact USA, Inc.**
*TERMINATED: 03/04/2026*

**Defendant**

**Genpact Limited**                                          represented by **Diana Marie Fassbender**
                                                                      (See above for address)
                                                                      *LEAD ATTORNEY*
                                                                      *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/17/2026 | 1 | COMPLAINT against All Defendants with Jury Demand (Filing fee $405, receipt number 117791) filed by Marvelle J. Ballentine. (Attachments: # 1 Civil Cover Sheet)(LJC) (Entered: 02/17/2026) |
| 02/17/2026 | 2 | SUMMONS issued as to All Defendants (in person). (LJC) (Entered: 02/17/2026) |
| 02/17/2026 | 3 | NOTICE of a related action per Local Rule 1.07(c) by Marvelle J. Ballentine. Related case(s): Yes (LJC) (Entered: 02/17/2026) |
| 02/17/2026 | 4 | NOTICE to the Courts to take judicial notice regarding NDCA Proceedings by Marvelle J. Ballentine. (Attachments: # 1 Exhibit A)(LJC) (Entered: 02/17/2026) |
| 02/17/2026 | 5 | Motion to Transfer by Marvelle J. Ballentine. (LJC) Modified on 2/17/2026 (AJL). (Entered: 02/17/2026) |

| 02/18/2026 | 6 | **INITIAL ORDER re: Case Management and Deadlines. Signed by Judge Julie S. Sneed on 2/18/2026. (GNB) (Entered: 02/18/2026)** |
|---|---|---|
| 02/18/2026 | 7 | Time-Sensitive MOTION for Miscellaneous Relief, specifically For Leave to Serve Limited Early Discovery by Marvelle J. Ballentine. (Attachments: # 1 Exhibit A) Chambers notified. (LJC) Modified on 2/19/2026 as to docket text (LJC). (Entered: 02/18/2026) |
| 02/18/2026 | 8 | **ORDER. Plaintiff moves to transfer this case to Judge Anne-Leigh Gaylord Moe. (Dkt. 5.) The motion is GRANTED. Pursuant to Local Rule 1.07(a)(2)(B), this case is TRANSFERRED to United States District Judge Anne-Leigh Gaylord Moe with her consent. See United States v. Stone, 411 F.2d 597, 599 (5th Cir. 1969) ("District [j]udges have the inherent power to transfer cases from one to another for the expeditious administration of justice."). Signed by Judge Julie S. Sneed on 2/18/2026. (MSB) (Entered: 02/18/2026)** |
| 02/18/2026 | 9 | RETURN of service executed on 02/17/2026 by Marvelle J. Ballentine as to Accenture LLP. (LJC) (Entered: 02/19/2026) |
| 02/18/2026 | 10 | RETURN of service executed on 02/17/2026 by Marvelle J. Ballentine as to Taskus, Inc. (LJC) (Entered: 02/19/2026) |
| 02/18/2026 | 11 | RETURN of service executed on 02/17/2026 by Marvelle J. Ballentine as to Meta Platforms, Inc. (LJC) (Entered: 02/19/2026) |
| 02/18/2026 | 12 | RETURN of service executed on 02/17/2026 by Marvelle J. Ballentine as to Genpact USA, Inc. (LJC) (Entered: 02/19/2026) |
| 02/19/2026 | 13 | Case Reassigned to Judge Anne-Leigh Gaylord Moe. New case number: 6:26-cv-376-AGM-RMN. Judge Julie S. Sneed no longer assigned to the case. (RPB) (Entered: 02/19/2026) |
| 02/19/2026 | 14 | NOTICE of Erratum Regarding Exhibit A re 7 MOTION for Miscellaneous Relief, specifically to Serve Limited Early Discovery by Marvelle J. Ballentine (Attachments: # 1 Exhibit A)(LJC) Modified on 2/20/2026 as to docket text (ARL). (Entered: 02/19/2026) |
| 02/19/2026 | 15 | NOTICE of Supplemental Local Rule 3.01(g) Certification by Marvelle J. Ballentine re 7 MOTION for Miscellaneous Relief, specifically to Serve Limited Early Discovery (LJC) (Entered: 02/19/2026) |
| 02/23/2026 | 16 | DISCLOSURE STATEMENT under Rule 7.1, Federal Rules of Civil Procedure, and Local Rule 3.03 by Marvelle J. Ballentine. (LJC) (Entered: 02/23/2026) |
| 02/23/2026 | 17 | CERTIFICATE of service by Marvelle J. Ballentine re 7 MOTION for Miscellaneous Relief, specifically to Serve Limited Early Discovery. (LJC) (Entered: 02/23/2026) |
| 02/25/2026 | 18 | **ORDER denying 7 Plaintiff's Motion for Leave to Serve Limited Early Discovery. Signed by Magistrate Judge Robert M. Norway on 2/25/2026. (CFG) (Entered: 02/25/2026)** |
| 03/04/2026 | 19 | AMENDED COMPLAINT against Accenture LLP, Genpact Limited, Meta Platforms, Inc., Taskus, Inc. with Jury Demand. filed by Marvelle J. Ballentine. Related document: 1 Complaint filed by Marvelle J. Ballentine.(LJC) (Entered: 03/04/2026) |
| 03/04/2026 | 20 | CERTIFICATE of service by Marvelle J. Ballentine re 19 Amended Complaint. (LJC) (Entered: 03/04/2026) |
| 03/04/2026 | 21 | CERTIFICATE of service by Marvelle J. Ballentine re 19 Amended Complaint. (LJC) (Entered: 03/04/2026) |

4/10/26, 10:09 PM

Case 6:26-cv-00376-AGM-DCI    Document 91-1    Filed 04/15/26    Page 110 of 350
Electronic Case Filing | U.S. District Court - Middle District of Florida
PageID 1323

| 03/09/2026 | 22 | NOTICE of a related action per Local Rule 1.07(c) by Marvelle J. Ballentine. Related case(s): Yes (LJC) (Entered: 03/09/2026) |
|---|---|---|
| 03/11/2026 | 23 | **NOTICE TO COUNSEL AND PARTIES: The Middle District of Florida's revised Local Rules became effective November 1, 2025, and can be found on the Court's public website https://www.flmd.uscourts.gov/local-rules. For a just and efficient resolution of this case, the parties are DIRECTED to read and comply with the Middle District of Florida's Local Rules. See Local Rule 1.01(a). Failure to comply with ANY Local Rules or Court Orders may result in the imposition of sanctions including, but not limited to, the dismissal of this action or entry of default without further notice. Signed by Judge Anne-Leigh Gaylord Moe on 3/11/2026. (RMF)** (Entered: 03/11/2026) |
| 03/11/2026 | 24 | NOTICE of Local Rule 3.02(a)(2), which requires the parties in every civil proceeding, except those described in subsection (d), to file a case management report (CMR) using the uniform form at www.flmd.uscourts.gov. The CMR must be filed (1) within forty days after any defendant appears in an action originating in this court, (2) within forty days after the docketing of an action removed or transferred to this court, or (3) within seventy days after service on the United States attorney in an action against the United States, its agencies or employees. Judges may have a special CMR form for certain types of cases. These forms can be found at www.flmd.uscourts.gov under the Forms tab for each judge. (Signed by Deputy Clerk). (RMF) (Entered: 03/11/2026) |
| 03/12/2026 | 25 | **STANDING ORDER REQUIRING DISCLOSURE OF THIRD-PARTY LITIGATION FUNDING. Signed by Judge Anne-Leigh Gaylord Moe on 3/12/2026. (RMF)** (Entered: 03/12/2026) |
| 03/16/2026 | 26 | NOTICE of No Third Party-Litigation Funding by Marvelle J. Ballentine re 25 Standing Order (LJC) (Entered: 03/16/2026) |
| 03/18/2026 | 27 | NOTICE of Appearance by Marianna Chapleau on behalf of Accenture LLP (Chapleau, Marianna) (Entered: 03/18/2026) |
| 03/18/2026 | 28 | DISCLOSURE STATEMENT under Rule 7.1, Federal Rules of Civil Procedure, and Local Rule 3.03 by Accenture LLP identifying Corporate Parent Accenture plc for Accenture LLP. (Chapleau, Marianna) Modified text on 3/19/2026 (AW). (Entered: 03/18/2026) |
| 03/18/2026 | 29 | MOTION to Dismiss for Failure to State a Claim by Accenture LLP. (Chapleau, Marianna) (Entered: 03/18/2026) |
| 03/19/2026 | 30 | Unopposed MOTION for Devin S. Anderson to appear pro hac vice, Special Admission fee paid, Receipt No. AFLMDC-24640271 for $150 by Accenture LLP. (Chapleau, Marianna) Motions referred to Magistrate Judge Robert M. Norway. (Entered: 03/19/2026) |
| 03/19/2026 | 31 | Time Sensitive MOTION for Extension of Time to File Answer re 19 Amended Complaint by Genpact Limited. (Fassbender, Diana) Motions referred to Magistrate Judge Robert M. Norway. (Entered: 03/19/2026) |
| 03/20/2026 | 32 | **ENDORSED ORDER granting 30 Motion to Appear Pro Hac Vice provided counsel shall register for and use the Court's electronic filing system. Counsel can register for a CM/ECF login password through the website at www.flmd.uscourts.gov under "CM/ECF." Signed by Magistrate Judge Robert M. Norway on 3/20/2026. (CFG)** (Entered: 03/20/2026) |
| 03/20/2026 | 33 | **ENDORSED ORDER granting 31 Motion for Extension of Time to Answer. The Court finds good cause to grant the Motion. Defendant Genpact Limited shall answer or otherwise respond to the Amended Complaint on or before April 22, 2026. Additionally, all parties must engage in Local Rule 3.01(g)'s conferral requirement.** |

**The Rule requires a good faith effort to resolve the motion, which requires parties to respond to each other within a reasonable amount of time. Failure to comply with these requirements may result in sanctions. Signed by Magistrate Judge Robert M. Norway on 3/20/2026. (CFG)** (Entered: 03/20/2026)

| | | |
|---|---|---|
| 03/20/2026 | 34 | TIME SENSITIVE MOTION for Extension of Time to File Answer re 19 Amended Complaint by Taskus, Inc.. (Generotti, Stephanie) Motions referred to Magistrate Judge Robert M. Norway. Modified on 3/20/2026 to edit docket text (JDR). (Entered: 03/20/2026) |
| 03/20/2026 | 35 | NOTICE of Lead Counsel Designation by Stephanie Generotti on behalf of Taskus, Inc.. Lead Counsel: Stephanie C. Generotti. (Generotti, Stephanie) (Entered: 03/20/2026) |
| 03/20/2026 | 36 | NOTICE of a related action per Local Rule 1.07(c) by Taskus, Inc.. Related case(s): Yes (Generotti, Stephanie) (Entered: 03/20/2026) |
| 03/20/2026 | 37 | **STRICKEN per Endorsed Order 47.** DISCLOSURE STATEMENT under Rule 7.1, Federal Rules of Civil Procedure, and Local Rule 3.03 by Taskus, Inc. identifying Other Affiliate Blackstone Inc. for Taskus, Inc. (Generotti, Stephanie) Modified text on 3/24/2026 (BD). (Entered: 03/20/2026) |
| 03/20/2026 | 38 | NOTICE of Lead Counsel Designation by Genpact Limited. (Fassbender, Diana) Modified on 3/23/2026 to edit text. (JVC) (Entered: 03/20/2026) |
| 03/20/2026 | 40 | STRICKEN AND REMOVED PER 56 ORDER. RESPONSE in Opposition re 29 MOTION to Dismiss for Failure to State a Claim filed by Marvelle J. Ballentine. (MLB) Modified docket text on 3/30/2026 (JOS). (Entered: 03/23/2026) |
| 03/20/2026 | 41 | CERTIFICATE of service re 40 Response in Opposition to Motion by Marvelle J. Ballentine. (MLB) (Entered: 03/23/2026) |
| 03/20/2026 | 42 | NOTICE of Designated Communication Protocol by Marvelle J. Ballentine (Attachments: # 1 Declaration of Marvelle J. Ballentine)(MLB) (Entered: 03/23/2026) |
| 03/23/2026 | 39 | Time Sensitive MOTION for Miscellaneous Relief, specifically for Scheduling Directive Regarding Rule 26(f) Conference and Case Management Report by Marvelle J. Ballentine. (MLB) (Chambers Notified) (Entered: 03/23/2026) |
| 03/23/2026 | 43 | CERTIFICATE of service re 19 Amended Complaint by Marvelle J. Ballentine. (MLB) (Entered: 03/23/2026) |
| 03/23/2026 | 44 | NOTICE of Appearance by Elizabeth Turner Jozsi on behalf of Taskus, Inc. (Jozsi, Elizabeth) (Entered: 03/23/2026) |
| 03/23/2026 | 45 | **ORDER of recusal. The Clerk is DIRECTED to reassign this case to another United States Magistrate Judge. Signed by Magistrate Judge Robert M. Norway on 3/23/2026. (CFG)** (Entered: 03/23/2026) |
| 03/23/2026 | 46 | Case Reassigned to Magistrate Judge Daniel C. Irick. New case number: 6:26-cv-376-AGM-DCI. Magistrate Judge Robert M. Norway no longer assigned to the case. Motion(s) REFERRED: 34 MOTION for Extension of Time to File Answer re 19 Amended Complaint . Motion(s) referred to Magistrate Judge Daniel C. Irick. (RN) (Entered: 03/23/2026) |
| 03/23/2026 | 47 | **ENDORSED ORDER striking 37 Disclosure Statement for failure to comply with Local Rule 3.03, which requires the use of the standard form from the Clerk or the Court's website. The Clerk is directed to strike 37 Disclosure Statement. Signed by Judge Anne-Leigh Gaylord Moe on 3/23/2026. (LIA)** (Entered: 03/23/2026) |

| 03/23/2026 | 48 | MOTION to Dismiss for Failure to State a Claim by Taskus, Inc.. (Generotti, Stephanie) (Entered: 03/23/2026) |
|---|---|---|
| 03/24/2026 | 49 | **ENDORSED ORDER finding as moot 34 Time-Sensitive Motion for Extension of Time, as a motion to dismiss was filed. Signed by Magistrate Judge Daniel C. Irick on 3/24/2026. (Irick, Daniel)** (Entered: 03/24/2026) |
| 03/24/2026 | 50 | **ENDORSED ORDER denying 39 Time-Sensitive Motion for Scheduling Directive Regarding Rule 26(f) Conference and Case Management Report. The parties shall comply with the Federal Rules of Civil Procedure, the Local Rules, and the orders of this Court. Signed by Magistrate Judge Daniel C. Irick on 3/24/2026. (Irick, Daniel)** (Entered: 03/24/2026) |
| 03/24/2026 | 51 | DISCLOSURE STATEMENT under Rule 7.1, Federal Rules of Civil Procedure, and Local Rule 3.03 by Taskus, Inc. identifying Other Affiliate Blackstone Inc. for Taskus, Inc. (Generotti, Stephanie) Modified text on 3/24/2026 (AW). (Entered: 03/24/2026) |
| 03/26/2026 | 52 | NOTICE of Supplement to Local rule 3.01(g) re; by Taskus, Inc. re 48 MOTION to Dismiss (Jozsi, Elizabeth) Modified text on 3/26/2026 (BD). (Entered: 03/26/2026) |
| 03/27/2026 | 53 | STRICKEN AND REMOVED PER 57 ORDER. RESPONSE in Opposition re 48 MOTION to Dismiss for Failure to State a Claim filed by Marvelle J. Ballentine. (LJC) Modified docket text on 3/31/2026 (JOS). (Entered: 03/27/2026) |
| 03/27/2026 | 54 | MOTION for Leave to File a Reply in Support of Its Motion to Dismiss by Accenture LLP. (Chapleau, Marianna) Motions referred to Magistrate Judge Daniel C. Irick. (Entered: 03/27/2026) |
| 03/27/2026 | 55 | NOTICE of a related action per Local Rule 1.07(c) by Accenture LLP. Related case(s): Yes (Chapleau, Marianna) (Entered: 03/27/2026) |
| 03/30/2026 | 56 | **ENDORSED ORDER denying as moot 54 Motion for Leave to File Reply, as the 40 Response to which the reply is directed is hereby STRICKEN for a failure to comply with Local Rule 3.01(c). The Clerk is directed to delete the 40 Response. On or before 4/6/2026, Plaintiff shall file a response that complies with the Local Rules. Failure to file a compliant response by that date may result in the 29 Motion to Dismiss being treated as unopposed. Further, Plaintiff is reminded that, "Failure to comply with ANY Local Rules or Court Orders may result in the imposition of sanctions including, but not limited to, the dismissal of this action or entry of default without further notice." Doc 23. Signed by Magistrate Judge Daniel C. Irick on 3/30/2026. (Irick, Daniel)** Modified on 3/30/2026 (TNP). (Entered: 03/30/2026) |
| 03/30/2026 | 57 | **ENDORSED ORDER to strike 53 Response in Opposition to Motion to Dismiss filed by Marvelle J. Ballentine for a failure to comply with Local Rule 3.01(c). The Clerk is directed to delete the 53 Response. On or before 4/6/2026, Plaintiff shall file a response that complies with the Local Rules. Failure to file a compliant response by that date may result in the 48 Motion to Dismiss being treated as unopposed. Further, Plaintiff is reminded that, "Failure to comply with ANY Local Rules or Court Orders may result in the imposition of sanctions including, but not limited to, the dismissal of this action or entry of default without further notice." Doc 23. Signed by Magistrate Judge Daniel C. Irick on 3/30/2026. (Irick, Daniel)** (Entered: 03/30/2026) |
| 03/30/2026 | 58 | CERTIFICATE of compliance re 25 Standing Order / *Certification of No Third-Party Litigation Funding* by Accenture LLP. (Chapleau, Marianna) (Entered: 03/30/2026) |
| 03/31/2026 | 59 | CERTIFICATE of compliance re 25 Standing Order / *Certification of No Third-Party Litigation Funding* by Taskus, Inc.. (Generotti, Stephanie) (Entered: 03/31/2026) |

| Date | No. | Description |
|---|---|---|
| 04/02/2026 | 60 | Time-Sensitive MOTION for Miscellaneous Relief, specifically for Administrative Reassignment by Marvelle J. Ballentine. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C) (chambers notified)(LJC) (Entered: 04/02/2026) |
| 04/02/2026 | 61 | Urgent MOTION for Recusal and to Identify Deficiency, Toll Cure Period, and Clarify Service re 57 Order to Strike, 56 Order on Motion for Leave to File Document, by Marvelle J. Ballentine. (Attachments: # 1 Exhibit A, # 2 Exhibit B) Chambers notified. (LJC) (Entered: 04/02/2026) |
| 04/02/2026 | 62 | DECLARATION of Marvelle J. Ballentine in Support of 61 MOTION for Recusal re 57 Order to Strike, 56 Order on Motion for Leave to File Document, by Marvelle J. Ballentine. (LJC) (Entered: 04/02/2026) |
| 04/02/2026 | 63 | STRICKEN AND IMAGES REMOVED PER COURT'S ENDORSED ORDER 79***RESPONSE in Opposition re 48 MOTION to Dismiss for Failure to State a Claim filed by Marvelle J. Ballentine. (LJC) Modified text on 4/10/2026 (ABM). (Entered: 04/02/2026) |
| 04/02/2026 | 64 | STRICKEN AND IMAGES REMOVED PER COURT'S ENDORSED ORDER 79***RESPONSE in Opposition re 29 MOTION to Dismiss for Failure to State a Claim filed by Marvelle J. Ballentine. (LJC) Modified text on 4/10/2026 (ABM). (Entered: 04/02/2026) |
| 04/02/2026 | 65 | **ENDORSED ORDER denying 61 Plaintiff's Urgent Motion for Recusal and to Identify Deficiency, Toll Cure Period, and Clarify Service. Signed by Judge Anne-Leigh Gaylord Moe on 4/2/2026. (TAH) (Entered: 04/02/2026)** |
| 04/02/2026 | 66 | **ENDORSED ORDER denying 60 Time-Sensitive Petition for Administrative Reassignment. Signed by Judge Anne-Leigh Gaylord Moe on 4/2/2026. (TAH) (Entered: 04/02/2026)** |
| 04/07/2026 | 67 | MOTION for Leave to File Reply in Support of Motion to Dismiss by Accenture LLP. (Chapleau, Marianna) Motions referred to Magistrate Judge Daniel C. Irick. (Entered: 04/07/2026) |
| 04/07/2026 | 69 | STRICKEN AND IMAGES REMOVED PER COURT'S ENDORSED ORDER 80***NOTICE of Referral to The United States Senate Committee on the Judiciary by Marvelle J. Ballentine. (Attachments: # 1 Exhibit A)(MLB) Modified text on 4/10/2026 (ABM). (Entered: 04/08/2026) |
| 04/07/2026 | 70 | STRICKEN AND IMAGES REMOVED PER COURT'S ENDORSED ORDER 80***NOTICE of Referral to the Department of Justice, Child Exploitation and Obscenity Section by Marvelle J. Ballentine. (Attachments: # 1 Exhibit A)(MLB) Modified text on 4/10/2026 (ABM). (Entered: 04/08/2026) |
| 04/07/2026 | 71 | STRICKEN AND IMAGES REMOVED PER COURT'S ENDORSED ORDER 80***NOTICE of Referral to the Congressional Black Caucus by Marvelle J. Ballentine. (Attachments: # 1 Exhibit A)(MLB) Modified text on 4/10/2026 (ABM). (Entered: 04/08/2026) |
| 04/07/2026 | 72 | STRICKEN AND IMAGES REMOVED PER COURT'S ENDORSED ORDER 80***NOTICE of Referral to the United States House Committee on the Judiciary by Marvelle J. Ballentine. (Attachments: # 1 Exhibit A)(MLB) Modified text on 4/10/2026 (ABM). (Entered: 04/08/2026) |
| 04/07/2026 | 73 | STRICKEN AND IMAGES REMOVED PER COURT'S ENDORSED ORDER 80***NOTICE of Referral to the Federal Trade Commission by Marvelle J. Ballentine. |

(Attachments: # 1 Exhibit A)(MLB) Modified text on 4/10/2026 (ABM). (Entered: 04/08/2026)

| | | |
|---|---|---|
| 04/07/2026 | 74 | STRICKEN AND IMAGES REMOVED PER COURT'S ENDORSED ORDER 80***NOTICE of Referral to the United States House Committee on Energy and Commerce by Marvelle J. Ballentine. (Attachments: # 1 Exhibit A)(MLB) Modified text on 4/10/2026 (ABM). (Entered: 04/08/2026) |
| 04/07/2026 | 75 | STRICKEN AND IMAGES REMOVED PER COURT'S ENDORSED ORDER 80***NOTICE of Referral to the United States Senate Committee on Commerce, SCience, and Transportation by Marvelle J. Ballentine. (Attachments: # 1 Exhibit A)(MLB) Modified text on 4/10/2026 (ABM). (Entered: 04/08/2026) |
| 04/07/2026 | 76 | STRICKEN AND IMAGES REMOVED PER COURT'S ENDORSED ORDER 80***NOTICE of Constituent Correspondence to the Honorable Rick Scott, United States Senator by Marvelle J. Ballentine. (Attachments: # 1 Exhibit A)(MLB) Modified text on 4/10/2026 (ABM). (Entered: 04/08/2026) |
| 04/07/2026 | 77 | STRICKEN AND IMAGES REMOVED PER COURT'S ENDORSED ORDER 80***NOTICE of Constituent Correspondence to the Honorable Ashley Moody, United States Senator by Marvelle J. Ballentine. (Attachments: # 1 Exhibit A)(MLB) Modified text on 4/10/2026 (ABM). (Entered: 04/08/2026) |
| 04/07/2026 | 78 | STRICKEN AND IMAGES REMOVED PER COURT'S ENDORSED ORDER 80***NOTICE of Constituent Correspondence to the Honorable Daniel Webster, United States Representative by Marvelle J. Ballentine. (Attachments: # 1 Exhibit A)(MLB) Modified text on 4/10/2026 (ABM). (Entered: 04/08/2026) |
| 04/08/2026 | 68 | **ORDER ON DISCOVERY MOTIONS. Signed by Magistrate Judge Daniel C. Irick on 1/2/2020. (TNP)** (Entered: 04/08/2026) |
| 04/09/2026 | 79 | **ENDORSED ORDER to strike 63 Plaintiff's Opposition to Defendant Taskus, Inc.'s Motion to Dismiss and 64 Plaintiff's Opposition to Defendant Accenture's Motion to Dismiss. The responses violate Local Rule 3.01(c) ("A party responding to a motion or brief may file a legal memorandum no longer than twenty pages."); see also Orders at Docs. 56 and 57. The Clerk is directed to delete the documents. Further, Plaintiff is again reminded that, "Failure to comply with ANY Local Rules or Court Orders may result in the imposition of sanctions including, but not limited to, the dismissal of this action or entry of default without further notice." Doc 23. Signed by Magistrate Judge Daniel C. Irick on 4/9/2026. (Irick, Daniel)** (Entered: 04/09/2026) |
| 04/09/2026 | 80 | **ENDORSED ORDER to strike 70 Notice filed by Marvelle J. Ballentine, 72 Notice filed by Marvelle J. Ballentine, 69 Notice filed by Marvelle J. Ballentine, 77 Notice filed by Marvelle J. Ballentine, 74 Notice filed by Marvelle J. Ballentine, 76 Notice filed by Marvelle J. Ballentine, 71 Notice filed by Marvelle J. Ballentine, 78 Notice filed by Marvelle J. Ballentine, 75 Notice filed by Marvelle J. Ballentine, 73 Notice filed by Marvelle J. Ballentine. Plaintiff's notices attach correspondence to non-parties and state that no relief is requested. Thus, there is no basis to file such documents on the docket of this case. Plaintiff shall refrain from filing such notices on the docket of this case. The Clerk is directed to delete the documents. Signed by Magistrate Judge Daniel C. Irick on 4/9/2026. (Irick, Daniel)** (Entered: 04/09/2026) |
| 04/09/2026 | 81 | **ENDORSED ORDER denying as moot 67 Motion for Leave to File Reply. Signed by Magistrate Judge Daniel C. Irick on 4/9/2026. (Irick, Daniel)** (Entered: 04/09/2026) |
| 04/09/2026 | 82 | NOTICE of Intent to Serve Subpoena on National Center for Missing & Exploited Children by Marvelle J. Ballentine (Attachments: # 1 Exhibit A)(LJC) (Entered: 04/09/2026) |

Case 6:26-cv-00376-AGM-DCI    Document 91-1    Filed 04/15/26    Page 115 of 350 PageID 1328

| 04/09/2026 | 83 | NOTICE of Lead Counsel Designation by Diana Marie Fassbender on behalf of Meta Platforms, Inc.. Lead Counsel: Diana Marie Fassbender. (Fassbender, Diana) (Entered: 04/09/2026) |
|---|---|---|
| 04/09/2026 | 84 | DISCLOSURE STATEMENT under Rule 7.1, Federal Rules of Civil Procedure, and Local Rule 3.03 by Meta Platforms, Inc.. (Fassbender, Diana) (Entered: 04/09/2026) |
| 04/09/2026 | 85 | MOTION to Dismiss Plaintiff's First Amended Complaint by Meta Platforms, Inc.. (Fassbender, Diana) (Entered: 04/09/2026) |
| 04/09/2026 | 86 | DECLARATION of Michael Duffey re 85 MOTION to Dismiss Plaintiff's First Amended Complaint by Meta Platforms, Inc.. (Attachments: # 1 Exhibit A)(Fassbender, Diana) (Entered: 04/09/2026) |
| 04/09/2026 | 87 | MOTION to Change Venue / Transfer Case by Meta Platforms, Inc.. (Fassbender, Diana) (Entered: 04/09/2026) |
| 04/09/2026 | 88 | DECLARATION of Jennifer Allen re 87 MOTION to Change Venue / Transfer Case by Meta Platforms, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Fassbender, Diana) (Entered: 04/09/2026) |
| 04/10/2026 | 89 | OBJECTION re 80 Order to Strike, by Marvelle J. Ballentine by Marvelle J. Ballentine. (ARL) (Entered: 04/10/2026) |
| 04/10/2026 | 90 | DECLARATION of Marvelle J. Ballentine re 89 Objection by Marvelle J. Ballentine. (ARL) (Entered: 04/10/2026) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/10/2026 22:09:34 | | | |
| **PACER Login:** | glazuser | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 6:26-cv-00376-AGM-DCI |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

# EXHIBIT B

Case 376, Dkt. 29: Accenture LLP's Motion to Dismiss
(27 pp.; certificate of service at p. 24)

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARVELLE J. "JAY"
BALLENTINE,

        Plaintiff,               Civil Action No. 6:26-cv-00376

v.                     Judge Anne-Leigh Gaylord Moe

META PLATFORMS, INC.;
ACCENTURE LLP; TASKUS, INC;
and GENPACT USA, INC.

        Defendants.        /

## DEFENDANT ACCENTURE LLP'S
## MOTION TO DISMISS PLAINTIFF'S CLAIMS

Defendant Accenture LLP moves to dismiss all claims asserted in plaintiff Marvelle J. "Jay" Ballentine's amended complaint against it with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) because plaintiff has not stated and cannot state a claim against Accenture LLP upon which relief can be granted.

### INTRODUCTION[1]

Plaintiff Ballentine has not pleaded valid claims. According to the amended complaint, defendant Meta Platforms, Inc. terminated Ballentine's Facebook advertising account after flagging it for child sexual exploitation ("CSE") material. The amended complaint also alleges that one of three third-party service vendors—

---

[1] All citations are cleaned up with emphasis added, unless otherwise noted.

Case 6:26-cv-00376-AGM-DCI    Document 91-1    Filed 04/15/26    Page 118 of 350
Case 6:26-cv-00376-AGM-DCI    Document 29    Filed 03/18/26    Page 2 of 27 PageID 218
PageID 1381

Accenture LLP, TaskUs, Inc., or Genpact Ltd.—assisted in reviewing Ballentine's account nearly four years ago. Ballentine theorizes that his Facebook account was terminated because of his race. But even taking Ballentine's pro se status into account, the amended complaint simply does not supply the many necessary allegations to turn an adverse action on a Facebook account into a far-fetched conspiracy among four businesses to discriminate against Black entrepreneurs. Ballentine's claims should be dismissed.

First and foremost, Ballentine has not plausibly alleged facts to show that Accenture—an entity he acknowledges had no technical ability to terminate his account—caused his injuries. Nor has Ballentine alleged facts that show that Accenture acted with racial animus, as each of his claims requires. Instead, the amended complaint piles speculative inference upon speculative inference: a vendor *may* have been able to see Ballentine's race during the review process; that vendor *may* have been Accenture; and therefore Accenture *must* have recommended a ban based on race. But he offers no allegations to support that speculative leap. Nothing in the amended complaint either directly or indirectly supports the entirely false allegation that Accenture acted because of Ballentine's race, much less that it did so as a government actor. Indeed, across the eight complaints that Ballentine has filed relating to these claims, he has never actually alleged anything about the content he allegedly posted and that he claims was improperly removed.

Moreover, the Communications Decency Act ("CDA") shields Accenture from liability for its content moderation. Because Section 230(c)(1) of the CDA bars claims

2

against interactive computer service providers based on the removal of content (including accounts) from their services, it follows that third-party content-moderation service providers are also immune from liability for assisting with those publication decisions. Similarly, Section 230(c)(2) of the CDA protects content moderators' voluntary and good-faith efforts to keep the internet safe, including by assisting others in eliminating objectionable material on their websites.

Ballentine's latest attempt to embark on a fishing expedition to try to find facts that support his unfounded theory of invidious racial discrimination should be rejected. Ballentine already once voluntarily withdrew his complaint against Meta and Accenture in the Northern District of California after the briefing on defendants' motions to dismiss concluded. But four days later, he filed this nearly identical case in a new jurisdiction. And remarkably, Ballentine has now filed separate lawsuits against Accenture, its counsel, and others in which he claims that Accenture's counsel's accurate recitation of his complaint in a federal court pleading constitutes defamation—a proposition that even a simple search would refute. The Court should dismiss Ballentine's amended complaint.

## BACKGROUND[2]

Meta Platforms, Inc. operates social-media platforms like Facebook and Instagram that enable millions of users worldwide to connect, communicate, and advertise online. *See* ECF No. 19 ("FAC") ¶ 30. As the host of a wide range of user

---

[2]    Accenture accepts as true the factual allegations in the amended complaint solely for the purposes of this motion to dismiss; it does not otherwise concede the truth of any of those allegations.

3

content across its platforms, Meta takes significant steps to ensure a safe experience for users: it establishes community and advertising standards, *see id.* ¶ 60, reviews user content for violations of those standards, *id.* ¶ 34, and retains authority to suspend or ban accounts that do not follow its standards, *id.* ¶ 33. Relevant here, Meta also actively screens for materials that violate its policy against CSE. *Id.* ¶ 34.

Accenture LLP, TaskUs, Inc., and Genpact Ltd. assist Meta in its content-moderation efforts, including by reviewing appeals from users whose material has been flagged under Meta's CSE policy. *Id.* ¶ 42. Meta flags potential violations and sets the rules for review, *id.*, and vendor teams perform a human review of the Meta-flagged content under Meta's policies and training, *id.* ¶¶ 108–10. When Meta identifies an "apparent" violation of child exploitation laws, it is required by law to report the violation to the National Center for Missing and Exploited Children (NCMEC) for further investigation. *Id.* ¶ 74. As the platform operator, Meta retains full control over the NCMEC reporting process, *see id.*, reserves "override authority" over vendors' enforcement recommendations, *id.* ¶ 33, and "ratifie[s]" the outcome of vendors' review, *id.* ¶ 124.

Plaintiff Marvelle J. "Jay" Ballentine promoted and sourced work for his RV-repair-services business using a Facebook advertising account beginning in June 2022. *Id.* ¶ 53. He also used his account to access continuing-education materials through the National RV Training Academy's Alumni Facebook Group. *Id.* ¶ 52. Plaintiff is a Black man. *Id.* ¶ 18.

4

On July 4, 2022, Meta flagged Ballentine's account for a violation of its CSE policy and disabled the account. *Id.* ¶¶ 54, 56. Ballentine appealed, and Meta requested identity verification before processing the appeal. *Id.* ¶ 54. Ballentine submitted his passport. *Id.* On Meta's request, a human moderator at either Accenture, TaskUs, or Genpact reviewed Ballentine's account. *Id.* ¶ 7. After the review, Meta terminated Ballentine's account. *Id.* ¶ 56. Ballentine claims he lost out on pending RV service requests, access to educational materials, and the ability to acquire customers after his account was terminated. *Id.* ¶¶ 63–65.

On September 9, 2025, Ballentine filed a complaint against Meta and Accenture in the United States District Court for the Northern District of California in which he claimed that his Facebook account was terminated because of his race and not because of a CSE violation. *See* ECF No. 4 at 6.[3] Meta and Accenture moved to dismiss Ballentine's complaint for failure to state a claim upon which relief could be granted. *Id.* at 9. Ballentine amended his complaint the following day. *Id.* Meta and Accenture then moved to dismiss Ballentine's amended complaint. *Id.* at 10. None of Ballentine's submissions has ever provided details about the content he attempted to post on Facebook before Meta terminated his account.

Approximately one week before the hearing on defendants' motions to dismiss, Ballentine moved to transfer the action from the Northern District of California to this

---

[3] Accenture does not oppose Ballentine's motion to take judicial notice of the public docket in his previous action in the Northern District of California. ECF No. 4. It opposes as improper his motion to take judicial notice of his personal summary of those proceedings. *Id.*

5

Case 6:26-cv-00376-AGM-DCI    Document 91-1    Filed 04/15/26    Page 122 of 350
Case 6:26-cv-00376-AGM-DCI    Document 29    Filed 03/18/26    Page 6 of 27 PageID 222
Page ID 1355

Court. *Id.* at 59. Before any party could respond to Ballentine's transfer motion, Ballentine voluntarily dismissed his action and refiled a new complaint in this Court. *Id.* at 63.

Ballentine's new complaint added two other "vendor defendants"—TaskUs and Genpact. It explained that Ballentine does not know which vendor defendant reviewed his account, but that one of them did. ECF No. 1, at ¶ 47. The initial complaint also asserted four new state-law claims against Accenture: tortious interference with business relationships, intentional infliction of emotional distress, civil rights conspiracy, and a violation of Florida's Deceptive and Unfair Trade Practices Act. *Id.* ¶¶ 210, 222, 227, 233. Ballentine sought declaratory relief, public injunctive relief, attorney's fees, and monetary damages "in an amount exceeding $250,000,000." *Id.* ¶ 250A–E.

Ballentine amended his complaint to drop the state claims, *see* FAC ¶ 1, which he has since refiled in state court along with various other claims against a total of seven defendants, ECF No. 22. He also separately sued Meta and Accenture's counsel in this Court and in state court for defamation, civil conspiracy to defame, and intentional infliction of emotional distress based on a legal argument in Accenture's motion to dismiss Ballentine's previous complaint in the Northern District of California. *See* ECF Nos. 3, 22. Ballentine has now filed eight complaints related to his claims.

Ballentine brings four federal claims against Accenture in this action: violations of 42 U.S.C. §§ 1981, 1982, 1983, and 1985(3). FAC ¶¶ 138, 150, 160, 169. He now

6

seeks declaratory relief, public injunctive relief, and monetary damages "in an amount not less than $500,000,000." *Id.* ¶ 178.

## LEGAL STANDARD

A motion to dismiss should be granted if the complaint fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Pleadings that are "no more than conclusions[] are not entitled to the assumption of truth." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

## ARGUMENT

Ballentine's claims against Accenture fail as a matter of law. First and foremost, the amended complaint does not sufficiently allege that Accenture either caused Ballentine's alleged injuries or discriminated against him because of his race. Ballentine's claims are also separately barred by Section 230 of the CDA because they seek to hold Accenture liable for Meta's protected publication decisions as well as Accenture's good-faith efforts to filter objectionable material. And Ballentine's Section 1983 and 1985(3) claims fail for additional, independent reasons: the amended complaint does not plausibly suggest that Accenture is a state actor, nor does it plausibly suggest that Meta's termination of Ballentine's account was in fact part of a multi-level conspiracy to discriminate against Ballentine. The Court should dismiss Ballentine's claims against Accenture with prejudice.

7

Case 6:26-cv-00376-AGM-DCI    Document 91-1    Filed 04/15/26    Page 124 of 350
Case 6:26-cv-00376-AGM-DCI    Document 29    Filed 03/18/26    Page 8 of 27 PageID 224
PageID 1387

I.    **Ballentine's Claims Fail Because His Allegations Do Not Establish That Accenture Caused His Injuries or Acted Out of Racial Animus**

Ballentine's claims fail because they are not supported by sufficient allegations to support the claims. First, the allegations in the amended complaint do not establish that, but for Accenture's alleged actions, Ballentine would not have suffered his alleged injuries. And second, Ballentine's allegations do not support his conclusion that Accenture acted with racial animus.

A.    **The Amended Complaint Does Not Sufficiently Allege That Accenture Caused Ballentine's Injuries**

Nothing in Ballentine's amended complaint plausibly suggests that Accenture caused his alleged injuries. "It is 'textbook tort law' that a plaintiff seeking redress for a defendant's legal wrong typically must prove but-for causation." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 331 (2020). This means the plaintiff must "show that the harm would not have occurred in the absence of . . . the defendant's conduct." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346–47 (2013). The "but for" causation test "supplies the 'default' or 'background' rule against which Congress is normally presumed to have legislated when creating its own new causes of action," including antidiscrimination laws like those at issue here. *Comcast*, 589 U.S. at 332. And because "the essential elements of a claim remain constant through the life of a lawsuit," this requirement applies equally at the motion-to-dismiss stage: a plaintiff must "plausibly allege" but-for causation for each defendant. *Id.*

Ballentine's amended complaint does not meet this standard. To start, it improperly "assert[s] multiple claims against multiple [vendor] defendants without

8

specifying which of the [vendor] defendants are responsible for which acts or omissions." *Barnapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021). Although it specifies that "the claim is brought against" all vendor defendants, *id.*, it does not clearly indicate whether *all three* vendor defendants reviewed the account, or whether it is merely guessing that *one* of the three vendors must have reviewed the account. *Compare* FAC ¶ 171 (asserting that all three "Vendor Defendants joined and acted in furtherance" of a conspiracy to terminate Ballentine's account), *with id.* ¶ 175 (asserting that a single "Vendor Defendant" reviewed Ballentine's account). That alone warrants dismissal. *See Lyles v. Sch. Dist. of Osceola Cnty.*, 2023 WL 8437717, at *1 (M.D. Fla. Feb. 2, 2023) (dismissing shotgun pleading).

Even if the amended complaint properly attributed conduct to a specific vendor defendant (or plausibly pleaded alternative causation), it still would fail to state a claim. The amended complaint makes numerous allegations that cut *against* the inference that any vendor defendant—let alone Accenture specifically—caused Ballentine's injuries. For one, it affirmatively alleges that Meta controlled the content moderation for the Facebook service at issue. According to the amended complaint, Meta set content policies for its "enforcement pipeline," FAC ¶ 42; made initial CSE designations, *see id.*; "directly trained Accenture reviewer teams" and "provid[ed] instruction on Meta's policies and review procedures," *id.* ¶ 107; submitted official CSE reports, *id.* ¶ 38; retained "override authority" over and "ratified the final outcome" of any vendor recommendation before actioning an account, *id.* ¶¶ 42, 142;

and held exclusive power to approve, restrict, terminate, or reinstate accounts, and to return any lost data, *see id.* ¶¶ 53–57.

Accenture, meanwhile, operated in a more limited sphere consistent with its role as a third-party service provider.  The amended complaint asserts that, if Accenture reviewed Ballentine's account at all, it relied on "Meta-provided account-review tools," *id.* ¶ 110; acted "within Meta's enforcement framework," *id.*; made "client guided" recommendations, *id.* ¶ 114; and was subject to Meta's unilateral "override authority" in doing so, *id.* ¶ 33.

Given these affirmative allegations, Accenture cannot be the but-for cause of Ballentine's alleged injuries.  Indeed, by the amended complaint's own terms, Ballentine's account was flagged for CSE *before Accenture was ever involved* in the review process.  *Id.* ¶ 54.  When Accenture (or another vendor defendant) later reviewed the alleged violation, it acted according to extrinsic training, policies, and procedures.  *Id.* ¶ 110.  And when Accenture completed its review, the most it could do was issue a recommendation for action; as Ballentine acknowledges, Accenture lacked authority to disable his account.  *See id.* ¶¶ 42, 142.

The amended complaint's "naked assertion" that Accenture caused Ballentine's injuries is thus not only "devoid of [ ] factual enhancement," *Iqbal*, 556 U.S. at 678— it *directly contradicts* the very allegations on which it relies.  Because Ballentine's amended complaint fails to plead—and affirmatively eliminates—the "essential element[]" of but-for causation against Accenture, *Comcast*, 589 U.S. at 332, the Court

10

cannot "draw the reasonable inference that [Accenture] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Ballentine's claims should be dismissed.

## B. The Amended Complaint Does Not Sufficiently Allege That Accenture's Actions Were Based on Racial Animus

Ballentine's claims also fail for the independent reason that the allegations in the amended complaint do not plausibly support an inference of racial animus or discriminatory intent. In *Comcast*, the Supreme Court held that a Section 1981 plaintiff must plead and prove that racial animus is not just *one* of the reasons behind the defendant's actions, but *the* reason for those actions. *See* 589 U.S. at 333. Similarly, because Section 1982 "uses nearly identical language" to Section 1981, *id.* at 336, courts have extended *Comcast*'s but-for requirement to Section 1982 claims. *See, e.g., Christian v. Rancho Grande Manufactured Home Cmty.*, 2024 WL 3372687, at *1 (9th Cir. July 11, 2024), *cert denied*, 145 S. Ct. 1057 (2025); *James v. City of Evanston*, 2021 WL 4459508, at *9 (N.D. Ill. Sept. 29, 2021). Claims brought under Sections 1983 and 1985(3) also require a showing of discriminatory intent or animus. *See Washington v. Davis*, 426 U.S. 229, 239–40 (1976) (claims based on equal protection[4]); *Chua v. Ekonomou*, 1 F.4th 948, 955 (11th Cir. 2021) (Section 1985(3) claims).

Ballentine's amended complaint does not meet this threshold requirement. According to the amended complaint, one of the vendor defendants "had access to account-level identifiers, including profile photos, names, and in some cases

---

[4] Although Ballentine's "alternative" Section 1983 claim that the defendants violated his procedural due process rights does not require allegations plausibly suggesting racial animus, that claim fails because Accenture is not a state actor. FAC ¶ 160; *infra* Part III.A.

11

government-issued ID images, sufficient to reveal a user's race" during the review process. FAC ¶ 44. The amended complaint also alleges Accenture was aware that "automated models can be 'wrong' more often for some groups." *Id.* ¶ 46. And it asserts that Meta permanently terminated Ballentine's account "[w]ithin hours of receiving [his] identification." *Id.* ¶ 56. Based on these allegations, the amended complaint hypothesizes that Accenture (or another vendor defendant) had Ballentine's identification "visible on-screen," saw the color of his skin, and recommended that Meta affirm his ban because he is Black. *Id.* ¶ 154.

From start to finish, Ballentine's series of speculative inferences lacks the requisite support to state a claim as a matter of law. To begin, the amended complaint makes clear that Ballentine does not know whether Accenture's reviewers even had *access* to his photograph. *See, e.g., id.* ¶ 193 (requesting relief from the vendor defendants in the form of an online publication explaining "*[w]hether* reviewers could view users' profile photos and government identification images during review"); *id.* ¶ 190 (requesting relief from Meta in the form of an "audit log" explaining "[w]hether identity-revealing imagery was displayed" during "human review" of accounts). Ballentine's personal belief that Accenture's reviewers *may* have seen his race during the review process cannot support his conclusion that they *must* have recommended a ban based on race. *See Twombly*, 550 U.S. at 570 (explaining that naked speculation cannot "nudge[] [a plaintiff's] claims across the line from conceivable to plausible"). Many courts within the Eleventh Circuit have dismissed discrimination claims for similar deficiencies, and this Court should do the same. *See, e.g., Jackson v. BellSouth*

12

*Telecomms.*, 372 F.3d 1250, 1274 (11th Cir. 2004); *Lang v. SPM Prop. Mgmt.*, 2020 WL 13695197, at *16 (S.D. Ala. Feb. 27, 2020); *Potwin v. Dynasty Bldg. Sols., LLC*, 2024 WL 4881385, at *2–3 (M.D. Fla. Nov. 25, 2024).

Even assuming Accenture's reviewers had access to Ballentine's photograph, the amended complaint does not plausibly allege that race was a factor in their review. Generally, a plaintiff may raise an inference of discrimination by identifying and describing "comparators of a different race who were 'similarly situated in all material respects' and were not subject to the same mistreatment." *Horton v. Beacon Woods East*, 2025 WL 3089014, at *6 (M.D. Fla. Nov. 5, 2025). But "[w]hen the plaintiff takes this route . . . [he] must plead sufficient detail about the proposed comparator so that the court can reasonably infer that racial animus accounts for the difference in treatment." *Snoqualmie Indian Tribe v. City of Snoqualmie*, 186 F. Supp. 3d 1155, 1163 (W.D. Wash. May 16, 2016) (collecting cases); *Lang*, 2020 WL 13695197, at *15.

Ballentine does not begin to satisfy this standard. Although he references a handful of white "comparators" whom he believes were treated differently, not one of those comparators is similarly situated to Ballentine "in all material respects." *Horton*, 2025 WL 3089014, at *6. First, three of Ballentine's five comparators allegedly had their accounts flagged for violations *entirely unrelated* to CSE. FAC at 17-18 (table of comparators alleging that white users who posted "artistic" nudity, "[a]dult [n]udity/[s]olicitation," and "[h]uman [e]xploitation" materials later had their accounts reinstated). And though another comparator's account was flagged for a violation of Meta's CSE policy, it was later determined to contain "a medical C-section

13

Case 6:26-cv-00376-AGM-DCI    Document 91-1    Filed 04/15/26    Page 130 of 350
Case 6:26-cv-00376-AGM-DCI    Document 29-1    Filed 03/18/26    Page 14 of 27 PageID 230
PageID 1343

video." *Id.* That four white individuals with what appear to be entirely different account types had their accounts flagged and restored under entirely different circumstances does not plausibly raise any inference that Accenture engaged in invidious racial discrimination against Ballentine.

That leaves Ballentine with a single, unnamed comparator—"COMP-1"— whom he alleges he discovered through a single post from an unnamed author on the social-media platform X. *Id.* ¶ 71. But even that mysterious comparator cannot advance Ballentine's assertion of racial animus. The amended complaint itself offers *no* details—none—about the post or posts that allegedly led to Meta's termination of Ballentine's account. Ballentine's failure to describe the content of *his own advertisements*—even when pressed by Accenture in the parties' previous briefing and across eight complaints that he has now filed in three different courts—makes any meaningful comparison impossible. And the amended complaint's description of COMP-1 is similarly vague: it does not give any specific details about COMP-1's flagged content. Without *any* information about each party's specific posts, Ballentine's amended complaint does not plausibly state a claim that any alleged disparate treatment was based on race and not on content. *Henley v. Turner Broad. Sys., Inc.*, 267 F. Supp. 3d 1341, 1352–54 (N.D. Ga. 2017) (dismissing Section 1981 discrimination claim where the plaintiff "fail[ed] to identify or describe the comparators in enough detail to show that [she] and the employees [were] similarly situated in all relevant respects or that they [were] nearly identical"); *Pillitieri v. City of Flagler Beach*, 2017 WL 3840433, at *4 (M.D. Fla. Sept. 1, 2017) ("Where a plaintiff

14

has not demonstrated that a comparator was similarly situated in all relevant respects, dismissal is appropriate."); *Scribner v. Collier County*, 2011 WL 2746813, at *4 (M.D. Fla. Jul. 14, 2011) (similar); *Halstrbrison, LLC v. Se. Overtown/Park W. Cmty. Redevelopment Agency*, 2024 WL 5493421, at *3 (S.D. Fla. Mar. 27, 2025) (similar).

Finally, even assuming Accenture's reviewers (1) could access users' photographs, (2) were assigned Ballentine's case, (3) recommended that Meta affirm his ban in the absence of a CSE violation, the amended complaint does not plausibly suggest Ballentine is entitled to relief. In making the plausibility determination, "courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Doe v. Samford Univ.*, 29 F.4th 675, 686 (11th Cir. 2022) (affirming dismissal of Title IX discrimination claim).

Here, the amended complaint does not eliminate all alternative, non-discriminatory explanations for Accenture's alleged recommendation. For example, although Ballentine alleges there was no CSE violation associated with his account, *id.* ¶ 8, the amended complaint does not allege that Ballentine's account complied with all of Meta's community standards. *See, e.g.*, FAC ¶ 8 (alleging only that "no violation existed *to report [to NCMEC]*"). Ballentine does not describe Meta's community standards. Nor does he detail the content of his own account. *Supra* p. 14. Without more, the Court can infer from the amended complaint that Ballentine's account was

15

Case 6:26-cv-00376-AGM-DCI   Document 91-1   Filed 04/15/26   Page 132 of 350
Case 6:26-cv-00376-AGM-DCI   Document 29   Filed 03/18/26   Page 16 of 27 PageID 232
PageID 1345

terminated for non-discriminatory reasons,[5] and the amended complaint does not "plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 681.

Ballentine's claims require establishing that Accenture acted with racial animus. The amended complaint impermissibly piles speculative inference upon speculative inference: Ballentine's account *may* have complied with Meta's community standards; a vendor *may* have been able to see Ballentine's race during the review process; that vendor *may* have been Accenture; and therefore Accenture *must* have recommended a ban based on race. But because the allegations in the amended complaint do not support this speculative leap, they cannot "nudge[] [Ballentine's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Ballentine's claims are "precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told [courts] to ignore when evaluating a complaint's sufficiency." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013). Ballentine's claims should be dismissed.

---

[5] Remarkably, Ballentine has filed two lawsuits against Accenture, its counsel, and others for defamation and IIED based on this legal argument. ECF No. 3 (notice of related action in federal court); ECF No. 22 (notice of related action in state court). Ballentine then refused to engage with Accenture's counsel in the Northern District of California on the basis that he had filed a lawsuit against them. Ballentine's lawsuit is obviously baseless. *Jackson*, 372 F.3d at 1274 ("Florida's litigation privilege affords absolute immunity for acts occurring during the course of judicial proceedings."). Indeed, there are numerous cases in which parties have raised (and courts have accepted) the "obvious alternative explanation" defense. *See, e.g., Iqbal*, 556 U.S. at 682; *Henley*, 267 F. Supp. 3d at 1353–54 (collecting cases). Ballentine's additional lawsuits only underscore the lack of merit to his claims.

## II.    The Communications Decency Act Bars Ballentine's Claims

Ballentine's claims should be dismissed for another independent reason: both section 230(c)(1) and section 230(c)(2) of the CDA shield Accenture from liability for its content-moderation efforts. 47 U.S.C. §§ 230(c)(1), (2). Section 230(c)(1) provides protection to any "provider or user of an interactive computer service" that is treated as the "publisher" of third-party content. 47 U.S.C. § 230(c)(1); *Roca Labs, Inc. v. Consumer Op. Corp.*, 140 F. Supp. 3d 1311, 1319 (M.D. Fla. 2015) ("Lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional functions—such as deciding whether to publish, withdraw, postpone, or alter content—are barred."). And Section 230(c)(2) provides protection to any "provider or user of an interactive computer service" for good-faith actions "to restrict access to . . . material that the provider or user considers to be . . . objectionable." 47 U.S.C. § 230(c)(2). Accenture's content-moderation efforts fall squarely within these immunity-granting provisions.

To begin, whether as a "user" of an "interactive computer service" or a third-party service to a "provider" of an "interactive computer service," Accenture qualifies for CDA protection. Accenture is clearly a "user" of an interactive computer service—Meta and its content-moderation services—because Accenture necessarily accesses Meta-housed content and uses Meta-developed tools to assist Meta with content moderation.[6] *See* FAC ¶ 110. Although the CDA does not define or give examples of

---

[6]    The Eleventh Circuit has acknowledged that "website exchange systems and online message boards are interactive computer services." *See, e.g., McCall v. Zotos*, 2023 WL 3946827, at *2 (11th

Case 6:26-cv-00376-AGM-DCI   Document 91-1   Filed 04/15/26   Page 134 of 350
Case 6:26-cv-00376-AGM-DCI   Document 29   Filed 03/18/26   Page 18 of 27 PageID 234
PageID 1347

who qualifies as a "user," courts have held that CDA immunity encompasses traditional account holders and content moderators alike. *See, e.g., E. Coast Test Prep LLC v. Allnurses.com, Inc.*, 307 F. Supp. 3d 952, 965 (D. Minn. 2018), *aff'd*, 971 F.3d 747 (8th Cir. 2020) ("Moderator of third-party content" was entitled to CDA immunity against defamation claims under Section 230(c)(1)). This reading aligns with common sense: a "user" under the CDA is simply someone who uses an interactive computer service. *See User*, Webster's Ninth New Collegiate Dictionary (1990) (defining "user" in the years leading up to the passing of the CDA as "one that uses").

Accenture is also entitled to protection in its content-moderation role through Meta's status as a "provider." Because the CDA shields from liability those who, like Meta, provide "software . . . or enabling tools that . . . filter, screen, allow, or disallow content," 47 U.S.C. § 230(f)(4), it follows that content-moderation services like Accenture—whose contractual purpose is to assist Meta in its efforts to filter and screen Meta's content, *see* FAC ¶ 100—are also immune from liability for those actions.

Under Section 230(c)(1), Accenture cannot be held liable for recommending that Meta remove Ballentine's account. Indeed, "[a]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is

---

Cir. June 12, 2023). Other circuits have held more specifically that Meta's social-media platforms, including Facebook, are interactive service providers. *See, e.g., Sikhs for Just., Inc. v. Facebook, Inc.*, 697 F. App'x 526, 526 (9th Cir. 2017).

18

Case 6:26-cv-00376-AGM-DCI    Document 91-1    Filed 04/15/26    Page 135 of 350
Case 6:26-cv-00376-AGM-DCI    Document 29    Filed 03/18/26    Page 19 of 27 PageID 235
PageID 1348

perforce immune under Section 230." *Mezey v. Twitter, Inc.*, 2018 WL 5306769, at *1 (S.D. Fla. July 19, 2018). Courts have consistently dismissed claims where, as here, those claims are based on a defendant's decision to suspend or terminate a user's account.[7] *See, e.g., id.*; *Elansari v. Meta, Inc.*, 2024 WL 163080, at *2 (3d Cir. Jan. 16, 2024); *King v. Facebook, Inc.*, 572 F. Supp. 3d 776, 795 (N.D. Cal. 2021).

Similarly, under Section 230(c)(2), Accenture cannot be held liable for its "voluntar[y]" and "good faith" actions to recommend removing content Meta deems objectionable. 47 U.S.C. § 230(c)(2)(A). As explained, Ballentine has not sufficiently alleged that Accenture acted in bad faith. Indeed, Ballentine does not (and cannot) say "[w]hether [Accenture's] reviewers could [even] view users'" identification during the review process. FAC ¶ 193. Ballentine's belief that Accenture's reviewers *may* have been able to see his race during the review process does not support his conclusion that they *must* have acted in bad faith. *See Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1105 (N.D. Cal. 2011) (dismissing claim under Section 230(c)(2) where plaintiff's conclusory allegations did not adequately plead "an absence of good faith"); *see also e360Insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605, 609 (N.D. Ill. 2008)

---

[7] As explained above, the amended complaint does not adequately allege that Accenture caused Ballentine's alleged injuries. *See supra* Part I.A. But even if it did, Ballentine has pleaded himself right into the CDA by asserting that Accenture played a role in Meta's publication decision. As Florida courts have acknowledged in other contexts, "every one who takes part in the publication . . . is charged with publication." *Doe v. Am. Online, Inc.*, 783 So.2d 1010, 1017 (Fla. 2001); *see generally Doe on Behalf of Doe v. Grindr, LLC*, 2023 WL 7053471, at *2 (M.D. Fla. Oct. 26, 2023) (holding that a defendant is treated as a publisher when a plaintiff's claim is "inextricably linked" to a publication decision). Ballentine's amended complaint is therefore at odds with itself: either Accenture's alleged review did not cause Ballentine's injuries, or Accenture assisted with a protected editorial decision. Either way, Ballentine's claims fail.

(same). Accenture acted in accordance with Meta's content policies throughout the review process, FAC ¶ 110, and ultimately concluded Ballentine's content was "objectionable" under those policies, 47 U.S.C. § 230(c)(2)(A). The amended complaint does not allege otherwise, and Ballentine's claims against Accenture should be dismissed. *See Republican Nat'l Comm. v. Google, Inc.*, 2023 WL 5487311, at *5–6 (E.D. Cal. Aug. 24, 2023) (dismissing claims of bad faith where factual allegations did "not rise above the speculative level").

Affording CDA protection to third-party content-moderation services is consistent with the congressional goal of "encourag[ing] service providers to self-regulate the dissemination of offensive material over their service." *M.H. v. Omegle.com, LLC*, 2022 WL 93575, at *6 (M.D. Fla. Jan. 10, 2022), *aff'd sub nom. M.H. on behalf of C.H. v. Omegle.com LLC*, 122 F.4th 1266 (11th Cir. 2024). To that end, this Court has explained that the CDA "establish[es] broad federal immunity." *Roca Labs, Inc.*, 140 F. Supp. 3d at 1319. This liberal construction allows "computer service providers to establish standards of decency without risking liability for doing so." *Omegle.com*, 2022 WL 93575 at *6. Accenture's moderation efforts are precisely the type of conduct the CDA protects. And because this lawsuit seeks to hold Accenture liable for its role in blocking and screening online material, the CDA bars Ballentine's claims.

20

III.    **Ballentine's Section 1983 and Section 1985(3) Claims Fail for Additional, Independent Reasons**

Even beyond the factual and legal deficiencies described above, Ballentine's Section 1983 and Section 1985(3) claims cannot survive for additional, independent reasons: the amended complaint does not plausibly suggest that Accenture is a state actor or that Meta's termination of Ballentine's account was in fact part of a large-scale conspiracy to discriminate against Ballentine.

A.    **Accenture's Private Review of Ballentine's Account Is Not "State Action" Under Section 1983**

Ballentine has not alleged facts to support his Section 1983 claim against Accenture, either through an alleged equal-protection or procedural-due-process violation. Regardless of the underlying constitutional argument, Section 1983 "only provides for claims to redress State action." *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001). A defendant's actions are attributable to the state only if (1) the alleged deprivation of rights was "caused by the exercise of some right or privilege created by the State," and (2) "the party charged with the deprivation . . . may fairly be said to be a state actor." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992).

Neither element is met here. First, Meta did not exercise a state-created right by enforcing its own private community standards though the termination of Ballentine's account. Accenture's review of Ballentine's account—performed (if at all) under Meta's privately set terms, FAC ¶ 107—therefore was also not an exercise of a state-created right. *See Sabeta v. Baptist Hosp. of Miami, Inc.*, 410 F. Supp. 2d 1224, 1244

21

Case 6:26-cv-00376-AGM-DCI    Document 91-1    Filed 04/15/26    Page 138 of 350
Case 6:26-cv-00376-AGM-DCI    Document 29    Filed 03/18/26    Page 22 of 27 PageID 238
PageID 1351

(S.D. Fla. 2005) ("[T]he specific conduct attributed to [the defendant] arises not from any relationship with the government, but from its own alleged policies."). Second, Accenture is not a state actor. Indeed, Accenture is three times removed from any direct state conduct: according to the amended complaint, vendors make a recommendation to Meta (who retains override authority), FAC ¶¶ 33, 118; Meta reports any "apparent" CSE violations to NCMEC, *id.* ¶ 98; and NCMEC reports those violations to law enforcement, *id.* ¶ 75. This attenuated connection cannot support Ballentine's conclusion that vendors like Accenture are at the "chokepoint between platform enforcement and state investigation," *id.* ¶ 82, or that Accenture was "pervasively entwined with law-enforcement-facing functions such that the state is responsible for the decision," *id.* ¶ 162.

Further, even if the amended complaint alleged that Accenture personally had *any* interaction with law enforcement, courts have made clear in other contexts that mere compliance with reporting requirements is insufficient to transform a private actor into a state actor. *Lindbloom v. Manatee Mem'l Found., Inc.*, 2023 WL 11891890, at *3 (M.D. Fla. Apr. 13, 2023), *report and recommendation adopted*, 2023 WL 11891892 (M.D. Fla. Nov. 30, 2023) (holding that a hospital which acted in accordance with its statutory duty is not a state actor under Section 1983); *United States v. Williamson*, 2023 WL 4056324, at *14 (M.D. Fla. Feb. 10, 2023) ("[T]he mere fact that Yahoo has developed protocols to facilitate its interactions with the government" in relation to its duty to report child pornography does not render it a state actor); *United States v. Robinson*, 2025 WL 3039333, at *3 (M.D. Fla. Oct. 31, 2025) (noting in a parenthetical

22

Case 6:26-cv-00376-AGM-DCI    Document 91-1    Filed 04/15/26    Page 139 of 350
Case 6:26-cv-00376-AGM-DCI    Document 29    Filed 03/18/26    Page 23 of 27 PageID 239
PageID 135

that "a private actor does not become a government agent simply by complying with a mandatory reporting statute"). Ballentine's Section 1983 claim should therefore be dismissed.

B.    The Complaint Does Not Plausibly Allege a Conspiracy Between Meta and the Vendor Defendants

Ballentine's Section 1985(3) claim fails for the additional reason that the amended complaint does not plausibly allege a conspiracy between Meta and the vendor defendants. Once again, the amended complaint has no factual support for this remarkable assertion. It claims that, because the number of Meta's CSE enforcement actions exceeds the number of violations Meta reports to NCMEC, Meta must have engaged in discriminatory targeting against him. And because the vendor defendants perform "staff[ed] human review within Meta's enforcement pipeline," they must have made an "agreement" with Meta to participate in that discrimination. FAC ¶ 171.

Ballentine's bare allegation of conspiracy is insufficient to state a claim. According to the amended complaint, Accenture employs nearly 6,000 reviewers dedicated exclusively to Meta's platforms, and the other vendor defendants employ thousands more. FAC ¶¶ 21–23. But "[f]or a conspiracy of the scale alleged by this complaint, one would expect at least some evidentiary facts to have been located and pled." *Kelsey K. v. NFL Enters.*, 254 F. Supp. 3d 1140, 1144 (N.D. Cal. 2017), *aff'd*, 757 F. App'x 524 (9th Cir. 2018). This stringent standard is both intuitive and pragmatic: "it is only by taking care to require allegations that reach the level suggesting

23

conspiracy that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the discovery process will reveal relevant evidence." *Twombly*, 550 U.S. at 559. Because such allegations are not present here, the Court should dismiss Ballentine's Section 1985(3) claim.

## CONCLUSION

The Court should dismiss with prejudice all claims against Accenture LLP.

24

Dated: March 18, 2026

Respectfully submitted,

*/s/ Marianna C. Chapleau*
*Marianna C. Chapleau*
*LEAD COUNSEL*
Florida Bar No. 1059142
KIRKLAND & ELLIS LLP
Three Brickell City Centre
98 S.E. 7th Street, Suite 700
Miami, FL 33131
Telephone: 305 432-5687
Fax: 305 432-5601
mchapleau@kirkland.com

Devin S. Anderson (*pro hac vice forthcoming*)
KIRKLAND & ELLIS LLP
95 South State Street
Salt Lake City, UT 84111
Telephone: 801 877 8115
Fax: 801 877 8101
devin.anderson@kirkland.com

*Counsel for Defendant Accenture LLP*

Case 6:26-cv-00376-AGM-DCI    Document 91-1    Filed 04/15/26    Page 142 of 350
Case 6:26-cv-00376-AGM-DCI    Document 29    Filed 03/18/26    Page 26 of 27 PageID 242
PageID 1356

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), counsel for Defendant Accenture LLP certifies

that counsel conferred with Plaintiff via email, and Plaintiff opposes the relief

requested in this motion.

/s/ *Marianna C. Chapleau*
Marianna C. Chapleau

26

Case 6:26-cv-00376-AGM-DCI    Document 91-1    Filed 04/15/26    Page 143 of 350
Case 6:26-cv-00376-AGM-DCI    Document 29    Filed 03/18/26    Page 27 of 27 PageID 243
PageID 1356

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 18, 2026, I electronically filed the foregoing through Middle District of Florida's CM/ECF System, which will send a copy to all unrepresented parties and counsel of record.

/s/ *Marianna C. Chapleau*
Marianna C. Chapleau

# EXHIBIT C

Case 376, Dkt. 48: TaskUs, Inc.'s Motion to Dismiss

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MARVELLE J. "JAY"
BALLENTINE,

       Plaintiff,

v.

                                     Case No. 6:26-cv-00376-AGM-RMN

META PLATFORMS, INC.,
ACCENTURE LLP, TASKUS, INC.,
and GENPACT LIMITED.

       Defendants.

_____ /

## DEFENDANT TASKUS INC.'S MOTION TO DISMISS[1]

Defendant TASKUS, INC. ("TaskUs"), through its undersigned counsel and

pursuant to Federal Rule of Civil Procedure 12, moves the Court to dismiss the

Amended Complaint[2] filed by Plaintiff MARVELLE J. "JAY" BALLENTINE

---

[1] On March 20, 2026, Defendant TaskUs, Inc. filed a Time Sensitive Motion to Extend Time to Respond to Plaintiff's First Amended Complaint ("Motion to Extend") (ECF No. 34), seeking an additional 30 days to respond to the First Amended Complaint. The Court granted a similar motion by co-Defendant Genpact Ltd. (*see* ECF Nos. 30 and 31), but has not ruled on Defendant TaskUs' Motion to Extend. As noted in the Motion to Extend, while service of the First Amended Complaint was not proper, in an abundance of caution, if service *is* deemed proper, TaskUs' response is due today (March 23, 2026). So as not to waive any available defenses, TaskUs hereby files this Motion to Dismiss.

[2] TaskUs maintains Plaintiff failed to properly serve the Amended Complaint as TaskUs was not represented at the time of the filing of the Amended Complaint. Thus, service by priority mail is not an appropriate method of service. *See* Fed. R. Civ. P. 4 and 5. Moreover, as stated in the Time Sensitive Motion to Extend Time to Respond to Plaintiff's First Amended Complaint, Defendant received notification of the Amended Complaint through a CT Corporation Service of Process Notification dated Monday, 03/09/2026. Plaintiff contends the proper service date is Saturday, 03/07/2026 based off the Priority Mail tracking number. Using either date and again assuming proper service, pursuant to Rule 6(a)(1)(c), the proper 14-day count is Monday, March 23, 2026.

("Plaintiff" or "Ballentine") for failure to state a claim upon which relief may be granted.

## INTRODUCTION

Plaintiff failed to plead any valid claim against TaskUs. According to the First Amended Complaint ("FAC") (ECF No. 19), Defendant Meta Platforms, Inc. ("Meta") terminated Ballentine's Facebook advertising account after flagging it for child sexual exploitation ("CSE") material. The FAC alleges that one of three third-party service vendors (Defendants Accenture LLP ("Accenture"), TaskUs, or Genpact Limited ("Genpact")) assisted in reviewing Ballentine's account before it was terminated nearly four years ago. Ballentine theorizes that his Facebook account was terminated because of his race. The FAC, however, supplies no facts to support that theory, and dismissal is warranted for three reasons.

First, Ballentine has not plausibly alleged facts to show that TaskUs—an entity he acknowledges had no technical ability to terminate his account—caused his injuries. He concedes that Meta controlled every meaningful step of the content-moderation process—flagging his account, setting the review policies, retaining override authority over vendor recommendations, and ultimately terminating his account. The FAC does not even identify *which* vendor reviewed his account; it merely guesses that one of three vendors did. Ballentine's failure to plead but-for causation as to TaskUs is fatal to all four of his claims.

Second, Ballentine has not plausibly alleged racial animus. He does not describe the content of his own account, identifies no similarly situated comparator whose

2

account was treated differently, and admits he does not even know whether any vendor could see his race during the review process. His speculation that a reviewer *may* have seen his race and *therefore* must have recommended a ban based on race does not come close to stating a plausible claim of racial discrimination.

Third, the Communications Decency Act ("CDA") shields TaskUs from any alleged liability for its content moderation. Because Section 230(c)(1) of the CDA bars claims against interactive computer service providers based on the removal of content (including accounts) from their services, third-party content-moderation service providers are also immune from liability for assisting with those publication decisions. Similarly, Section 230(c)(2) of the CDA protects content moderators' voluntary and good-faith efforts to keep the internet safe, including by assisting others in eliminating objectionable material on their websites.

Ballentine's attempt to embark on a fishing expedition to try to find facts that support his unfounded theory of invidious racial discrimination should be rejected. Ballentine already voluntarily withdrew his complaint against Defendants Meta and Accenture in the Northern District of California after the briefing on their respective motions to dismiss concluded. But four days later, he filed this nearly identical case in a new jurisdiction, alleging claims against TaskUs for the first time. The Court should dismiss Ballentine's FAC.

## BACKGROUND[3]

Meta operates social-media platforms like Facebook and Instagram and takes significant steps to ensure a safe experience for users: it establishes community and advertising standards, reviews user content for violations of those standards, and retains authority to suspend or ban accounts that do not follow its standards. *See* FAC ¶¶ 30, 33, 34, and 60. Relevant to Plaintiff's claims, Meta also actively screens for materials that violate its policy against CSE, and is required by law to report apparent violations to the National Center for Missing and Exploited Children (NCMEC) for further investigation. FAC ¶¶ 34, 74.

Accenture, TaskUs, and Genpact assist Meta in its content-moderation efforts, including by reviewing appeals from users whose material has been flagged under Meta's CSE policy. FAC ¶ 42. Meta flags potential violations and sets the rules for review, and vendor teams perform a human review of the Meta-flagged content under Meta's policies and training. FAC ¶¶ 42, 108–112. As the platform operator, Meta retains full control over the NCMEC reporting process, reserves "override authority" over vendors' enforcement recommendations, and "ratifie[s]" the outcome of vendors' review. FAC ¶¶ 33, 74, 124.

Ballentine promoted and sourced work for his RV-repair-services business using a Facebook advertising account beginning in June 2022. FAC ¶ 53. He also used his

---

[3] TaskUs accepts as true the factual allegations in the Amended Complaint solely for the purposes of this Motion to Dismiss; it does not otherwise concede the truth of any of those allegations.

4

account to access continuing-education materials through the National RV Training Academy's Alumni Facebook Group. FAC ¶ 52. Plaintiff is a Black man. FAC ¶ 18.

On July 4, 2022, Meta flagged Ballentine's account for violating its CSE policy and disabled his Facebook account. FAC ¶¶ 54, 56. Ballentine appealed, and Meta requested identity verification before processing the appeal. FAC ¶ 54. Ballentine submitted his passport. *Id.* On Meta's request, a human moderator at <u>either</u> Accenture, TaskUs, or Genpact reviewed Ballentine's account. FAC ¶ 7. After the review, Meta terminated Ballentine's account. FAC ¶ 56. Ballentine claims he lost out on pending RV service requests, access to educational materials, and the ability to acquire customers after his account was terminated. FAC ¶¶ 63–65.

On September 9, 2025, Ballentine filed a complaint against Defendants Meta and Accenture in the United States District Court for the Northern District of California in which he claimed that his Facebook account was terminated because of his race and not because of a CSE violation. *See generally* ECF No. 4.[4] After Meta and Accenture moved to dismiss Ballentine's complaint (as amended), and approximately one week before the hearing on defendants' motions to dismiss, Ballentine voluntarily dismissed his action and refiled a new complaint in this Court, this time adding TaskUs and Genpact as additional defendants. *Id.*

---

[4] TaskUs does not oppose Ballentine's motion to take judicial notice of the public docket in his previous action in the Northern District of California. ECF No. 4. However, TaskUs does oppose the inclusion of Plaintiff's personal summary of those proceedings. *Id.*

5

For the first time, Ballentine stated that he does not know which vendor defendant reviewed his account, but that one of them did. ECF No. 1 at ¶ 47. The initial complaint also asserted several new state-law claims against the Defendants. Ballentine amended his complaint to drop the state claims, *see* FAC ¶ 1, which he has since refiled in state court along with various other claims against seven defendants. *See* ECF No. 22.[5]

Ballentine brings four federal claims against TaskUs: violations of 42 U.S.C. §§ 1981, 1982, 1983, and 1985(3). FAC ¶¶ 138, 150, 160, 169. He now seeks declaratory relief, public injunctive relief, and monetary damages "in an amount not less than $500,000,000." FAC ¶ 178.

## LEGAL MEMORANDUM

### A.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." A complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint "does not need detailed factual allegations," but "requires more than labels and conclusions" and requires factual allegations "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Specifically, a complaint must include "enough facts to state

---

[5] Of note, Ballentine has also separately sued Meta and Accenture's counsel in this Court and in state court for defamation, civil conspiracy to defame, and intentional infliction of emotional distress based on a legal argument in Accenture's motion to dismiss Ballentine's previous complaint in the Northern District of California. See ECF Nos. 3, 22.

6

a claim to relief that is plausible on its face." *Id.* at 570. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

**B.     Ballentine Fails to Establish TaskUs Caused His Injuries or Acted Out of Racial Animus**

Ballentine's claims fail first because the allegations in the Amended Complaint do not establish that, but for TaskUs' alleged actions, Ballentine would not have suffered his alleged injuries. Second, Ballentine's allegations do not support his conclusion that TaskUs acted with racial animus.

**i.     The Amended Complaint Does Not Sufficiently Allege That TaskUs Caused Ballentine's Injuries**

Nothing in Ballentine's Amended Complaint plausibly suggests that TaskUs caused his alleged injuries. "It is 'textbook tort law' that a plaintiff seeking redress for a defendant's legal wrong typically must prove but-for causation." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 331 (2020). This means the plaintiff must "show that the harm would not have occurred in the absence of . . . the defendant's conduct." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346–47 (2013)(internal quotations omitted). The "but for" causation test "supplies the 'default'

7

or 'background' rule against which Congress is normally presumed to have legislated when creating its own new causes of action," including antidiscrimination laws like those at issue here. *Comcast*, 589 U.S. at 332. And because "the essential elements of a claim remain constant through the life of a lawsuit," this requirement applies equally at the motion-to-dismiss stage: a plaintiff must "plausibly allege" but-for causation for each defendant. *Id.*

Ballentine's Amended Complaint does not meet this standard. To start, it improperly "assert[s] multiple claims against multiple [vendor] defendants without specifying which of the [vendor] defendants are responsible for which acts or omissions." *Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021). Although it specifies that "the claim is brought against" all vendor defendants, it does not clearly indicate whether *all three* vendor defendants reviewed the account, or whether he is merely guessing that *just one* of the three vendors must have reviewed the account. *Compare* FAC ¶ 171 (asserting that all three "Vendor Defendants joined and acted in furtherance" of a conspiracy to terminate Ballentine's account), with ¶ 175 (asserting that a single "Vendor Defendant" reviewed Ballentine's account).[6] This deficiency alone warrants dismissal. *See Lyles v. Sch. Dist. of Osceola Cnty.*, 2023 WL 8437717, at *1 (M.D. Fla. Feb. 2, 2023) (dismissing shotgun pleading).

---

[6] Furthermore, in Plaintiff's own Response in Opposition to the Motion to Dismiss filed by Accenture, Plaintiff seemingly affirmatively believes that it was "an Accenture reviewer" who conducted the human review. *See* ECF No. 40, pg. 3. Plaintiff's conflicting narrative further warrants dismissal.

8

Even if the Amended Complaint properly attributed conduct to a specific vendor defendant (or plausibly pleaded alternative causation), which it does not, it still would fail to state a claim. The Amended Complaint makes numerous allegations that cut against the inference that any vendor defendant, let alone TaskUs specifically, caused Ballentine's injuries. For one, it affirmatively alleges that Meta controlled the content moderation for the Facebook service at issue. According to the Amended Complaint, Meta set content policies for its "enforcement pipeline"; made initial CSE designations; provided "standard operating procedures, policy updates, and training materials for CSE-labeled enforcement maters" to TaskUs; submitted official CSE reports; retained "override authority" over and "ratified the final outcome" of any vendor recommendation before actioning an account,; and held exclusive power to approve, restrict, terminate, or reinstate accounts, and to return any lost data. *See* FAC ¶¶ 38, 42, 53–57, 108, 142.

TaskUs, meanwhile, operated in a more limited sphere consistent with its role as a third-party service provider. The Amended Complaint asserts that, if TaskUs reviewed Ballentine's account, it relied on "Meta-provided reviewer interfaces." FAC ¶ 111.

Given these affirmative allegations, TaskUs cannot be the but-for cause of Ballentine's alleged injuries. By the Amended Complaint's own terms, Ballentine's account was flagged by Meta for CSE *before* TaskUs was ever involved in the review process. FAC ¶ 54. When a vendor (whoever it may be) later reviewed the alleged violation, it acted according to extrinsic training, policies, and procedures. FAC ¶ 111.

9

And if TaskUs performed the review, the most it could do was issue a recommendation for action; as Ballentine acknowledges, TaskUs lacked authority to disable his account. *See* FAC ¶¶ 42, 142.

The Amended Complaint's "naked assertion" that TaskUs caused Ballentine's injuries is thus not only "devoid of [ ] factual enhancement," *Iqbal*, 556 U.S. at 678—it directly contradicts the allegations on which it relies. Because Ballentine's Amended Complaint fails to plead—and affirmatively eliminates—the essential element of but-for causation against TaskUs, the Court cannot "draw the reasonable inference that [TaskUs] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Ballentine's claims should be dismissed.

### ii. The Amended Complaint Does Not Sufficiently Allege That TaskUs' Actions Were Based on Racial Animus

Ballentine's claims also fail because the allegations in the Amended Complaint do not plausibly support an inference of racial animus or discriminatory intent. In *Comcast*, the Supreme Court held that a Section 1981 plaintiff must plead and prove that racial animus is not just <u>one</u> reason behind the defendant's actions, but <u>the</u> reason for those actions. *See* 589 U.S. at 333. Similarly, because Section 1982 "uses nearly identical language" to Section 1981, *id.* at 336, courts have extended *Comcast's* but-for requirement to Section 1982 claims. *See, e.g., Christian v. Rancho Grande Manufactured Home Cmty.*, 2024 WL 3372687, at *1 (9th Cir. July 11, 2024), cert denied, 145 S. Ct. 1057 (2025); *James v. City of Evanston*, 2021 WL 4459508, at *9 (N.D. Ill. Sept. 29, 2021). Claims brought under Sections 1983 and 1985(3) also require showing

10

discriminatory intent or animus. *See Washington v. Davis*, 426 U.S. 229, 239–40 (1976) (claims based on equal protection)[7]; *Chua v. Ekonomou*, 1 F.4th 948, 955 (11th Cir. 2021) (Section 1985(3) claims).

Ballentine's Amended Complaint does not meet this threshold requirement. According to the Amended Complaint, one of the vendor defendants "had access to account-level identifiers, including profile photos, names, and in some cases government-issued ID images, sufficient to reveal a user's race" during the review process. FAC ¶ 44. The Amended Complaint also asserts that Meta permanently terminated Ballentine's account "[w]ithin hours of receiving [his] identification." FAC ¶ 56. Based on these allegations, the Amended Complaint hypothesizes that TaskUs (or another vendor defendant) had Ballentine's identification "visible on-screen," saw the color of his skin, and recommended that Meta affirm his ban because he is Black. FAC ¶ 154.

First, the Amended Complaint makes clear that Ballentine does not know whether any vendor defendant, let alone TaskUs' reviewers, even had access to his photograph. *See, e.g.,* FAC ¶ 193 (requesting relief from the vendor defendants in the form of an online publication explaining "[w]hether reviewers could view users' profile photos and government identification images during review"); FAC ¶ 190 (requesting relief from Meta in the form of an "audit log" explaining "[w]hether identity-revealing

---

[7] Although Ballentine's "alternative" Section 1983 claim that the defendants violated his procedural due process rights does not require allegations plausibly suggesting racial animus, that claim fails because TaskUs is not a state actor. FAC ¶ 160.

imagery was displayed" during "human review of accounts). Ballentine's personal belief that TaskUs' reviewers may have seen his race during the review process cannot support his conclusion that they must have recommended a ban based on race. *See Twombly*, 550 U.S. at 570 (explaining that naked speculation cannot "nudge[] [a plaintiff's] claims across the line from conceivable to plausible"). This Court, and others in the Eleventh Circuit, have dismissed discrimination claims for similar deficiencies, and this Court should do the same. *See, e.g., Potwin v. Dynasty Bldg. Sols., LLC*, 2024 WL 4881385, at *2–3 (M.D. Fla. Nov. 25, 2024); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1274 (11th Cir. 2004); *Lang v. SPM Prop. Mgmt.*, 2020 WL 13695197, at *16 (S.D. Ala. Feb. 27, 2020).

Even assuming TaskUs' reviewers had access to Ballentine's photograph, the Amended Complaint does not plausibly allege that race was a factor in their review. Generally, a plaintiff may raise an inference of discrimination by identifying and describing "comparators of a different race who were 'similarly situated in all material respects' and were not subject to the same mistreatment." *Horton v. Beacon Woods East*, 2025 WL 3089014, at *6 (M.D. Fla. Nov. 5, 2025). But "[w]hen the plaintiff takes this route . . . [he] must plead sufficient detail about the proposed comparator so that the court can reasonably infer that racial animus accounts for the difference in treatment." *Snoqualmie Indian Tribe v. City of Snoqualmie*, 186 F. Supp. 3d 1155, 1163 (W.D. Wash. May 16, 2016) (collecting cases); *Lang*, 2020 WL 13695197, at *15.

Ballentine does not begin to satisfy this standard. Although he references a handful of white "comparators" whom he believes were treated differently, not one of

12

those comparators is similarly situated to Ballentine "in all material respects." *Horton*, 2025 WL 3089014, at *6. First, three of Ballentine's five comparators allegedly had their accounts flagged for violations unrelated to CSE. FAC at pgs. 17-18 (table of comparators alleging that white users who posted "artistic" nudity, "[a]dult [n]udity/[s]olicitation," and "[h]uman [e]xploitation" materials later had their accounts reinstated). And though another comparator's account was flagged for violating Meta's CSE policy, it was later determined to contain "a medical C-section video." *Id.* That four white individuals with what appear to be entirely different account types had their accounts flagged and restored under entirely different circumstances does not plausibly raise any inference that TaskUs engaged in invidious racial discrimination against Ballentine.

That leaves Ballentine with a single, unnamed comparator— "COMP-1"— whom he alleges he discovered through a single post from an unnamed author on the social-media platform X. FAC ¶ 71. But even that mysterious comparator cannot advance Ballentine's assertion of racial animus. The Amended Complaint itself offers no details—none—about the post or posts that allegedly led to Meta's termination of Ballentine's account. Ballentine's failure to describe the content of his own advertisements makes any meaningful comparison impossible. And the Amended Complaint's description of COMP-1 is similarly vague: it gives no specific details about COMP-1's flagged content. With no information about each party's specific posts, Ballentine's Amended Complaint does not plausibly state a claim that any alleged disparate treatment was based on race and not on content. *Henley v. Turner*

*Broad. Sys., Inc.,* 267 F. Supp. 3d 1341, 1352–54 (N.D. Ga. 2017) (dismissing Section 1981 discrimination claim where the plaintiff "fail[ed] to identify or describe the comparators in enough detail to show that [the plaintiff] and the employees [were] similarly situated in all relevant respects or that they [were] nearly identical" (internal quotations and citations omitted); *Pillitieri v. City of Flagler Beach*, 2017 WL 3840433, at *4 (M.D. Fla. Sept. 1, 2017) ("Where a plaintiff has not demonstrated that a comparator was similarly situated in all relevant respects, dismissal is appropriate."); *Scribner v. Collier County*, 2011 WL 2746813, at *4 (M.D. Fla. Jul. 14, 2011) (similar); *Halstrbrison, LLC v. Se. Overtown/Park W. Cmty. Redevelopment Agency*, 2024 WL 5493421, at *3 (S.D. Fla. Mar. 27, 2025) (similar).

Finally, even assuming TaskUs reviewers (1) could access users' photographs, (2) were assigned Ballentine's case, (3) recommended that Meta affirm his ban absent a CSE violation, the Amended Complaint does not plausibly suggest Ballentine is entitled to relief. In making the plausibility determination, "courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Doe v. Samford Univ.*, 29 F.4th 675, 686 (11th Cir. 2022) (affirming dismissal of Title IX discrimination claim).

Here, the Amended Complaint does not eliminate all alternative, non-discriminatory explanations for TaskUs' alleged recommendation. For example, although Ballentine alleges there was no CSE violation associated with his account, the Amended Complaint does not allege that Ballentine's account complied with all

14

of Meta's community standards. *See, e.g.,* FAC ¶ 8 (alleging only that "no violation existed to report [to NCMEC]"). Ballentine does not describe Meta's community standards. Nor does he detail the content of his own account. Without more, the Court can infer from the Amended Complaint that Ballentine's account was terminated for non-discriminatory reasons,[8] and the Amended Complaint does not "plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 681.

Ballentine's claims require establishing that TaskUs acted with racial animus. The Amended Complaint impermissibly piles speculative inference upon speculative inference: Ballentine's account *may* have complied with Meta's community standards; a vendor *may* have seen Ballentine's race during the review process; that vendor *may* have been TaskUs; and therefore TaskUs *must* have recommended a ban based on race. Ballentine's claims are "precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told [courts] to ignore when evaluating a complaint's sufficiency." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013). Ballentine's claims should be dismissed.

---

[8] Ballentine has filed additional lawsuits against Defendant Accenture, its counsel, and others for defamation and intentional infliction of emotional distress based on this legal argument. ECF No. 3 (notice of related action in federal court); ECF No. 22 (notice of related action in state court). There are numerous cases in which parties have raised (and courts have accepted) the "obvious alternative explanation" defense. *See, e.g., Iqbal*, 556 U.S. at 682; *Henley*, 267 F. Supp. 3d at 1353–54 (collecting cases). Ballentine's additional lawsuits only underscore the lack of merit to his claims.

15

## C.    The Communications Decency Act Bars Ballentine's Claims

Ballentine's claims should be dismissed for another independent reason: both section 230(c)(1) and section 230(c)(2) of the CDA shield TaskUs from liability for its alleged content-moderation efforts in this case. 47 U.S.C. §§ 230(c)(1), (2). Section 230(c)(1) protects any "provider or user of an interactive computer service" that is treated as the "publisher" of third-party content. 47 U.S.C. § 230(c)(1); *Roca Labs, Inc. v. Consumer Op. Corp.*, 140 F. Supp. 3d 1311, 1319 (M.D. Fla. 2015) ("Lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional functions—such as deciding whether to publish, withdraw, postpone, or alter content—are barred."). And Section 230(c)(2) protects any "provider or user of an interactive computer service" for good-faith actions "to restrict access to . . . material that the provider or user considers to be . . . objectionable." 47 U.S.C. § 230(c)(2). TaskUs' alleged content-moderation efforts in this case fall squarely within these immunity-granting provisions.

To begin, whether as a "user" of an "interactive computer service" or a third-party service to a "provider" of an "interactive computer service," TaskUs qualifies for CDA protection. TaskUs is a "user" of an interactive computer service—Meta and its content-moderation services—because TaskUs accesses Meta-housed content and uses Meta-developed tools to assist Meta with content moderation.[9] *See* FAC ¶ 110.

---

[9] The Eleventh Circuit has acknowledged that "website exchange systems and online message boards are interactive computer services." *See, e.g., McCall v. Zotos*, 2023 WL 3946827, at *2 (11th Cir. June 12, 2023). Other circuits have held more specifically that Meta's social-media platforms,

16

Although the CDA does not define or give examples of who qualifies as a "user," courts have held that CDA immunity encompasses traditional account holders and content moderators alike. *See, e.g., E. Coast Test Prep LLC v. Allnurses.com, Inc.*, 307 F. Supp. 3d 952, 965 (D. Minn. 2018), aff'd, 971 F.3d 747 (8th Cir. 2020) (moderator of third-party content was entitled to CDA immunity against defamation claims under Section 230(c)(1)). This reading aligns with common sense: a "user" under the CDA is simply someone who uses an interactive computer service. *See User*, Webster's Ninth New Collegiate Dictionary (1990) (defining "user" in the years leading up to the passing of the CDA as "one that uses").

TaskUs is also entitled to protection in its alleged content-moderation role in this case through Meta's status as a "provider." Because the CDA shields from liability those who, like Meta, provide "software . . . or enabling tools that . . . filter, screen, allow, or disallow content," 47 U.S.C. § 230(f)(4), content-moderation services like TaskUs—whose contractual purpose is to assist Meta in its efforts to filter and screen Meta's content—are also immune from liability for those actions.

Under Section 230(c)(1), TaskUs cannot be held liable for allegedly recommending that Meta remove Ballentine's account. Indeed, "[a]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under Section 230." *Mezey v. Twitter, Inc.*, No. 1:18-cv-21069-KMM, 2018 U.S. Dist. LEXIS 121775, at *3 (S.D. Fla. July 19, 2018) (quoting

---

including Facebook, are interactive service providers. *See, e.g., Sikhs for Just., Inc. v. Facebook, Inc.*,697 F. App'x 526, 526 (9th Cir. 2017).

17

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008)). Courts have consistently dismissed claims where, as here, those claims are based on a defendant's decision to suspend or terminate a user's account.[10] *See, e.g., id.; Elansari v. Meta, Inc.*, 2024 WL 163080, at \*2 (3d Cir. Jan. 16, 2024); *King v. Facebook, Inc.*, 572 F. Supp. 3d 776, 795 (N.D. Cal. 2021).

Similarly, under Section 230(c)(2), TaskUs cannot be held liable for its "voluntar[y]" and "good faith" actions to allegedly recommend removing content Meta deems objectionable. 47 U.S.C. § 230(c)(2)(A). Ballentine has not sufficiently alleged that TaskUs acted in bad faith. Ballentine does not (and cannot) say "[w]hether [TaskUs'] reviewers could [even] view users'" identification during the review process. FAC ¶ 193. Ballentine's belief that TaskUs' reviewers *may* have allegedly seen his race during the review process does not support his conclusion that they *must* have acted in bad faith. *See Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1105 (N.D. Cal. 2011) (dismissing claim under Section 230(c)(2) where plaintiff's conclusory allegations did not adequately plead "an absence of good faith"); *see also e360Insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605, 609 (N.D. Ill. 2008) (same). TaskUs

---

[10] As explained above, the amended complaint does not adequately allege that TaskUs caused Ballentine's alleged injuries. But even if it did, Ballentine has pleaded himself right into the CDA by asserting that TaskUs allegedly played a role in Meta's publication decision. As Florida courts have acknowledged in other contexts, "every one who takes part in the publication. . . is charged with publication." *Doe v. Am. Online, Inc.*, 783 So.2d 1010, 1017 (Fla. 2001); *see generally Doe on Behalf of Doe v. Grindr*, LLC, 2023 WL 7053471, at \*2 (M.D. Fla. Oct. 26, 2023) (holding that a defendant is treated as a publisher when a plaintiff's claim is "inextricably linked" to a publication decision). Ballentine's Amended Complaint is therefore at odds with itself: either TaskUs' alleged review did not cause Ballentine's injuries, or TaskUs assisted with a protected editorial decision. Either way, Ballentine's claims fail.

followed Meta's content policies throughout the review process, FAC ¶ 111, and ultimately concluded Ballentine's content was "objectionable" under those policies, 47 U.S.C. § 230(c)(2)(A). The Amended Complaint does not allege otherwise, and Ballentine's claims against TaskUs should be dismissed. *See Republican Nat'l Comm. v. Google, Inc.*, 2023 WL 5487311, at *5–6 (E.D. Cal. Aug. 24, 2023) (dismissing claims of bad faith where factual allegations did "not rise above the speculative level").

Affording CDA protection to third-party content-moderation services follows the congressional goal of "encourag[ing] service providers to self-regulate the dissemination of offensive material over their service." *M.H. v. Omegle.com, LLC*, 2022 WL 93575, at *6 (M.D. Fla. Jan. 10, 2022), *aff'd sub nom. M.H. on behalf of C.H. v. Omegle.com LLC*, 122 F.4th 1266 (11th Cir. 2024). This Court has explained that the CDA "establish[es] broad federal immunity." *Roca Labs, Inc.*, 140 F. Supp. 3d at 1319. This liberal construction allows "computer service providers to establish standards of decency without risking liability for doing so." *Omegle.com*, 2022 WL 93575 at *6. TaskUs' alleged moderation efforts are precisely the conduct the CDA protects. And because this lawsuit seeks to hold TaskUs liable for its alleged role in blocking and screening online material, the CDA bars Ballentine's claims.

## D. Ballentine's Section 1983 and Section 1985(3) Claims Fail for Additional, Independent Reasons

Even beyond the factual and legal deficiencies described above, Ballentine's Section 1983 and Section 1985(3) claims cannot survive for additional, independent reasons: the Amended Complaint does not plausibly suggest that TaskUs is a state

19

actor or that Meta's termination of Ballentine's account was part of a large-scale conspiracy to discriminate against Ballentine.

### i.    A. TaskUs' Private Review of Ballentine's Account Is Not "State Action" Under Section 1983

Ballentine has not alleged facts to support his Section 1983 claim against TaskUs, either through an alleged equal-protection or procedural-due-process violation. Section 1983 "only provides for claims to redress State action." *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001). A defendant's actions are attributable to the state only if (1) the alleged deprivation of rights was "caused by the exercise of some right or privilege created by the State," and (2) "the party charged with the deprivation . . . may fairly be said to be a state actor." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992).

Neither element is met here. First, Meta did not exercise a state-created right by enforcing its own private community standards though the termination of Ballentine's account. TaskUs' review of Ballentine's account—performed (if at all) under Meta's privately set terms—therefore was also not an exercise of a state-created right. *See Sabeta v. Baptist Hosp. of Miami, Inc.*, 410 F. Supp. 2d 1224, 1244 (S.D. Fla. 2005) ("[T]he specific conduct attributed to [the defendant] arises not from any relationship with the government, but from its own alleged policies.").

Second, TaskUs is not a state actor. TaskUs is three times removed from any direct state conduct: according to the Amended Complaint, vendors make a recommendation to Meta (who retains override authority), FAC ¶¶ 33, 119; Meta

20

reports any "apparent" CSE violations to NCMEC, FAC ¶ 98; and NCMEC reports those violations to law enforcement, FAC ¶ 75. This attenuated connection cannot support Ballentine's conclusion that vendors like TaskUs are at the "chokepoint between platform enforcement and state investigation," FAC ¶ 82, or that TaskUs was "pervasively entwined with law-enforcement-facing functions such that the state is responsible for the decision," FAC ¶ 162(c).

Further, even if the Amended Complaint alleged that TaskUs had any interaction with law enforcement, courts have made clear in other contexts that mere compliance with reporting requirements is insufficient to transform a private actor into a state actor. *Lindbloom v. Manatee Mem'l Found., Inc.*, 2023 WL 11891890, at *3 (M.D. Fla. Apr. 13, 2023), report and recommendation adopted, 2023 WL 11891892 (M.D. Fla. Nov. 30, 2023) (holding that a hospital which followed its statutory duty is not a state actor under Section 1983); *United States v. Williamson*, 2023 WL 4056324, at *14 (M.D. Fla. Feb. 10, 2023) ("[T]he mere fact that Yahoo has developed protocols to facilitate its interactions with the government" in relation to its duty to report child pornography does not render it a state actor); *United States v. Robinson*, 2025 WL 3039333, at *3 (M.D. Fla. Oct. 31, 2025) (noting in a parenthetical that "a private actor does not become a government agent simply by complying with a mandatory reporting statute"). Ballentine's Section 1983 claim should therefore be dismissed.

21

### ii. The Complaint Does Not Plausibly Allege a Conspiracy Between Meta and the Vendor Defendants

Ballentine's Section 1985(3) claim also fails because the Amended Complaint does not plausibly allege a conspiracy between Meta and the vendor defendants. Once again, the Amended Complaint has no factual support for this assertion. It claims that, because the number of Meta's CSE enforcement actions exceeds the number of violations Meta reports to NCMEC, Meta must have engaged in discriminatory targeting against him. And because the vendor defendants perform "staff[ed] human review within Meta's enforcement pipeline," they must have made an "agreement" with Meta to participate in that discrimination. FAC ¶ 171.

Ballentine's bare allegation of conspiracy is insufficient to state a claim. According to the Amended Complaint, the vendor defendants collectively employ thousands of reviewers for their partnerships with Meta. FAC ¶¶ 21–23. But "[f]or a conspiracy of the scale alleged by this complaint, one would expect at least some evidentiary facts to have been located and pled." *Kelsey K. v. NFL Enters.*, 254 F. Supp. 3d 1140, 1144 (N.D. Cal. 2017), aff'd, 757 F. App'x 524 (9th Cir. 2018). This stringent standard is both intuitive and pragmatic: "it is only by taking care to require allegations that reach the level suggesting conspiracy that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the discovery process will reveal relevant evidence." *Twombly*, 550 U.S. at 559. Because such allegations are not present here, the Court should dismiss Ballentine's Section 1985(3) claim.

22

## CONCLUSION

Defendant TASKUS, INC. respectfully requests this Court dismiss with prejudice all claims against TaskUs, and grant any other relief which the Court deems just and proper.

### LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), TaskUs' counsel attempted to confer with Plaintiff by e-mail on March 23, 2026. Although Plaintiff sent other e-mail communications through Yuliya Glazman following TaskUs' attempted conferral, as of the date of filing, Plaintiff did not respond to the conferral e-mail. Undersigned counsel will update this conferral should Plaintiff respond to same.

Dated:  March 23, 2026

Respectfully submitted,

*/s/ Stephanie C. Generotti*
Stephanie C. Generotti
Florida Bar No. 112924
stephanie.generotti@ogletree.com
Elizabeth T. Jozsi
Florida Bar No. 119428
elizabeth.jozsi@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK
  & STEWART, P.C.
100 North Tampa Street
Suite 3600
Tampa, FL 33602
Telephone:  813.221.7239
Facsimile:  813.289.6530
Secondary emails:
angie.jackson@ogletree.com
melissa.salazar@ogletree.com
TAMDocketing@ogletree.com
*Attorneys for TaskUs*

23

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 23, 2026, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system, and sent the

foregoing via U.S. Mail to:

Marvelle J. Ballentine
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
Jayballentine@protonmail.com
*Pro se Plaintiff*

*/s/ Stephanie Generotti*
Attorney

# EXHIBIT D

Case 376, Dkt. 85: Meta Platforms, Inc.'s Motion to Dismiss
First Amended Complaint (filed April 9, 2026)

# UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA

MARVELLE J. "JAY" BALLENTINE

   Plaintiff,

  v.     .

META PLATFORMS, INC., ACCENTURE
LLP; TASKUS, INC, and GENPACT USA,
INC.,

   Defendants.

Case No 6:26-cv-376

---

## **DEFENDANT META PLATFORMS, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## I.    INTRODUCTION

This case arises out of Meta Platforms, Inc.'s ("Meta") policy against "Child Sexual Exploitation" ("CSE"), whereby Meta prohibits content that exploits or endangers children. Pro se Plaintiff Marvelle J. "Jay" Ballentine brings this suit against Accenture, TaskUs, Inc., and Genpact USA, Inc. (together, the "Vendor Defendants") and Meta.  He alleges that Meta disabled his Facebook account for violating Meta's CSE policy, and an unnamed Vendor Defendant affirmed the disablement. Based solely on his allegations that a Vendor Defendant was aware that Plaintiff was Black when it upheld the disablement and that, in a handful of other CSE enforcement cases (out of millions), Meta allegedly reversed the initial determinations for white users, Plaintiff summarily accuses Meta of disabling his account based on his race and asserts claims under several federal civil rights statutes.

Plaintiff originally brought his claims against Accenture and Meta in the Northern District of California.  But he dismissed that action and refiled his claims here after the Northern District of California court took the defendants' motions to dismiss under submission and declined to permit Plaintiff to seek discovery while those motions were pending.

Plaintiff's present claims against Meta fail at the outset because this Court, unlike the court where Plaintiff first filed his claims, does not have personal jurisdiction over Meta. As Plaintiff acknowledges, Meta is a Delaware

- 1 -

corporation with its principal place of business in California. As such, there is no general jurisdiction over Meta. And Plaintiff does not allege that Meta engaged in any suit-related conduct in or directed to Florida, so this Court also lacks specific jurisdiction over Meta.

Plaintiff's claims against Meta are also barred by Section 230(c)(1) of the Communications Decency Act ("Section 230"), which bars claims against interactive computer service providers based on the removal of content, including user accounts, from their services.

Plaintiff's claims against Meta are also insufficiently pled under Rule 12(b)(6), for multiple, independent reasons, including because Plaintiff fails to plead any facts showing that Meta engaged in intentional racial discrimination. Accordingly, even if the Court had jurisdiction, Plaintiff's claims must be dismissed without leave to amend.

## II.    BACKGROUND

**Meta's Terms and CSE Policy:** Meta operates Facebook, a service that enables users to create accounts to connect, share, discover, and communicate with friends, family, and communities on mobile devices and personal computers. All users of Facebook must agree to Meta's Terms of Service, which in turn require users to follow Meta's Community Standards. The Community Standards outline what is and is not allowed on Meta services, including Facebook, and the Community Standards incorporate the CSE policy. Meta's

-2-

CSE policy generally prohibits "content or activity that sexually exploits or endangers children" on Meta's services.[1] Decl. of Michael Duffey, Ex. A. As stated in Meta's policy, "[w]hen [Meta] becomes aware of apparent child exploitation"—a subset of the content and activity prohibited by Meta's policy—Meta "report[s] it to the National Center for Missing and Exploited Children ("NCMEC"), in compliance with applicable law." *Id.* As also explained in Meta's CSE policy, Meta prohibits and removes content beyond its statutory reporting requirements to NCMEC. For example, Meta may remove content under its CSE policy when "people share nude images of their own children with good intentions." *Id.*

**Plaintiff's Allegations:** Plaintiff alleges that he is a "Black business owner" who "operated [a] mobile RV repair business." Dkt. No. 19, First Amended Complaint ("FAC") ¶ 28. According to Plaintiff, in June 2022 he began using Facebook for advertising purposes for his RV repair business. *Id.* ¶ 53. Plaintiff contends that he first posted advertisements for his business between June 27-30, 2022. *Id.*

---

[1] Meta's CSE policy is incorporated by reference in the FAC and is, therefore, properly considered here. *See* FAC ¶¶ 127-128 (alleging that Plaintiff's Facebook account is "governed by Meta's terms and commercial service agreements" and that "Plaintiff's access to his" Facebook account was disabled based on Meta's "invocation of its [CSE] policy"); *see also Watson v. Kingdom of Saudi Arabia,* 159 F.4th 1234, 1267 n.4 (11th Cir. 2025) ("[U]nder the incorporation-by-reference doctrine, a court may properly consider a document when resolving a motion to dismiss "if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged.") (quoting *Johnson v. City of Atlanta,* 107 F.4th 1292 (11th Cir. 2024)).

Several days later, on July 4, 2022, Meta allegedly disabled his Facebook account, "invok[ing] its CSE policy." FAC ¶ 54. Plaintiff alleges that he appealed his disablement for the CSE violation, but a human reviewer from one of the Vendor Defendants affirmed the ban after they received a copy of Plaintiff's U.S. passport, which included his photo. *Id.* ¶¶ 55-56.

Plaintiff also alleges that in 2022, "Meta actioned approximately ***105.9 million items*** under its [CSE] enforcement category[,]" including 92.2 million items on Facebook alone. FAC ¶ 34 (emphasis added). Plaintiff also alleges that out of 105.9 million actions, 8,100 were reversed on appeal through review, and five of those reversals involved white users. *Id.* ¶¶ 67, 69-73. Based on these allegations, Plaintiff asserts that Meta disabled his account "because of Plaintiff's race," FAC ¶ 134, and brings claims under 42 U.S.C. § 1981, 42 U.S.C. § 1982, 42 U.S.C. § 1983, and 42 U.S.C. § 1985(3). FAC ¶¶ 125-177.

**Procedural History**: The claims and allegations in Plaintiff's First Amended Complaint ("FAC") were first alleged in the complaint that he filed against Meta and Accenture in the United States District Court for the Northern District of California, captioned *Ballentine v. Meta Platforms, Inc. et al*, No. 3:25-cv-7671 (the "California Action"). As Plaintiff conceded in his original Complaint in this action, Meta and Accenture moved to dismiss his claims and Plaintiff brought five different motions, including to advance the 26(f) conference so that he could pursue early discovery, which were all denied.

- 4 -

*See* Dkt. No. 1, Complaint ("Compl.") ¶¶ 9-10. Apparently frustrated with the Northern District of California's rulings on his motions and the direction of the litigation, (Compl. ¶¶ 9-12), Plaintiff decided to—in blatant contravention of the forum selection clause in the Terms—dismiss the California Action and refile in this Court on February 17, 2025. Compl. ¶12.[2]

## III. THE FAC SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OVER META

"A court must dismiss an action against a defendant over which it has no personal jurisdiction." *Kinney v. Mindsize, LLC*, 2021 WL 3911859, at *2 (S.D. Fla. June 7, 2021). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). "[V]ague and conclusory allegations. . . are insufficient to establish a prima facie case of personal jurisdiction[.]" *Snow v. DirectTV, Inc.*, 450 F. 3d 1314, 1318 (11th Cir. 2006).

The FAC does not contain *any* jurisdictional allegation specific to Meta, alleging only that Plaintiff "accessed [Meta's] platforms and services from

---

[2] Meta is concurrently filing a Motion to Transfer back to the Northern District of California pursuant to the mandatory forum section clause in the Terms, and explicitly reserves all rights to re-raise, on a renewed motion to dismiss, the applicable statute of limitations defenses that bar Plaintiff's federal civil rights claim if they had been brought in the proper forum.

Florida, and suffered the injuries alleged herein in Florida." FAC ¶ 15. This is plainly insufficient to show either general or specific jurisdiction over Meta.

### 1. Meta is not subject to general personal jurisdiction in Florida.

A court may assert general jurisdiction over nonresident defendants only when their "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe v. Washington,* 326 U.S. 310, 317(1945)); *see* Fla. Stat. § 48.193(2). Absent exceptional circumstances, a corporate defendant is only "at home" in a forum where it is either incorporated or has its principal place of business. *Daimler AG v. Bauman,* 571 U.S. 117, 137 (2014).

Meta is undisputedly not "at home" in Florida. The FAC concedes that Meta is a Delaware corporation with its principal place of business in California. *See* FAC ¶ 20. And courts have consistently held that allegations that Meta transacts business in a state do not suffice to show that Meta is "at home" in the state for purposes of establishing general jurisdiction. *See, e.g., Garrett-Alfred v. Facebook, Inc.,* 540 F. Supp. 3d 1129, 1136 (M.D. Fla. 2021) (finding no general jurisdiction over Facebook in Florida).

### 2. Meta is not subject to specific personal jurisdiction in Florida.

To establish specific jurisdiction over a nonresident defendant like Meta,

Plaintiff must show that his claims "arise out of or relate to a defendant's contacts with Florida." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015); *see* Fla. Stat. § 48.193(1). The key inquiry is whether the defendant's "conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This turns on "whether *the defendant's* actions connect [it] to the *forum.*" *Walden v. Fiore*, 571 U.S. 277, 288-89 (2014).

Here, Plaintiff fails to allege any conduct by Meta in Florida whatsoever—let alone conduct related to Plaintiff's claims—that would give rise to specific jurisdiction. Plaintiff's only jurisdictional allegation as to Meta is that Meta's services are accessible in Florida. *See* FAC ¶ 16. But courts routinely reject similar allegations regarding the availability of Meta's services in the forum as insufficient to establish specific jurisdiction. *Harrison v. Facebook, Inc.*, 2019 WL 1090779, at *4 (S.D. Ala. Jan. 17, 2019) ("This Court agrees with other courts that have held that 'personal jurisdiction over Facebook may not exist simply because a user avails himself of Facebook's services in a state other than the states in which Facebook is incorporated and has its principal place of business.'") (quoting *Ralls v. Facebook*, 221 F. Supp. 3d 1237, 1244 (W.D. Wash. 2016)); *see Atmos Nation, LLC v. All Fun Gifts Distribution, Inc.*, 2017 WL 5171174, at *4 (S.D. Fla. July 18, 2017) (holding

- 7 -

the "mere existence of a website accessible in Florida does not by itself support specific jurisdiction over the defendant in Florida.").

As in the above cases, Plaintiff does not identify any suit-related conduct by Meta in or directed to Florida. Rather, the FAC alleges claims based solely on Meta's alleged disablement of Plaintiff's Facebook account. *See, e.g.,* FAC ¶¶ 54-56. Plaintiff does not, and cannot, allege any specific acts directed to Florida in connection with the alleged decision.

Plaintiff's allegation that he was injured in Florida, which appears to be based solely on Plaintiff's residence in Florida, FAC ¶¶ 15-17, is irrelevant to the specific jurisdiction inquiry. Because specific jurisdiction focuses on the defendant's conduct, a plaintiff's allegation that he suffered injury in a state does not suffice to subject a defendant to personal jurisdiction there. *See Walden,* 571 U.S. at 288-89 (recognizing that specific jurisdiction over a defendant depends on "whether the *defendant's* actions" and not merely the plaintiff's conduct "connect [it] to the forum."); *ECB USA, Inc. v. Savencia Cheese USA, LLC,* 148 F.4th 1332, 1342 (11th Cir. 2025) ("Personal jurisdiction cannot be predicated on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff.") (internal quotes omitted).

There is, accordingly, no specific jurisdiction over Meta. *See GarrettAlfred,* 540 F. Supp. 3d at 1136 (concluding that no specific jurisdiction existed over Facebook for claims that were not sufficiently related to its Florida

contacts); *Facebook, LLC v. Grind Hard Holdings, LLC*, 390 So. 3d 142, 145 (Fla. Dist. Ct. App. 2024) (same).[3]   Accordingly the FAC should be dismissed for lack of personal jurisdiction alone.

## IV.   THE FAC SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

### A.   Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Legal conclusions—even if couched as factual allegations—need not be accepted as true.  *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although pleadings from *pro se* litigants are generally construed "liberally," a court cannot "serve as *de facto* counsel" or "rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jam, Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014).

### B.   Plaintiff's Claims Are Barred by Section 230

---

[3] Nor can Plaintiff rely on Fed. R. Civ. P. 4(k)(2) to establish jurisdiction in this Court over Meta as he suggests (*see* FAC ¶ 26), because Meta is subject to California's courts of general jurisdiction. *See Unbeatablesale.com, Inc. v. Meta Platforms, Inc.*, No. 22-6369 (MAS) (RLS), 2023 WL 4764813, at *3 (D.N.J. July 26, 2023) ("[N]umerous courts have held that Meta is subject to general jurisdiction in California[.]")

The FAC fails because it is barred in its entirety by Section 230(c)(1) of the Communications Decency Act, 47 U.S.C. § 230. Section 230(c)(1) states that "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). "The majority of federal circuits have interpreted the CDA to establish broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'" *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006); *see also M.H. v. Omegle.com, LLC*, 2022 WL 93575, at *5-6 (M.D. Fla. Jan. 10, 2022) (dismissing state and federal claims as barred by Section 230). (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir 1997). Courts accordingly hold that, under Section 230(c)(1), an interactive computer service provider like Meta cannot be held liable for removing content posted on its services by a third party. *See, e.g., Mezey v. Twitter, Inc.*, 2018 WL 5306769, at *1 (S.D. Fla. July 19, 2018) (dismissing claims predicated on suspension on Twitter account under Section 230 finding "[p]laintiff seeks to hold Twitter 'liable for its exercise of a publisher's traditional editorial functions"). And where it is apparent that Section 230(c)(1) applies on the face of the pleading, claims are properly disposed of at the motion to dismiss stage. *See id.; see also Castronuova v. Meta Platforms, Inc.*, 2025 WL 1914860, at *1 (N.D. Cal. June 10, 2025).

- 10 -

Under Section 230, a claim should be dismissed if (1) the defendant is a "provider ... of an interactive computer service[;]" (2) the content at issue was "provided by another information content provider[;]" and (3) the plaintiff's claims treat the defendant as the "publisher or speaker" of that content. 47 U.S.C. § 230(c)(1). All three conditions are satisfied here.

### 1. Meta Is An Interactive Computer Service Provider

Courts have uniformly held that Meta, which provides interactive services like Facebook, is an interactive computer service provider. *See, e.g., Loomer v. Zuckerberg*, 2023 WL 6464133, at *12 (N.D. Cal. Sept. 30, 2023), *aff'd*, 2025 WL 927186 (9th Cir. Mar. 27, 2025) (Meta qualifies as an interactive computer service provider); *Fed. Agency of News LLC v. Facebook, Inc.* 432 F. Supp. 3d 1107, 1117 (N.D. Cal. 2020) ("Facebook is unquestionably an interactive computer service."). Accordingly, the first Section 230 requirement is satisfied.

### 2. The Content at Issue Was Provided by Plaintiff Himself, Not Meta

Section 230(c)(1)'s second requirement is also met because the content at issue was provided by an "information content provider" other than Meta— namely, by Plaintiff himself. *See* 47 U.S.C. § 230(c)(1). This inquiry is simple where, as here, Plaintiff "created the relevant content associated with his [online] account." *Mezey*, 2018 WL 5306769, at *1 (citing *Sikhs for Justice*

*"SFJ," Inc. v. Facebook, Inc.*, 697 Fed. Appx. 526, 526-27 (9th Cir. 2017) (creator of Facebook page is "information content provider" under the CDA)); *see also Roca Labs, Inc. v. Consumer Op. Corp.*, 140 F. Supp. 3d 1311, 1323 (M.D. Fla. 2015) (holding creator of post is the "information content provider" not the hosting website). Plaintiff's claims all stem from the alleged disablement of his Facebook account, and he does not allege Meta played a role in developing the content at issue. *See* FAC ¶¶ 29, 53. The second Section 230 requirement is satisfied.

### 3. The FAC Seeks to Hold Meta Liable for Its Purported Exercise of a Publisher's Traditional Editorial Function

Section 230(c)(1)'s final requirement is met because Plaintiff's claims all seek to treat Meta as a "publisher" of third-party content. Under Section 230(c)(1), a claim treats a defendant as a "publisher" if it seeks to hold the defendant liable for its purported exercise of traditional "editorial functions"—such as deciding "whether to publish, withdraw, postpone or alter content created by third parties." *Doe v. Fenix Int'l*, 2025 WL 336741, at *7 (S.D. Fla. Jan. 23, 2025) "What matters in this analysis 'is not the name of the cause of action,' but 'whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another.'" *Montano v. Wash. State Dep't of Health*, 2024 WL 309155, at *14 (S.D. Fla. May 28, 2024) (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-02 (9th Cir.

- 12 -

2009)); *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1095 (N.D. Cal. 2015), *aff'd* 697 F. App'x 526 (9th Cir. 2017) (holding that "removing content is something publishers do" and that Section 230 barred a discrimination claim).

Here, all of Plaintiff's claims arise out of Meta's alleged disablement of his Facebook account, which is "precisely the kind of activity for which [S]ection 230 was meant to provide immunity." *Fair Hous. Council of San Fernando Valley v. Roomates.com, LLC*, 521 F.3d 1157, 1170 (9th Cir. 2008); *see, e.g.*, FAC ¶¶ 53; 128 (alleging that "Plaintiff began marketing his RV repair business on Facebook" and that Meta "sever[ed] Plaintiff's access" to his account and that the "disablement cut of [plaintiff's] ability to purchase and run ads"). Courts have routinely dismissed claims, such as those here, premised on a defendant's decision to suspend or disable a user's account, restricting their ability to post content or otherwise access their account. *see, e.g., Castronuova*, 2025 WL 1914680, at *4 (collecting cases and dismissing discrimination claims predicated on Facebook account termination because account disablement was "protected publisher activity").

Accordingly, all three requirements of Section 230 are met. Plaintiff's claims should be dismissed in their entirety on this ground, as well.

### C. Each of Plaintiff's Claims Against Meta Also Fails as a Matter of Law

### 1. Plaintiff Fails to State a Claim Under 42 U.S.C. § 1981 (Counts I & II)

"To state a claim of race discrimination under § 1981, plaintiffs must allege facts establishing: (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute[]" relating to the right to make and enforce contracts. *Horton v. Beacon Woods E. Master Ass'n*, 2025 WL 3089014, at *5 (M.D. Fla. Nov. 5, 2025) (quoting *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1270 (11th Cir. 2004). Critically, § 1981 "can only be violated by purposeful discrimination[,]" so to survive a motion to dismiss, a plaintiff must plead facts sufficient to show intentional discrimination based on race. *Horton*, 2025 WL 3089014, at *5 (quoting *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982)). "[A] plaintiff may establish intentional racism directly or circumstantially." *Horton*, 2025 WL 3089014, at *5. But "unsupported conclusions of law or of mixed law and fact are not sufficient to withstand a dismissal under Rule 12(b)(6)." *Jackson*, 372 F.3d at 1271.

Plaintiff fails to sufficiently plead either § 1981 claim because he does not plead *any* facts that plausibly support his assertion that Meta disabled his Facebook account because of his race. To the contrary, Plaintiff alleges only that (i) when a Vendor Defendant upheld the account disablement, the

- 14 -

reviewer was able to see his profile picture and government-issued identification, and (ii) Meta restored accounts for a handful of white users flagged under the same policy. FAC ¶¶ 147-150.[4] That is insufficient to plead either direct or circumstantial intentional discrimination.

To start, Plaintiff does not attempt to plead—nor could he—direct racial discrimination. To state a claim for direct racial discrimination, a plaintiff must allege the overt invocation of race by the alleged discriminator—for instance, the use of a racial slur or racially charged language." *Horton,* 2025 WL 3089014, at *5. Plaintiff makes no such allegation and thus does not plead a claim for direct racial discrimination.

Nor does Plaintiff plead any facts that could support a plausible circumstantial case of racial discrimination. Where, like here, a plaintiff asserts a disparate impact theory by pointing to white "comparators" who were treated differently, the *McDonnell Douglas* burden shifting framework applies. *Lewis v. City of Union City, Georgia,* 918 F.3d 1213, 1217 (11th Cir. 2019) (en banc). "Under that framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination by proving, among other things, that []he was treated differently from another 'similarly situated'

---

[4] Elsewhere in the FAC Plaintiff attempts to fault Meta for commissioning a Civil Rights Audit and a survey where the results allegedly suggested that Meta's automated content moderation tools "could exacerbate racial inequities." FAC ¶ 92. At most, these allegations show that Meta was actively trying to detect and address potential racial inequalities.

individual—in court-speak, a 'comparator.'" *Id.* To survive a motion to dismiss, Plaintiff must plead facts—not "unsupported conclusions of law or of mixed law and fact"—sufficient to raise a plausible inference that "he was treated differently from comparators who were similarly situated to him *in all material respects.*" *Horton*, 2025 WL 3089014, at *6 (emphasis added) (citing *Jackon*, 372 F.3d at 1270-71).

The Eleventh Circuit is unequivocal that this is an exacting standard: "wholly unsupported charge[s]" that "defendants acted differently in cases not involving minority plaintiffs, even if it were supported by some specific facts or examples, is not sufficient to state a claim for racially motivated discrimination." *Jackson*, 372 F.3d at 1273. Rather, plaintiff must plead facts showing that the comparators are "similarly situated in all relevant respects besides race, since different treatment of dissimilarly situated persons does not violate the law." *Id.* (internal citations omitted). As such, courts in this District routinely dismiss complaints alleging discrimination "for failing to allege sufficient factual support for the comparators." *Horton*, 2025 WL 3089014, at *6 (collecting cases); *see also Mallory v. Gartner, Inc.*, 2021 WL 3857652, at *3 (M.D. Fla. Aug. 30, 2021) ("[Plaintiff] has not plausibly alleged that any similarly situated employees were treated differently.").

Here, like in *Jackson*, Plaintiff fails to identify a single similarly situated nonminority comparator that was treated differently. To the contrary, on the

face of the FAC, the alleged comparators are all differently situated. Plaintiff, for example, categorizes himself as a business owner, but his list of purported comparators includes no similarly situated Facebook users. *See* FAC at 17, ¶ 69. Instead, the alleged comparators are listed as one organization, two individuals, one content creator, and one artist. *Id.* The purported comparators' alleged violations are similarly all over the map. *Id.* The organization on the list, for example, allegedly received a CSE flag for posting a medical c-section video, and Plaintiff does not, and cannot, allege that his account was suspended for posting similar content. *Id.* Thus, far from being "similarly situated in all relevant respects beside race"—each appears differently situated from Plaintiff in all respects. *Jackson*, 372 F.3d at 1273. And thus, Plaintiff's conclusory allegations of intentional discrimination are "wholly unsupported by any specific factual averments," and his § 1981 claims should be dismissed. *Id.* at 1274.

### 2. Plaintiff Fails to State a Claim Under 42 U.S.C. § 1982 (Count III)

Plaintiff's § 1982 claim fails for the same reasons as his § 1981 claim—he fails to plead any facts that raise a plausible inference of intentional discrimination. Because both claims require proof of intentional discrimination, courts analyze claims of racial discrimination under § 1982 and §1981 under the same framework. *CBOCS West, Inc. v. Humphries*, 553 U.S.

442, 447 (2008). Here, Plaintiff's § 1982 claim is based on the same underlying conduct as his § 1981 claim—the alleged disablement of his account based on a CSE violation. *Compare* FAC ¶¶ 125-148 *with id.* ¶¶149-158. As explained, Plaintiff fails to plausibly allege intentional racial discrimination for his §1981 claim, and his § 1982 claim suffers the same defects and should similarly be dismissed. *See supra* at 14-17; *Horton,* 2025 WL 3089014, at *6 (dismissing § 1982 claim where plaintiff failed to plead "facts sufficient to show that the restrictions. . . were imposed on him because of his race").

### 3. Plaintiff Fails to State a Claim Under 42 U.S.C. § 1983 (Count IV)

Plaintiff's § 1983 claim fails because Meta is a private company, not a state actor. "To state a claim for relief in an action brought under § 1983, plaintiffs must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed **under color of state law.**" *Myers v. US Bank Nat'l Ass'n,* 2025 WL 305924, at *3 (M.D. Fla. Jan. 27, 2025) (emphasis added). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Id.* "The Eleventh Circuit has explained that 'only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes.'" *Woods v. Nat'l Ass'n of Realtors,* 2026 WL 445041, at *7 (M.D. Fla. Feb. 17, 2026). While the state action

- 18 -

doctrine can be complex, its application here is not. Here, Plaintiff argues that Meta can be treated as a state actor in connection with the alleged disablement of Plaintiff's account because (i) Meta allegedly reports some CSE violations to law enforcement and/or NCMEC and (ii) when it so reports, Meta is acting pursuant to a statutory requirement. *See* FAC ¶¶ 159-167. Not so.

Courts within the Eleventh Circuit analyze state action under the two-step framework in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982). *See, e.g., McDonough v. Porter*, 2019 U.S. Dist. LEXIS 165921, at \*2 (S.D. Fla. Sep. 25, 2019) (utilizing two-part *Lugar* framework to find plaintiff failed to plead state action). Under this framework, the first question is whether the alleged constitutional violation was "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." *Id.* (internal quotations omitted). If the first step is satisfied, the next question is whether "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Id.* (quoting *Lugar*, 457 U.S. at 937).

Here, Plaintiff's claim fails the first step: Meta "did not exercise a state-created right when it … suspended his account." *O'Handley v. Weber*, 62 F.4th 1145, 1156 (9th Cir. 2023); *see also McDonough*, 2019 U.S. Dist. LEXIS 165921, at \*4 (removing content from a Facebook pages "was not caused by the exercise of some right or privilege created by the state") (internal quotations omitted)

- 19 -

While this alone is fatal to his claim, Plaintiff also fails the second step.

Courts in the Eleventh Circuit apply three tests to determine whether a private company may fairly be said to be a state actor: "(1) the public function test, (2) the state compulsion test, and (3) the nexus test/joint action test." *Ridley v. Stewart*, 2008 U.S. Dist. LEXIS 32463, at *8-9 (M.D. Fla. Mar. 5, 2008) (quoting *Nat'l Broad. Co. v. Comm'ns Workers of Am.*, 860 F.2d 1022, 1026 (11th Cir. 1988)). Here, Plaintiff appears to base his claim on the state joint action and state compulsion tests, but he fails to adequately plead either.

Joint action exists only where the government has "so far insinuated itself into a position of interdependence with a private entity that [it] must be recognized as a joint participant in the challenged activity." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1278 (11th Cir. 2003); *Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 755-56 (9th Cir. 2024) (same). And "specificity" is required: "the plaintiff must 'plead in detail, through reference to material facts, the relationship or nature of the conspiracy' between the private person and the state actor." *Boles v. Riva*, 2013 WL 6388582, at *3 (M.D. Fla. Dec. 6, 2013) (quoting *Cox v. Mills*, 465 Fed. App'x 885, 887 (11th Cir. 2012)). "It is insufficient to 'merely string together discrete events, without showing support for a reasoned inference that the private and state actors agreed to violate the plaintiff's rights." *Id.*

Plaintiff does not plead any such interdependence or conspiracy. To the

- 20 -

contrary, Plaintiff alleges that Meta and the Vendor Defendants decide whether content violates the CSE policy and nowhere alleges government involvement in those decisions. FAC ¶¶ 82-85; *see Williams v. Google, LLC,* 2024 WL 5319216, at *3 (M.D. Ala. Nov. 26, 2024) (dismissing § 1983 claim where there were "no allegations in the complaint suggesting that Google acted jointly with the government...to take action against his YouTube channel"). Rather, Plaintiff's only allegation purporting to support "joint action" is that *if* "Meta submitted a [CyberTipline] report [for Plaintiff], NCMEC disseminated it to Florida law enforcement under § 2258A(g)(3), triggering state investigative processes and making [Meta] and state agencies joint actors." *Id.* ¶ 84; *see also id.* ¶ 162 (similar). Even crediting that hypothetical (and elsewhere contradicted)[5] allegation, it is well established that providing information to law enforcement is insufficient to establish joint action. *See Arline v. City of Jacksonville,* 359 F. Supp. 2d 1300, 1312-13 (M.D. Fla. 2005) ("This Court recognizes that merely alerting the authorities and providing information that may lead to an arrest is not sufficient to convert a private persons actions into public action."); *Rose v. Harris,* 2025 WL 1880311, at *13 (S.D. Fla. July 7, 2025) (reporting suspected child abuse did not satisfy the joint action test); *see also United States v. Rosenow,* 50 F.4th 715, 730, 733 (9th

---

[5] *See* FAC ¶ 8 ("Meta filed no CyberTipline report.")

Cir. 2022) ("Our caselaw is clear that a private actor does not become a government agent simply by complying with a mandatory reporting statute," and "the record establishes that" Facebook has "legitimate, independent motivations" for investigating and reporting CSE material on its platform).

Plaintiff does not fare any better under the state compulsion test. Contrary to Plaintiff's arguments, compliance with a statutorily mandated reporting regime cannot make a party a state actor for purposes of § 1983. *See Arline v. City of Jacksonville,* 359 F, Supp. 2d 1300, 1312-1313 (M.D. Fla. 2005) (rejecting argument that compliance with law mandating reporting of suspected child abuse is sufficient to demonstrate state compulsion). Notably, this district and the Ninth Circuit have both already recognized, for Fourth Amendment purposes, that an online service provider's compliance with the NCMEC reporting statute does not convert it into a state actor. *See United States v. Williamson,* 2023 WL 4056324, at *13 (M.D. Fla. Feb. 10, 2023) (holding Yahoo!'s compliance with mandatory reporting to NCMEC under 18 U.S.C. § 2258A did not transform it into a state actor); *Rosenow,* 50 F.4th at 730 (same as to Meta). Accordingly, Plaintiff fails to show that this is one of the "rare circumstances [where] a private party [can] be viewed as a 'state actor' for section 1983 purposes.'" *Woods,* 2026 WL 445041, at *7.

Plaintiff's § 1983 claim also fails for the separate and independent reason that he fails to plead a violation of the Equal Protection Clause. Like

- 22 -

his other statutory claims, claims under the Equal Protection Clause require a showing of discriminatory intent. *Sumrall v. Georgia Dep't of Corrections*, 154 F. 4th 1304, 1313 (11th Cir. 2025) (noting that "to make out an equal protection claim, a plaintiff must prove purposeful, intentional discrimination") (internal quotations omitted). Accordingly, Plaintiff's reliance on conclusory allegations of intentional racial discrimination is also fatal to establishing a claim under the Equal Protection Clause. *See supra* at 14-17.

### 4. Plaintiff Fails to State a Claim For Violation of 42 U.S.C.§ 1985(3) (Count V)

To state a claim under § 1985(3), Plaintiff must establish (1) defendants engaged in a conspiracy; (2) the conspiracy's purpose was to directly or indirectly deprive a protected person or class the equal protection of the laws, or equal privileges and immunities under the laws; (3) a conspirator committed an act to further the conspiracy; and (4) as a result, the plaintiff suffered injury to either his person or his property, or was deprived of a right or privilege of a citizen of the United States. *Johnson v. City of Fort Lauderdale*, 126 F.3d 1372, 1379 (11th Cir. 1997).

The constitutional rights that are enforceable under § 1985(3), however, are limited against private actors, like Meta. "The purpose of § 1985 was to stifle the serious class-based deprivation of constitutional rights by private parties, not to serve as a general federal tort law, and, as such, a claim under

- 23 -

Case 6:25-cv-00376-AGM-DCI Document 91-1 Filed 04/15/26 Page 194 of 350
Case 6:25-cv-00376-AGM-DCI Document 85 Filed 04/09/26 Page 25 of 28 PageID 662
PageID 1407

§ 1985(3) requires the proof of invidious discriminatory intent as well as the violation of a serious constitutional right protected not just from official, but also from private encroachment." *Trawinski v. United Techs.*, 313 F.3d 1295, 1299 (11th Cir. 2002). "The list of protected rights under § 1985(3) is short." *Id.* (citing *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68, 113 S. Ct. 753, 122 L. Ed. 2d 34 (1993)). Only "select 'serious constitutional right[s]'" are included. *Jimenez v. WellStar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010) (citing *Cook v. Randolph County*, 573 F.3d 1143, 1157 (11th Cir. 2009)). "[T]he Eleventh Circuit has stated '[t]he only rights the Supreme Court has expressly declared enforceable against private conspirators under § 1985(3) are the right to interstate travel and the right against involuntary servitude.'" *S. Fla. Muslim Fed'n Inc. v. Atrium TRS I LP*, 2025 U.S. Dist. LEXIS 89812, at *32 (S.D. Fla. May 12, 2025) (quoting *Jimenez*, 596 F.3d at 1312).

Critically, the Eleventh Circuit has explicitly recognized that "conspiracies to violate rights protected under § 1981 are...insufficient to form the basis of a § 1985(3)," and multiple courts within the Circuit have recognized that § 1982 claims are insufficient under the same rationale. *Jimenez*, 596 F.3d at 1312; *Horton*, 2025 WL 3089014, at *9 (dismissing § 1985(3) claim predicated on § 1982 holding "the [c]ourt cannot find, nor does [p]laintiff cite, any binding caselaw showing that a Section 1982 claim is cognizable under Section 1985(3)"); *Jones v. Scott Davis Chip Mill*, 2016 WL 3548810, at *5 (N.D.

- 24 -

Ala. June 30, 2016) (dismissing § 1985(3) claim predicated on alleged violations of § 1981 and § 1982 as non-actionable under *Jimenez*). Accordingly, since Plaintiff's 1985(3) claim is predicated solely on alleged violations of § 1981 and § 1982 (FAC ¶ 174), it is not actionable and must be dismissed.[6]

## V.  PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND

Leave to amend is inappropriate where amendment would be futile. *See In re Engle Cases*, 767 F.3d 1082, 1108-09 (11th Cir. 2014). Plaintiff has already amended once, and any additional attempt will be futile, including because this court lacks personal jurisdiction over Meta. Moreover, Plaintiff is challenging Meta's alleged decision to disable his account and so all his claims will be barred by Section 230(c)(1) no matter what additional facts he pleads. *See, e.g., Doe v. Kik Interactive,* 482 F. Supp. 3d 1242, 1252 (S.D. Fla. 2020) (denying leave to amend where plaintiff could not allege additional plausible facts to escape Section 230).

## VI.  CONCLUSION

For the foregoing reasons, Meta respectfully requests that the Court dismiss the FAC without leave to amend.

---

[6] Even if such claims were actionable under § 1985(3), they are still insufficiently pleaded because, as shown above, he fails to state a claim under the predicate statutes and because he fails to plead any non-conclusory allegations of the alleged conspiracy. *Jimenez*, 596 F.3d at 1312 (failure to plead predicate violation was a separate independent basis to dismiss the 1985(3) claim); *Roy v. Bd. of Cty. Comm'rs Walton Cty.*, 2007 WL 9736174, at *12 (N.D. Fla. Mar. 20, 2007) (conclusory allegations of conspiracy are insufficient to state a claim—plaintiff must make specific averments of an agreement that "must be supported by facts bearing out the existence of a conspiracy").

## Local Rule 3.01(g) Certification

Pursuant to Local Rule 3.01(g), on April 8, 2026, counsel for Meta contacted Plaintiff via email regarding this Motion to Transfer. As of the time of this filing, Plaintiff has not responded to the conferral email. Undersigned counsel will update this certification should Plaintiff respond to the conferral email.

Respectfully submitted,

Dated: April 9, 2026     ORRICK, HERRINGTON & SUTCLIFFE LLP

        By: /s/ *Diana Marie Fassbender*
          DIANA MARIE FASSBENDER (BN 17095)
          dszego@orrick.com
          2100 Pennsylvania Avenue NW
          Washington, D.C. 20037
          Telephone: (202) 339-8533
          Facsimile: (202) 339-8500

          *Attorneys for Defendant*
          *Meta Platforms, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2026, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system, and the foregoing

via Email and U.S. Mail to:

Marvelle J. Ballentine
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
jayballentine@protonmail.com
yglazman.litigation@protonmail.com

s/ *Diana Marie Fassbender*
DIANA MARIE FASSBENDER

# EXHIBIT E

Case 376, Dkt. 87: Meta Platforms, Inc.'s Motion to Transfer Venue under 28 U.S.C. § 1404(a) to the Northern District of California (filed April 9, 2026)

Case 6:26-cv-00376-ACM-DCI Document 91-1 Filed 04/15/26 Page 199 of 350
Case 6:26-cv-00376-ACM-DCI Document 87 Filed 04/09/26 Page 1 of 17 PageID 683
PageID 1412

## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA

MARVELLE J. "JAY" BALLENTINE

     Plaintiff,

     v.

META PLATFORMS, INC., ACCENTURE LLP; TASKUS, INC, and GENPACT USA, INC.,

     Defendants.

Case No 6:26-cv-376

## <u>DEFENDANT META PLATFORMS, INC.'S MOTION TO TRANSFER PLAINTIFF'S FIRST AMENDED COMPLAINT</u>

i

Defendant Meta Platforms, Inc. ("Meta") has moved to dismiss Plaintiff Marvelle J. "Jay" Ballentine's First Amended Complaint ("FAC") in its entirety. In the alternative, Meta hereby concurrently moves to transfer this action to the Northern District of California (the forum in which Plaintiff originally brought identical claims to those raised here) under 28 U.S.C. § 1404(a) pursuant to Meta's mandatory forum selection clause in the Meta Terms of Service ("Terms"), which Plaintiff concedes he agreed to in order to use the Facebook service.

## I.  RELEVANT BACKGROUND

### A. Procedural History

Plaintiff Marvelle J. "Jay" Ballentine's FAC asserts claims against Meta, Accenture, LLP ("Accenture"), TaskUs, Inc. ("TaskUs"), and Genpact USA, Inc. ("Genpact") alleging violations of 42 U.S.C. §§ 1981, 1982, 1983, 1985(3). *See* Dkt. No. 19. Plaintiff's factual allegations relating to Meta in this action mirror those he previously raised in a separate case against Meta and Accenture in the United States District Court for the Northern District of California, captioned *Ballentine v. Meta Platforms, Inc. et al,* No. 3:25-cv-7671 (the "California Action"). In the California Action, Meta filed a motion to dismiss Plaintiff's operative complaint, which was fully briefed and pending decision by the Court. *See* Dkt. No 41, *Ballentine v. Meta Platforms, Inc. et al,* No. 3:25-cv-7671 (N.D. Cal. Oct. 31, 2025). During the pendency of the California Action,

4129-7513-4566.9

Plaintiff also filed several requests seeking to advance the case to discovery, including a motion to advance the initial case management conference (Dkt. No. 20, *Ballentine v. Meta Platforms, Inc. et al*, No. 3:25-cv-7671 (N.D. Cal. Oct. 31, 2025)) and a motion for a discovery management scheduling directive seeking an order directing the parties to conduct a Rule 26(f) conference (Dkt. No. 36, *Ballentine v. Meta Platforms, Inc. et al*, No. 3:25-cv-7671 (N.D. Cal. Oct. 31, 2025)). The court in the California Action denied each of these requests. *See* Dkt. No. 1, Complaint ("Compl.") ¶ 9; *see also* Dkt. Nos. 32 and 47, *Ballentine v. Meta Platforms, Inc. et al*, No. 3:25-cv-7671 (N.D. Cal. Oct. 31, 2025).

Rather than await the Court's decision on Meta's Motion to Dismiss, Plaintiff chose to voluntarily dismiss the California Action and re-file his claims in this Court. *See* Dkt. No. 63 ("Notice of Voluntary Dismissal"), *Ballentine v. Meta Platforms, Inc. et al*, No. 3:25-cv-7671 (N.D. Cal. Feb. 13, 2026).

## B. **Plaintiff's Complaint**

In his FAC, Plaintiff alleges that he is a "Black individual" who "operated a mobile RV repair business in Florida." FAC ¶ 18. According to Plaintiff, in June 2022 he "began marketing his RV repair business on Facebook." *Id.* ¶ 53. Plaintiff contends that he first posted advertisements for his business between

- 2 -

June 27-30, 2022. *Id.* ¶ 56. Plaintiff alleges that his use of Facebook was governed by "Meta's terms and commercial service agreements." *Id.* ¶ 127.

Several days later, on July 4, 2022, Meta allegedly disabled Plaintiff's Facebook account, "invok[ing] its CSE policy." *Id.* ¶ 54. Plaintiff alleges that he appealed his disablement for the CSE violation, but a reviewer from Accenture, TaskUs, or Genpact (collectively, the "Vendor Defendants") affirmed the disablement after they received a copy of Plaintiff's U.S. passport, which included his photo. *Id.* ¶¶ 54-55.

Plaintiff also alleges that in 2022, when Meta allegedly disabled his account under its CSE policy, "Meta actioned approximately 105.9 million items under its [CSE] enforcement category[,]" including 92.2 million on Facebook alone. FAC ¶ 34. Plaintiff further alleges that out of 105.9 million actions, 8,100 were reversed on appeal through review, and five (5) of those reversals involved white Facebook users. *Id.* ¶¶ 67, 69-73.

Based on these allegations, Plaintiff summarily asserts that Meta disabled his account "because of Plaintiff's race," FAC ¶ 133, and brings claims under 42 U.S.C. § 1981, 42 U.S.C. § 1982, 42 U.S.C. § 1983, 42 U.S.C. § 1985(3).

## C. **Meta's Terms of Service**

Meta operates Facebook, a service that enables users to connect, share, discover, and communicate with friends, and communities on mobile devices

and personal companies. As Plaintiff acknowledges, Meta's relationship with users of the Facebook service is governed by the Terms, to which all users must agree in order to create a Facebook account. *See* Decl. of Jennifer Allen ("Allen Decl."), Ex. A at 1, ¶3; FAC ¶ 127. Section 4.4 of the Terms contains a mandatory forum selection clause, providing that any litigation arising out of an individual's use of the Facebook service must be brought in the Northern District of California or a state court located in San Mateo County and will be governed by California law. The Terms in effect at the time of Plaintiff's alleged account termination provide:

> For any claim, cause of action or dispute, you have against us that arises out of relates to these Terms or the Meta Products . . . you agree that it will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County. You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim and that the laws of the State of California will govern these Terms and any claim, without regard to conflict of law provisions.

Allen Decl., Ex. A at § 4.4.

The Terms incorporate the Meta Commercial Terms of Service (the "Commercial Terms") which apply "to access or use of the Meta Products. . . for a business or commercial purpose." Allen Decl., Ex. B; Allen Decl., Ex. A at § 5. In turn, the Commercial Terms in place at the time Meta allegedly disabled Plaintiff's account contain a similar forum selection clause providing that "any claim, cause of action or dispute that arises out of relates to any access or use

- 4 -

of the Meta products for business or commercial purposes. . . not subject to arbitration . . . must be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County." Allen Decl., Ex. B at § 5(b)-(c). The Commercial Terms further provide that all claims "will be governed by California law." *Id.* at §5(c)(ii).

## II.   ARGUMENT

Having agreed to Meta's Terms and Commercial Terms as a condition for using Facebook, Plaintiff is subject to the mandatory forum selection clauses contained therein. Whether a forum selection clause is enforced is determined pursuant to the analysis governing motions to transfer under 28 U.S.C. § 1404(a). *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013) ("Section 1404(a) therefore provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district."). When a forum selection clause is present, courts no longer must consider the private interest factors under the usual § 1404(a) analysis. *St. Francis Holdings, LLC v. Pawnee Leasing Corp.*, No. 20-cv-1101-T-02AAS, 2020 WL 6746329, at *2 (M.D. Fla. Nov. 17, 2020); *MoistTech Corp. v. Sensortech Sys., Inc.*, No. 15-cv-0043, 2015 WL 3952341, at *8 (M.D. Fla. June 26, 2015) ("all private interests are expressed in the forum-selection clause, which would weigh in support of transfer" (citation omitted)).

Where there is a valid and enforceable forum selection clause, like that applicable here, a court should transfer the case to the specified forum absent "extraordinary circumstances unrelated to the convenience of the parties." *Id.* at 62; *Alexander v. Charter Commc'ns, Inc.*, No. 20-cv-1127-T-35JSS, 2020 WL 12656395, at *1 (M.D. Fla. Dec. 18, 2020) ("forum selection clauses are presumptively valid and enforceable" (citation omitted)). Moreover, the party opposing enforcement of the forum selection clause, "bears the burden of showing exceptional circumstances." *See e.g., McArthur v. Kerzner Int'l Bah. Ltd.*, 607 F. App'x. 845, 847 (11th Cir. 2015). Here, Meta's forum selection clauses are mandatory and encompass Plaintiff's claims, and there are no grounds why the forum selection clauses should not be enforced.

## A. Meta's Forum Selection Clauses Are Mandatory and Apply to Plaintiff's Claims

Meta's forum selection clauses are mandatory and apply to Plaintiff's claims. As an initial matter, when analyzing a forum selection clause, the Court "[m]ust determine whether the clause is mandatory or permissive." *See e.g., Arthrex, Inc. v. Orthogen Aktiengesellschaft*, No. 05-cv-121-FtM-33DNF, 2006 WL 8438756, at *3-4 (M.D. Fla. May 10, 2006). Forum selection clauses are mandatory when they "dictate[] an exclusive forum for litigation under the contract." *Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1330 (11th Cir. 2011) (citation omitted). Use of mandatory terms like "must" or "any" indicates

that the clause is mandatory. *See Exceptional Urgent Care Ctr., Inc. v. Protomed Medical Mgmt., Corp.*, No. 08-cv-284-Oc-10GRJ, 2009 WL 2151181, at *9 (M.D. Fla. July 13, 2009) ("Mandatory forum selection clauses must be clear, unequivocal and contain language of exclusivity." (citation omitted)); *MoistTech Corp.*, 2015 WL 3952341, at *6 ("Use of the word 'shall' is most reasonably interpreted to mandate venue." (internal citation omitted)); *Blue Ocean Int'l Bank LLC v. Golden Eagle Cap. Advisors, Inc.*, 408 F. Supp. 3d 57, 65 (D.P.R. 2019); *see also Don't Tread On Us, LLC v. Twitter, Inc.*, No. 23-cv-20943, 2023 WL 7277183, at *3 (S.D. Fla. May 19, 2023) ("The use of 'all' and 'solely' clearly demonstrate the forum-selection clause is mandatory." (citation omitted)). And forum selection clauses that contain words like "aris[es] out of" are construed "to broadly cover 'all causes of action arising directly or indirectly from the business relationship evidenced by the contract.'" *Don't Tread On Us, LLC*, 2023 WL 7277183, at *4 (citation omitted).

Here, under the Terms, the forum selection clause is mandatory: "***any*** claim, cause of action, or dispute that arises out of or relates to these Terms or the Meta Products [] ***will*** be resolved ***exclusively*** in the U.S. District Court for the Northern District of California or a state court located in San Mateo County." Allen Decl., Ex. A at § 4.4 (emphasis added). The forum selection clause in the Commercial Terms is similar, providing that "***any*** claim, cause of action or dispute that arises out of relates to any access or use of the Meta

products for business or commercial purposes. . . not subject to arbitration . . . *must* be resolved *exclusively* in the U.S. District Court for the Northern District of California or a state court located in San Mato County." Allen Decl., Ex. B at § 5(b)-(c). The forum selection clause also plainly encompasses the allegations of Plaintiff's FAC, which all arise from the alleged disablement of his Facebook account. *See e.g.,* FAC ¶¶ 128-133 (alleging that Meta "severed Plaintiff's access to his Meta for Business and Facebook Account"); *see also Dean v. Meta Platforms, Inc.,* No. 8:24-cv-2242, Dkt. No. 55 at 5 ("Order Granting Motion to Transfer") (M.D. Fla. Oct. 28, 2025) (finding that claims were subject to the forum selection clause and noting that "many cases arising out of Meta's moderation of users' content on its platform have been transferred pursuant to the forum selection clause"); *Loomer v. Facebook, Inc.,* No. 19-cv-80893, 2020 WL 2926357, at *3 (S.D. Fla. Apr. 13, 2020) (finding the terms of nearly identical forum selection clause to be "broad").

Accordingly, the forum selection clauses are mandatory, and encompass the conduct alleged by Plaintiff.

## B. The Forum Selection Clauses Are Valid and Enforceable and the Public Interest Factors Do Not Weigh Against Transfer

Under 28 U.S.C. § 1404(a), district courts may transfer civil actions to another district to which the parties have consented. When there is a valid forum selection clause in an agreement between the parties, they are to "be

given controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co.*, 571 U.S. at 59-60; *see also Dean,* No. 8:24-cv-2242, Dkt. No. 55 at 5-6 (enforcing forum selection clause in Meta's Terms of Service and Commercial Terms, finding that the clause "governs this lawsuit and mandates transfer to the NDCA"); *McCarthy v. Meta Platforms, Inc.*, No. 24-cv-14322, 2025 WL 3755430, at *1-2 (S.D. Fla. Jan. 27, 2025) (transferring case to the Northern District of California based on forum selection clause in Meta's Terms of Service); *Borrero v. Meta Platforms, Inc.,* No. 8:25-cv-2469, Dkt. No. 6 ("Order Granting Motion to Transfer Case") (M.D. Fla. Nov. 12, 2025) (same); *Loomer,* 2020 WL 2926357, at *2 (same). And, conversely, a plaintiff's choice of forum is given no weight in the presence of a valid forum selection clause. *Alexander,* 2020 WL 12656395, at *1. "Forum-selection clauses are presumptively valid and enforceable unless the plaintiff makes a strong showing that enforcement would be unfair or unreasonable under the circumstances." *Loomer,* 2020 WL 2926357, at *2 (cleaned up and quoting *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009)); *see also GDG Acquisitions, LLC v. Gov't of Belize,* 749 F.3d 1024, 1028 (11th Cir. 2014) ("an enforceable forum-selection clause carries near-determinative weight").

A forum selection clause must be enforced unless "(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day

in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Krenkel*, 579 F.3d at 1281. It is a plaintiff's burden to "show[] why the court should not transfer the case to the forum to which the parties agreed." *Atl. Marine*, 571 U.S. at 63-64. Here, Plaintiff has not, and cannot, allege any facts demonstrating the forum selection clause should not be enforced.

*First,* the forum selection clause was not the product of fraud or overreaching. The clause was contained in the Terms, which Plaintiff consented to upon creating a Facebook account. *See* Allen  Decl. ¶ 3; FAC ¶ 127 (alleging that Meta "formed and enforced contracts with Plaintiff, including" an "account governed by Meta's terms"). There are no allegations in the Complaint that Plaintiff's agreement to the forum selection clause was induced by fraud or overreaching. Courts routinely enforce the forum selection clause in Meta's Terms.[1] *See, e.g., Dean*, No. 8:24-cv-2242, Dkt. No. 55 at 5-6 (enforcing forum selection clause in Meta's Terms of Service and Commercial Terms); *Borrero,* No. 8:25-cv-2469, Dkt. No. 6 (enforcing Meta's forum selection clause); *Loomer*, 2020 WL 2926357, at *3 (listing cases); *Franklin v. Facebook Inc.*, No. 1:15-cv-00655-LMM, 2015 WL 7755670, at *2 (N.D. Ga. Nov. 24, 2015)

---

[1] As explained above, the forum selection clause of the Meta Terms and the Commercial Terms are nearly identical.

(enforcing forum selection clause); *Miller v. Facebook, Inc.*, No. 1:09-cv-2810-RLV, 2010 WL 9525523, at *1 (N.D. Ga. Jan. 15, 2010) (enforcing forum selection clause); *see also Thomas v. Facebook, Inc.*, No. 118-cv-00856-LJO-BAM, 2018 WL 3915585, at *4 (E.D. Cal. Aug. 15, 2018) ("[T]he Court is not aware of any case concluding that the forum selection clause in Facebook's [Terms of Service] is invalid." (listing cases)).

*Second*, enforcement of the forum selection clause would not deprive Plaintiff of his day in court, as the action would simply be transferred to the Northern District of California. To the extent Plaintiff asserts that litigating in California is burdensome, this is undercut by the fact that Plaintiff previously filed a case containing substantially similar allegations in the Northern District of California and extensively litigated the case over a period of "five months and sixty-two docket entries." Compl. ¶ 9. In any event, even if litigation in California were burdensome for Plaintiff, this is not a sufficient basis to set aside a forum selection clause. *See, e.g., P&S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) ("The financial difficulty that a party might have in litigating in the selected forum is not a sufficient ground by itself for refusal to enforce a valid forum selection clause."); *MoistTech Corp.*, 2015 WL 3952341, at *5 ("Any potential financial difficulty that a party may have in litigating in the selected forum is not a sufficient ground standing alone to prevent enforcement of a valid forum-selection

- 11 -

clause."). Moreover, "any inconvenience the plaintiff[] would suffer by being forced to litigate in [California] was foreseeable at the time of contracting." *Rucker v. Oasis Legal Fin., L.L.C.,* 632 F.3d 1231, 1237 (11th Cir. 2011).

*Third,* Plaintiff brings claims under federal civil rights statutes, 42 U.S.C. §§ 1981, 1982, 1983, 1985(3), and Plaintiff can (indeed, already has) seek the same relief in the Northern District of California. *See, e.g., Evans v. Absolute Results,* No. 21-cv-280, 2021 WL 3621691, at *3 (S.D.N.Y. Aug. 16, 2021) (enforcing forum selection clause as to 42 U.S.C. § 1981 claim, noting "prosecution of this action in Delaware federal court will not result in the application of fundamentally unfair law").

*Fourth,* enforcing the forum selection clause here will not undermine public policy. To the contrary, "striking [Meta's] forum selection clause could wreak havoc on the entire social-networking internet industry," because "the company could face litigation in every state in this country and in nations around the globe which would have potential adverse consequences for the users of Facebook's social-networking site and for other internet companies." *Miller,* 2010 WL 9525523, at *1.

Moreover, since Meta's principal place of business is based in the Northern District of California, venue in that district is appropriate because of the "strong interest in deciding controversies involving Facebook at home and the familiarity of its judges with applying California law." *Kidstar v. Facebook,*

- 12 -

*Inc.*, No. 2:18-cv-13558, 2020 WL 4382279, at *5 (D.N.J. July 31, 2020). And to

the extent Plaintiff argues he should be entitled to choose the forum where he

brings his action, the Supreme Court has stressed that, when there is a valid

forum selection clause, "the plaintiff's choice of forum merits no weight";

rather, "the interest of justice" is served by holding parties to their

contractually-bargained for forum. *Atl. Marine*, 571 U.S. at 63, 66. Indeed, by

previously bringing substantially similar claims in that district, Plaintiff

himself recognized the Northern District of California is an appropriate venue

for his claims.

Lastly, while the Court can consider the public interest factors, "[t]hose

factors will rarely defeat a transfer motion." *Atl. Marine*, 571 U.S. at 51.[2] And,

in any event, Plaintiff cannot show that the public interest factors weigh

against transfer, particularly since the Northern District of California is an

adequate forum to hear this dispute. Because Meta's principal place of business

is in California, transfer to the Northern District of California "would not

burden citizens of an unrelated forum because that District has an interest in

the case." *MoistTech Corp.*, 2015 WL 3952341, at *9. For the same reason,

---

[2] "Public-interest factors include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.'" *MoistTech Corp.*, 2015 WL 3952341, at *9.

there is no localized interest that must be decided in Florida. And as discussed above, the Terms provide for the application of California law. *St. Francis Holdings, LLC*, 2020 WL 6746329, at *4 ("The pre-selected forum is therefore at home with the applicable law, which weighs in favor of transfer.").

The forum selection clauses are, therefore, valid and enforceable, and no exceptional circumstances exist that would weigh against transfer. *Alexander*, 2020 WL 12656395, at *1 ("There is no dispute that the Parties have agreed to a valid forum selection clause, and Plaintiffs fail to prove the existence of extraordinary circumstances sufficient to convince the Court that the case should not be transferred.")

## III.   CONCLUSION

For these reasons, in the alternative to dismissal, Meta respectfully requests that the Court transfer this action to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

### Local Rule 3.01(g) Certification

Pursuant to Local Rule 3.01(g), on April 8, 2026, counsel for Meta contacted Plaintiff via email regarding this Motion to Transfer. As of the time of this filing, Plaintiff has not responded to the conferral email. Undersigned counsel will update this certification should Plaintiff respond to the conferral email.

Respectfully submitted,

- 14 -

Dated: April 9, 2026        ORRICK, HERRINGTON & SUTCLIFFE LLP

                         By:     */s/ Diana Marie Fassbender*
                                DIANA MARIE FASSBENDER (BN 17095)
                                dszego@orrick.com
                                2100 Pennsylvania Avenue NW
                                Washington, D.C. 20037
                                Telephone: (202) 339-8533
                                Facsimile: (202) 339-8500

                                *Attorneys for Defendant*
                                *Meta Platforms, Inc.*

- 15 -

# CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2026, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system, and the foregoing

via Email and U.S. Mail to:

Marvelle J. Ballentine
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
jayballentine@protonmail.com
yglazman.litigation@protonmail.com

s/ *Diana Marie Fassbender*
DIANA MARIE FASSBENDER

# EXHIBIT F

Case 376, Dkt. 60: Time-Sensitive Petition for Administrative
Reassignment under 28 U.S.C. § 137, addressed to
Chief Judge Marcia Morales Howard (filed April 2, 2026)

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

**MARVELLE J. BALLENTINE,**
　　　Plaintiff,

v.

**META PLATFORMS, INC.,** *et al.,*

　　　Defendants.

Case No. 6:26-cv-00376-AGM-DCI
Case No. 6:26-cv-00286-AGM-DCI
Case No. 5:26-cv-00213-AGM-PRL

## TIME-SENSITIVE PETITION FOR ADMINISTRATIVE REASSIGNMENT

**TO:** The Honorable Marcia Morales Howard, Chief United States District Judge

This petition is designated time-sensitive under Local Rule 3.01(e).

Defendant Accenture LLP was served with interrogatories on March 10–11, 2026,

in the state court proceeding before removal. Responses are due April 10, 2026. A

videotaped organizational deposition of Accenture LLP is noticed for April 17,

2026. These obligations carried into federal court under 28 U.S.C. § 1450, which

provides that all state court orders and discovery "shall be held to be binding"

after removal. Accenture's own Notice of Removal attaches exhibits

acknowledging service of the discovery package. Case No. 213, Dkt. 1. On April 1,

2026, Case No. 213 was sua sponte transferred to Judge Moe. No scheduling

order has been entered. No case management conference has been set. The Case

1

Management Report is not due until May 4, 2026. Without judicial action before April 10, no enforcement mechanism exists for discovery obligations that are currently running. Plaintiff has incurred costs arranging the April 17 deposition. Plaintiff respectfully requests that the Chief Judge consider this petition by April 9, 2026.

1.    Plaintiff petitions the Chief Judge to exercise her authority under 28 U.S.C. § 137 to reassign the above-captioned cases. Plaintiff does not seek recusal under 28 U.S.C. § 455 and makes no allegation of bias.

## CASES AND COMMON PARTIES

1.    Case No. 376 and Case No. 286 are assigned to District Judge Anne-Leigh Gaylord Moe and Magistrate Judge Daniel C. Irick. Case No. 213 was originally assigned to District Judge Jordan Emery Pratt and Magistrate Judge Philip R. Lammens in the Ocala Division. On April 1, 2026, Judge Pratt sua sponte transferred Case 213 to Judge Moe under Local Rule 1.07(a). Case 213, Dkt. 18, 19. All three cases are now before Judge Moe.

2.    All three cases arise from the same conduct: Facebooks' foreclosure of Plaintiff's right to make and modify contracts on July 4, 2022 under a Child Sexual Exploitation policy designation. Defendant Accenture LLP appears in two of the three cases. Kirkland & Ellis LLP represents Accenture in both cases in which Accenture LLP appears.

2

## PROCEDURAL RECORD

1.      On March 30, 2026, the Court struck Plaintiff's timely oppositions to two dispositive motions in Case No. 376 for "failure to comply with Local Rule 3.01(c)" without identifying the deficiency. Dkt. 56; Dkt. 57. The orders imposed a seven-day cure deadline. Local Rule 3.01(d) provides twenty-one days. Plaintiff filed early. The cure period imposed was **shorter** than the original response period.

2.      The orders warned that failure to comply "may result in the imposition of sanctions including, but not limited to, the dismissal of this action." Dkt. 56; Dkt. 57.

3.      On March 23, 2026, the Court struck a defendant's disclosure statement and identified the deficiency: "failure to comply with Local Rule 3.03, which requires the use of the standard form from the Clerk or the Court's website." Dkt. 47. No cure deadline was imposed. No unopposed-treatment warning was issued. No sanctions language was quoted.

4.      Kirkland & Ellis has filed certificates of service in Cases 376 and 286 certifying CM/ECF transmission to "all unrepresented parties." Plaintiff is not a registered CM/ECF user. Fed. R. Civ. P. 5(b)(2)(E) permits electronic service only on registered users or persons who have consented in writing. The docket does not reflect service on Plaintiff by any authorized means. The Court has taken no action.

5.      Orrick, Herrington & Sutcliffe LLP filed a motion and notice in Case 376 with no certificates of service. Dkt. 31; Dkt. 38. The Court granted relief on Dkt. 31 the following day. The docket does not reflect service on Plaintiff. The Court has taken no action.

6.      On March 23, 2026, Magistrate Judge Norway recused in Case 376. Dkt. 45. The case was reassigned to Magistrate Judge Irick, who was already assigned to Case No. 286 before the same district judge. Dkt. 46. The continued validity of three orders entered by Magistrate Judge Norway prior to recusal has not been reviewed.

7.      On April 3, 2026, Plaintiff filed a motion in Case No. 376 preserving nineteen issues for appellate review. Each issue is documented with docket citations and grounded in Fed. R. Civ. P. 83(a)(2), Fed. R. Civ. P. 5, Local Rule 3.01, 28 U.S.C. § 455, and the Fifth and Fourteenth Amendments. The motion is attached as Exhibit A.

## AUTHORITY

1.      Under 28 U.S.C. § 137, the Chief Judge "shall be responsible for the observance of such rules and orders, and shall divide the business and assign the cases."

4

## REQUEST

1.      Plaintiff requests that the Chief Judge reassign Case Nos. 376, 286, and 213 through the district's standard random assignment process, with no overlap of district judges or magistrate judges among the three cases.

2.      Plaintiff seeks symmetric application of the Local Rules, specific identification of any deficiencies, uniform enforcement of service requirements, and procedural treatment consistent with that afforded to defendants.

### Local Rule 3.01(g) Certification

This petition is directed to the Chief Judge's administrative and supervisory authority under 28 U.S.C. § 137. It does not seek relief against any party and is not subject to the conferral requirement of Local Rule 3.01(g).

Dated: April 1, 2026

Marvelle J. Ballentine
*Plaintiff, pro se*
7862 W. Irlo Bronson Memorial Hwy
#82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com

5

## <u>EXHIBITS</u>

**Exhibit A:** Plaintiff's Urgent Motion for Recusal and to Identify Deficiency, Toll

Cure Period, and Clarify Service, Case No. 6:26-cv-00376-AGM-DCI (as filed),

with Tables C through G

6

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 2, 2026, I filed the foregoing with the Clerk of Court. All counsel of record are registered CM/ECF users and will be served electronically through the Court's CM/ECF system upon docketing.

Marvelle J. Ballentine

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MARVELLE J. BALLENTINE,

    *Plaintiff,*

        v.                       Case No. 6:26-cv-00376-AGM-DCI

META PLATFORMS, INC., ACCENTURE LLP,
GENPACT LIMITED, and TASKUS, INC.,

    *Defendants.*

## PLAINTIFF'S URGENT MOTION FOR RECUSAL AND TO IDENTIFY DEFICIENCY, TOLL CURE PERIOD, AND CLARIFY SERVICE

### BASIS FOR EXPEDITED CONSIDERATION

This motion requires resolution before April 6, 2026. The Court's orders at Dkt. 56 and Dkt. 57 direct Plaintiff to file compliant responses by that date but do not identify the deficiency Plaintiff must cure. Unless the Court identifies the deficiency before the cure deadline, Plaintiff cannot comply — and noncompliance will result in two dispositive motions proceeding as unopposed. The relief requested in this motion is a precondition to the compliance the Court's own orders require.

**STATEMENT OF ISSUE TO BE DECIDED**

Whether this district court may enforce an unspecified local-rule form defect to delete timely *pro se* oppositions, compress the cure period below the original response deadline, and threaten unopposed treatment — where proper service of the underlying motion never occurred and the Court knows the Plaintiff receives notice exclusively by U.S. mail — consistent with Fed. R. Civ. P. 83(a)(2); whether the imposition of compressed deadlines on the *pro se* Plaintiff that systematically align with defense deadlines and produce defense-favorable procedural outcomes reflects conduct consistent with the impartial administration of justice; and whether the cumulative procedural record requires recusal under 28 U.S.C. § 455(a).

**PRIOR PROCEEDINGS: NORTHERN DISTRICT OF CALIFORNIA**

On February 17, 2026, Plaintiff filed a Request for Judicial Notice of proceedings in the Northern District of California, Case No. 3:25-cv-07671-CRB. Dkt. 4. The Court has taken no action on that request. The following summary is derived from the official docket of that case and from Exhibit A to Dkt. 4.

Case No. 3:25-cv-07671-CRB was filed on September 9, 2025 and involved two of the defendants in the present action — Meta Platforms, Inc. and Accenture LLP — and claims arising from the same underlying conduct. The case was pending for more than five months. During that period, no Rule 26(f) conference was held, discovery never opened, and the Case Management Conference was vacated and never reset. Every procedural request made by Plaintiff was denied. Every procedural request made by Defendants was granted. Plaintiff voluntarily dismissed the NDCA action on February 13, 2026 and filed the present action on February 17, 2026.

2

## PROCEDURAL RECORD: THIS CASE

1.    On February 17, 2026, Plaintiff filed his Complaint. Dkt. 1.

2.    On February 18, 2026, Plaintiff filed a Motion for Leave to Serve Limited Early Discovery. Dkt. 7.

3.    On February 25, 2026, Magistrate Judge Norway denied Plaintiff's Motion for Leave to Serve Limited Early Discovery. Dkt. 18.

4.    On March 4, 2026, Plaintiff filed his Amended Complaint. Dkt. 19.

5.    On March 11, 2026, Judge Moe entered a notice directing the parties to read and comply with the Local Rules. Dkt. 23. The notice stated: "Failure to comply with ANY Local Rules or Court Orders may result in the imposition of sanctions including, but not limited to, the dismissal of this action or entry of default without further notice."

6.    On March 12, 2026, Judge Moe entered a standing order requiring disclosure of third-party litigation funding. Dkt. 25. Plaintiff filed his certification on March 16, 2026. Dkt. 26. The filing was two pages. Plaintiff was afforded approximately ten days.

7.    On March 18, 2026, Defendant Accenture LLP filed a Notice of Appearance (Dkt. 27) and a Motion to Dismiss (Dkt. 29). The certificate of service on Accenture's Motion states: "I HEREBY CERTIFY that on March 18, 2026, I electronically filed the foregoing through Middle District of Florida's CM/ECF System, which will send a copy to all unrepresented parties and counsel of record." Dkt. 29 at 24.

8.    Plaintiff is not registered for CM/ECF. The docket does not reflect service of Accenture's Motion on Plaintiff by any means other than the CM/ECF certification described in the preceding paragraph.

3

Case 6:26-cv-00376-AGM-DCI    Document 91-1    Filed 04/15/26    Page 227 of 350
Case 6:26-cv-00376-AGM-DCI    Document 30-1:40 Filed 04/02/26    Page 5 of 27 PageID
406

9.    On March 19, 2026, Defendant Genpact Limited filed a Motion for Extension of Time to respond to the Amended Complaint. Dkt. 31. The docket does not reflect conferral with Plaintiff before filing. The docket does not reflect a certificate of service for Dkt. 31.

10.    On March 20, 2026, Magistrate Judge Norway granted Genpact's Motion for Extension of Time. Dkt. 33. The order extended Genpact's response deadline to April 22, 2026. The order imposed a conferral requirement on all parties with a sanctions warning. The docket does not reflect that Plaintiff was consulted before the extension was granted. The motion on which the Court acted (Dkt. 31) was not accompanied by a certificate of service reflecting service on Plaintiff by any means.

11.    On March 20, 2026, Magistrate Judge Norway granted Devin S. Anderson's motion to appear pro hac vice on behalf of Accenture. Dkt. 32. Anderson is a named individual defendant in Plaintiff's related case, No. 6:26-cv-00286-AGM-DCI.

12.    On March 20, 2026, Plaintiff filed his Opposition to Accenture's Motion to Dismiss. Dkt. 40. Under Local Rule 3.01(d), if service of Accenture's Motion had been properly effected on March 18, 2026, the response deadline would have been April 8, 2026. Plaintiff filed nineteen days before that deadline.

13.    On March 23, 2026, Magistrate Judge Norway entered an order of recusal. Dkt. 45. Between February 25 and March 23, 2026, Magistrate Judge Norway entered three orders in this case: Dkt. 18 (February 25, 2026), Dkt. 32 (March 20, 2026), and Dkt. 33 (March 20, 2026).

14.    On March 23, 2026, this case was reassigned to Magistrate Judge Daniel C. Irick. Dkt. 46. Magistrate Judge Irick was already presiding over Plaintiff's related case, No. 6:26-cv-00286-AGM-DCI, before the same district judge.

4

Case 6:26-cv-00376-AGM-DCI    Document 91-1    Filed 04/15/26    Page 228 of 350
Case 6:26-cv-00376-AGM-DCI    Document 60-1141 Filed 04/02/26    Page 6 of 27 PageID
407

15.     On March 23, 2026, Judge Moe entered an endorsed order striking Defendant TaskUs's Disclosure Statement (Dkt. 37) for failure to comply with Local Rule 3.03. Dkt. 47. The order identified the specific deficiency: "which requires the use of the standard form from the Clerk or the Court's website." The order did not impose a cure deadline. The order did not threaten unopposed treatment. The order did not quote the warning language from Dkt. 23. At the time Dkt. 47 was entered, the docket reflected multiple filings by Kirkland & Ellis LLP with certificates of service certifying CM/ECF transmission to a pro se plaintiff who is not a registered CM/ECF user. The docket also reflected two filings by Orrick, Herrington & Sutcliffe LLP on behalf of Genpact (Dkt. 31 and Dkt. 38) with no certificates of service filed at all. The Court addressed none of these deficiencies.

16.     On March 23, 2026, Defendant TaskUs, Inc. filed a Motion to Dismiss. Dkt. 48. Under Local Rule 3.01(d), the response deadline was April 13, 2026.

17.     On March 24, 2026, Magistrate Judge Irick denied Plaintiff's Motion for Scheduling Directive Regarding Rule 26(f) Conference and Case Management Report. Dkt. 50. This was Magistrate Judge Irick's first substantive action in this case following reassignment. The scheduling directive had documented that Magistrate Judge Norway's grant of Genpact's extension (Dkt. 33) was entered without conferral, eliminating Plaintiff's ability to negotiate concessions during the conferral process. The docket does not reflect that any judicial officer has reviewed the continued validity of the three orders entered by Magistrate Judge Norway prior to his recusal.

Two magistrate judges have presided over this case. Each denied a motion seeking access to discovery as his first substantive action following assignment. The identical scheduling directive filed in the related case, No. 6:26-cv-00286-AGM-DCI, before the same magistrate judge, has not been ruled on.

Case 6:26-cv-00376-AGM-DCI    Document 91-1    Filed 04/15/26    Page 229 of 350
Case 6:26-cv-00376-AGM-DCI    Document 60-1442 Filed 04/02/26    Page 7 of 27 PageID
408

## Table C: Discovery-Access Rulings

| Dkt. | Date | Magistrate Judge | Plaintiff's Filing | Ruling | First Substantive Action After Assignment | Identical Motion in Case No. 286 |
|---|---|---|---|---|---|---|
| 18 | Feb. 25, 2026 | Norway | Motion for Leave to Serve Limited Early Discovery (Dkt. 7) | Denied | Yes | N/A |
| 50 | Mar. 24, 2026 | Irick | Motion for Scheduling Directive re Rule 26(f) Conference (Dkt. 39) | Denied | Yes | Pending; no ruling as of March 31, 2026 |

18.    On March 27, 2026, Plaintiff filed his Opposition to TaskUs's Motion to Dismiss. Dkt. 53. Plaintiff filed seventeen days before the April 13 deadline.

19.    On March 30, 2026, the Court struck Plaintiff's Opposition to Accenture's Motion (Dkt. 40) for "failure to comply with Local Rule 3.01(c)." Dkt. 56. The order did not identify the deficiency. The order directed Plaintiff to file a compliant response on or before April 6, 2026. The order stated that failure to file a compliant response by that date "may result in the 29 Motion to Dismiss being treated as unopposed." The order quoted the warning language from Dkt. 23: "Failure to comply with ANY Local Rules or Court Orders may result in the imposition of

Case 6:26-cv-00376-AGM-DCI   Document 91-1   Filed 04/15/26   Page 230 of 350
Case 6:26-cv-00376-AGM-DCI   Document 60-1 43   Filed 04/02/26   Page 8 of 27 PageID
409

sanctions including, but not limited to, the dismissal of this action or entry of default without further notice."

20.   On March 30, 2026, the Court struck Plaintiff's Opposition to TaskUs's Motion (Dkt. 53) for "failure to comply with Local Rule 3.01(c)." Dkt. 57. The order did not identify the deficiency. The order imposed the same April 6, 2026 cure deadline. The order quoted the same warning language from Dkt. 23.

21.   The April 6, 2026 cure deadline provides seven days from the date of the orders. Plaintiff's original response period under Local Rule 3.01(d) was twenty-one days from service. For Accenture's Motion (Dkt. 29), the cure deadline is two days shorter than the original response period. For TaskUs's Motion (Dkt. 48), the cure deadline is seven days shorter than the original response period. Plaintiff filed both oppositions early. Plaintiff's early filing resulted in a cure period shorter than the time originally available to respond.

22.   Plaintiff is not a registered CM/ECF user. The Court is aware of this. Every docket entry made by the Court in this case has been transmitted to Plaintiff by U.S. mail. The Court's own mailing practice confirms its knowledge that Plaintiff does not receive electronic notice of court orders.

23.   U.S. mail transmission from the Middle District of Florida to Plaintiff's address takes approximately three days. The orders at Dkt. 56 and Dkt. 57 were entered on March 30, 2026. If transmitted by U.S. mail on the date of entry, Plaintiff would have received them on or about April 2, 2026. The April 6 cure deadline affords approximately four days from receipt — not seven days from entry.

24.   Fed. R. Civ. P. 6(d) adds three days to any period measured from service under Rule 5(b)(2)(C) (mail). Rule 6(d) governs party-to-party service, not court orders. The policy it reflects — that the Federal Rules account for mail transmission time when a deadline is triggered by a mailed document — is directly applicable here.

7

Case 6:26-cv-00376-AGM-DCI   Document 91-1   Filed 04/15/26   Page 231 of 350
Case 6:26-cv-00376-AGM-DCI   Document 60-144 Filed 04/02/26   Page 9 of 27 PageID
410

The Court imposed a deadline triggered by its own order, transmitted by the same method (U.S. mail) that Rule 6(d) addresses, without accounting for the transmission time that the Federal Rules recognize. The effective cure period — approximately four days — is shorter than the seven days stated in the orders and substantially shorter than the twenty-one days Local Rule 3.01(d) provides.

25. Under Fed. R. Civ. P. 15(a)(3), Meta's deadline to respond to the Amended Complaint in this case is April 9, 2026. The April 6 cure deadline resolves Plaintiff's procedural posture — whether the oppositions are restored, refiled, or treated as forfeited — three days before Meta must commit to its response. In Case No. 286, Magistrate Judge Irick's seven-day SAC order (Case No. 286, Dkt. 18) imposed a deadline that coincided with the defense response deadline and mooted the defense's pending obligation. In both instances, compressed deadlines imposed exclusively on the *pro se* Plaintiff interacted with defense deadlines in ways that produced defense-favorable procedural outcomes.

## COMPARATIVE RECORD: CASE NO. 6:26-cv-00286-AGM-DCI

Case No. 6:26-cv-00286-AGM-DCI is a related action before the same district judge (Judge Moe) and the same magistrate judge (Magistrate Judge Irick). The same pro se Plaintiff is a party in both cases.

On February 18, 2026, Judge Moe entered a standing order in Case No. 286 requiring disclosure of third-party litigation funding. Case No. 286, Dkt. 21. Plaintiff was afforded approximately ten days. The filing was two pages.

On February 25, 2026, Magistrate Judge Irick entered an order in Case No. 286 directing Plaintiff to file a Second Amended Complaint on or before March 4, 2026. Case No. 286, Dkt. 18. The order required that the Second Amended Complaint identify all defendants and the citizenship of all remaining parties, include all claims,

8

Case 6:26-cv-00376-AGM-DCI    Document 91-1    Filed 04/15/26    Page 232 of 350
Case 6:26-cv-00376-AGM-DCI    Document 60-1445 Filed 04/02/26    Page 10 of 27 PageID
411

allegations, and parties, and not reference or incorporate any prior pleading. The order provided seven days.

On March 20, 2026, Plaintiff filed his Opposition to the Anderson/Keegan Motion to Dismiss in Case No. 286. Case No. 286, Dkt. 29. That opposition has not been stricken.

**SUA SPONTE CONSOLIDATION: CASE NO. 5:26-cv-00213-AGM-PRL**

On March 25, 2026, Accenture removed Case 213 to the Ocala Division. Dkt. 1. The case was assigned to Judge Jordan Emery Pratt. Dkt. 5. Plaintiff filed a motion to transfer to the Orlando Division (Dkt. 9), then withdrew it (Dkt. 15). The court denied the withdrawn motion as moot (Dkt. 17). On April 1, 2026, Judge Pratt sua sponte transferred Case 213 to Judge Moe under Local Rule 1.07(a). Dkt. 18, 19. All three cases are now before Judge Moe.

On March 30, 2026, Magistrate Judge Irick entered orders in the present case directing Plaintiff to refile two oppositions to dispositive motions on or before April 6, 2026. Dkt. 56, Dkt. 57. The orders provided seven days. The orders did not identify the deficiency.

The following table presents the deadlines imposed on the same pro se Plaintiff by the same judicial officers across both related cases.

**Table D: Deadlines Imposed on Plaintiff Across Related Cases**

|  | 286 Lit. Funding (Moe) | 376 Lit. Funding (Moe) | 286 SAC (Irick) | 376 Opp. Acc. MTD (Irick) | 376 Opp. TaskUs MTD (Irick) |
|---|---|---|---|---|---|
| **Filing Required** | 2-page certificatio n | 2-page certificatio n | Complete complaint — all claims, all | Opposition to dispositive motion — | Opposition to dispositive motion — |

9

Case 6:26-cv-00376-AGM-DCI   Document 91-1   Filed 04/15/26   Page 233 of 350
Case 6:26-cv-00376-AGM-DCI   Document 60-1446 Filed 04/02/26   Page 11 of 27 PageID
412

|  |  |  | parties, no incorporation | cure unspecified deficiency | cure unspecified deficiency |
|---|---|---|---|---|---|
| **Days Afforded** | ~10 | ~10 | 7 | 7 | 7 |
| **Standard Period** | N/A | N/A | Court-ordered | 21 days | 21 days |
| **Deficiency Specified** | N/A | N/A | Yes | No | No |
| **Judge** | Moe | Moe | Irick | Irick | Irick |

### SERVICE RECORD: DEFENSE COUNSEL

Three law firms represent defendants. Two have not complied with the service requirements of Fed. R. Civ. P. 5:

Kirkland & Ellis LLP (Accenture): Every certificate of service certifies CM/ECF transmission. Plaintiff is not a registered CM/ECF user and has not consented to electronic service. The docket does not reflect service by any authorized means.

Orrick, Herrington & Sutcliffe LLP (Genpact): No certificate of service filed for Dkt. 31 or Dkt. 38. The Court granted relief on Dkt. 31 the day after filing without any indication Plaintiff was served.

Ogletree Deakins (TaskUs): The docket reflects compliance with service requirements.

The deficiencies are documented in Table E. The Court has not addressed service noncompliance by either noncompliant firm. The Court struck Plaintiff's filings for an unspecified deficiency.

### COMPREHENSIVE DEFICIENCY RECORD

10

Case 6:26-cv-00376-AGM-DCI    Document 91-1    Filed 04/15/26    Page 234 of 350
Case 6:26-cv-00376-AGM-DCI    Document 60-1447 Filed 04/02/26    Page 12 of 27 PageID
413

The following table identifies every filing on the docket with an identifiable

procedural deficiency and the Court's action or inaction on each.

### Table E: Filing Deficiencies — Court Action Taken and Not Taken

| Dkt. | Filed By | Filing | Deficiency | Court Action | Judicial Officer |
|---|---|---|---|---|---|
| 27 | Kirkland & Ellis (Accenture) | Notice of Appearance | Certificate of service certifies CM/ECF to non-registered pro se Plaintiff | None | Moe (docket supervision) |
| 29 | Kirkland & Ellis (Accenture) | Motion to Dismiss | Certificate of service certifies CM/ECF to non-registered pro se Plaintiff; service not effected under Rule 5(b)(2)(E) or Local Rule 1.02(b) | None | Moe / Norway |
| 30 | Kirkland & Ellis (Accenture) | Motion to Appear Pro Hac Vice | Certificate of service certifies CM/ECF to non-registered pro se Plaintiff | None; motion granted (Dkt. 32) | Norway |
| 31 | Orrick (Genpact) | Motion for Extension of Time | No certificate of service filed; Fed. R. Civ. P. 5(a)(1) requires service; Fed. R. Civ. P. 5(d) requires certificate | None; relief granted next day (Dkt. 33) | Norway |
| 37 | Ogletree Deakins (TaskUs) | Disclosure Statement | Wrong form under Local Rule 3.03 | Stricken (Dkt. 47); deficiency identified; no cure | Moe |

11

Case 6:26-cv-00376-AGM-DCI Document 91-1 Filed 04/15/26 Page 235 of 350
Case 6:26-cv-00376-AGM-DCI Document 60-1 Filed 04/02/26 Page 13 of 27 PageID 1448
414

| | | | | deadline; no sanctions threat; no dismissal warning | |
|---|---|---|---|---|---|
| 38 | Orrick (Genpact ) | Notice of Lead Counsel Designation | No certificate of service filed | None | Moe / Irick |
| 40 | Plaintiff | Opposition to Accenture MTD | "Failure to comply with Local Rule 3.01(c)" — deficiency unspecified | Stricken and deleted (Dkt. 56); 7-day cure deadline; unopposed treatment threatened; Dkt. 23 dismissal warning quoted | Irick |
| 53 | Plaintiff | Opposition to TaskUs MTD | "Failure to comply with Local Rule 3.01(c)" — deficiency unspecified | Stricken and deleted (Dkt. 57); 7-day cure deadline; unopposed treatment threatened; Dkt. 23 dismissal warning quoted | Irick |
| 54 | Kirkland & Ellis (Accentu re) | Motion for Leave to File Reply | Directed to a filing (Dkt. 40) that was stricken on the same date | Denied as moot (Dkt. 56); no deficiency noted regarding service certificate | Irick |

Case 6:26-cv-00376-AGM-DCI    Document 91-1    Filed 04/15/26    Page 236 of 350
Case 6:26-cv-00376-AGM-DCI    Document 60-14 Filed 04/02/26    Page 14 of 27 PageID
415

Nine filings on the docket contain identifiable procedural deficiencies. Seven are defense filings. Two are Plaintiff's filings. Of the seven defense filings, one received corrective action with precise identification of the defect, no cure deadline, and no sanctions threat (Dkt. 47). Six received no action. Of the two Plaintiff filings, both were stricken, deleted, given compressed cure deadlines, threatened with unopposed treatment, and quoted the Dkt. 23 dismissal warning.

### APPLICABLE LAW

### I.    Fed. R. Civ. P. 83(a)(2)

Rule 83(a)(2) provides: "A local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply."

Local Rule 3.01(c) imposes requirements of form. The orders at Dkt. 56 and Dkt. 57 do not identify which requirement Plaintiff failed to satisfy.

A litigant cannot willfully violate a requirement he cannot identify. The orders do not identify the specific defect. Any noncompliance was nonwillful.

Enforcement through deletion of timely oppositions, compression of the cure period below the original response deadline, and threatened unopposed treatment would cause Plaintiff to lose the right to oppose two dispositive motions. Rule 83(a)(2) prohibits this result.

### II.    Fed. R. Civ. P. 5(b)(2)(E) and Local Rule 1.02(b)

Rule 5(b)(2)(E) permits electronic service only on registered CM/ECF users or persons who have consented in writing. Plaintiff is neither. Local Rule 1.02(b) requires service on non-CM/ECF parties by mail. The service deficiencies are documented in Table E. Local Rule 3.01(d) measures the response period from service. If service was not effected, the response period has not commenced.

13

Case 6:26-cv-00376-AGM-DCI    Document 91-1    Filed 04/15/26    Page 237 of 350
Case 6:26-cv-00376-AGM-DCI    Document 60-1450 Filed 04/02/26    Page 15 of 27 PageID
416

### III.    Fed. R. Civ. P. 6(d) and the Mail-Delay Principle

Rule 6(d) adds three days to deadlines triggered by mail service, reflecting federal policy that mail transmission time must be accounted for. The Court transmits orders to Plaintiff by U.S. mail. A cure deadline measured from entry, without mail-delay adjustment, imposes an effective deadline shorter than stated. The effective four-day cure period documented in ¶¶ 23-24 is inconsistent with due process.

### IV.    Local Rule 3.01(d)

Local Rule 3.01(d) provides twenty-one days to respond. The cure deadlines imposed by Dkt. 56 and Dkt. 57 are shorter than the original response periods. The deadline math is set forth in ¶ 21.

### V. 28 U.S.C. § 455(a)

Section 455(a) provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

The standard is objective. Recusal is required where a reasonable person, knowing all the circumstances, would harbor doubts about the judge's impartiality. *Liteky v. United States*, 510 U.S. 540, 548 (1994). The inquiry is not whether the judge is actually biased. The inquiry is whether the cumulative procedural record would cause a reasonable observer to question impartiality.

The procedural record relevant to this inquiry is set forth in Tables C through G and the chronological docket history presented in this motion. No single ruling compels recusal. The aggregate is the relevant inquiry under § 455(a).

### ASYMMETRIC ENFORCEMENT

#### Table F: Enforcement Disparity

14

Case 6:26-cv-00376-AGM-DCI    Document 91-1    Filed 04/15/26    Page 238 of 350
Case 6:26-cv-00376-AGM-DCI    Document 60-1451Filed 04/02/26    Page 16 of 27 PageID
417

|  | Def. TaskUs (Dkt. 37) | Plaintiff (Dkt. 40) | Plaintiff (Dkt. 53) |
|---|---|---|---|
| **Filing** | Disclosure Statement | Opp. to Accenture MTD | Opp. to TaskUs MTD |
| **Rule Cited** | Local Rule 3.03 | Local Rule 3.01(c) | Local Rule 3.01(c) |
| **Deficiency Identified** | Yes — "which requires the use of the standard form from the Clerk or the Court's website" | No | No |
| **Cure Deadline** | None imposed | April 6, 2026 (7 days) | April 6, 2026 (7 days) |
| **Unopposed Treatment Threatened** | No | Yes | Yes |
| **Dismissal Warning Quoted (Dkt. 23)** | No | Yes | Yes |
| **Order** | Dkt. 47 | Dkt. 56 | Dkt. 57 |

The warning language from Dkt. 23 was entered by Judge Moe. It has been quoted to Plaintiff in Dkt. 56 and Dkt. 57. The docket does not reflect that this warning language has been directed to any defendant in this case or in the related case, No. 6:26-cv-00286-AGM-DCI.

On March 23, 2026, Magistrate Judge Norway entered an order of recusal (Dkt. 45) and the case was reassigned to Magistrate Judge Irick (Dkt. 46). On the same date, Judge Moe entered an endorsed order striking one defense filing (Dkt. 47). The following table presents the docket activity on that date.

15

Case 6:26-cv-00376-AGM-DCI    Document 91-1    Filed 04/15/26    Page 239 of 350
Case 6:26-cv-00376-AGM-DCI    Document 50-1452 Filed 04/02/26    Page 17 of 27 PageID
418

**Table G: Docket Activity — March 23, 2026**

| D kt. | Judicial Officer | Action |
|---|---|---|
| 45 | Norway | Order of recusal |
| 46 | Clerk | Reassignment to Magistrate Judge Irick |
| 47 | Moe | Struck TaskUs disclosure (Dkt. 37); identified deficiency ("which requires the use of the standard form from the Clerk or the Court's website"); no cure deadline; no sanctions threat; no dismissal warning |
| 48 | | TaskUs Filed Motion to Dismiss |

At the time Dkt. 47 was entered, the docket reflected six defense filings with identifiable deficiencies: three Kirkland & Ellis filings with certificates of service certifying CM/ECF transmission to a non-registered pro se party (Dkt. 27, 29, 30) and two Orrick filings with no certificates of service (Dkt. 31, 38), one of which formed the basis for a court order imposing obligations on all parties (Dkt. 33). The Court addressed one defense deficiency — a disclosure statement filed on the wrong form. The Court did not address any deficiency affecting service on the pro se Plaintiff.

Two of three defense firms in this case have failed to comply with the service requirements of Fed. R. Civ. P. 5. One filed certificates of service certifying a method of service that does not reach the pro se Plaintiff. One filed no certificates of service at all. The Court has not stricken, deleted, or otherwise addressed any defense filing for these deficiencies.

In the related case, Plaintiff's Opposition to the Anderson/Keegan Motion to Dismiss (Case No. 286, Dkt. 29) was filed on March 20, 2026 — the same date as the

16

Case 6:26-cv-00376-AGM-DCI    Document 91-1    Filed 04/15/26    Page 240 of 350
Case 6:26-cv-00376-AGM-DCI    Document 60-1453 Filed 04/02/26    Page 18 of 27 PageID
419

Opposition stricken in this case (Dkt. 40). That opposition was filed by the same Plaintiff, before the same magistrate judge. It has not been stricken.

## STATEMENT OF PRESERVED APPELLATE ISSUES

Plaintiff preserves the following issues for review by the United States Court of Appeals for the Eleventh Circuit and any subsequent proceeding. Each issue is supported by the procedural record established in this motion and on the docket of this case and the related case, No. 6:26-cv-00286-AGM-DCI.

**Issue 1.**    Whether the Court's deletion of Plaintiff's timely oppositions to two dispositive motions for unspecified "failure to comply with Local Rule 3.01(c)" — without identifying the deficiency — violates Fed. R. Civ. P. 83(a)(2), which prohibits enforcement of a local rule imposing a requirement of form in a way that causes a party to lose any right because of a nonwillful failure to comply. Dkt. 56; Dkt. 57.

**Issue 2.**    Whether *a pro se litigant's* noncompliance with a local rule can be deemed willful when the Court's orders do not identify the specific requirement the litigant failed to satisfy. Dkt. 56; Dkt. 57.

**Issue 3.**    Whether the imposition of a seven-day cure period — shorter than the twenty-one-day response period provided by Local Rule 3.01(d) — on a litigant who filed early is consistent with due process and the Federal Rules. Dkt. 56; Dkt. 57; Local Rule 3.01(d).

**Issue 4.**    Whether a motion to dismiss may be treated as unopposed when the movant's certificate of service certifies CM/ECF transmission to a pro se party who is not a registered CM/ECF user, has not consented in writing to electronic service, and has not been served by any other means reflected on the docket. Dkt. 29 at 24; Fed. R. Civ. P. 5(b)(2)(E); Local Rule 1.02(b).

17

Case 6:26-cv-00376-AGM-DCI    Document 91-1    Filed 04/15/26    Page 241 of 350
Case 6:26-cv-00376-AGM-DCI    Document 60-1454 Filed 04/02/26    Page 19 of 27 PageID
420

**Issue 5.**    Whether the same magistrate judge's imposition of seven-day deadlines on the same pro se plaintiff in two related cases — seven days to draft a complete complaint in Case No. 286 (Case No. 286, Dkt. 18) and seven days to refile two oppositions to dispositive motions in the present case (Dkt. 56, Dkt. 57) — reflects a pattern of timeline compression inconsistent with the Federal Rules and Local Rules.

**Issue 6.**    Whether asymmetric enforcement of Local Rules — providing a defendant precise identification of its filing deficiency with no cure deadline, no unopposed-treatment threat, and no dismissal warning (Dkt. 47), while providing the pro se plaintiff no identification of his filing deficiency with a compressed cure deadline, unopposed-treatment threat, and dismissal warning (Dkt. 56, Dkt. 57) — is consistent with the equal administration of justice. U.S. Const. amends. V, XIV.

**Issue 7.**    Whether the docket reflects that dismissal-warning language from Dkt. 23 has been directed exclusively to the pro se plaintiff and never to any defendant in this case or the related case, No. 6:26-cv-00286-AGM-DCI.

**Issue 8.**    Whether the failure of two of three defense firms to comply with the service requirements of Fed. R. Civ. P. 5 — one filing certificates certifying CM/ECF transmission to a non-registered pro se plaintiff (Kirkland & Ellis LLP), and one filing no certificates of service at all (Orrick, Herrington & Sutcliffe LLP) — and the Court's silence on both, while striking Plaintiff's filings for an unspecified deficiency, constitutes asymmetric enforcement.

**Issue 9.**    Whether the continued validity of orders entered by Magistrate Judge Norway prior to his recusal (Dkt. 45) — including the grant of a defense extension without conferral with Plaintiff (Dkt. 33) — based on a motion (Dkt. 31) for which no certificate of service was filed and which the docket does not

18

reflect was served on Plaintiff by any means — which eliminated Plaintiff's ability to negotiate concessions — is consistent with the requirements of 28 U.S.C. § 455 and due process.

**Issue 10.** Whether the reassignment of this case to the magistrate judge already presiding over Plaintiff's related case before the same district judge (Dkt. 46), following the prior magistrate judge's recusal, is consistent with the requirements of impartial adjudication.

**Issue 11.** Whether the cumulative procedural record in this case — in which every contested procedural matter has been resolved adversely to Plaintiff — raises a question regarding the impartial administration of justice. U.S. Const. amends. V, XIV.

**Issue 12.** Whether due process permits a court to grant relief on a motion (Dkt. 31) — extending a defendant's response deadline and imposing conferral obligations on all parties (Dkt. 33) — when the docket does not reflect a certificate of service for the motion, does not reflect service on the opposing party by any means, and the opposing party was afforded no notice or opportunity to oppose the relief before it was granted. U.S. Const. amends. V, XIV; Fed. R. Civ. P. 5(a)(1), 5(d).

**Issue 13.** Whether the cumulative procedural record set forth in Tables C through G — in which every defense filing deficiency was either ignored or corrected without sanction, and every Plaintiff filing deficiency was met with deletion, compressed cure deadlines, unopposed-treatment threats, and dismissal warnings — requires recusal of the district judge under 28 U.S.C. § 455(a).

**Issue 14.** Whether the cumulative procedural record set forth in this motion — in which every contested procedural matter has been resolved adversely to

19

Case 6:26-cv-00376-AGM-DCI    Document 91-1    Filed 04/15/26    Page 243 of 350
Case 6:26-cv-00376-AGM-DCI    Document 60-1456Filed 04/02/26    Page 21 of 27 PageID
422

Plaintiff, timely oppositions were stricken without identification of the deficiency, and the cure period was compressed below the original response deadline — requires recusal of the magistrate judge under 28 U.S.C. § 455(a).

**Issue 15.**    Whether the denial of Plaintiff's discovery-access motions by two successive magistrate judges — each as the magistrate judge's first substantive action in this case — while an identical motion remains pending without ruling in the related case before the same magistrate judge, reflects a pattern of foreclosing discovery inconsistent with the Federal Rules and due process. Dkt. 18; Dkt. 50; Case No. 6:26-cv-00286-AGM-DCI.

**Issue 16.**    Whether a seven-day cure period measured from the date of entry — imposed on a *pro se* plaintiff whom the Court knows receives orders exclusively by U.S. mail, as demonstrated by the Court's own practice of mailing every docket entry to Plaintiff — provides constitutionally adequate notice and opportunity to comply, where U.S. mail transmission reduces the effective cure period to approximately four days, and where Fed. R. Civ. P. 6(d) reflects a federal policy of accounting for mail transmission time when deadlines are triggered by service under Rule 5(b)(2)(C). U.S. Const. amends. V, XIV; Fed. R. Civ. P. 6(d).

**Issue 17.**    Whether the imposition of compressed seven-day deadlines on the *pro se* Plaintiff that systematically interact with defense deadlines — seven days to file a Second Amended Complaint in Case No. 286, coinciding with the defense response deadline and mooting the defense's pending obligation (Case No. 286, Dkt. 18); and seven days to cure unspecified deficiencies in Case No. 376, resolving Plaintiff's procedural posture three days before Meta's response deadline under Fed. R. Civ. P. 15(a)(3) (Dkt. 56; Dkt. 57) — reflects a pattern of compressed deadlines imposed exclusively on the *pro se* Plaintiff that produce

Case 6:26-cv-00376-AGM-DCI    Document 91-1    Filed 04/15/26    Page 244 of 350
Case 6:26-cv-00376-AGM-DCI    Docu~~Page6D-145~~7Filed 04/02/26    Page 22 of 27 PageID
423

defense-favorable procedural outcomes inconsistent with the impartial administration of justice. U.S. Const. amends. V, XIV; 28 U.S.C. § 455(a).

**Issue 18.**    Whether the cumulative pattern of judicial conduct documented in this motion — asymmetric enforcement of procedural requirements, unidentified deficiencies, compressed deadlines calibrated to defense timelines, silence on defense service failures, and timeline compression imposed on a plaintiff the Court knows receives notice exclusively by U.S. mail — constitutes judicial coercion of a *pro se* litigant inconsistent with the due process guarantees of the Fifth and Fourteenth Amendments and the impartial administration of justice required by 28 U.S.C. § 455(a).

**Issue 19.**    Whether the sua sponte transfer of Case No. 5:26-cv-00213-AGM-PRL from the Ocala Division to Judge Moe — after Plaintiff withdrew his transfer motion and the court denied it as moot — consolidating all three cases before the district judge whose conduct is documented herein, two days after the March 30 orders, is consistent with impartial administration of justice. Case 213, Dkt. 15, 17, 18, 19; 28 U.S.C. § 455(a).

These issues are preserved regardless of the Court's disposition of this motion. A ruling granting the relief requested will resolve certain issues on the merits. A ruling denying the relief requested, or the absence of a ruling, will preserve all issues for appellate review upon entry of a final order.

Plaintiff is a pro se litigant proceeding without resources comparable to those available to the defendants in this action. Plaintiff has complied with every deadline imposed by this Court. Plaintiff has met every filing obligation. Plaintiff has conferred when required to confer. Plaintiff has served when required to serve. Plaintiff has not

Case 6:26-cv-00376-AGM-DCI Document 91-1 Filed 04/15/26 Page 245 of 350
Case 6:26-cv-00376-AGM-DCI Document 10-1458 Filed 04/02/26 Page 23 of 27 PageID
424

sought disqualification of opposing counsel, notwithstanding a procedural record that would support such relief. Plaintiff has pursued his claims through orderly process at every stage — in the Northern District of California, in this Court, and in related proceedings before this Court. The procedural record is what it is. Plaintiff did not create it. Plaintiff has documented it. That record now requires Plaintiff to ask whether the judicial officers presiding over this case can administer it impartially. Plaintiff makes that request under 28 U.S.C. § 455(a), on the basis of the cumulative procedural record set forth in this motion, and with the same confidence in orderly process that has governed his conduct throughout these proceedings. Should this matter require further proceedings beyond this Court, Plaintiff is prepared to continue for as long as the process requires. Plaintiff's commitment to these claims is not contingent on the convenience of any party or the pace of any docket. It is grounded in an unshakable confidence that the federal judiciary — across every level of review to which a litigant is entitled — will administer justice impartially when presented with a complete record. With that confidence, Plaintiff continues to proceed, *pro se*.[1]

---

[1] Government cannot make us equal; it can only recognize, respect, and protect us as equal before the law." *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 240 (1995) (Thomas, J., concurring in part and concurring in the judgment). "The Framers ensured that judges would decide cases according to the rule of law, and not of men." Clarence Thomas, Assoc. Justice, Supreme Court of the United States, Address Before the Federalist Society, National Lawyers Convention (Nov. 12, 1999). "In my humble opinion, those who come to engage in debates of consequence, and who challenge accepted wisdom, should expect to be treated badly. Nonetheless, they must stand undaunted. That is required. And that should be expected. For it is **bravery** that is required to secure freedom." Clarence Thomas, Assoc. Justice, Supreme Court of the United States, Address Before the National Bar Association, Memphis, Tennessee (July 28, 1998).

**RELIEF REQUESTED**

The procedural record requires the following:

A.    The Court shall identify the specific Local Rule 3.01(c) deficiency in Plaintiff's Oppositions (Dkt. 40 and Dkt. 53) so that Plaintiff may cure the deficiency.

B.    The cure period shall be tolled until the Court identifies the deficiency. Upon identification, Plaintiff shall be afforded twenty-one days to file compliant responses — the same period Local Rule 3.01(d) provides for the original response.

C.    Any deadline imposed on Plaintiff by this Court shall account for the time required for U.S. mail transmission from the Court to Plaintiff's address, consistent with the policy reflected in Fed. R. Civ. P. 6(d). Deadlines measured from the date of order entry, without adjustment for mail transmission, deprive Plaintiff of the effective compliance period stated in the order.

D.    The Court shall determine whether service of Accenture's Motion to Dismiss (Dkt. 29) was effected consistent with Fed. R. Civ. P. 5(b)(2)(E) and Local Rule 1.02(b). If service was not effected, Accenture shall be directed to serve the Motion by means authorized under Rule 5 before any response deadline commences.

E.    The Court shall determine whether Genpact's Motion for Extension of Time (Dkt. 31) was served on Plaintiff consistent with Fed. R. Civ. P. 5(a)(1) and 5(d). The docket does not reflect a certificate of service for Dkt. 31 or for Genpact's Notice of Lead Counsel Designation (Dkt. 38). If service was not effected, the Court shall determine the continued validity of the order granting the relief requested in that motion (Dkt. 33).

F.    The district judge shall determine whether recusal is required under 28 U.S.C. § 455(a) in light of the procedural record set forth in this motion, including the

Case 6:26-cv-00376-AGM-DCI    Document 91-1    Filed 04/15/26    Page 247 of 350
Case 6:26-cv-00376-AGM-DCI    Document 60-1460 Filed 04/02/26    Page 25 of 27 PageID
426

selective enforcement documented in Tables E, F, and G, and the exclusive direction of the Dkt. 23 warning language to the pro se Plaintiff.

G.      The magistrate judge shall determine whether recusal is required under 28 U.S.C. § 455(a) in light of the procedural record set forth in this motion, including the deletion of Plaintiff's timely oppositions without identification of the deficiency, the compression of the cure period below the original response deadline, and the resolution of every contested procedural matter adversely to Plaintiff.

H.      Upon a determination that recusal is required, the Court shall direct the Clerk to reassign this case, the related case No. 6:26-cv-00286-AGM-DCI, and Case No. 5:26-cv-00213-AGM-PRL, through the district's standard random assignment process, with no overlap of judicial officers among the three cases.

I.      Such other relief as is consistent with the procedural record and applicable law.

Dated: April 1, 2026                                     Respectfully submitted,


                                                          Marvelle J. Ballentine
                                                          Plaintiff, *pro se*
                                        7862 W. Irlo Bronson Memorial Hwy #82
                                                          Kissimmee, FL 34747
                                                          (407) 794-6503
                                                          jayballentine@protonmail.com

24

Case 6:26-cv-00376-AGM-DCI     Document 91-1     Filed 04/15/26     Page 248 of 350
Case 6:26-cv-00376-AGM-DCI     Document 60-1461 Filed 04/02/26     Page 26 of 27 PageID
427

## LOCAL RULE 3.01(g) CERTIFICATION

On April 1, 2026, Plaintiff contacted counsel for Accenture, TaskUs, and Genpact regarding the relief requested in this motion and requested a response the same day. No substantive conferral was completed before filing. Plaintiff files this motion in light of the Court's April 6, 2026 deadline and will promptly supplement this certification after completing the conferral process required by Local Rule 3.01(g)(3).

Dated: April 1, 2026                                                    Respectfully submitted,

Marvelle J. Ballentine
Plaintiff, *pro se*
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com

Case 6:26-cv-00376-AGM-DCI     Document 91-1     Filed 04/15/26     Page 249 of 350
Case 6:26-cv-00376-AGM-DCI     Document 60-1462 Filed 04/02/26     Page 27 of 27 PageID
428

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 2, 2026, I filed the foregoing with the Clerk

of Court. All counsel of record are registered CM/ECF users and will be served

electronically through the Court's CM/ECF system upon docketing.


Marvelle J. Ballentine

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

In re Complaint of Judicial Misconduct

Against: The Honorable Anne-Leigh Gaylord Moe, United States District Judge, Middle District of Florida; and The Honorable Daniel C. Irick, United States Magistrate Judge, Middle District of Florida

## COMPLAINT OF JUDICIAL MISCONDUCT
### Under 28 U.S.C. § 351(a)

### I. COMPLAINANT AND STATUTORY STANDARD

1.      Marvelle J. Ballentine, proceeding pro se, files this complaint under 28 U.S.C. § 351(a). Complainant is a party in three related civil actions in the Middle District of Florida: Case No. 6:26-cv-00376-AGM-DCI, Case No. 6:26-cv-00286-AGM-DCI, and Case No. 5:26-cv-00213-JEP-PRL. Cases 376 and 286 are assigned to Judge Moe and Magistrate Judge Irick. All three cases arise from Facebooks' foreclosure of Plaintiff's right to make and modify contracts on July 4, 2022 under a Child Sexual Exploitation policy designation.

2.      This complaint does not challenge the correctness of any ruling. It identifies a pattern of court administration — repeated across two related cases, by two judicial officers, directed exclusively at one party — in which the mechanism of time compression forfeited the pro se plaintiff's procedural rights while producing collateral procedural benefits for the opposing parties. The full docket-documented record is set forth in the motion attached as Exhibit A, including Tables C through G.

### II. THE PATTERN: TIME COMPRESSION AND RIGHTS FORFEITURE

3.      Each instance follows the same structure: the court imposed a compressed deadline exclusively on the pro se plaintiff; the deadline forfeited a specific procedural right; and the forfeiture produced a benefit for the defense that the defense did not request and could not have obtained through its own motion practice. This complaint presents the cumulative pattern, not any individual ruling, for evaluation under the statutory standard.

4.      **Forfeiture of the right to negotiate discovery concessions.** On March 19, 2026, Defendant Genpact filed a Motion for Extension of Time in

Case 376 (Dkt. 31). The docket reflects no certificate of service and no conferral with Complainant. One day later, Magistrate Judge Norway granted the motion (Dkt. 33), extending Genpact's deadline to April 22, 2026 and imposing conferral obligations on all parties. The docket does not reflect that Complainant was served with the motion or consulted before the court acted. Complainant was not aware the motion existed until after it was granted. In every other case across two federal districts, Complainant had applied a standard fourteen-day extension framework during conferral. The court's grant of a twenty-eight-day extension — without notice, without conferral, without service — eliminated Complainant's ability to negotiate a reciprocal framework for the Rule 26(f) conference. See Exhibit A, ¶¶ 9–10, 17.

5.    **Forfeiture of the right to respond on the original timeline.** On February 25, 2026, Magistrate Judge Irick ordered Complainant to file a Second Amended Complaint in Case 286 within seven days (Case 286, Dkt. 18). The order required all claims, all parties, and no incorporation by reference. The seven-day deadline coincided with the defense response deadline. Complainant's compliance mooted the defense's pending obligation. The defense received a deadline reset it did not request, produced by a court order directed at Complainant. See Exhibit A, *Comparative Record*.

6.    **Forfeiture of access to discovery.** Two magistrate judges have presided over Case 376. Each denied a motion by Complainant seeking access to discovery as his first substantive action following assignment: Magistrate Judge Norway (Dkt. 18, Feb. 25, 2026) and Magistrate Judge Irick (Dkt. 50, Mar. 24, 2026). An identical motion filed in Case 286 before the same magistrate judge has not been ruled on. See Exhibit A, ¶¶ 2–3, 17, Table C.

7.    **Forfeiture of the right to oppose two dispositive motions.** On March 20 and March 27, 2026, Complainant filed timely oppositions to motions to dismiss by Accenture (Dkt. 40) and TaskUs (Dkt. 53) in Case 376 — nineteen and seventeen days before their respective deadlines. On March 30, Magistrate Judge Irick struck both for "failure to comply with Local Rule 3.01(c)" without identifying the deficiency (Dkt. 56; Dkt. 57). The orders imposed an April 6 cure deadline — seven days from entry. The orders threatened unopposed treatment and quoted dismissal-warning language that has never appeared in any order directed to any defendant in Case 376 or Case 286. The cure period was shorter than the original twenty-one-day response period. Accenture's motion was never

properly served — its certificate of service certifies CM/ECF transmission to a pro se plaintiff who is not a CM/ECF registrant and has not consented to electronic service. Fed. R. Civ. P. 83(a)(2) prohibits enforcement of a form requirement in a way that causes rights loss through nonwillful noncompliance. Noncompliance with a requirement the litigant cannot identify is not willful. See Exhibit A, ¶¶ 7–8, 18–22, Tables E and F.

## III. MAIL-DELAY COMPOUNDING AND DEADLINE ALIGNMENT

8.    The court knows Complainant receives orders exclusively by U.S. mail — the court's own practice of mailing every docket entry to Complainant confirms this. U.S. mail takes approximately three days. The March 30 orders would have reached Complainant on or about April 2, leaving approximately four days — not seven — to cure an unidentified deficiency in two opposition briefs to dispositive motions, while proceeding pro se without CM/ECF access or electronic alerts. Fed. R. Civ. P. 6(d) reflects a federal policy of accounting for mail transmission time. The court imposed a deadline triggered by its own order, transmitted by U.S. mail, without accounting for the transmission time the Federal Rules recognize. See Exhibit A, ¶¶ 22–24.

9.    The April 6 cure deadline resolved Complainant's procedural posture three days before Meta's April 9 response deadline under Fed. R. Civ. P. 15(a)(3). In Case 286, the seven-day SAC order coincided with the defense response deadline and mooted the defense's pending obligation. In both instances, compressed deadlines imposed exclusively on the pro se plaintiff interacted with defense deadlines in ways that produced defense-favorable procedural outcomes. See Exhibit A, ¶ 25, *Comparative Record*.

## IV. ASYMMETRIC ENFORCEMENT AND SUPERVISORY INACTION

10.    Nine filings on the Case 376 docket contain identifiable procedural deficiencies. Seven are defense filings. Two are Complainant's. Of the seven defense filings, one received corrective action with identified deficiency, no cure deadline, and no sanctions threat (Dkt. 47). Six received no action. Of the two Complainant filings, both were stricken, deleted, given compressed cure deadlines, threatened with unopposed treatment, and quoted dismissal-warning language. The Dkt. 23 warning language has never been directed to any defendant

in Case 376 or Case 286. See Exhibit A, *Service Record, Asymmetric Enforcement*, Tables E, F, and G.

11.   Judge Moe reviewed the docket on March 23, 2026, identified a defense filing on the wrong form (Dkt. 47), and did not address defense service failures affecting Complainant — including certificates certifying CM/ECF transmission to a non-registered pro se plaintiff and filings with no certificates of service. Seven days later, Magistrate Judge Irick deleted Complainant's timely oppositions under her supervision. Judge Moe has taken no supervisory action. See Exhibit A, *Asymmetric Enforcement*.

### V. THIS COMPLAINT IS NOT MERITS-RELATED·

12.   Rule 4(b)(1) excludes allegations "directly related to the merits of a decision or procedural ruling." The Commentary provides that such allegations — "without more" — are merits-related. This complaint presents the "more": a unidirectional pattern of compressed deadlines imposed exclusively on one party, systematically aligned with opposing-party timelines, compounded by known mail delay, and enforced through deletion, sanctions threats, and dismissal warnings never directed at any other party. The Commentary on Rule 4(b)(2) confirms that "an allegation of a habitual pattern" arising from "an improper motive, is not merits-related." No individual ruling is presented as the misconduct. The pattern of administration is the misconduct.

### VI. PREJUDICE TO THE ADMINISTRATION OF THE COURTS

13.   The conduct documented in this complaint is "prejudicial to the effective and expeditious administration of the business of the courts" under 28 U.S.C. § 351(a) because it communicates that procedural rules in the Middle District of Florida are not administered impartially as between pro se plaintiffs and represented defendants. Complainant has alleged in Case 376 that attorneys declined representation because of the CSE designation. The procedural record compounds that barrier. A future litigant who proceeds pro se confronts the same method: compressed deadlines, unidentified deficiencies, mail-delay disregard, and the systematic forfeiture of procedural rights without adjudication on the merits. If unremedied, this conduct does not foreclose justice for one plaintiff — it communicates to every similarly situated person that the process is not administered impartially.

## VII. EXHIBITS

Exhibit A: Plaintiff's Urgent Motion for Recusal and to Identify Deficiency, Toll Cure Period, and Clarify Service, Case No. 6:26-cv-00376-AGM-DCI (as filed), with Tables C through G

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on April 1, 2026.

Marvelle J. Ballentine
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

MARVELLE J. BALLENTINE,

    *Plaintiff,*

    v.

                                 Case No. 6:26-cv-00376-AGM-DCI
                                 Case No. 6:26-cv-00286-AGM-DCI
                                 Case No. 5:26-cv-00213-AGM-PRL

META PLATFORMS, INC., et al

    *Defendants.*

## DECLARATION OF MARVELLE J. BALLENTINE IN SUPPORT OF PLAINTIFF'S URGENT MOTION FOR RECUSAL AND TO IDENTIFY DEFICIENCY, TOLL CURE PERIOD, AND CLARIFY SERVICE

I, Marvelle J. Ballentine, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

A United States magistrate judge in the Middle District of Florida, clothed in the authority of Article I, seated in a courthouse built to administer justice impartially, issued an order on March 30, 2026 that deleted two timely oppositions to dispositive motions, declined to identify the deficiency, compressed the cure period below the twenty-one days the Local Rules provide, threatened to treat the motions as unopposed, and quoted dismissal-warning language that has never appeared in any order

directed to any defendant in this case or its related proceeding. The magistrate judge's function is to enforce the rules. The magistrate judge used that function to unmake them—but only against me.

An Article III judge in the Middle District of Florida—appointed for life, confirmed by the United States Senate, vested with the judicial power of the United States under the Constitution—conducted a docket review on March 23, 2026. She reviewed the filings. She identified a disclosure statement submitted on the wrong form. She struck it. She specified the deficiency with precision: "which requires the use of the standard form from the Clerk or the Court's website." She imposed no cure deadline. She issued no sanctions warning. She quoted no dismissal language.

On that same docket, on that same day, sat a Motion to Dismiss filed by Kirkland & Ellis with a certificate of service certifying CM/ECF transmission to a pro se plaintiff who is not registered for CM/ECF and has never consented to electronic service. On that same docket sat a Motion for Extension filed by Orrick with no certificate of service at all—a motion granted the day after filing, imposing conferral obligations on all parties, without any indication I was ever told it existed.

Judge Moe found the wrong form. Judge Moe did not find the unserved plaintiff.

Seven days later, her magistrate judge deleted my oppositions, declined to tell me why, compressed my cure period below what the rules provide, and quoted dismissal-warning language that has never appeared in any order directed to any defendant in any case I have filed before this Court. Judge Moe supervises Magistrate Judge Irick. Judge Moe has issued no order, no correction, no clarification. Judge Moe watched her magistrate judge strip procedural rights from a self-represented litigant and has said nothing.

The procedural record and my own experience have led me to the conclusion that what has occurred is a miscarriage of justice against a pro se litigant in a civil rights matter. The judges should recuse themselves out of respect for the rule of law, procedure, and the oath of office they took.

While I believe recusal is warranted by this record, that is not my choice to make. Should the judges choose not to recuse themselves they should know I will faithfully comply with ever order, every rule, and every deadline. The judges should know that while my intent is to continue to comply with everything I am instructed to do, I will do so out of obligation to the Rule of Law and the Rules of Procedure and not out of respect for the individuals occupying the robe.

Should the judges not recuse themselves, they should know that these Federal Actions are no longer about me. Every *pro se* litigant with plausible claims for relief and who is willing to play by the rules should have their day(s) in Court. I intend to proceed with those individuals in mind.

So help me God.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 1, 2026

Marvelle J. Ballentine

# EXHIBIT G

Case 376, Dkt. 61: Urgent Motion for Recusal under
28 U.S.C. § 455, presenting 19 identified appellate issues
(filed April 2, 2026)

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MARVELLE J. BALLENTINE,

    *Plaintiff,*

       v.                     Case No. 6:26-cv-00376-AGM-DCI

META PLATFORMS, INC., ACCENTURE LLP,
GENPACT LIMITED, and TASKUS, INC.,

    *Defendants.*

## PLAINTIFF'S URGENT MOTION FOR RECUSAL AND TO IDENTIFY DEFICIENCY, TOLL CURE PERIOD, AND CLARIFY SERVICE

### BASIS FOR EXPEDITED CONSIDERATION

This motion requires resolution before April 6, 2026. The Court's orders at Dkt. 56 and Dkt. 57 direct Plaintiff to file compliant responses by that date but do not identify the deficiency Plaintiff must cure. Unless the Court identifies the deficiency before the cure deadline, Plaintiff cannot comply — and noncompliance will result in two dispositive motions proceeding as unopposed. The relief requested in this motion is a precondition to the compliance the Court's own orders require.

Case 6:26-cv-00376-AGM-DCI Document 61 Filed 04/02/26 Page 2 of 26 PageID 441

**STATEMENT OF ISSUE TO BE DECIDED**

Whether this district court may enforce an unspecified local-rule form defect to delete timely *pro se* oppositions, compress the cure period below the original response deadline, and threaten unopposed treatment — where proper service of the underlying motion never occurred and the Court knows the Plaintiff receives notice exclusively by U.S. mail — consistent with Fed. R. Civ. P. 83(a)(2); whether the imposition of compressed deadlines on the *pro se* Plaintiff that systematically align with defense deadlines and produce defense-favorable procedural outcomes reflects conduct consistent with the impartial administration of justice; and whether the cumulative procedural record requires recusal under 28 U.S.C. § 455(a).

**PRIOR PROCEEDINGS: NORTHERN DISTRICT OF CALIFORNIA**

On February 17, 2026, Plaintiff filed a Request for Judicial Notice of proceedings in the Northern District of California, Case No. 3:25-cv-07671-CRB. Dkt. 4. The Court has taken no action on that request. The following summary is derived from the official docket of that case and from Exhibit A to Dkt. 4.

Case No. 3:25-cv-07671-CRB was filed on September 9, 2025 and involved two of the defendants in the present action — Meta Platforms, Inc. and Accenture LLP — and claims arising from the same underlying conduct. The case was pending for more than five months. During that period, no Rule 26(f) conference was held, discovery never opened, and the Case Management Conference was vacated and never reset. Every procedural request made by Plaintiff was denied. Every procedural request made by Defendants was granted. Plaintiff voluntarily dismissed the NDCA action on February 13, 2026 and filed the present action on February 17, 2026.

2

Case 6:26-cv-00376-AGM-DCI Document 61 Filed 04/02/26 Page 3 of 26 PageID 442

## PROCEDURAL RECORD: THIS CASE

1. On February 17, 2026, Plaintiff filed his Complaint. Dkt. 1.

2. On February 18, 2026, Plaintiff filed a Motion for Leave to Serve Limited Early Discovery. Dkt. 7.

3. On February 25, 2026, Magistrate Judge Norway denied Plaintiff's Motion for Leave to Serve Limited Early Discovery. Dkt. 18.

4. On March 4, 2026, Plaintiff filed his Amended Complaint. Dkt. 19.

5. On March 11, 2026, Judge Moe entered a notice directing the parties to read and comply with the Local Rules. Dkt. 23. The notice stated: "Failure to comply with ANY Local Rules or Court Orders may result in the imposition of sanctions including, but not limited to, the dismissal of this action or entry of default without further notice."

6. On March 12, 2026, Judge Moe entered a standing order requiring disclosure of third-party litigation funding. Dkt. 25. Plaintiff filed his certification on March 16, 2026. Dkt. 26. The filing was two pages. Plaintiff was afforded approximately ten days.

7. On March 18, 2026, Defendant Accenture LLP filed a Notice of Appearance (Dkt. 27) and a Motion to Dismiss (Dkt. 29). The certificate of service on Accenture's Motion states: "I HEREBY CERTIFY that on March 18, 2026, I electronically filed the foregoing through Middle District of Florida's CM/ECF System, which will send a copy to all unrepresented parties and counsel of record." Dkt. 29 at 24.

8. Plaintiff is not registered for CM/ECF. The docket does not reflect service of Accenture's Motion on Plaintiff by any means other than the CM/ECF certification described in the preceding paragraph.

3

9. On March 19, 2026, Defendant Genpact Limited filed a Motion for Extension of Time to respond to the Amended Complaint. Dkt. 31. The docket does not reflect conferral with Plaintiff before filing. The docket does not reflect a certificate of service for Dkt. 31.

10. On March 20, 2026, Magistrate Judge Norway granted Genpact's Motion for Extension of Time. Dkt. 33. The order extended Genpact's response deadline to April 22, 2026. The order imposed a conferral requirement on all parties with a sanctions warning. The docket does not reflect that Plaintiff was consulted before the extension was granted. The motion on which the Court acted (Dkt. 31) was not accompanied by a certificate of service reflecting service on Plaintiff by any means.

11. On March 20, 2026, Magistrate Judge Norway granted Devin S. Anderson's motion to appear pro hac vice on behalf of Accenture. Dkt. 32. Anderson is a named individual defendant in Plaintiff's related case, No. 6:26-cv-00286-AGM-DCI.

12. On March 20, 2026, Plaintiff filed his Opposition to Accenture's Motion to Dismiss. Dkt. 40. Under Local Rule 3.01(d), if service of Accenture's Motion had been properly effected on March 18, 2026, the response deadline would have been April 8, 2026. Plaintiff filed nineteen days before that deadline.

13. On March 23, 2026, Magistrate Judge Norway entered an order of recusal. Dkt. 45. Between February 25 and March 23, 2026, Magistrate Judge Norway entered three orders in this case: Dkt. 18 (February 25, 2026), Dkt. 32 (March 20, 2026), and Dkt. 33 (March 20, 2026).

14. On March 23, 2026, this case was reassigned to Magistrate Judge Daniel C. Irick. Dkt. 46. Magistrate Judge Irick was already presiding over Plaintiff's related case, No. 6:26-cv-00286-AGM-DCI, before the same district judge.

4

15. On March 23, 2026, Judge Moe entered an endorsed order striking Defendant TaskUs's Disclosure Statement (Dkt. 37) for failure to comply with Local Rule 3.03. Dkt. 47. The order identified the specific deficiency: "which requires the use of the standard form from the Clerk or the Court's website." The order did not impose a cure deadline. The order did not threaten unopposed treatment. The order did not quote the warning language from Dkt. 23. At the time Dkt. 47 was entered, the docket reflected multiple filings by Kirkland & Ellis LLP with certificates of service certifying CM/ECF transmission to a pro se plaintiff who is not a registered CM/ECF user. The docket also reflected two filings by Orrick, Herrington & Sutcliffe LLP on behalf of Genpact (Dkt. 31 and Dkt. 38) with no certificates of service filed at all. The Court addressed none of these deficiencies.

16. On March 23, 2026, Defendant TaskUs, Inc. filed a Motion to Dismiss. Dkt. 48. Under Local Rule 3.01(d), the response deadline was April 13, 2026.

17. On March 24, 2026, Magistrate Judge Irick denied Plaintiff's Motion for Scheduling Directive Regarding Rule 26(f) Conference and Case Management Report. Dkt. 50. This was Magistrate Judge Irick's first substantive action in this case following reassignment. The scheduling directive had documented that Magistrate Judge Norway's grant of Genpact's extension (Dkt. 33) was entered without conferral, eliminating Plaintiff's ability to negotiate concessions during the conferral process. The docket does not reflect that any judicial officer has reviewed the continued validity of the three orders entered by Magistrate Judge Norway prior to his recusal.

Two magistrate judges have presided over this case. Each denied a motion seeking access to discovery as his first substantive action following assignment. The identical scheduling directive filed in the related case, No. 6:26-cv-00286-AGM-DCI, before the same magistrate judge, has not been ruled on.

5

## Table C: Discovery-Access Rulings

| D kt. | Date | Magistrate Judge | Plaintiff's Filing | Ruling | First Substantive Action After Assignment | Identical Motion in Case No. 286 |
|---|---|---|---|---|---|---|
| 18 | Feb. 25, 2026 | Norway | Motion for Leave to Serve Limited Early Discovery (Dkt. 7) | Denied | Yes | N/A |
| 50 | Mar. 24, 2026 | Irick | Motion for Scheduling Directive re Rule 26(f) Conference (Dkt. 39) | Denied | Yes | Pending; no ruling as of March 31, 2026 |

18. On March 27, 2026, Plaintiff filed his Opposition to TaskUs's Motion to Dismiss. Dkt. 53. Plaintiff filed seventeen days before the April 13 deadline.

19. On March 30, 2026, the Court struck Plaintiff's Opposition to Accenture's Motion (Dkt. 40) for "failure to comply with Local Rule 3.01(c)." Dkt. 56. The order did not identify the deficiency. The order directed Plaintiff to file a compliant response on or before April 6, 2026. The order stated that failure to file a compliant response by that date "may result in the 29 Motion to Dismiss being treated as unopposed." The order quoted the warning language from Dkt. 23: "Failure to comply with ANY Local Rules or Court Orders may result in the imposition of

6

sanctions including, but not limited to, the dismissal of this action or entry of default without further notice."

20. On March 30, 2026, the Court struck Plaintiff's Opposition to TaskUs's Motion (Dkt. 53) for "failure to comply with Local Rule 3.01(c)." Dkt. 57. The order did not identify the deficiency. The order imposed the same April 6, 2026 cure deadline. The order quoted the same warning language from Dkt. 23.

21. The April 6, 2026 cure deadline provides seven days from the date of the orders. Plaintiff's original response period under Local Rule 3.01(d) was twenty-one days from service. For Accenture's Motion (Dkt. 29), the cure deadline is two days shorter than the original response period. For TaskUs's Motion (Dkt. 48), the cure deadline is seven days shorter than the original response period. Plaintiff filed both oppositions early. Plaintiff's early filing resulted in a cure period shorter than the time originally available to respond.

22. Plaintiff is not a registered CM/ECF user. The Court is aware of this. Every docket entry made by the Court in this case has been transmitted to Plaintiff by U.S. mail. The Court's own mailing practice confirms its knowledge that Plaintiff does not receive electronic notice of court orders.

23. U.S. mail transmission from the Middle District of Florida to Plaintiff's address takes approximately three days. The orders at Dkt. 56 and Dkt. 57 were entered on March 30, 2026. If transmitted by U.S. mail on the date of entry, Plaintiff would have received them on or about April 2, 2026. The April 6 cure deadline affords approximately four days from receipt — not seven days from entry.

24. Fed. R. Civ. P. 6(d) adds three days to any period measured from service under Rule 5(b)(2)(C) (mail). Rule 6(d) governs party-to-party service, not court orders. The policy it reflects — that the Federal Rules account for mail transmission time when a deadline is triggered by a mailed document — is directly applicable here.

7

The Court imposed a deadline triggered by its own order, transmitted by the same method (U.S. mail) that Rule 6(d) addresses, without accounting for the transmission time that the Federal Rules recognize. The effective cure period — approximately four days — is shorter than the seven days stated in the orders and substantially shorter than the twenty-one days Local Rule 3.01(d) provides.

25. Under Fed. R. Civ. P. 15(a)(3), Meta's deadline to respond to the Amended Complaint in this case is April 9, 2026. The April 6 cure deadline resolves Plaintiff's procedural posture — whether the oppositions are restored, refiled, or treated as forfeited — three days before Meta must commit to its response. In Case No. 286, Magistrate Judge Irick's seven-day SAC order (Case No. 286, Dkt. 18) imposed a deadline that coincided with the defense response deadline and mooted the defense's pending obligation. In both instances, compressed deadlines imposed exclusively on the *pro se* Plaintiff interacted with defense deadlines in ways that produced defense-favorable procedural outcomes.

### COMPARATIVE RECORD: CASE NO. 6:26-cv-00286-AGM-DCI

Case No. 6:26-cv-00286-AGM-DCI is a related action before the same district judge (Judge Moe) and the same magistrate judge (Magistrate Judge Irick). The same pro se Plaintiff is a party in both cases.

On February 18, 2026, Judge Moe entered a standing order in Case No. 286 requiring disclosure of third-party litigation funding. Case No. 286, Dkt. 21. Plaintiff was afforded approximately ten days. The filing was two pages.

On February 25, 2026, Magistrate Judge Irick entered an order in Case No. 286 directing Plaintiff to file a Second Amended Complaint on or before March 4, 2026. Case No. 286, Dkt. 18. The order required that the Second Amended Complaint identify all defendants and the citizenship of all remaining parties, include all claims,

8

allegations, and parties, and not reference or incorporate any prior pleading. The order provided seven days.

On March 20, 2026, Plaintiff filed his Opposition to the Anderson/Keegan Motion to Dismiss in Case No. 286. Case No. 286, Dkt. 29. That opposition has not been stricken.

**SUA SPONTE CONSOLIDATION: CASE NO. 5:26-cv-00213-AGM-PRL**

On March 25, 2026, Accenture removed Case 213 to the Ocala Division. Dkt. 1. The case was assigned to Judge Jordan Emery Pratt. Dkt. 5. Plaintiff filed a motion to transfer to the Orlando Division (Dkt. 9), then withdrew it (Dkt. 15). The court denied the withdrawn motion as moot (Dkt. 17). On April 1, 2026, Judge Pratt sua sponte transferred Case 213 to Judge Moe under Local Rule 1.07(a). Dkt. 18, 19. All three cases are now before Judge Moe.

On March 30, 2026, Magistrate Judge Irick entered orders in the present case directing Plaintiff to refile two oppositions to dispositive motions on or before April 6, 2026. Dkt. 56, Dkt. 57. The orders provided seven days. The orders did not identify the deficiency.

The following table presents the deadlines imposed on the same pro se Plaintiff by the same judicial officers across both related cases.

**Table D: Deadlines Imposed on Plaintiff Across Related Cases**

| | 286 Lit. Funding (Moe) | 376 Lit. Funding (Moe) | 286 SAC (Irick) | 376 Opp. Acc. MTD (Irick) | 376 Opp. TaskUs MTD (Irick) |
|---|---|---|---|---|---|
| **Filing Required** | 2-page certificatio n | 2-page certificatio n | Complete complaint — all claims, all | Opposition to dispositive motion — | Opposition to dispositive motion — |

9

| | | | parties, no incorporation | cure unspecified deficiency | cure unspecified deficiency |
|---|---|---|---|---|---|
| **Days Afforded** | ~10 | ~10 | 7 | 7 | 7 |
| **Standard Period** | N/A | N/A | Court-ordered | 21 days | 21 days |
| **Deficiency Specified** | N/A | N/A | Yes | No | No |
| **Judge** | Moe | Moe | Irick | Irick | Irick |

## SERVICE RECORD: DEFENSE COUNSEL

Three law firms represent defendants. Two have not complied with the service requirements of Fed. R. Civ. P. 5:

Kirkland & Ellis LLP (Accenture): Every certificate of service certifies CM/ECF transmission. Plaintiff is not a registered CM/ECF user and has not consented to electronic service. The docket does not reflect service by any authorized means.

Orrick, Herrington & Sutcliffe LLP (Genpact): No certificate of service filed for Dkt. 31 or Dkt. 38. The Court granted relief on Dkt. 31 the day after filing without any indication Plaintiff was served.

Ogletree Deakins (TaskUs): The docket reflects compliance with service requirements.

The deficiencies are documented in Table E. The Court has not addressed service noncompliance by either noncompliant firm. The Court struck Plaintiff's filings for an unspecified deficiency.

## COMPREHENSIVE DEFICIENCY RECORD

10

The following table identifies every filing on the docket with an identifiable procedural deficiency and the Court's action or inaction on each.

## Table E: Filing Deficiencies — Court Action Taken and Not Taken

| Dkt. | Filed By | Filing | Deficiency | Court Action | Judicial Officer |
|---|---|---|---|---|---|
| 27 | Kirkland & Ellis (Accenture) | Notice of Appearance | Certificate of service certifies CM/ECF to non-registered pro se Plaintiff | None | Moe (docket supervision) |
| 29 | Kirkland & Ellis (Accenture) | Motion to Dismiss | Certificate of service certifies CM/ECF to non-registered pro se Plaintiff; service not effected under Rule 5(b)(2)(E) or Local Rule 1.02(b) | None | Moe / Norway |
| 30 | Kirkland & Ellis (Accenture) | Motion to Appear Pro Hac Vice | Certificate of service certifies CM/ECF to non-registered pro se Plaintiff | None; motion granted (Dkt. 32) | Norway |
| 31 | Orrick (Genpact) | Motion for Extension of Time | No certificate of service filed; Fed. R. Civ. P. 5(a)(1) requires service; Fed. R. Civ. P. 5(d) requires certificate | None; relief granted next day (Dkt. 33) | Norway |
| 37 | Ogletree Deakins (TaskUs) | Disclosure Statement | Wrong form under Local Rule 3.03 | Stricken (Dkt. 47); deficiency identified; no cure | Moe |

11

| | | | | deadline; no sanctions threat; no dismissal warning | |
|---|---|---|---|---|---|
| 38 | Orrick (Genpact) | Notice of Lead Counsel Designation | No certificate of service filed | None | Moe / Irick |
| 40 | Plaintiff | Opposition to Accenture MTD | "Failure to comply with Local Rule 3.01(c)" — deficiency unspecified | Stricken and deleted (Dkt. 56); 7-day cure deadline; unopposed treatment threatened; Dkt. 23 dismissal warning quoted | Irick |
| 53 | Plaintiff | Opposition to TaskUs MTD | "Failure to comply with Local Rule 3.01(c)" — deficiency unspecified | Stricken and deleted (Dkt. 57); 7-day cure deadline; unopposed treatment threatened; Dkt. 23 dismissal warning quoted | Irick |
| 54 | Kirkland & Ellis (Accenture) | Motion for Leave to File Reply | Directed to a filing (Dkt. 40) that was stricken on the same date | Denied as moot (Dkt. 56); no deficiency noted regarding service certificate | Irick |

12

Nine filings on the docket contain identifiable procedural deficiencies. Seven are defense filings. Two are Plaintiff's filings. Of the seven defense filings, one received corrective action with precise identification of the defect, no cure deadline, and no sanctions threat (Dkt. 47). Six received no action. Of the two Plaintiff filings, both were stricken, deleted, given compressed cure deadlines, threatened with unopposed treatment, and quoted the Dkt. 23 dismissal warning.

**APPLICABLE LAW**

### I.    Fed. R. Civ. P. 83(a)(2)

Rule 83(a)(2) provides: "A local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply."

Local Rule 3.01(c) imposes requirements of form. The orders at Dkt. 56 and Dkt. 57 do not identify which requirement Plaintiff failed to satisfy.

A litigant cannot willfully violate a requirement he cannot identify. The orders do not identify the specific defect. Any noncompliance was nonwillful.

Enforcement through deletion of timely oppositions, compression of the cure period below the original response deadline, and threatened unopposed treatment would cause Plaintiff to lose the right to oppose two dispositive motions. Rule 83(a)(2) prohibits this result.

### II.    Fed. R. Civ. P. 5(b)(2)(E) and Local Rule 1.02(b)

Rule 5(b)(2)(E) permits electronic service only on registered CM/ECF users or persons who have consented in writing. Plaintiff is neither. Local Rule 1.02(b) requires service on non-CM/ECF parties by mail. The service deficiencies are documented in Table E. Local Rule 3.01(d) measures the response period from service. If service was not effected, the response period has not commenced.

13

## III.   Fed. R. Civ. P. 6(d) and the Mail-Delay Principle

Rule 6(d) adds three days to deadlines triggered by mail service, reflecting federal policy that mail transmission time must be accounted for. The Court transmits orders to Plaintiff by U.S. mail. A cure deadline measured from entry, without mail-delay adjustment, imposes an effective deadline shorter than stated. The effective four-day cure period documented in ¶¶ 23-24 is inconsistent with due process.

## IV.   Local Rule 3.01(d)

Local Rule 3.01(d) provides twenty-one days to respond. The cure deadlines imposed by Dkt. 56 and Dkt. 57 are shorter than the original response periods. The deadline math is set forth in ¶ 21.

## V. 28 U.S.C. § 455(a)

Section 455(a) provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

The standard is objective. Recusal is required where a reasonable person, knowing all the circumstances, would harbor doubts about the judge's impartiality. *Liteky v. United States*, 510 U.S. 540, 548 (1994). The inquiry is not whether the judge is actually biased. The inquiry is whether the cumulative procedural record would cause a reasonable observer to question impartiality.

The procedural record relevant to this inquiry is set forth in Tables C through G and the chronological docket history presented in this motion. No single ruling compels recusal. The aggregate is the relevant inquiry under § 455(a).

## ASYMMETRIC ENFORCEMENT

### Table F: Enforcement Disparity

14

|  | Def. TaskUs (Dkt. 37) | Plaintiff (Dkt. 40) | Plaintiff (Dkt. 53) |
|---|---|---|---|
| **Filing** | Disclosure Statement | Opp. to Accenture MTD | Opp. to TaskUs MTD |
| **Rule Cited** | Local Rule 3.03 | Local Rule 3.01(c) | Local Rule 3.01(c) |
| **Deficiency Identified** | Yes — "which requires the use of the standard form from the Clerk or the Court's website" | No | No |
| **Cure Deadline** | None imposed | April 6, 2026 (7 days) | April 6, 2026 (7 days) |
| **Unopposed Treatment Threatened** | No | Yes | Yes |
| **Dismissal Warning Quoted (Dkt. 23)** | No | Yes | Yes |
| **Order** | Dkt. 47 | Dkt. 56 | Dkt. 57 |

The warning language from Dkt. 23 was entered by Judge Moe. It has been quoted to Plaintiff in Dkt. 56 and Dkt. 57. The docket does not reflect that this warning language has been directed to any defendant in this case or in the related case, No. 6:26-cv-00286-AGM-DCI.

On March 23, 2026, Magistrate Judge Norway entered an order of recusal (Dkt. 45) and the case was reassigned to Magistrate Judge Irick (Dkt. 46). On the same date, Judge Moe entered an endorsed order striking one defense filing (Dkt. 47). The following table presents the docket activity on that date.

15

Case 6:26-cv-00376-AGM-DCP Document 61 Filed 04/02/26 Page 16 of 26 PageID 455
Case 6:26-cv-00376-AGM-DCP Document 91-1 Filed 04/15/26 Page 275 of 350
PageID 1488

## Table G: Docket Activity — March 23, 2026

| Dkt. | Judicial Officer | Action |
|---|---|---|
| 45 | Norway | Order of recusal |
| 46 | Clerk | Reassignment to Magistrate Judge Irick |
| 47 | Moe | Struck TaskUs disclosure (Dkt. 37); identified deficiency ("which requires the use of the standard form from the Clerk or the Court's website"); no cure deadline; no sanctions threat; no dismissal warning |
| 48 | | TaskUs Filed Motion to Dismiss |

At the time Dkt. 47 was entered, the docket reflected six defense filings with identifiable deficiencies: three Kirkland & Ellis filings with certificates of service certifying CM/ECF transmission to a non-registered pro se party (Dkt. 27, 29, 30) and two Orrick filings with no certificates of service (Dkt. 31, 38), one of which formed the basis for a court order imposing obligations on all parties (Dkt. 33). The Court addressed one defense deficiency — a disclosure statement filed on the wrong form. The Court did not address any deficiency affecting service on the pro se Plaintiff.

Two of three defense firms in this case have failed to comply with the service requirements of Fed. R. Civ. P. 5. One filed certificates of service certifying a method of service that does not reach the pro se Plaintiff. One filed no certificates of service at all. The Court has not stricken, deleted, or otherwise addressed any defense filing for these deficiencies.

In the related case, Plaintiff's Opposition to the Anderson/Keegan Motion to Dismiss (Case No. 286, Dkt. 29) was filed on March 20, 2026 — the same date as the

16

Opposition stricken in this case (Dkt. 40). That opposition was filed by the same Plaintiff, before the same magistrate judge. It has not been stricken.

**STATEMENT OF PRESERVED APPELLATE ISSUES**

Plaintiff preserves the following issues for review by the United States Court of Appeals for the Eleventh Circuit and any subsequent proceeding. Each issue is supported by the procedural record established in this motion and on the docket of this case and the related case, No. 6:26-cv-00286-AGM-DCI.

**Issue 1.**     Whether the Court's deletion of Plaintiff's timely oppositions to two dispositive motions for unspecified "failure to comply with Local Rule 3.01(c)" — without identifying the deficiency — violates Fed. R. Civ. P. 83(a)(2), which prohibits enforcement of a local rule imposing a requirement of form in a way that causes a party to lose any right because of a nonwillful failure to comply. Dkt. 56; Dkt. 57.

**Issue 2.**     Whether *a pro se litigant's* noncompliance with a local rule can be deemed willful when the Court's orders do not identify the specific requirement the litigant failed to satisfy. Dkt. 56; Dkt. 57.

**Issue 3.**     Whether the imposition of a seven-day cure period — shorter than the twenty-one-day response period provided by Local Rule 3.01(d) — on a litigant who filed early is consistent with due process and the Federal Rules. Dkt. 56; Dkt. 57; Local Rule 3.01(d).

**Issue 4.**     Whether a motion to dismiss may be treated as unopposed when the movant's certificate of service certifies CM/ECF transmission to a pro se party who is not a registered CM/ECF user, has not consented in writing to electronic service, and has not been served by any other means reflected on the docket. Dkt. 29 at 24; Fed. R. Civ. P. 5(b)(2)(E); Local Rule 1.02(b).

17

Case 6:26-cv-00376-AGM-DCI    Document 61    Filed 04/02/26    Page 18 of 26 PageID 457
PageID 1490

**Issue 5.**     Whether the same magistrate judge's imposition of seven-day deadlines on the same pro se plaintiff in two related cases — seven days to draft a complete complaint in Case No. 286 (Case No. 286, Dkt. 18) and seven days to refile two oppositions to dispositive motions in the present case (Dkt. 56, Dkt. 57) — reflects a pattern of timeline compression inconsistent with the Federal Rules and Local Rules.

**Issue 6.**     Whether asymmetric enforcement of Local Rules — providing a defendant precise identification of its filing deficiency with no cure deadline, no unopposed-treatment threat, and no dismissal warning (Dkt. 47), while providing the pro se plaintiff no identification of his filing deficiency with a compressed cure deadline, unopposed-treatment threat, and dismissal warning (Dkt. 56, Dkt. 57) — is consistent with the equal administration of justice. U.S. Const. amends. V, XIV.

**Issue 7.**     Whether the docket reflects that dismissal-warning language from Dkt. 23 has been directed exclusively to the pro se plaintiff and never to any defendant in this case or the related case, No. 6:26-cv-00286-AGM-DCI.

**Issue 8.**     Whether the failure of two of three defense firms to comply with the service requirements of Fed. R. Civ. P. 5 — one filing certificates certifying CM/ECF transmission to a non-registered pro se plaintiff (Kirkland & Ellis LLP), and one filing no certificates of service at all (Orrick, Herrington & Sutcliffe LLP) — and the Court's silence on both, while striking Plaintiff's filings for an unspecified deficiency, constitutes asymmetric enforcement.

**Issue 9.**     Whether the continued validity of orders entered by Magistrate Judge Norway prior to his recusal (Dkt. 45) — including the grant of a defense extension without conferral with Plaintiff (Dkt. 33) — based on a motion (Dkt. 31) for which no certificate of service was filed and which the docket does not

18

Case 6:26-cv-00376-AGM-DCI   Document 61   Filed 04/02/26   Page 19 of 26 PageID 458
Case 6:26-cv-00376-AGM-DCI   Document 91-1   Filed 04/15/26   Page 278 of 350
PageID 1491

reflect was served on Plaintiff by any means — which eliminated Plaintiff's ability to negotiate concessions — is consistent with the requirements of 28 U.S.C. § 455 and due process.

**Issue 10.**    Whether the reassignment of this case to the magistrate judge already presiding over Plaintiff's related case before the same district judge (Dkt. 46), following the prior magistrate judge's recusal, is consistent with the requirements of impartial adjudication.

**Issue 11.**    Whether the cumulative procedural record in this case — in which every contested procedural matter has been resolved adversely to Plaintiff — raises a question regarding the impartial administration of justice. U.S. Const. amends. V, XIV.

**Issue 12.**    Whether due process permits a court to grant relief on a motion (Dkt. 31) — extending a defendant's response deadline and imposing conferral obligations on all parties (Dkt. 33) — when the docket does not reflect a certificate of service for the motion, does not reflect service on the opposing party by any means, and the opposing party was afforded no notice or opportunity to oppose the relief before it was granted. U.S. Const. amends. V, XIV; Fed. R. Civ. P. 5(a)(1), 5(d).

**Issue 13.**    Whether the cumulative procedural record set forth in Tables C through G — in which every defense filing deficiency was either ignored or corrected without sanction, and every Plaintiff filing deficiency was met with deletion, compressed cure deadlines, unopposed-treatment threats, and dismissal warnings — requires recusal of the district judge under 28 U.S.C. § 455(a).

**Issue 14.**    Whether the cumulative procedural record set forth in this motion — in which every contested procedural matter has been resolved adversely to

19

Plaintiff, timely oppositions were stricken without identification of the deficiency, and the cure period was compressed below the original response deadline — requires recusal of the magistrate judge under 28 U.S.C. § 455(a).

**Issue 15.** Whether the denial of Plaintiff's discovery-access motions by two successive magistrate judges — each as the magistrate judge's first substantive action in this case — while an identical motion remains pending without ruling in the related case before the same magistrate judge, reflects a pattern of foreclosing discovery inconsistent with the Federal Rules and due process. Dkt. 18; Dkt. 50; Case No. 6:26-cv-00286-AGM-DCI.

**Issue 16.** Whether a seven-day cure period measured from the date of entry — imposed on a *pro se* plaintiff whom the Court knows receives orders exclusively by U.S. mail, as demonstrated by the Court's own practice of mailing every docket entry to Plaintiff — provides constitutionally adequate notice and opportunity to comply, where U.S. mail transmission reduces the effective cure period to approximately four days, and where Fed. R. Civ. P. 6(d) reflects a federal policy of accounting for mail transmission time when deadlines are triggered by service under Rule 5(b)(2)(C). U.S. Const. amends. V, XIV; Fed. R. Civ. P. 6(d).

**Issue 17.** Whether the imposition of compressed seven-day deadlines on the *pro se* Plaintiff that systematically interact with defense deadlines — seven days to file a Second Amended Complaint in Case No. 286, coinciding with the defense response deadline and mooting the defense's pending obligation (Case No. 286, Dkt. 18); and seven days to cure unspecified deficiencies in Case No. 376, resolving Plaintiff's procedural posture three days before Meta's response deadline under Fed. R. Civ. P. 15(a)(3) (Dkt. 56; Dkt. 57) — reflects a pattern of compressed deadlines imposed exclusively on the *pro se* Plaintiff that produce

20

defense-favorable procedural outcomes inconsistent with the impartial administration of justice. U.S. Const. amends. V, XIV; 28 U.S.C. § 455(a).

**Issue 18.**   Whether the cumulative pattern of judicial conduct documented in this motion — asymmetric enforcement of procedural requirements, unidentified deficiencies, compressed deadlines calibrated to defense timelines, silence on defense service failures, and timeline compression imposed on a plaintiff the Court knows receives notice exclusively by U.S. mail — constitutes judicial coercion of a *pro se* litigant inconsistent with the due process guarantees of the Fifth and Fourteenth Amendments and the impartial administration of justice required by 28 U.S.C. § 455(a).

**Issue 19.**   Whether the sua sponte transfer of Case No. 5:26-cv-00213-AGM-PRL from the Ocala Division to Judge Moe — after Plaintiff withdrew his transfer motion and the court denied it as moot — consolidating all three cases before the district judge whose conduct is documented herein, two days after the March 30 orders, is consistent with impartial administration of justice. Case 213, Dkt. 15, 17, 18, 19; 28 U.S.C. § 455(a).

These issues are preserved regardless of the Court's disposition of this motion. A ruling granting the relief requested will resolve certain issues on the merits. A ruling denying the relief requested, or the absence of a ruling, will preserve all issues for appellate review upon entry of a final order.

Plaintiff is a pro se litigant proceeding without resources comparable to those available to the defendants in this action. Plaintiff has complied with every deadline imposed by this Court. Plaintiff has met every filing obligation. Plaintiff has conferred when required to confer. Plaintiff has served when required to serve. Plaintiff has not

sought disqualification of opposing counsel, notwithstanding a procedural record that would support such relief. Plaintiff has pursued his claims through orderly process at every stage — in the Northern District of California, in this Court, and in related proceedings before this Court. The procedural record is what it is. Plaintiff did not create it. Plaintiff has documented it. That record now requires Plaintiff to ask whether the judicial officers presiding over this case can administer it impartially. Plaintiff makes that request under 28 U.S.C. § 455(a), on the basis of the cumulative procedural record set forth in this motion, and with the same confidence in orderly process that has governed his conduct throughout these proceedings. Should this matter require further proceedings beyond this Court, Plaintiff is prepared to continue for as long as the process requires. Plaintiff's commitment to these claims is not contingent on the convenience of any party or the pace of any docket. It is grounded in an unshakable confidence that the federal judiciary — across every level of review to which a litigant is entitled — will administer justice impartially when presented with a complete record. With that confidence, Plaintiff continues to proceed, *pro se.*[1]

---

[1] Government cannot make us equal; it can only recognize, respect, and protect us as equal before the law." *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 240 (1995) (Thomas, J., concurring in part and concurring in the judgment). "The Framers ensured that judges would decide cases according to the rule of law, and not of men." Clarence Thomas, Assoc. Justice, Supreme Court of the United States, Address Before the Federalist Society, National Lawyers Convention (Nov. 12, 1999). "In my humble opinion, those who come to engage in debates of consequence, and who challenge accepted wisdom, should expect to be treated badly. Nonetheless, they must stand undaunted. That is required. And that should be expected. For it is **bravery** that is required to secure freedom." Clarence Thomas, Assoc. Justice, Supreme Court of the United States, Address Before the National Bar Association, Memphis, Tennessee (July 28, 1998).

22

**RELIEF REQUESTED**

The procedural record requires the following:

A.     The Court shall identify the specific Local Rule 3.01(c) deficiency in Plaintiff's Oppositions (Dkt. 40 and Dkt. 53) so that Plaintiff may cure the deficiency.

B.     The cure period shall be tolled until the Court identifies the deficiency. Upon identification, Plaintiff shall be afforded twenty-one days to file compliant responses — the same period Local Rule 3.01(d) provides for the original response.

C.     Any deadline imposed on Plaintiff by this Court shall account for the time required for U.S. mail transmission from the Court to Plaintiff's address, consistent with the policy reflected in Fed. R. Civ. P. 6(d). Deadlines measured from the date of order entry, without adjustment for mail transmission, deprive Plaintiff of the effective compliance period stated in the order.

D.     The Court shall determine whether service of Accenture's Motion to Dismiss (Dkt. 29) was effected consistent with Fed. R. Civ. P. 5(b)(2)(E) and Local Rule 1.02(b). If service was not effected, Accenture shall be directed to serve the Motion by means authorized under Rule 5 before any response deadline commences.

E.     The Court shall determine whether Genpact's Motion for Extension of Time (Dkt. 31) was served on Plaintiff consistent with Fed. R. Civ. P. 5(a)(1) and 5(d). The docket does not reflect a certificate of service for Dkt. 31 or for Genpact's Notice of Lead Counsel Designation (Dkt. 38). If service was not effected, the Court shall determine the continued validity of the order granting the relief requested in that motion (Dkt. 33).

F.     The district judge shall determine whether recusal is required under 28 U.S.C. § 455(a) in light of the procedural record set forth in this motion, including the

23

selective enforcement documented in Tables E, F, and G, and the exclusive direction of the Dkt. 23 warning language to the pro se Plaintiff.

G.    The magistrate judge shall determine whether recusal is required under 28 U.S.C. § 455(a) in light of the procedural record set forth in this motion, including the deletion of Plaintiff's timely oppositions without identification of the deficiency, the compression of the cure period below the original response deadline, and the resolution of every contested procedural matter adversely to Plaintiff.

H.    Upon a determination that recusal is required, the Court shall direct the Clerk to reassign this case, the related case No. 6:26-cv-00286-AGM-DCI, and Case No. 5:26-cv-00213-AGM-PRL, through the district's standard random assignment process, with no overlap of judicial officers among the three cases.

I.    Such other relief as is consistent with the procedural record and applicable law.

Dated: April 1, 2026                                       Respectfully submitted,

                                                          Marvelle J. Ballentine
                                                          Plaintiff, *pro se*
                                7862 W. Irlo Bronson Memorial Hwy #82
                                                          Kissimmee, FL 34747
                                                          (407) 794-6503
                                          jayballentine@protonmail.com

24

Case 6:26-cv-00376-AGM-DCI Document 61 Filed 04/02/26 Page 25 of 26 PageID 464
Case 6:26-cv-00376-AGM-DCI Document 91-1 Filed 04/15/26 Page 284 of 350
PageID 1497

## LOCAL RULE 3.01(g) CERTIFICATION

On April 1, 2026, Plaintiff contacted counsel for Accenture, TaskUs, and Genpact regarding the relief requested in this motion and requested a response the same day. No substantive conferral was completed before filing. Plaintiff files this motion in light of the Court's April 6, 2026 deadline and will promptly supplement this certification after completing the conferral process required by Local Rule 3.01(g)(3).

Dated: April 1, 2026                                        Respectfully submitted,

Marvelle J. Ballentine
Plaintiff, *pro se*
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 2, 2026, I filed the foregoing with the Clerk

of Court. All counsel of record are registered CM/ECF users and will be served

electronically through the Court's CM/ECF system upon docketing.

Marvelle J. Ballentine

# EXHIBIT A

Case 6:26-cv-00376-AGM-DCI   Document 61-1   Filed 04/02/26   Page 2 of 6 PageID 467

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

In re Complaint of Judicial Misconduct

Against: The Honorable Anne-Leigh Gaylord Moe, United States District Judge, Middle District of Florida; and The Honorable Daniel C. Irick, United States Magistrate Judge, Middle District of Florida

## COMPLAINT OF JUDICIAL MISCONDUCT
## Under 28 U.S.C. § 351(a)

### I. COMPLAINANT AND STATUTORY STANDARD

1.      Marvelle J. Ballentine, proceeding pro se, files this complaint under 28 U.S.C. § 351(a). Complainant is a party in three related civil actions in the Middle District of Florida: Case No. 6:26-cv-00376-AGM-DCI, Case No. 6:26-cv-00286-AGM-DCI, and Case No. 5:26-cv-00213-JEP-PRL. Cases 376 and 286 are assigned to Judge Moe and Magistrate Judge Irick. All three cases arise from Facebooks' foreclosure of Plaintiff's right to make and modify contracts on July 4, 2022 under a Child Sexual Exploitation policy designation.

2.      This complaint does not challenge the correctness of any ruling. It identifies a pattern of court administration — repeated across two related cases, by two judicial officers, directed exclusively at one party — in which the mechanism of time compression forfeited the pro se plaintiff's procedural rights while producing collateral procedural benefits for the opposing parties. The full docket-documented record is set forth in the motion attached as Exhibit A, including Tables C through G.

### II. THE PATTERN: TIME COMPRESSION AND RIGHTS FORFEITURE

3.      Each instance follows the same structure: the court imposed a compressed deadline exclusively on the pro se plaintiff; the deadline forfeited a specific procedural right; and the forfeiture produced a benefit for the defense that the defense did not request and could not have obtained through its own motion practice. This complaint presents the cumulative pattern, not any individual ruling, for evaluation under the statutory standard.

4.      **Forfeiture of the right to negotiate discovery concessions.** On March 19, 2026, Defendant Genpact filed a Motion for Extension of Time in

Case 376 (Dkt. 31). The docket reflects no certificate of service and no conferral with Complainant. One day later, Magistrate Judge Norway granted the motion (Dkt. 33), extending Genpact's deadline to April 22, 2026 and imposing conferral obligations on all parties. The docket does not reflect that Complainant was served with the motion or consulted before the court acted. Complainant was not aware the motion existed until after it was granted. In every other case across two federal districts, Complainant had applied a standard fourteen-day extension framework during conferral. The court's grant of a twenty-eight-day extension — without notice, without conferral, without service — eliminated Complainant's ability to negotiate a reciprocal framework for the Rule 26(f) conference. See Exhibit A, ¶¶ 9–10, 17.

5. **Forfeiture of the right to respond on the original timeline.** On February 25, 2026, Magistrate Judge Irick ordered Complainant to file a Second Amended Complaint in Case 286 within seven days (Case 286, Dkt. 18). The order required all claims, all parties, and no incorporation by reference. The seven-day deadline coincided with the defense response deadline. Complainant's compliance mooted the defense's pending obligation. The defense received a deadline reset it did not request, produced by a court order directed at Complainant. See Exhibit A, *Comparative Record*.

6. **Forfeiture of access to discovery.** Two magistrate judges have presided over Case 376. Each denied a motion by Complainant seeking access to discovery as his first substantive action following assignment: Magistrate Judge Norway (Dkt. 18, Feb. 25, 2026) and Magistrate Judge Irick (Dkt. 50, Mar. 24, 2026). An identical motion filed in Case 286 before the same magistrate judge has not been ruled on. See Exhibit A, ¶¶ 2–3, 17, Table C.

7. **Forfeiture of the right to oppose two dispositive motions.** On March 20 and March 27, 2026, Complainant filed timely oppositions to motions to dismiss by Accenture (Dkt. 40) and TaskUs (Dkt. 53) in Case 376 — nineteen and seventeen days before their respective deadlines. On March 30, Magistrate Judge Irick struck both for "failure to comply with Local Rule 3.01(c)" without identifying the deficiency (Dkt. 56; Dkt. 57). The orders imposed an April 6 cure deadline — seven days from entry. The orders threatened unopposed treatment and quoted dismissal-warning language that has never appeared in any order directed to any defendant in Case 376 or Case 286. The cure period was shorter than the original twenty-one-day response period. Accenture's motion was never

properly served — its certificate of service certifies CM/ECF transmission to a pro se plaintiff who is not a CM/ECF registrant and has not consented to electronic service. Fed. R. Civ. P. 83(a)(2) prohibits enforcement of a form requirement in a way that causes rights loss through nonwillful noncompliance. Noncompliance with a requirement the litigant cannot identify is not willful. See Exhibit A, ¶¶ 7–8, 18–22, Tables E and F.

### III. MAIL-DELAY COMPOUNDING AND DEADLINE ALIGNMENT

8. The court knows Complainant receives orders exclusively by U.S. mail — the court's own practice of mailing every docket entry to Complainant confirms this. U.S. mail takes approximately three days. The March 30 orders would have reached Complainant on or about April 2, leaving approximately four days — not seven — to cure an unidentified deficiency in two opposition briefs to dispositive motions, while proceeding pro se without CM/ECF access or electronic alerts. Fed. R. Civ. P. 6(d) reflects a federal policy of accounting for mail transmission time. The court imposed a deadline triggered by its own order, transmitted by U.S. mail, without accounting for the transmission time the Federal Rules recognize. See Exhibit A, ¶¶ 22–24.

9. The April 6 cure deadline resolved Complainant's procedural posture three days before Meta's April 9 response deadline under Fed. R. Civ. P. 15(a)(3). In Case 286, the seven-day SAC order coincided with the defense response deadline and mooted the defense's pending obligation. In both instances, compressed deadlines imposed exclusively on the pro se plaintiff interacted with defense deadlines in ways that produced defense-favorable procedural outcomes. See Exhibit A, ¶ 25, *Comparative Record.*

### IV. ASYMMETRIC ENFORCEMENT AND SUPERVISORY INACTION

10. Nine filings on the Case 376 docket contain identifiable procedural deficiencies. Seven are defense filings. Two are Complainant's. Of the seven defense filings, one received corrective action with identified deficiency, no cure deadline, and no sanctions threat (Dkt. 47). Six received no action. Of the two Complainant filings, both were stricken, deleted, given compressed cure deadlines, threatened with unopposed treatment, and quoted dismissal-warning language. The Dkt. 23 warning language has never been directed to any defendant

in Case 376 or Case 286. See Exhibit A, *Service Record, Asymmetric Enforcement,* Tables E, F, and G.

11. Judge Moe reviewed the docket on March 23, 2026, identified a defense filing on the wrong form (Dkt. 47), and did not address defense service failures affecting Complainant — including certificates certifying CM/ECF transmission to a non-registered pro se plaintiff and filings with no certificates of service. Seven days later, Magistrate Judge Irick deleted Complainant's timely oppositions under her supervision. Judge Moe has taken no supervisory action. See Exhibit A, *Asymmetric Enforcement.*

## V. THIS COMPLAINT IS NOT MERITS-RELATED

12. Rule 4(b)(1) excludes allegations "directly related to the merits of a decision or procedural ruling." The Commentary provides that such allegations — "without more" — are merits-related. This complaint presents the "more": a unidirectional pattern of compressed deadlines imposed exclusively on one party, systematically aligned with opposing-party timelines, compounded by known mail delay, and enforced through deletion, sanctions threats, and dismissal warnings never directed at any other party. The Commentary on Rule 4(b)(2) confirms that "an allegation of a habitual pattern" arising from "an improper motive, is not merits-related." No individual ruling is presented as the misconduct. The pattern of administration is the misconduct.

## VI. PREJUDICE TO THE ADMINISTRATION OF THE COURTS

13. The conduct documented in this complaint is "prejudicial to the effective and expeditious administration of the business of the courts" under 28 U.S.C. § 351(a) because it communicates that procedural rules in the Middle District of Florida are not administered impartially as between pro se plaintiffs and represented defendants. Complainant has alleged in Case 376 that attorneys declined representation because of the CSE designation. The procedural record compounds that barrier. A future litigant who proceeds pro se confronts the same method: compressed deadlines, unidentified deficiencies, mail-delay disregard, and the systematic forfeiture of procedural rights without adjudication on the merits. If unremedied, this conduct does not foreclose justice for one plaintiff — it communicates to every similarly situated person that the process is not administered impartially.

## VII. EXHIBITS

Exhibit A: Plaintiff's Urgent Motion for Recusal and to Identify Deficiency, Toll Cure Period, and Clarify Service, Case No. 6:26-cv-00376-AGM-DCI (as filed), with Tables C through G

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on April 1, 2026.

Marvelle J. Ballentine
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com

Case 6:26-cv-00376-AGM-DCI   Document 61-2   Filed 04/02/26   Page 1 of 8 PageID 472
Case 6:26-cv-00376-AGM-DCI   Document 91-1   Filed 04/15/26   Page 292 of 350
PageID 1505

# EXHIBIT B

Case 6:26-cv-00376-AGM-DCI    Document 61-1    Filed 04/02/26    Page 2 of 8 PageID 473

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

**MARVELLE J. BALLENTINE,**
　　Plaintiff,

v.

**META PLATFORMS, INC.,** *et al.,*

　　Defendants.

Case No. 6:26-cv-00376-AGM-DCI
Case No. 6:26-cv-00286-AGM-DCI
Case No. 5:26-cv-00213-AGM-PRL

## TIME-SENSITIVE PETITION FOR ADMINISTRATIVE REASSIGNMENT

**TO:** The Honorable Marcia Morales Howard, Chief United States District Judge

This petition is designated time-sensitive under Local Rule 3.01(e).

Defendant Accenture LLP was served with interrogatories on March 10–11, 2026,

in the state court proceeding before removal. Responses are due April 10, 2026. A

videotaped organizational deposition of Accenture LLP is noticed for April 17,

2026. These obligations carried into federal court under 28 U.S.C. § 1450, which

provides that all state court orders and discovery "shall be held to be binding"

after removal. Accenture's own Notice of Removal attaches exhibits

acknowledging service of the discovery package. Case No. 213, Dkt. 1. On April 1,

2026, Case No. 213 was sua sponte transferred to Judge Moe. No scheduling

order has been entered. No case management conference has been set. The Case

1

Management Report is not due until May 4, 2026. Without judicial action before April 10, no enforcement mechanism exists for discovery obligations that are currently running. Plaintiff has incurred costs arranging the April 17 deposition. Plaintiff respectfully requests that the Chief Judge consider this petition by April 9, 2026.

1.      Plaintiff petitions the Chief Judge to exercise her authority under 28 U.S.C. § 137 to reassign the above-captioned cases. Plaintiff does not seek recusal under 28 U.S.C. § 455 and makes no allegation of bias.

## CASES AND COMMON PARTIES

1.      Case No. 376 and Case No. 286 are assigned to District Judge Anne-Leigh Gaylord Moe and Magistrate Judge Daniel C. Irick. Case No. 213 was originally assigned to District Judge Jordan Emery Pratt and Magistrate Judge Philip R. Lammens in the Ocala Division. On April 1, 2026, Judge Pratt sua sponte transferred Case 213 to Judge Moe under Local Rule 1.07(a). Case 213, Dkt. 18, 19. All three cases are now before Judge Moe.

2.      All three cases arise from the same conduct: Facebooks' foreclosure of Plaintiff's right to make and modify contracts on July 4, 2022 under a Child Sexual Exploitation policy designation. Defendant Accenture LLP appears in two of the three cases. Kirkland & Ellis LLP represents Accenture in both cases in which Accenture LLP appears.

2

Case 6:26-cv-00376-AGM-DCI Document 61-1 Filed 04/02/26 Page 4 of 8 PageID 475
Case 6:26-cv-00376-AGM-DCI Document 31-1 Filed 04/15/26 Page 295 of 350
PageID 1508

## PROCEDURAL RECORD

1.      On March 30, 2026, the Court struck Plaintiff's timely oppositions to two dispositive motions in Case No. 376 for "failure to comply with Local Rule 3.01(c)" without identifying the deficiency. Dkt. 56; Dkt. 57. The orders imposed a seven-day cure deadline. Local Rule 3.01(d) provides twenty-one days. Plaintiff filed early. The cure period imposed was **shorter** than the original response period.

2.      The orders warned that failure to comply "may result in the imposition of sanctions including, but not limited to, the dismissal of this action." Dkt. 56; Dkt. 57.

3.      On March 23, 2026, the Court struck a defendant's disclosure statement and identified the deficiency: "failure to comply with Local Rule 3.03, which requires the use of the standard form from the Clerk or the Court's website." Dkt. 47. No cure deadline was imposed. No unopposed-treatment warning was issued. No sanctions language was quoted.

4.      Kirkland & Ellis has filed certificates of service in Cases 376 and 286 certifying CM/ECF transmission to "all unrepresented parties." Plaintiff is not a registered CM/ECF user. Fed. R. Civ. P. 5(b)(2)(E) permits electronic service only on registered users or persons who have consented in writing. The docket does not reflect service on Plaintiff by any authorized means. The Court has taken no action.

3

5.     Orrick, Herrington & Sutcliffe LLP filed a motion and notice in Case 376 with no certificates of service. Dkt. 31; Dkt. 38. The Court granted relief on Dkt. 31 the following day. The docket does not reflect service on Plaintiff. The Court has taken no action.

6.     On March 23, 2026, Magistrate Judge Norway recused in Case 376. Dkt. 45. The case was reassigned to Magistrate Judge Irick, who was already assigned to Case No. 286 before the same district judge. Dkt. 46. The continued validity of three orders entered by Magistrate Judge Norway prior to recusal has not been reviewed.

7.     On April 3, 2026, Plaintiff filed a motion in Case No. 376 preserving nineteen issues for appellate review. Each issue is documented with docket citations and grounded in Fed. R. Civ. P. 83(a)(2), Fed. R. Civ. P. 5, Local Rule 3.01, 28 U.S.C. § 455, and the Fifth and Fourteenth Amendments. The motion is attached as Exhibit A.

## AUTHORITY

1.     Under 28 U.S.C. § 137, the Chief Judge "shall be responsible for the observance of such rules and orders, and shall divide the business and assign the cases."

4

## REQUEST

1.      Plaintiff requests that the Chief Judge reassign Case Nos. 376, 286, and 213 through the district's standard random assignment process, with no overlap of district judges or magistrate judges among the three cases.

2.      Plaintiff seeks symmetric application of the Local Rules, specific identification of any deficiencies, uniform enforcement of service requirements, and procedural treatment consistent with that afforded to defendants.

## Local Rule 3.01(g) Certification

This petition is directed to the Chief Judge's administrative and supervisory authority under 28 U.S.C. § 137. It does not seek relief against any party and is not subject to the conferral requirement of Local Rule 3.01(g).

Dated: April 1, 2026

Marvelle J. Ballentine
*Plaintiff, pro se*
7862 W. Irlo Bronson Memorial Hwy
#82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com

5

# EXHIBITS

**Exhibit A:** Plaintiff's Urgent Motion for Recusal and to Identify Deficiency, Toll

Cure Period, and Clarify Service, Case No. 6:26-cv-00376-AGM-DCI (as filed),

with Tables C through G

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 2, 2026, I filed the foregoing with the Clerk of Court. All counsel of record are registered CM/ECF users and will be served electronically through the Court's CM/ECF system upon docketing.

Marvelle J. Ballentine

7

# EXHIBIT H

Case 376, Dkt. 89: Rule 72(a) Objection to
Magistrate Judge Irick's Endorsed Order (Dkt. 80)
(filed April 10, 2026)

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MARVELLE J. BALLENTINE,

    Plaintiff,

       v.                    Case No. 6:26-cv-00376-AGM-DCI

META PLATFORMS, INC., ACCENTURE LLP,
GENPACT LIMITED, and TASKUS, INC.,

    Defendants.

## PLAINTIFF'S OBJECTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 72(a) TO ENDORSED ORDER (DKT. 80)

**Standard of Review:** Federal Rule of Civil Procedure 72(a) provides that a district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." 28 U.S.C. § 636(b)(1)(A). Legal conclusions are reviewed de novo under the "contrary to law" standard. Each argument presented below raises a legal question subject to de novo review.

**INTRODUCTION**

1.    On April 9, 2026, Magistrate Judge Daniel C. Irick entered an endorsed order (Dkt. 80) that strikes ten filed documents (Dkts. 69–78), directs the Clerk to "delete" them from the docket, and directs Plaintiff to "refrain from

filing such notices on the docket of this case." The order was entered sua sponte. No party moved to strike.

2.    The order cites no rule of procedure. It makes no finding of frivolousness, bad faith, or harassment. It provides no prior notice. It affords no opportunity to be heard. It considers no lesser measure.

3.    Four grounds support this objection:

   a) The order cites no procedural rule that authorizes striking non-pleading filings and rests on a legal premise—that filings must request relief—that no authority supports.

   b) The prospective directive constitutes a filing restriction subject to requirements the Eleventh Circuit has articulated and that the order does not satisfy.

   c) The deletion directive removes judicial records from the public docket without satisfying the Eleventh Circuit's public-access framework.

   d) A magistrate judge may lack statutory authority to enter a filing restriction directly under 28 U.S.C. § 636(b)(1)(A).

Each ground presents a legal question reviewable de novo.

## STATEMENT OF FACTS

### The Notices

4.    On April 7, 2026, Plaintiff transmitted ten documents for in-person filing. See Dkts. 69–78.

5.    Each document identified one recipient—a congressional committee, a federal agency, or a member of Congress. Each stated that Plaintiff had

2

transmitted correspondence to that recipient. Each attached a copy of the correspondence as an exhibit.

6. The ten recipients were: Senate Judiciary Committee, House Judiciary Committee, Congressional Black Caucus, House Energy and Commerce Committee, Senate Commerce Committee, Federal Trade Commission, Department of Justice Child Exploitation and Obscenity Section, Senator Rick Scott, Senator Ashley Moody, Representative Daniel Webster.

7. Each notice expressly stated that no relief was requested from the Court.

8. The notices were backward-looking informational filings. They documented completed transmissions to federal oversight bodies. The correspondence addressed matters arising from the litigation and from Plaintiff's pending § 351 Judicial Misconduct Complaint. The Eleventh Circuit acknowledged the § 351 complaint on April 2, 2026.

### The April 9, 2026 Orders

9. Three endorsed orders were entered by Magistrate Judge Irick on April 9, 2026.

10. Dkt. 79 struck Plaintiff's refiled oppositions to the Accenture and TaskUs motions to dismiss (Dkts. 63 and 64). The stated ground was exceeding the 20-page limit under Local Rule 3.01(c). The order quoted the dismissal-warning language from Dkt. 23. No cure period was afforded. No party moved to strike.

3

11.    Dkt. 80 struck ten notices of referral (Dkts. 69–78). It directed Plaintiff to "refrain from filing such notices." It directed the Clerk to "delete the documents." No party moved to strike.

12.    Dkt. 81 denied Accenture's Motion for Leave to File Reply (Dkt. 67) as moot because Dkt. 79 struck the opposition to which the reply would have been directed.

13.    The cumulative effect: Plaintiff's oppositions to both pending motions to dismiss were removed, Plaintiff's record of oversight referrals was removed, and no order entered on April 9, 2026, imposed any obligation on any defendant.

## LEGAL ARGUMENT

### A.    No Procedural Rule Authorizes the Order, and the Stated Rationale Has No Support in Law

#### Rule 12(f) Does Not Reach Non-Pleading Filings

14.    Federal Rule of Civil Procedure 12(f) provides: "The court may strike *from a pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

15.    Federal Rule of Civil Procedure 7(a) exhaustively defines "pleadings" as: a complaint; an answer to a complaint; an answer to a counterclaim; an answer to a crossclaim; a third-party complaint; an answer to a third-party complaint; and, if the court orders one, a reply to an answer. Notices are not pleadings.

16.    Courts in this district have held that Rule 12(f) "is limited to the matters contained within the pleadings." *Croom v. Balkwill*, 672 F. Supp. 2d 1280, 1285 (M.D. Fla. 2009). "A motion is not a pleading, and thus a motion to strike a motion is not proper." *Morroni v. Gunderson*, 169 F.R.D. 168, 170 (M.D. Fla.

4

1996). *See also McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290, 1298 (M.D. Ga. 2003). If Rule 12(f) does not authorize striking a motion, it does not authorize striking a notice.

### The "No Relief Requested" Rationale Contradicts the Federal Rules

17.    Dkt. 80 states: "Plaintiff's notices attach correspondence to non-parties and state that no relief is requested. Thus, there is no basis to file such documents on the docket of this case."

18.    The premise is false. The Federal Rules and Local Rules require or authorize numerous non-relief-seeking filings, including corporate disclosure statements (Rule 7.1), notices of supplemental authority (Local Rule 3.01(j)), notices of deposition (Rule 30(b)(1)), certificates of service (Rule 5(d)), and case management reports (Rule 26(f)). No authority supports the premise that a filing must request relief to have a basis on the docket.

### Inherent Authority Requires Procedural Safeguards

19.    If the order rests on the court's inherent authority rather than Rule 12(f), that authority is constrained. The Supreme Court has held that inherent powers "must be exercised with restraint and discretion" and that a court exercising inherent authority "must comply with the mandates of due process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 50 (1991). The Eleventh Circuit has held that "[i]nvocation of a court's inherent power requires a finding of bad faith." *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995). For sua sponte sanctions, the conduct must be "akin to contempt." *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255–56 (11th Cir. 2003).

5

20. Dkt. 80 contains no prior notice. It affords no opportunity to respond. It makes no finding of bad faith. It identifies no conduct akin to contempt. It cites no rule violated. It considers no lesser measure. The order is contrary to law.

**B.     The Prospective Directive Is a Filing Restriction That Fails Every Procup/Miller Requirement**

21. Dkt. 80 directs: "Plaintiff shall refrain from filing such notices on the docket of this case."

22. The Eleventh Circuit, sitting en banc, established binding requirements for any order restricting a litigant's future filings in *Procup v. Strickland*, 792 F.2d 1069 (11th Cir. 1986) (en banc). The court reinforced these requirements in *Miller v. Donald*, 541 F.3d 1091 (11th Cir. 2008), and *Cofield v. Alabama Public Service Commission*, 936 F.2d 512 (11th Cir. 1991). The Eleventh Circuit looks to the substance and effect of an order, not its label.

23. A directive to "refrain from filing" a category of documents is substantively a prospective filing restriction regardless of how it is styled.

24. The following table compares Dkt. 80 against the binding requirements:

| Requirement | Controlling Citation | Dkt. 80 |
|---|---|---|
| Notice and opportunity to respond | *Procup*, 792 F.2d at 1071–72 | None |
| Finding of frivolousness, | *Procup*, 792 F.2d at 1071; *Miller*, 541 F.3d at 1096 | None |

6

| harassment, or abuse | | |
|---|---|---|
| Adequate record of prior misconduct | *Procup*, 792 F.2d at 1071; *Miller*, 541 F.3d at 1098 | None |
| Narrow tailoring | *Procup*, 792 F.2d at 1072, 1074; *Miller*, 541 F.3d at 1098 | Categorical prohibition |
| Consideration of lesser measures | *Procup*, 792 F.2d at 1072–73 | None |

25. The order satisfies none of the five requirements. It imposes a categorical prohibition on a type of filing on the first occasion of that filing type, without prior warning, without any finding of abuse, and without considering any alternative measure.

### Narrow Tailoring and Chilling Effect

26. The notices documented Plaintiff's transmissions of correspondence to members of Congress and federal executive-branch agencies—activity protected by the First Amendment's Petition Clause. U.S. Const. amend. I. The prospective directive does not prohibit the underlying transmissions; it prohibits Plaintiff from filing court documents that record them. A restriction on filings documenting the exercise of a constitutional right implicates the narrow-tailoring requirement with particular force.

27. A filing restriction must "bear some relationship to the litigant's objectionable actions in pending suits, and cannot be wholesale restrictions." *Miller*, 541 F.3d at 1098. A categorical prohibition on notices that do not request

7

relief and that document communications with federal oversight bodies does not satisfy this standard.

## C. The Magistrate Judge May Lack Statutory Authority to Enter a Filing Restriction Directly

28. The Eleventh Circuit consistently characterizes orders restricting a litigant's future filings as injunctions. *See Miller*, 541 F.3d at 1096 (reviewing "filing injunction"); *Procup*, 792 F.2d at 1073 (grounding the power to enter filing restrictions in the All Writs Act, 28 U.S.C. § 1651). A filing restriction prohibits future conduct. It is functionally injunctive.

29. Under 28 U.S.C. § 636(b)(1)(A), a judge may designate a magistrate judge to "hear and determine any pretrial matter pending before the court, except a motion for injunctive relief." Motions for injunctive relief are among the enumerated categories excepted from a magistrate judge's authority to hear and determine directly.

30. If a filing restriction is functionally injunctive, it falls within the category of matters excepted from a magistrate judge's direct authority under § 636(b)(1)(A). The proper procedure would be a report and recommendation under § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), subject to de novo review by the district judge.

31. No published Eleventh Circuit opinion directly addresses whether a magistrate judge's filing-restriction order entered without a report-and-recommendation procedure exceeds the magistrate judge's statutory authority. The text of § 636(b)(1)(A) and the Eleventh Circuit's characterization of filing

8

restrictions as injunctive support the conclusion that Dkt. 80 was entered outside the magistrate judge's direct authority.

## D. The Deletion Directive Implicates the Public-Access Framework

32.    Dkt. 80 directs: "The Clerk is directed to delete the documents."

33.    The common-law right of public access to judicial records extends to pretrial filings. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1312–13 (11th Cir. 2001). "There is a presumptive right of public access to pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith." *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007). Restriction requires good-cause balancing. *Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC*, 918 F.3d 1161, 1167 (11th Cir. 2019).

34.    Local Rule 1.11 governs sealing: it imposes a presumption of public access, requires a necessity finding, and requires consideration of less-restrictive alternatives. Sealing preserves the docket entry and permits later unsealing. Deletion removes all trace of the filing's existence. No Local Rule, Administrative Order, or CM/ECF procedure authorizes deletion as distinguished from sealing.

35.    Dkt. 80 contains no determination whether the documents are judicial records. It contains no good-cause balancing. It contains no consideration of public-access interests. It contains no consideration of less-restrictive alternatives. It contains no specific findings.

36.    The deletion directive is contrary to law.

9

## E. The Order Compounds the Documented Pattern of Asymmetric Enforcement

37.    Plaintiff's recusal motion (Dkt. 61) and pending § 351 Complaint documented a pattern of asymmetric enforcement through tabulated docket analysis. The April 9, 2026, orders extend the pattern.

38.    The record is documented. The recusal motion (Dkt. 61, Tables C through G) identifies every filing on the docket with an identifiable procedural deficiency and the Court's action or inaction on each. Every order striking a filing has been directed at Plaintiff. Every order deleting a filing has been directed at Plaintiff. Every dismissal warning has been directed at Plaintiff. Every prospective restriction has been directed at Plaintiff. No order entered on the Case 376 docket has imposed any obligation, cure deadline, warning, or restriction on any defendant.

### RELIEF REQUESTED

The Court should:

A.    Set aside Dkt. 80 in its entirety as contrary to law.

B.    Direct the Clerk to restore Dkts. 69–78 to the public docket.

C.    Vacate the prospective directive prohibiting Plaintiff from filing notices of referral.

D.    In the alternative, if the Court determines that any component of the order is proper, specify the rule of procedure, the required findings, and the procedural basis that support that component.

E.    Grant such other relief as is consistent with applicable law.

Case 6:26-cv-00376-AGM-DCI Document 91-1 Filed 04/15/26 Page 311 of 350
Case 6:26-cv-00376-AGM-DCI Document 89 15-Filed 04/10/26 Page 11 of 13 PageID 725
PageID 1524

Dated: April 10, 2026                                    Respectfully submitted,

                                                         Marvelle J. Ballentine
                                                         Plaintiff, *pro se*
                                        7862 W. Irlo Bronson Memorial Hwy. #82
                                                         Kissimmee, FL 34747
                                                    Telephone: (407) 794-6503
                                        Email: jayballentine@protonmail.co

## LOCAL RULE 3.01(g) CERTIFICATION

The relief sought is an objection to a sua sponte judicial order. No party
moved for the relief the order grants. Conferral is inapplicable.

Marvelle J. Ballentine

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 10, 2026 I filed the foregoing with the Clerk of Court. All counsel of record are registered CM/ECF users and will be served electronically through the Court's CM/ECF system upon docketing.

Marvelle J. Ballentine

# EXHIBIT I

Case 376, Dkt. 82 (and Case 286, Dkt. 47):
Notice of Intent to Serve Subpoena on the National Center
for Missing & Exploited Children (NCMEC)
under 18 U.S.C. § 2258A (filed April 9, 2026)

APR 9 2026 PM2:56
FILED - USDC - FLMD - ORL

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MARVELLE J. BALLENTINE,

    *Plaintiff,*

    v.                            Case No. 6:26-cv-00286-AGM-DCI

DEVIN S. ANDERSON; CHRISTOPHER W. KEEGAN;
and META PLATFORMS, INC.

    *Defendants.*

### NOTICE OF INTENT TO SERVE SUBPOENA ON

### NATIONAL CENTER FOR MISSING & EXPLOITED CHILDREN

1.    Plaintiff Marvelle J. Ballentine, proceeding pro se, hereby gives notice to the Court and to all parties that, pursuant to Federal Rule of Civil Procedure 45 and the advance-notice procedure maintained by the National Center for Missing & Exploited Children (NCMEC), Plaintiff has on this date transmitted to NCMEC, via overnight express mail, a fourteen-day advance notice of an intended records subpoena concerning whether a CyberTipline report under 18 U.S.C. § 2258A was filed in connection with the Facebook account associated with Plaintiff and terminated on or about July 4, 2022.

2.    The advance-notice correspondence transmitted to NCMEC, the signed draft subpoena, and Exhibit A to the subpoena are attached hereto as Exhibit 1 and incorporated by reference. The subpoena will be formally served on NCMEC after expiration of the fourteen-day advance-notice period.

Dated: April 9, 2026                                    Respectfully submitted,

Marvelle J. Ballentine
Plaintiff, *pro se*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 9, 2026, the foregoing was filed with the Clerk

of Court and served on all counsel of record via the Court's CM/ECF system.

Marvelle J. Ballentine

Case 6:26-cv-00376-AGM-DCI     Document 91-1     Filed 04/15/26     Page 318 of 350
Case 6:26-cv-00286-AGM-DCI     Document 47-1  Filed 04/09/26     Page 1 of 9 PageID 413
PageID 1531

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MARVELLE J. BALLENTINE,

    *Plaintiff,*

    v.                      Case No. 6:26-cv-00286-AGM-DCI

DEVIN S. ANDERSON; and
CHRISTOPHER W. KEEGAN,

    *Defendants.*

## NOTICE OF INTENT TO SERVE SUBPOENA DUCES TECUM ON NON-PARTY NATIONAL CENTER FOR MISSING AND EXPLOITED CHILDREN

Plaintiff Marvelle J. Ballentine, pro se, gives notice under Federal Rule of Civil Procedure 45(a)(4) and Middle District of Florida Local Rule 3.04 of his intent to serve the attached clerk-issued Subpoena to Produce Documents, Information, or Objects on non-party National Center for Missing and Exploited Children ("NCMEC"), 333 John Carlyle Street, Alexandria, Virginia 22314.

The subpoena was issued by the Clerk of Court on April 9, 2026 on Form AO 88B and is attached as Exhibit A. The subpoena has not yet been served on NCMEC.

The subpoena commands production of the documents identified in Schedule A to the subpoena.

The place of compliance stated in the subpoena is 1520 Belle View Blvd, Ste. #5847, Alexandria, VA 22307 which is within 100 miles of NCMEC's Alexandria, Virginia address.

Plaintiff will not serve the subpoena on NCMEC earlier than fourteen (14) days after service of this Notice. The earliest date of service on NCMEC is April 23, 2026.

This Notice and the attached subpoena are being served on all parties under Federal Rule of Civil Procedure 45(a)(4). This Notice is also being provided to NCMEC as the fourteen-day written notice required by Local Rule 3.04.

Dated: April 9 2026

Respectfully submitted,

Marvelle J. Ballentine
7862 W. Irlo Bronson Memorial Hwy, #82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com
Plaintiff, pro se

2

## CERTIFICATE OF SERVICE

I certify that on April 9 2026, I served this Notice and the attached Exhibit A on counsel of record for all Defendants in this action by electronic mail to the email addresses on file for counsel of record.

I further certify that on April 9, 2026, I provided this Notice and the attached Exhibit A to non-party National Center for Missing and Exploited Children, 333 John Carlyle Street, Alexandria, Virginia 22314, as the fourteen-day written notice required by Middle District of Florida Local Rule 3.04, by United States Postal Service Priority Mail Express overnight delivery.

Marvelle J. Ballentine

Marvelle J. Ballentin
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
(407) 794-6403

April 9, 2026

**VIA OVERNIGHT EXPRESS MAIL**

National Center for Missing & Exploited Children Attn: Legal Department /
Subpoena Compliance 333 John Carlyle Street Alexandria, VA 22314

Re: Advance Notice of Intended Subpoenas — Two Separate Matters (1) *Ballentine
v. Meta Platforms, Inc., et al.,* No. 6:26-cv-00376-AGM-DCI (M.D. Fla.) (2)
*Ballentine v. Anderson, et al.,* No. 6:26-cv-00286-AGM-DCI (M.D. Fla.)

Dear Counsel:

This envelope contains **two separate advance notices** of intended subpoenas
to the National Center for Missing & Exploited Children, one for each of the above-
captioned matters. Each notice is transmitted pursuant to NCMEC's fourteen-day
advance-notice procedure for records subpoenas and is accompanied by a signed
copy of the draft subpoena that will be formally served after the notice period has
run.

The enclosures are as follows:

1. Advance Notice of Intended Subpoena in Case No. 6:26-cv-00376-AGM-
   DCI, with signed draft subpoena attached.
2. Advance Notice of Intended Subpoena in Case No. 6:26-cv-00286-AGM-
   DCI, with signed draft subpoena attached.

Although transmitted in a single envelope for efficiency, the two notices are
independent. Each identifies its own case caption, case number, and subpoena
recipient, and each should be processed as a discrete matter. Both subpoenas seek
the same categorical information: whether a CyberTipline report under 18 U.S.C.

.

§ 2258A was filed concerning the Facebook account associated with Marvelle J. Ballentine and terminated on or about July 4, 2022.

I am proceeding pro se in both matters. Please direct any questions, objections, or procedural correspondence regarding either notice to the contact information above, and please reference the applicable case number in any response so that the record in each matter remains distinct.

Thank you for your attention to these notices.

Regards,

Marvelle J. Ballentine

Plaintiff, *pro se*

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Middle District of Florida

| | | |
|---|---|---|
| Marvelle J. Ballentine | ) | |
| _Plaintiff_ | ) | |
| v. | ) | Civil Action No. 6:26-cv-00286-AGM-DCI |
| Devin S. Anderson; Christopher W. Keegan; and Meta Platforms, Inc. | ) ) | |
| _Defendant_ | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:        Custodian of Records
National Center for Missing and Exploited Children

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A.

| Place: Marvelle J. Ballentine<br>1520 Belle View Blvd, Ste. #5847, Alexandria, VA 22307 | Date and Time:<br><br>May 8, 2026, at 5:00 p.m. Eastern Time |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: April 9, 2026

_CLERK OF COURT_

OR _____

_Signature of Clerk or Deputy Clerk_          _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ Marvelle J. Ballentine pro se; 7862 W. Irlo Bronson Mem. Hwy #82, Kissimmee, FL 34747          , who issues or requests this subpoena, are:
E-mail: jayballentine@protonmail.com I Tel: (407) 794-6503

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## SCHEDULE A

*Ballentine v. Meta Platforms, Inc., et al.*, Case No. 6:26-cv-00376-AGM-DCI

United States District Court for the Middle District of Florida

The responding person must produce a document sufficient to show whether the National Center for Missing and Exploited Children ("NCMEC") received or maintains any CyberTipline report, referral, or submission concerning:

    (1)  Marvelle J. Ballentine;

    (2)  Jay Ballentine; and/or

    (3)  the account-level identifier jaychizza@icloud.com

for the period July 1, 2022 through the date of compliance.

If no such CyberTipline report, referral, or submission exists, the responding person must produce a written statement so stating after a reasonable search.

This subpoena does not request and NCMEC should not produce:

    (a)  the contents of any CyberTipline report;

    (b)  any narrative text;

    (c)  attachments;

    (d)  images, video, or media;

    (e)  investigative materials; or

    (f)  any material beyond what is necessary to show the existence or nonexistence of a CyberTipline report, referral, or submission.

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or

    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT A

Case 6:26-cv-00376-AGM-DCI   Document 91-1   Filed 04/15/26   Page 328 of 350
Case 6:26-cv-00376-AGM-DCI   Document 82   Filed 04/09/26   Page 1 of 3 PageID 619
PageID 1541

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MARVELLE J. BALLENTINE,

     *Plaintiff,*

     v.                     Case No. 6:26-cv-00376-AGM-DCI

META PLATFORMS, INC.; ACCENTURE LLP;
GENPACT LIMITED; and TASKUS, INC.,

     *Defendants.*

**NOTICE OF INTENT TO SERVE SUBPOENA ON**

**NATIONAL CENTER FOR MISSING & EXPLOITED CHILDREN**

1.     Plaintiff Marvelle J. Ballentine, proceeding pro se, hereby gives notice to the Court and to all parties that, pursuant to Federal Rule of Civil Procedure 45 and the advance-notice procedure maintained by the National Center for Missing & Exploited Children (NCMEC), Plaintiff has on this date transmitted to NCMEC, via overnight express mail, a fourteen-day advance notice of an intended records subpoena concerning whether a CyberTipline report under 18 U.S.C. § 2258A was filed in connection with the Facebook account associated with Plaintiff and terminated on or about July 4, 2022.

2.     The advance-notice correspondence transmitted to NCMEC, the signed draft subpoena, and Exhibit A to the subpoena are attached hereto as Exhibit 1 and incorporated by reference. The subpoena will be formally served on NCMEC after expiration of the fourteen-day advance-notice period.

Dated: April 9, 2026                                       Regards,

Marvelle J. Ballentine
Plaintiff, *pro se*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 9, 2026, the foregoing was filed with the Clerk

of Court and served on all counsel of record via the Court's CM/ECF system.


Marvelle J. Ballentine

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MARVELLE J. BALLENTINE,

    *Plaintiff,*

    v.                       Case No. 6:26-cv-00376-AGM-DCI

META PLATFORMS, INC.; ACCENTURE LLP;
GENPACT LIMITED; and TASKUS, INC.,

    *Defendants.*

## NOTICE OF INTENT TO SERVE SUBPOENA DUCES TECUM

## ON NON-PARTY NATIONAL CENTER FOR MISSING AND

## EXPLOITED CHILDREN

Plaintiff Marvelle J. Ballentine, pro se, gives notice under Federal Rule of Civil Procedure 45(a)(4) and Middle District of Florida Local Rule 3.04 of his intent to serve the attached clerk-issued Subpoena to Produce Documents, Information, or Objects on non-party National Center for Missing and Exploited Children ("NCMEC"), 333 John Carlyle Street, Alexandria, Virginia 22314.

The subpoena was issued by the Clerk of Court on April 9, 2026 on Form AO 88B and is attached as Exhibit A. The subpoena has not yet been served on NCMEC.

The subpoena commands production of the documents identified in Schedule A to the subpoena.

The place of compliance stated in the subpoena is 1520 Belle View Blvd, Ste. #5847, Alexandria, VA 22307 which is within 100 miles of NCMEC's Alexandria, Virginia address.

Plaintiff will not serve the subpoena on NCMEC earlier than fourteen (14) days after service of this Notice. The earliest date of service on NCMEC is April 23, 2026.

This Notice and the attached subpoena are being served on all parties under Federal Rule of Civil Procedure 45(a)(4). This Notice is also being provided to NCMEC as the fourteen-day written notice required by Local Rule 3.04.

Dated: April 9, 2026                                     Respectfully submitted,

Marvelle J. Ballentine
7862 W. Irlo Bronson Memorial Hwy, #82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com
Plaintiff, *pro se*

2

## CERTIFICATE OF SERVICE

I certify that on April 9, 2026, I served this Notice and the attached Exhibit A on counsel of record for all Defendants in this action by electronic mail to the email addresses on file for counsel of record.

I further certify that on April 9, 2026, I provided this Notice and the attached Exhibit A to non-party National Center for Missing and Exploited Children, 333 John Carlyle Street, Alexandria, Virginia 22314, as the fourteen-day written notice required by Middle District of Florida Local Rule 3.04, by United States Postal Service Priority Mail Express overnight delivery.

Marvelle J. Ballentine

Marvelle J. Ballentin
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
(407) 794-6403

April 9, 2026

**VIA OVERNIGHT EXPRESS MAIL**

National Center for Missing & Exploited Children Attn: Legal Department /
Subpoena Compliance 333 John Carlyle Street Alexandria, VA 22314

Re: Advance Notice of Intended Subpoenas — Two Separate Matters (1) *Ballentine
v. Meta Platforms, Inc., et al.,* No. 6:26-cv-00376-AGM-DCI (M.D. Fla.) (2)
*Ballentine v. Anderson, et al.,* No. 6:26-cv-00286-AGM-DCI (M.D. Fla.)

Dear Counsel:

This envelope contains **two separate advance notices** of intended subpoenas
to the National Center for Missing & Exploited Children, one for each of the above-
captioned matters. Each notice is transmitted pursuant to NCMEC's fourteen-day
advance-notice procedure for records subpoenas and is accompanied by a signed
copy of the draft subpoena that will be formally served after the notice period has
run.

The enclosures are as follows:

1. Advance Notice of Intended Subpoena in Case No. 6:26-cv-00376-AGM-
   DCI, with signed draft subpoena attached.
2. Advance Notice of Intended Subpoena in Case No. 6:26-cv-00286-AGM-
   DCI, with signed draft subpoena attached.

Although transmitted in a single envelope for efficiency, the two notices are
independent. Each identifies its own case caption, case number, and subpoena
recipient, and each should be processed as a discrete matter. Both subpoenas seek
the same categorical information: whether a CyberTipline report under 18 U.S.C.

§ 2258A was filed concerning the Facebook account associated with Marvelle J. Ballentine and terminated on or about July 4, 2022.

I am proceeding pro se in both matters. Please direct any questions, objections, or procedural correspondence regarding either notice to the contact information above, and please reference the applicable case number in any response so that the record in each matter remains distinct.

Thank you for your attention to these notices.

Regards,

Marvelle J. Ballentine

Plaintiff, *pro se*

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Middle District of Florida

| | |
|---|---|
| Marvelle J. Ballentine ) | |
| _Plaintiff_ ) | Civil Action No.  6:26-cv-00376-AGM-DCI |
| v. ) | |
| Meta Platforms, Inc.; Accenture LLP; ) | |
| Genpact Limited; and TaskUs, Inc. ) | |
| _Defendant_ ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                         Custodian of Records
          National Center for Missing and Exploited Children

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A.

| Place: Marvelle J. Ballentine | Date and Time: |
|---|---|
| 1520 Belle View Blvd, Ste. #5847, Alexandria, VA 22307 | May 8, 2026, at 5:00 p.m. Eastern Time |

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: April 9, 2026

_CLERK OF COURT_
                                                                        OR

_____                        _____
_Signature of Clerk or Deputy Clerk_                        _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_   Marvelle J. Ballentine
pro se; 7862 W. Irlo Bronson Mem. Hwy #82, Kissimmee, FL 34747 _____, who issues or requests this subpoena, are:
E-mail: jayballentine@protonmail.com I Tel: (407) 794-6503

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# SCHEDULE A

*Ballentine v. Meta Platforms, Inc., et al.*, Case No. 6:26-cv-00376-AGM-DCI

United States District Court for the Middle District of Florida

The responding person must produce a document sufficient to show whether the National Center for Missing and Exploited Children ("NCMEC") received or maintains any CyberTipline report, referral, or submission concerning:

    (1)  Marvelle J. Ballentine;

    (2)  Jay Ballentine; and/or

    (3)  the account-level identifier jaychizza@icloud.com

for the period July 1, 2022 through the date of compliance.

If no such CyberTipline report, referral, or submission exists, the responding person must produce a written statement so stating after a reasonable search.

This subpoena does not request and NCMEC should not produce:

    (a)  the contents of any CyberTipline report;

    (b)  any narrative text;

    (c)  attachments;

    (d)  images, video, or media;

    (e)  investigative materials; or

    (f)  any material beyond what is necessary to show the existence or nonexistence of a CyberTipline report, referral, or submission.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or

  (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT J

Case No. 3:25-cv-07671-CRB (N.D. Cal.)
Prior Proceedings Record — procedural history before
Judge Charles R. Breyer

ADRMOP,CLOSED,E-ProSe,ProSe,REFDIS

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:25-cv-07671-CRB

Ballentine v. Meta Platforms, Inc
Assigned to: Judge Charles R. Breyer
Referred to: Magistrate Judge Peter H Kang
Cause: 42:1981 Civil Rights

Date Filed: 09/09/2025
Date Terminated: 02/17/2026
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Marvelle J. Ballentine**                    represented by **Marvelle J. Ballentine**
7862 W. Irlo Bronson Memorial Hwy # 82
Kissimmee, FL 34747
407-794-6503
Email: jayballentine@protonmail.com
PRO SE

V.

**Defendant**

**Meta Platforms, Inc**                       represented by **Michelle Lynn Visser**
Orrick, Herrington & Sutcliffe
The Orrick Building
405 Howard Street
San Francisco, CA 94105
(415) 773-5518
Fax: (415) 773-5759
Email: mvisser@orrick.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Accenture LLP**                             represented by **Christopher William Keegan**
Kirkland & Ellis LLP
555 California
27th Floor
San Francisco, CA 94104
415-439-1400
Fax: 415-439-1500
Email: chris.keegan@kirkland.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Devin Anderson**
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004

202-389-5198
Email: devin.anderson@kirkland.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/09/2025 | 1 | COMPLAINT against Accenture LLP, Meta Platforms, Inc (Filing fee $ 405.). Filed by MARVELLE J. BALLENTINE. Consent/Declination due by 9/23/2025. (Attachments: # 1 Civil Cover Sheet, # 2 receipt)(amf, COURT STAFF) (Filed on 9/9/2025) (Entered: 09/09/2025) |
| 09/09/2025 | 2 | **Initial Case Management Scheduling Order with ADR Deadlines: Case Management Statement due by 12/5/2025. Initial Case Management Conference set for 12/12/2025 02:00 PM in San Francisco, - Videoconference Only. (amf, COURT STAFF) (Filed on 9/9/2025)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br><br>**(Entered: 09/09/2025)** |
| 09/09/2025 | 3 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by MARVELLE J. BALLENTINE.. (amf, COURT STAFF) (Filed on 9/9/2025) (Entered: 09/09/2025) |
| 09/10/2025 | 4 | Summons Issued as to Accenture LLP, Meta Platforms, Inc. (kmm2, COURT STAFF) (Filed on 9/10/2025) (Entered: 09/10/2025) |
| 09/15/2025 | 5 | CERTIFICATE OF SERVICE by Marvelle J. Ballentine (Ballentine, Marvelle) (Filed on 9/15/2025) (Entered: 09/15/2025) |
| 09/15/2025 | 6 | CERTIFICATE OF SERVICE by Marvelle J. Ballentine *for Accenture LLP* (Ballentine, Marvelle) (Filed on 9/15/2025) (Entered: 09/15/2025) |
| 09/17/2025 | 7 | CLERK'S NOTICE OF IMPENDING REASSIGNMENT TO A U.S. DISTRICT COURT JUDGE: The Clerk of this Court will now reassign this case to a District Judge because a party has not consented to the jurisdiction of a Magistrate Judge. You will be informed by separate notice of the district judge to whom this case is reassigned.<br><br>ALL HEARING DATES PRESENTLY SCHEDULED BEFORE THE CURRENT MAGISTRATE JUDGE ARE VACATED AND SHOULD BE RE-NOTICED FOR HEARING BEFORE THE JUDGE TO WHOM THIS CASE IS REASSIGNED.<br><br>*This is a text only docket entry; there is no document associated with this notice.* (shy, COURT STAFF) (Filed on 9/17/2025)<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>(Entered: 09/17/2025) |
| 09/18/2025 | 8 | **ORDER REASSIGNING CASE**<br><br>IT IS ORDERED that this case is reassigned using a proportionate, random and blind system pursuant to General Order No. 44 to Judge Charles R. Breyer. Magistrate Judge Alex G. Tse no longer assigned to the case.<br><br>Counsel are instructed that all future filings shall bear the updated judicial initials immediately after the case number. Counsel are reminded to verify the location of the judge on the court website. All hearing and trial dates presently scheduled are vacated. |

However, existing briefing schedules for motions remain unchanged. Motions must be renoticed for hearing before the judge to whom the case has been reassigned, but the renoticing of the hearing does not affect the prior briefing schedule. Other deadlines such as those for ADR compliance and discovery cutoff also remain unchanged.

Notice: The assigned judge participates in the Cameras in the Courtroom Pilot Project. See General Order 65 and cand.uscourts.gov/cameras.

Mark B. Busby
Clerk, United States District Court
*(This is a text-only entry generated by the court. There is no document associated with this entry.)*

Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)

(mbc, COURT STAFF) (Filed on 9/18/2025) (Entered: 09/18/2025)

| | | |
|---|---|---|
| 09/18/2025 | 9 | CLERK'S NOTICE: A Joint Case Management Statement due by 12/12/2025. Initial Case Management Conference set for 12/19/2025 at 8:30 AM in San Francisco - Videoconference Only. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (ls, COURT STAFF) (Filed on 9/18/2025) <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br> (Entered: 09/18/2025) |
| 09/25/2025 | 10 | Rule 7.1 Disclosures by Meta Platforms, Inc (Visser, Michelle) (Filed on 9/25/2025) (Entered: 09/25/2025) |
| 09/25/2025 | 11 | STIPULATION *for Extension of Defendant Meta Platforms, Inc.'s Time to Respond to Complaint* filed by Meta Platforms, Inc. (Visser, Michelle) (Filed on 9/25/2025) (Entered: 09/25/2025) |
| 09/26/2025 | 12 | NOTICE of Appearance filed by Christopher William Keegan on behalf of Accenture LLP (Keegan, Christopher) (Filed on 9/26/2025) (Entered: 09/26/2025) |
| 09/26/2025 | 13 | Corporate Disclosure Statement by Accenture LLP (Keegan, Christopher) (Filed on 9/26/2025) (Entered: 09/26/2025) |
| 09/26/2025 | 14 | Certificate of Interested Entities by Accenture LLP (Keegan, Christopher) (Filed on 9/26/2025) (Entered: 09/26/2025) |
| 09/26/2025 | 15 | STIPULATION *re Extension of Time To File Response to Plaintiff's Complaint* filed by Accenture LLP. (Keegan, Christopher) (Filed on 9/26/2025) (Entered: 09/26/2025) |
| 09/26/2025 | | Electronic filing error. Filer did not add all interested parties when prompted. Re-file this document in its entirety and when prompted, enter all affiliates or corporate parents. Re: 13 Certificate of Interested Entities filed by Accenture LLP, 14 Certificate of Interested Entities filed by Accenture LLP (jml, COURT STAFF) (Filed on 9/26/2025) (Entered: 09/26/2025) |
| 09/26/2025 | 16 | Corporate Disclosure Statement by Accenture LLP identifying Corporate Parent Accenture plc (Ireland) for Accenture LLP. (Keegan, Christopher) (Filed on 9/26/2025) (Entered: 09/26/2025) |
| 09/26/2025 | 17 | Certificate of Interested Entities by Accenture LLP identifying Corporate Parent Accenture plc (Ireland) for Accenture LLP. (Keegan, Christopher) (Filed on 9/26/2025) (Entered: 09/26/2025) |

| 10/03/2025 | 18 | MOTION for leave to appear in Pro Hac Vice *for Devin S. Anderson* ( Filing fee $ 328, receipt number ACANDC-21203140.) Filing fee previously paid on 10/03/2025 filed by Accenture LLP. (Attachments: # 1 Exhibit Certificate of Good Standing)(Anderson, Devin) (Filed on 10/3/2025) (Entered: 10/03/2025) |
|---|---|---|
| 10/07/2025 | 19 | **ORDER by Judge Charles R. Breyer: Granting 18 Motion for Pro Hac Vice, Devin S. Anderson. (ls, COURT STAFF) (Filed on 10/7/2025)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br><br>**(Entered: 10/07/2025)** |
| 10/08/2025 | 20 | MOTION to Shorten Time *Initial Case Management Conference*, MOTION for Extension of Time to File Response/Reply *Opposition to Defendants' Rule 12 Motions* filed by Marvelle J. Ballentine. (Attachments: # 1 Proposed Order)(Ballentine, Marvelle) (Filed on 10/8/2025) (Entered: 10/08/2025) |
| 10/09/2025 | 21 | MOTION for Protective Order *re Preservation of Evidence* filed by Marvelle J. Ballentine. Responses due by 10/23/2025. Replies due by 10/30/2025. (Attachments: # 1 Proposed Order)(Ballentine, Marvelle) (Filed on 10/9/2025) (Entered: 10/09/2025) |
| 10/09/2025 | 22 | MOTION for Protective Order *re Preservation of Evidence (Accenture LLP)* filed by Marvelle J. Ballentine. Responses due by 10/23/2025. Replies due by 10/30/2025. (Attachments: # 1 Proposed Order)(Ballentine, Marvelle) (Filed on 10/9/2025) (Entered: 10/09/2025) |
| 10/10/2025 | 23 | **ORDER REFERRING CASE to Magistrate Judge for Discovery purposes. Signed by Judge Charles R. Breyer on 10/10/2025. (ls, COURT STAFF) (Filed on 10/10/2025)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br><br>**(Entered: 10/10/2025)** |
| 10/10/2025 | 24 | CASE REFERRED to Magistrate Judge Peter H Kang for Discovery. (ejk, COURT STAFF) (Filed on 10/10/2025) (Entered: 10/10/2025) |
| 10/14/2025 | 25 | **[IN-CHAMBERS TEXT ONLY ORDER]:** This case has been referred to the undersigned for discovery. *See* Dkt. 23 . Accordingly, the Parties shall review and comply with this Court's Standing Order for Discovery, particularly Section H relating to discovery disputes, which is now applicable to this case.<br><br>The Court has reviewed Plaintiff's 21 22 motions for a targeted preservation order and hereby **ORDERS** the Parties to meet and confer regarding this dispute, as required by Section H.2 of this Court's Standing Order for discovery, by no later than **October 31, 2025**. The Court further **ORDERS** the Parties to file a joint status report regarding the outcome of their conferral on this dispute, including whether the dispute has been resolved, narrowed, or remains wholly unresolved, by no later than **November 4, 2025**. Upon receipt of the joint status report, the Court will direct the Parties thereafter.<br><br>**Signed by Judge Peter H. Kang on 10/14/2025.**<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (phklc2, COURT STAFF) (Filed on 10/14/2025)<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br><br>**(Entered: 10/14/2025)** |
| 10/14/2025 | 26 | OPPOSITION/RESPONSE (re 20 MOTION to Shorten Time *Initial Case Management Conference* MOTION for Extension of Time to File Response/Reply *Opposition to* |

| | | |
|---|---|---|
| | | *Defendants' Rule 12 Motions )* filed by Accenture LLP. (Attachments: # 1 Declaration of Devin S. Anderson, # 2 Proposed Order)(Anderson, Devin) (Filed on 10/14/2025) (Entered: 10/14/2025) |
| 10/14/2025 | 27 | OPPOSITION/RESPONSE (re 20 MOTION to Shorten Time *Initial Case Management Conference MOTION for Extension of Time to File Response/Reply Opposition to Defendants' Rule 12 Motions ) and Cross-Motion to Continue the Case Management Conference* filed byMeta Platforms, Inc. (Attachments: # 1 Declaration of Michelle Visser, # 2 Proposed Order)(Visser, Michelle) (Filed on 10/14/2025) (Entered: 10/14/2025) |
| 10/15/2025 | 28 | REPLY (re 20 MOTION to Shorten Time *Initial Case Management Conference MOTION for Extension of Time to File Response/Reply Opposition to Defendants' Rule 12 Motions ) Plaintiffs Reply in Support of Civil L.R. 6-3 Motion to Change Time and Opposition to Defendants Cross-Motions* filed byMarvelle J. Ballentine. (Attachments: # 1 Declaration) (Ballentine, Marvelle) (Filed on 10/15/2025) (Entered: 10/15/2025) |
| 10/15/2025 | 29 | MOTION to Shorten Time *for Decision On Pending Civil L.R. 6-3 Motion* filed by Marvelle J. Ballentine. (Attachments: # 1 Declaration)(Ballentine, Marvelle) (Filed on 10/15/2025) (Entered: 10/15/2025) |
| 10/15/2025 | 30 | Notice Of Motion And MOTION to Dismiss *Plaintiffs Complaint Pursuant To Rule 12(B) (6); Memorandum Of Points And Authorities* filed by Meta Platforms, Inc. Motion to Dismiss Hearing set for 12/12/2025 10:00 AM in San Francisco, Courtroom 06, 17th Floor. Responses due by 10/29/2025. Replies due by 11/5/2025. (Attachments: # 1 Duffey Decl, # 2 Ex. A to Duffey Decl, # 3 Proposed Order)(Visser, Michelle) (Filed on 10/15/2025) Modified on 10/16/2025 (jml, COURT STAFF). (Entered: 10/15/2025) |
| 10/15/2025 | 31 | Request for Judicial Notice re 30 MOTION to Dismiss *Defendant Meta Platforms, Inc.s Notice Of Motion And Motion To Dismiss Plaintiffs Complaint Pursuant To Rule 12(B)(6); Memorandum Of Points And Authorities* filed byMeta Platforms, Inc. (Related document(s) 30 ) (Visser, Michelle) (Filed on 10/15/2025) (Entered: 10/15/2025) |
| 10/16/2025 | 32 | **ORDER by Judge Charles R. Breyer denying 20 Motion to Shorten Time; granting 20 Motion for Extension of Time to File Response/Reply. (crblc1, COURT STAFF) (Filed on 10/16/2025)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br><br>**(Entered: 10/16/2025)** |
| 10/16/2025 | 33 | MOTION to Dismiss *Plaintiff's Complaint Pursuant to Rule 12(B)(6); Memorandum of Points and Authorities* filed by Accenture LLP. Motion to Dismiss Hearing set for 1/30/2026 10:00 AM in San Francisco, Courtroom 06, 17th Floor. Responses due by 10/30/2025. Replies due by 11/6/2025. (Attachments: # 1 Declaration of Devin S. Anderson, # 2 Proposed Order)(Anderson, Devin) (Filed on 10/16/2025) (Entered: 10/16/2025) |
| 10/17/2025 | 34 | AMENDED COMPLAINT against All Defendants. Filed by Marvelle J. Ballentine. (Ballentine, Marvelle) (Filed on 10/17/2025) (Entered: 10/17/2025) |
| 10/28/2025 | 35 | CLERK'S NOTICE VACATING MOTIONS TO DISMISS hearing set for December 12, 2025 and January 20, 2026 before the Honorable Charles R. Breyer. An amended complaint was filed on October 17, 2025. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (ls, COURT STAFF) (Filed on 10/28/2025)<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br><br>(Entered: 10/28/2025) |

| 10/28/2025 | 36 | ADMINISTRATIVE MOTION Discovery Management Scheduling Directive *Before Magistrate Judge Peter H. Kang, Discovery Referral)*; filed by Marvelle J. Ballentine. Responses due by 11/3/2025. (Attachments: # 1 Proposed Order, # 2 Declaration) (Ballentine, Marvelle) (Filed on 10/28/2025) (Entered: 10/28/2025) |
|---|---|---|
| 10/29/2025 | 37 | MOTION to Shorten Time *for Decision on Plaintiffs Civil L.R. 7-11 Administrative Motion (Rule 26(f) scheduling directive)* filed by Marvelle J. Ballentine. (Attachments: # 1 Proposed Order, # 2 Declaration)(Ballentine, Marvelle) (Filed on 10/29/2025) (Entered: 10/29/2025) |
| 10/30/2025 | 38 | OPPOSITION/RESPONSE (re 36 ADMINISTRATIVE MOTION Discovery Management Scheduling Directive *Before Magistrate Judge Peter H. Kang, Discovery Referral);* ) filed byMeta Platforms, Inc. (Visser, Michelle) (Filed on 10/30/2025) (Entered: 10/30/2025) |
| 10/30/2025 | 39 | REPLY (re 36 ADMINISTRATIVE MOTION Discovery Management Scheduling Directive *Before Magistrate Judge Peter H. Kang, Discovery Referral);* ) *Plaintiff's Opposition to Meta's Cross-Motion and Statement in Further Support of Civil L.R. 7-11 Administrative Motion* filed byMarvelle J. Ballentine. (Attachments: # 1 Proposed Order, # 2 Declaration)(Ballentine, Marvelle) (Filed on 10/30/2025) (Entered: 10/30/2025) |
| 10/31/2025 | | Set Deadline re: 25 Order. Status Report due by 11/4/2025. (jlg, COURT STAFF) (Filed on 10/31/2025) (Entered: 10/31/2025) |
| 10/31/2025 | 40 | MOTION to Dismiss *Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(6); Memorandum of Points and Authorities* filed by Accenture LLP. Motion to Dismiss Hearing set for 1/30/2026 10:00 AM in San Francisco, Courtroom 06, 17th Floor. Responses due by 11/14/2025. Replies due by 11/21/2025. (Attachments: # 1 Declaration of Devin S. Anderson, # 2 Proposed Order)(Anderson, Devin) (Filed on 10/31/2025) (Entered: 10/31/2025) |
| 10/31/2025 | 41 | MOTION to Dismiss filed by Meta Platforms, Inc. Motion to Dismiss Hearing set for 1/30/2026 10:00 AM in San Francisco, Courtroom 06, 17th Floor. Responses due by 11/14/2025. Replies due by 11/21/2025. (Attachments: # 1 Declaration of Michael Duffey, # 2 Exhibit A to Decl. of Michael Duffey, # 3 Proposed Order)(Visser, Michelle) (Filed on 10/31/2025) (Entered: 10/31/2025) |
| 10/31/2025 | 42 | Request for Judicial Notice re 41 MOTION to Dismiss filed byMeta Platforms, Inc. (Related document(s) 41 ) (Visser, Michelle) (Filed on 10/31/2025) (Entered: 10/31/2025) |
| 11/03/2025 | 43 | OPPOSITION/RESPONSE (re 36 ADMINISTRATIVE MOTION Discovery Management Scheduling Directive *Before Magistrate Judge Peter H. Kang, Discovery Referral);* ) filed byAccenture LLP. (Attachments: # 1 Declaration of Devin Anderson, # 2 Proposed Order) (Anderson, Devin) (Filed on 11/3/2025) (Entered: 11/03/2025) |
| 11/03/2025 | 44 | OPPOSITION/RESPONSE (re 40 MOTION to Dismiss *Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(6); Memorandum of Points and Authorities* ) *Plaintiff's Opposition to Accenture's Motion to Dismiss First Amended Complaint* filed byMarvelle J. Ballentine. (Attachments: # 1 Declaration)(Ballentine, Marvelle) (Filed on 11/3/2025) (Entered: 11/03/2025) |
| 11/04/2025 | 45 | STATUS REPORT *Plaintiff's Notice Regarding Dkt. 25 Status Report Submission And Exhibits* by Marvelle J. Ballentine. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit) (Ballentine, Marvelle) (Filed on 11/4/2025) (Entered: 11/04/2025) |
| 11/04/2025 | 46 | JOINT STATUS REPORT by Meta Platforms, Inc. (Visser, Michelle) (Filed on 11/4/2025) Modified on 11/5/2025 (kmm2, COURT STAFF). (Entered: 11/04/2025) |
| 11/10/2025 | 47 | **[IN-CHAMBERS TEXT ONLY ORDER]:** |

Plaintiff's 36 administrative motion seeking a "discovery-management scheduling directive" is **DENIED WITH PREJUDICE** given that the Initial Case Management Conference has already been vacated and the basis for the motion is thus no longer operative.

Plaintiff's 37 motion to shorten time for a decision on the administrative motion is **DENIED WITH PREJUDICE** for failure to demonstrate sufficient good cause or sufficient particularity as to why shortened time was required, especially in light of the fact that the Initial Case Management Conference has already been vacated. *See* Civil L.R. 6-3(a)(1).

Plaintiff's 21 22 motions for a targeted preservation order are **DENIED WITHOUT PREJUDICE** for failure to show entitlement to the relief sought. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding that trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"); *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion.").

**Signed by Judge Peter H. Kang on 11/10/2025.**

*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (phklc2, COURT STAFF) (Filed on 11/10/2025)

Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)

(Entered: 11/10/2025)

| | | |
|---|---|---|
| 11/12/2025 | 48 | OPPOSITION/RESPONSE (re 41 MOTION to Dismiss ) *Plaintiffs Opposition To Meta Platform Inc.s Motion To Dismiss First Amended Complaint* filed byMarvelle J. Ballentine. (Ballentine, Marvelle) (Filed on 11/12/2025) (Entered: 11/12/2025) |
| 11/18/2025 | 49 | STIPULATION WITH PROPOSED ORDER re 48 Opposition/Response to Motion, 44 Opposition/Response to Motion, *for Extension of Defendant Meta Platforms, Inc. and Accenture LLP's Time to File Reply in Support of Motion to Dismiss* filed by Meta Platforms, Inc. (Attachments: # 1 Proposed Order)(Visser, Michelle) (Filed on 11/18/2025) (Entered: 11/18/2025) |
| 11/19/2025 | 50 | **STIPULATION AND ORDER FOR EXTENSION OF DEFENDANT META PLATFORMS, INC. AND ACCENTURE LLPS TIME TO FILE REPLY IN SUPPORT OF MOTION TO DISMISS by Judge Charles R. Breyer: Granting 49 Stipulation. Replies due by 12/5/2025.** (ls, COURT STAFF) (Filed on 11/19/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) |
| | | (Entered: 11/19/2025) |
| 11/19/2025 | 51 | CLERK'S NOTICE VACATING CASE MANAGEMENT CONFERENCE set for December 19, 2025 before the Honorable Charles R. Breyer. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (ls, COURT STAFF) (Filed on 11/19/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) |
| | | (Entered: 11/19/2025) |
| 12/05/2025 | 52 | REPLY (re 41 MOTION to Dismiss ) filed byMeta Platforms, Inc. (Visser, Michelle) (Filed on 12/5/2025) (Entered: 12/05/2025) |

| 12/05/2025 | 53 | REPLY (re 40 MOTION to Dismiss *Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(6); Memorandum of Points and Authorities* ) filed by Accenture LLP. (Anderson, Devin) (Filed on 12/5/2025) (Entered: 12/05/2025) |
|---|---|---|
| 01/06/2026 | 54 | Clerk's Notice of Video Recording Request. Video Camera hearing set for 1/30/2026 at 10:00 AM. Objections to Video Recording due 1/13/2026. (ls, COURT STAFF) (Filed on 1/6/2026)<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 01/06/2026) |
| 01/20/2026 | 55 | CLERK'S NOTICE VACATING MOTIONS TO DISMISS hearing set for January 30, 2026 before the Honorable Charles R. Breyer. *(This is a text-only entry generated by the court. There is no document associated with this entry.)*. Motion Hearing set for 2/13/2026 at 10:00 AM in San Francisco - Videoconference Only before Judge Charles R. Breyer. This proceeding will be held via a Zoom webinar.<br><br>**Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/crb<br><br>**Court Appearances:** Advanced notice is required of counsel or parties who wish to be identified by the court as making an appearance or will be participating in the argument at the hearing. A list of names and emails must be sent to the CRD at crbcrd@cand.uscourts.gov no later than February 17, 2026 at 3:00 PM PST.<br><br>**Civ LR 77-3(d).** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>Motion Hearing set for 2/13/2026 at 10:00 AM in San Francisco - Videoconference Only before Judge Charles R. Breyer. (ls, COURT STAFF) (Filed on 1/20/2026)<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 01/20/2026) |
| 01/29/2026 | 56 | ADMINISTRATIVE MOTION Plaintiff respectfully requests that the Court take judicial notice of the existence, date, and public-comment window stated in the Oversight Board Announcement. filed by Marvelle J. Ballentine. Responses due by 2/2/2026. (Attachments: # 1 Proposed Order, # 2 Declaration, # 3 Exhibit)(Ballentine, Marvelle) (Filed on 1/29/2026) (Entered: 01/29/2026) |
| 02/09/2026 | 57 | CLERK'S NOTICE VACATING MOTIONS TO DISMISS hearing set for February 13, 2026 before the Honorable Charles R. Breyer. *(This is a text-only entry generated by the court. There is no document associated with this entry.)*. Motion Hearing set for 2/20/2026 at 10:00 AM in San Francisco - Videoconference Only before Judge Charles R. Breyer. This proceeding will be held via a Zoom webinar.<br><br>**Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/crb<br><br>**Court Appearances:** Advanced notice is required of counsel or parties who wish to be identified by the court as making an appearance or will be participating in the argument at the hearing. A list of names and emails must be sent to the CRD at crbcrd@cand.uscourts.gov no later than February 17, 2026 at 3:00 PM PST. |

**Civ LR 77-3(d).** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.

**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.

Motion Hearing set for 2/20/2026 at 10:00 AM in San Francisco - Videoconference Only before Judge Charles R. Breyer. (ls, COURT STAFF) (Filed on 2/9/2026)

Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 02/09/2026)

| Date | # | Description |
|------|-----|-------------|
| 02/09/2026 | 58 | NOTICE of Pendency of Other Action or Proceeding by Marvelle J. Ballentine (Ballentine, Marvelle) (Filed on 2/9/2026) (Entered: 02/09/2026) |
| 02/12/2026 | 59 | MOTION to Transfer Case *to the Middle District of Florida* filed by Marvelle J. Ballentine. Responses due by 2/26/2026. Replies due by 3/5/2026. (Attachments: # 1 Declaration)(Ballentine, Marvelle) (Filed on 2/12/2026) (Entered: 02/12/2026) |
| 02/13/2026 | 60 | MOTION to Shorten Time *on Plaintiff's Motion to Transfer Case to the Middle District of Florida* filed by Marvelle J. Ballentine. (Attachments: # 1 Declaration)(Ballentine, Marvelle) (Filed on 2/13/2026) (Entered: 02/13/2026) |
| 02/13/2026 | 61 | EXHIBITS re 59 MOTION to Transfer Case *to the Middle District of Florida -Plaintiff's Supplemental Declaration in Support of Motion to Transfer Case to the Middle District of Florida* filed byMarvelle J. Ballentine. (Related document(s) 59 ) (Ballentine, Marvelle) (Filed on 2/13/2026) (Entered: 02/13/2026) |
| 02/13/2026 | 62 | CLERK'S NOTICE VACATING MOTION TO DISMISS hearing set for February 20, 2026 before the Honorable Charles R. Breyer. *(This is a text-only entry generated by the court. There is no document associated with this entry.)*. Motion Hearing set for 3/27/2026 at 10:00 AM in San Francisco - Videoconference Only before Judge Charles R. Breyer. This proceeding will be held via a Zoom webinar. **Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/crb **Court Appearances:** Advanced notice is required of counsel or parties who wish to be identified by the court as making an appearance or will be participating in the argument at the hearing. A list of names and emails must be sent to the CRD at crbcrd@cand.uscourts.gov no later than March 24, 2026 at 3:00 PM PST. **Civ LR 77-3(d).** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited. **Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/. Motion Hearing set for 3/27/2026 at 10:00 AM in San Francisco - Videoconference Only before Judge Charles R. Breyer. (ls, COURT STAFF) (Filed on 2/13/2026) Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 02/13/2026) |
| 02/13/2026 | 63 | NOTICE of Voluntary Dismissal by Marvelle J. Ballentine (Ballentine, Marvelle) (Filed on 2/13/2026) (Entered: 02/13/2026) |

| 02/17/2026 | ***Civil Case Terminated. (ls, COURT STAFF) (Filed on 2/17/2026) (Entered: 02/17/2026) |
|---|---|

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/06/2026 11:50:46 | | |
| **PACER Login:** glazuser | **Client Code:** | |
| **Description:** Docket Report | **Search Criteria:** | 3:25-cv-07671-CRB |
| **Billable Pages:** 9 | **Cost:** | 0.90 |