# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MARVELLE J. BALLENTINE,

    *Plaintiff,*

    v.                       Case No. 6:26-cv-00376-AGM-DCI

META PLATFORMS, INC.; ACCENTURE LLP;
TASKUS, INC.; and GENPACT LIMITED,
    *Defendants.*

## PLAINTIFF'S PROTECTIVE OPPOSITION TO GENPACT LIMITED'S MOTION TO DISMISS AND REQUEST TO GRANT LEAVE TO AMEND

### I.    INTRODUCTION

Plaintiff files this opposition protectively. Plaintiff does not elect to stand on the First Amended Complaint. Plaintiff attaches as Exhibit A a proposed Second Amended Complaint to preserve the amendment issue and to demonstrate that the pleading Plaintiff seeks leave to file is materially different from the First Amended Complaint. This filing is submitted to prevent Genpact's motion from being treated as unopposed, to oppose dismissal with prejudice, and to place the actual proposed amended pleading before the Court for purposes of Rule 15(a)(2).

Plaintiff's Motion for Leave to Amend remains pending. The operative pleading is therefore unsettled. Dismissal with prejudice based on the First

Amended Complaint—a pleading Plaintiff does not elect to defend—is premature while that motion remains before the Court.

Genpact's motion (Dkt. 96) seeks dismissal without leave to amend. Genpact does not seek transfer. This protective opposition therefore addresses the threshold question: whether dismissal with prejudice is warranted where Plaintiff has submitted a materially different proposed pleading that addresses the deficiencies Genpact identifies.

This opposition proceeds as follows.

## II.    ISSUE TO BE DECIDED

Whether dismissal with prejudice is warranted where Plaintiff does not elect to stand on the First Amended Complaint and submits, as Exhibit A, a proposed Second Amended Complaint that materially changes the pleading and addresses Genpact's personal-jurisdiction, attribution, pleading-sufficiency, § 230, and claim-structure objections.

## III.    RULE 15(a)(2)

### A.    Standard

Under Fed. R. Civ. P. 15(a)(2), courts "should freely give leave when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962). This mandate is to be heeded; absent an apparent or declared reason such as undue delay, bad faith, repeated failure to cure, undue prejudice, or futility, denial of leave is an abuse of discretion. *Id.* at 182. The Eleventh Circuit likewise requires a substantial reason to deny leave to amend. *Laurie v. Ala. Ct. of Crim. Appeals*, 256 F.3d 1266, 1274

2

(11th Cir. 2001). A proposed amendment may be denied as futile only when the complaint as amended would still be properly dismissed. *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010).

### B.    Non-Election

Plaintiff does not elect to stand on the First Amended Complaint as the final pleading. Plaintiff's opposition is conditional and protective. Plaintiff preserves the position that Exhibit A is the pleading the Court should evaluate before any dismissal with prejudice.

### C.    Futility Against Exhibit A

Futility must be assessed against the proposed amended pleading, not against a pleading Plaintiff seeks to replace. Exhibit A materially changes the allegations, the jurisdictional basis, the claim structure, the attribution framework, and the parties' roles. Dismissal with prejudice at this stage would collapse Rule 12 analysis into a denial of amendment without evaluation of the proposed pleading. *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010).

### D.    Status of Exhibit A

Exhibit A is not the operative pleading unless leave is granted. It is submitted to preserve the amendment issue and to show that the deficiencies Genpact characterizes as incurable are addressed by a materially different proposed pleading.

### IV.    EXHIBIT A ADDRESSES GENPACT'S OBJECTIONS

### A.    Personal Jurisdiction

3

Genpact's objection: The First Amended Complaint lacks Genpact-specific jurisdictional allegations; Genpact is a Bermuda corporation with no Florida contacts; neither general nor specific jurisdiction exists; Rule 4(k)(2) is unavailing because Genpact's only alleged contacts are in India.

Even assuming the First Amended Complaint's jurisdictional allegations as to Genpact are deficient, Exhibit A materially changes the jurisdictional posture. Subsection C of the Personal Jurisdiction section of Exhibit A ("Jurisdictional Bases Common to All Codefendants") alleges each Codefendant performs appeal-decision services for Meta on a continuing basis under written services agreements within the shared appeal-decision workflow; each Codefendant knows that Meta's services reach Facebook account-holders throughout the United States, including in Florida, and that the operative effect of appeal decisions made by each Codefendant falls upon Florida-resident Facebook account-holders; and each Codefendant participates in the shared appeal-decision workflow and uses Meta-provided appeal interfaces that display, alongside each transmitted notice, the account-holder's profile photograph and any government-identification image submitted to Meta. Ex. A, ¶¶ 17–19.

