# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MARVELLE J. BALLENTINE,

    *Plaintiff,*

        v.                      Case No. 6:26-cv-00376-AGM-DCI

META PLATFORMS, INC.; ACCENTURE LLP;
TASKUS, INC.; and GENPACT LIMITED,

    *Defendants.*

## PROPOSED SECOND AMENDED COMPLAINT

### PRELIMINARY STATEMENT

1.    My name is Marvelle J. Ballentine. I am a Black citizen of the United States. I performed third-party contracts with customers and with the National RV Training Academy through a Facebook account that was the instrument of those contracts. On July 4, 2022, Meta issued a notice that interrupted my ability to perform those contracts and required me to submit government-issued identification to appeal. I submitted my United States passport. Meta transmitted the notice and my identity materials to a Codefendant. The Codefendant decided my appeal adversely to me with my race-visible identity materials displayed on the appeal interface. Meta then withheld my account-resident business property and interfered with my third-party contracts performed through the Account. Meta has not returned Plaintiff to the third-party contracting capacity performed

through the Account while similarly situated white users have been returned to theirs. I bring this action under 42 U.S.C. §§ 1981, 1982, and 1985(3).

2.    Meta operates a shared appeal-decision workflow with the Codefendants under continuing services agreements. Meta has measured, but has not remediated, racial disparities in adverse appeal outcomes for Black Facebook account-holders. Defendant Accenture's public Responsible AI position has acknowledged that algorithmic review without identity-masking produces differential error rates by race. Meta's own internal research between 2019 and 2021 identified differential adverse appeal outcomes by race. The workflow continued to operate without identity-masking on July 4, 2022.

3.    I held a continuing-education contract with the National RV Training Academy, performed through Facebook groups. I built a recreational-vehicle repair business and formed contracts to perform repairs for customers on the platform. My customers, my communications, my appointments, my creative work, and my credentials lived inside the Account.

4.    I respectfully ask this Court for declaratory relief, return of my account-resident business property, identity-masking and race-neutral appeal-decision procedures sufficient to prevent recurrence as to me, compensatory and punitive damages, and attorneys' fees and costs to the extent recoverable.

2

**JURISDICTION AND VENUE**

**A.    Subject-Matter Jurisdiction**

5.    This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and (4). Plaintiff's claims arise under 42 U.S.C. §§ 1981, 1982, and 1985(3). The Court has authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202.

**B.    Venue**

6.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to Plaintiff's claims occurred in this District. Plaintiff resided in this District at all times relevant to this action. Plaintiff operated his recreational-vehicle repair business from this District. The contractual relationships impaired by Defendants' conduct were formed and performed through transactions originating from and directed to Plaintiff's place of business in this District. Plaintiff's Facebook account and all account-resident business property identified herein were accessed, maintained, and used from this District. The injuries alleged were sustained in this District.

**PERSONAL JURISDICTION**

**A.    Statutory and Constitutional Framework**

7.    Personal jurisdiction over each Defendant is predicated on Florida's long-arm statute, Fla. Stat. § 48.193, and on the requirements of due process under the Fourteenth Amendment to the United States Constitution.

8.    For Plaintiff's federal civil-rights claims under 42 U.S.C. §§ 1981, 1982, and 1985(3), personal jurisdiction is additionally predicated, in the

3

alternative, on Fed. R. Civ. P. 4(k)(2), based on each Defendant's contacts with the United States as a whole.

9.     The conduct giving rise to Plaintiff's claims arose out of and is related to each Defendant's purposeful contacts with this State as set forth in the subsections that follow.

**B.     Personal Jurisdiction Over Meta Platforms, Inc.**

10.     Meta operates the Facebook service throughout the United States, including in Florida, and derives substantial revenue from Florida-based users and Florida-based businesses. Meta operates Marketplace, Groups, Pages, Messenger, and related commercial features that mediate commercial transactions and contractual relationships among Florida users and between Florida users and out-of-state counterparties.

11.     Meta operates a paid-advertising business directed at residents and businesses in Florida. Meta solicits Florida advertisers through Facebook for Business. Meta sells paid-advertising services to Florida-based advertisers. Meta delivers paid advertisements to Florida-based users.