Subsection F of the Personal Jurisdiction section of Exhibit A ("Personal Jurisdiction Over Genpact Limited") alleges Genpact Limited performs appeal-decision services for Meta on a continuing basis under written services agreements; Genpact Limited is registered to transact business in Florida and has appointed Cogency Global Inc., 115 North Calhoun Street, Suite 4, Tallahassee,

4

Florida 32301, as its agent for service of process in this State; Genpact Limited's appeal decision under its services agreement with Meta operated upon Plaintiff's Florida-resident Account on July 4, 2022, in the alternative pleaded under Fed. R. Civ. P. 8(d); that appeal decision was an intentional act directed, through Meta's appeal-decision workflow, at Plaintiff in Florida; and Genpact Limited knew, or in the exercise of reasonable care should have known, that the brunt of the injury would be sustained by Plaintiff in Florida. Ex. A, ¶¶ 28–31. Plaintiff alleges Genpact's Florida registration in support of its continuing-business-venture and service-of-process allegations, expressly disclaiming reliance on it as a basis for general jurisdiction. Ex. A, ¶ 28.

Exhibit A cites Fla. Stat. §§ 48.193(1)(a)(1) (operation of a business venture in Florida), 48.193(1)(a)(2) (tortious act within Florida), and 48.193(1)(a)(6) (causation of injury within Florida while engaged in service activities directed at Florida) as independent long-arm bases for Genpact. Ex. A, ¶ 30. Exhibit A pleads Fed. R. Civ. P. 4(k)(2) in the alternative for Plaintiff's federal civil-rights claims. Ex. A, ¶ 31. Subsection G of the Personal Jurisdiction section of Exhibit A ("Conspiracy and Joint-Enterprise Jurisdiction") alleges the shared appeal-decision workflow further supports the relationship among Defendants' forum-directed conduct. Ex. A, ¶ 32.

Genpact's personal-jurisdiction argument is directed at the First Amended Complaint. Exhibit A pleads Genpact-specific jurisdictional facts, Florida registration, alternative long-arm bases, and alternative Rule 4(k)(2) jurisdiction.

The Court should evaluate Exhibit A before dismissing Genpact with prejudice for a jurisdictional pleading deficiency.

### B.    Attribution — Group Pleading

Genpact's objection: The First Amended Complaint improperly groups Genpact with other "Vendor Defendants" without specifying which vendor reviewed Plaintiff's account; Plaintiff "lumps all three together" and this failure alone warrants dismissal.

Even assuming the First Amended Complaint's attribution framework is deficient, Exhibit A materially changes the attribution structure. Exhibit A retires the "Vendor Defendants" grouping entirely. Exhibit A uses the defined term "Codefendant" (singular) to refer to whichever of Accenture LLP, TaskUs, Inc., or Genpact Limited decided Plaintiff's appeal. Ex. A, Defined Terms, ¶ 40.

The Alternative Pleading as to Codefendants section of Exhibit A establishes: each Codefendant performed appeal-decision services for Meta during the relevant period under a written services agreement; each used Meta-provided appeal interfaces; each decided account-holders' appeals subject to Meta's authority to act on or rescind. Ex. A, ¶ 42. The identity of the Codefendant that decided Plaintiff's appeal on July 4, 2022 is not within Plaintiff's personal knowledge and has not been disclosed by any Defendant. The information necessary to identify that Codefendant is exclusively within Defendants' possession and control. Plaintiff therefore pleads, under Fed. R. Civ. P. 8(d)(2) and 8(d)(3), in the alternative, that Plaintiff's appeal on July 4, 2022 was decided by Accenture LLP; or by TaskUs,

Inc.; or by Genpact Limited. Ex. A, ¶ 43. Allegations concerning Plaintiff's appeal are pleaded against each Codefendant in the alternative as the Codefendant. Allegations concerning the shared appeal-decision workflow are pleaded against each Codefendant based on that Codefendant's own participation. Ex. A, ¶ 44.

Exhibit A preserves alternative pleading under Fed. R. Civ. P. 8(d). The identity of the specific Codefendant that decided Plaintiff's appeal is within Defendants' exclusive possession. That is a basis for alternative pleading at the pleading stage. Alternative identification is proper until Defendants' own records identify the responsible party. The Court should evaluate Exhibit A's restructured attribution framework before dismissing for group pleading.