12.     Plaintiff performed third-party contracts with customers and with the National RV Training Academy through the Account from Florida.

13.     On July 4, 2022, Meta directed acts at Plaintiff's Account while Plaintiff was located in Florida. Meta issued the Notice and transmitted it to Plaintiff in Florida. Meta required Plaintiff, at his Florida residence, to submit government-issued identification to appeal. Plaintiff submitted his United States

4

passport from Florida. Meta transmitted the Notice and Plaintiff's identity materials to a Codefendant. Meta then withheld Plaintiff's account-resident business property and interfered with Plaintiff's third-party contracts performed through the Account in Florida. Meta's continuing withholding of that property and continuing interference with those Florida contracts, including after Plaintiff's April 22, 2025 demand transmitted from Florida, constitutes ongoing conduct directed at Plaintiff in Florida.

14.    The conduct alleged in this Subsection constitutes the operation of a business venture in Florida within the meaning of Fla. Stat. § 48.193(1)(a)(1); tortious acts within Florida within the meaning of Fla. Stat. § 48.193(1)(a)(2); and the causation of injury within Florida while soliciting business and providing services to persons within Florida within the meaning of Fla. Stat. § 48.193(1)(a)(6).

15.    Meta purposefully availed itself of the privilege of conducting business in Florida. Plaintiff's claims arise out of and relate to Meta's Florida-directed contacts alleged in this Subsection. Meta's intentional acts were expressly directed at Plaintiff in Florida and the brunt of the resulting injury was sustained by Plaintiff in Florida. The exercise of personal jurisdiction over Meta is consistent with traditional notions of fair play and substantial justice.

16.    In the alternative, for Plaintiff's federal civil-rights claims, this Court has personal jurisdiction over Meta under Fed. R. Civ. P. 4(k)(2). Meta is a corporation organized under the laws of Delaware with its principal place of

business in California. Meta has continuous and systematic contacts with the United States as a whole.

### C.    Jurisdictional Bases Common to All Codefendants

17.    Each Codefendant performs appeal-decision services for Meta on a continuing basis under written services agreements with Meta within the shared appeal-decision workflow.

18.    Each Codefendant knows that Meta's services reach Facebook account-holders throughout the United States, including in Florida, and that the operative effect of appeal decisions made by each Codefendant under its services agreement with Meta falls upon Florida-resident Facebook account-holders.

19.    Each Codefendant participates in the shared appeal-decision workflow alleged in Section D of the Factual Allegations and uses Meta-provided appeal interfaces that display, alongside each transmitted notice, the account-holder's profile photograph and any government-identification image submitted to Meta.

### D.    Personal Jurisdiction Over Accenture LLP

20.    Accenture LLP performs appeal-decision services for Meta on a continuing basis under written services agreements. Accenture LLP staffs approximately 5,800 personnel dedicated to performing appeal-decision services for Meta's platforms. Accenture LLP receives substantial annual revenue from its services agreements with Meta. Accenture LLP also conducts continuing business operations in Florida, soliciting and performing services for clients located in

Florida and maintaining a continuous and systematic commercial presence in this State.

21. Accenture LLP's appeal decision under its services agreement with Meta operated upon Plaintiff's Florida-resident Account on July 4, 2022, in the alternative pleaded under Fed. R. Civ. P. 8(d). That appeal decision was an intentional act directed, through Meta's appeal-decision workflow, at Plaintiff in Florida. Accenture LLP knew, or in the exercise of reasonable care should have known, that the brunt of the injury caused by that appeal decision would be sustained by Plaintiff in Florida.

22. The conduct alleged in this Subsection constitutes the operation of a business venture in Florida within the meaning of Fla. Stat. § 48.193(1)(a)(1); a tortious act within Florida within the meaning of Fla. Stat. § 48.193(1)(a)(2); and the causation of injury within Florida while engaged in solicitation and service activities directed at Florida within the meaning of Fla. Stat. § 48.193(1)(a)(6). Accenture LLP purposefully availed itself of the privilege of conducting business in Florida.

23. In the alternative, for Plaintiff's federal civil-rights claims, this Court has personal jurisdiction over Accenture LLP under Fed. R. Civ. P. 4(k)(2).