## C.    Intentional Discrimination (§ 1981 / § 1982)

Genpact's objection: Plaintiff fails to plead intentional racial discrimination or identify similarly situated comparators; the alleged comparators are differently situated in all respects; Plaintiff does not allege Genpact specifically reviewed Plaintiff's account or the comparators' accounts.

Even assuming the First Amended Complaint's comparator allegations are deficient, Exhibit A restructures the comparator framework and adds documented-knowledge allegations. Section C of the Factual Allegations in Exhibit A presents Table 1, identifying five white comparators by name or identifier. Ex. A, ¶ 59, Table 1. Each white comparator received a notice arising from an identified factual predicate attributed to that comparator; Plaintiff's Notice was not. Each white comparator was returned to third-party contracting capacity and account-

7

resident business property; Plaintiff was not. The comparator axis in Exhibit A is structured around a single variable: each comparator received a substantively similar notice, proceeded through the same shared appeal-decision workflow (Ex. A, Section D, ¶¶ 61–67), and the differential treatment was restoration versus non-restoration.

Section E of the Factual Allegations in Exhibit A ("Knowledge of Racial Disparities") alleges Meta commissioned an external civil-rights audit (2019–2020) documenting differential adverse appeal outcomes affecting African American users; Meta conducted internal research (2019–2021) identifying an annualized loss of approximately 2.7 percent for Black account-holders; Meta has not deployed remediation; Meta has not published appeal-outcome data disaggregated by race; since 2024, Meta has dismantled internal civil-rights infrastructure; and each Defendant continues to operate the shared appeal-decision workflow with knowledge of the racial disparities described in Section E. Ex. A, ¶¶ 68–72.

Section B of the Factual Allegations in Exhibit A ("Contract Severance and Appeal") alleges Plaintiff's profile photograph and the image of Plaintiff's United States passport—each displaying Plaintiff as a Black man—were displayed on the Codefendant's appeal interface alongside the Notice at the time the Codefendant decided Plaintiff's appeal. Ex. A, ¶¶ 54–56.

Genpact's comparator and intentional-discrimination arguments are directed at the First Amended Complaint. Exhibit A restructures the comparator

framework around Table 1, adds documented-knowledge allegations in Section E, and pleads the visibility of Plaintiff's race on the appeal interface in Section B. The Court should evaluate Exhibit A's restructured framework before dismissing the § 1981 and § 1982 claims with prejudice.

## D.    Section 1983

Genpact's objection: The § 1983 claim fails because Genpact is a private company and not a state actor.

Exhibit A does not assert a claim under 42 U.S.C. § 1983. The § 1983 claim has been withdrawn. This objection is moot as to Exhibit A.

## E.    Section 1985(3) — Predicate

Genpact's objection: The § 1985(3) claim fails because §§ 1981 and 1982 are insufficient predicates under *Jimenez v. Wellstar Health System*, 596 F.3d 1304, 1312 (11th Cir. 2010); the only rights the Supreme Court has declared enforceable against private conspirators under § 1985(3) are the right to interstate travel and the right against involuntary servitude; Plaintiff fails to plead non-conclusory conspiracy allegations.

Even assuming Genpact's predicate argument has merit against the First Amended Complaint, Exhibit A materially changes the predicate. Count III of Exhibit A grounds the § 1985(3) claim in the Thirteenth Amendment to the Constitution of the United States. Exhibit A alleges the Thirteenth Amendment prohibits slavery and its badges and incidents and is enforceable against private conduct. Exhibit A alleges racial discrimination in the making, performance, and

enforcement of contracts and in the holding and conveying of property in modern commerce is a badge and incident of slavery within the meaning of the Thirteenth Amendment. Ex. A, Count III, ¶¶ 94–95.

This addresses Genpact's *Jimenez* objection by shifting Count III from statutory predicates to a constitutional predicate involving Thirteenth Amendment rights, which *Griffin* and *Carpenters* recognize as capable of supporting § 1985(3) claims against private conspirators. Whether that constitutional predicate ultimately succeeds should be evaluated against Exhibit A, not used to dismiss the First Amended Complaint with prejudice.