### E.    Personal Jurisdiction Over TaskUs, Inc.

24. TaskUs, Inc. performs appeal-decision services for Meta on a continuing basis under written services agreements. TaskUs, Inc. disclosed in its

securities filings that its largest client comprised 22% of its fiscal-year 2024 revenue, which client was Meta Platforms, Inc.

25. TaskUs, Inc.'s appeal decision under its services agreement with Meta operated upon Plaintiff's Florida-resident Account on July 4, 2022, in the alternative pleaded under Fed. R. Civ. P. 8(d). That appeal decision was an intentional act directed, through Meta's appeal-decision workflow, at Plaintiff in Florida. TaskUs, Inc. knew, or in the exercise of reasonable care should have known, that the brunt of the injury caused by that appeal decision would be sustained by Plaintiff in Florida.

26. The conduct alleged in this Subsection constitutes a tortious act within Florida within the meaning of Fla. Stat. § 48.193(1)(a)(2) and the causation of injury within Florida while engaged in service activities directed at Florida within the meaning of Fla. Stat. § 48.193(1)(a)(6). TaskUs, Inc. purposefully availed itself of the privilege of conducting business in Florida.

27. In the alternative, for Plaintiff's federal civil-rights claims, this Court has personal jurisdiction over TaskUs, Inc. under Fed. R. Civ. P. 4(k)(2).

**F.    Personal Jurisdiction Over Genpact Limited**

28. Genpact Limited performs appeal-decision services for Meta on a continuing basis under written services agreements. Genpact Limited is registered to transact business in Florida and has appointed Cogency Global Inc., 115 North Calhoun Street, Suite 4, Tallahassee, Florida 32301, as its agent for service of process in this State. Plaintiff alleges Genpact Limited's Florida registration in

8

support of its continuing-business-venture and service-of-process allegations and not as a basis for general jurisdiction.

29.    Genpact Limited's appeal decision under its services agreement with Meta operated upon Plaintiff's Florida-resident Account on July 4, 2022, in the alternative pleaded under Fed. R. Civ. P. 8(d). That appeal decision was an intentional act directed, through Meta's appeal-decision workflow, at Plaintiff in Florida. Genpact Limited knew, or in the exercise of reasonable care should have known, that the brunt of the injury caused by that appeal decision would be sustained by Plaintiff in Florida.

30.    The conduct alleged in this Subsection constitutes the operation of a business venture in Florida within the meaning of Fla. Stat. § 48.193(1)(a)(1); a tortious act within Florida within the meaning of Fla. Stat. § 48.193(1)(a)(2); and the causation of injury within Florida while engaged in service activities directed at Florida within the meaning of Fla. Stat. § 48.193(1)(a)(6). Genpact Limited purposefully availed itself of the privilege of conducting business in Florida.

31.    In the alternative, for Plaintiff's federal civil-rights claims, this Court has personal jurisdiction over Genpact Limited under Fed. R. Civ. P. 4(k)(2).

### G.    Conspiracy and Joint-Enterprise Jurisdiction

32.    The shared appeal-decision workflow alleged in Section D of the Factual Allegations further supports the relationship among Defendants' forum-directed conduct and the common questions of law and fact presented in this action.

## PARTIES

### A.    Plaintiff

33.    Plaintiff Marvelle J. Ballentine is a Black citizen of the United States. Plaintiff resided in Florida at all times relevant to this action and resides in Florida as of the date of this Complaint. Plaintiff operated a mobile recreational-vehicle repair business in Florida and adjacent states. Plaintiff brings this action in his individual capacity.

### B.    Defendants

34.    Defendant Meta Platforms, Inc. is a corporation organized under the laws of Delaware with its principal place of business at 1 Hacker Way, Menlo Park, California 94025. Meta operates the Facebook service.

35.    Defendant Accenture LLP is a limited liability partnership that performs appeal-decision services for Meta. Accenture LLP performed services material to this action through facilities in Austin, Texas; Manila, Philippines; Warsaw, Poland; and other locations during the period relevant to this action. Accenture LLP staffed approximately 5,800 personnel dedicated to performing appeal-decision services for Meta's platforms during that period.