Exhibit A pleads the agreement through specific factual allegations: (a) Meta's establishment of, and the Codefendants' staffing of, the shared appeal-decision workflow on appeal interfaces displaying race-visible identity materials; (b) the operation of that workflow in an environment of documented racial disparities, as alleged in Section E; (c) Meta's failure to deploy remediation; and (d) the disparate restoration outcomes reflected in Table 1. Ex. A, Count III, ¶ 96. Genpact's § 1985(3) predicate argument is directed at the First Amended Complaint's statutory predicates. Exhibit A substitutes a Thirteenth Amendment constitutional predicate and adds specific factual allegations of agreement. The Court should evaluate Exhibit A before finding the § 1985(3) claim futile.

## F.    Section 230

Genpact's objection: Section 230(c)(1) bars all claims; Genpact qualifies as a "user" or "provider" of an interactive computer service; Plaintiff's content is

third-party content; the claims seek to hold Genpact liable for exercising a publisher's editorial function.

Even assuming Genpact's § 230 argument has merit against the First Amended Complaint, Exhibit A materially changes the theory of the case. Exhibit A does not allege that any Defendant removed content. Exhibit A does not identify any content. Exhibit A does not seek to impose liability on Genpact as the publisher or speaker of content provided by another. Exhibit A alleges Defendants interfered with Plaintiff's third-party contracts and withheld Plaintiff's account-resident business property through a race-visible shared appeal-decision workflow.

Count I of Exhibit A asserts 42 U.S.C. § 1981 (interference with right to make and enforce contracts with third parties). Ex. A, Count I, ¶¶ 73–83. Count II asserts 42 U.S.C. § 1982 (interference with right to hold and convey property). Ex. A, Count II, ¶¶ 84–92. Count III asserts 42 U.S.C. § 1985(3) (conspiracy grounded in the Thirteenth Amendment). Ex. A, Count III, ¶¶ 93–100. These claims do not require the Court to treat Genpact as the publisher or speaker of content provided by another. The § 230(c)(1) analysis Genpact applies to the First Amended Complaint does not transfer to a pleading that does not allege publication, does not identify content, and does not invoke a publisher function. The Court should evaluate Exhibit A's materially different theory before finding futility based on § 230.

**G.    Transfer as Less Drastic Remedy**

If the Court concludes that this District lacks personal jurisdiction over Genpact, Plaintiff requests transfer rather than dismissal under 28 U.S.C. § 1406(a) or, in the alternative, 28 U.S.C. § 1631. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67 (1962), recognizes that transfer may serve the interest of justice even where the transferor court lacks personal jurisdiction over the defendant. Section 1631 separately authorizes transfer where there is a want of jurisdiction and transfer is in the interest of justice.

## V.    REQUESTED RELIEF

Plaintiff respectfully requests that the Court:

1.    Deny Genpact's Motion to Dismiss;

2.    Alternatively, deny the motion without prejudice to renewal against the operative amended pleading;

3.    Alternatively, defer ruling until the Court decides Plaintiff's Motion for Leave to Amend;

4.    Alternatively, dismiss without prejudice rather than with prejudice;

5.    Alternatively, grant leave to amend under Fed. R. Civ. P. 15(a)(2);

6.    Alternatively, if the Court finds personal jurisdiction lacking, transfer the claims against Genpact under 28 U.S.C. § 1406(a) or § 1631 rather than dismissing with prejudice;

7.    Preserve Plaintiff's objection to any denial of leave to amend and any dismissal with prejudice entered before the Court evaluates Exhibit A.

## VI.    PRESERVATION AND NON-WAIVER

Plaintiff preserves the position that the proposed Second Amended Complaint materially changes the action and addresses the deficiencies Genpact identifies, including personal jurisdiction, attribution, § 230 framing, and claim structure. Plaintiff does not elect to stand on the First Amended Complaint.

Nothing in this protective opposition should be construed as a concession that the First Amended Complaint is the final pleading Plaintiff elects to defend, as a waiver of Plaintiff's pending or renewed request for leave to amend, or as agreement with Genpact's characterization of Plaintiff's claims as content-removal claims.

Futility must be assessed against the proposed amended pleading, not against a pleading Plaintiff seeks to replace. Because Exhibit A materially changes the allegations, parties' roles, jurisdictional basis, attribution framework, and claim structure, dismissal with prejudice at this stage would improperly collapse Rule 12 analysis into a denial of amendment without meaningful evaluation of the proposed pleading.

Date: May 11, 2026                                    Respectfully submitted

Marvelle J. Ballentine
Plaintiff, pro se
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
Telephone: (407) 794-6503
jayballentine@protonmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2026 I filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notification of such filing to all counsel of record.

Marvelle J. Ballentine
Plaintiff, *pro se*

15