36.    Defendant TaskUs, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Texas. TaskUs performs appeal-decision services for Meta. TaskUs disclosed in its securities filings that its largest client comprised 22% of its fiscal-year 2024 revenue, which client was Meta Platforms, Inc.

10

37.    Defendant Genpact Limited is the United States operating entity of the Genpact group, registered to transact business in Florida. Genpact Limited performs appeal-decision services for Meta.

### C.    Defined Terms

38.    Accenture LLP, TaskUs, Inc., and Genpact Limited are referred to collectively as "the Codefendants." Meta Platforms, Inc. and the Codefendants are referred to collectively as "Defendants."

39.    The Facebook account active on July 4, 2022 (the "Account") was the instrument through which Plaintiff performed his third-party contracts with customers and with the National RV Training Academy and through which Plaintiff maintained a paid-advertising contract with Meta. References to "account-resident business property" are references to Plaintiff's customer communications, customer contact records, business-page materials, advertising materials, advertising-campaign data, and pending service inquiries stored within the Account.

40.    "Codefendant" means whichever of Accenture LLP, TaskUs, Inc., or Genpact Limited decided Plaintiff's appeal of the Notice. The Codefendant performs appeal-decision services for Meta under a continuing services agreement.

### JOINDER

41.    Joinder of Defendants is proper under Fed. R. Civ. P. 20(a)(2). Plaintiff's claims arise out of the same series of transactions and occurrences —

Meta's issuance of the Notice; Meta's transmission of the Notice and Plaintiff's identity materials to a Codefendant within the shared appeal-decision workflow described in Section D of the Factual Allegations; the Codefendant's adverse appeal decision; and Meta's withholding of Plaintiff's account-resident business property and interference with Plaintiff's third-party contracts performed through the Account — and present common questions of law and fact, including the application of 42 U.S.C. §§ 1981, 1982, and 1985(3) to Defendants' conduct.

## ALTERNATIVE PLEADING AS TO CODEFENDANTS

42.    Each Codefendant performed appeal-decision services for Meta during the period relevant to this action under a written services agreement. Each Codefendant received Meta-promulgated standard operating procedures, training materials, and protocol updates. Each Codefendant used Meta-provided appeal interfaces that displayed, alongside each transmitted notice, the account-holder's profile photograph and any government-identification image submitted to Meta. Each Codefendant decided account-holders' appeals subject to Meta's authority to act on or rescind those decisions.

43.    The identity of the Codefendant that decided Plaintiff's appeal on July 4, 2022 is not within Plaintiff's personal knowledge and has not been disclosed by any Defendant. The information necessary to identify that Codefendant is exclusively within Defendants' possession and control. Plaintiff therefore pleads, under Fed. R. Civ. P. 8(d)(2) and 8(d)(3), in the alternative, that Plaintiff's appeal

on July 4, 2022 was decided by Accenture LLP; or by TaskUs, Inc.; or by Genpact Limited.

44.   Allegations concerning Plaintiff's appeal — including the visibility of Plaintiff's race-visible identity materials on the appeal interface, the adverse appeal decision, and appeal-decision causation — are pleaded against each Codefendant in the alternative as the Codefendant. Allegations concerning the shared appeal-decision workflow, Meta-provided appeal interfaces, standard operating procedures, training materials, and protocol updates are pleaded against each Codefendant based on that Codefendant's own participation in the shared appeal-decision workflow.

### FACTS

### A.    Plaintiff and Commercial Relationships

45.   Plaintiff resided in the Middle District of Florida at all times relevant to this action and resides in this District as of the date of this Complaint. Plaintiff operated a mobile recreational-vehicle repair business serving customers in Florida and adjacent states. Plaintiff's business performed on-site repair services for owners of recreational-vehicle equipment and operated from Plaintiff's Florida residence.

46.   Plaintiff completed coursework offered by the National RV Training Academy. Plaintiff's enrollment with the National RV Training Academy entitled Plaintiff to continuing-education access through the National RV Training Academy Alumni Group, a Facebook Group operated by the National RV Training

Academy. Plaintiff relied on continuing-education access through the National RV Training Academy Alumni Group to perform contracted customer services.

47. Plaintiff invested approximately $20,000 in equipment and training to build the recreational-vehicle repair business described herein.

48. At the time of the events giving rise to this action, Plaintiff sourced one hundred percent of his customers and leads through Facebook Groups and Facebook Messenger. As of July 4, 2022, Plaintiff had completed Facebook-sourced customer transactions totaling approximately $2,000 and held pending Facebook-sourced customer appointments valued at approximately $3,000.

49. The following property of Plaintiff was stored within and accessed through the Account: Plaintiff's customer communications; Plaintiff's customer contact records; Plaintiff's business-page materials; Plaintiff's pending-appointment records; and Plaintiff's continuing-education access through the National RV Training Academy Alumni Group.

**B.    Contract Severance and Appeal**

50. On July 4, 2022, Meta authored a notice (the "Notice") and transmitted the Notice to Plaintiff. The Notice interrupted Plaintiff's ability to perform third-party contracts through the Account and cut off Plaintiff's access to account-resident business property.

51. The Notice provided a mechanism for Plaintiff to initiate an appeal.

52. Meta required Plaintiff to submit government-issued identification as a precondition for appeal.

53.    Meta has never identified any factual basis for the Notice.

54.    Plaintiff appealed the Notice and submitted his United States passport. Plaintiff's profile photograph and the image of Plaintiff's passport each displayed Plaintiff as a Black man.

55.    Meta transmitted the Notice and Plaintiff's identity materials to a Codefendant within the shared appeal-decision workflow Meta operates. Plaintiff's profile photograph and the image of Plaintiff's United States passport were displayed on the Codefendant's appeal interface alongside the Notice.

56.    The Codefendant decided Plaintiff's appeal adversely to Plaintiff with those materials so displayed. The adverse appeal decision controlled whether Plaintiff's third-party contracts performed through the Account would be restored or terminated and whether Plaintiff's account-resident business property would be returned. But for the Codefendant's adverse appeal decision, Meta would not have withheld Plaintiff's account-resident business property and would not have interfered with Plaintiff's third-party contracts performed through the Account.

57.    Meta then withheld Plaintiff's account-resident business property and interfered with Plaintiff's third-party contracts performed through the Account.

58.    On April 22, 2025, Plaintiff transmitted a demand to Meta to return Plaintiff's account-resident business property and rescind the acts described in this Section. Meta did not respond. Meta has not rescinded any act described in this Section as of the date of this Complaint.

15

## C.    Comparators

59.    Meta has issued notices substantively similar to the Notice to other Facebook account-holders. Each notice proceeded through the shared appeal-decision workflow described in Section D. Each white comparator identified below received a notice arising from an identified factual predicate attributed to that comparator. Plaintiff's Notice was not. Each white comparator was returned to third-party contracting capacity through Facebook. Plaintiff was not.

### Table 1 — Comparator Allegations

| Name | Race | Identified Factual Predicate Attributed to Account Holder | Restored to Third-Party Contracting Capacity and Account-Resident Property |
|---|---|---|---|
| Marvelle J. Ballentine | Black | No | No |
| Steven Ertelt | White | Yes | Yes |
| COMP-1 | White | Yes | Yes |
| Abby Covington | White | Yes | Yes |
| @slut.social | White | Yes | Yes |
| Betty Tompkins | White | Yes | Yes |

16

60. Each white comparator's notice arose from an identified factual predicate attributed to that comparator; Plaintiff's did not. Each white comparator was restored to third-party contracting capacity and account-resident business property; Plaintiff was not.

### D.    Shared Appeal-Decision Workflow

61. Meta established the protocols of the shared appeal-decision workflow. The protocols are Meta's protocols.

62. Each Codefendant entered into a continuing services agreement with Meta to staff personnel performing appeal-decision services for Meta within the shared appeal-decision workflow.

63. Each Codefendant received from Meta standard operating procedures, training materials, and protocol updates governing the decision of account-holders' appeals.

64. Each Codefendant used Meta-provided appeal interfaces in the performance of appeal-decision services. The appeal interfaces were designed, configured, and provided by Meta.

65. The appeal interfaces Meta provided displayed, alongside each transmitted notice, the account-holder's profile photograph and any government-identification image submitted to Meta.

66. Each Codefendant decided account-holders' appeals on the appeal interface Meta provided.

17

67. Following each Codefendant's appeal decision, Meta retained authority to act on or rescind that decision.

### E.    Knowledge of Racial Disparities

68. Defendant Accenture's public Responsible AI position has acknowledged that algorithmic review without identity-masking produces differential error rates by race.

69. Between 2019 and 2020, Meta commissioned and received an external civil-rights audit. The audit documented differential adverse appeal outcomes affecting African American Facebook users.

70. Between 2019 and 2021, Meta conducted internal research that identified differential adverse appeal outcomes by race. That research included a finding of an annualized loss of approximately 2.7 percent for Black Facebook account-holders. Meta did not deploy remediation. Meta has not published appeal-outcome data disaggregated by race.

71. Since 2024, Meta has dismantled the internal civil-rights infrastructure Meta had previously stood up in response to the 2020 Civil Rights Audit.

72. Each Defendant continues to operate the shared appeal-decision workflow described in Section D with knowledge of the racial disparities described in this Subsection E.

### COUNT I
### VIOLATION OF 42 U.S.C. § 1981 (Interference with Right to Make and Enforce Contracts with Third Parties)

18

*(Against All Defendants)*

73.    Plaintiff incorporates by reference Sections A through E of the Factual Allegations as though fully set forth herein.

74.    Plaintiff is a Black citizen of the United States and asserts the right secured by 42 U.S.C. § 1981 to make and enforce contracts with third parties on the same terms as white citizens, free of racially motivated third-party interference with that right.

75.    At the time of the events of July 4, 2022, Plaintiff sourced one hundred percent of his customers and leads through Facebook. Plaintiff held a continuing-education contract with the National RV Training Academy, the benefits of which were performed through the National RV Training Academy Alumni Facebook Group.

76.    Defendants' conduct on July 4, 2022, as alleged in Section B, deprived Plaintiff of customer communications, customer contact records, advertising-campaign data, pending-appointment records, and the benefits of his continuing-education contract with the National RV Training Academy.

77.    Defendants' conduct interfered with Plaintiff's ability to form, perform, modify, and enforce contracts with existing and prospective customers, including pending customer appointments valued at approximately $3,000.

78.    White Facebook account-holders to whom Meta issued substantively similar notices, including Steven Ertelt and the comparator identified herein as COMP-1, were restored to the third-party contracting capacity and account-

19

resident business property that Defendants' workflow had interrupted. Plaintiff was not.

79. Defendants acted because of Plaintiff's race. The Codefendant's appeal interface displayed Plaintiff's profile photograph and the image of Plaintiff's United States passport alongside the Notice, each displaying Plaintiff as a Black man, at the time the Codefendant decided Plaintiff's appeal and at the time Meta acted on that decision.

80. But for Plaintiff's race, Defendants would not have impaired Plaintiff's ability to make, perform, and enforce contracts with existing and prospective customers through Facebook-based customer communications.

81. But for the Codefendant's adverse appeal decision, made with Plaintiff's race-visible identity materials displayed on the appeal interface, Meta would not have withheld Plaintiff's account-resident business property and would not have interfered with Plaintiff's third-party contracts performed through the Account.

82. Defendants' conduct constituted racially motivated third-party interference with Plaintiff's right to make and enforce contracts with third parties, in violation of 42 U.S.C. § 1981.

83. Plaintiff has been damaged by Defendants' conduct in an amount to be proven at trial.

## COUNT II

### VIOLATION OF 42 U.S.C. § 1982 (Interference with Right to Hold and Convey Property)
*(Against All Defendants)*

84.     Plaintiff incorporates by reference Sections A through E of the Factual Allegations as though fully set forth herein.

85.     Plaintiff is a Black citizen of the United States and asserts the right secured by 42 U.S.C. § 1982 to inherit, purchase, lease, sell, hold, and convey real and personal property on the same terms as white citizens.

86.     Plaintiff held personal property and property-like business assets within the meaning of 42 U.S.C. § 1982, stored within or accessible through the Account, including customer contact records, customer communications, business-page materials, pending-appointment records, and the business goodwill embodied in the Account.

87.     Defendants' conduct on July 4, 2022, as alleged in Section B, dispossessed Plaintiff of that property and continues to deprive Plaintiff of it. Meta retains possession and control of the account-resident business property and has refused to return it following Plaintiff's April 22, 2025 demand.

88.     White Facebook account-holders to whom Meta issued substantively similar notices, including Steven Ertelt and the comparator identified herein as COMP-1, were returned to possession and use of account-resident business property, including communications, records, customer relationships, and business materials maintained through their accounts. Plaintiff was not.

21

89. Defendants acted because of Plaintiff's race. Plaintiff's race-visible identity materials were displayed on the Codefendant's appeal interface at the time the Codefendant decided Plaintiff's appeal and at the time Meta acted on that decision.

90. But for Plaintiff's race, Defendants would not have deprived Plaintiff of account-resident business property while returning similarly situated white users to possession of theirs.

91. Defendants' conduct interfered with Plaintiff's right to hold and convey property on the same terms as white citizens, in violation of 42 U.S.C. § 1982.

92. Plaintiff has been damaged by Defendants' conduct in an amount to be proven at trial.

## COUNT III
### VIOLATION OF 42 U.S.C. § 1985(3) (Conspiracy to Deprive Plaintiff of Civil Rights)
#### (Against All Defendants)

93. Plaintiff incorporates by reference Sections A through E of the Factual Allegations as though fully set forth herein.

94. Plaintiff is a Black citizen of the United States. The Thirteenth Amendment to the Constitution of the United States prohibits slavery and its badges and incidents and is enforceable against private conduct that imposes those badges and incidents on Black citizens. Racial discrimination in the making, performance, and enforcement of contracts and in the holding and conveying of

22

property in modern commerce is a badge and incident of slavery within the meaning of the Thirteenth Amendment.

95.    Defendants entered into and continue to operate, by agreement, a shared appeal-decision workflow in which Codefendants decide account-holders' appeals on appeal interfaces that display the account-holder's race-visible identity materials alongside the transmitted notice, despite the racial disparities in adverse appeal outcomes alleged in Section E of the Factual Allegations and despite the availability of identity-masking alternatives. Defendants' continuing operation of that workflow, in the environment of disparities alleged herein, constitutes coordinated action that imposes badges and incidents of slavery on Black Facebook account-holders, including Plaintiff, in modern commerce.

96.    The agreement is evidenced by, among other things: (a) Meta's establishment of, and the Codefendants' staffing of, the shared appeal-decision workflow on appeal interfaces that display race-visible identity materials; (b) the operation of that workflow in an environment of documented racial disparities in adverse appeal outcomes, as alleged in Section E; (c) Meta's failure to deploy remediation; and (d) the disparate restoration outcomes reflected in Table 1.

97.    Defendants performed acts in furtherance of the agreement, including the acts alleged in Section B and Meta's continuing refusal to rescind those acts.

98.    The agreement and the acts in furtherance of the agreement were motivated by class-based, invidiously discriminatory animus toward Black Facebook account-holders, including Plaintiff.

23

99.    Defendants' agreement and acts in furtherance deprived Plaintiff of rights, privileges, and immunities secured by the Thirteenth Amendment to the Constitution of the United States, and of the right to be free from the badges and incidents of slavery in modern commerce.

100.    Plaintiff has been damaged by Defendants' conduct in an amount to be proven at trial.

**PRAYER FOR RELIEF**

101.    WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally where appropriate, granting the following relief:

A.    A declaration that Defendants' conduct as alleged herein violates 42 U.S.C. §§ 1981, 1982, and 1985(3);

B.    An order directing Meta Platforms, Inc. to return Plaintiff's account-resident business property;

C.    An order directing identity-masking or race-neutral appeal-decision procedures sufficient to prevent recurrence of the conduct alleged as to Plaintiff;

D.    Compensatory damages in an amount to be proven at trial;

E.    Punitive damages in an amount to be proven at trial;

F.    Attorneys' fees and costs under 42 U.S.C. § 1988 and the costs of this action; and

G.    Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury under Fed. R. Civ. P. 38 on all issues so triable.

Date: [        ]

Respectfully submitted,

Marvelle J. Ballentine
Plaintiff, *pro se*
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com

25

## CERTIFICATE OF SERVICE

I hereby certify that on [          ], I filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notification of such filing to all counsel of record.